DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendants. | CASE NO. 3:08-mc-80030-JSW<br><br>AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)<br><br>[LANDING RIGHTS]<br><br>Date: May 30, 2008<br>Time: 9:00 a.m.<br>Courtroom: 17, 16th Floor<br>Judge: Jeffrey S. White |

## I. INTRODUCTION.

Plaintiffs have filed this action to seek redress for the bombing of the Marine Barracks in Beirut, Lebanon in 1983. Suit was filed on 10/3/01 and service of process was effectuated, in which Iran defaulted. This court conducted a number of hearings and entered a series of Opinions, including the MEMORANDUM OPINION of 5/30/03, marked *Exhibit "A,"* Judge Lamberth

wrote in that Opinion, as follows:[1]

> "These actions arise from the most deadly state-sponsored terrorist attack made against American citizens prior to September 11, 2001; the Marine barracks bombing in Beirut, Lebanon on October 23, 1983. In the early morning hours of that day, 241 American servicemen were murdered in their sleep by a suicide bomber. On that day, an unspeakable horror invaded the lives of those who survived the attack and the family members whose loved ones had been stolen from them. The memory of that horror continues to this day." (Exh. A, ¶ 1.)

Thereafter on 9/7/07, the court entered a second MEMORANDUM OPINION and JUDGMENT marked *Exhibits "B" and "C,"* the court granted judgment on behalf of Plaintiffs in the amount of $2,656,944,877.00. Individual parties in fact appealed, but these appeals were dismissed without prejudice by an order from the Court of Appeal, District of Columbia on February 23, 2008. The court stated as follows:

> "C.   The Attack
> As testified by Mahmoud, after the meeting in Baalbek, a 19-ton truck was disguised so that it would resemble a water delivery truck that routinely arrived at the Beirut International Airport, which was located near the U.S. Marine barracks in Beirut, and modified the truck so that it could transport an explosive device. On the morning of October 23, 1983, members of Hezbollah ambushed the real water delivery truck before it arrived at the barracks. An observer was placed on a hill near the barracks to monitor the operation. The fake water delivery truck then set out for the barracks, driven by Ismalal Ascar, an Iranian.
>
> At approximately 6.25 a.m. Beirut time, the truck drove past the Marine barracks. As the truck circled in the large parking lot behind the barracks, it increased its speed. The truck crashed through a concertina wire barrier and a wall of sandbags, and entered the barracks.[21] When the truck reached the center of the barracks, the bomb in the truck detonated.
>
> The resulting explosion was the largest non-nuclear explosion that had ever been detonated on the face of the Earth. The force of its impact ripped locked doors from their doorjambs at the nearest building, which was 256 fee away. Trees located 370 fee away were shredded and completely exfoliated. At the traffic control tower of the Beirut International Airport, over half a mile away, all of the windows shattered. The support columns of the Marine barracks, which were made of reinforced concrete, were stretched, as an expert witness described, "like rubber bands," the explosion created a crater in the earth over eight feet deep. The four-story Marine barracks was reduced to fifteen feet of rubble.
>
> The force of the explosion was equal to between 15,000 to 21,000 pounds of TNT. FBI and ATF explosives experts both concluded that the explosive

---

[1] All exhibits are incorporated by reference as though fully set forth in this Amended Memorandum in their entirety and are attached to the Declaration of David J. Cook, Esq. which has previously been filed herein.

material was "bulk form" pentaerythritol tetranitrate, or PETN. Danny A. Defenbaugh, the on-scene FBI forensic explosive investigator, testified as to his findings:

> [W]e were able to, through the forensic residue analysis, identify the explosive material, and it was unconsumed particles of PETN
> . . . .
>
> PETN is a primary explosive that is manufactured commercially and primarily for U.S. military purposes. It is a primary explosive that is used in detonating cord. Detonating cord is nothing more than a plastic and fiber-wrapped cord that has the PETN, which looks like a white power . . . that is then extruded inside that cord . . . .
> In this case, it was not [consumed]; we found unconsumed particles of PETN. That was just like we had found also in the American Embassy bombing. What that means is that it had to have been from a bulk explosive, it had to have been from a manufacturer." (P. 16 of 30)

## II. THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A CIVIL JUDGMENT.

Prior to approximately January 2008, a Judgment Creditor of a foreign state such as Iran was greatly hobbled in any attempt by which to recover, based upon the Foreign Sovereignty Immunities Act ("FSIA") and various exceptions, in which, e.g., "blocked assets" might be subject to levy and execution. Unfortunately, blocked assets were "few and far between," making collection of any judgment like this extremely problematical, at best.

