1  **DAVID J. COOK, ESQ. (State Bar # 060859)**
   **ROBERT J. PERKISS, ESQ. (State Bar # 62386)**
2  **COOK COLLECTION ATTORNEYS**
   **A PROFESSIONAL LAW CORPORATION**
3  165 Fell Street
   San Francisco, CA 94102
4  Mailing Address: P.O. Box 270
   San Francisco. CA 94104-0270
5  Tel: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52,759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON. Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  DEBORAH D. PETERSON. Personal          )    CASE NO. 3:08-mc-80030-JSW
    Representative of the Estate of James C. )
    Knipple (Dec.). et al..                 )    NOTICE OF MOTION AND MOTION FOR
14                                          )    ASSIGNMENT OF RIGHTS PURSUANT TO
                                            )    C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
15           Plaintiffs,                    )
                                            )    **[SHIPPING AND DOCK FEES and**
16  vs.                                     )    **BUNKERED FUEL SALES]**
                                            )
    ISLAMIC REPUBLIC OF IRAN, et al..       )
17                                          )    Date:  May 30. 2008
            Defendants.                     )    Time: 9:00 a.m.
18  _____)    Courtroom: 17, 16th Floor
                                                 Judge: Jeffrey S. White
19

20        TO THE ISLAMIC REPUBLIC OF IRAN, AND ALL OF ITS AGENCIES AND

21  INSTRUMENTALITIES. INCLUDING BUT NOT LIMITED TO MINISTRY OF ROADS AND

22  TRANSPORTATION. PORTS & SHIPPING ORGANIZATION, NATIONAL IRANIAN OIL

23  PRODUCTS DISTRIBUTION CO.. THE NATIONAL IRANIAN OIL REFINING AND

24  DISTRIBUTING CO.. THE MINISTRY OF PETROLEUM OF THE ISLAMIC REPUBLIC OF.

25  AND TO ALL OF ITS REPRESENTATIVES. AND ALL THIRD PARTIES HEREIN:

26        PLEASE TAKE NOTICE that on the 30th day of May, 2008 at the hour of 9:00 a.m., or as

27  soon thereafter as the matter can be heard in Courtroom 17, before the Honorable Jeffrey S. White.

28
    NOTICE OF MOTION AND MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a)
    AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES and BUNKERED FUEL SALES]
    CASE NO. 3:08-mc-80030-JSW                                                          1

1    Judge of the United States District Court, at the courthouse located at 450 Golden Gate Avenue,

2    San Francisco, California 94102. Plaintiffs DEBORAH D. PETERSON, Personal Representative

3    of the Estate of James C. Knipple (Dec.), et al., will and does hereby move this court, for purposes

4    of enforcement of the judgment in their favor rendered in the above-entitled action dated 9/7/07 in

5    the amount of $2,656,944,877. as follows:

6       1. For the issuance of an order for assignment of rights, accounts, accounts receivable,

7    rights to payment of money, and general intangibles, owed and in favor of THE ISLAMIC

8    REPUBLIC OF IRAN, and all of its agencies and instrumentalities, such as the MINISTRY OF

9    ROAD AND TRANSPORTATION OF THE ISLAMIC REPUBLIC OF IRAN, and PORTS &

10    SHIPPING ORGANIZATION, and any other specialized department, division or unit managing

11    the docks, harbors, islands, inlets, terminals, storage facilities, loading and off-loading facilities

12    (for gasoline, refined petroleum products, petrochemicals), docking and harbor facilities and all

13    other loading and off-loading facilities (hereinafter collectively "Iran") due from the following

14    shipping companies, freight forwarders, shipping agents, importers, ocean-going carriers, tankers,

15    and other transportation and shipping companies, ocean-going shipping lines:

| | |
|---|---|
| A. | BALAJI SHIPPING (U.K.) Shipping (Orient Express Lines Limited). |
| B. | CHINA OCEAN SHIPPING (GROUP) COMPANIES (COSCO CONTAINER LINES CO. Ltd.). |
| C. | CHINA SHIPPING (GROUP) company (CHINA SHIPPING CONTAINER LINES COMPANY Ltd.). |
| D. | CMA CGM The French Line. |
| E. | CSAV (COMPANIA SUD AMERICANA DE VAPORES, S.A.) (also dba EUROATLANTIC CONTAINER LINE); Norasia Container Line Ltd.; Comanhia Libra De Navegacao (and also d.b.a. Braztrans Lines). |
| F. | CHUN LEE SHIPPING. |
| G. | EMIRATES SHIPPING LINES. |
| H. | EVERGREEN LINE. |
| I. | HANJIN SHIPPING (THAILAND). |
| K. | HAMBURG SUD (AG). |
| L. | HAPAG LLOYD AG. |
| M. | HYUNDAI MERCHANT MARINE CO. Ltd. |
| N | Kawasaki Kisen Kaisha Ltd. ("K" Line) |
| O. | "K" LINE (China) Ltd. |
| P. | "K" LINE (THAILAND) Ltd. |
| Q. | MAERSK LINE (A.P. MOLLER-MAERSK, A/S). |
| R. | MEDITERRANEAN SHIPPING COMPANY (MSC). |
| S. | MITSUI O.S.K. LINES Ltd. |
| T. | NMT SHIPPING LINES. |

NOTICE OF MOTION AND MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a)
AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES and BUNKERED FUEL SALES]
CASE NO. 3:08-mc-80030-JSW        2

| | |
|---|---|
| U. | NYK LINES. |
| V. | ORIENT OVERSEAS CONTAINER LINE (OOCL). |
| W. | Pacific International Lines (Pte) Ltd. |
| X. | PDZ HOLDINGS BHD. |
| Y. | SIMATECH SHIPPING LLC. |
| Z. | WAN HAI LINES Ltd. |
| AA. | YANG MING MARINE TRANSPORT CORPORATION . |
| BB. | Any other person or party acting as freight forwarder. broker, agent, representative. of financier acting in concert with these SHIPPING COMPANIES. |

(And all others, hereinafter collectively "SHIPPING COMPANIES")

These fees and rights to payment of money consist of 1) SHIPPING AND DOCK FEES which consist of charges imposed by Iran and through the charges imposed by PORTS & SHIPPING ORGANIZATION of Iran (or other agencies and instrumentalities) for the general purpose of transporting, delivering, picking up. loading any products. such as any goods, containers. bulk goods, gasoline, refined petroleum products or any other products; or 2) utilizing the harbors, docks. terminals, warehouse. wharfs, barges, tugboat, cleaning, garbage and refuse, diving facilities and services. container services. cargo services, duties and tariffs, along with any and all other services as set forth by way of various Tariffs, Rules and price schedules.

2. For the issuance of an order for assignment of rights, accounts. accounts receivable. rights to payment of money. and general intangibles. owed and in favor of THE ISLAMIC REPUBLIC OF IRAN, and all of its agencies and instrumentalities, such and including. the NATIONAL IRANIAN OIL PRODUCTS DISTRIBUTION CO., THE NATIONAL IRANIAN OIL REFINING & DISTRIBUTION COMPANY, AND MINISTRY OF PETROLEUM OF THE ISLAMIC REPUBLIC OF IRAN arising from and based on the sale of petroleum products. oil, fuel, and any and all other petroleum products which are sold to the SHIPPING COMPANIES as "BUNKERED" fuel. petroleum products. and all other products.

