parental origin as their sibling, or if they are adopted by a shared parent. *Id.* (citing *Jones v. Jones*, 530 P.2d 34 (Ore. 1974) (declining to expand class entitled to recovery as direct beneficiaries under wrongful death statute beyond spouse and children of decedent so as to include as dependents-such as non-adopted stepchildren-a person to whom decedent had no legal obligation of support). Non-adopted step-siblings do not qualify as siblings because they are not of the same origin as their step-sibling, nor deemed of the same origin as their step-sibling under the law because they were not legally adopted. *Brown*, 309 S.E.2d at 590. Therefore, in Virginia non-adoptive step-siblings may not recover for pain and suffering arising out of an IIED claim because they are not deemed siblings under the law. *Cf. id. A fortiori*, a sibling-in-law-who has virtually no chance of being either adopted or of the same parental origin as the victim-may not recover for pain and suffering arising out of an IIED claim.

In this case, there is no evidence that Donald Rockwell was an adopted stepbrother to Michael Caleb Sauls. Therefore, Mr. Rockwell's claim for IIED fails for lack of standing, and must therefore be denied. Similarly, Messrs. Corry and Clark's claims must also be denied because, as a siblings-in-law, neither is deemed a sibling under the law. Accordingly, this Court finds that none of these three plaintiffs may recover for IIED as a sibling under Virginia law, and each of their IIED claims must be DISMISSED.

### e. *Victoria Prevatt-Wood*

Victoria Prevatt-Wood has already brought a claim against the defendants for conduct arising out of this attack. *See Prevatt*, 421 F. Supp. 2d at 152. Ms. Prevatt-Wood was awarded $2.5 million by this Court for her pain and suffering associated with the loss of her brother, Victor Mark Prevatt. *Id.* at 161. To allow her to seek additional damages would grant her

-22-

impermissible double recovery. Accordingly, her claim in this action must be DISMISSED.

                      *f.*     *Mary Jackowski*

     Mary Jackowski, stepmother to deceased serviceman James Jackowski, seeks to recover

for IIED for the death of James. Under New York law, however, "[n]either step-children nor

step-parents inherit property from each other." Erie County Bd. of Social Welfare v. Schneider

163 N.Y.S.2d 184, 186 (N.Y. Child Ct. 1957). Therefore, Mary Jackowski may only recover for

the death of James if she legally adopted James. There is no evidence in this case, however,

indicating that James was legally adopted by Mary. Therefore, she has no standing to bring a

claim for damages arising out of the death of her stepson. Accordingly, the claim brought by

Mary Jackowski must be DISMISSED.

                      *g.*     *Stepparents and Step-siblings of Donald H. Vallone, Jr.*

     Charles Phelps (stepfather to Donald H. Vallone, Jr.) and Charles Phelps, Jr. (stepbrother

to Donald H. Vallone, Jr.), Donna Beresford Vallone (stepmother to Donald H. Vallone, Jr.),

William Beresford (stepbrother to Donald H. Vallone, Jr.), Susan Beresford Vallone (stepsister to

Donald H. Vallone, Jr.), Natalie Lewis (stepsister to Donald H. Vallone, Jr.), and Michael

Beresford (stepbrother to Donald H. Vallone, Jr.) each seek recovery for IIED associated with the

death of serviceman Donald H. Vallone, Jr. in the attack at issue. As this Court has previously

found in *Heiser*, however, under California law, a stepparent lacks standing to recover for

intentional infliction of emotional distress in connection with a stepchild's death, where the

stepparent had not legally adopted the stepchild, and there was no indication that the stepparent

would have adopted the stepchild but for a legal impediment. *Heiser*, 466 F. Supp. 2d at 309-10

(citing Cal Civ. Proc. Code § 377.60; Cal. Prob. Code § 6402).

In this case, there is no evidence that either of the stepparents of Donald H. Vallone, Jr. legally adopted Donald H. Vallone, Jr., nor is there evidence that either would have adopted Donald but for a legal impediment. Accordingly, neither Charles Phelps nor Donna Beresford Vallone has standing to bring a claim for damages arising out of the death of their stepson, Donald H. Vallone, Jr. Therefore, the claim brought by Charles Phelps and Donna Beresford Vallone must be DISMISSED. By this same logic, and because the viability of the claims brought by the birth children of stepparents of the deceased (consequently, stepsiblings to the deceased) is dependent upon the viability of their parents' claim, the claims brought by Charles Phelps, Jr., William Beresford, Susan Beresford Vallone, Natalie Lewis Vallone, and Michael Beresford must also be DISMISSED due to a lack of standing to bring the claim.

