1  DAVID J. COOK, ESQ. (State Bar # 060859)
   ROBERT J. PERKISS, ESQ. (State Bar # 62386)
2  COOK COLLECTION ATTORNEYS
   A PROFESSIONAL LAW CORPORATION
3  165 Fell Street
   San Francisco, CA 94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA 94104-0270
5  Tel: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52,759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9                UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12
   DEBORAH D. PETERSON, Personal        )   CASE NO. 3:08-mc-80030-JSW
13 Representative of the Estate of James C. )
   Knipple (Dec.), et al.,               )   MEMORANDUM OF POINTS AND
14                                        )   AUTHORITIES IN SUPPORT OF MOTION
              Plaintiffs,                 )   FOR ASSIGNMENT OF RIGHTS PURSUANT
15                                        )   TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
   vs.                                    )
16                                        )   [FINANCIAL INSTITUTIONS]
   ISLAMIC REPUBLIC OF IRAN, et al.,      )
17                                        )   Date: June 20, 2008
              Defendants.                 )   Time: 9:00 a.m.
18 _____)   Courtroom: 17, 16th Floor
                                              Judge: Jeffrey S. White
19

20

21

22

23

24

25

26

27

28
   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF
   RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
   CASE NO. 3:08-mc-80030-JSW

# TABLE OF CONTENTS

**PAGES:**

I. INTRODUCTION .................................................... 1

II. LOCATION OF ASSETS AND POSSIBLE RELIEF FOR THE PLAINTIFFS ....... 1

    A. FUNDS IN BANKS TO FINANCE WORLD WIDE TRADE ............... 1

    B. FUNDS HELD IN VARIOUS ACCOUNTS AS UNDISBURSED FUNDS, LINES OF CREDIT ACCOUNT, DEPOSITS AND PREPAYMENTS ........ 2

III. REACH OF AN ASSIGNMENT ORDER .................................. 4

IV. WHICH LAW APPLIES .............................................. 7

V. MECHANISM OF AN ASSIGNMENT MOTION ............................... 8

VI. WHY THESE FINANCIAL INSTITUTIONS? ............................. 11

VII. POTENTIAL CLAIMS OF SOVEREIGN IMMUNITY ........................ 11

VIII. WHY IS AN ASSIGNMENT DIFFERENT FROM A LEVY? .................. 14

IX. CONCLUSION .................................................... 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW

# TABLE OF AUTHORITIES

**CASES:**                                                                                            **PAGES:**

*Celsa HILAO, et al., Plaintiffs-Appellees, v. ESTATE OF Ferdinand E. MARCOS, Defendant, and Swiss Bank Corporation and Credit Suisse, Appellants*
        95 F.3d 848 (9th Cir. 1996) .................................................. 14, 15

*Clark vs. Wilbur*
        913 F.Supp. 463 (S.D.W.Va. 1996) ................................................ 7

*Estate of Ferdinand Marcos Human Rights Litigation*
        910 F. Supp. 1470 (D. Hawaii Court, 1995) .................................. 4, 13

*FIRST CENTRAL COAST BANK, etc. vs. CUESTA TITLE GUARANTEE COMPANY, et al.*
        143 Cal.App.3d 12, 191 Cal.Rptr. 433 (Cal.App.2 Dist. 1983) ................... 10

*George E. DANIELSON et al. v. UNITED STATES of America*
        416 F.2d 408 (9th Cir. 1969) .................................................. 12

*Kracht vs. Perrin, Gartland & Doyle*
        219 Cal.App.3d 1019 (Cal.App.4 Dist. 1990) ............................. 6, 13, 14

*Mendaro vs. The World Bank*
        717 F.2d 610 (D.C. Cir. 1983) ............................................. 11, 13

*Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian*
        218 Cal.App.3d 1058, 267 Cal.Rptr. 457 (6 Dist.1990). ........................ 11

*Price v. Forrest*
        173 U.S. 410 (1899) 19 S.Ct. 434, 43 L.Ed. 749 ............................... 12

*Shaffer vs. Heitner*
        433 U.S. 186, 97 S.Ct. 2569, 53 L. Ed. 2d 683 (1977) .......................... 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW

