1  **DAVID J. COOK, ESQ. (State Bar # 060859)**
   **ROBERT J. PERKISS, ESQ (State Bar # 62386)**
2  **COOK COLLECTION ATTORNEYS**
   **A PROFESSIONAL LAW CORPORATION**
3  165 Fell Street
   San Francisco, CA 94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA 94104-0270
5  Tel.: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52.759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12
   DEBORAH D. PETERSON, Personal      )     CASE NO. 3:08-80030-JSW (BZ)
13 Representative of the Estate of James C. )
   Knipple (Dec.), et al.,            )     SUPPLEMENTAL DECLARATION OF
14                                     )     DAVID J. COOK, ESQ. IN SUPPORT OF
            Plaintiffs,               )     SECOND EX PARTE APPLICATION FOR
15                                     )     ORDER AMENDING AND TO DIRECT
   vs.                                 )     ISSUANCE OF SECOND AMENDED AND
16                                     )     ALIAS WRIT OF EXECUTION TO INCLUDE
   ISLAMIC REPUBLIC OF IRAN, et al.,  )     ADDITIONAL NAMES PURSUANT TO
17                                     )     C.C.P. § 680.135
            Defendants.               )
18 _____ )

19         I, DAVID J. COOK, hereby declare and state as follows:

20         1.  I am one of the attorneys of record for Plaintiffs in the above-entitled action, am duly

21 authorized to practice before all courts in the State of California, and am familiar with the facts

22 and circumstances in this action.

23         2.  The Iran-U.S. Claims Tribunal was established by the DECLARATION OF THE

24 GOVERNMENT OF THE DEMOCRATIC AND POPULAR REPUBLIC OF ALGERIA, a true

25 and correct copy of which is attached hereto marked ***Exhibit "A."*** Declarant has personally

26 confirmed this is an accurate document from multiple other versions.  Declarant has filed multiple

27

28 SUPPLEMENTAL DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF SECOND EX PARTE
   APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND
   ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
   CASE NO. 3:08-80030-JSW (BZ)                                                          1

1    other motions in multiple districts in which the Algiers Accords are a key issue.

2         3. The fact that Iran has multiple agencies and instrumentalities is seen from the download

3    of The Ministry of Petroleum of Iran. The information therein is established by way of the true

4    and correct copies thereof which are attached hereto marked *Exhibits "B" "C" "D" & "E."*

5    Declarant obtained this information from the website maintained by The Ministry of Petroleum.

6    The information relating to the subsidiaries of The Ministry of Petroleum is consistent with the

7    EIA/DOE Report, as set forth below.

8         4. Plaintiffs have ascertained this information. which Plaintiffs believe is readily reliable.

9    This is confirmed in part by information from the Energy Information Administration (EIA/DOE

10   Report), a true and correct copy of the report which is attached hereto marked *Exhibit "F."*

11        5. Section 1605A has been incorporated into the U.S. Code. and the legislation . and

12   specifically the conforming amendments, true and correct copies which are attached hereto marked

13   *Exhibit "G,"* in which the conforming amendments start at page 848.

14        I declare under penalty of perjury that the foregoing is true and correct.

15        Executed on May 20, 2008.

16

17                                        /s/ David J. Cook
                                        DAVID J. COOK, ESQ. (SB# 060859)
18

19   F:\USERS\DJCNEW\peterson.sfamendwritmpa

20

21

22

23

24

25

26

27

28   SUPPLEMENTAL DECLARATION OF DAVID J. COOK. ESQ. IN SUPPORT OF SECOND EX PARTE
     APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND
     ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
     CASE NO. 3:08-80030-JSW (BZ)                                                            2

# EXHIBIT "A"

## ALGIERS ACCORDS
January 19, 1981

## DECLARATION OF THE GOVERNMENT OF THE DEMOCRATIC AND POPULAR REPUBLIC OF ALGERIA

The Government of the Democratic and Popular Republic of Algeria, having been requested by the Governments of the Islamic Republic of Iran and the United States of America to serve as an intermediary in seeking a mutually acceptable resolution of the crisis in their relations arising out of the detention of the 52 United States nationals in Iran, has consulted extensively with the two governments as to the commitments which each is willing to make in order to resolve the crisis within the framework of the four points stated in the resolution of November 2, 1980, of the Islamic Consultative Assembly of Iran. On the basis of formal adherences received from Iran and the United States, the Government of Algeria now declares that the following interdependent commitments have been made by the two governments:

### General Principles

The undertakings reflected in this Declaration are based on the following general principles:

A. Within the framework of and pursuant to the provisions of the two Declarations of the Government of the Democratic and Popular Republic of Algeria, the United States will restore the financial position of Iran, in so far as possible, to that which existed prior to November 14, 1979.In this context, the United States commits itself to ensure the mobility and free transfer of all Iranian assets within its jurisdiction, as set forth in Paragraphs 4-9.

