# EXHIBIT "F"



# Energy Information Administration
### Official Energy Statistics from the U.S. Government

ome > International > Country Analysis Briefs > Iran

Glossary

search

## Iran

### Oil

*Iran is OPEC's second-largest oil producer and the fourth-largest crude oil exporter in the world.*

According to *Oil and Gas Journal*, Iran has 136 billion barrels of proven oil reserves, or roughly 10 percent of the world's total proven petroleum reserves as of January 1, 2007. Iran has 40 producing fields, 27 onshore and 13 offshore, with the majority of crude oil reserves located in the southwestern Khuzestan region near the Iraqi border. Iran's crude oil is generally medium in sulfur content and in the 28°-35° API range.

**October 2007**

| Background |
| Oil |
| Natural Gas |
| Electricity |
| Quick Facts |
| Links |
| Sources |

Full Report
HTML
PDF

Contact Info
cabs@eia.doe.gov
(202)586-8800
[more contacts]



**Top Proven World Oil Reserves, January 1, 2007**

Saudi Arabia — 259.8
Canada — 179.2
Iran — 136.3
Iraq — 115.0
Kuwait — 99.0
UAE — 97.6
Venezuela — 80.0
Russia — 60.0
Libya — 41.5
Nigeria — 36.2
Kazakhstan — 30.0

**Billion Barrels**

Source: Oil & Gas Journal, Jan. 1, 2007

Iran is OPEC's second-largest producer after Saudi Arabia. In 2006, Iran produced an estimated 4.2 million barrels per day (bbl/d) of total liquids, of which 3.8 million bbl/d was crude oil, equal to 5 percent of global production.



**OPEC Total Crude Oil Production in 2006E**

Saudi Arabia — 9.2
Iran — 3.8
Kuwait — 2.5
Venezuela — 2.5
United Arab Emirates — 2.5
Nigeria — 2.2
Iraq — 2.0
Libya — 1.7
Algeria — 1.4
Indonesia — 0.9
Qatar — 0.8

**Million Barrels Per Day**

Source: EIA Short-Term Energy Outlook (May 2007)

Iran's oil consumption totaled 1.6 million bbl/d in 2006. The Iranian government heavily subsidizes the price of refined oil products which has contributed to increased domestic demand. Iran has limited refinery capacity to produce light fuels, and imports much of its gasoline supply. Iranian domestic oil demand is mainly for gasoline and automotive gasoils, but domestic demand for other oil products are declining due to the substitution of natural gas. However, it is an overall net petroleum products exporter due to large exports of residual fuel oil. Oil export revenues represent the majority of Iran's total exports earnings, but the country suffers from budget deficits due to a growing population and large government

subsidies on gasoline and food products. In 2005, the International Monetary Fund (IMF) estimated that energy subsidies accounted for 12 percent of Iran's GDP, the highest rate in the world according to an International Energy Agency (IEA) study.

| Major Iranian Oil Field Production and Reserves, 2006 | | |
|---|---|---|
| Field | Production Capacity Thousand (bbl/d) | Reserves Millions of Barrels |
| Ahwaz-Asmari | 700 | 10,100 |
| Marun | 520 | 9,500 |
| Gachsaran | 480 | 8,500 |
| Karanj-Parsi | 250 | 4,650 |
| Agha Jari | 200 | 8,700 |
| Nowrooz and Soroosh | 200 | 6,000 |
| Doroud 1 & 2 | 200 | 600 |
| Rag-e-Safid | 180 | 2,400 |
| Bangestan | 158 | 6,500 |
| Abu Zar | 140 | 50 |
| Sirri A & E/C & D | 130 | 1,200 |
| Salman | 100 | 800 |
| Major Field Total: | 3,258 | 59,000 |

Source: Global Insight

Iran produced 6 million bbl/d of crude oil in 1974, but has been unable to produce at that level since the 1979 revolution due to a combination of war, limited investment, sanctions, and a high rate of natural decline in Iran's mature oil fields. Iran's oil fields need structural upgrades including enhanced oil recovery (EOR) efforts such as natural gas injection. Iran's fields have a natural annual decline rate estimated at 8 percent onshore and 10 percent offshore, while current Iranian recovery rates are 24-27 percent, 10 percent less than the world average. It is estimated that 400,000-500,000 bbl/d of crude production is lost annually due to reservoir damage and decreases in existing oil deposits.