Congress, recognizing that the Marines needed to be compensated, ultimately enacted an amendment of the FSIA designed to facilitate the collection through enactment to 28 U.S.C. § 1605A. The key parts of that new section permitting meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

"(a) IN GENERAL. --
    "(1) NO IMMUNITY. – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –
    "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign

state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –

"(A) the level of economic control over the property by the government of a foreign state;
"(B) whether the profits of the property go to that government;
"( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
"(D) whether that government is the sole beneficiary in interest of the property; or
"(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Accordingly, the FSIA no longer serves as a bar, and the assets of Iran are now subject to clear levy and execution.

### III. LOCAL DOCKETING.

Plaintiffs have registered the judgment with the United States District Court, Northern District of California, Case No. CV 08 80030 MISC JSW, a copy of an ABSTRACT OF JUDGMENT marked *Exhibit "D."* The basis of registering the judgment under 28 U.S.C. § 1963 is the good faith belief that in fact assets of Iran might be subject to levy and execution in the Northern District of California. Plaintiffs have in fact commenced a campaign of levies upon, among others, UBS AG, Credit Suisse, Bank of Tokyo Mitsubishi UFJ, Mizuho Corporate Bank, Sumitomo Mitsui Banking Company, along with a series of other banks, and along with a levy upon the Boeing Company. The purpose of these levies is to reach any and all monies (or property) which may be due and owing Iran. Plaintiffs have already served the bulk of these levies, and is receiving partial responses.

### IV. NATURE OF ASSETS SUBJECT TO LEVY AND EXECUTION.

Plaintiffs have determined through a multitude of sources, which include the individual

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. 3:08-mc-80030-JSW

4

airline schedules, various tourist and other websites, the information available through various Iranian airports (online), that the following airlines generally service Iranian airports:

    A.  QATAR AIRLINES.
    B.  AIR FRANCE.
    C.  BMI (British Midlands).
    D.  TURKISH AIRLINES.
    E.  EMIRATES AIRLINES.
    F.  BRITISH AIRWAYS.
    G.  AUSTRALIAN AIRLINES.
    H.  GULF AIR.
    I.  LUFTHANSA.
    J.  ALITALIA.
    K.  SWISS INTERNATIONAL AIRLINES.
    L.  AEROFLOT.
    M.  KLM (Royal Dutch Airlines).
    N.  JAL (Japan Airlines).
    O.  KUWAIT AIRLINES.
    P.  P.I.A. AIR (Pakistani Air).
    Q.  ROYAL JORDANIAN.
    R.  SAFFAT AVIATION SERVICES.
    S.  SYRIAN AIRLINES.
    T.  CHINA SOUTHERN AIRLINES.
(And all others, hereinafter collectively "Airlines".)

A further examination of the websites indicate that the bulk (but not all) of these Airlines service the United States. Based upon common business experience, these Airlines pay the airport facility fees for landing rights, gate fees, fuel charges, food charges, maintenance, repair and other related services, hanger accommodations, and other goods and services which may be provided by the airport facility from time to time. Accordingly, any one or all of these Airlines would be indebted to Iran for payment for these related services, whether by goods or for all of the services. Iran is no longer protected by the FSIA, and therefore any amounts due from these Airlines are subject to assignment under C.C.P. § 708.510(a).

## V. WHICH LAW APPLIES.

Plaintiffs seek to enforce the judgment under F.R.C.P. 69(a)(1) amended as of 12/1/07, and employ the laws of the domicile, specifically being the laws of the State of California, which provides as follows:

    Rule 69. Execution
    (a) In General.
    (1) Money Judgment: Applicable Procedure.

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. 3:08-mc-80030-JSW                                                                 5

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

This entire issue was discussed in detail in *Clark vs. Wilbur, supra*, in which the court was faced with the issue whether the laws of the original domicile applied, or the "transplanted domicile," in which the judgment was being enforced. The court answered this at 913 F.Supp. 463 at page 467, in which the court stated as follows:

> "Defendants assert Florida law should be applied in determining if the assets in question are exempt from a turnover order. Plaintiff seeks application of West Virginia law. *Rule* 69(a) provides in pertinent part as follows:
>
> The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....* Id. (emphasis added). The mandate requiring resort to the law of the state where the district court is held applies to questions relating to whether assets are exempt from collection. [8] *See, e.g., Chicago, Rock Island & Pac. Ry. Co. v. Sturm*, 174 U.S. 710, 717, 19 S.Ct. 797, 800, 43 L.Ed. 1144 (1899) (stating "[e]xemption laws are ... part of the remedy and subject to the law of the forum"); *Johns v. Rozet*, 826 F.Supp. 565, 567 (D.D.C.1993); *Pallante v. Int'l Venture Invs., Ltd.*, 622 F.Supp. 667, 668 (N.D.Ohio 1985) (stating "[g]enerally ... questions of exemption are determined solely by the laws of the forum"); *Marine Midland Bank v. Surfbelt, Inc.*, 532 F.Supp. 728, 729 (W.D.Pa.1982) (stating "the law of the forum governs questions of exemption"); 11 Thomas J. Goger et al., *Federal Procedure* § 31:21 (1982). Defendants have cited no authority to the contrary in support of their position and the Court has located none. Accordingly, the Court concludes West Virginia law controls the question of whether the requested assets are exempt. The Court must now determine whether the requested assets are exempt under West Virginia law."

Traditional choice of law principles mandate, along with F.R.C.P. 69(a)(1), that the judgment creditor is entitled to exercise the rights and remedies of the forum jurisdiction, rather than the original jurisdiction. The Restatement of Conflicts of Laws rejects this claim as follows:

> "The majority of courts agree with Mr. Justice McKenna and hold that in a garnishment proceeding, as elsewhere, *only the exemption laws of the forum are applicable.*" (Page 1617).[2] (Emphasis added)

Here, Plaintiffs seek to enforce the remedies permitted under California, as opposed to District of Columbia law.

---

[2] Exemptions do not travel.

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. 3:08-mc-80030-JSW

6

## VI. MECHANISM OF AN ASSIGNMENT MOTION.

Plaintiff seeks to employ the remedies permitted under C.C.P. § 708.510(a) which provides as follows:

> "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor, or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditional upon future developments, including but not limited to, the following types of payment:
>
> 1. Wages due from the federal government that are not subject to withholding under an earnings withholding order.
> 2. Rents.
> 3. Commissions.
> 4. Royalties.
> 5. Payments due from a patent or copyright.
> 6. Insurance policy loan value."

This assignment motion would reach all accounts, accounts receivable and rights to payment of money, whether owed now or owed in the future, from "account debtors" who may owe money to the underlying judgment debtor.

The Legislative Comment under C.C.P. § 708.510 indicates that the court has great flexibility in fashioning relief, which itself would enable Plaintiffs to serve the assignment order and obtain payment of amounts which are due or may be due in the future. The Legislative Comment provides as follows:

> **Legislative Committee Comment – Assembly 1982 Addition**
> Section 708.510 provides a new procedure for reaching certain forms of property that cannot be reached by levy under a writ of execution, such as the nonexempt loan value of an unmatured life insurance, endowment, or annuity policy. See Sections 699.720(a)(6), 704.100. It also provides an optional procedure for reaching assignable forms of property that are subject to levy, such as accounts receivable, general intangibles, judgments, and instruments. This section does not make any property assignable that is not already assignable. This remedy may be used alone or in conjunction with other remedies provided in this title for reaching rights to payment, such as execution, orders in examination proceedings, creditors' suits, and receivership. The use of this remedy is subject to limitations on the time for enforcement of judgment. See Sections 683.010-683.220.

The purpose of the assignment order is the same as a contractual assignment under C.C.P. § 708.530, which provides as follows:

> § 708.530.
> (a) Except as provided in subdivision (b), the effect and priority of an assignment ordered pursuant to this article is governed by Section 955.1 of the Civil Code. For the purpose of priority. an assignee of a right to payment pursuant to this article shall be deemed to be a bona fide assignee for value under the terms of Section 955.1 of the Civil Code.
> (b) An assignment of the right to future rent ordered under this article is recordable as an instrument affecting real property and the priority of such an assignment is governed by Section 1214 of the Civil Code.

The effect on the obligor's rights is found under C.C.P. § 708.540, which provides as follows:

> § 708.540.
> The rights of an obligor are not affected by an order assigning the right to payment until notice of the order is received by the obligor. For the purpose of this section, "obligor" means the person who is obligated to make payments to the judgment debtor or who may become obligated to make payments to the judgment debtor depending upon future developments.