3. For an order compelling the assignment of all of the monies due Iran from the various SHIPPING COMPANIES, the transactions as set forth therein. and that the payments otherwise due Iran, shall be paid to and on behalf of Plaintiffs. by a check. draft. money order or wire transfer, payable to the order of DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.). as a representative for and on behalf of the Plaintiffs in the

1  above-entitled action, that such funds be forwarded to David J. Cook. Esq.. Cook Collection

2  Attorneys, P.L.C.. 165 Fell Street, San Francisco, CA 94102, and/or P.O. Box 270. San Francisco,

3  CA 94104. Telephone No. (877) 989-4730. until the total of the judgment in the above-entitled

4  action be paid in full herein.

5      The basis of this motion is that Iran charges SHIPPING COMPANIES fees and charges in

6  the use of Iranian docks, harbors, unloading facilities, terminals, warehouses, storage facilities,

7  use of barges, tugboats, cleaning services, and other related harbor services in the general

8  movement, loading and unloading of cargo, freight, bulk goods, dry goods, agricultural products.

9  along with, gasoline. refined petroleum products, such as diesel, jet fuel, among others: that IRAN

10  charges various fees  for the use of harbors and docks; that the SHIPPING COMPANIES. among

11  others, pay these charges. which are assignable to Plaintiffs for purposes of satisfaction of this

12  judgment.  Given the repeal of the Foreign Sovereignty Immunities Act and that Iran is now

13  subject to levy and execution. all of the payment and each of the same due from the SHIPPING

14  COMPANIES should therefore be paid to Plaintiffs for the outstanding judgment herein.

15      Plaintiffs also base this motion also on the grounds that the National Iran Oil Distribution

16  Co., a subsidiary of the National Iranian Refining and Distribution Company, which is part of the

17  Ministry of Petroleum, sells about $640,000,000 worth of BUNKERED oil to local and foreign

18  ships, which presumptively includes. some or all of the SHIPPING COMPANIES. described

19  herein, in which the revenue stream is now subject to assignment in favor of Plaintiffs.

20      This motion is based upon this Notice, the attached Motion, Memorandum of Points and

21  Authorities. the Declaration of David J. Cook. Esq., upon all pleadings, papers and other matters

22  on file herein, all matters which this court may take judicial notice hereof. which include but are

23  not limited to, all papers, pleadings and other matters on file herein in that certain action known as

24  *DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple (Dec.). et*

25  *al., vs. ISLAMIC REPUBLIC OF IRAN, et al..* United States District Court for the District of

26  Columbia. Consolidated Civil Actions: 01-2094 (RCL) and 01-2684 (RCL), all other matters

27  which the court may take judicial notice thereof. and upon all oral evidence and argument which

28

1    may be presented at the hearing hereof.

2    DATED:  April 29, 2008

COOK COLLECTION ATTORNEYS

3

4    By:    /s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs

5    DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple

6    (Dec.), et al.

7

8    F:\USERS\DJCNEW\peterson.assign.dockfees

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    NOTICE OF MOTION AND MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a)
AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES and BUNKERED FUEL SALES]
CASE NO. 3:08-mc-80030-JSW

5

1  **DAVID J. COOK, ESQ. (State Bar # 060859)**
   **ROBERT J. PERKISS, ESQ. (State Bar # 62386)**
2  **COOK COLLECTION ATTORNEYS**
   **A PROFESSIONAL LAW CORPORATION**
3  165 Fell Street
   San Francisco, CA  94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA  94104-0270
5  Tel: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52,759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12
    DEBORAH D. PETERSON, Personal      )    CASE NO. 3:08-mc-80030-JSW
13  Representative of the Estate of James C.  )
    Knipple (Dec.), et al.,             )    MOTION FOR ASSIGNMENT OF RIGHTS
14                                      )    PURSUANT TO C.C.P. § 708.510(a) AND
              Plaintiffs,               )    F.R.C.P. 69(a)
15                                      )
    vs.                                 )    [SHIPPING AND DOCK FEES and
16                                      )    BUNKERED FUEL SALES]
    ISLAMIC REPUBLIC OF IRAN, et al.,   )
17                                      )    Date:  May 30, 2008
              Defendants.              )    Time: 9:00 a.m.
18  _____ )    Courtroom: 17, 16th Floor
                                             Judge: Jeffrey S. White
19

20         Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C.

21  Knipple (Dec.), et al., hereby move this court for the following relief, for purposes of enforcement

22  of the judgment in their favor rendered in the above-entitled action dated 9/7/07 in the amount of

23  $2,656,944,877, as follows:

24         1. For the issuance of an order for assignment of rights, accounts, accounts receivable,

25  rights to payment of money, and general intangibles, owed and in favor of THE ISLAMIC

26  REPUBLIC OF IRAN, and all of its agencies and instrumentalities, such as the MINISTRY OF

27  ROAD AND TRANSPORTATION OF THE ISLAMIC REPUBLIC OF IRAN, and PORTS &

28

1   SHIPPING ORGANIZATION, and any other specialized department, division or unit managing

2   the docks, harbors, islands, inlets, terminals, storage facilities, loading and off-loading facilities

3   (for gasoline, refined petroleum products, petrochemicals), docking and harbor facilities and all

4   other loading and off-loading facilities, (hereinafter collectively "Iran") due from the following

5   shipping companies, freight forwarders, shipping agents, importers, ocean-going carriers, tankers,

6   and other transportation and shipping companies, ocean-going shipping lines (hereinafter

7   collectively "SHIPPING COMPANIES"):

8       A.    BALAJI SHIPPING (U.K.) Shipping (Orient Express Lines Limited).
    B.    CHINA OCEAN SHIPPING (GROUP) COMPANIES (COSCO CONTAINER

9              LINES CO. Ltd.).
    C.    CHINA SHIPPING (GROUP) company (CHINA SHIPPING CONTAINER LINES

10             COMPANY Ltd.).
    D.    CMA CGM The French Line.

11      E.    CSAV (COMPANIA SUD AMERICANA DE VAPORES, S.A.) (also dba
           EUROATLANTIC CONTAINER LINE); Norasia Container Line Ltd.; Comanhia

12             Libra De Navegacao (and also d.b.a. Braztrans Lines).
    F.    CHUN LEE SHIPPING.

13      G.    EMIRATES SHIPPING LINES.
    H.    EVERGREEN LINE.

14      I.    HANJIN SHIPPING (THAILAND).
    K.    HAMBURG SUD (AG).

15      L.    HAPAG LLOYD AG.
    M.    HYUNDAI MERCHANT MARINE CO. Ltd.

16      N    Kawasaki Kisen Kaisha Ltd. ("K" Line)
    O.    "K" LINE (China) Ltd.

17      P.    "K" LINE (THAILAND) Ltd.
    Q.    MAERSK LINE (A.P. MOLLER-MAERSK, A/S).

18      R.    MEDITERRANEAN SHIPPING COMPANY (MSC).
    S.    MITSUI O.S.K. LINES Ltd.

19      T.    NMT SHIPPING LINES.
    U    NYK LINES.

20      V.    ORIENT OVERSEAS CONTAINER LINE (OOCL).
    W.    Pacific International Lines (Pte) Ltd.

21      X.    PDZ HOLDINGS BHD.
    Y.    SIMATECH SHIPPING LLC.

22      Z.    WAN HAI LINES Ltd.
    AA.    YANG MING MARINE TRANSPORT CORPORATION .

23      BB.    Any other person or party acting as freight forwarder, broker, agent, representative,
           of financier acting in concert with these SHIPPING COMPANIES.