### h.     *Donald Calloway*

Donald Calloway, brother-in-law to deceased serviceman Jess W. Beamon, seeks recovery for IIED arising out of his brother-in-law's death in the attack. Under Florida law, however, only plaintiffs who are the spouse, child, sibling, or parent of a decedent have standing to recover for intentional infliction of emotional distress even though plaintiffs were not present at the scene. *Williams v. City of Minneola*, 575 So.2d 683, 690 (Fla. App. 1991). Siblings-in-law do not fall within this category of eligible plaintifs. Accordingly, the claim brought by Donald Calloway must be DISMISSED for lack of standing.

### i.     *Richard Mason*

Richard Mason, stepfather to deceased serviceman Russell Cyzick, seeks to recover for IIED arising out of his stepson's death in the attack. Under West Virginia law, damages arising out of the death of an individual may be awarded to the surviving spouse and children of the

-24-

decedent, including adopted children and stepchildren, as well as the decedent's siblings, parents

and any persons who were financially dependent upon the decedent at the time of his or her

death. *See* W. Va. Code §§ 55-7-5, 55-7-6(b) (2007). Further, under West Virginia law, an

individual qualifies as a "legal parent" if that individual is "defined as a parent, by law, on the

basis of biological relationship, presumed biological relationship, legal adoption or other

recognized grounds, [such as financial dependence]." W. Va. Code, § 48-1-232 (2007). In this

case, the evidence shows that Russell Cyzick's birth mother married Richard Mason when

Russell was nearly eighteen years old. There is no evidence that Russell was either legally

adopted or financially dependent upon Richard Mason during what was left of his minor years.

Accordingly, Richard Mason lacks standing to bring a claim because he is not a "legal parent"

under West Virginia law. Therefore, this Court finds that Richard Mason's IIED claim must be

DISMISSED.

        5.     *Individuals with Valid Intentional Infliction of Emotional Distress Claims*

        Accordingly, the Court finds that the individuals listed in Appendix A to this opinion may

bring intentional infliction of emotional distress claims. *See* Appendix A.

        The Court will now turn its attention to damages for these IIED claims, as well as those

claims for battery and wrongful death.

II.    *Damages*

        A.    Damages Framework

        The validity of each claim having been assessed, the Court can now turn to the respective

amounts of damages associated with each valid claim before this Court. Under the FSIA, a

"foreign state shall be liable in the same manner and to the same extent as a private individual

under like circumstances." 28 U.S.C. § 1606. Therefore, plaintiffs are entitled to the typical

array of compensatory damages that may be awarded against tortfeasors in the plaintiffs'

respective domiciliary states. "In determining the appropriate compensatory damages for each

plaintiff's pain and suffering, this Court is guided not only by prior decisions awarding damages

for pain and suffering, but also by those which awarded damages for solatium." *Haim*, 425 F.

Supp. 2d at 71. This Court has previously looked to the nature of the relationship between the

family member and the victim in order to help determine the amount of each award. *See Blais*,

459 F. Supp. 2d at 59-60; *Haim* 425 F. Supp. 2d at 75.[24]   Parents of victims typically receive

awards similar in amount to those awarded to children of the victim. *See generally Heiser*, 466

F. Supp. 2d at 271-356 (awarding children and parents of a terrorist attack decedents $5 million

in pain and suffering damages). This award for parents and children of the decedents is typically

smaller than the award for pain and suffering damages provided to spouses, but is larger than

awards of pain and suffering damages to siblings. *See id.* (awarding spouses of decedents $8

million in pain and suffering damages, while awarding siblings to decedents $2.5 million).

Moreover, "families of victims who have died are typically awarded greater damages than

families of victims who remain alive." *Blais*, 459 F. Supp. 2d at 60 (quoting *Haim*, 425 F. Supp.

2d at 75).