**STATUTES:**

*Federal:*

28 U.S.C.

§ 1605A .................................................................. 6

§ 1605A(g)(2) ........................................................ 13

§ 1610(a)(1) and (b)(1) ........................................... 11

§ 1963 ..................................................................... 1

Federal Rules of Civil Procedure

69(a) .................................................................. 7, 8

69(a)(1) .............................................................. 7, 8

*State:*

California Code of Civil Procedure

§701.020(a) ........................................................... 13

§ 699.710 ................................................................ 3

§ 708.510(a) ........................................... 3, 4, 8, 10, 11

The Legislative Comment under C.C.P. § 708.510 .... 9

§ 708.530 ................................................................ 9

§ 708.540 ................................................................ 9

California Civil Code

§ 955.1 .................................................................... 9

California Commercial Code

Section 9102(42)(a) ................................................. 3

*Other:*

The Restatement of Conflicts of Laws ........................ 8

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW

## I. INTRODUCTION.

Plaintiffs have recovered judgment in the amount of $2,656,944,877.00 on 9/7/07 against THE ISLAMIC REPUBLIC OF IRAN ("Iran") based upon that certain incident described in the MEMORANDUM OPINION of 5/30/03. Plaintiffs thereafter obtained judgment on 9/7/07, and a copy of the JUDGMENT is marked *Exhibit "A."*

Plaintiffs have duly docketed this judgment pursuant to 28 U.S.C. § 1963. Plaintiffs are in the process of levy and execution in this judicial district, which includes a levy upon the Boeing Company, Bank of Tokyo Mitsubishi, Sumitomo Mitsui Banking Corporation, BNP Paribas, Mizuho Corporate Bank, among others, all of whom have addresses located in this district herein.

## II. LOCATION OF ASSETS AND POSSIBLE RELIEF FOR THE PLAINTIFFS.

### A. FUNDS IN BANKS TO FINANCE WORLD WIDE TRADE.

Iran is a major importer of goods (and services) on a world wide basis, such as gasoline from India, Turkmenistan, Azerbijan, the Netherlands, France, Singapore, and the UAE, along with such companies as BP, Shell, Total, Vitol, LUKoil, and several Chinese companies. This information is found in EIA Report from the Department of Energy marked *Exhibit "B,"* (Page 4) showing that Iran is the second largest purchaser of gasoline, second to the United States, importing billions of dollars of gasoline and related products. Iran necessarily must pay for the gasoline services through one or more medium. Typically, Iran would arrange for a financial institution to issue a letter of credit, enabling the seller of the gasoline to sell and ship the gasoline to Iran, and in turn, receive payment through a "draw down" based upon the letter of credit. In many cases, the banks issuing the letters of credit would be large European and Asian banks, assuring essentially their own "clientele," that in fact they would be paid predicated upon the shipment of gasoline and other refined products. Other reports confirm that Iran is also a major importer of such products as industrial and raw materials, intermediate goods, capital goods, foodstuffs, and other consumer items and goods and technical services, all of which is set forth in great detail in the Central Intelligence Agency "World Fact Book," marked *Exhibit "C."* (Page 11)

Needless to say, Iran has to pay for these goods, and the typical methodology is through a

letter of credit, issued by a neutral bank, or setting up a deposit account with a neutral bank and instructions to wire the funds to the bank for the seller upon receipt of the goods.

Iran's vast import market is confirmed by the GAO "Highlights" Report of December 2007 marked *Exhibit "D,"* which shows (Page 30) literally billions of dollars of imports coming to Iran from such countries as Germany, China, UAE, Korea, France, Italy, Russia, India, Brazil, Japan, among others. Commons sense again would dictate that these "exporting countries," to assure themselves of payment, are in fact demanding and receiving letters of credit, all of which are collateralized by debt bank deposits by and through the Central Bank of Iran, Bank Melli, Bank Sadarat, among many others.

Accordingly Iran might well have on deposit significant sums of money with various financial institutions ("Banks") listed on *Exhibit "E"* constitutes serving as collateral, deposits or other funds to finance world wide trade, or have funds available by and through a credit facility, long-term loan, line of credit, or undisbursed funds based upon a loan.

### B. FUNDS HELD IN VARIOUS ACCOUNTS AS UNDISBURSED FUNDS, LINES OF CREDIT ACCOUNT, DEPOSITS AND PREPAYMENTS.

The following financial institutions may have funds available through a line of credit, undisbursed loan proceeds, loan proceeds and other financial accommodations in which Iran is entitled to drawn down:

1. Asian Development Bank
   815 Connecticut Ave NW # 325
   Washington, D.C. 20006
   (202) 728-1500
   Attn: LEGAL PROCESS DEPT.