B. It is the purpose of both parties, within the framework of and pursuant to the provisions of the two Declarations of the Government of the Democratic and Popular Republic of Algeria, to terminate all litigation as between the Government of each party and the nationals of the other, and to bring about the settlement and termination of all such claims through binding arbitration. Through the procedures provided in the Declaration, relating to the Claims Settlement Agreement, the United States agrees to terminate all legal proceedings in United States courts involving claims of United States persons and institutions against Iran and its state enterprises, to nullify all attachments and judgments obtained therein, to prohibit all further litigation based on such claims, and to bring about the termination of such claims through binding arbitration.

#### *Point I: Non-Intervention in Iranian Affairs*

1. The United States pledges that it is and from now on will be the policy of the United States not to intervene, directly or indirectly, politically or militarily, in Iran's internal affairs.



*Points II and III: Return of Iranian Assets and Settlement of U.S. Claims*

2. Iran and the United States (hereinafter "the parties") will immediately select a mutually agreeable central bank (hereinafter "the Central Bank") to act, under the instructions of the Government of Algeria and the Central Bank of Algeria (hereinafter "The Algerian Central Bank") as depositary of the escrow and security funds hereinafter prescribed and will promptly enter into depositary arrangements with the Central Bank in accordance with the terms of this declaration. All funds placed in escrow with the Central Bank pursuant to this declaration shall be held in an account in the name of the Algerian Central Bank. Certain procedures for implementing the obligations set forth in this Declaration and in the Declaration of the Democratic and Popular Republic of Algeria concerning the settlement of claims by the Government of the United States and the Government of the Islamic Republic of Iran (hereinafter "the Claims Settlement Agreement") are separately set forth in certain Undertakings of the Government of the United States of America and the Government of the Islamic Republic of Iran with respect to the Declaration of the Democratic and Popular Republic of Algeria.

3. The depositary arrangements shall provide that, in the event that the Government of Algeria certifies to the Algerian Central Bank that the 52 U.S. nationals have safely departed from Iran, the Algerian Central Bank will thereupon instruct the Central Bank to transfer immediately all monies or other assets in escrow with the Central Bank pursuant to this declaration, provided that at any time prior to the making of such certification by the Government of Algeria, each of the two parties, Iran and the United States, shall have the right on seventy-two hours notice to terminate its commitments under this declaration.

If such notice is given by the United States and the foregoing certification is made by the Government of Algeria within the seventy-two hour period of notice, the Algerian Central Bank will thereupon instruct the Central Bank to transfer such monies and assets. If the seventy-two hour period of notice by the United States expires without such a certification having been made, or if the notice of termination is delivered by Iran, the Algerian Central Bank will thereupon instruct the Central Bank to return all such monies and assets to the United States, and thereafter the commitments reflected in this declaration shall be of no further force and effect.

## Assets in the Federal Reserve Bank

4 Commencing upon completion of the requisite escrow arrangements with the Central Bank, the United States will bring about the transfer to the Central Bank of all gold bullion which is owned by Iran and which is in the custody of the Federal Reserve Bank of New York, together with all other Iranian assets (or the cash equivalent thereof) in the custody of the Federal Reserve Bank of New York, to be held by the Central Bank in escrow until such time as their transfer or return is required by Paragraph 3 above.

## Assets in Foreign Branches of U.S. Banks

5. Commencing upon the completion of the requisite escrow arrangements with the

Central Bank, the United States will bring about the transfer to the Central Bank, to the account of the Algerian Central Bank, of all Iranian deposits and securities which on or after November 14, 1979, stood upon the books of overseas banking offices of U.S. banks, together with interest thereon through December 31, 1980, to be held by the Central Bank, to the account of the Algerian Central Bank, in escrow until such time as their transfer or return is required in accordance with Paragraph 3 of this Declaration.

### Assets in U.S. Branches of U.S. Banks

6. Commencing with the adherence by Iran and the United States to this declaration and the claims settlement agreement attached hereto, and following the conclusion of arrangements with the Central Bank for the establishment of the interest-bearing security account specified in that agreement and Paragraph 7 below, which arrangements will be concluded within 30 days from the date of this Declaration, the United States will act to bring about the transfer to the Central Bank, within six months from such date, of all Iranian deposits and securities in U.S. banking institutions in the United States, together with interest thereon, to be held by the Central Bank in escrow until such time as their transfer or return is required by Paragraph 3.