*Upstream Projects*
The Azadegan project phases I and II represent the greatest potential increase in Iranian crude oil production. Azadegan contains 26 billion barrels of proven crude oil reserves, but is geologically complex and difficult to extract. Iran and Venezuela have agreed on a $4 billion investment in the Ayacucho 7 block, where there are an estimated 31 billion barrels of oil. Iran's Northern Drilling Company (NDC) has also worked with Russia's Lukoil on oil field development in the Caspian Sea. (See Caspian Sea Analysis Brief)

| New Major Iranian Upstream Projects through 2012 | | | |
|---|---|---|---|
| Field | Company | Thousand bbl/d | Online |
| Salman, Foroozan, Daroud | Total, Petro Iran | 200 | 2007 |
| Darkhovin, Phase II & III | ENI | 100 | 2007 |
| South Pars (Ahwaz) | NOIC | 150 | 2008 |
| Azadegan Phase I (south) | NIOC | 100 | 2009 |
| Kushk-Hosseinieh | NOIC | 300 | 2010 |
| Yadavaran | NIOC & Chinese Partners | 300 | 2011 |
| Azadegan Phase II (north) | NOIC | 110 | 2012 |
| New Potential Total: | | 1,260 | |

Source: OPEC, *Global Insight*

Iran plans to increase oil production to over 5 million bbl/d by 2010, but it will need foreign help. According to *Global Insight*, an estimated $25-35 billion is required to meet the government's 5.8 million bbl/d target by 2015. Investment in Iran's energy sector has been tempered due to the election of the conservative government of President Mahmoud Ahmadinejad in 2005, the international controversy surrounding the Iranian uranium enrichment and nuclear program, and economic sanctions. According to the IEA 2007 Medium-Term Oil Market Report, Iran will not be able to increase its net expansion capacity through 2012.

## U.S. Sanctions
U.S. sanctions against Iran due to Iran's historic support for international terrorism and its actions against non-belligerent shipping in the Persian Gulf impact the development of its petroleum sector. According to the Iran Transactions Regulations, administered by the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC), U.S. persons may not directly or indirectly trade, finance, or facilitate any goods, services or technology going to or from Iran, including goods, services or technology that would benefit the Iranian oil industry. U.S. persons are also prohibited from entering into or approving any contract that includes the supervision, management or financing of the development of petroleum resources located in Iran.

## Sector Organization
The state-owned National Iranian Oil Company (NIOC) is responsible for oil and gas production and exploration. The National Iranian South Oil Company (NISOC), a subsidiary of NIOC, accounts for 80

percent of local oil production covering the provinces of Khuzestan, Bushehr, Fars, and Kohkiluyeh va Boyer Ahamd. Though private ownership of upstream functions is prohibited under the Iranian constitution, the government has allowed for buyback contracts which allow international oil companies (IOCs) to enter exploration and development through an Iranian affiliate. The contractor receives a remuneration fee, usually an entitlement to oil or gas from the developed operation. In August 2007, President Mahmoud Ahmadinejad appointed NIOC executive Gholamhossein Nozari to serve as Acting Oil Minister, replacing Vaziri Hamaneh and creating controversy over President Ahmadinejad's role in the energy sector.

## Exports

According to International Energy Agency's Monthly Oil Data Service and Global Trade Atlas, Iran's net crude and product exports in 2006 averaged 2.5 million bbl/d, primarily to Japan, China, India, South Korea, Italy, and other Organization for Economic Co-operation and Development (OECD) nations, making it the fourth-largest exporter of crude oil in the world. In 2006, Iran's oil export revenues amounted to $54 billion.

| Top Iranian Crude Oil Exports, 2006 | |
|---|---|
| Country | Thousand (bbl/d) |
| Japan | 448 |
| China | 335 |
| India* | 302 |
| South Korea | 204 |
| Italy | 191 |
| Turkey | 179 |
| France | 135 |
| South Africa | 127 |
| Taiwan | 117 |
| Greece | 117 |
| Other | 345 |
| **Total Exports:** | **2,500** |
| *India's imports only reported for April-August 2006 | |
| Source: IEA Monthly Oil Data Service, March 2007; Global Trade Atlas | |

### Iran's Oil Production and Consumption, 1976-2006E



Source: EIA *International Petroleum Monthly*
Short-Term Energy Outlook (July 2007)