Assignments are found under Civ.C. § 955.1, likewise which provides as follows:

> § 955.1.
> (a) Except as provided in Sections 954.5 and 955 and subject to subdivisions (b) and (c), a transfer other than one intended to create a security interest (paragraph (1) or (3) of subdivision (a) of Section 9109 of the Commercial Code) of any payment intangible (Section 9102 of the Commercial Code) and any transfer of accounts, chattel paper, payment intangibles, or promissory notes excluded from the coverage of Division 9 of the Commercial Code by paragraph (4) of subdivision (d) of Section 9109 of the Commercial Code shall be deemed perfected as against third persons upon there being executed and delivered to the transferee an assignment thereof in writing.
> (b) As between bona fide assignees of the same right for value without notice, the assignee first giving notice thereof to the obligor in writing has priority.

An assignment order permit the judgment creditor to reach receivable due now. or due in the future, receivables which might be contingent, or uncertain, or receivables in which performance might still be due. as provided by the exact language of C.C.P. § 708.510(a). On the other hand a levy would only reach accounts which are due at the time of the levy as indicated by such as cases as *FIRST CENTRAL COAST BANK, etc. vs. CUESTA TITLE GUARANTEE COMPANY, et al.*, 143 Cal.App.3d 12, 191 Cal.Rptr. 433 (Cal.App.2 Dist. 1983), the appellate court held that a premature [or late] levy did not reach the monies which were due at the time of a levy in that a levy constitutes a "snapshot" of any funds immediately due the debtor. The court stated as page 16 as follows:

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. 3:08-mc-80030-JSW

8

> "A debt which is uncertain and contingent in the sense that it may never come due and payable is not subject to garnishment. (Brunskill v. Stutman, supra, 186 Cal.App.2d 97, 8 Cal.Rptr. 910: *Clecak v. Dunn* (1928) 95 Cal.App. 537.)"

An assignment order reaches a broader range of property rights, including accounts which are contingent, or some performance is due in the futures. A levy, on the other hand, only reaches monies which are non contingent and in which the accounts are immediately due and payable, and without a defense.[3]

An assignment order permits the judgment creditor to serve the order through the mails (or process server) with the concurrent expense of individual levy and execution. An assignment order reaches money which is now due or might be due in the future, or in which payment is contingent (C.C.P. § 708.510(a)), while on the other hand a levy only reaches money due at the time and without condition.

## VII. CONCLUSION.

Plaintiffs have suffered a tremendous loss of life at the hands of a terrorist nation who is unrepentent. An assignment of the fees and charges imposed by Iran upon international airlines will start of this process of recompense.

Plaintiffs are therefore entitled to such relief.

DATED: April 28, 2008                          COOK COLLECTION ATTORNEYS

By: ___/s/ David J. Cook_____
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple
(Dec.), et al.

F:\USERS\DJCNEW\peterson.assignlandingame

---

[3] Parenthically serving account debtors with an assignment order also reduces the cost of enforcement given a large number of actual and/or potential obligors.

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. 3:08-mc-80030-JSW                                                                      9

## PROOF OF SERVICE

| | |
|---|---|
| *Via Email dr-ahmadinejad@president.ir* <br> PRESIDENT DR. AHMADINEJAD <br><br> ISLAMIC REPUBLIC OF IRAN <br> acting through its <br> MINISTRY OF DEFENSE AND <br> SUPPORT FOR ARMED FORCES <br> No. 1 Shahid Kaboli Street <br> Beginning of Resalat Highway <br> Seyyed Khandan Bridge <br> P.O. Box 16765-1479 <br> Tehran, Iran <br> Attn: Responsible Officer | ISLAMIC REPUBLIC OF IRAN <br> Khomeini Avenue <br> United Nations Street <br> Teheran, Iran <br> ATTN: Responsible Officer <br><br> IRAN AIR <br> No.221,Second Floor,Public Relations, <br> Support Services Bld. <br> IranAir H.Q. <br> Mehrabad Airport <br> Tehran, Iran <br> E-mail: PR@IranAir.com |

ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue
Golestan Yekom
Teheran, Iran
ATTN: Responsible Officer

I declare:

I am employed in the County of San Francisco, California. I am over the age of eighteen (18) years and not a party to the within cause. My business address is 165 Fell Street, San Francisco, CA 94102. On the date set forth below, I served the attached:

AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [LANDING RIGHTS]

on the above-named person(s) by:

__XXX__  (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the person(s) served above.

__XXX__  (BY EMAIL) Emailing addressed to the person's/company's email address listed above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2008.

                                                /s/ David J. Cook
                                                David J. Cook