24

25      (And all others, hereinafter collectively "SHIPPING COMPANIES")

26  These fees and rights to payment of money consist of 1) SHIPPING AND DOCK FEES, which

27  consist of charges imposed by Iran and through the charges imposed by PORTS & SHIPPING

    ORGANIZATION of Iran (or other agencies and instrumentalities  for the general purpose of
28

1   transporting, delivering, picking up, loading any products, such as any goods, containers, bulk

2   goods, gasoline, refined petroleum products or any other products; or 2) utilizing the harbors,

3   docks, terminals, warehouse, wharfs, barges, tugboat, cleaning, garbage and refuse, diving

4   facilities and services, container services, cargo services, duties and tariffs, along with any and all

5   other services as set forth by way of various Tariffs, Rules and price schedules.

6          2. For an order compelling the assignment of all of the monies due Iran from the various

7   SHIPPING COMPANIES, the transactions as set forth therein, and that the payments otherwise

8   due Iran, shall be paid to and on behalf of Plaintiffs, by a check, draft, money order or wire

9   transfer, payable to the order of DEBORAH D. PETERSON, Personal Representative of the Estate

10  of James C. Knipple (Dec.), as a representative for and on behalf of the Plaintiffs in the above-

11  entitled action, that such funds be forwarded to David J. Cook, Esq., Cook Collection Attorneys,

12  P.L.C., 165 Fell Street, San Francisco, CA 94102, and/or P.O. Box 270, San Francisco, CA 94104,

13  Telephone No. (877) 989-4730, until the total of the judgment in the above-entitled action be paid

14  in full herein.

15         The basis of this motion is that Iran charges SHIPPING COMPANIES fees and charges in

16  the use of Iranian docks, harbors, unloading facilities, terminals, warehouses, storage facilities, use

17  of barges, tugboats, cleaning services, and other related harbor services in the general movement,

18  loading and unloading of cargo, freight, bulk goods, dry goods, agricultural products, along with,

19  gasoline, refined petroleum products, such as diesel, jet fuel, among others; that IRAN charges

20  various fees for the use of harbors and docks; that the SHIPPING COMPANIES, among others,

21  pay these charges, which are assignable to Plaintiffs for purposes of satisfaction of this judgment.

22  Given the repeal of the Foreign Sovereignty Immunities Act and that Iran is now subject to levy

23  and execution, all of the payment and each of the same due from the SHIPPING COMPANIES

24  should therefore be paid to Plaintiffs for the outstanding judgment herein.

25         This motion is based upon this Motion, the attached Notice, Memorandum of Points and

26  Authorities, Declaration of David J. Cook, Esq., upon all pleadings, papers and other matters on

27  file herein, all matters which this court may take judicial notice hereof, which include but are not

28

1  limited to, all papers, pleadings and other matters on file herein in that certain action known as

2  *DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple (Dec.), et*

3  *al., vs. ISLAMIC REPUBLIC OF IRAN, et al.*, United States District Court for the District of

4  Columbia, Consolidated Civil Actions: 01-2094 (RCL) and 01-2684 (RCL), all other matters

5  which the court may take judicial notice thereof, and upon all oral evidence and argument which

6  may be presented at the hearing hereof.

7  DATED:  April 29, 2008                    COOK COLLECTION ATTORNEYS

8
                                            By:  /s/ David J. Cook
9                                           DAVID J. COOK, ESQ. (SB# 060859)
                                            Attorneys for Plaintiffs
10                                          DEBORAH D. PETERSON, Personal
                                            Representatives of the Estate of James C. Knipple
11                                          (Dec.), et al.

12
   F:\USERS\DJCNEW\peterson.assign.dockfees
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **DAVID J. COOK, ESQ. (State Bar # 060859)**
**ROBERT J. PERKISS, ESQ. (State Bar # 62386)**
2 | **COOK COLLECTION ATTORNEYS**
**A PROFESSIONAL LAW CORPORATION**
3 | 165 Fell Street
San Francisco, CA  94102
4 | Mailing Address: P.O. Box 270
San Francisco, CA  94104-0270
5 | Tel.: (415) 989-4730
Fax: (415) 989-0491
6 | File No. 52,759

7 | Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
8 | of the Estate of James C. Knipple (Dec.), et al.

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | SAN FRANCISCO DIVISION

12 |

13 | DEBORAH D. PETERSON, Personal        )    CASE NO. 3:08-mc-80030-JSW
Representative of the Estate of James C.  )
Knipple (Dec.), et al.,                  )    MEMORANDUM OF POINTS AND
14 |                                      )    AUTHORITIES IN SUPPORT OF MOTION
                 Plaintiffs,             )    FOR ASSIGNMENT OF RIGHTS PURSUANT
15 |                                      )    TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
vs.                                       )
16 |                                      )    **[SHIPPING AND DOCK FEES and**
ISLAMIC REPUBLIC OF IRAN, et al.,        )    **BUNKERED FUEL SALES]**
17 |                                      )
                 Defendants.             )    Date:  May 30, 2008
18 | _____     )    Time: 9:00 a.m.
                                               Courtroom: 17, 16th Floor
19 |                                            Judge: Jeffrey S. White

20 | **I. INTRODUCTION.**

21 | Plaintiffs have filed this action to seek redress for the bombing of the Marine Barracks in

22 | Beirut, Lebanon in 1983.  Suit was filed on 10/3/01 and service of process was effectuated, in

23 | which Iran defaulted.  This court conducted a number of hearings and entered a series of Opinions,

24 | including the MEMORANDUM OPINION of 5/30/03, marked *Exhibit "A,"* in which Judge

25 |

26 |

27 |

28 |

1  Lamberth wrote in that Opinion, as follows:[1]

2     "These actions arise from the most deadly state-sponsored terrorist attack made
      against American citizens prior to September 11, 2001; the Marine barracks
3     bombing in Beirut, Lebanon on October 23, 1983. In the early morning hours of
      that day, 241 American servicemen were murdered in their sleep by a suicide
4     bomber. On that day, an unspeakable horror invaded the lives of those who
      survived the attack and the family members whose loved ones had been stolen from
5     them. The memory of that horror continues to this day." (Exh. A, ¶ 1.)