　　　This Court finds that the damages framework set forth in *Heiser* to be an appropriate

---

[24] As noted previously, damages for pain and suffering have traditionally been available
to those members of the decedent serviceman's near relatives, which consists of his or her
immediate family. *See supra* Section I.C.2. "This Court defines one's immediate family as his
spouse, parents, siblings, and children. This definition is consistent with the traditional
understanding of one's immediate family." *Jenco*, 154 F. Supp. 2d at 36 n.8.

measure of damages for those family members of victims who died in this attack.[25] The Court

finds that the framework detailed in *Blais* is appropriate to help determine damages for those

surviving servicemen and their families seeking redress. *See Blais*, 459 F. Supp. 2d at 59.[26]

Accordingly, unless otherwise specifically addressed in Section B below, *see infra*

Section II.B., the Court finds that the following damages amounts for pain and suffering shall be

awarded to the plaintiffs who this Court deems to have standing to bring a valid cause of action.

First, in terms of lost wages due the servicemen in this case, the Court hereby ADOPTS all of the

financial calculations and recommendations made by the special masters as to lost wages.[27]

Those calculations for lost wages shall be specified in Appendix B to this opinion. Second,

unless otherwise specified in Section B below, the Court finds that the awards for pain and

suffering to the servicemen are appropriate and hereby ADOPTS them. Third, the Court finds

---

[25] In *Heiser*, family members of the servicemen who were killed in the 1996 Khobar Towers bombing brought various claims against the Islamic Republic of Iran, MOIS, and IRGC for their part in providing material financial and logistical support in bringing about the attack. *Heiser*, 466 F. Supp. 2d at 248-51. This Court awarded the valid claims brought by spouses of deceased servicemen $8 million in pain and suffering, parents and children of deceased servicemen $5 million, and siblings of deceased servicemen $2.5 million. *See generally Heiser*, 466 F. Supp. 2d at 271-356.

[26] As this Court stated in *Blais*:

> In cases that involve an attack where the victim survives, and where no captivity occurred, courts typically award a lump sum award based in large part on an assessment of the following factors: "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life."

*Id.*

[27] As mentioned above, *see supra* note 2, there are a few servicemen who have sought damages for pain and suffering incurred during the time at which they were alive after the attack and the time at which they died. Those claims will be addressed in Section II.B.1, *infra*.

-27-

that the appropriate amount of pain and suffering damages for the spouse of a deceased serviceman to be $8 million. Fourth, the Court finds that the appropriate amount of pain and suffering damages for the parents and children of a deceased serviceman to be $5 million, per individual.[28] Fifth, the Court finds that the appropriate pain and suffering damages award for each sibling in this case to be $2.5 million, per sibling. Siblings of half-blood to the servicemen in this case are presumed to recover as a full-blood sibling would–that is, they are entitled to $2.5 million–unless the law of the state in which they were domiciled at the time of the attack states that they are not entitled to so recover.[29] Next, the Court finds that the appropriate amount of damages for family members of surviving servicemen are as follows: spouse ($4 million); parents ($2.5 million); children ($2.5 million); siblings ($1.25 million).[30] Unless otherwise specified below in Section B, to the extent that the special masters have awarded a plaintiff more or less than the aforementioned respective award amounts based upon the plaintiff's relation to the serviceman, those amounts shall be altered so as to conform with the respective award amounts set forth in this paragraph.

---

[28] Each parent and child shall receive this amount. *See Heiser*, 466 F. Supp. 2d at 271-356.

[29] This Court will address the claims of those half-blood siblings whose award recommendations differ from the permissible awards under the respective state laws, *infra*. *See infra* Section II.B.3.

[30] The Court recognizes that the parents in *Blais* received $3.5 million for their IIED claims for pain and suffering damages associated with the aftermath of taking care of their son, who survived the attack on the Khobar Towers in 1996. *See Blais*, 459 F. Supp. 2d at 60. This exceptional award was given in light of the extremely severe and continuing nature of their son's maladies, and in light of the facts that their son was in a coma and vegetative state for a period of over five weeks. *Id.* at 59-60. Attention was also given to the fact that the parents in *Blais* gave up their jobs in order to take full-time care of their son. *Id.* at 60.