2. Development Bank of Japan
   1101 17th St NW # 1001
   Washington, DC 20036
   (202) 331-8696

3.. Export Import Bank of Korea
   1300 L St NW # 825
   Washington, DC 20005
   (202) 408-8838

5. Export Import Bank of Korea
   460 Park Avenue,
   New York, New York 10022
   Attn: LEGAL PROCESS DEPT.

6. Export Import Bank of India
   1750 Pennsylvania Ave NW
   Washington, DC 20006

7. Industrial Bank
   4812 Georgia Ave NW
   Washington, DC 20011
   (202) 722-2000

8. International Monetary Fund
   700 19th St NW
   Washington, DC 20431
   (202) 623-7000

9. International Finance Corporation
   2121 Pennsylvania Ave NW
   Washington, DC 20433
   (202) 473-1000

10. International Bank for Reconstruction
and Development aka THE WORLD
BANK
1818 H St NW
Washington, DC 20433
(202) 473-1000

11. Japan Bank for International
Cooperation
1909 K St NW # 300
Washington, DC 20006
(202) 785-5242

12. State Bank of India
2001 Pennsylvania Ave NW # 625
Washington, DC 20006
(202) 223-5579

Funds held these bank in which Iran has the right to drawn down, receive, direct loan transfers or receive the benefit, constitutes a leviable asset, and therefore subject to the reach of these judgment creditors. All property of a judgment debtor is subject to the levy and execution under C.C.P. § 699.710 as follows:

> "Except as otherwise provided by law, all property that is subject to enforcement of a money judgment pursuant to Article 1 (commencing with Section 695.010) of Chapter 1 is subject to levy under a writ of execution to satisfy a money judgment.

The right to receive loan proceeds would constitute a deposit or general intangible entitling Iran to receive the funds. A general intangible is defined under C.C.P. § 680.210 as follows:

> "General intangibles" means "general intangibles," as defined in paragraph (42) of subdivision (a) of Section 9102 of the Commercial Code, consisting of rights to payment."

California Commercial Code Section 9102(42)(a) defines a general intangibles as follows:

> "(42) "General intangible" means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software."

An assignment motion would reach a general intangibles as a right to receive payment of money, which might be conditional, due in the future, or subject to some of condition. C.C.P. § 708.510(a). Monies due Iran from its various lending institutions would be subject to levy in the same manner that Iran would be entitled to payment upon demand, and the sole issue whether Iran is entitled to these funds. These Banks may well have in their hands undisbursed funds, or be

obligated to advance to Iran funds under a long-term credit facility or commercial loan.

## III. REACH OF AN ASSIGNMENT ORDER.

Unlike a levy, which is typically tied to a branch, an assignment order reaches all obligations which may be owed by the obligor, such as a financial institution. These obligations would include, but are not limited to, for example, all rights to payment of money, accounts, funds on hand, funds in a deposit account, or otherwise.

In many of these case, the banks are international in nature and their only contact with the Untied States is that they have a branch located in the Untied States. This is enough to justify the reach of an assignment order for funds which are located in the "home office," no matter located. Directly on point is *Estate of Ferdinand Marcos Human Rights Litigation*, 910 F. Supp. 1470 (D. Hawaii Court, 1995) in which the district court was faced with an identical situation. In *Estate of Ferdinand Marcos Human Rights Litigation, supra,* the plaintiffs were torture victims of Ferdinand Marcos, who obtained an extremely substantial judgment. The judgment creditors levied from time to time upon various financial institutions, in which all of their efforts were for naught. Thereafter, they proceeded under C.C.P. § 708.510(a) in reaching accounts held by Credit Suisse, in which the accounts were held in Switzerland, not California. The court held that the accounts of Credit Suisse, even though tangentially located in Switzerland, was subject to the reach of an assignment order, in which the court stated as follows:

> "B. Court's Implied Power to Assign
> First, implicit in the power to enforce a judgment is the power to use all legal means to provide relief to judgment creditors in an appropriate case. Assignment of funds is one of those means.
> See *Chicago Pneumatic Tool Co. v. O.V. Stonestreet, et al.*, 107 F.R.D. 674 (S.D.W.Va.1985). In that case the plaintiff requested that the defendant be required,
>> "to convey or assign to the United States Marshal for the Southern District of West Virginia, such money, bank notes, securities, evidences of debt, other personal property, chooses in action or other intangible personal property as may be ordered by the said commissioner for enforcement and payment of the judgment including interest and costs, outstanding in the above matter." *Id.* at 676. [4] Despite defendant's arguments about limitations on the power of magistrate judges, not here relevant, the Court concluded that in entry of any order requiring the debtor to transfer property to the creditor, the magistrate would only facilitate the District Court's inherent power to enforce plaintiffs' judgment.
>
> Similarly this Court has the inherent power to order the Estate to assign its rights, title and interest to the Swiss bank accounts to plaintiffs, given the uncontroverted

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW                                                                                                 4

evidence that those assets belong to the debtor Estate.