7. As funds are received by the Central Bank pursuant to Paragraph 6 above, the Algerian Central Bank shall direct the Central Bank to (1) transfer one- half of each such receipt to Iran and (2) place the other half in a special interest-bearing security account in the Central Bank, until the balance in the security account has reached the level of $1 billion. After the $1 billion balance has been achieved, the Algerian Central Bank shall direct all funds received pursuant to Paragraph 6 to be transferred to Iran. All funds in the security account are to be used for the sole purpose of securing the payment of, and paying, claims against Iran in accordance with the claims settlement agreement. Whenever the Central Bank shall thereafter notify Iran that the balance in the security account has fallen below $500 million, Iran shall promptly make new deposits sufficient to maintain a minimum balance of $500 million in the account. The account shall be so maintained until the President of the Arbitral Tribunal established pursuant to the claims settlement agreement has certified to the Central Bank of Algeria that all arbitral awards against Iran have been satisfied in accordance with the claims settlement agreement, at which point any amount remaining in the security account shall be transferred to Iran.

### Other Assets in the U.S. and Abroad

8. Commencing with the adherence of Iran and the United States to this declaration and the attached claims settlement agreement and the conclusion of arrangements for the establishment of the security account, which arrangements will be concluded within 30 days from the date of this Declaration, the United States will act to bring about the transfer to the Central Bank of all Iranian financial assets (meaning funds or securities) which are located in the United States and abroad, apart from those assets referred to in Paragraph 5 and 6 above, to be held by the Central Bank in escrow until their transfer or return is required by Paragraph 3 above.

9. Commencing with the adherence by Iran and the United States to this declaration and the attached claims settlement agreement and the making by the Government of Algeria of the certification described in Paragraph 3 above, the United States will arrange, subject to the provisions of U.S. law applicable prior to November 14, 1979, for the transfer to Iran of all Iranian properties which are located in the United States and abroad and which are not within the scope of the preceding paragraphs.

### Nullification of Sanctions and Claims

10. Upon the making by the Government of Algeria of the certification described in Paragraph 3 above, the United States will revoke all trade sanctions which were directed against Iran in the period November 4, 1979, to date.

11. Upon the making by the Government of Algeria of the certification described in Paragraph 3 above, the United States will promptly withdraw all claims now pending against Iran before the International Court of Justice and will thereafter bar and preclude the prosecution against Iran of any pending or future claim of the United States or a United States national arising out of events occurring before the date of this declaration related to (A) the seizure of the 52 United States nationals on November 4, 1979, (B) their subsequent detention, (C) injury to United States property or property of the United States nationals within the United States Embassy compound in Tehran after November 3, 1979, and (D) injury to the United States nationals or their property as a result of popular movements in the course of the Islamic Revolution in Iran which were not an act of the Government of Iran. The United States will also bar and preclude the prosecution against Iran in the courts of the United States of any pending or future claim asserted by persons other than the United States nationals arising out of the events specified in the preceding sentence.

### *Point IV: Return of the Assets of the Family of the Former Shah*

12. Upon the making by the Government of Algeria of the certification described in Paragraph 3 above, the United States will freeze, and prohibit any transfer of, property and assets in the United States within the control of the estate of the former Shah or of any close relative of the former Shah served as a defendant in U.S. litigation brought by Iran to recover such property and assets as belonging to Iran. As to any such defendant, including the estate of the former Shah, the freeze order will remain in effect until such litigation is finally terminated. Violation of the freeze order shall be subject to the civil and criminal penalties prescribed by U.S. law.

13. Upon the making by the Government of Algeria of the certification described in Paragraph 3 above, the United States will order all persons within U.S. jurisdiction to report to the U.S. Treasury within 30 days, for transmission to Iran, all information known to them, as of November 3, 1979, and as of the date of the order, with respect to the property and assets referred to in Paragraph 12. Violation of the requirement will be subject to the civil and criminal penalties prescribed by U.S. law.

14. Upon the making by the Government of Algeria of the certification described in Paragraph 3 above, the United States will make known, to all appropriate U.S. courts, that in any litigation of the kind described in Paragraph 12 above the claims of Iran should not be considered legally barred either by sovereign immunity principles or by the act of state doctrine and that Iranian decrees and judgments relating to such assets should be enforced by such courts in accordance with United States law.

15. As to any judgment of a U.S. court which calls for the transfer of any property or assets to Iran, the United States hereby guarantees the enforcement of the final judgment to the extent that the property or assets exist within the United States.

16. If any dispute arises between the parties as to whether the United States has fulfilled any obligation imposed upon it by Paragraphs 12-15, inclusive, Iran may submit the dispute to binding arbitration by the tribunal established by, and in accordance with the provisions of, the claims settlement agreement. If the tribunal determines that Iran has suffered a loss as a result of a failure by the United States to fulfill such obligation, it shall make an appropriate award in favor of Iran which may be enforced by Iran in the courts of any nation in accordance with its laws.