### Export Terminals

Iran has the largest oil tanker fleet in the Middle East, the National Iranian Tanker Company, which holds 29 ships including Very Large Crude Carriers. Kharg Island is the country's largest terminal with a holding capacity of 16 million barrels of oil and a loading capacity of 5 million bbl/d, followed by Lavan Island with capacity to store 5 million barrels and loading capacity of 200,000 bbl/d. Other important terminals include Kish Island, Abadan and Bandar Mahshar, and Neka, which helps facilitate imports from the Caspian region. The Strait of Hormuz, on the southeastern coast of Iran, is an important route for oil exports from Iran and other Persian Gulf countries. (See Persian Gulf Analysis Brief) At its narrowest point the Strait of Hormuz is 34 miles wide, yet an estimated 17 million barrels, or roughly two-fifths of all seaborne traded oil, flows through the Strait daily. Iranian Heavy Crude Oil is Iran's largest crude export at 1.6 million bbl/d followed by Iranian Light at 1 million bbl/d.

| National Iranian Oil Company (NIOC) Crude Exports by Blend | | | |
|---|---|---|---|
| Name | API Gravity | Sulfur Content | Exports (bbl/d) |
| Iranian Heavy | 31° | 1.70% | 1.6 million |
| Iranian Light | 34.6° | 1.40% | 1 million |
| Foroozan Blend and Sirri | 29-31° | n/a | 165,000 |
| Lavan Blend | 34-35° | 1.8-2% | 75,000 |

### Refining

Iran's total refinery capacity is 1.5 million bbl/d from nine refineries operated by the National Iranian Oil Refining and Distribution Company (NIORDC), a NIOC subsidiary. Iranian refineries are unable to keep pace with domestic demand, and face major infrastructure problems. The country plans to add around 985,000 bbl/d of refining capacity by 2012, mostly through expansions and upgrades for gasoline yields at the Bandar Abbas, Bushehr, and the 90-year-old Abadan refineries. Large expansion projects at Bandar Abbas, including new catalytic reformers, distillation units, and condensate splitters will help supply the domestic demand, but it will probably not eliminate all gasoline imports. Iran has also discussed joint ventures in Asia, including China, Indonesia, Malaysia, and Singapore to expand refining activity.

| IRAN REFINERY PROJECTS (through 2012) | | | | |
|---|---|---|---|---|
| Refinery | Project Type | Online | Additional Production Capacity (thousand bbl/d) | Notes |
| Bandar Abbas | Upgrade & Expansion | 2012 | 300 | heavy crude processing |
| Bushehr | New Refinery | TBD | 170 | |
| Abadan | Upgrade | 2009 | 140 | |
| Abadan | New Refinery | 2012 | 80 | gasoline production |
| Arak | Expansion | 2009 | 80 | |
| Bandar Assaluyeh | New Refinery | TBD | 80 | |
| Bandar Abbas | Expansion | 2009 | 60 | |
| Tehran | Expansion | 2012 | 50 | gasoline production |
| Tabriz | Expansion | 2012 | 25 | gasoline production |
| Total New Refinery Capacity: | | | 985 | |

Source: PFC Energy, *Global Insight*

### Pipelines

Iran has an expansive domestic oil network including 5 pipelines, and multiple international pipeline projects under consideration. Recently, an expansion of the 150 mile pipeline from the port of Neka on the Caspian coast to Rey, Tabriz, and Tehran refineries has reached a capacity of 300,000 bbl/d according to *Global Insight*. Iran has invested in its import capacity at the Caspian port to handle increased product shipments from Russia and Azerbaijan, and enable crude swaps with Turkmenistan and Kazakhstan. In the case of crude swaps, the oil from the Caspian is consumed domestically in Iran, and an equivalent amount of oil is produced for export through the Persian Gulf with a Swiss-trading arm of NIOC for a swap fee.