6     Thereafter on 9/7/07, the court entered a second MEMORANDUM OPINION and

7  JUDGMENT marked *Exhibits "B" and "C,"* in which the court granted judgment on behalf of

8  Plaintiffs in the amount of $2,656,944,877.00. Individual parties in fact appealed, but these

9  appeals were dismissed without prejudice by an order from the Court of Appeal, District of

10 Columbia on February 23, 2008. The court stated as follows:

11    "C.    The Attack
             As testified by Mahmoud, after the meeting in Baalbek, a 19-ton truck was
12    disguised so that it would resemble a water delivery truck that routinely arrived at
      the Beirut International Airport, which was located near the U.S. Marine barracks in
13    Beirut, and modified the truck so that it could transport an explosive device. On the
      morning of October 23, 1983, members of Hezbollah ambushed the real water
14    delivery truck before it arrived at the barracks. An observer was placed on a hill
      near the barracks to monitor the operation. The fake water delivery truck then set
15    out for the barracks, driven by Ismalal Ascar, an Iranian.

16           At approximately 6:25 a.m. Beirut time, the truck drove past the Marine
      barracks. As the truck circled in the large parking lot behind the barracks, it
17    increased its speed. The truck crashed through a concertina wire barrier and a wall
      of sandbags, and entered the barracks.²¹ When the truck reached the center of the
18    barracks, the bomb in the truck detonated.

19           The resulting explosion was the largest non-nuclear explosion that had ever
      been detonated on the face of the Earth. The force of its impact ripped locked doors
20    from their door jambs at the nearest building, which was 256 fee away. Trees
      located 370 feet away were shredded and completely exfoliated. At the traffic
21    control tower of the Beirut International Airport, over half a mile away, all of the
      windows shattered. The support columns of the Marine barracks, which were made
22    of reinforced concrete, were stretched, as an expert witness described, "like rubber
      bands," the explosion created a crater in the earth over eight feet deep. The four-
23    story Marine barracks was reduced to fifteen feet of rubble.

24           The force of the explosion was equal to between 15,000 to 21,000 pounds of
      TNT. FBI and ATF explosives experts both concluded that the explosive material
25

26    _____
       [1] All exhibits are incorporated by reference as though fully set forth in this Memorandum
27    in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed
      contemporaneously herein.
28
      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF
      RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES AND
      BUNKERED FUEL SALES] - CASE NO. 3:08-mc-80030-JSW                              2

1    was "bulk form" pentaerythritol tetranitrate, or PETN. Danny A. Defenbaugh, the
     on-scene FBI forensic explosive investigator, testified as to his findings:

2
            [W]e were able to, through the forensic residue analysis, identify the
3           explosive material, and it was unconsumed particles of PETN
            . . . .
4
            PETN is a primary explosive that is manufactured
5       commercially and primarily for U.S. military purposes. It is a
        primary explosive that is used in detonating cord. Detonating cord is
6       nothing more than a plastic and fiber-wrapped cord that has the
        PETN, which looks like a white power . . . that is then extruded
7       inside that cord . . . .
            In this case, it was not [consumed]; we found unconsumed
8       particles of PETN. That was just like we had found also in the
        American Embassy bombing. What that means is that it had to have
9       been from a bulk explosive, it had to have been from a
        manufacturer." (P. 16 of 30)
10
                        II.  **THE ASSETS OF IRAN ARE NOW SUBJECT**
11                           **TO ENFORCEMENT OF A CIVIL JUDGMENT.**

12         Prior to approximately January 2008, a Judgment Creditor of a foreign state such as Iran

13   was greatly hobbled in any attempt by which to recover, based upon the Foreign Sovereignty

14   Immunities Act ("FSIA") and various exceptions, in which, e.g., "blocked assets" might be subject

15   to levy and execution. Unfortunately, blocked assets were "few and far between," making

16   collection of any judgment like this extremely problematical, at best.

17         Congress, recognizing that the Marines needed to be compensated, ultimately enacted an

18   amendment of the FSIA designed to facilitate the collection through enactment to 28 U.S.C. §

19   1605A. The key parts of that new section permitting meaningful collection efforts are found in 28

20   U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

21        "(a) IN GENERAL. --
            "(1) NO IMMUNITY. – A foreign state shall not be immune from the
22       jurisdiction of courts of the United States or of the States in any case not otherwise
         covered by this chapter in which money damages are sought against a foreign state
23       for personal injury or death that was caused by an act of torture, extrajudicial
         killing, aircraft sabotage, hostage taking, or the provision of material support or
24       resources for such an act if such act or provision of material support or resources is
         engaged in by an official, employee, or agent of such foreign state while acting
25       within the scope of his or her office, employment, or agency."

26        "(g) PROPERTY IN CERTAIN ACTIONS –
            "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign
27       state against which a judgment is entered under section 1605A, and the property of

28

an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –

      "(A) the level of economic control over the property by the government of a foreign state;

      "(B) whether the profits of the property go to that government;

      "( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

      "(D) whether that government is the sole beneficiary in interest of the property; or

      "(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

      "(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Accordingly, the FSIA no longer serves as a bar, and the assets of Iran are now subject to clear levy and execution.

## III. LOCAL DOCKETING.

Plaintiffs have registered the judgment with the United States District Court, Northern District of California, Case No. 3:08-mc-80030-JSW, a copy of an ABSTRACT OF JUDGMENT marked *Exhibit "D."* The basis of registering the judgment under 28 U.S.C. § 1963 is the good faith belief that in fact assets of Iran might be subject to levy and execution in the Northern District of California. Plaintiffs have in fact commenced a campaign of levies upon, among others, UBS AG, Credit Suisse, Bank of Tokyo Mitsubishi UFJ, Mizuho Corporate Bank, Sumitomo Mitsui Banking Company, along with a series of other banks, and along with a levy upon the Boeing Company. The purpose of these levies is to reach any and all monies (or property) which may be due and owing Iran. Plaintiffs have already served the bulk of these levies, and is receiving partial responses.

## IV. NATURE OF ASSETS SUBJECT TO LEVY AND EXECUTION.-TARIFFS AND DOCKET FEES AND CHARGES.

1      Plaintiffs have determined through a multitude of sources, which include the individual

2  shipping schedules and other websites, and other sources, that the following SHIPPING

3  COMPANIES transport, handle, deliver, pick up, load and offload products, such as and including

4  general cargo, containers, bulk goods, dry goods, agricultural products, and other products which

5  may include, but are not limited to, gasoline and refined petroleum products through Iranian

6  harbors, docks terminals and off loading facilities:

7
|  |  |
|---|---|
| A. | BALAJI SHIPPING (U.K.) Shipping (Orient Express Lines Limited). |
| B. | CHINA OCEAN SHIPPING (GROUP) COMPANIES (COSCO CONTAINER LINES CO. Ltd.). |
| C. | CHINA SHIPPING (GROUP) company (CHINA SHIPPING CONTAINER LINES COMPANY Ltd.). |
| D. | CMA CGM The French Line. |
| E. | CSAV (COMPANIA SUD AMERICANA DE VAPORES, S.A.) (also dba EUROATLANTIC CONTAINER LINE); Norasia Container Line Ltd.; Comanhia Libra De Navegacao (and also d.b.a. Braztrans Lines). |
| F. | CHUN LEE SHIPPING. |
| G. | EMIRATES SHIPPING LINES. |
| H. | EVERGREEN LINE. |
| I. | HANJIN SHIPPING (THAILAND). |
| K. | HAMBURG SUD (AG). |
| L. | HAPAG LLOYD AG. |
| M. | HYUNDAI MERCHANT MARINE CO. Ltd. |
| N | Kawasaki Kisen Kaisha Ltd. ("K" Line) |
| O. | "K" LINE (China) Ltd. |
| P. | "K" LINE (THAILAND) Ltd. |
| Q. | MAERSK LINE (A.P. MOLLER-MAERSK, A/S). |
| R. | MEDITERRANEAN SHIPPING COMPANY (MSC). |
| S. | MITSUI O.S.K. LINES Ltd. |
| T. | NMT SHIPPING LINES. |
| U | NYK LINES. |
| V. | ORIENT OVERSEAS CONTAINER LINE (OOCL). |
| W. | Pacific International Lines (Pte) Ltd. |
| X. | PDZ HOLDINGS BHD. |
| Y. | SIMATECH SHIPPING LLC. |
| Z. | WAN HAI LINES Ltd. |
| AA. | YANG MING MARINE TRANSPORT CORPORATION . |
| BB. | Any other person or party acting as freight forwarder, broker, agent, representative, of financier acting in concert with these SHIPPING COMPANIES. |

(And all others, hereinafter collectively "SHIPPING COMPANIES")

Many (but not all) of these SHIPPING COMPANIES also dock in United States harbors,

ports, terminals and other locales subject to United States jurisdiction. Many of these SHIPPING

COMPANIES are ostensibly subject to the United States jurisdiction for an entire range of issues,

1    such as commerce, entry in the U.S. territorial waters, compliance with U.S., State and local

2    environmental laws, and compliance with an entire array of maritime laws, shipping and other

3    laws.

4         The Ministry of Roads and Transportation generally oversees the PORTS & SHIPPING

5    ORGANIZATION (P.S.O.)of Iran who manage the docks, harbors and related facilities, which is

6    confirmed by the website the P.S.O. marked *Exhibit "E."*

7         Iran charges these SHIPPING COMPANIES an entire array of charges for the privilege of

8    utilizing Iranian docks, harbors, terminals and other maritime facilities, all hereinafter collectively

9    "DOCK FEES." This label is illustrative as seen by, for example, the entire range of charges

10   imposed by Iran through its Manual of Tariffs Applicable to Vessels and Cargo in the Ports of the

11   Islamic Republic of Iran, marked *Exhibit "F."* These Tariffs, per *Exhibit "F"* are in addition to

12   rates and charges of "SPECIAL ECONOMIC ZONE FOR THE PORT OF AMIRABAD." marked

13   *Exhibit "G"*: the rates and charges of Port of Bushehr is marked *Exhibit "H"*; the rates and

14   charges of the Port of Nowshadr is marked *Exhibit "I."* For purposes of illustration, these fees

15   cover an entire array of services: duties, pilotage charges, charges for garbage collection, dredging

16   charges, wharfage charges, charges for towage, charges for bilge water, overtime charges, entry

17   duties, unloading and loading charges, towage charges, light duties, duties and port charges for

18   non container cargo's, stevedoring charges, storage charges, charges for containers, repositioning

19   the container on the vessel, moving, loading and unloading the containers, crane standby, label

20   removing, flat rocking of the container, tarpaulin covering of the open top container,

21   administrative and current charges, plumbing charges, time renting of equipment, lashing and

22   unlashing charges, quarantine service charges, communications charges, diving charges, collecting

23   and cleaning oil charges, registry duties of a vessel registry of transactions on ships and vessels,

24   and many others. This list is illustrative, but set out in great detail in *Exhibits "F," "G," "H," and*

25   *"I."*

26        To offload or load products of any type in the docks and harbors of Iran would require

27   payment of fees and charges imposed by P.S.O. and therefore constitute an account, account

28

1  receivable, right to payment of money or general intangible in favor of Iran and therefore subject

2  to levy and execution. Any one or all of these SHIPPING COMPANIES (or their agents,

3  representatives or others on their behalf as their agent) would be indebted to Iran for payment for

4  these related services. Iran is no longer protected by the FSIA, and therefore any amounts due

5  from these SHIPPING COMPANIES are subject to assignment under C.C.P. § 708.510(a).

6        Plaintiffs can enforce this order in that the SHIPPING COMPANIES service U.S. ports,

7  have local agents and representatives, transport products from the United States to foreign

8  countries, transport products from foreign countries to the United States.  Many of these ships are

9  seen lining up in local ports clearly displaying their name on the side of large container ships such

10  as EVERGREEN, HAPAG LLOYD, OOCL, YANG MING etc.

11        V.  **ADDITIONAL ASSETS SUBJECT TO LEVY AND EXECUTION:**

12            **BUNKERED FUEL.**

13        The National Iran Oil Products Distribution Co., which is a subsidiary of the Ministry of

14  Petroleum of the Islamic Republic of Iran sells approximately two million tons of BUNKERED

15  fuel to approximately 3,500 foreign ships which visit various harbors, docks, off loading,

16  terminals, wharfs and other marine facilities of Iran, in which some or all of these ships are owned

17  and operated by the SHIPPING COMPANIES, which are the subject of this motion.  This

18  information comes from P.S.O. News, dated Sept. October, 2007, No 2, at page 12, a copy of

19  which is attached hereto, marked *Exhibit "J"* and incorporated by reference which states as

20  follows:

21        "According to the National Iranian Oil Products Distribution Co.'s plans Islamic Republic
22        of Iran set a goal to boost its incom[e] deriv[d] from ship bunkering to 1 billion USD
          annually.

23        Eng. Ahmadinezhad Vice president of National Iranian Oil Products Distribution Company
          stated: "According to P.S.O. statistics 3,500 foreign ship and 2,200 domestic ships of
24        above 1000 DWT call the Iranian souther ports annually and as a result Iran enjoys the
          lucrative regional market of the Persian Gulf and the Oman Sea." He added "by the end of
25        the current year with 2000 foreign ships added to the Iranian ships now bunkering by
          NIOPD Company, *2 million tons of BUNKERED fuel will be sell by the company which*
26        *will generate 640 million USD of income to the country."*  (Emphasis added)

27        He continued: NIOPDC has set a goal to boost the country's income from bunkering to 1

28

1   billion USD annually by 2010."

2   The National Iranian Oil Products Distribution Company is a subsidiary of the National Iranian Oil

3   Refining and Distributing Co., which is part of the Ministry of Petroleum of the Islamic Republic

4   of Iran per the attached download, marked ***Exhibit "K"*** and which is attached hereto and

5   incorporated herein.[2]

6       Common experience would suggest that some (or all) of the SHIPPING COMPANIES

7   make up some part or all of the "foreign ships," who purchase BUNKERED fuel from the National

8   Iranian Oil Distribution Co., and accordingly any monies which would be due or owed to Iran for

9   the purchase of the BUNKERED fuel, under this assignment order, would now be due to the

10  Plaintiffs. The revenue stream of $640,000,000, turned over to Plaintiffs, would start the process

11  of ameliorating Plaintiffs' terrible losses and moreover commence the process of financial

12  restitution.