-28-

B.     Special Damages Cases

     1.     Pain and Suffering Amount for Deceased Servicemen Who Initially
          Survived Attack

The personal representatives and estates of deceased servicemen Alvin Burton Belmer,

Nathaniel Walter Jenkins, Luis J. Rotondo, Larry H. Simpson, Jr., and Stephen Tingley have

each sought damages for pain and suffering incurred during the time at which they were alive

after the attack and the time at which they died, in addition to the damages for lost wages and

earnings arising out of their respective wrongful death claims.  Several cases have awarded

damages for the victim's pain and suffering that occurred between the attack and the victim's

death shortly thereafter.  *Haim*, 425 F. Supp. 2d at 71-72 (citing *Eisenfeld v. Islamic Republic of

Iran*, 172 F.Supp.2d 1, 8 (D.D.C.2000) (Lamberth, J.); *Elahi v. Islamic Republic of Iran*, 124

F.Supp.2d 97, 112-13 (D.D.C.2000) (Green, J.).  When the victim endured extreme pain and

suffering for a period of several hours or less, courts in these cases have rather uniformly

awarded $1 million.  *Haim*, 425 F.Supp.2d at 71-72.  This award increases when the period of the

victim's pain is longer.  *Id.* at 72.  In line with this precedent, this Court recently awarded

$500,000 to a serviceman who survived a terrorist attack for 15 minutes, and was in conscious

pain for 10 minutes.

     The estate of Alvin Burton Belmer established before the special master that serviceman

Belmer was alive and conscious for nearly eight days (7 days and 20 hours).  The special master

recommended an award of pain and suffering of $15 million.  Though the Court recognizes Mr.

Belmer was under excruciating pain during that period of time, it is not prepared to adopt such a

recommendation.  In light of his nearly eight days of pain and suffering, this Court finds that the

estate of Alvin Burton Belmer should be awarded $7.5 million in pain and suffering, in addition to the amount of lost wages he is awarded.

Similarly, the estate of Nathaniel Walter Jenkins established before a special master that serviceman Jenkins was alive for seven days after the attack. The special master recommended that Mr. Jenkins be awarded $7 million for pain and suffering undergone by Mr. Jenkins during this period of time. The Court finds this award amount is appropriate and finds that the estate of Nathaniel Walter Jenkins should be awarded $7 million in pain and suffering, in addition to the amount of lost wages he is awarded.

The estate of Luis J. Rotondo established before a special master that serviceman Rotondo was alive for six hours after the attack. The special master recommended a pain and suffering damages award of $250,000. In keeping with the precedent set forth in *Haim*, the Court finds that Luis J. Rotondo is entitled to $1 million in pain and suffering damages, in addition to the amount of lost wages he is awarded.

The estate of Larry H. Simpson, Jr. established before a special master that serviceman Simpson was alive for nine years after the attack, living with severe injuries throughout that time. The special master recommended an award of pain and suffering damages of $2 million. In light of the fact that Mr. Simpson was saddled with injuries from this attack that plagued him until his death, but conscious of the fact that Mr. Simpson appears to have led a somewhat functional life after the attack, the Court finds that Mr. Simpson should be awarded $5 million in pain and suffering, in addition to the amount of lost wages he is awarded.

The estate of Stephen Tingley established before a special master that serviceman Tingley was alive for a short but unknown amount of time. The special master recommended a pain and

-30-

·

suffering damages award of $1 million. Though the Court is certain that Mr. Tingley endured a

great deal of pain during the minimal time he survived the attack, the Court is reluctant to grant

such an award without any definitive proof of a duration of time that Mr. Tingley was alive.

Therefore, this Court finds that Stephen Tingley is entitled to $500,000 in pain and suffering

damages, in addition to the amount of lost wages he is awarded.

        2.     Pain and Suffering Amount for Surviving Servicemen

      Each of the twenty six surviving servicemen have sought pain and suffering awards

associated with their claims for battery. In awarding pain and suffering damages, the Court must

take pains to ensure that individuals with similar injuries receive similar awards. Due to the

large number of plaintiffs represented in this action, the Court needed to enlist the help of many

different special masters to help calculate damages for each of the plaintiffs. Understandably,

each special master calculated pain and suffering damages differently, which resulted in varying

awards for varying maladies suffered by the surviving servicemen. Upon examination of the

nature of the injuries of each of the servicemen, the Court makes the following findings about the

pain and suffering damages for the twenty six surviving servicemen arising out of their respective

battery claims:

- Marvin Albright suffered compound fracture of his right leg, injuries to the toes on his left foot, wounds and scars from shrapnel, in addition to lasting and severe psychological harm as a result of the attack. Therefore, this Court finds that he is entitled to $5 million in pain and suffering;