An equally compelling basis for ordering the assignment is FRCP 69(a), also relied upon in *Chicago Pneumatic, supra.*

C. FRCP 69(a)

Federal Rule of Civil Procedure 69(a) provides,
"Process to enforce a judgment for the payment of money shall be a writ of execution, *unless the court directs otherwise.* The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." F.R.C.P. 69(a) (emphasis by the court)

In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La, Inc.*, 1993 WL 414664, 1993 U.S.Dist. LEXIS 14450 (E.D.La.1993), plaintiff moved the Court to enter an order directing the sale of the rights and interest of the Partnership in a case where judgment had been entered a year earlier. The District Court looked to Louisiana law as the law of the state in which the action occurred. Applying the appropriate statute [5], the Court ordered judicial sale of the property by the United States Marshal. Similarly, in *Moseley Assoc. v. Brown*, 1988 WL 68149, 1988 U.S.Dist. LEXIS 5662 (S.D.N.Y.1988), the district court looked to state law, then New York Debtor and Creditor Law, to order defendants to satisfy plaintiffs' judgment out of funds which had been transferred to them.

The question here is what state's law applies to enforcement mechanisms and thus to whether assignment may be ordered.

In this case, the judgment was entered and an order was signed transferring the matter to other districts for the purpose of execution. The only district in which a transfer was sought and the judgment registered was the Central District of California, the location of branches of the Swiss banks holding the money here at issue. The Swiss banks branches are located in Los Angeles, plaintiffs are conducting judgment debtor discovery in California, and all discovery disputes are before this Court in the Central District of California. Under these circumstances, California law should apply since the matter is now in California, solely for the purpose of executing the judgment. Moreover, Hawaii law is consistent with this disposition.

D. California Law

California law on assignment of right to payment in enforcement of a judgment provides,
> "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor or to a receiver appointed pursuant to Article 7 (commencing with Section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments. . . . " CAL.CIV.PROC.CODE section 708.510 (West 1987).

Case law interpreting this statute has consistently upheld a courts' power to require debtors to assign their interests in debts or other property. See, e.g., *Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal.App.3d 1058, 267 Cal.Rptr. 457 (6 Dist.1990). *See generally*, 8 Witkin, Cal.Procedure (3d ed. 1985), Enforcement of Judgments, §§ 299 and 300; *Civil Procedure; enforcement of judgments*, 14 Pacific L.J. 397, 431 (1983). Similarly, here CCP 708.510 and its case law exegesis permit an order of assignment of the Estate's interests in the Swiss accounts for the benefit of the judgment creditors, class action plaintiffs.

III. CONCLUSION

For all of the above reasons, the defendant Estate by Imelda Marcos and Ferdinand Marcos, Jr. are ordered to forthwith execute an assignment of the funds in the respective Swiss banks in favor of the class and individual plaintiffs. In default thereof the clerk of the court is ordered to execute the assignment on behalf of the judgment debtor. (Page 1472)

Accordingly, to the extent of course that any of the financial institutions with offices or a connection with the United States, hold any funds, no matter where located, these funds would now be the subject of the reach of this assignment order.

This assignment order does not necessarily preadjudicate the claims by and between the obligor and the judgment creditor. Directly on point is *Kracht vs. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019 (Cal.App.4 Dist. 1990), in which the court stated at footnote 1:

> "[1]Code of Civil Procedure section 708.510 does not require that notice of the motion to cause an assignment be given to the obligor of the judgment debtor. The order of assignment does not affect the obligor's rights until notice of the order is received by the obligor. (Code Civ.Proc., § 708.540.) The fact that the choses in action were ordered assigned under Code of Civil Procedure section 708.510 does not preclude a challenge to whether the claims were assignable ab initio, because the Legislature specifically noted that section 708.510 "... does not make any property assignable that is not already assignable." (See Legis.Com.Comment. Assembly 1982 Addition, West's Ann.Code Civ.Proc., § 708.510.)

Plaintiffs therefore seek an order overcoming the artificial barrier raised by the financial institutions, the effect of which would be to shelter bank accounts, rights to payment of money, general intangibles, accounts, which are held "overseas." To the extent that any of these international banks have offices or a domicile in the United States, this assignment order would necessarily reach all obligations on a world-wide basis

Iran no longer has available the benefits of sovereign immunity under recent legislation enacted as 28 U.S.C. § 1605A as follows:

"(a) IN GENERAL. --

"(1) NO IMMUNITY. – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –

"(1) IN GENERAL. – subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, upon that judgment as provided in this section, regardless of –
"(A) the level of economic control over the property by the government of a foreign state;
"(B) whether the profits of the property go to that government;
"( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
"(D) whether that government is the sole beneficiary in interest of the property; or
"(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgment entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