### Settlement of Disputes

17. If any other dispute arises between the parties as to the interpretation or performance of any provision of this declaration, either party may submit the dispute to binding arbitration by the tribunal established by, and in accordance with the provisions of, the claims settlement agreement. Any decision of the tribunal with respect to such dispute, including any award of damages to compensate for a loss resulting from a breach of this declaration or the claims settlement agreement, may be enforced by the prevailing party in the courts of any nation in accordance with its laws.

**UNDERTAKINGS OF THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND THE GOVERNMENT OF THE ISLAMIC REPUBLIC OF IRAN WITH RESPECT
TO THE DECLARATION OF THE GOVERNMENT OF THE DEMOCRATIC AND
POPULAR REPUBLIC OF ALGERIA**

1. At such time as the Algerian Central Bank notifies the Governments of Algeria, Iran. and the United States that it has been notified by the Central Bank that the Central Bank has received for deposit in dollar, gold bullion. and securities accounts in the name of the Algerian Central Bank, as escrow agent, cash and other funds, 1,632,917.779 ounces of gold (valued by the parties for this purpose at $0.9397 billion), and securities (at face value) in the aggregate amount of $7.955 billion. Iran shall immediately bring about the safe departure of the 52 U.S. nationals detained in Iran. Upon the making by the Government of Algeria of the certification described in Paragraph 3 of the Declaration. the Algerian Central Bank will issue the instructions required by the following paragraph.

2. Iran having affirmed its intention to pay all its debts and those of its controlled institutions, the Algerian Central Bank acting pursuant to Paragraph 1 above will issue the following instructions to the Central Bank:

(A) To transfer $3.667 billion to the Federal Reserve Bank of New York to pay the unpaid principal of and interest through December 31, 1980 on

(1) all loans and credits made by a syndicate of banking institutions, of which a U.S. banking institution is a member, to the Government of Iran, its agencies, instrumentalities or controlled entities. and

(2) all loans and credits made by such a syndicate which are guaranteed by the Government of Iran or any of its agencies, instrumentalities or controlled entities.

(B) To retain $1.418 billion in the escrow account for the purpose of paying the unpaid principal of the interest owing, if any, on the loans and credits referred to in Paragraph (A) after application of the $3.667 billion and on all other indebtedness held by United States banking institutions of. or guaranteed by, the Government of Iran, its agencies, instrumentalities or controlled entities not previously paid and for the purpose of paying disputed amounts of deposits, assets. and interests, if any, owing on Iranian deposits in U.S. banking institutions. Bank Markazi and the appropriate United States banking institutions shall promptly meet in an effort to agree upon the amounts owing.

In the event of such agreement, the Bank Markazi and the appropriate banking institution shall certify the amount owing to the Central Bank of Algeria which shall instruct the Bank of England to credit such amount to the account, as appropriate, of the Bank Markazi or of the Federal Reserve Bank of New York in order to permit payment to the appropriate banking institution. In the event that within 30 days any U.S. banking institution and the Bank Markazi are unable to agree upon the amounts owed. either party may refer such dispute to binding

arbitration by such international arbitration panel as the parties may agree. or failing such agreement within 30 additional days after such reference, by the Iran-United States Claims Tribunal. The presiding officer of such panel or tribunal shall certify to the Central Bank of Algeria the amount, if any, determined by it to be owed, whereupon the Central Bank of Algeria shall instruct the Bank of England to credit such amount to the account of the Bank Markazi or of the Federal Reserve Bank of New York in order to permit payment to the appropriate banking institution. After all disputes are resolved either by agreement or by arbitration award and appropriate payment has been made, the balance of the funds referred to in this Paragraph (B) shall be paid to Bank Markazi.

(C) To transfer immediately to. or upon the order of, the Bank Markazi all assets in the escrow account in excess of the amounts referred to in Paragraphs (A) and (B).

# DECLARATION OF THE GOVERNMENT OF THE DEMOCRATIC AND POPULAR REPUBLIC OF ALGERIA
## CONCERNING THE SETTLEMENT OF CLAIMS BY THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE ISLAMIC REPUBLIC OF IRAN

The Government of the Democratic and Popular Republic of Algeria, on the basis of formal notice of adherence received from the Government of the Islamic Republic of Iran and the Government of the United States of America, now declares that Iran and the United States have agreed as follows:

### Article I

Iran and the United States will promote the settlement of the claims described in Article II by the parties directly concerned. Any such claims not settled within six months from the date of entry into force of this agreement shall be submitted to binding third-party arbitration in accordance with the terms of this agreement. The aforementioned six months' period may be extended once by three months at the request of either party.