*In 2006, Iran imported over 192,000 bbl/d of gasoline and relied upon imports to meet almost half of its fuel needs costing $5 billion.*

### Gasoline

Iran is the second biggest gasoline importer in the world after the United States, consuming over 400,000 bbl/d. According to FACTS Global Energy, Iran imported over 192,000 bbl/d of gasoline in 2006 costing $5 billion. The gasoline consumption growth rate has averaged ten percent annually over the past six years, and the cost of imports is expected to reach $6 billion in 2007, up from $2.8 billion in 2005. Gasoline prices are heavily subsidized, and sold below the market price at around 42 cents per gallon, which has encouraged increased consumption. An increase in vehicle sales in recent years has also contributed to the problem. According to PFC Energy, car ownership in Iran grew 250 percent between 1990 and 2006, and a majority of these vehicles are older models. Gasoline powered vehicles in Iran are expected to reach 14.9 million by the end of 2007. Iran does not have sufficient refining capacity to meets its domestic gasoline and other light fuel needs. Therefore Iran imports gasoline from India, Turkmenistan, Azerbaijan, the Netherlands, France, Singapore, and the United Arab Emirates. Iran also imports from large, multinational wholesalers such as BP, Shell, Total, Vitol, LUKoil, and several Chinese companies.

### New Gasoline Rationing System

In June 2007, the Iranian government instituted a gasoline rationing system. The decision followed a 25 percent price increase to 42 cents per gallon in May. NIORDC is responsible for the program which allows private cars to purchase 26 gallons per month and taxis to buy 211 gallons per month. The rations and increased costs are politically unpopular in Iran. Customers are allowed to purchase their ration six months in advance. Part-time taxis, commercial vehicles, and government vehicles also have special

allowances. Records are maintained on smart cards, and later this year the government is expected to announce the price for gasoline bought beyond quota levels.

Iran's gasoline consumption dropped 30 percent immediately after the rationing scheme was adopted. NIOC executive, Hojjatollah Ghanimifard, stated that Iranian gasoline imports for August 2007 dropped 14 percent, although an additional $1.5 billion was requested by the Iranian Oil Ministry to increase gasoline imports through March 2008. The International Energy Agency reported in its August 2007 Oil Market Update that gasoline consumption will likely increase again due to the fact that Iran allows advance purchase of gasoline at a subsidized rate. The combination of rationing, price hikes, increased refining capacity, as well as compressed natural gas (CNG) production, will reduce Iranian gasoline import demand by an estimated 30,000 bbl/d in the next three years according to FACTS Global Energy.

Contact Us □ Feedback □ Privacy/Security □ Jobs □ About Us

# EXHIBIT "G"

841

1        (2) such other findings, conclusions, and rec-

2    ommendations for improving the capabilities of the

3    Department for homeland defense as the advisory

4    panel considers appropriate.

5 **SEC. 1083. TERRORISM EXCEPTION TO IMMUNITY.**

6    (a) TERRORISM EXCEPTION TO IMMUNITY.—

7        (1) IN GENERAL.—Chapter 97 of title 28,

8    United States Code, is amended by inserting after

9    section 1605 the following:

10 **"§ 1605A. Terrorism exception to the jurisdictional**

11               **immunity of a foreign state**

12    "(a) IN GENERAL.—

13        "(1) NO IMMUNITY.—A foreign state shall not

14    be immune from the jurisdiction of courts of the

15    United States or of the States in any case not other-

16    wise covered by this chapter in which money dam-

17    ages are sought against a foreign state for personal

18    injury or death that was caused by an act of torture,

19    extrajudicial killing, aircraft sabotage, hostage tak-

20    ing, or the provision of material support or resources

21    for such an act if such act or provision of material

22    support or resources is engaged in by an official,

23    employee, or agent of such foreign state while acting

24    within the scope of his or her office, employment, or

25    agency.



842

1          "(2) CLAIM HEARD.—The court shall hear a

2     claim under this section if—

3              "(A)(i)(I) the foreign state was designated

4          as a state sponsor of terrorism at the time the

5          act described in paragraph (1) occurred, or was

6          so designated as a result of such act, and, sub-

7          ject to subclause (II), either remains so des-

8          ignated when the claim is filed under this sec-

9          tion or was so designated within the 6-month

10         period before the claim is filed under this sec-

11         tion; or

12             "(II) in the case of an action that is refiled

13         under this section by reason of section

14         1083(c)(2)(A) of the National Defense Author-

15         ization Act for Fiscal Year 2008 or is filed

16         under this section by reason of section

17         1083(c)(3) of that Act, the foreign state was

18         designated as a state sponsor of terrorism when

19         the original action or the related action under

20         section 1605(a)(7) (as in effect before the en-

21         actment of this section) or section 589 of the

22         Foreign Operations, Export Financing, and Re-

23         lated Programs Appropriations Act, 1997 (as

24         contained in section 101(c) of division A of

25         Public Law 104–208) was filed;



F:\GMK\ASCR08\REINTRO.002                                    H.L.C.