13      Iran should have little to complain. Iran gambled in choosing to refrain from participating

14  in the underlying litigation, presumptively believing that Plaintiffs could never under former FSIA

15  collect, and felt secure that the judgment would be nothing more than just a piece of paper.

16  Congress in abolishing FSIA which protected Iran's assets upset Iran's gamble, now making Iran's

17  assets, including its BUNKERED sales, which are vulnerable to classic levy and execution.

18                  **VI. THIS IS THE MOST EFFECTIVE REMEDY.**

19      This is not the first time that tort victims on a massive basis have sought assistance through

20  an Assignment under C.C.P. § 708.510(a), which is exactly the remedy sought by the victims of

21  Ferdinand Marcos in the case of ***Estate of Ferdinand Marcos Human Rights Litigation***, 910 F.

22  Supp. 1470 (D. Hawaii Court, 1995) in which the court permitted the use of a California

23  Assignment order to reach bank accounts in Switzerland from Swiss bank which has a U.S. nexus.

24  The court stated as follows:

25  _____

26      [2] BUNKERED fuel is technically any type of fuel oil used aboard ships. It gets its name
    from the containers (known as BUNKERED Tanks) on ships and in ports that it is stored in. called
27  bunkers.

28
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF
    RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES AND
    BUNKERED FUEL SALES] - CASE NO. 3:08-mc-80030-JSW                                    8

"B. Court's Implied Power to Assign

First, implicit in the power to enforce a judgment is the power to use all legal means to provide relief to judgment creditors in an appropriate case. Assignment of funds is one of those means.

See *Chicago Pneumatic Tool Co. v. O.V. Stonestreet, et al.,* 107 F.R.D. 674 (S.D.W.Va.1985). In that case the plaintiff requested that the defendant be required,

"to convey or assign to the United States Marshal for the Southern District of West Virginia, such money, bank notes, securities, evidences of debt, other personal property, chooses in action or other intangible personal property as may be ordered by the said commissioner for enforcement and payment of the judgment including interest and costs, outstanding in the above matter." *Id.* at 676. [4]

Despite defendant's arguments about limitations on the power of magistrate judges, not here relevant, the Court concluded that in entry of any order requiring the debtor to transfer property to the creditor, the magistrate would only facilitate the District Court's inherent power to enforce plaintiffs' judgment.

Similarly this Court has the inherent power to order the Estate to assign its rights, title and interest to the Swiss bank accounts to plaintiffs, given the uncontroverted evidence that those assets belong to the debtor Estate.

An equally compelling basis for ordering the assignment is FRCP 69(a), also relied upon in *Chicago Pneumatic, supra.*

C. FRCP 69(a)

Federal Rule of Civil Procedure 69(a) provides,

"Process to enforce a judgment for the payment of money shall be a writ of execution, *unless the court directs otherwise.* The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." F.R.C.P. 69(a) (emphasis by the court)

In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La, Inc.,* 1993 WL 414664, 1993 U.S.Dist. LEXIS 14450 (E.D.La.1993), plaintiff moved the Court to enter an order directing the sale of the rights and interest of the Partnership in a case where judgment had been entered a year earlier. The District Court looked to Louisiana law as the law of the state in which the action occurred. Applying the appropriate statute [5], the Court ordered judicial sale of the property by the United States Marshal. Similarly, in *Moseley Assoc. v. Brown,* 1988 WL 68149, 1988 U.S.Dist. LEXIS 5662 (S.D.N.Y.1988), the district court looked to state law, then New York Debtor and Creditor Law, to order defendants to satisfy plaintiffs' judgment out of funds which had been transferred to them.

The question here is what state's law applies to enforcement mechanisms and thus to whether assignment may be ordered.

In this case, the judgment was entered and an order was signed transferring the matter to other districts for the purpose of execution. The only district in which a transfer was sought and the judgment registered was the Central District of California, the location of branches of the Swiss banks holding the money here at issue. The Swiss banks branches are located in Los Angeles, plaintiffs are conducting judgment debtor discovery in California, and all discovery disputes are before this Court in the Central District of California. Under these circumstances, California law should apply since the matter is now in California, solely for the purpose of executing the judgment. Moreover, Hawaii law is consistent with this disposition.

D. California Law

California law on assignment of right to payment in enforcement of a judgment provides,

"Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor or to a receiver appointed pursuant to Article 7 (commencing with Section

1    708.610) all or part of a right to payment due or to become due, whether or not the
     right is conditioned on future developments. . . . " CAL.CIV.PROC.CODE section
2    708.510 (West 1987).

3    Case law interpreting this statute has consistently upheld a courts' power to require debtors
     to assign their interests in debts or other property. See, e.g., *Philippine Export and Foreign*
4    *Loan Guarantee Corp. v. Chuidian,* 218 Cal.App.3d 1058, 267 Cal.Rptr. 457 (6 Dist.1990).
     *See generally,* 8 Witkin. Cal.Procedure (3d ed. 1985), Enforcement of Judgments. §§ 299
5    and 300: *Civil Procedure; enforcement of judgments,* 14 Pacific L.J. 397, 431 (1983).
     Similarly. here CCP 708.510 and its case law exegesis permit an order of assignment of the
6    Estate's interests in the Swiss accounts for the benefit of the judgment creditors. class
     action plaintiffs.
7    **III. CONCLUSION**
     For all of the above reasons. the defendant Estate by Imelda Marcos and Ferdinand
8    Marcos, Jr. are ordered to forthwith execute an assignment of the funds in the respective
     Swiss banks in favor of the class and individual plaintiffs. In default thereof the clerk of the
9    court is ordered to execute the assignment on behalf of the judgment debtor. (Page 1472)

10   Paramount in that case was the fact that the bank accounts were located in Switzerland, but

11   the court ordered the assignment as Swiss banks had branches in Los Angeles.  The purpose of an

12   assignment order is to replace the judgment debtor with the judgment creditor as the obligee in the

13   underlying obligation and entitled the judgment creditor to payment of the debt owed by the

14   obligor.  This is precisely the remedy anticipated by C.C.P. § 708.510 in permitting the court to

15   assign to the Plaintiff any monies due to the judgment debtor owed by its obligors, which is the

16   result reached in ***Estate of Ferdinand Marcos Human Rights Litigation***, *supra.*

17                    **VII.  WHICH  LAW APPLIES.**

18   Plaintiffs seek to enforce the judgment under F.R.C.P. 69(a)(1) amended as of 12/1/07, and

19   employ the laws of the domicile. specifically being the laws of the State of California. which

20   provides as follows:

21   Rule 69. Execution
     (a) In General.
22   (1) Money Judgment; Applicable Procedure.
     A money judgment is enforced by a writ of execution. unless the court directs
23   otherwise. The procedure on execution — and in proceedings supplementary to and
     in aid of judgment or execution — must accord with the procedure of the state
24   where the court is located. but a federal statute governs to the extent it applies.