- Pablo Arroyo suffered a broken jaw, severe flesh wounds and scars on his arms, legs and face, a loss of teeth, and lasting and severe psychological harm as a result

of the attack. Therefore, this Court finds that he is entitled to $5 million in pain and suffering;

- Anthony Banks suffered as a result of this attack loss of sight in one eye, a perforated right eardrum resulting in some hearing loss, and a shrapnel injury to the back of his right thigh. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $7.5 million in pain and suffering;

- Rodney Darrell Burnette was initially thought dead as a result of the attack, and was placed in a body bag, buried alive in the morgue for four days until someone heard him moaning in pain. His injuries from the attack include a closed head injury, a basilar skull fracture, a facial nerve palsy, rib injuries, a rupturing to the timpanic membrane in both ears, and injuries to both feet. He also suffered lasting and severe psychological problems from the attack. Accordingly, this Court finds that he is entitled to $8 million in pain and suffering;

- Glenn Dolphin suffered injuries in the back, arm and head from being hit with shrapnel from the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, the Court finds that he is entitled to $3 million in pain and suffering;

- Charles Frye was minimally injured from small arms fire occurring just after the initial bomb explosion, and has experienced resulting nerve pain and foot numbness. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $2 million in pain and

suffering. plus $200,000 in loss of earnings suffered;[31]

- Truman Dale Garner suffered as a result of the attack a shrapnel injury to the head, a subdural hematoma, a perforated right eardrum, crushed left ankle, collapsed left lung, and other shrapnel wounds that became infected. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $7.5 million in pain and suffering damages;

- Larry Gerlach suffered severe injuries including a broken neck, which has resulted in permanent quadriplegia. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $12 million in pain and suffering damages;[32]

- Orval Hunt suffered skull fractures, brain bruising, various broken bones in his leg, and an exposed Achilles tendon as a result of the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $8 million in pain and suffering damages;

- Joseph P. Jacobs suffered a shoulder injury, and still suffers from neck, shoulder and back pain to this day. He also suffered lasting and severe psychological problems from the attack, and has admitted to having problems with alcohol abuse. Therefore, this Court finds that he is entitled to $5 million in pain and

---

[31] Charles Frye admits that his physical injuries were minimal, and that he suffered severe psychological harm from the attack.

[32] *Cf. Mousa v. Islamic Republic of Iran*, 238 F. Supp. 2d 1, 12-13 (D.D.C. 2001) (Bryant, J.) (awarding $12 million to plaintiff with permanent and debilitating injuries, including complete deafness and blindness in one eye).

suffering damages;

- Brian Kirkpatrick suffered an eye injury, a perforated left ear drum, broken ribs, various shrapnel wounds, and the lining of his lungs were burned as a result of the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $8 million in pain and suffering damages;

- Burnham Matthews suffered a shrapnel wound in the forehead that destroyed the middle part of his nose, cuts to the head and back, and a perforated eardrum as a result of the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $7 million in pain and suffering damages;

- Timothy Mitchell suffered lacerations to the back of his head, back injuries, and has resulting chronic back pain and headaches as a result of the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $3 million in pain and suffering damages, in addition to $1,555,099 in lost wages;

- Lovelle "Darrell" Moore suffered a torn ear, broken leg, damaged foot, and cuts from shrapnel from the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $7 million in pain and suffering damages, in addition to $1,314,513 in lost wages;

- Jeffrey Nashton suffered a skull fracture, a shattered cheekbone, eyebrow and right eye orbit, crushed arms, a broken left leg, bruised right leg, two collapsed

-34-

lungs, burns on his arms and back, and internal bleeding. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $9 million in pain and suffering damages, in addition to $2,776,632 in lost wages;

- Paul Rivers suffered two broken eardrums, skin lacerations, burned skin, and knee damage from the attack. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $7 million in pain and suffering damages;

- Stephen Russell suffered a broken femur, hand and pelvis bone, and was covered in cuts and bruises from the attack. His left foot was turned completely backwards. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $7.5 million in pain and suffering damages, in addition to $1,752,749 in lost wages;

- Dana Spaulding suffered two broken clavicles, a broken middle ear which caused internal bleeding and continued vertigo, a punctured lung, bruised kidney, broken ribs, a severe laceration across his back, and a loss of his eyelashes. Moreover in the ten days after the attack, Dana was in a coma. He also suffered lasting and severe psychological problems from the attack. Therefore, this Court finds that he is entitled to $8 million in pain and suffering damages, in addition to $1,559,609 in lost wages;

- Michael Toma suffered various cuts from shrapnel, internal bleeding in his urinary system, a deflated left lung, and a permanently damaged right ear drum.