## IV.  WHICH LAW APPLIES.

Plaintiffs seek to enforce the judgment under F.R.C.P. 69(a)(1) amended as of 12/1/07, and employ the laws of the domicile, specifically being the laws of the State of California, which provides as follows:

Rule 69. Execution
(a) In General.
(1) Money Judgment; Applicable Procedure.
A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

This entire issue was discussed in detail in *Clark vs. Wilbur,* 913 F.Supp. 463 (S.D.W.Va. 1996), in which the court was faced with the issue whether the laws of the original domicile applied, or the "transplanted domicile," in which the judgment was being enforced. The court answered this at 913 F.Supp. 463 at page 467, in which the court stated as follows:

"Defendants assert Florida law should be applied in determining if the assets in question are exempt from a turnover order. Plaintiff seeks application of West Virginia law. *Rule* 69(a) provides in pertinent part as follows:

The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution *shall be in accordance*

*with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought . . . Id.* (emphasis added). The mandate requiring resort to the law of the state where the district court is held applies to questions relating to whether assets are exempt from collection. [8] *See, e.g., Chicago, Rock Island & Pac. Ry. Co. v. Sturm*, 174 U.S. 710, 717, 19 S.Ct. 797, 800, 43 L.Ed. 1144 (1899) (stating "[e]xemption laws are ... part of the remedy and subject to the law of the forum"); *Johns v. Rozet*, 826 F.Supp. 565, 567 (D.D.C.1993); *Pallante v. Int'l Venture Invs., Ltd.*, 622 F.Supp. 667, 668 (N.D.Ohio 1985) (stating "[g]enerally ... questions of exemption are determined solely by the laws of the forum"); *Marine Midland Bank v. Surfbelt, Inc.*, 532 F.Supp. 728, 729 (W.D.Pa.1982) (stating "the law of the forum governs questions of exemption"); 11 Thomas J. Goger et al., *Federal Procedure* § 31:21 (1982). Defendants have cited no authority to the contrary in support of their position and the Court has located none. Accordingly, the Court concludes West Virginia law controls the question of whether the requested assets are exempt. The Court must now determine whether the requested assets are exempt under West Virginia law."

Traditional choice of law principles mandate, along with F.R.C.P. 69(a)(1), that the judgment creditor is entitled to exercise the rights and remedies of the forum jurisdiction, rather than the original jurisdiction. The Restatement of Conflicts of Laws rejects this claim as follows:

"The majority of courts agree with Mr. Justice McKenna and hold that in a garnishment proceeding, as elsewhere, *only the exemption laws of the forum are applicable.*" (Page 1617).[1] (Emphasis added)

Here, Plaintiffs seek to enforce the remedies permitted under California, as opposed to District of Columbia law.

## V. MECHANISM OF AN ASSIGNMENT MOTION.

Plaintiff seeks to employ the remedies permitted under C.C.P. § 708.510(a) which provides as follows:

"Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor, or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditional upon future developments, including but not limited to, the following types of payment:
1. Wages due from the federal government that are not subject to withholding under an earnings withholding order.
2. Rents.
3. Commissions.
4. Royalties.
5. Payments due from a patent or copyright.
6. Insurance policy loan value."

---

[1] Exemptions do not travel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW

This assignment motion would reach all accounts, accounts receivable and rights to payment of money, whether owed now or owed in the future, from "account debtors" who may owe money to the underlying judgment debtor.

The Legislative Comment under C.C.P. § 708.510 indicates that the court has great flexibility in fashioning relief, which itself would enable Plaintiffs to serve the assignment order and obtain payment of amounts which are due or may be due in the future. The Legislative Comment provides as follows:

> **Legislative Committee Comment – Assembly 1982 Addition**
> Section 708.510 provides a new procedure for reaching certain forms of property that cannot be reached by levy under a writ of execution, such as the nonexempt loan value of an unmatured life insurance, endowment, or annuity policy. See Sections 699.720(a)(6), 704.100. It also provides an optional procedure for reaching assignable forms of property that are subject to levy, such as accounts receivable, general intangibles, judgments, and instruments. This section does not make any property assignable that is not already assignable. This remedy may be used alone or in conjunction with other remedies provided in this title for reaching rights to payment, such as execution, orders in examination proceedings, creditors' suits, and receivership. The use of this remedy is subject to limitations on the time for enforcement of judgment. See Sections 683.010-683.220.

The purpose of the assignment order is the same as a contractual assignment under C.C.P. § 708.530, which provides as follows:

> **§ 708.530.**
> (a) Except as provided in subdivision (b), the effect and priority of an assignment ordered pursuant to this article is governed by Section 955.1 of the Civil Code. For the purpose of priority, an assignee of a right to payment pursuant to this article shall be deemed to be a bona fide assignee for value under the terms of Section 955.1 of the Civil Code.
> (b) An assignment of the right to future rent ordered under this article is recordable as an instrument affecting real property and the priority of such an assignment is governed by Section 1214 of the Civil Code.