### Article II

1. An International Arbitral Tribunal (the Iran-United States Claims Tribunal) is hereby established for the purpose of deciding claims of nationals of the United States against Iran and claims of nationals of Iran against the United States, and any counterclaim which arises out of the same contract, transaction or occurrence that constitutes the subject matter of that national's claim, if such claims and counterclaims are outstanding on the date of this agreement, whether or not filed with any court, and arise out of debts, contracts (including transactions which are the subject of letters of credit or bank guarantees), expropriations or other measures affecting property rights, excluding claims described in Paragraph 11 of the Declaration of the Government of Algeria of January 19, 1981, and claims arising out of the actions of the United States in response to the conduct described in such paragraph, and excluding claims arising under a binding contract between the parties specifically providing that any disputes thereunder shall be within the sole jurisdiction of the competent Iranian courts in response to the Majlis position.

2. The Tribunal shall also have jurisdiction over official claims of the United States and Iran against each other arising out of contractual arrangements between them for the purchase and sale of goods and services.

3. The Tribunal shall have jurisdiction, as specified in Paragraphs 16-17 of the Declaration of the Government of Algeria of January 19, 1981, over any dispute as to the interpretation or performance of any provision of that declaration.

## Article III

1. The Tribunal shall consist of nine members or such larger multiple of three as Iran and the United States may agree are necessary to conduct its business expeditiously. Within ninety days after the entry into force of this agreement, each government shall appoint one-third of the members. Within thirty days after their appointment, the members so appointed shall by mutual agreement select the remaining third of the members and appoint one of the remaining third President of the Tribunal. Claims may be decided by the full Tribunal or by a panel of three members of the Tribunal as the President shall determine. Each such panel shall be composed by the President and shall consist of one member appointed by each of the three methods set forth above.

2. Members of the Tribunal shall be appointed and the Tribunal shall conduct its business in accordance with the arbitration rules of the United Nations Commission on International Trade Law (UNCITRAL) except to the extent modified by the parties or by the Tribunal to ensure that this agreement can be carried out. The UNCITRAL rules for appointing members of three-member Tribunals shall apply mutatis mutandis to the appointment of the Tribunal.

3. Claims of nationals of the United States and Iran that are within the scope of this agreement shall be presented to the Tribunal either by claimants themselves, or, in the case of claims of less than $250,000, by the Government of such national.

4. No claim may be filed with the Tribunal more than one year after the entry into force of this agreement or six months after the date the President is appointed, whichever is later. These deadlines do not apply to the procedures contemplated by Paragraphs 16 and 17 of the Declaration of the Government of Algeria of January 19, 1981.

## Article IV

1. All decisions and awards of the Tribunal shall be final and binding.

2. The President of the Tribunal shall certify, as prescribed in Paragraph 7 of the Declaration of the Government of Algeria of January 19, 1981, when all arbitral awards under this agreement have been satisfied.

3. Any award which the Tribunal may render against either government shall be enforceable against such government in the courts of any nation in accordance with its laws.

## Article V

The Tribunal shall decide all cases on the basis of respect for law, applying such choice of law rules and principles of commercial and international law as the Tribunal determines to be applicable, taking into account relevant usages of the trade, contract provisions and changed circumstances.

# EXHIBIT "B"





**Companies Affiliated To NIOC**

:: Home > Subsidiaries



**Companies Affiliated To The Ministry Of Petroleum**



### Ministry of Petroleum of IRAN Subsidiaries:

- National Iranian Oil Company
- National Iranian Gas Company
- National Iranian Petrochemical Company
- National Iranian Oil Refining and Distribution Company



#### Preface:

**T**he National Iranian Oil Company (NIOC) was established in February 1948 with the objective of exploration, development, production, marketing of crude oil and natural gas. Having in possession huge hydrocarbon reserves, NIOC is the fourth largest state oil firm in the world.

NIOC's oil and gas in place reserves are 137 bn barrels and 28.17 trillion cubic meters, respectively which gives it a unique status on the global energy supply map. In fact, in recent years, NIOC has been invariably ranked as the world's fourth largest oil company.

Current NIOC production capacities include over 4 million barrels of crude oil and in excess of 437 million cubic meters of natural gas per day. On the export side, the company benefits from its modern extensive facilities on the three islands of Kharg, Lavan and Siri consisting of 17 jetties capable of berthing tankers of all sizes to lift and export its crude oil.