843

1              "(ii) the claimant or the victim was, at the
2       time the act described in paragraph (1)
3       occurred—

4                      "(I) a national of the United States;
5                      "(II) a member of the armed forces;
6              or

7                      "(III) otherwise an employee of the
8              Government of the United States, or of an
9              individual performing a contract awarded
10             by the United States Government, acting
11             within the scope of the employee's employ-
12             ment; and

13             "(iii) in a case in which the act occurred
14      in the foreign state against which the claim has
15      been brought, the claimant has afforded the
16      foreign state a reasonable opportunity to arbi-
17      trate the claim in accordance with the accepted
18      international rules of arbitration; or

19             "(B) the act described in paragraph (1) is
20      related to Case Number 1:00CV03110 (EGS)
21      in the United States District Court for the Dis-
22      trict of Columbia.

23      "(b) LIMITATIONS.—An action may be brought or
24 maintained under this section if the action is commenced,
25 or a related action was commenced under section

844

1   1605(a)(7) (before the date of the enactment of this sec-

2   tion) or section 589 of the Foreign Operations, Export Fi-

3   nancing, and Related Programs Appropriations Act, 1997

4   (as contained in section 101(c) of division A of Public Law

5   104–208) not later than the latter of—

6          "(1) 10 years after April 24, 1996; or

7          "(2) 10 years after the date on which the cause

8       of action arose.

9       "(c) PRIVATE RIGHT OF ACTION.—A foreign state

10  that is or was a state sponsor of terrorism as described

11  in subsection (a)(2)(A)(i), and any official, employee, or

12  agent of that foreign state while acting within the scope

13  of his or her office, employment, or agency, shall be liable

14  to—

15         "(1) a national of the United States,

16         "(2) a member of the armed forces,

17         "(3) an employee of the Government of the

18      United States, or of an individual performing a con-

19      tract awarded by the United States Government,

20      acting within the scope of the employee's employ-

21      ment, or

22         "(4) the legal representative of a person de-

23      scribed in paragraph (1), (2), or (3),

24  for personal injury or death caused by acts described in

25  subsection (a)(1) of that foreign state, or of an official,

H.L.C.

845

1 employee, or agent of that foreign state, for which the

2 courts of the United States may maintain jurisdiction

3 under this section for money damages. In any such action,

4 damages may include economic damages, solatium, pain

5 and suffering, and punitive damages. In any such action,

6 a foreign state shall be vicariously liable for the acts of

7 its officials, employees, or agents.

8     "(d) ADDITIONAL DAMAGES.—After an action has

9 been brought under subsection (c), actions may also be

10 brought for reasonably foreseeable property loss, whether

11 insured or uninsured, third party liability, and loss claims

12 under life and property insurance policies, by reason of

13 the same acts on which the action under subsection (c)

14 is based.

15     "(e) SPECIAL MASTERS.—

16         "(1) IN GENERAL.—The courts of the United

17         States may appoint special masters to hear damage

18         claims brought under this section.

19         "(2) TRANSFER OF FUNDS.—The Attorney

20         General shall transfer, from funds available for the

21         program under section 1404C of the Victims of

22         Crime Act of 1984 (42 U.S.C. 10603c), to the Ad-

23         ministrator of the United States district court in

24         which any case is pending which has been brought

25         or maintained under this section such funds as may

846

1    be required to cover the costs of special masters ap-

2    pointed under paragraph (1). Any amount paid in

3    compensation to any such special master shall con-

4    stitute an item of court costs.

5        ''(f) APPEAL.—In an action brought under this sec-

6    tion, appeals from orders not conclusively ending the liti-

7    gation may only be taken pursuant to section 1292(b) of

8    this title.

9        ''(g) PROPERTY DISPOSITION.—

10           ''(1) IN GENERAL.—In every action filed in a

11        United States district court in which jurisdiction is

12        alleged under this section, the filing of a notice of

13        pending action pursuant to this section, to which is

14        attached a copy of the complaint filed in the action,

15        shall have the effect of establishing a lien of lis

16        pendens upon any real property or tangible personal

17        property that is—

18               ''(A) subject to attachment in aid of execu-

19            tion, or execution, under section 1610;

20               ''(B) located within that judicial district;

21            and

22               ''(C) titled in the name of any defendant,

23            or titled in the name of any entity controlled by

24            any defendant if such notice contains a state-

25            ment listing such controlled entity.