25   This entire issue was discussed in detail in ***Clark vs. Wilbur, supra***, in which the court was faced

26   with the issue whether the laws of the original domicile applied, or the "transplanted domicile," in

27   which the judgment was being enforced.  The court answered this at 913 F.Supp. 463 at page 467,

28

1  in which the court stated as follows:

2      "Defendants assert Florida law should be applied in determining if the assets in
        question are exempt from a turnover order. Plaintiff seeks application of West
3      Virginia law. *Rule* 69(a) provides in pertinent part as follows:

4      The procedure on execution. in proceedings supplementary to and in aid of
        judgment, and in proceedings on and in aid of execution *shall be in accordance*
5      *with the practice and procedure of the state in which the district court is held,*
        *existing at the time the remedy is sought . . . Id.* (emphasis added). The mandate
6      requiring resort to the law of the state where the district court is held applies to
        questions relating to whether assets are exempt from collection. [8] *See, e.g..*
7      *Chicago, Rock Island & Pac. Ry. Co. v. Sturm,* 174 U.S. 710, 717. 19 S.Ct. 797,
        800, 43 L.Ed. 1144 (1899) (stating "[e]xemption laws are ... part of the remedy and
8      subject to the law of the forum"); *Johns v. Rozet,* 826 F.Supp. 565, 567
        (D.D.C.1993): *Pallante v. Int'l Venture Invs.. Ltd.,* 622 F.Supp. 667. 668 (N.D.Ohio
9      1985) (stating "[g]enerally ... questions of exemption are determined solely by the
        laws of the forum"); *Marine Midland Bank v. Surfbelt, Inc.,* 532 F.Supp. 728, 729
10     (W.D.Pa.1982) (stating "the law of the forum governs questions of exemption"): 11
        Thomas J. Goger et al.. *Federal Procedure* § 31:21 (1982). Defendants have cited
11     no authority to the contrary in support of their position and the Court has located
        none. Accordingly, the Court concludes West Virginia law controls the question of
12     whether the requested assets are exempt. The Court must now determine whether
        the requested assets are exempt under West Virginia law."

13
        Traditional choice of law principles mandate, along with F.R.C.P. 69(a)(1), that the
14
   judgment creditor is entitled to exercise the rights and remedies of the forum jurisdiction. rather
15
   than the original jurisdiction.  The Restatement of Conflicts of Laws rejects this claim as follows:
16
17     "The majority of courts agree with Mr. Justice McKenna and hold that in a garnishment
        proceeding, as elsewhere, *only the exemption laws of the forum are applicable.*" (Page
        1617).[3] (Emphasis added)
18
19 Here. Plaintiffs seek to enforce the remedies permitted under California, as opposed to District of

20 Columbia law.

21          VIII.  **MECHANISM OF AN ASSIGNMENT MOTION.**

22     Plaintiff seeks to employ the remedies permitted under C.C.P. § 708.510(a) which provides

   as follows:
23
24     "Except as otherwise provided by law, upon application of the judgment creditor on
        noticed motion, the court may order the judgment debtor to assign to the judgment creditor,
25     or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or
        part of a right to payment due or to become due, whether or not the right is conditional
        upon future developments, including but not limited to, the following types of payment:
26

27     _____

       [3] Exemptions do not travel.
28

1       1.    Wages due from the federal government that are not subject to withholding under an earnings withholding order.

2       2.    Rents.

3.    Commissions.

3       4.    Royalties.

5.    Payments due from a patent or copyright.

4       6.    Insurance policy loan value."

This assignment motion would reach all accounts, accounts receivable and rights to payment of money, whether owed now or owed in the future, from "account debtors" who may owe money to the underlying judgment debtor.

The Legislative Comment under C.C.P. § 708.510 indicates that the court has great flexibility in fashioning relief, which itself would enable Plaintiffs to serve the assignment order and obtain payment of amounts which are due or may be due in the future. The Legislative Comment provides as follows:

**Legislative Committee Comment – Assembly 1982 Addition**
Section 708.510 provides a new procedure for reaching certain forms of property that cannot be reached by levy under a writ of execution, such as the nonexempt loan value of an unmatured life insurance, endowment, or annuity policy. See Sections 699.720(a)(6), 704.100. It also provides an optional procedure for reaching assignable forms of property that are subject to levy, such as accounts receivable, general intangibles, judgments, and instruments. This section does not make any property assignable that is not already assignable. This remedy may be used alone or in conjunction with other remedies provided in this title for reaching rights to payment, such as execution, orders in examination proceedings, creditors' suits, and receivership. The use of this remedy is subject to limitations on the time for enforcement of judgment. See Sections 683.010-683.220.

The purpose of the assignment order is the same as a contractual assignment under C.C.P. § 708.530, which provides as follows:

**§ 708.530.**
(a) Except as provided in subdivision (b), the effect and priority of an assignment ordered pursuant to this article is governed by Section 955.1 of the Civil Code. For the purpose of priority, an assignee of a right to payment pursuant to this article shall be deemed to be a bona fide assignee for value under the terms of Section 955.1 of the Civil Code.
(b) An assignment of the right to future rent ordered under this article is recordable as an instrument affecting real property and the priority of such an assignment is governed by Section 1214 of the Civil Code.

The effect on the obligor's rights is found under C.C.P. § 708.540, which provides as follows:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES AND BUNKERED FUEL SALES] - CASE NO. 3:08-mc-80030-JSW    12

§ 708.540.
The rights of an obligor are not affected by an order assigning the right to payment until notice of the order is received by the obligor. For the purpose of this section, "obligor" means the person who is obligated to make payments to the judgment debtor or who may become obligated to make payments to the judgment debtor depending upon future developments.

Assignments are found under Civ.C. § 955.1, likewise which provides as follows:

§ 955.1.
(a) Except as provided in Sections 954.5 and 955 and subject to subdivisions (b) and ( c). a transfer other than one intended to create a security interest (paragraph (1) or (3) of subdivision (a) of Section 9109 of the Commercial Code) of any payment intangible (Section 9102 of the Commercial Code) and any transfer of accounts. chattel paper, payment intangibles, or promissory notes excluded from the coverage of Division 9 of the Commercial Code by paragraph (4) of subdivision (d) of Section 9109 of the Commercial Code shall be deemed perfected as against third persons upon there being executed and delivered to the transferee an assignment thereof in writing.
(b) As between bona fide assignees of the same right for value without notice. the assignee first giving notice thereof to the obligor in writing has priority.

An assignment order permit the judgment creditor to reach receivable due now. or due in the future. receivables which might be contingent, or uncertain, or receivables in which performance might still be due. as provided by the exact language of C.C.P. § 708.510(a).  On the other hand a levy would only reach accounts which are due at the time of the levy as indicated by such as cases as *FIRST CENTRAL COAST BANK, etc. vs. CUESTA TITLE GUARANTEE COMPANY, et al.,* 143 Cal.App.3d 12. 191 Cal.Rptr. 433 (Cal.App.2 Dist. 1983), the appellate court held that a premature [or late] levy did not reach the monies which were due at the time of a levy in that a levy constitutes a "snapshot" of any funds immediately due the debtor. The court stated as page 16 as follows:

"A debt which is uncertain and contingent in the sense that it may never come due and payable is not subject to garnishment. (Brunskill v. Stutman. supra. 186 Cal.App.2d 97, 8 Cal.Rptr. 910; *Clecak v. Dunn* (1928) 95 Cal.App. 537.)"