-35-

He also suffered lasting and severe psychological problems from the attack.
Therefore, this Court finds that he is entitled to $7.5 million in pain and suffering
damages;

- Danny Wheeler suffered soft tissue damage to the chest and sternum area, flash
burns, and lingering back problems, internal maladies and physical scarring. He
also suffered lasting and severe psychological problems from the attack.
Therefore, this Court finds that he is entitled to $5 million in pain and suffering
damages.

In addition, Frank Comes Jr., Frederick Daniel Eaves, John Hlywiak, John Oliver, and
Craig Joseph Swinson, and Thomas D. Young suffered no physical injuries, and are not required
to do so to recover for IIED under North Carolina law. *See Dickens v. Puryear*, 276 S.E.2d 325,
332 (N.C. 1981). Still, each has demonstrated that he has suffered severe and lasting
psychological harm, and may recover damages for that. Accordingly, the Court finds that each is
entitled to $1.5 million in pain and suffering damages.[33]

3.    Individual Family Member Cases

In certain instances, the special masters were presented with claims from individuals who
were related by half-blood to a deceased serviceman in this case. This section addresses those
claims under which the special master awarded the half-blood siblings an amount different than
would be permissible under the laws of the half-blood siblings respective states of domicile at the
time of the attack.

---

[33] In addition to his award for pain and suffering, John Oliver is entitled to $1,777,542 in
lost wages.

a.      Richard J. Wallace

Under Oklahoma law, "[k]indred of the half-blood inherit equally with those of the whole

blood in the same degree, unless the inheritance come [sic] to the intestate by descent, devise or

gift of some one of his ancestors. in which case all those who are not of the blood of such

ancestors must be excluded from such inheritance." Okla. Stat. Ann. tit. 84, § 222 (2007).

Stephen Eugene Spencer's half-brother, Richard J. Wallace, was awarded $1.25 million for pain

and suffering arising out of his IIED claim. By contrast, Stephen's full-blooded brother, Douglas

Spencer, was awarded $2.5 million. Richard J. Wallace did not come into this damages award as

a result of descent, devise or a gift of one of his ancestors. Therefore, this disparity in awards is

impermissible under Oklahoma law. Richard J. Wallace is entitled to the same amount as

Douglas Spencer, his half-brother, and therefore should be awarded $2.5 million.

b.      Hilton and Arlington Ferguson

Under Florida law, "[w]hen property descends to the collateral kindred of the intestate

and part of the collateral kindred are of the whole blood to the intestate and the other part of the

half blood, those of the half blood shall inherit only half as much as those of the whole blood . . .

." Fla. Stat. Ann. § 732.105 (2007). Half blood siblings may recover a whole amount only "if all

[remaining siblings] are of the half blood . . . ." Fla. Stat. Ann. § 732.105 (2007).

In this case, Hilton and Arlington Ferguson are half-brothers to serviceman Rodney J.

Williams. Therefore, each may recover only half as much as Mr. Williams' full blood siblings, if

there are any. If there are no full blood siblings, then Hilton and Arlington may recover whole

amounts, each. Here, Mr. Williams is survived by two full blood siblings: Rhonda and Ronald

Williams. Accordingly, though Hilton and Arlington Ferguson are entitled to recover for pain

-37-

and suffering under an IIED claim for the loss of their half-brother, they may only recover half

the amount of damages as will be awarded to Rhonda and Ronald Williams. Therefore, Hilton

and Arlington Ferguson may recover $1.25 million each because Rhonda and Ronald Williams

are each entitled to recover $2.5 million for pain and suffering damages associated with the

untimely loss of their brother.

          c.     Damien Briscoe and Kia Briscoe Jones

Under Maryland law, half-blood siblings are given the same status as full blood siblings

of the same degree. Md. Code Ann., Estates & Trusts § 1-204 (2007). The special master

charged with determining the appropriate amount of pain and suffering damages for relatives of

serviceman Davin M. Green, however, recommended that Mr. Green's half-siblings Damien

Briscoe and Kia Briscoe Jones be awarded $1.25 million for their pain and suffering associated

with Mr. Green's death, while at the same time awarding Mr. Green's full blood siblings $2.5

million for pain and suffering.