The effect on the obligor's rights is found under C.C.P. § 708.540, which provides as follows:

> **§ 708.540.**
> The rights of an obligor are not affected by an order assigning the right to payment until notice of the order is received by the obligor. For the purpose of this section, "obligor" means the person who is obligated to make payments to the judgment debtor or who may become obligated to make payments to the judgment debtor depending upon future developments.

Assignments are found under Civ.C. § 955.1, likewise which provides as follows:

§ 955.1.
(a) Except as provided in Sections 954.5 and 955 and subject to subdivisions (b) and ( c), a transfer other than one intended to create a security interest (paragraph (1) or (3) of subdivision (a) of Section 9109 of the Commercial Code) of any payment intangible (Section 9102 of the Commercial Code) and any transfer of accounts, chattel paper, payment intangibles, or promissory notes excluded from the coverage of Division 9 of the Commercial Code by paragraph (4) of subdivision (d) of Section 9109 of the Commercial Code shall be deemed perfected as against third persons upon there being executed and delivered to the transferee an assignment thereof in writing.
(b) As between bona fide assignees of the same right for value without notice, the assignee first giving notice thereof to the obligor in writing has priority.

An assignment order permits the judgment creditor to reach receivable due now, or due in the future, receivables which might be contingent, or uncertain, or receivables in which performance might still be due, as provided by the exact language of C.C.P. § 708.510(a). On the other hand a levy would only reach accounts which are due at the time of the levy as indicated by such as cases as *FIRST CENTRAL COAST BANK, etc. vs. CUESTA TITLE GUARANTEE COMPANY, et al.*, 143 Cal.App.3d 12, 191 Cal.Rptr. 433 (Cal.App.2 Dist. 1983), the appellate court held that a premature [or late] levy did not reach the monies which were due at the time of a levy in that a levy constitutes a "snapshot" of any funds immediately due the debtor. The court stated as page 16 as follows:

> "A debt which is uncertain and contingent in the sense that it may never come due and payable is not subject to garnishment. (Brunskill v. Stutman, supra, 186 Cal.App.2d 97, 8 Cal.Rptr. 910: *Clecak v. Dunn* (1928) 95 Cal.App. 537.)"

An assignment order reaches a broader range of property rights, including accounts which are contingent, or some performance which is due in the futures. A levy, on the other hand, only reaches monies which are non contingent and in which the accounts are immediately due and payable, and without a defense.[2]

---

[2] Parenthically serving account debtors with an assignment order also reduces the cost of enforcement given a large number of actual and/or potential obligors. With an assignment order in hand, Plaintiffs can effectively reach the multitude of obligors through the mail, personal service, or otherwise, without the burden of docketing this judgment in the local district court. To the extent that the obligor might claim that the obligor is not subject to the U.S. jurisdiction (or the particular subsidiary), this is clearly a matter subject to the individual enforcement of the assignment order in a separate satellite proceeding. Whether or not the particular entity is (or is not) subject to the U.S. jurisdiction in this setting need not be precisely determined and the fact of any jurisdictional defense might well be the subject of waiver, consent, variations of jurisdiction such as "in rem" jurisdiction. See, however, *Shaffer vs. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L. Ed. 2d 683 (1977). C.C.P. § 708.510 does not necessarily anticipate a full blown evidentiary

An assignment order permits the judgment creditor to serve the order through the mails (or process servers) with the concurrent expense of individual levy and execution. An assignment order reaches money which is now due or might be due in the future, or in which payment is contingent (C.C.P. § 708.510(a)), while on the other hand a levy only reaches money due at the time and without condition.

## VI. WHY THESE FINANCIAL INSTITUTIONS?

Plaintiff has a factual basis for believing that the banks at issue might have some funds or property which belongs to Iran and therefore would justify the prosecution of this motion. Many of the international banks have extended for Iran letters of credit, trade facilities, or other accommodations to enable Iran to import products. These banks hold on account large amounts of Iranian deposits to cover these trade facilities, in which the deposits are subject to this assignment.