**National Iranian Gas Export Company**
- Website: www.nigec.ir
- email: info@nigec.ir

**National Iranian South Oil Company**
- Website: www.nisoc.com
- email: info@nisoc.com

**National Iranian Offshore Oil Company**
- Website: www.iooc.co.ir
- email: webmaster@iooc.co.ir

**National Iranian Central Oil Fields Co.**
- Website: www.icofc.ir
- email: info@icofc.ir

**Khazar Exploration & Production Co.**

**Petroleum Engineering & Development Co.**
- Website: www.pedec.ir
- email: info@pedec.net

**Pars Oil and Gas Company**
- Website: www.pogc.org
- email: info@pogc.ir

**Pars Special Economic Energy Zone Co.**
- Website: www.pseez.com
- email: Info@pseez.com

**National Iranian Oil Terminals Company**
- Website: www.nioc-otc.com
- email: Info@nioc-otc.com

**National Iranian Drilling Company**
- Website: www.nidc.ir
- email: webmaster@nidc.ir

**North Drilling Company**



**Organizational Structure:**

**N**IOC's General Assembly (consisting of the President, Vice President, Director General of the Management and Planning Organization, Ministers of Oil, Energy, Industries and Mines, Labor and Social Affairs, Economy and Finance) is its highest decision marking body.
It determines the company's general policy guidelines, and approves annual budgets, operations, financial statements and balance sheets. The company's Board of Directors has the authority and major responsibilities to approve operational schemes within the general framework ratified by the General Assembly. It approves transactions and contracts, and prepares budgets and Board reports and annual balance sheets for presentation to the General Assembly. The Board supervises the implementation of general policy guidelines defined by the General Assembly, and pursues executive operations via the company's Managing Director.

**Subsidiary Companies:**

**W**ith appropriate division of tasks and delegation of responsibilities to subsidiaries-affiliates, NIOC has been able to establish acceptable degrees of coordination within its organizational set up. In fact, NIOC's "Directors" act primarily in policy making and supervision while subsidiaries act as their executive arm in coordinating an array of operations such as exploration, drilling, production and delivery of crude oil and natural gas, for export and domestic consumption.


•Website: www.northdrilling.com
•email:info@northdrilling.com

**PetroIran Development Company**
•Website: www.petroiran.com
•email:info@petroiran.com

**Ahwaz Pipe Mills Company**
•Website: www.apm-ir.com
•email: tabibi@apm-ir.com

**Petropars**
•Website: www.petropars.com
•email:webadmin@ppars.com

**Fuel Consumption Optimization Co.**
•Website: www.ifco.ir
•email:info@ifco.ir

**National Iranian Tanker Co.**
•Website: www.nitc.co.ir
•email:administrator@nitc.co.ir

**Exploration Service Company (ESC)**
•Website: www.oeoc.ir
•email: info@oeoc.ir

**Kala Naft London Ltd.**
•Website: www.kalaltd.com
•email:admin@kalaltd.com

**MSP Kala Naft Co. Tehran**
•Website: www.kalanaft.com
•email:info@kalanaft.com

**Arvandan Oil and Gas Company**
•Website: www.arvandan.org
•email:info@arvandan.org

**NIOC Today**
National Iranian Oil Company Today.
.wmv Format
4.37 MB

|Home| Subsidiaries| Tenders| Auctions|
|Seminars| News| Organization Chart| Contact|

© 2003, NIOC - National Iranian
Oil Company. All Rights Reserved.
email: webmaster@nioc.ir

# EXHIBIT "C"





Companies Affiliated To NIOC

:: Home > Subsidiaries



Home   About   **Subsidiaries**   Main Links   Contact Us



## Companies Affiliated To
# The Ministry Of Petroleum



### Ministry of Petroleum of IRAN Subsidiaries:

- National Iranian Oil Company
- National Iranian Gas Company
- National Iranian Petrochemical Company
- National Iranian Oil Refining and Distribution Company

**The most important capabilities of the company for jointcooperation with organizations and companies.**

**Advisory, engineering and studies services.**

- Technical and economical studies and presenting expertise advice on technical and economical justifications and the survey of fundamental projects.
- Engineering studies and the survey and assessment of great projects.
- Designing and engineering services and preparation of maps and determination of the Projects requirement list and or presenting advice required for construction and installations, pipelines and transfer networks, pumping and pressure reinforcement stations, dissociation and remoistening centres and gas refinery, supplying gas to industries and residential compounds and fuel transformation, catholic protection systems, power systems, precision tools and control and measurement equipment, communication 1 dispatching and telephone centre installation systems, mechanical systems and storing installations,
- Performing technical studies and comprehensive surveys for determination or change in industrial standards of the items and engineering, investigations and research on mechanical and chemical fields, chemicals and parts and laboratory services for physical and chemical tests and experiments chemicals, parts and metal and plastic items, different kinds of valves and appliances and gas burner instruments.
- Performing studies and surveying and presenting advisories for the security of installations and Buildings and technical inspection and quality control and instalment, construction and