F:\GMK\ASCR08\REINTRO.002                                H.L.C.

847

1          "(2) NOTICE.—A notice of pending action pur-

2     suant to this section shall be filed by the clerk of the

3     district court in the same manner as any pending

4     action and shall be indexed by listing as defendants

5     all named defendants and all entities listed as con-

6     trolled by any defendant.

7          "(3) ENFORCEABILITY.—Liens established by

8     reason of this subsection shall be enforceable as pro-

9     vided in chapter 111 of this title.

10    "(h) DEFINITIONS.—For purposes of this section—

11          "(1) the term 'aircraft sabotage' has the mean-

12    ing given that term in Article 1 of the Convention

13    for the Suppression of Unlawful Acts Against the

14    Safety of Civil Aviation;

15          "(2) the term 'hostage taking' has the meaning

16    given that term in Article 1 of the International

17    Convention Against the Taking of Hostages;

18          "(3) the term 'material support or resources'

19    has the meaning given that term in section 2339A

20    of title 18;

21          "(4) the term 'armed forces' has the meaning

22    given that term in section 101 of title 10;

23          "(5) the term 'national of the United States'

24    has the meaning given that term in section

848

1    101(a)(22) of the Immigration and Nationality Act

2    (8 U.S.C. 1101(a)(22));

3        "(6) the term 'state sponsor of terrorism'

4    means a country the government of which the Sec-

5    retary of State has determined, for purposes of sec-

6    tion 6(j) of the Export Administration Act of 1979

7    (50 U.S.C. App. 2405(j)), section 620A of the For-

8    eign Assistance Act of 1961 (22 U.S.C. 2371), sec-

9    tion 40 of the Arms Export Control Act (22 U.S.C.

10    2780), or any other provision of law, is a govern-

11    ment that has repeatedly provided support for acts

12    of international terrorism; and

13        "(7) the terms 'torture' and 'extrajudicial kill-

14    ing' have the meaning given those terms in section

15    3 of the Torture Victim Protection Act of 1991 (28

16    U.S.C. 1350 note).".

17        (2) AMENDMENT TO CHAPTER ANALYSIS.—The

18    table of sections at the beginning of chapter 97 of

19    title 28, United States Code, is amended by insert-

20    ing after the item relating to section 1605 the fol-

21    lowing:



"1605A. Terrorism exception to the jurisdictional immunity of a foreign state.".

22    (b) CONFORMING AMENDMENTS.—

23        (1) GENERAL EXCEPTION.—Section 1605 of

24    title 28, United States Code, is amended—

25        (A) in subsection (a)—

F:\V100\1608\011608.044
January 16, 2008 (11:12 AM)



F:\GMK\ASCR08\REINTRO.002                                      H.L.C.

849

1          (i) in paragraph (5)(B), by inserting

2      "or" after the semicolon;

3          (ii) in paragraph (6)(D), by striking

4      "; or" and inserting a period; and

5          (iii) by striking paragraph (7);

6          (B) by repealing subsections (e) and (f);

7      and

8          (C) in subsection (g)(1)(A), by striking

9      "but for subsection (a)(7)" and inserting "but

10     for section 1605A".

11         (2) COUNTERCLAIMS.—Section 1607(a) of title

12     28, United States Code, is amended by inserting "or

13     1605A" after "1605".

14         (3) PROPERTY.—Section 1610 of title 28,

15     United States Code, is amended—

16         (A) in subsection (a)(7), by striking

17     "1605(a)(7)" and inserting "1605A";

18         (B) in subsection (b)(2), by striking "(5),

19     or (7), or 1605(b)" and inserting "or (5),

20     1605(b), or 1605A";

21         (C) in subsection (f), in paragraphs (1)(A)

22     and (2)(A), by inserting "(as in effect before

23     the enactment of section 1605A) or section

24     1605A" after "1605(a)(7)"; and

25         (D) by adding at the end the following:

January 16, 2008 (11:42 AM)
F:\V10\011608\011608.044



850

1    "(g) PROPERTY IN CERTAIN ACTIONS.—

2    "(1) IN GENERAL.—Subject to paragraph (3),

3 the property of a foreign state against which a judge-

4 ment is entered under section 1605A, and the prop-

5 erty of an agency or instrumentality of such a state,

6 including property that is a separate juridical entity

7 or is an interest held directly or indirectly in a sepa-

8 rate juridical entity, is subject to attachment in aid

9 of execution, and execution, upon that judgment as

10 provided in this section, regardless of—

11    "(A) the level of economic control over the

12 property by the government of the foreign state;

13    "(B) whether the profits of the property go

14 to that government;

15    "(C) the degree to which officials of that

16 government manage the property or otherwise

17 control its daily affairs;

18    "(D) whether that government is the sole

19 beneficiary in interest of the property; or

20    "(E) whether establishing the property as

21 a separate entity would entitle the foreign state

22 to benefits in United States courts while avoid-

23 ing its obligations.