An assignment order reaches a broader range of property rights, including accounts which are contingent, or some performance which is due in the futures.  A levy, on the other hand, only reaches monies which are non contingent and in which the accounts are immediately due and

1 | payable. and without a defense.[4]

2 | An assignment order permits the judgment creditor to serve the order through the mails (or

3 | process servers) with the concurrent expense of individual levy and execution. An assignment

4 | order reaches money which is now due or might be due in the future, or in which payment is

5 | contingent (C.C.P. § 708.510(a)). while on the other hand a levy only reaches money due at the

6 | time and without condition.

7 | ## IX. CONCLUSION.

8 | Plaintiffs have suffered tremendous losses at the hands of a terrorist state. This motion.

9 | along with other process, seeks to collect this substantial judgment and start the process of

10 | recompense in which the source of payment arises from key assets of the state itself. which is

11 | revenues from the operation of its docks. harbors, terminals and other facilities. along with the sale

12 | of BUNKERED fuel.

13 | Plaintiffs are therefore entitled to such relief.

14 | DATED:  April 29. 2008          COOK COLLECTION ATTORNEYS

15 | By:  ___/s/ David J. Cook___
16 | DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs
17 | DEBORAH D. PETERSON. Personal
Representatives of the Estate of James C. Knipple
(Dec.), et al.

---

[4] Parenthically serving account debtors with an assignment order also reduces the cost of enforcement given a large number of actual and/or potential obligors. With an assignment order in hand. Plaintiffs can effectively reach the multitude of obligors through the mail, personal service or otherwise without the burden of docketing this judgment in the local district court. To the extent that the obligor might claim that the obligor is not subject to the U.S. jurisdiction (or the particular subsidiary), this is clearly a matter subject to the individual enforcement of the assignment order in a separate satellite proceeding. Whether or not the particular entity is (or is not) subject to the U.S. jurisdiction in this setting need not be precisely determined and the fact of any jurisdictional defense might well be the subject of waiver, consent. variations of jurisdiction such as "in rem" jurisdiction. See. however, *Shaffer vs. Heitner* 433 U.S. 186. 97 S. Ct. 2569. 53 L. Ed. 2nd. 683 (1977). C.C.P. Section 708.510 does not necessarily anticipate a full blown evidentiary hearing whether the obligor is subject to the U.S. jurisdiction but only the judgment creditor steps into the shoe of the judgment debtor for the sole purposes receiving payment of any obligation now due or due in the future. Jurisdiction defenses are typically the matter of civil litigation with the total panoply of civil discovery. Seeking an assignment from international Shipping Companies, many or all of whom are ostensibly subject to the U.S. jurisdiction serve the purpose of the assignment statute without predetermining the defenses (if any) of the obligors.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES AND BUNKERED FUEL SALES] - CASE NO. 3:08-mc-80030-JSW          14

1  **DAVID J. COOK, ESQ. (State Bar # 060859)**
   **ROBERT J. PERKISS, ESQ (State Bar # 62386)**
2  **COOK COLLECTION ATTORNEYS**
   **A PROFESSIONAL LAW CORPORATION**
3  165 Fell Street
   San Francisco, CA  94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA  94104-0270
5  Tel.: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52,759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12
   DEBORAH D. PETERSON, Personal      )    CASE NO. 3:08-mc-80030-JSW
13 Representative of the Estate of James C. )
   Knipple (Dec.), et al.,            )
14                                     )    PROOF OF SERVICE
                Plaintiffs,            )
15                                     )
   vs.                                 )
16                                     )
   ISLAMIC REPUBLIC OF IRAN. et al..  )
17                                     )
                Defendants.            )
18 _____ )

19
   *Via Email dr-ahmadinejad@president.ir*    MINISTRY OF ROADS AND
20 PRESIDENT DR. AHMADINEJAD               TRANSPORTATION
                                           Attn: MOHAMMED RAHMATI
21 ISLAMIC REPUBLIC OF IRAN                MINISTER OF ROAD AND
   Pasadaran Avenue                        TRANSPORTATION
22 Golestan Yekom                          Taleghani Avenue
   Teheran, Iran                           Tehran. Iran
23 ATTN: Responsible Officer
                                           ALI TAHERI
24 ISLAMIC REPUBLIC OF IRAN                DEPUTY MINISTER AND MANAGING
   Khomeini Avenue                         DIRECTOR
25 United Nations Street                   PORT & SHIPPING ORGANIZATION OF
   Teheran. Iran                           THE ISLAMIC REPUBLIC OF IRAN
26 ATTN: Responsible Officer               Building No. 2
                                           South Didar Street
27                                         Shahid Hagnai Expressway.Vanak Square
                                           Tehran. Iran
28

   PROOF OF SERVICE - CASE NO. 3:08-mc-80024-JSW                              1

1  NATIONAL IRANIAN OIL REFINING
   AND DISTRIBUTION COMPANY
2  Opposite of Arak Alley Ostad Nejatollahi
   Ave.
3  Zip Code 15989
   P.O. Box 15815/3499
4  Tehran, Iran
   email: Info@niordc.ir
5
   MINISTRY OF PETROLEUM OF THE
6  ISLAMIC REPUBLIC OF IRAN
   ATTN: RESPONSIBLE OFFICER
7  HAFEZ CROSSING
   Taleghani Avenue
8  Tehran, Iran

9  National Iranian Oil Products Distribution
   Company
10 Bahar St. Somaya Corner
   Tehran 15617/ 33315
11 P.O .Box 6165
   Tehran
12 ATTN: RESPONSIBLE OFFICER

13 NATIONAL IRANIAN OIL COMPANY
   ATTN: RESPONSIBLE OFFICER OR
14 AGENT FOR SERVICE OF PROCESS
   Hafez Crossing
15 Taleghani Avenue
   Tehran, Iran
16
           I declare:
17
           I am employed in the County of San Francisco, California. I am over the age of eighteen
18 (18) years and not a party to the within cause. My business address is 165 Fell Street. San
   Francisco. CA 94102. On the date set forth below, I served the attached:
19
           NOTICE OF MOTION AND MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT
20         TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [SHIPPING AND DOCK FEES and
           BUNKERED FUEL]
21
           MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND
22         F.R.C.P. 69(a) [SHIPPING AND DOCK FEES and BUNKERED FUEL SALES]

23         MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
           ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
24         [SHIPPING AND DOCK FEES and BUNKERED FUEL SALES]

25         DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF MOTION FOR
           ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
26         [SHIPPING AND DOCK FEES and BUNKERED FUEL SALES]

27 on the above-named person(s) by:

28

1  __XXX__  (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the
2  person(s) served above.

3  __XXX__  (BY EMAIL) Emailing addressed to the person's/company's email address listed above.
4
       I declare under penalty of perjury that the foregoing is true and correct.
5
       Executed on April 29, 2008.
6
7                                    /s/  Karene Jen
                                          Karene Jen
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE - CASE NO. 3:08-mc-80024-JSW

3