This Court finds that this recommended disparity in award does not conform to the

requirement that full blood and half blood siblings of the same degree be treated equally under

the law. Accordingly, this Court finds that under Maryland law, Mr. Green's half-siblings are

entitled to the same amount of recovery as their full blood sibling counterparts. This Court has

typically found $2.5 million to be an appropriate level of pain and suffering damages under an

IIED claim arising out of a terrorist attack. Accordingly, this Court adopts the special master's

damages recommendation of $2.5 million for Mr. Green's full blood siblings, and finds that Mr.

Green's half-siblings-Damien Briscoe and Kia Briscoe Jones-are also entitled to $2.5 million in

pain and suffering damages in connection with their IIED claim against the defendants.

d.     Darren Keown

Darren Keown is the half-brother of deceased serviceman Thomas Keown.  Darren was

domiciled in Tennessee at the time of the attack.  It has long been recognized under Tennessee

law that full and half-blood siblings may share equally in inheritance and intestate distribution.

*Kyle v. Moore*, 35 Tenn. 183 (3 Sneed) (Tenn. 1855).  The special master charged with

determining the appropriate amount of pain and suffering damages for relatives of Thomas

Keown recommended awarding Darren $4 million for pain and suffering, which was similar to

the recommended award for Thomas' full-blooded brothers, Adam, Bobby Jr., and William,

which was also $4 million.  In light of the fact that full-blooded siblings in this case shall be

awarded $2.5 million, however, the award for Adam, Bobby Jr., and William must be reduced to

$2.5 million.  Darren's award must be similarly lowered.  Accordingly, this Court finds that the

pain and suffering award for Darren Keown is $2.5 million.

e.     Kenty Maitland & Alex Griffin

Kenty Maitland is the half-brother of Samuel Maitland, Jr.  Alex Griffin is Samuel

Maitland Jr.'s legally adopted brother.  Both were domiciled in New York at the time of the

attack.  Under New York law, both half-blood siblings and adopted siblings are treated as equals

to full-blooded siblings for purposes of inheritance and recovery.  *See* N.Y. Est. Powers & Trusts

§ 4-1.1(b) (2007); N.Y. Dom. Rel. § 117 (2007).  Accordingly both Kenty Maitland and Alex

Griffin are entitled to recover in the same manner as Samuel's actual full-blooded siblings.  The

special master recommended that Kenty and Alex receive $1 million, each, for pain and suffering

damages.  Samuel's full-blood sister, Shirla Maitland, is entitled to recover $2.5 million in pain

and suffering arising from her IIED claim against the defendants.  Accordingly, this Court finds

-39-

that both Kenty Maitland and Alex Griffin are entitled to recover $2.5 million, each, in pain and suffering damages arising out of their respective IIED claims in this case.

> f.   Florene Martine Carter

Florene Martin Carter is the half-sister of deceased serviceman Charlie Robert Martin. Florene was domiciled in North Carolina at the time of the attack. Under North Carolina law, half-blood siblings may inherit and recover in the same manner as full-blood siblings. *Peel v. Corey*, 144 S.E. 559, 562 (N.C. 1928); *Univ. of North Carolina v. Markham*, 93 S.E. 845, 846 (N.C. 1917). Accordingly, Florene Martin Carter is entitled to recover in the same manner as Charlie's full-blooded siblings would have recovered. The special master recommended that Florene receive $1.25 million in pain and suffering damages. Charlie Robert Martin does not have full-blooded siblings. Still, siblings of deceased servicemen in this action are entitled to $2.5 million in pain and suffering damages arising out of their IIED claims against the defendants. Accordingly, the Court finds that Florene Martin Carter is entitled to $2.5 million in pain and suffering damages arising out of her IIED claim in this action.

> g.   Linda Martin Johnson, Corene Martin Jones, John Martin,
> Gussie Martin Williams, Mary Ellen Thompson

Linda Martin Johnson, Corene Martin Jones, John Martin, Gussie Martin Williams, and Mary Ellen Thompson are also half-siblings of deceased serviceman Charlie Robert Martin. Each was domiciled in Georgia at the time of the attack. Under Georgia law, half-blood siblings inherit equally with whole-blood siblings. *Bacon v. Smith*, 474 S.E.2d 728, 731-32 (Ga. Ct. App. 1996). Accordingly, Linda Martin Johnson, Corene Martin Jones, John Martin, Gussie Martin Williams, and Mary Ellen Thompson are entitled to recover in the same manner as Charlie's full-

-40-

blooded siblings would have recovered. The special master recommended that Linda, Corene.