## VII. POTENTIAL CLAIMS OF SOVEREIGN IMMUNITY.

Some of the financial institutions, such as The World Bank, Japanese Bank for International Cooperation, Export Import Bank of Korea, Export Import Bank of India, International Finance Corporation, if not others, might well claim their own sovereign immunity. Foreign banks may have lost their sovereign immunity based on the doctinre of implied waiver or commercial pursuant to 28 U.S.C. § 1610(a)(1) and (b)(1). Banks, such the The World Bnak, International Monetary Funds and/or International Finance Corporaiton may qualified immunity under cases as *Mendaro vs. The World Bank,* 717 F.2d 610 (D.C. Cir. 1983) (holding that The World Bank was immune to a civil lawsuit for employment related grievances). [3]

---

hearing whether the obligor is subject to the U.S. jurisdiction, but only that the judgment creditor steps into the shoe of the judgment debtor for the sole purpose of receiving payment of any obligation now due or due in the future. Jurisdictional defenses are typically the matter of civil litigation with the total panoply of civil discovery.

[3] California courts declined to permit a judgment creditor to reach assets of a foreign sovereign protected by FSIA in *Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian,* 218 Cal.App.3d 1058. 267 Cal.Rptr. 457 (6 Dist.1990). This case is distinguishable in that FSIA protected the assets of the foreign sovereign, the judgment debtor itself, located in the Philippines in which the assets consists of accounts owed by Philippine-domiciled individuals. In this set of facts, Iran has no sovereign immunity at all, and the assignment order substituted out Iran for the judgment creditors and installing these judgment creditors without altering the relationship between the Iran and the sovereign bank.

The starting point is that Plaintiffs however do not seek to reach the assets of the obligors (i.e., the banks owing obligation to Iran) in this setting. but a court-ordered assignment of any rights to payment due Iran from the obligors. This is well-tread territory in the courts are willing to permit the assignment of monies due from an entity which is subject to sovereign immunity. Claims against a sovereign can be transferred involuntarily through a court order. For example, claims against the United States are not assignable, however. on the other hand, a claim against the United States may be the subject of involuntary assignment through a court order. The court in *George E. DANIELSON et al. v. UNITED STATES of America*, 416 F.2d 408 (9th Cir. 1969) stated at page 410 as follows:

> "The Government contends that the compromise agreement and 'purported assignment' does not comply with requirements of the Anti-Assignment statute, 31 U.S.C. 203. and is void as against the United States."
> That statute, however, is aimed at voluntary assignments and does not affect transfers by operation of law. Erwin v. United States, 97 U.S. 392. 24 L.Ed. 1065 (1878). Here the 'assignment' was in response to an obligation owing to the trustees in bankruptcy not voluntarily assumed by the Farrells but arising by virtue of law from the facts upon which the trustees' claim was founded. [2] *Under these circumstances a compromise approved by court order is not voluntary and a transfer pursuant to or accomplished by such order is not such a transfer as falls within the provisions of the Anti-Assignment statute. Price v. Forrest, 173 U.S. 410 19 S.Ct. 434, 43 L.Ed. 749 (1899)."*

The Supreme Court held that a claim against the United States may be subject of an involuntary assignment, notwithstanding the Anti-Assignment Statute (at the time). In *Price v. Forrest*, 173 U.S. 410 (1899) 19 S.Ct. 434, 43 L.Ed. 749 the court stated at page 424 to 425 as follows:

> "It only remains to say, touching this part of the case. that if section 3477 does not embrace the passing or transfer of claims to heirs, devisees. or assignees in bankruptcy, as held in *Erwin v. United States,* nor a voluntary assignment by a debtor of his effects for the benefit of his creditors. as held in *Goodman v. Niblack,* it is difficult to see how an order of a judicial tribunal having jurisdiction of the parties appointing a receiver of a claim against the government, and ordering the claimant to assign the same to such receiver to be held subject to the order of court for the benefit of those entitled thereto. can be regarded as prohibited by that section."

An assignment order replaces the judgment debtor with the judgment creditor as the obligee under the obligation. in which the judgment creditor is now entitled to exercise all rights and remedies of the judgment debtor to seek and demand payment consistent with the underlying contract. This is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW

12

the precise outcome of both *Kracht vs. Perrin, Gartland & Doyle, supra* and *Estate of Ferdinand Marcos, supra.* An assignment order permits the court to place the judgment creditor in the shoes of the judgment debtor which is different from a levy in which the judgment creditor actually proceeds in rem to seize the assets the obligation due and owed to the judgment debtor and judicial enforce the obligation by way of direct statutory action under C.C.P. §701.020(a) (direct liability of the garnishee to the judgment creditor for failure to pay the obligation to the judgment creditor based on the levy).