#### Preface:

National Gas company of Iran as one of the four principal Co.'s affiliated to oil ministry of Islamic Republic of Iran with 25 billions Ris.initial capital has established in1344 A.H.or 1965 AD. This company, from the beginning of establishment up to now, appropriate to socioeconomical development growth and utilizing natural gas as one of the important sources in supplying fuel and energy production and obtaining some part of the required exchange, has gradually achieved various capabilities, competences and resources and possibilities including specialized and efficient man power with theoretical and actual insight and knowledge as well as numerous and various advanced and modern workshops, machinery, equipment, and tools for performing of the Co.'s operations, so that, today, it is able to do all affairs concerning calculation, designing and engineering, supplying the project goods from different sources, execution, manufacture and establishment , starting, utilization, and maintenance of refineries, high voltage transfer

pipeline, gas pressure increasing and decreasing stations, supply and in city networks, cathodic protection systems, dispatching and remote control, precision tools and control equipment systems provisional, financial, administrative, organizational and man power systems, by its own, complying with authentic international and acceptable standards.

From the start of its establishment in various circumstances specially in emergency and unusual conditions, for maintaining and continuation of the operations, by its strong and loyal supports of specialized and faithful forces and finding scientific, experimental and rational solutions the company has overcome the troubles and problems resulted from development of investment and continuation of the current operations, and provided, by changing, transforming and modifying and making use of Experimental, scientific sources, and engineering know ledges, techniques and technologies, and productivity and entrepreneurship and innovation, sufficient guarantees for continuation of operations in normal and optimum conditions, where attaining to such abilities in less than 30 yrs. for gas industry being so complicated, is much more like a miracle than reality.

establishment of preventive systems and instruments and or guarding against accidents specially explosion combustion and holocaust.

- Performing studies and surveying and presenting organizational and institutional advice.
- Performing studies and surveying and presenting advice for provision and supply of goods, store keeping systems and methods, and mechanization
- Performing studies and surveying and presenting advice for the method of prediction and installation and establishment of installation protection systems.
- Performing studies, surveying, designing and suggesting contractual, engineering, commercial, financial, and administrative methods and systems.

|Home| Subsidiaries| Tenders| Auctions|
|Seminars| News| Organization Chart| Contact|

© 2003, NIOC - National Iranian
Oil Company. All Rights Reserved.
email: webmaster@nioc.ir

# EXHIBIT "D"





Companies Affiliated To NIOC

≡ Home > Subsidiaries

Home    About    Subsidiaries    Main Links    Contact Us







Companies Affiliated To
**The Ministry Of Petroleum**



### Ministry of Petroleum of IRAN Subsidiaries:

- National Iranian Oil Company
- National Iranian Gas Company
- National Iranian Petrochemical Company
- National Iranian Oil Refining and Distribution Company

#### Preface:

The National Iranian Petrochemical Company (NIPC), a subsidiary to the Iranian Petroleum Ministry, is owned by the government of the Islamic Republic of Iran. It is responsible for the development and operation of the country's petrochemical sector.

Founded in 1964, NIPC began its activities by operating a small fertilizer plant. Today, NIPC is the second largest producer and exporter of petrochemicals in the Middle East. Over these years, it has not only expanded the range and volume of its products, but it has also taken steps in areas such as R&D to achieve more self-sufficiency.

Two special economic zones on the northern coast of the Persian Gulf have been developed to be home to the NIPC's new project. These two zones enjoy a good access to feedstock, infrastructural facilities, local and international markets and skilled manpower.

NIPC's major activities are production, sale, distribution and export of chemicals and petrochemicals. Currently allied with more than

**Pars Petrochemical Company**
- Website: www.parspc.net
- email: ppcs@parspc.net

**Shiraz Petrochemical Company**
- Website: www.spc-ir.com
- email: info@spc-ir.com

**Kharg Petrochemical Company**
- Website: www.khargpetrochemical.com
- email: kpc@khipc.com

**Razi Petrochemical Company**
- Website: www.razip.com
- email: info@razip.com

**Esfahan Petrochemical Company**
- Website: www.epciran.com
- email: info@epciran.com

**Bandar Emam Petrochemical Company**
- Website: www.bipc.org
- email: arpc@arpc-ir.net

**Arak Petrochemical Company**
- Website: www.arpc-ir.net
- email: info@pogc.ir

**Tabriz Petrochemical Company**
- Website: www.tpco.ir
- email: info@tpco.ir

**Khorasan Petrochemical Company**
- Website: www.khtpc.com
- email: khbpc@nipc.net

**Urmia Petrochemical Company**
- Website: www.upciran.ir
- email: info@upciran.ir

**Petrochemical Industries Developement Management Co.**
- Website: www.pidmco.net
- email: info@pidmco.net



50 subsidiaries, including 9 production complexes and 18 project implementing companies, NIPC operates as a mother company handling policy-making, planning, directing and overseeing the activities of its subsidiaries and affiliates.