24    "(2) UNITED STATES SOVEREIGN IMMUNITY IN-

25 APPLICABLE.—Any property of a foreign state, or

1   agency or instrumentality of a foreign state, to

2   which paragraph (1) applies shall not be immune

3   from attachment in aid of execution, or execution,

4   upon a judgment entered under section 1605A be-

5   cause the property is regulated by the United States

6   Government by reason of action taken against that

7   foreign state under the Trading With the Enemy

8   Act or the International Emergency Economic Pow-

9   ers Act.

10      "(3) THIRD-PARTY JOINT PROPERTY HOLD-

11   ERS.—Nothing in this subsection shall be construed

12   to supersede the authority of a court to prevent ap-

13   propriately the impairment of an interest held by a

14   person who is not liable in the action giving rise to

15   a judgment in property subject to attachment in aid

16   of execution, or execution, upon such judgment.".

17      (4) VICTIMS OF CRIME ACT.—Section

18   1404C(a)(3) of the Victims of Crime Act of 1984

19   (42 U.S.C. 10603c(a)(3)) is amended by striking

20   "December 21, 1988 with respect to which an inves-

21   tigation or" and inserting "October 23, 1983, with

22   respect to which an investigation or civil or crimi-

23   nal".

24   (c) APPLICATION TO PENDING CASES.—



852

1    (1) IN GENERAL.—The amendments made by
2    this section shall apply to any claim arising under
3    section 1605A of title 28, United States Code.

4    (2) PRIOR ACTIONS.—

5        (A) IN GENERAL.—With respect to any ac-
6        tion that—

7            (i)    was    brought    under    section
8            1605(a)(7) of title 28, United States Code,
9            or section 589 of the Foreign Operations,
10           Export Financing, and Related Programs
11           Appropriations Act, 1997 (as contained in
12           section 101(c) of division A of Public Law
13           104–208), before the date of the enact-
14           ment of this Act,

15           (ii) relied upon either such provision
16           as creating a cause of action,

17           (iii) has been adversely affected on the
18           grounds that either or both of these provi-
19           sions  fail  to  create  a  cause  of  action
20           against the state, and

21           (iv) as of such date of enactment, is
22           before the courts in any form, including on
23           appeal or motion under rule 60(b) of the
24           Federal Rules of Civil Procedure,



H.L.C.

853

1    that action, and any judgment in the action
2    shall, on motion made by plaintiffs to the
3    United States district court where the action
4    was initially brought, or judgment in the action
5    was initially entered, be given effect as if the
6    action had originally been filed under section
7    1605A(c) of title 28, United States Code.

8        (B) DEFENSES WAIVED.—The defenses of
9    res judicata, collateral estoppel, and limitation
10    period are waived—

11            (i) in any action with respect to which
12        a motion is made under subparagraph (A),
13        or

14            (ii) in any action that was originally
15        brought, before the date of the enactment
16        of this Act, under section 1605(a)(7) of
17        title 28, United States Code, or section
18        589 of the Foreign Operations, Export Fi-
19        nancing, and Related Programs Appropria-
20        tions Act, 1997 (as contained in section
21        101(c) of division A of Public Law 104–
22        208), and is refiled under section 1605A(c)
23        of title 28, United States Code,

24    to the extent such defenses are based on the
25    claim in the action.



F:\GMK\ASCR08\REINTRO.002                                  H.L.C.