John, Gussie, and Mary Ellen each receive $1.25 million in pain and suffering damages. Charlie

Robert Martin does not have full-blooded siblings. Still, siblings of deceased servicemen in this

action are entitled to $2.5 million in pain and suffering damages arising out of their IIED claims

against the defendants. Accordingly, the Court finds that Linda Martin Johnson, Corene Martin

Jones, John Martin, Gussie Martin Williams, and Mary Ellen Thompson are entitled to $2.5

million in pain and suffering damages, each, arising out of their respective IIED claims in this

action.

h.     Sybil Caeser

Under Florida law, "[w]hen property descends to the collateral kindred of the intestate

and part of the collateral kindred are of the whole blood to the intestate and the other part of the

half blood, those of the half blood shall inherit only half as much as those of the whole blood . . .

." Fla. Stat. Ann. § 732.105 (2007). Half blood siblings may recover a whole amount only "if all

[remaining siblings] are of the half blood . . . ." Fla. Stat. Ann. § 732.105 (2007).

Here, Sybil Caeser is the half-sister of deceased serviceman Johnnie Caesar. Johnnie,

however, has full-blooded siblings who have also survived him. Therefore, Sybil Caesar is

entitled to one-half of what Johnnie's full-blooded siblings received. The full-blood siblings of

Johnnie Caeser received $2.5 million. Therefore, this Court finds that Sybil Caeser is entitled to

$1.25 million in pain and suffering damages arising out of her IIED claim in this action.

C.     *Punitive Damages*

Punitive damages, however, are not available against foreign states such as the Islamic

Republic of Iran. *Haim v. Islamic Republic of Iran*, 425 F.Supp.2d 56, 71 (D.D.C. Mar. 24,

-41-

2006) (Lamberth, J.). Therefore, plaintiffs' claim for punitive damages against the Islamic

Republic of Iran is DENIED. Moreover, this Court has previously found on a number of

occasions that punitive damages are not available against MOIS because MOIS is a governmental

entity, and part of the state of Iran itself. *Heiser*, 466 F. Supp. 2d at 270-71; *Greenbaum v.*

*Islamic Republic of Iran*, 451 F. Supp. 2d 90. 105 & n.1 (D.D.C. Aug. 10, 2006) (Lamberth, J.)

(citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232-33 (D.C. Cir. 2003); *Haim*, 425 F.

Supp. 2d at 71 n.2. Accordingly, plaintiffs' claim for punitive damages against defendant MOIS

is also DENIED.

## CONCLUSION

This Court is sadly aware that there is little it can do to heal the physical wounds and

emotional scars suffered by the servicemen in this case and their family members. Though the

attack on the Marine barracks in Beirut, Lebanon occurred nearly twenty four years ago from this

date, it is clear from the testimony presented to this Court and the special masters that the intense

suffering experienced on that day has had a tragically lasting effect on the plaintiffs who have

brought this action. The fact that almost 1000 individuals sought redress in this action confirms

the sheer number of individuals whose lives were forever altered as a result of this senseless

attack on these courageous servicemen.

Indeed, at a time like this and an era such as ours, it is important to acknowledge the

selfless courage that these–and all–servicemen demonstrated by choosing to take action and

make this world a safer and better place in which to live. The fact that the servicemen in this

action made the ultimate sacrifice to pursue such a noble cause only serves to further establish

the legacy of these courageous individuals in the annals of history.

-42-

Not to be forgotten is the courage demonstrated by the family members who have come forth in bringing this claim. These individuals, whose hearts and souls were forever broken on October 23, 1983, have waited patiently for nearly a quarter of a century for justice to be done, and to be made whole again. And though this Court can neither bring back the husbands, sons, fathers and brothers who were lost in this heinous display of violence, nor undo the tragic events of that day, the law offers a meager attempt to make the surviving family members whole, through seeking monetary damages against those who perpetrated this heinous attack. The Court hopes that this extremely sizeable judgment will serve to aid in the healing process for these plaintiffs, and simultaneously sound an alarm to the defendants that their unlawful attacks on our citizens will not be tolerated.

A separate Order and Judgment consistent with these findings shall issue this date.


SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, September 7, 2007.