Given the repeal of the sovereign immunity of both the United States and Iran under 28 U.S.C. § 1605A(g)(2), these banks likewise would have lost their immunity from levy and execution if they are holding assets of Iran. The qualified and limited sovereign immunity in favor of these financial institutions, such as The World Bank and IFC ("International Banks"), would be no greater than the sovereign immunity of the United States which was waived under 28 U.S.C. § 1605A(g)(2). As a result, to the extent of any assets, or obligations due from these International Banks, they would properly be the subject of this assignment. Additionally under *Mendaro vs. The World Bank, supra.,* at page 618 these International Banks only have partial immunity and qualified and limited by various considerations in which the court stated as follows:

> "The choice of terms adopted in Article VII section 3 also suggests that the Bank's immunity is limited only to the extent necessary to further its objectives. Article VII section 3 expressly subjects the Bank to suit in territories where the Bank has an office or an agent appointed to receive service of process, or has issued or guaranteed securities. These exceptions to its immunity were designed primarily to enhance the marketability of its securities and the credibility of its activities in the lending markets. [51] The Bank is specifically empowered to guarantee securities in which it has invested, "for the purpose of facilitating their sale." [52] This guarantee would mean little if beneficiaries of the guarantee could not sue to enforce the Bank's contracts. Potential investors would be much less likely to acquire the Bank's own securities if they could not sue the Bank to enforce its liabilities. Similarly, the commercial reliability of the Bank's direct loans and private loan guarantees would be significantly vitiated if its debtors and beneficiaries were required to accept the Bank's obligations without recourse to judicial process.

These judgment creditors seek to substitute themselves as the obligee of the obligation owed by the International Banks to Iran itself. If the policy underpinning the partial waiver of sovereign immunity is to insure that with finality (enforced through a court of law) of International Bank's

commitment on a worldwide basis and specifically the loan commitments would be carried out, these International Banks would have little to complain if these judgment creditors substitute themselves for the judgment debtor on the same obligation, assuredly to be carried out.

This court need not necessarily resolve the issue of sovereign immunity of the the foreign and International Banks, as Plaintiffs would stand in the shoes of Iran, and would seek to enforce Iran's rights consistent with *Kracht vs. Perrin, Gartland & Doyle, supra.*

## VIII. WHY IS AN ASSIGNMENT DIFFERENT FROM A LEVY?

Clearly, a judgment creditor can levy upon a deposit account of a judgment debtor. Plaintiffs in fact have levied on many of these banks, all of whom stated that they hold no funds at the branch. Specifically, focusing on a deposit account only, and no other asset, the banks are correct in that existent Ninth Circuit case law limits a levy upon a deposit account to the branch who holds that account only. In *Celsa HILAO, et al., Plaintiffs-Appellees, v. ESTATE OF Ferdinand E. MARCOS, Defendant, and Swiss Bank Corporation and Credit Suisse, Appellants.*, 95 F.3d 848 (9th Cir. 1996), the court stated as follows:

> "The manner in which a judgment creditor can levy upon a deposit account is specifically set forth: "[T]o levy upon a deposit account, the levying officer shall personally serve a copy of the writ of execution and a notice of levy on the financial institution with which the deposit account is maintained." Cal.Civ.Proc. § 700.140(a). The general provisions of the EJL further provide that "if a writ, notice, order, or other paper is required to be personally served under this title" and "[i]f the service is on ... a financial institution," then "service shall be made at the office or branch that has actual possession of the property levied upon or at which a deposit account levied upon is carried." Cal.Civ.Proc. § 684.110(a).©. Because there is no dispute that the deposit accounts of the Estate are not carried at the Banks' Los Angeles offices, under California law the personal service of the writs of execution and notices of levy at those locations was ineffective to levy on the Estate's accounts." (P. 851)

Plaintiffs acknowledge that a bank levy upon a deposit account must be tied to a branch. An assignment order reaches the bank on a world-wide basis, therefore justifying this relief. The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
CASE NO. 3:08-mc-80030-JSW

14

holding in the *Hilao* case specifically dealt with deposit accounts, as opposed to general intangibles, rights to payment of money, and other non-deposit account liabilities. Plaintiffs follow in the footsteps of the *Marcos* victims in seeking a broad based assignment motion when the local levy failed to reach the deposit accounts (only) which are statutorily tied to the branch.

## IX. CONCLUSION.

Plaintiffs have suffered tremendous losses at the hands of a terrorist state. This motion, along with other process, seeks to collect this substantial judgment and start the process of recompense in which the source of payment arises from key assets of the state itself, which are revenues from the various financial institutions, wherever located. Plaintiffs are therefore entitled to such relief.

DATED: May 1, 2008          COOK COLLECTION ATTORNEYS

By: ___/s/ David J. Cook____
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs DEBORAH D. PETERSON,
Personal Representatives of the Estate of James C. Knipple
(Dec.), et al.

F:\USERS\DJCNEW\peterson.assignfinancialmpa