**Iran Petrochemical Commercial Co.**
✆•Website: www.petrochem-ir.net
✉•email:pcc@petrochem-ir.net

**Petrochemical Operation Services Co.**
✆•Website: www.posc.ir
✉•email:

**Petzon Org.**
✆•Website: www.nipc.net
✉•email:petzon@nipc.net

**International Petrochemical Commercial Co.**
✆•Website: www.pccint.com
✉•email:pccint@pccint.com

© 2003, NIOC - National Iranian
Oil Company. All Rights Reserved.
email: webmaster@nioc.ir

# **EXHIBIT "E"**





**Companies Affiliated To NIOC**

Home   About   Subsidiaries   Main Links   Contact Us

:: Home > Subsidiaries

**The Ministry Of Petroleum**
Companies Affiliated To





**Ministry of Petroleum of IRAN Subsidiaries:**

- National Iranian Oil Company
- National Iranian Gas Company
- National Iranian Petrochemical Company
- National Iranian Oil Refining and Distribution Company



**History:**

Although National Iranian Oil Refining and Distribution Company ( NIORDC ) is formed nearly in the past decade and began its activities within a new framework, the company is actually inherited 90 years of Iran's Oil Industries experiences in the fields of refining, transferring and distributing of oil products, as well as, engineering and construction of installations of oil industries.
NIORDC and its subordinate companies has been established to separate oil upstream activities from downstream activities.NIORDC was established on March 08 / 1992 and undertook to perform all the operations related to refining crude oil and transfer and distribution of oil products.

**Task & Goals**
**Responsibilities and Duties of NIORDC:**

- Refining crude oil and producing variety of oil products in the refineries.

**Installations and capabilities of NIORDC:**

- Nine crude oil refineries in Tehran , Tabriz , Isfahan , Abadan , Kermanshah ,· Shiraz , Bandar Abbas , Arak and Lavan Island .
- Fourteen thousand kilometers of crude oil and oil product transfer pipelines.
- 150 pumping stations.
- Oil industry telecommunication network.
- Operational zones for pipelines and telecommunication.
- 35 operational zones for NIOPDC.
- 194 operational areas for NIOPDC.
- Storage tank installations with 8 milliard litre capacity.

**NIORDC Subsidiaries:**

 **National Iranian Oil Products Distribution Co.**
•Website: www.niopdc.ir
•email:info@niopdc.ir

 **Iranian Oil Pipeline and Telecommunication Co.**
•Website: www.ioptc.com
•email:

 **National Iranian Oil Engineering & Construction Co.**
•Website: www.nioec.org
•email:info@nioec.org

 **Abadan Oil Refining Company**
•Website: www.abadan-ref.ir
•email:info@abadan-ref.ir

**Isfahan Oil Refining Company**

- Transferring crude oil from production bases and "Khazar Terminal" to the refineries and also transferring oil products from refineries and import bases to distribution procurement depots and distribution centres.
- Main provider of energy and distributor of oil products.
- Performing all refining projects and schemes, transfer and storing.
- Production, transfer and distribution of 250 million litres of oil products per day.
- Daily export of around 60 million litres of oil products abroad via oil terminals.
- Providing different sectors – industry, agriculture and power plants – with fuel and feed regularly e.g. petrochemical complexes to help them continue production in the country.
- Providing consuming fuel in residential sector, business sector in urban and the peasantry communities all over the country.
- Providing more than 4 million vehicles – heavy and light – existing in the transportation cycle with their required daily fuel.

• Website: www.esfahan-refinery.ir
• email: info@esfahan-refinery.ir

**Arak Oil Refining Company**
• Website: www.saorc-ir.com
• email: public@saorc-ir.com

**Bandar Abbas Oil Refining Company**
• Website: www.baorco.ir
• email:

**Tehran Oil Refining Company**
• Website: www.tehranrefinery.ir
• email: info@tehranrefinery.ir

**Tabriz Oil Refining Company**
• Website: www.tbzrefinery.co.ir
• email: info@tbzrefinery.co.ir

**Shiraz Oil Refining Company**
• Website: www.sorc.ir
• email:

**Kermanshah Oil Refining Company**
• Website: www.korc.ir
• email: webmaster@korc.ir

**Lavan Oil Refining Company**
• Website: www.lorc.ir
• email: Info@lorc.ir

---

© 2003, NIOC - National Iranian Oil Company. All Rights Reserved. email: webmaster@nioc.ir