854

1              (C) TIME LIMITATIONS.—A motion may be

2          made or an action may be refiled under sub-

3          paragraph (A) only—

4                  (i) if the original action was com-

5              menced not later than the latter of—

6                      (I) 10 years after April 24, 1996;

7                  or

8                      (II) 10 years after the cause of

9                  action arose; and

10                 (ii) within the 60-day period begin-

11             ning on the date of the enactment of this

12             Act.

13          (3) RELATED ACTIONS.—If an action arising

14     out of an act or incident has been timely commenced

15     under section 1605(a)(7) of title 28, United States

16     Code, or section 589 of the Foreign Operations, Ex-

17     port Financing, and Related Programs Appropria-

18     tions Act, 1997 (as contained in section 101(c) of

19     division A of Public Law 104–208), any other action

20     arising out of the same act or incident may be

21     brought under section 1605A of title 28, United

22     States Code, if the action is commenced not later

23     than the latter of 60 days after—

24          (A) the date of the entry of judgment in

25     the original action; or



1          (B) the date of the enactment of this Act.

2          (4) PRESERVING THE JURISDICTION OF THE

3     COURTS.—Nothing in section 1503 of the Emer-

4     gency Wartime Supplemental Appropriations Act,

5     2003 (Public Law 108–11, 117 Stat. 579) has ever

6     authorized, directly or indirectly, the making inappli-

7     cable of any provision of chapter 97 of title 28,

8     United States Code, or the removal of the jurisdic-

9     tion of any court of the United States.

10   (d) APPLICABILITY TO IRAQ.—

11          (1) APPLICABILITY.—The President may waive

12     any provision of this section with respect to Iraq, in-

13     sofar as that provision may, in the President's deter-

14     mination, affect Iraq or any agency or instrumen-

15     tality thereof, if the President determines that—

16              (A) the waiver is in the national security

17          interest of the United States;

18              (B) the waiver will promote the reconstruc-

19          tion of, the consolidation of democracy in, and

20          the relations of the United States with, Iraq;

21          and

22              (C) Iraq continues to be a reliable ally of

23          the United States and partner in combating

24          acts of international terrorism.



856

(2) TEMPORAL SCOPE.—The authority under paragraph (1) shall apply—

    (A) with respect to any conduct or event occurring before or on the date of the enactment of this Act;

    (B) with respect to any conduct or event occurring before or on the date of the exercise of that authority; and

    (C) regardless of whether, or the extent to which, the exercise of that authority affects any action filed before, on, or after the date of the exercise of that authority or of the enactment of this Act.

(3) NOTIFICATION TO CONGRESS.—A waiver by the President under paragraph (1) shall cease to be effective 30 days after it is made unless the President has notified Congress in writing of the basis for the waiver as determined by the President under paragraph (1).

(4) SENSE OF CONGRESS.—It is the sense of the Congress that the President, acting through the Secretary of State, should work with the Government of Iraq on a state-to-state basis to ensure compensation for any meritorious claims based on terrorist acts committed by the Saddam Hussein re-



F:\GMK\ASCR08\REINTRO.002                                           H.L.C.

857

1    gime against individuals who were United States na-

2    tionals or members of the United States Armed

3    Forces at the time of those terrorist acts and whose

4    claims cannot be addressed in courts in the United

5    States due to the exercise of the waiver authority

6    under paragraph (1).

7        (e) SEVERABILITY.—If any provision of this section

8    or the amendments made by this section, or the applica-

9    tion of such provision to any person or circumstance, is

10   held invalid, the remainder of this section and such

11   amendments, and the application of such provision to

12   other persons not similarly situated or to other cir-

13   cumstances, shall not be affected by such invalidation.

# TITLE XI—CIVILIAN PERSONNEL MATTERS

Sec. 1101. Extension of authority to waive annual limitation on total compensa-
            tion paid to Federal civilian employees working overseas under
            areas of United States Central Command.
Sec. 1102. Continuation of life insurance coverage for Federal employees called
            to active duty.
Sec. 1103. Transportation of dependents, household effects, and personal prop-
            erty to former home following death of Federal employee where
            death resulted from disease or injury incurred in the Central
            Command area of responsibility.
Sec. 1104. Special benefits for civilian employees assigned on deployment tem-
            porary change of station.
Sec. 1105. Death gratuity authorized for Federal employees.
Sec. 1106. Modifications to the National Security Personnel System.
Sec. 1107. Requirement for full implementation of personnel demonstration
            project.
Sec. 1108. Authority for inclusion of certain Office of Defense Research and
            Engineering positions in experimental personnel program for
            scientific and technical personnel.
Sec. 1109. Pilot program for the temporary assignment of information tech-
            nology personnel to private sector organizations.
Sec. 1110. Compensation for Federal wage system employees for certain travel
            hours.

