1  **Timothy T. Scott (SBN 126971)**
   **tscott@sidley.com**
2  **Ryan M. Sandrock (SBN 251781)**
   **rsandrock@sidley.com**
3  **SIDLEY AUSTIN LLP**
   **555 California Street**
4  **San Francisco, California  94104**
   **Telephone: (415) 772-1200**
5  **Facsimile: (415) 772-7400**

6  **Mark D. Hopson**
   **mhopson@sidley.com**
7  **Griffith L. Green**
   **ggreen@sidley.com**
8  **SIDLEY AUSTIN LLP**
   **1501 K Street, N.W.**
9  **Washington, D.C. 20005**
   **Telephone: (202) 736-8000**
10 **Facsimile: (202) 736-8711**

11 **Attorneys For The International**
   **Bank for Reconstruction and Development**
12

13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                       SAN FRANCISCO DIVISION

17 DEBORAH D. PETERSON, Personal            )   Case No. 08-mc-80030-JSW
   Representative of the Estate of James C. )
18 Knipple (Dec.) et al.,                    )   Hon. Jeffrey S. White
                                             )
19          Plaintiffs,                       )   Hon. Bernard Zimmerman
                                             )
                                             )   **DECLARATION OF RYAN M. SANDROCK**
20                                            )   **IN SUPPORT OF MOTION TO STAY**
        v.                                    )   **MOTION FOR ASSIGNMENT PENDING**
21                                            )   **THE UNITED STATES DISTRICT COURT**
                                             )   **FOR THE DISTRICT OF COLUMBIA'S**
22 ISLAMIC REPUBLIC OF IRAN, et al.          )   **DECISION ON PLAINTIFFS' MOTION TO**
                                             )   **APPOINT A RECEIVER**
23          Defendants.                       )
                                             )
24 _____ )

25          I, Ryan M. Sandrock, declare as follows:

26          1.      I am an attorney with Sidley Austin LLP, counsel for the International Bank for

27 Reconstruction and Development (the "World Bank") in the above-captioned matter, and admitted to

28
   _____
   DECLARATION OF RYAN M. SANDROCK IN SUPPORT OF MOTION TO STAY MOTION FOR ASSIGNMENT PENDING THE UNITED
   STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA'S DECISION ON PLAINTIFFS' MOTION TO APPOINT A RECEIVER –
   CASE NO. 08-80030

practice before this Court.  I make this declaration in support of the World Bank's Motion To Stay Motion For Assignment Pending The United States District Court For the District of Columbia's Decision On Plaintiffs' Motion To Appoint A Receiver.

2.      Attached as Exhibit A hereto is a true and correct copy of the Writ of Attachment as to the World Bank, filed in 1:01-cv-02094 (DDC).

3.      Attached as Exhibit B hereto is a true and correct copy of an excerpt of the Docket Report for 1:01-cv-02094 (DDC).

4.      Attached as Exhibit C hereto is a true and correct copy of a letter from P. Miranda to D. Cook (dated May 9, 2008).

5.      Attached as Exhibit D hereto is a true and correct copy of a Motion For Appointment of Receiver As Supplemental Remedy Pursuant to F.R.C.P. 69(a)(1), And Under Rule 66 of the Federal Rules of Civil Procedure, 28 U.S.C. § 754 And 28 U.S.C. § 1692, filed in 1:01-cv-02094 (DDC).

6.      Attached as Exhibit E hereto is a true and correct copy of a letter from J. Powers to the D.C. District Court (dated May 1, 2008).

7.      Attached as Exhibit F hereto is a true and correct copy of a letter from G. Green to D. Cook (dated May 23, 2008).

8.      Attached as Exhibit G hereto is a true and correct copy of an Emergency Motion To Shorten Time to Respond to JBIC's Motion to Quash.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on this 28th day of May 2008 at San Francisco, California.

/s/ Ryan M. Sandrock

Ryan M. Sandrock

SF1 1500256v.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

SF1 1500256v.1

SF1 1473001v.1

**EXHIBIT A**

1

2

3

4

5

6

7

8                     **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL SHAMES; GARY                    CASE NO. 07-CV-2174 H
     GRAMKOW, on behalf of themselves        (BLM)
12   and on behalf of all persons similarly
     situated,                               ORDER GRANTING
13                                           DEFENDANTS' MOTIONS TO
                                 Plaintiffs, DISMISS AND DENYING
14                                           WITHOUT PREJUDICE
         vs.                                 MOTION FOR PRELIMINARY
15                                           INJUNCTION

16   THE HERTZ CORPORATION, a                [Doc. Nos. 10, 34, 48, 50.]
     Delaware corporation; DOLLAR
17   THRIFTY AUTOMOTIVE GROUP,
     INC., a Delaware corporation; AVIS
18   BUDGET GROUP, INC., a Delaware
     corporation; VANGUARD CAR
19   RENTAL USA, INC., an Oklahoma
     corporation; ENTERPRISE RENT-A-
20   CAR COMPANY, a Missouri
     corporation; FOX RENT A CAR,
21   INC., a California corporation;
     COAST LEASING CORP., a Texas
22   corporation; THE CALIFORNIA
     TRAVEL AND TOURISM
23   COMMISSION; and CAROLINE
     BETETA,
24
                                Defendants.
25        On November 14, 2007, plaintiffs Michael Shames and Gary Gramkow

26   ("Plaintiffs") filed a putative class action complaint against several passenger rental car

27   companies ("the rental car defendants") operating at certain California airports, the

28   California Travel and Tourism Commission ("CTTC"), and  Caroline Beteta, the

1   Executive Director of the CTTC. (Doc. No. 1.) Plaintiffs seek a preliminary injunction

2   against the CTTC. (Doc. No. 10.) Defendants have brought three motions to dismiss

3   Plaintiffs' complaint: one by the rental car defendants, one by the CTTC, and one by

4   Caroline Beteta. (Doc. Nos. 34, 48, 50.) The rental car defendants also filed a related

5   request for judicial notice. (Doc. No. 36.) On March 25, 2008, following full briefing

6   on all of the pending motions, the Court the submitted all the motions without oral

7   argument pursuant to its discretion under Local Civil Rule 7.1(d)(1). (Doc. No. 78.)

8   On March 27, 2008, the CTTC filed an objection to a declaration accompanying

9   Plaintiffs reply brief regarding the motion for preliminary injunction. (Doc. No. 79.)

10  On April 1, 2008, Plaintiffs responded to the objection. (Doc. No. 81.) These filings

11  were not authorized by the Local Rules, were filed after the motion was submitted, and

12  were filed without leave of the Court. In the future, the parties should request leave

13  prior to any supplemental briefing. For the reasons discussed below, the Court grants

14  the motions to dismiss, denies the motion for preliminary injunction, and grants 30 days

15  leave to amend the complaint in a manner consistent with this order.

16                              **Background**

17         Plaintiffs' complaint asserts three causes of action: price fixing in violation of the

18  Sherman Act, 15 U.S.C. § 1; unfair competition in violation of Cal. Bus. & Prof. Code

19  § 17200 et seq.; and violations of California's Bagley-Keene Open Meeting Act, Cal.

20  Govt. Code § 11120 et seq. Plaintiffs assert the first two claims against all defendants

21  and the third only against the CTTC and defendant Beteta.

22         Plaintiffs' complaint alleges that the rental car defendants have committed a per

23  se violation of federal antitrust law by entering into a horizontal price-fixing agreement

24  to raise and fix the prices charged to consumers for the rental of automobiles at certain

25  California airports. (Compl. ¶ 1.) The alleged agreement has two components. First,

26  the rental car defendants purportedly agreed to impose on consumers a surcharge of

27  2.5% of the price of a car rental and not to compete with each other with respect to that

28  surcharge. (Id.) The rental car defendants allegedly misrepresent that consumers owe

    the 2.5% surcharge to the CTTC, when it is actually owed by the car companies. (Id.)

                                    - 2 -                              07cv2174

1    Second, the rental car defendants allegedly agreed to raise and fix prices by

2    passing on to consumers an Airport Concession Fee[1] of approximately 9%. (Id.) Prior

3    to 2007, this fee was included in the advertised base rate pursuant to California law

4    mandating that the advertised rate include all charges to be billed (except for taxes, a

5    customer facility charge, and a mileage charge). (See Compl. ¶ 31.) In January, 2007,

6    the California legislature changed this rule to permit rental car companies to "unbundle"

7    the Airport Concession Fee from the base rate and separately itemize it on the bill.

8    (Compl. ¶ 1.) Plaintiffs allege that the rental car defendants took this opportunity to

9    collectively increase prices, agreeing to maintain the level of the previously bundled

10   base rates while passing the Airport Concession Fee on to consumers as a separate fee.

11   (Id.)

12       Plaintiffs also assert that the CTTC and defendant Beteta facilitated these

13   allegedly illegal antitrust activities. The California Tourism Marketing Act ("CTMA"),

14   Cal. Govt. Code § 13995 et seq., created the CTTC in 1995. (Compl. ¶ 25.) The CTTC

15   is a California nonprofit mutual benefit corporation. (Id. ¶ 26.) As defined by the

16   CTMA, the CTTC would be funded by contributions from industry and the state general

17   fund. (Id. ¶ 25.) The CTTC, which is chaired by the Secretary of the California

18   Business, Transportation and Housing Agency, consists of 37 members who serve both

19   as commissioners and as directors of the CTTC. (Id. ¶ 26.) The Governor appoints

20   twelve of the CTTC's members. (Id. ¶ 27.) Five segments of the tourism industry, one

21   of which is the "passenger car rental industry," elect the remaining members without

22   the involvement of public officials. The CTTC Executive Director is a tourism industry

23   professional recommended by the CTTC and approved by the Governor. (Id.)

24       As relevant here, the first significant function of the CTTC is to set industry

25   assessment levels for its budget. (Id. ¶ 28.) Every two years, the CTTC proposes

26   assessment levels for various segments of the travel and tourism industry. (Id.) Those

27   ───────────────

28   [1] "'Airport concession fee' means a charge collected by a rental company from a renter that is the renter's proportionate share of the amount paid by the rental company to the owner or operator of an airport for the right or privilege of conducting a vehicle rental business on the airport's premises." Cal. Civ. Code § 1936.01(a)(1).

1   industry segments then vote on the specific assessment level proposals. The levels that

2   receive the most weighted votes become effective and enforceable, and must be paid by

3   all those conducting business over a minimum level in each of the respective tourism-

4   related segments. (Id.)

5       Second, the CTTC develops a marketing plan for the expenditure of the assessed

6   funds. (Id. ¶ 29.) The CTTC's plans regarding operations and spending are subject to

7   approval by the Secretary of the Business, Transportation and Housing Agency, in her

8   capacity as chair of the CTTC. (Id.) However, a three fifths vote of the CTTC

9   members will override any disapproval by the chair. (Id.) As a result, Plaintiffs assert

10  that the 24 industry-selected CTTC members exercise final, controlling decision-

11  making power within the CTTC. (Id.) In summary, Plaintiffs state that the CTTC,

12  while privately chosen, exercises "state-unchecked" power in the assessment of monies

13  under state authority, the enforcement of that collection on business, and the

14  expenditure of those funds. (Id. ¶ 30.)

15      Plaintiffs' complaint alleges that in 2006 a state bill (AB 2592) was enacted that

16  amended California Civil Code § 1936.01 to make two significant changes with respect

17  to the rental car defendants. (Compl. ¶ 32.) First, it created airport rental car firms as

18  an industry sector included in the CTTC. (Id.) The bill allegedly provided for a

19  referendum to be held among the rental car defendants to approve a contribution to the

20  CTTC's budget. (Id.) This contribution would increase the CTTC's budget and relieve

21  the state general fund of almost all of its current and future contributions. (Id.)

22  Plaintiffs allege that, because industry segment representation on the CTTC is

23  proportional to the assessments paid by that segment, the rental car industry became

24  entitled to six seats on the CTTC. (Id.)

25      Second, Plaintiffs allege that AB 2592 included a provision allowing the rental

26  car defendants to unbundle the Airport Concession Fee in the manner discussed above.

27  (Id. ¶ 33.) The complaint states that AB 2592 provided that this "disaggregation

28  provision" would become effective only if the rental car industry assessed upon itself

new rates that would increase the CTTC's funding. (Id. ¶ 34.) To that end, the rental

1  car defendants agreed to a "self-assessment" of 2.5%. (<u>Id.</u>) Plaintiffs allege that the

2  rental car defendants further agreed, in violation of the antitrust laws, to pass that

3  assessment on to consumers and not absorb it or otherwise compete with each other on

4  that portion of the price charged to consumers. (<u>Id.</u> ¶ 35.)

5      Plaintiffs allege that the rental car defendants offered the state legislature a quid

6  pro quo of industry contribution to the CTTC budget and general fund relief in return

7  for the change in consumer billing format permitted by AB 2592. (<u>Id.</u> ¶ 36.) Plaintiffs

8  allege that, although that statute did not authorize any price level change, beginning in

9  January 2007 when the statute took effect, the rental car defendants agreed and

10  combined to fix prices approximately 9% higher by charging the Airport Concession

11  fee as a separate and additional charge. (<u>Id.</u>) Although AB 2592 permitted a change

12  in billing format, Plaintiffs allege that the price increase related to the Airport

13  Concession Fee as a separate charge was neither explicitly authorized by, nor a

14  necessary consequence of, AB 2592. (<u>Id.</u> ¶ 37.) Rather, Plaintiffs allege, the increase

15  was the result of independent price-fixing agreements by the rental car defendants. (<u>Id.</u>)

16  Plaintiffs assert that the CTTC, and defendant Beteta in her capacity as CTTC's

17  executive director, participated in this alleged conspiracy by coordinating

18  communications and facilitating the price fixing agreements. (<u>Id.</u>)

19                       **Discussion**

20  **I.**    **Motion to Dismiss - Legal Standard**

21      Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a

22  claim either where that claim lacks a cognizable legal theory, or where insufficient facts

23  are alleged to support plaintiff's theory. <u>See</u> <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d

24  696, 699 (9th Cir. 1990). In resolving a Rule 12(b)(6) motion, the court construes the

25  complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual

26  allegations as true. <u>See</u> <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th Cir.

27  1996).

28      The Supreme Court recently addressed the question of "what a plaintiff must

plead in order to state a claim under § 1 of the Sherman Act." <u>Bell Atlantic Corp. v.</u>

1  Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). "While a complaint attacked by

2  a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

3  obligation to provide the grounds of his entitlement to relief requires more than labels

4  and conclusions, and a formulaic recitation of the elements of a cause of action will not

5  do." Id. at 1965-1966. "Factual allegations must be enough to raise a right to relief

6  above the speculative level on the assumption that all the allegations in the complaint

7  are true (even if doubtful in fact). Id. at 1965. Applying "these general standards" to

8  a claim under the Sherman Act, the Supreme Court held that stating a claim under

9  section 1 of that Act "requires a complaint with enough factual matter (taken as true)

10 to suggest that an agreement was made." Id. "[A]n allegation of parallel conduct and

11 a bare assertion of conspiracy will not suffice." Id.

12 **II.    Plaintiffs' Antitrust Claim**

13        Section 1 of the Sherman Act prohibits a "contract, combination . . . , or

14 conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "The crucial question

15 is whether the challenged anticompetitive conduct stems from independent decision or

16 from an agreement." Twombly, 127 S.Ct. at 1964. To state a section 1 claim, a

17 plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts

18 which, if true, will prove: (1) a contract, combination or conspiracy among two or more

19 persons or distinct business entities; (2) by which the persons or entities intended to

20 harm or restrain trade or commerce . . . ; (3) which actually injures competition."

21 Kendall v. Visa U.S.A., Inc., ___ F.3d ___, 2008 WL 613924 at *3 (9th Cir. March 7,

22 2008). For the following reasons, the Court concludes that Plaintiffs' complaint fails

23 to satisfy this standard with respect to all defendants.

24 **A.    Defendant Beteta**

25        The Court concludes that Plaintiffs' complaint fails to state a claim against

26 defendant Beteta for a violation of section 1 of the Sherman Act. Plaintiffs' complaint

27 contains only conclusory assertions and general allegations that Ms. Beteta had

28 knowledge of, facilitated, and participated in a conspiracy by the rental car defendants

to fix prices. (E.g., Compl. ¶¶ 43, 44.) The complaint fails to set forth factual

1   allegations supporting these assertions. Although Ms. Beteta may have met with rental

2   car industry members, that fact alone is insufficient to raise Plaintiffs' right to relief

3   against Ms. Beteta "above the speculative level." Twombly, 127 S.Ct. at 1965.

4   **B.   The CTTC**

5   Similarly, the Court concludes that the allegations of Plaintiffs' complaint are

6   insufficient to state a claim against the CTTC on Plaintiff's antitrust claim.   The

7   complaint is devoid of factual allegations regarding any actual agreement between the

8   CTTC and the rental car defendants.   The only factual assertions regarding the CTTC

9   are that the CTTC held meetings that California law requires it to hold and allegedly

10   violated certain provisions of the Bagley-Keene Act regarding notice of those meetings.

11   Like the allegations regarding defendant Beteta, the complaint's allegation of an

12   agreement and/or conspiracy to which the CTTC was a party is stated by Plaintiffs'

13   conclusory assertions that the CTTC had knowledge of, facilitated, and participated in

14   the rental car defendants' alleged conspiracy to fix prices. (See Compl. ¶¶ 43-44.)

15   The rental car companies' purportedly agreed to pass the 2.5% "self-assessment"

16   on to consumers. (See Compl. ¶¶ 34-35.) However, the complaint does not allege facts

17   making it "plausible," see Twombly, 127 S.Ct. at 1965, that the CTTC agreed or

18   conspired with the rental car defendants to pass this price along to consumers.   In fact,

19   the California Tourism Marketing Act expressly permits "an assessed business [to] pass

20   on some or all of the assessment to customers."   Cal. Govt. Code § 13995.65(f).

21   Similarly, the complaint does not allege facts making it plausible that the CTTC agreed

22   or conspired with the rental car companies to pass the Airport Concession Fee of

23   approximately 9% on to consumers.

24   Moreover, even if Plaintiffs alleged that the CTTC engaged in parallel conduct

25   with the rental car companies, the Supreme Court has emphasized that "[w]ithout more,

26   parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement

27   at some unidentified point does not supply facts adequate to show illegality."

28   Twombly, 127 S.Ct. at 1966. Here, the Court concludes that Plaintiffs' complaint fails

to plead "enough factual matter (taken as true) to suggest that an agreement was made"

1  between the CTTC and the rental car defendants. Id. at 1965.

2      Since the Court has concluded that Plaintiffs' complaint fails to state a claim

3  upon which relief may be granted against the CTTC or defendant Beteta for a violation

4  of section 1 of the Sherman Act, the Court need not address those defendants'

5  arguments regarding immunity from antitrust liability.

6      **C.    The Rental Car Defendants**

7      Next, the Court concludes that the allegations of Plaintiffs' complaint are

8  insufficient to state a claim under section 1of the Sherman Act against the rental car

9  defendants. The gravamen of Plaintiffs' complaint is that, beginning when AB 2592

10  took effect in January of 2007, the rental car defendants simultaneously increased their

11  prices by approximately 9% and imposed a uniform 2.5% fee on consumers. Plaintiffs

12  acknowledge that AB 2592 permitted these actions. Plaintiffs argue, however, that

13  since AB 2592 did not expressly require passing the costs at issue through to

14  consumers, the allegations sufficiently support the existence of an agreement by the

15  rental car defendants to raise and fix prices. The Court disagrees.

16      Although Plaintiffs allege parallel conduct by the rental car defendants, the Court

17  concludes that Plaintiffs fail to place those allegations "in a context that raises a

18  suggestion of a preceding agreement, not merely parallel conduct that could just as well

19  be independent action." Twombly, 127 S.Ct. at 1966. The Supreme Court in Twombly

20  emphasized "[t]he need at the pleading stage for allegations plausibly suggesting (not

21  merely consistent with) agreement." Id. at 1966. Here, Plaintiffs allege certain facts

22  and circumstances consistent with an agreement to raise and fix prices. Without

23  additional factual allegations, however, the Court concludes that Plaintiffs' assertions

24  are equally consistent with "a wide swath of rational and competitive business strategy

25  unilaterally prompted by common perceptions of the market." Id. at 1964.

26      As alleged in Plaintiffs' complaint, the rental car defendants responded to the

27  passage of AB 2592 by simultaneously changing their billing practices and price levels

28  in certain ways that, prior to AB 2592, were not allowed. Plaintiffs are correct that the

change in law did not require price increases. However, in light of the complaint's very

- 8 -                                                    07cv2174

1    general allegations, <u>e.g.</u>, Compl. ¶¶ 35, 44(a), 46, the Court concludes that Plaintiffs

2    have not alleged sufficient facts to make the existence of a conspiracy plausible.  It is

3    equally plausible that the rental car defendants' actions constituted "identical,

4    independent action" motivated by economic self-interest.  <u>Id.</u> at 1961; <u>see</u> <u>Brooke</u>

5    <u>Group Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 227 (1993) (common

6    reaction of firms in a concentrated market that recognize their shared economic interests

7    not in itself unlawful).  The general allegations of Plaintiffs' complaint, <u>see</u> Compl. ¶¶

8    35, 44, 46, provide "no reason to infer that the companies had agreed among themselves

9    to do what was only natural anyway." <u>Twombly</u>, 127 S.Ct. at 1971.

10        **D.    Leave to Amend**

11        If a complaint is found to fail to state a claim, courts generally grant leave to

12    amend unless the pleading could not possibly be cured by the allegation of other facts.

13    <u>See</u> <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir.1995)  As a result, the Court will

14    provide Plaintiffs with an opportunity to amend their pleadings.

15    **III.    Plaintiffs' State Law Claims**

16        Plaintiffs assert that the Court has pendent jurisdiction over the state law claims,

17    a concept codified in 28 U.S.C. § 1367. (Compl. ¶ 5.)  A district court may decline to

18    exercise supplemental for reasons including that the claim "raises a novel or complex

19    issue of State law," or that the court "has dismissed all claims over which it has original

20    jurisdiction."  28 U.S.C. § 1367(c).  Here, the Court has already dismissed the only

21    federal question claim.  Furthermore, the state law claims may implicate novel or

22    complex questions of state law, including questions related to interpretation of the

23    CTMA and the Bagley-Keene Open Meeting Act.  Therefore, the Court declines to

24    exercise supplemental jurisdiction at this time, dismisses without prejudice the

25    remaining state law claims, and denies without prejudice any motion for preliminary

26    injunction.  If Plaintiffs successfully assert an antitrust cause of action in an amended

27    pleading, the Court will reconsider whether to exercise supplemental jurisdiction in

28    light of all the circumstances of this litigation.

        Plaintiffs also allege jurisdiction under the Class Action Fairness Act of 2005

1 ("CAFA"), 28 U.S.C. § 1332(d)(2) and (6). (Compl. ¶ 4.) It does not appear from the

2 complaint or the parties' briefing, however, that Plaintiffs argue that CAFA provides

3 subject matter jurisdiction over the state law claims, standing alone.

4 **IV.    Defendants' Request for Judicial Notice**

5       The rental car defendants ask the Court to take judicial notice of facts in three

6 areas: (1) alleged legislative history of Cal. Civil Code § 1936.01, (2) California Senate

7 Bill 1057, 2007-08 session, and (3) Plaintiffs' rental agreements with Alamo and

8 Enterprise Rent-A-Car Company of San Francisco. Plaintiffs do not object to judicial

9 notice of the rental agreements and certain portions of the legislative history, and the

10 Court takes judicial notice of those documents not subject to dispute. Plaintiffs object

11 to the introduction of the Senate bill and two aspects of the alleged legislative history:

12 (1) a letter from Robert C. Fellmeth to the Honorable Mark Leno concerning AB 2592,

13 and (2) a Senate floor analysis of AB 2592. The Court concludes that it may take notice

14 of these documents, which are matter of public record related to legislation at issue

15 here.

**Conclusion**

16

17       The Court GRANTS Defendants motions to dismiss and DENIES Plaintiffs

18 request for a preliminary injunction without prejudice. Plaintiffs may file an amended

19 complaint within 30 days of the date this order is entered in the docket.

20       IT IS SO ORDERED.

21 DATED: April 8, 2008

22

23                           MARILYN L. HUFF, District Judge
                          UNITED STATES DISTRICT COURT

24 COPIES TO:
  All Parties of Record

25

26

27

28

EXHIBIT B

**1:01-cv-02094-RCL** PETERSON, et al v. ISLAMIC REPUBLIC, et al
Royce C. Lamberth, presiding
Date filed: 10/03/2001
Date terminated: 09/14/2007
Date of last filing: 05/27/2008

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:* <br> *Entered:* <br> *Terminated:* | 10/03/2001 <br> 10/09/2001 <br> 10/03/2001 | Motion for Waiver |
| | *Docket Text:* MOTION filed by ALL PLAINTIFFS for a waiver of Local Rule 5.1(e) (bm) | | |
| 2 | *Filed:* <br> *Entered:* | 10/03/2001 <br> 10/09/2001 | Order |
| | *Docket Text:* ORDER by Chief Judge Thomas F. Hogan : granting motion for a waiver of Local Rule 5.1(e) [1-1] by ALL PLAINTIFFS; waiving the full residence address of the party be included on the caption of the initial pleading; the Plaintiffs file under seal a list containing the names and residence addresses of all plaintiffs within 30 days of the date of this Order; the Clerk of the Court accept the Complaint submitted and issue process directed to the Defendants. (N) (bm) | | |
| 3 | *Filed:* <br> *Entered:* | 10/03/2001 <br> 10/09/2001 | Complaint |
| | *Docket Text:* COMPLAINT filed by ALL PLAINTIFFS (bm) | | |
| 4 | *Filed:* <br> *Entered:* | 10/03/2001 <br> 10/09/2001 | Notice of Related Case |
| | *Docket Text:* NOTIFICATION OF RELATED CASE: Case related to Case No(s): CA 00-549 (RCL) (bm) | | |
| 5 | *Filed & Entered:* | 10/23/2001 | Order |
| | *Docket Text:* ORDER by Judge Royce C. Lamberth : directing Clerk of Court to file under seal the list containing the names and residence address of all plaintiff pursuant to Court's order of 10/3/01. (N) (mon) | | |
| 6 | *Filed & Entered:* | 10/23/2001 | Response to any document |
| | *Docket Text:* RESPONSE by ALL PLAINTIFFS to order [2-1] filed 10/23/01; (FILED UNDER SEAL) (tth) | | |
| 7 | *Filed:* <br> *Entered:* <br> *Terminated:* | 12/12/2001 <br> 12/13/2001 <br> 12/26/2001 | Motion for Order |
| | *Docket Text:* MOTION filed by plaintiff DEBORAH D. PETERSON for order permitting plaintiffs to proceed with service through diplomatic channels ; Attachments (3) (nmr) | | |
| 8 | *Filed & Entered:* | 12/26/2001 | Order |
| | *Docket Text:* ORDER by Judge Royce C. Lamberth : granting motion for order permitting plaintiffs to proceed with service through diplomatic channels [7-1] by DEBORAH D. PETERSON (N) (adc) | | |

|  | *Docket Text:* Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re [235] Notice of Appeal (tg, ) |
|---|---|
| -- | *Filed & Entered:*      11/08/2007   USCA Case Number |
|  | *Docket Text:* USCA Case Number 07-7148 for [235] Notice of Appeal filed by ILA WALLACE. (tg, ) |
| 236 | *Filed:*      02/27/2008   USCA Order<br>*Entered:*      03/07/2008 |
|  | *Docket Text:* ORDER of USCA (certified copy) as to [232] Notice of Appeal filed by CATHERINE BONK, IT IS ORDERED that the motion be granted, and these cases are hereby dismissed without prejudice to any further proceedings in the district court. (USCA No. 07-7140) (kb) |
| -- | *Filed & Entered:*      03/06/2008   Leave to File Denied |
|  | *Docket Text:* ENTERED IN ERROR.....Leave to File Denied. Final Request for Payment. (tg, ) ("Leave to file DENIED" by Judge R. M. Collyer). Modified on 3/6/2008 (tg, ). |
| -- | *Filed & Entered:*      03/06/2008   Notice of Corrected Docket Entry |
|  | *Docket Text:* NOTICE OF CORRECTED DOCKET ENTRY: re Leave to File Denied was entered in error in this case. (tg, ) |
| 237 | *Filed & Entered:*      03/10/2008   Motion for Leave to Appear Pro Hac Vice<br>*Terminated:*      03/11/2008 |
|  | *Docket Text:* ENTERED IN ERROR.....MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Thomas Fortune Fay, :Firm- Fay Law, PA, :Address- 700 Fifth Street, NW, Washington, DC 20001. Phone No. - 202-589-1300. Fax No. - 202-589-1721 by ALL PLAINTIFFS (Attachments: # (1) Affidavit In Support of Motion Pro Hac Vice, # (2) Text of Proposed Order For Admission Pro Hav Vice)(Fay, Thomas) Modified on 3/11/2008 (tg, ). |
| -- | *Filed & Entered:*      03/11/2008   Notice of Corrected Docket Entry |
|  | *Docket Text:* NOTICE OF CORRECTED DOCKET ENTRY: re [237] MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Thomas Fortune Fay, :Firm- Fay Law, PA, :Address- 700 Fifth Street, NW, Washington, DC 20001. Phone No. - 202-589-1300. Fax No. - 202-589-1721 was entered in error. Counsel listed his own information rather than the information of the attorney he is sponsoring. Counsel was instructed to refile said pleading. (tg, ) |
| 238 | *Filed & Entered:*      03/12/2008   Motion for Leave to Appear Pro Hac Vice<br>*Terminated:*      03/13/2008 |
|  | *Docket Text:* MOTION for Leave to Appear Pro Hac Vice :Attorney Name- David J. Cook, :Firm- Cook Collection Attorneys, :Address- 165 Fell Street, San Francisco, CA 94102. Phone No. - 877-989-4730. Fax No. - 866-989-0491 by ALL PLAINTIFFS (Attachments: # (1) Affidavit In Support Mtn AdmissionPro Hac Vice, # (2) Text of Proposed Order For Admission Pro Hac Vice)(Fay, Thomas) |
| -- | *Filed & Entered:*      03/13/2008   Order on Motion for Leave to Appear Pro Hac Vice |
|  | *Docket Text:* MINUTE ORDER granting [238] Motion for Leave to Appear Pro Hac Vice. Signed by Judge Royce C. Lamberth on 03/13/2008. (lcrcl2, ) |
| 239 | *Filed & Entered:*      03/17/2008   Motion for Miscellaneous Relief |
|  | *Docket Text:* MOTION Appointment of Special Process Servers by ALL PLAINTIFFS (Attachments: # (1) Supplement Memo In Support of Motion, # (2) Text of Proposed Order Order Appointing Special Process Servers)(Fay, Thomas) |
| -- | *Filed & Entered:*      03/25/2008   Writ Issued |
|  | *Docket Text:* Writ of Attachment on Judgment Issued to Kuwait Petroleum Corporation, Garnishee, re Judgment signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |

| Filed & Entered: | 03/25/2008 | Writ Issued |
| --- | --- | --- |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Robobank International, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Japan National Oil Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to The Industrial Bank of Japan, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Credit Suisse Bank (or Group), Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to HSBC, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to International Monetary Fund, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Bank of Tokyo, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to UBS AG, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to European Aeronautic Defense and Space Company, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Development Bank of Japan, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Royal Dutch Shell, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to ABN AMRO, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Japan Bank for International Cooperation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to The World Bank, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) | |
| Filed & Entered: | 03/25/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to International Finance Corporation, | |

| | Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
|---|---|
| | *Filed & Entered:* 03/27/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment Issued to Caterpillar Inc, Garnishee, re Judgment signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/27/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment Issued to Exxon Mobil Corporation, Garnishee, re Judgment signed by Judge Royce C. Lamberth on 8/10/2006. (tg, ) |
| | *Filed & Entered:* 03/27/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to BP Amoco Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/27/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Occidental Petroleum Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Saudi Arabian Oil Company a/k/a Saudi Aramco, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007.(tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Marathon Oil Company, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007.(tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Bayer Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to AB Amro, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Mitsubishi International Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Aramco Services Co., Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Occidental International Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Valero Energy, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Kerr Mcgee Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Bank of Japan, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007.(tg, ) |
| | *Filed & Entered:* 03/28/2008 Writ Issued |

| | |
|---|---|
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to State Bank of India, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007.(tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to BASF Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Abu Dhabi International Bank, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Siemens Corporation, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Export Import Bank of Korea, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Deutsche Bank, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Asian Development Bank, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Bank of Tokyo-Mitsubishi UFJ, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/02/2008 | Writ Issued |
| -- | *Docket Text:* Writ of Attachment on Judgment Issued to Export Import Bank of India, Garnishee, re Judgment Signed by Judge Royce C. Lamberth on 9/7/2007. (tg, ) |
| | *Filed & Entered:*    04/21/2008 | Notice (Other) |
| 240 | *Docket Text:* ENTERED IN ERROR.....NOTICE by ALL PLAINTIFFS (Attachments: # (1) Text of Proposed Order Order For Payment)(Fay, Thomas) Modified on 4/22/2008 (tg, ). |
| | *Filed & Entered:*    04/22/2008 | Notice of Corrected Docket Entry |
| -- | *Docket Text:* NOTICE OF CORRECTED DOCKET ENTRY: re [240] Notice (Other) was entered in error and counsel was instructed to refile said pleading using the proper ECF event to file a Motion. (tg, ) |
| | *Filed & Entered:*    04/22/2008    *Terminated:*    04/23/2008 | Motion for Disbursement of Funds |
| 241 | *Docket Text:* ENTERED IN ERROR.....MOTION for Disbursement of Funds *To Special Master Swanson* by ALL PLAINTIFFS (Attachments: # (1) Supplement Voucher of Special Master, # (2) Text of Proposed Order For Payment)(Fay, Thomas) Modified on 4/23/2008 (tg, ). |
| | *Filed & Entered:*    04/22/2008 | Motion for Disbursement of Funds |
| 242 | *Docket Text:* MOTION for Disbursement of Funds *To Special Master Ray* by ALL PLAINTIFFS (Attachments: # (1) Supplement Voucher For Payment, # (2) Text of Proposed Order Order For Payment)(Fay, Thomas) |
| | *Filed & Entered:*    04/22/2008 | Motion for Disbursement of Funds |
| 243 | *Docket Text:* MOTION for Disbursement of Funds *To Special Master Swanson(Corrected)* by ALL PLAINTIFFS (Attachments: # (1) Supplement Voucher For Payment, # (2) Text of |

EXHIBIT C

## The World Bank

INTERNATIONAL BANK FOR RECONSTRUCTION AND DEVELOPMENT
INTERNATIONAL DEVELOPMENT ASSOCIATION

1818 H Street N.W.
Washington, D.C. 20433
U.S.A.

(202) 477-1234
Cable Address: INTBAFRAD
Cable Address: INDEVAS

May 9, 2008

**By Facsimile: (866) 989-0491**
David J. Cook, Esq.
Cook Collection Attorneys
165 Fell Street
San Francisco, CA 94102

**Re.: Writ of Attachment on Judgment Other than Wages, Salary and Commissions
Deborah D. Peterson, Personal etc v. Islamic Republic of Iran
Civil Action No. 01-2094**

Dear Mr. Cook:

I am in receipt of a *"Writ of Attachment on a Judgment Other than Wages, Salary and Commissions"* (attached) dated March 25, 2008, regarding a judgment entered against the Islamic Republic of Iran on September 7, 2007, in the amount of US$2,656,944,877.00, addressed to the World Bank (the "Writ of Attachment"). The International Bank for Reconstruction and Development (the "Bank") received the Writ of Attachment on April 30, 2008.

Please be advised that based on our internal inquiry the Bank has not identified any debts owing to or any goods, chattels or credits of the Islamic Republic of Iran or any of the organizations listed in Exhibit "A" to the Writ of Attachment.

For your information, the Bank is a recognized public international organization established by its member countries pursuant to its Articles of Agreement (the "Articles") and endowed with certain privileges and immunities under these Articles, and also under the provisions of national law[1]. The Bank's Articles have been incorporated into U.S. law at 22 U.S.C. § 286h (1988), and provide, *inter alia*, in Article VII, Section 3, that:

> *The property and assets of the Bank shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Bank.*

60 Stat. 1458, 3 Bevans 1409.

---

[1] The citations regarding the Bank's Articles of Agreement is as enacted under U.S. law and set forth herein focus on the Bank. See 22 U.S.C. § 286h ("[A]rticle VII, sections 2 to 9, both inclusive, of the Articles of Agreement of the Bank, shall have full force and effect in the United States.").

2

The Bank also enjoys similar privileges and immunities under the International Organizations Immunities Act ("IOIA"), 22 U.S.C. 288-288i, by virtue of its status as a public international organization so designated by Executive Order 9751, dated July 11, 1946. Pursuant to U.S. case law, entities that have been designated by executive order for protection as international organizations under the IOIA are immune from garnishment proceedings. *See* <u>Atkinson v. Inter-American Development Bank</u>, 156 F.3d 1335 (D.C.Cir. 1998).

The IOIA expressly provides as follows:

> International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

22 U.S.C. § 288a(b) (emphasis supplied).

Thus, absent express waiver, the Bank enjoys absolute immunity from garnishments under the IOIA. <u>Id.</u>

As there has been no final judgment entered against the Bank in this proceeding and the Bank is not prepared to waive its immunities under its collective Articles of Agreement and the IOIA, the Bank is returning the Writ of Attachment so that it may be withdrawn as inapplicable to the Bank.

Please contact me at (202) 473-2901 if I may be of any further assistance to you in this matter.

Sincerely,

Patricia Miranda
Institutional Administration
Legal Department

Attachment


Cc:    S. Shah, S. Dib, M. Mozayani (EDS06)

United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBORAH D. PETERSON, Personal | ) | |
| Representatives of the Estate of James C. | ) | |
| Knipple (Dec.). et. al., | ) | |
| | ) | Consolidated Civil Actions: |
| Plaintiffs. | ) | 01-2094 (RCL) |
| | ) | 01-2684 (RCL) |
| vs. | ) | |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN, et al.. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION FOR APPOINTMENT OF RECEIVER AS SUPPLEMENTAL REMEDY PURSUANT TO F.R.C.P. 69(a)(1), AND UNDER RULE 66 OF THE FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 754 AND 28 U.S.C. § 1692

### [LEVIED BANK ACCOUNTS]

Plaintiffs DEBORAH D. PETERSON, Personal Representatives of the Estate of James C.

Knipple (Dec.). and all the remaining Plaintiffs (hereinafter collectively "Plaintiffs" or

"Marines"). hereby move this court for the following relief under F.R.C.P. 69(a)(1) and under

Rule 66 of the Rules of Federal Procedure. consistent with 28 U.S.C. § 754 and 28 U.S.C. §

1692. as follows:

1. For the appointment of a receiver for the purposes of the collection. recovery. and

sequestering all of the bank accounts. accounts with any bank. stockbroker. savings and loan, or

similar institution. funds held by any bank in any trust or other account. certificates of deposit,

time certificates of deposit, lines of credit. letters of credit, credits due Iran, general intangibles

owed by any governmental entity. bank, import export bank which are due and payable to Iran

from the following listed financial institutions, banks, governmental entities, and third parties as

follows:

> JAPAN BANK FOR INTERNATIONAL COOPERATION
>
> THE WORLD BANK
>
> INTERNATIONAL FINANCE CORPORATION
>
> INTERNATIONAL MONETARY FUND
>
> IMPORT EXPORT BANK OF KOREA
>
> IMPORT EXPORT BANK OF INDIA

(hereinafter collectively "LEVIED BANKS") due to and in favor of the Islamic Republic of Iran

("Iran") for purposes of payment of the outstanding judgment in the amount of

$2,656,944,877.00 in which funds, monies, credits, deposits, right to payment of money, account

deposits are due from the LEVIED BANKS to and on behalf of Iran, and have been the subject of

service of writs of attachment on judgment, hereinafter collectively "LEVIED BANK

ACCOUNTS."

    2. For an order authorizing. permitting and directing the receiver to make demand upon

all LEVIED BANKS directing all of the LEVIED BANK ACCOUNTS be paid to the receiver up

to and including the amount necessary to satisfy this judgment, plus any and all accruing interest,

costs. and other fees and charges which the court may assess from time to time herein.

    3. For an order restraining. to the extent possible, Iran and all of its agencies and

instrumentalities from any act of interference with the conduct of the receiver herein, an order

prohibiting, restraining, staying and enjoining Iran from taking any action in any court, other than

this court, by which the action would be to interfere with the conduct of the receiver, either in

part or in whole.

    4. For an order authorizing the receiver to retain counsel or take such other appropriate

action by which to effectuate a recovery of the LEVIED BANK ACCOUNTS;  the establishment

of one or more bank accounts; the filing of one or more actions in a court of competent

jurisdiction, other than this court herein, if necessary; the retention of accountants, auditors or

experts, necessary to aid and assist the receiver herein; and such other action which the receiver

deems just and appropriate.

    5. For an order authorizing the receiver to receive any and all monies due Iran based

upon any LEVIED BANK ACCOUNTS, an order permitting and authorizing the receiver to

authorize the receiver to negotiate a financial disposition, either in part or in whole, of any

"LEVIED BANK ACCOUNTS;" and moreover, an order permitting the receiver to settle,

resolve, discount, or compromise, any and all claims, of any type or nature, which Iran may have

to and against any and all parties.

    6. For an order permitting the receiver to affix the name of Iran or any government

official on any check, draft, money order, or other note or instrument, to cash either in part or in

whole, any letter of credit, or instrument, or device thereunder.

    7. For an order permitting and authorizing the receiver to take such action as if the owner

of any LEVIED BANK ACCOUNTS of Iran, and to take such action as may be necessary by

which to convert those assets into a sum of money, for purposes of payment, either in part or in

whole, of the outstanding judgment.

-3-

8. For an order continuing the jurisdiction of this court, in which the receiver would be required to report from time to time.

9. For an order setting the bond in an amount based upon the court's discretion, and an order permitting and allowing the receiver to incur any and all obligations necessary to perform the duties, but in which such obligations are not the personal liability of the receiver.

10. For an order continuing from time to time this motion, for purposes of determining compliance by Iran with any order, judgment, or decree of this court, and an order permitting the court to refer any matter to a Magistrate Judge, or other subordinate judicial officer for any evidentiary hearing which the court may request from time to time, and/or an order appointing a referee or other fact-finder which may be necessary.

11. Plaintiff proposes the members of the Gavel Group as potential receivers:

A.    EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.    STANLEY SPORKIN. Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.    LOUIS FREEH, Retired United States District Court Judge and Former Director of the Federal Bureau of Investigation.

The basis of this motion is that the Plaintiffs have recovered a judgment in the amount of $2,656,944,877.00, that the judgment is unsatisfied, Plaintiff is informed and believes that certain financial institutions have in their possession monies, funds and properties, which constitute the property of Iran, that the monies, funds and properties consist of deposit accounts. rights to payment of money. general intangible. contract rights, rights for any refund of money. either in part or in whole, which would permit these Plaintiffs the ability by which to recover this

-4-

judgment.

Plaintiffs further seek an order setting this motion on an expedited basis to permit the appointment of the receivers, the effect of which would be to oust Iran as a potential (but non appearing) participant in these proceedings in which the receivers on behalf of Iran, and standing it the shoes of Iran, can instruct the LEVIED BANKS to turn over funds in their possession to Plaintiffs, leaving to the result that issue of purported sovereign immunity would be mooted.

This motion is based upon the foregoing, the attached Memorandum of Points and Authorities, all matters which the court may consider, all pleadings, papers and files which pertain and relate to any other matter, and upon all oral evidence and argument which may be presented at the hearing hereof.  Plaintiffs request, if necessary, an evidentiary hearing by one or more experts, to testify as to various matters which the court may request, from time to time.

DATED:  May 20, 2008                        COOK COLLECTION ATTORNEYS

                                            By:  /s/ David J. Cook
                                            DAVID J. COOK, ESQ. (SB# 060859)
                                            P.O. Box 270
                                            San Francisco, CA 94104-0270
                                            Telephone: (415) 989-4730
                                            Fax: (415) 989-0491
                                            Email: Cook@Squeezebloodfromturnip.com

DATED: May 20, 2008                         PERLES LAW FIRM

                                            By:  /s/ Steve Perles
                                                  STEVE PERLES, ESQ.
                                            1146 19th Street, 5th Floor
                                            Washington D.C., DC  20036
                                            Telephone:  202-955-9055
                                            Fax: 202-955-3806

DATED: May 20, 2008

FAY LAW PA

By:____/s/ Thomas Fortune Fay_____
       THOMAS FORTUNE FAY, ESQ.
601 Pennsylvania Avenue, NW
#900 - South Building
Washington, DC 20004
Telephone: 202-589-1300
Fax: 202-589-1300
Email: ThomasFay@aol.com

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple
(Dec.), et. al.

F:\USERS\DJCNEW\peterson.appoint.banklevies

-6-

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, Personal )<br>Representatives of the Estate of James C. )<br>Knipple (Dec.), et. al., )<br> )<br>Plaintiffs, )<br> )<br> )<br>vs. )<br> )<br>ISLAMIC REPUBLIC OF IRAN, et al., )<br> )<br>Defendants. )<br>——————————————— ) | Consolidated Civil Actions:<br>01-2094 (RCL)<br>01-2684 (RCL) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER AS SUPPLEMENTAL REMEDY PURSUANT TO F.R.C.P. 69(a)(1), AND UNDER RULE 66 OF THE FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 754 AND 28 U.S.C. § 1692

## TABLE OF CONTENTS

**PAGES:**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.   THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A

      CIVIL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III.  LEVIED BANKS ARE NOT SUBJECT TO ABSOLUTE IMMUNITY . . . . . . . . . . . -6-

      A.    FOREIGN BANKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
      B.    INTERNATIONAL BANKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

IV.   STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENT . . . -13-

V.    POWERS AND DUTIES OF THE RECEIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

VI.   RECEIVERS WOULD STEP INTO THE SHOES OF IRAN AND COMPEL AN
      OUTCOME AVOIDING AN ADJUDICATION OF SOVEREIGN IMMUNITY . . . -20-

VII.  PROPOSED RECEIVERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

VIII. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

i

## TABLE OF AUTHORITIES

**CASES:**                                                                          **PAGES:**

*American Capital Investments etc.*

    98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Aviation Supply Corporation vs. R.S.B.I. Aerospace*

    999 F.2d 314 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Estate of Margaret Bonham*

    817 A.2d 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Federal Trade Commission vs. Productive Marketing etc.*

    136 F. Supp.2d 1096 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*In re Alan BERNARD, Linda Bernard, Debtors*

    96 F.3d 1279 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*In re ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION*

    910 F.Supp. 1470 (D.Hawai'i 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Mendaro vs. The World Bank*

    717 F. 2d 610 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

    Rule 66 of the Rules of Procedure for the District of Columbia law . . . . . . . . . -13-, -16-

*SEC vs. Bilzerian*

    127 F.Supp.2d 232. 233 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Securities & Exchange Commission and Deborah Meshulam, Appellants, vs. Paul A. Bilzerian, et al.*

    378 F.3d 1100 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Securities and Exchange Commission vs. American Capital Investments etc.*

    98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Securities and Exchange Commission vs. Loving Spirits Foundation etc.*

    392 F.3d 486 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Wood vs. Noyes*

    279 F.321 (9th Cir. 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Wuliger vs. Owens*

    365 F.Supp.2d 838 (N.D. Ohio. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

## STATUTES:

*Federal:*

28 United States Code

    § 754 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

    § 1605(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    § 1605A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

    § 1605A(a)(1) & (g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

    § 1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Federal Rules of Civil Procedure

    69(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Other:*

*Federal Practice and Procedure 2d* by Wright & Miller, Vol. 12. § 2983, pages 22-23 . . . . -15-

The World Bank is set forth in its Articles. as follows:

      **SECTION 3. Position of the Bank with Regard to judicial Process** . . . . . . . . . . . -8-

The immunity of the IFC is as follows:
      **SECTION 3.** *Position of the Corporation with Regard to Judicial Process* . . . . . . . -8-

The immunity of The International Monetary Fund is as follows:

      **Section 3. Immunity from judicial process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Foreign Sovereignty Immunities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-. -3-. -4-, -23-

iv

# I. **INTRODUCTION.**

Plaintiffs filed this action to seek redress for the bombing of the Marine Barracks in

Beirut, Lebanon in 1983. Suit was filed on 10/3/01 and service of process was effectuated, in

which Iran defaulted. This court conducted a number of hearings and entered a series of

Opinions, including the MEMORANDUM OPINION of 5/30/03. (Docket No. 24) Judge

Lamberth wrote in that Opinion, as follows:

> "These actions arise from the most deadly state-sponsored terrorist attack made
> against American citizens prior to September 11, 2001: the Marine barracks
> bombing in Beirut, Lebanon on October 23, 1983. In the early morning hours of
> that day, 241 American servicemen were murdered in their sleep by a suicide
> bomber. On that day, an unspeakable horror invaded the lives of those who
> survived the attack and the family members whose loved ones had been stolen
> from them. The memory of that horror continues to this day." (Exh. A, ¶ 1.)+

Thereafter on 9/7/07, the court entered a second MEMORANDUM OPINION and

JUDGMENT (Docket Nos. 228 & 229) and the court granted judgment on behalf of Plaintiffs in

the amount of $2,656,944,877.00. Individual parties in fact appealed, but these appeals were

dismissed without prejudice by an order from the Court of Appeal, District of Columbia on

2/23/08. The court stated as follows:

> "C.    The Attack
>      As testified by Mahmoud, after the meeting in Baalbek, a 19-ton truck was
> disguised so that it would resemble a water delivery truck that routinely arrived at
> the Beirut International Airport, which was located near the U.S. Marine barracks
> in Beirut, and modified the truck so that it could transport an explosive device.
> On the morning of October 23, 1983, members of Hezbollah ambushed the real
> water delivery truck before it arrived at the barracks. An observer was placed on a
> hill near the barracks to monitor the operation. The fake water delivery truck then
> set out for the barracks, driven by Ismalal Ascar, an Iranian.
>
>      At approximately 6.25 a.m. Beirut time, the truck drove past the Marine
> barracks. As the truck circled in the large parking lot behind the barracks, it
> increased its speed. The truck crashed through a concertina wire barrier and a wall

of sandbags. and entered the barracks."[31] When the truck reached the center of the barracks. the bomb in the truck detonated.

The resulting explosion was the largest non-nuclear explosion that had ever been detonated on the face of the Earth. The force of its impact ripped locked doors from their doorjambs at the nearest building. which was 256 feet away. Trees located 370 feet away were shredded and completely exfoliated. At the traffic control tower of the Beirut International Airport. over half a mile away. all of the windows shattered. The support columns of the Marine barracks. which were made of reinforced concrete, were stretched, as an expert witness described, "like rubber bands." the explosion created a crater in the earth over eight feet deep. The four-story Marine barracks was reduced to fifteen feet of rubble.

The force of the explosion was equal to between 15.000 to 21.000 pounds of TNT. FBI and ATF explosives experts both concluded that the explosive material was "bulk form" pentaerythritol tetranitrate, or PETN. Danny A. Defenbaugh. the on-scene FBI forensic explosive investigator. testified as to his findings:

> [W]e were able to. through the forensic residue analysis. identify the explosive material, and it was unconsumed particles of PETN . . . .
>
> PETN is a primary explosive that is manufactured commercially and primarily for U.S. military purposes. It is a primary explosive that is used in detonating cord. Detonating cord is nothing more than a plastic and fiber-wrapped cord that has the PETN. which looks like a white power . . . that is then extruded inside that cord . . . .
> In this case. it was not [consumed]: we found unconsumed particles of PETN. That was just like we had found also in the American Embassy bombing. What that means is that it had to have been from a bulk explosive, it had to have been from a manufacturer." (P. 16 of 30)

## II. THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A CIVIL JUDGMENT.

Prior to approximately January 2008. a Judgment Creditor of a foreign state such as Iran was greatly hobbled in any attempt by which to recover, based upon the Foreign Sovereignty Immunities Act ("FSIA") and various exceptions. in which, e.g.. blocked assets might be subject

-2-

to levy and execution. Unfortunately, blocked assets were few and far between, making

collection of any judgment like this extremely problematical, at best.

Congress, recognizing that the Marines needed to be compensated, ultimately enacted an

amendment of the FSIA designed to facilitate collection through enactment of 28 U.S.C. §

1605A, which has now been incorporated into FSIA. The parts of that new section permitting

meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as

follows:

"(a) IN GENERAL. --
"(1) NO IMMUNITY. – A foreign state shall not be immune from the
jurisdiction of courts of the United States or of the States in any case not
otherwise covered by this chapter in which money damages are sought against a
foreign state for personal injury or death that was caused by an act of torture,
extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material
support or resources for such an act if such act or provision of material support or
resources is engaged in by an official, employee, or agent of such foreign state
while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –
"(1) IN GENERAL. – subject to paragraph (3), the property of a foreign
state against which a judgment is entered under section 1605A, and the property
of an agency or instrumentality of such a state, including property that is a
separate juridical entity or is an interest held directly or indirectly in a separate
juridical entity, is subject to attachment in aid of execution, and execution, upon
that judgment as provided in this section, regardless of –
"(A) the level of economic control over the property by the
government of a foreign state;
"(B) whether the profits of the property go to that government;
"( C) the degree to which officials of that government manage the
property or otherwise control its daily affairs;
"(D) whether that government is the sole beneficiary in interest of
the property; or
"(E) whether establishing the property as a separate entity would
entitle the foreign state to benefits in United States courts while
avoiding its obligations.

"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE.
Any property of a foreign state, or agency or instrumentality of a foreign state, to
which paragraph (1) applies shall not be immune from attachment in aid of
execution, or execution, upon a judgement entered under section 1605A because
the property is regulated by the United States Government by reason of action
taken against that foreign state under the Trading With the Enemy Act or the
International Emergency Economic Powers Act."

Accordingly, the FSIA no longer serves as a bar, and all assets of Iran are now subject to

clear levy and execution.

Plaintiffs are informed and believe that the LEVIED BANKS described below hold

Iranian assets, predicated upon PR releases, website information, and other publicly available

information.  These funds consist of consummated loan commitments, lines of credit, funds

available for disbursement, credit and trade facilities, and other commercial banking

commitments entitling Iran to money.  These banks in question are the following:

> JAPAN BANK FOR INTERNATIONAL COOPERATION
>
> THE WORLD BANK
>
> INTERNATIONAL FINANCE CORPORATION
>
> INTERNATIONAL MONETARY FUND
>
> IMPORT EXPORT BANK OF KOREA
>
> IMPORT EXPORT BANK OF INDIA

(Hereinafter "LEVIED BANKS.")

These accounts are now the subject of active levy and execution through the United States

Marshal, District of Columbia.

Why this Receivership motion?  Why not let the levy and execution process continue to

fruition? Isn't this remedy redundant or unnecessary? What could the receiver undertake different

-4-

from the result to be achieved by the Plaintiffs through standard garnishment?

The answer is straightforward. Iran and the LEVIED BANKS have entered into line of credit, trade credit, deposit, letter of credit and other commercial relationships in which Iran as customer of the bank has, presumably, standard legal recourse in the event that the LEVIED BANK breaches the agreements, such as the failure to honor a check, line of credit, failure to pay on a letter of credit, failure to make a refund or any other breach undertaken by the LEVIED BANK in which Iran might well have recourse. Iran presumably entered into the relationship with the LEVIED BANK in which Iran now maintains the full range of civil enforcement rights.

The purpose of this receiver motion is to oust Iran from any of the banking relations with the BANK and replace the Receivers as the owners and holders of the LEVIED BANK ACCOUNTS. The Receivers standing in the shoes of Iran could and would direct the LEVIED BANKS to pay-over, surrender and hand over all funds held by the LEVIED BANKS to the Plaintiffs. While the LEVIED BANKS might well claim sovereign immunity, which these Plaintiffs dispute, in part or in whole, or any other related defense, the LEVIED BANKS presumably would not be able to mount that defense against Iran. The LEVIED BANKS might well attempt to fend off the current onslaught of levies by the Plaintiffs, but the LEVIED BANKS could not defend in good faith or otherwise, any directive by Iran to dispose of the funds held in any of the accounts. Therefore, Plaintiffs can moot any claim asserted by any of the LEVIED BANKS, based on sovereign immunity, if the LEVIED BANKS follow a directive from Iran to pay the funds held by the LEVIED BANK to and in favor of the Plaintiffs. This is not an end run around defenses of partial or qualified qua sovereign immunity, but a post-judgment solution rendering any claim of sovereign immunity moot.

-5-

This doctrine of mootness now becomes paramount in that Plaintiffs anticipate that many of the LEVIED BANKS might be sovereign entities, and therefore, unable or unwilling to cooperate with Plaintiffs in responding to the levy by claiming partial or qualified sovereign immunity, creating a multiplicity of litigation, enormous expense, and significant consumption of the judicial time, effort and energy. On the other hand, if Iran appeared, or appeared through its surrogate, the receivers, and directed the LEVIED BANKS to pay Plaintiffs, without condition or reservation from the funds on hand, the LEVIED BANKS would lose standing to assert their own sovereign immunity because the LEVIED BANKS would be acting under the order, direction and demand of Iran, or Iran's successor. Sovereign immunity asserted by the LEVIED BANKS would vanish as a barrier if the LEVIED BANKS were instructed to pay Plaintiffs by receivers as the owner and holder of Iran's rights in and to the accounts, rights to payment of money, general intangible and other contractual rights. In short, if Iran directed the LEVIED BANKS to pay Plaintiffs, the LEVIED BANKS would not be able to assert sovereign immunity as a defense. Therefore, this motion replaces Iran with the three receivers.

### III. LEVIED BANKS ARE NOT SUBJECT TO ABSOLUTE IMMUNITY.

### A. FOREIGN BANKS.

Japan Bank for International Cooperation ("JBIC"), Import Export Bank of Korea, and Import Export Bank of India are all presumably agencies or instrumentalities of their respective sovereigns. They are not entitled to absolute sovereign immunity, but only limited sovereign immunity under 28 U.S.C. § 1605(a)(2), which provides as follows:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> (1) in which the foreign state has waived its immunity either explicitly or by implication.

-6-

notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

The typical factual issue, therefore, for these LEVIED BANKS is the nature and extent of

their commercial activities, a matter typically the subject of potential litigation and discovery,

matters of which are not necessarily before this court based on this motion. However, Iran in

consummating large dollar loans, lines of credit, letters of credit, trade credits, deposits, credit

facilities in favor of its own banks, reconstruction loans and the like certainly *would not wish* to

face these difficult, time-consuming, protracted and very expensive burdens, particularly if Iran

was forced to litigate these issues, for example, in the United States District Court, District of

Columbia, which would attract about $5,000,000,000 of judgment liens from Iranian Judgment

Creditors. Iran would have obtained a waiver of such immunity, less Iran enter into illusory

transactions placing into jeopardy its own economy.

Likewise, Iran certainly would not want to litigate these alleged defenses of sovereign

immunity with these Foreign Banks in their own country for fear of being "home-towned,[1]"

which, without besmirching any of the Foreign Banks at issue, would be a realistic concern.

For Iran, the prospect of litigating sovereign immunity would destroy the economic value

of the relationship with these Foreign Banks, leading to the clear and unmistakable inference that

Iran obtained a complete waiver. The receivers would stand in the shoes of Iran and obtain

---

[1] A colloquialism well known to out-of-town attorneys trying cases in rural jurisdictions.

payment from these Foreign Banks.

## B.    INTERNATIONAL BANKS.

The World Bank (aka The International Bank For Reconstruction And Development),

International Finance Corporation (part of The World Bank), and The International Monetary

Fund all have partial sovereign immunity. The immunity of The World Bank is set forth in its

Articles, as follows:

> **SECTION 3. Position of the Bank with Regard to Judicial Process**
> Actions may be brought against the Bank only in a court of competent jurisdiction
> in the territories of a member in which the Bank has an office, has appointed an
> agent for the purpose of accepting service or notice of process, or has issued or
> guaranteed securities. No actions shall, however, be brought by members or
> persons acting for or deriving claims from members. The property and assets of
> the Bank shall, wheresoever located and by whomsoever held, be immune from
> all forms of seizure, attachment or execution before the delivery of final judgment
> against the Bank.

The immunity of the IFC is as follows:

> **SECTION 3. *Position of the Corporation with Regard to Judicial Process***
> Actions may be brought against the Corporation only in a court of competent
> jurisdiction in the territories of a member in which the Corporation has an office,
> has appointed an agent for the purpose of accepting service or notice of process,
> or has issued or guaranteed securities. No actions shall, however, be brought by
> members or persons acting for or deriving claims from members. The property
> and assets of the Corporation shall, wheresoever located and by whomsoever held,
> be immune from all forms of seizure, attachment or execution before the delivery
> of final judgment against the Corporation.

The immunity of The International Monetary Fund is as follows:

> **Section 3. Immunity from judicial process**
> The Fund, its property and its assets, wherever located and by whomsoever held,
> shall enjoy immunity from every form of judicial process except to the extent that
> it expressly waives its immunity for the purpose of any proceedings or by the
> terms of any contract.

These are multi-billion dollar loans. enabling Iran to make multi-billion dollar commitments. and prudent business experience would suggest that Iran. in making billion dollar commitments. would necessarily demand redress. in the event of a default without. again. the unbelievable burden of litigating any of these factual issues. Iran would have been unwise to leave itself vulnerable to a cataclysmic financial default without clear unfettered redress and without the barrier of partial or qualified sovereign immunity and the ensuing burden of litigation. From time to time. litigants have faced difficult battles in seeking redress against the International Banks. See *Mendaro vs. The World Bank,* 717 F.2d 610 (DC Cir. 1983) in which an employee was barred by partial sovereign in seeking redress for an employment related grievance. and a case certainly known to Iran for fear of facing the same dilemma.

In the current battle between the Plaintiffs and the LEVIED BANKS. sovereign immunity is now taking center stage. See JBIC's current filings (Docket Nos. 273 & 274). potentially the World Bank, International Monetary Fund. and International Finance Corporation (Docket No. 269) who are raising issues of sovereign immunity in which the LEVIED BANKS claim. or might claim that they are not subject to levy regardless of the fact that the bank might hold billions of dollars of Iranian assets, and in which Iran no longer is entitled to any sovereign immunity itself. A receiver in the place of Iran would promptly resolve any assertion of sovereign immunity by instructing the LEVIED BANKS to pay the Plaintiffs. Needless to say. Plaintiffs do not concede that any of these LEVIED BANKS are entitled to sovereign immunity, whether partial. qualified. or absolute. The granting of this motion on an expedited basis would end needless and fracas litigation when the solution is at hand. now raised by JBIC who seeks. no less, an expedited hearing on its own motion on the issue of sovereign immunity. Granting this

-9-

motion for the appointment of a receiver of Iran's relationship with JBIC would render

superfluous JBIC's claims of partial sovereign immunity.

Conceivably, of course, the funds might be "held" in an account which is offshore, such

as in the headquarters of the Bank, such as Tokyo etc. The appointment of a receiver would

resolve that issue in that the receiver takes possession of the funds as part of an in rem process,

succeeding to the rights of Iran for the funds themselves. In a fairly analogous case entitled *In re*

***ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION***, 910 F.Supp. 1470

(D.Hawai'i 1995), the court held that funds in an overseas account of a Swiss bank were subject

to U.S. jurisdiction based on the connection of the Swiss bank through California branches as

follows:

> **"B. Court's Implied Power to Assign**
> First, implicit in the power to enforce a judgment is the power to use all legal
> means to provide relief to judgment creditors in an appropriate case. Assignment
> of funds is one of those means.
> See *Chicago Pneumatic Tool Co. v. O.V. Stonestreet, et al.,* 107 F.R.D. 674
> (S.D.W.Va.1985). In that case the plaintiff requested that the defendant be
> required,
>
>> "to convey or assign to the United States Marshal for the Southern
>> District of West Virginia, such money, bank notes, securities,
>> evidences of debt, other personal property, chooses in action or
>> other intangible personal property as may be ordered by the said
>> commissioner for enforcement and payment of the judgment
>> including interest and costs, outstanding in the above matter." *Id.* at
>> 676. [4]
>
> Despite defendant's arguments about limitations on the power of magistrate
> judges, not here relevant, the Court concluded that in entry of any order requiring
> the debtor to transfer property to the creditor, the magistrate would only facilitate
> the District Court's inherent power to enforce Plaintiffs' judgment.
> Similarly this Court has the inherent power to order the Estate to assign its rights,
> title and interest to the Swiss bank accounts to Plaintiffs, given the uncontroverted
> evidence that those assets belong to the debtor Estate.
> An equally compelling basis for ordering the assignment is FRCP 69(a), also
> relied upon in *Chicago Pneumatic, supra.*

C. FRCP 69(a)

Federal Rule of Civil Procedure 69(a) provides.

> "Process to enforce a judgment for the payment of money shall be a
> writ of execution, *unless the court directs otherwise.* The
> procedure on execution. in proceedings supplementary to and in
> aid of a judgment. and in proceedings on and in aid of execution
> shall be in accordance with the practice and procedure of the state
> in which the district court is held. existing at the time the remedy is
> sought. except that any statute of the United States governs to the
> extent that it is applicable." F.R.C.P. 69(a) (emphasis by the court)

In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La. Inc.,* 1993 WL 414664. 1993
U.S.Dist. LEXIS 14450 (E.D.La.1993). plaintiff moved the Court to enter an order
directing the sale of the rights and interest of the Partnership in a case where judgment
had been entered a year earlier. The District Court looked to Louisiana law as the law of
the state in which the action occurred. Applying the appropriate statute [5], the Court
ordered judicial sale of the property by the United States Marshal. Similarly. in *Moseley
Assoc. v. Brown,* 1988 WL 68149. 1988 U.S.Dist. LEXIS 5662 (S.D.N.Y.1988). the
district court looked to state law. then New York Debtor and Creditor Law. to order
defendants to satisfy Plaintiffs' judgment out of funds which had been transferred to them.
The question here is what state's law applies to enforcement mechanisms and thus to
whether assignment may be ordered.

In this case. the judgment was entered and an order was signed transferring the
matter to other districts for the purpose of execution. The only district in which a
transfer was sought and the judgment registered was the Central District of
California. the location of branches of the Swiss banks holding the money here at
issue. The Swiss banks branches are located in Los Angeles. Plaintiffs are
conducting judgment debtor discovery in California. and all discovery disputes are
before this Court in the Central District of California. Under these circumstances.
California law should apply since the matter is now in California. solely for the
purpose of executing the judgment. Moreover. Hawaii law is consistent with this
disposition.

D. California Law

California law on assignment of right to payment in enforcement of a judgment
provides.

> "Except as otherwise provided by law, upon application of the judgment
> creditor on noticed motion, the court may order the judgment debtor to
> assign to the judgment creditor or to a receiver appointed pursuant to
> Article 7 (commencing with Section 708.610) all or part of a right to
> payment due or to become due. whether or not the right is conditioned on
> future developments. ..." CAL.CIV.PROC.CODE section 708.510 (West
> 1987).

Case law interpreting this statute has consistently upheld a courts' power to
require debtors to assign their interests in debts or other property. See. e.g..

-11-

> *Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian,* 218
> Cal.App.3d 1058. 267 Cal.Rptr. 457 (6 Dist.1990). *See generally,* 8 Witkin.
> Cal.Procedure (3d ed. 1985), Enforcement of Judgments, §§ 299 and 300: *Civil*
> *Procedure: enforcement of judgments,* 14 Pacific L.J. 397, 431 (1983). Similarly,
> here CCP 708.510 and its case law exegesis permit an order of assignment of the
> Estate's interests in the Swiss accounts for the benefit of the judgment creditors.
> class action Plaintiffs.

**III. CONCLUSION**

> For all of the above reasons. the defendant Estate by Imelda Marcos and Ferdinand
> Marcos. Jr. are ordered to forthwith execute an assignment of the funds in the respective
> Swiss banks in favor of the class and individual Plaintiffs. In default thereof the clerk of
> the court is ordered to execute the assignment on behalf of the judgment debtor."

The appointment of a receiver is similar to an assignment in compelling the assignment of

the debtor's assets to a third party. In an assignment setting the assignment order is directly to

the judgment creditor to permit the judgment creditor the opportunity to collect. In a receivership

setting the asset is transferred to the receiver who is charged with the duty to liquidate the asset.

See *Federal Trade Commission vs. Productive Marketing etc.,* 136 F. Supp.2d 1096 (C.D., Cal.

2001). at pages 105 to 107 in which the court stated as follows:

> "The FTC further asserts that the court's power to enjoin ACCPC "is derived from
> its inherent authority to fashion effective relief." and that such power is broader
> than the authority conferred by Rule 65(d). FTC Supp. Brief. at 2-3. That federal
> courts possess broad authority "to issue a variety of 'ancillary relief' measures in
> [enforcement] actions brought by [federal agencies]" cannot be gainsaid. SEC v.
> Wencke, 622 F.2d 1363. 1369 (9th Cir. 1980): *see also SEC v. Universal*
> *Financial.*760 F.2d 1034, 1038 (9th Cir. 1985) (District court's power to enter a
> blanket receivership stay "is broader than the court's authority to grant or deny
> injunctive relief under Fed.R.Civ.P. 65."). *"The Supreme Court has repeatedly*
> *emphasized the broad equitable powers of the federal courts to shape equitable*
> *remedies to the necessities of particular cases, especially where a federal agency*
> *seeks enforcement in the public interest." Wencke, 622 F.2d at 1371.*
> *****
> *An order issued to preserve the assets of a receivership estate is a classic*
> *example of an in rem injunction. Cf. Wencke, 622 F.2d at 1369 (the district*
> *court's power "to issue a stay, effective against all persons, of all proceedings*
> *against the receivership entities rests as much on its control over the property*
> *placed in receivership as on its jurisdiction over the parties to the ... action.").*
> *****.

*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F.Supp. 369, 372 (D.Colo.1995);
*see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) (*"There is
substantial jurisdictional basis for allowing the federal court receiver to have and keep
custody and control of the assets in question, and to obtain the relief needed to
implement that custody."*); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("The
basis for broad deference to the district court's supervisory role in equity receiverships
arises out of the fact that most receiverships involve multiple parties and complex
transactions."); *Paccione*, 964 F.2d at 1275 (affirming criminal contempt sanctions
against "a person who interfered with the *res*, the disposition of which the court had
specifically restricted"). (Emphasis added)

Under traditional principals of federal equity receivership, the receivers would subsume

the entirety of Iran's ownership in any of the accounts and other rights held by the LEVIED

BANK, and ultimately take control over the fracas litigation by and between the LEVIED

BANKS and the Plaintiffs.

## IV.  STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENT.

The starting point of enforcement is found in F.R.C.P. 69(a)(1), which provides as

follows:

> Rule 69. Execution
> (a) In General.
> (1) Money Judgment: Applicable Procedure.
> A money judgment is enforced by a writ of execution, unless the court directs
> otherwise. The procedure on execution — and in proceedings supplementary to
> and in aid of judgment or execution — must accord with the procedure of the state
> where the court is located, but a federal statute governs to the extent it applies.

Rule 66 of the Rules of Procedure for the District of Columbia law provides for receivers

as follows:

> "Rule 66. Receivers appointed by the Superior Court
> An action wherein a receiver has been appointed shall not be dismissed except by
> order of the Court. The practice in the administration of estates by receivers or by
> other similar officers appointed by the Court shall be in accordance with the
> practice heretofore followed in the United States District Court for the District of
> Columbia or provided by the Rules promulgated by this Court. In all respects the

-13-

action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these Rules."

The Comment provides as follows:

"Identical to *Federal Rule of Civil Procedure 66* except for the change in title and change in the designation on prior practice to be followed. The insertion of reference to practice heretofore followed in the United States District Court for the District of Columbia is designed to insure maximum possible continuity in the handling of District of Columbia receivership matters. (Amended May 9, 1975)

District of Columbia law would be consistent with federal law in interpreting identical federal rules. See *Estate of Margaret Bonham*, 817 A.2d 192 at page 195.

The court has broad discretion in appointing a receiver. In *Aviation Supply Corporation vs. R.S.B.I. Aerospace*, 999 F.2d 314 (8th Cir. 1993) at pages 316 to 317, the court stated as follows:

"The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. See Fed.R.Civ.P. 66 and Advisory Committee's Note; New York Life Ins. Co. v. Watt West Inv. Corp., 755 F.Supp. 287, 289-92 (E.D.Cal.1991); Midwest Sav. Ass'n v. Riversbend Assocs. Partnership, 724 F.Supp. 661 (D.Minn.1989); 12 C. Wright & A. Miller, Federal Practice and Procedure § 2983. *A receiver is an extraordinary equitable remedy that is only justified in extreme situations. Although there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.* See Consolidated Rail Corp. v. Fore River Ry., 861 F.2d 322, 326-27 (1st Cir.1988); Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 826 (3d Cir.1959); Bookout v. Atlas Fin. Corp., 395 F.Supp. 1338, 1342 (N.D.Ga.1974), aff'd, 514 F.2d 757 (5th Cir.1975). We review the decision to appoint a receiver for abuse of discretion.

In this case, appointment of the receiver was sought by ASC, a judgment creditor. A receiver may be appointed "to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment." Leone Indus. v. Associated Packaging, Inc., 795 F.Supp. 117, 120 (D.N.J.1992). See also Levin v. Garfinkle, 514 F.Supp. 1160, 1163

(E.D.Pa.1981)."

Receivers are appointed for purposes of taking possession and control. and ultimately

liquidating the property of a Judgment Debtor.  See *Federal Practice and Procedure 2d* by

Wright & Miller, Vol. 12. § 2983. pages 22-23 [multiple citations omitted]. Receivers are

traditionally appointed in a supplemental proceeding when the interest of equity suggests such a

result, specifically. when property would be difficult to reach in any other traditional manner.

See *Wood vs. Noyes*. 279 F.321 (9th Cir. 1922).  Therefore. this court has the power to appoint a

receiver as a general equitable matter. and does appoint receivers from time to time.

This is found in such cases as *Securities & Exchange Commission and Deborah*

*Meshulam, Appellants, vs. Paul A. Bilzerian, et al.*. 378 F.3d 1100 (D.C. Cir. 2004), in which

the trial court authorized the appointment of a receiver for "purposes of identifying, marshaling.

receiving and liquidating [Bilzerian's assets]. See *SEC vs. Bilzerian,* 127 F.Supp.2d 232, 233

(D.C. Cir. 2000). and affirmed.  In that case. the receivership authorized the receiver to take and

maintain complete and exclusive control, possession and custody of Bilzerian's assets wherever

situated and to liquidate any interest in any asset held by anyone on behalf of Bilzerian, including

but not limited to. the initiation and prosecution of litigation against others to recover such assets,

but not limited to. the initiation and prosecution of litigation against others to recover such assets,

or interest in assets on behalf of the receivership estate.  See page 233.  This is. of course. a

classic receiver.  In *Securities and Exchange Commission vs. Loving Spirits Foundation etc.,*

392 F.3d 486 (D.C. Cir. 2004). the court stated as follows:

> "That court ordered Bilzerian to disgorge over $62 million. representing profits
> from his fraudulent activities and prejudgment interest. SEC v. Bilzerian. 814
> F.Supp. 116 (D.D.C.1993) (ordering disgorgement of profits). *aff'd* 29 F.3d 689

-15-

(D.C.Cir. 1994): *SEC v. Bilzerian,* No. 89-1854, 1993 WL 542584 (D.D.C. June 25. 1993) (setting value of interest). Seven years later, with the judgment still unpaid. the district court found Bilzerian in contempt of the disgorgement order, *SEC v. Bilzerian.* 112 F.Supp.2d 12 (D.D.C.2000). *aff'd* 75 Fed.Appx. 3 (D.C.Cir. 2003). established a receivership estate "*for the purpose of identifying, marshaling, receiving, and liquidating his assets.*" *SEC v. Bilzerian,* 127 F.Supp.2d 232. 232 (D.D.C.2000). appointed appellee Deborah Meshulam as receiver. *id..* and sent Bilzerian back to prison for continued noncompliance, *SEC v. Bilzerian.* 131 F.Supp.2d 10 (D.D.C.2001). (Emphasis added) (p.488)

Receivers are found in Rule 66. which provides as follows:

"These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order."

The relationship between a bank and its customer is debtor-creditor in which the bank is the debtor and the customer is the creditor. See *In re Alan BERNARD, Linda Bernard, Debtors.* 96 F.3d 1279 (9th Cir. 1996). in which the court stated as follows:

"The Bernards did not own money gathering dust in their LEVIED BANK ACCOUNTS. "As between the bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited." Chang v. Redding Bank of Commerce. 29 Cal.App.4th 673. 681. 35 Cal.Rptr.2d 64 (Cal.App.1994) (citation omitted): Crocker-Citizens Nat. Bank v. Control Metals Corp.. 566 F.2d 631, 637 (9th Cir.1977) (**"It is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor. Therefore, when funds are deposited, title to those funds passes immediately to the bank."**) (citations omitted): see also Barnhill v. Johnson. 503 U.S. 393, 398, 112 S.Ct. 1386, 1389. 118 L.Ed.2d 39 (1992) ("A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance.").

Instead of owning money sitting in their accounts. the Bernards owned claims against their bank. When they withdrew from their accounts, they exchanged debt for money (which, more than incidentally. was more difficult for the Sheaffers to acquire). Thus, when the Bernards made their withdrawals they parted with property. satisfying the Code's definition of transfer. Because they parted with their claims against the bank to hinder the Sheaffers. the Bernards violated §

727(a)(2)(A), warranting denial of discharge." (Emphasis added) (P. 1283)

The starting point is found under 28 U.S.C. § 754, which provides as follows:

### § 754. Receivers of property in different districts
A receiver appointed in any civil action or proceeding involving property, real,
personal or mixed, situated in different districts shall, upon giving bond as
required by the court, be vested with complete jurisdiction and control of all such
property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and
may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of his order of appointment, file
copies of the complaint and such order of appointment in the district court for
each district in which property is located. The failure to file such copies in any
district shall divest the receiver of jurisdiction and control over all such property
in that district.

Furthermore, the receiver's rights are found under 28 U.S.C. § 1692, which provides as

follows:

### § 1692. Process and orders affecting property in different districts
In proceedings in a district court where a receiver is appointed for property, real,
personal, or mixed, situated in different districts, process may issue and be
executed in any such district as if the property lay wholly within one district, but
orders affecting the property shall be entered of record in each of such districts.

### V. POWERS AND DUTIES OF THE RECEIVER.

The court has broad powers to confer upon a receiver as exercised in the *Bilzerian* cases.

Plaintiffs propose that the powers and duties of the receiver are set forth below:

1. For the appointment of a receiver for the purposes of the collection, recovery, and

sequestering all of the bank accounts, accounts with any bank, stockbroker, savings and loan, or

similar institution, funds held by any bank in any trust or other account, certificates of deposit,

time certificates of deposit, lines of credit, letters of credit, credits due Iran, general intangibles

owed by any governmental entity, bank, import export bank which are due and payable to Iran

from the following listed financial institutions, banks, governmental entities, and third parties as

follows:

> JAPAN BANK FOR INTERNATIONAL COOPERATION
>
> THE WORLD BANK
>
> INTERNATIONAL FINANCE CORPORATION
>
> INTERNATIONAL MONETARY FUND
>
> IMPORT EXPORT BANK OF KOREA
>
> IMPORT EXPORT BANK OF INDIA

(hereinafter collectively "LEVIED BANKS") due to and in favor of the Islamic Republic of Iran

("Iran") for purposes of payment of the outstanding judgment in the amount of

$2,656,944,877.00 in which funds, monies, credits, deposits, right to payment of money, account

deposits are due from the LEVIED BANKS to and on behalf of Iran, and have been the subject of

service of writs of attachment on judgment, hereinafter collectively "LEVIED BANK

ACCOUNTS."

2. For an order authorizing, permitting and directing the receiver to make demand upon

all LEVIED BANKS directing all of the LEVIED BANK ACCOUNTS be paid to the receiver up

to and including the amount necessary to satisfy this judgment, plus any and all accruing interest,

costs, and other fees and charges which the court may assess from time to time herein.

3. For an order restraining, to the extent possible, Iran and all of its agencies and

instrumentalities from any act of interference with the conduct of the receiver herein, an order

prohibiting, restraining, staying and enjoining Iran from taking any action in any court, other than

-18-

this court, by which the action would be to interfere with the conduct of the receiver, either in part or in whole.

4. For an order authorizing the receiver to retain counsel or take such other appropriate action by which to effectuate a recovery of the LEVIED BANK ACCOUNTS: the establishment of one or more bank accounts; the filing of one or more actions in a court of competent jurisdiction, other than this court herein, if necessary: the retention of accountants, auditors or experts. necessary to aid and assist the receiver herein; and such other action which the receiver deems just and appropriate.

5. For an order authorizing the receiver to receive any and all monies due Iran based upon any LEVIED BANK ACCOUNTS. an order permitting and authorizing the receiver to authorize the receiver to negotiate a financial disposition. either in part or in whole. of any "LEVIED BANK ACCOUNTS;" and moreover, an order permitting the receiver to settle, resolve. discount. or compromise, any and all claims, of any type or nature. which Iran may have to and against any and all parties.

6. For an order permitting the receiver to affix the name of Iran or any government official on any check. draft. money order. or other note or instrument. to cash either in part or in whole. any letter of credit. or instrument. or device thereunder.

7. For an order permitting and authorizing the receiver to take such action as if the owner of any LEVIED BANK ACCOUNTS of Iran. and to take such action as may be necessary by which to convert those assets into a sum of money. for purposes of payment. either in part or in whole, of the outstanding judgment.

8. For an order continuing the jurisdiction of this court. in which the receiver would be

-19-

required to report from time to time.

9. For an order setting the bond in an amount based upon the court's discretion. and an order permitting and allowing the receiver to incur any and all obligations necessary to perform the duties. but in which such obligations are not the personal liability of the receiver.

10. For an order continuing from time to time this motion. for purposes of determining compliance by Iran with any order. judgment, or decree of this court. and an order permitting the court to refer any matter to a Magistrate Judge. or other subordinate judicial officer for any evidentiary hearing which the court may request from time to time. and/or an order appointing a referee or other fact-finder which may be necessary.

11. Plaintiff proposes the members of the Gavel Group as potential receivers:

A.    EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of
      Appeals Court for the Armed Forces.

B.    STANLEY SPORKIN. Retired United States District Court Judge and Former
      General Counsel for the Central Intelligence Agency.

C.    LOUIS FREEH. Retired United States District Court Judge and Former Director
      of the Federal Bureau of Investigation.

## VI. RECEIVERS WOULD STEP INTO THE SHOES OF IRAN AND COMPEL AN OUTCOME AVOIDING AN ADJUDICATION OF SOVEREIGN IMMUNITY.

The LEVIED BANKS may well claim sovereign immunity. creating a storm of litigation over a whole host of issues. such as. and including. the entitlement to discovery: the nature and extent of the commercial activity of the bank. and whether the LEVIED BANK is an agency and instrumentality. Without doubt. the parties can battle over these issues creating reams of filings, and years of endless civil litigation. However. if Iran directs payments of funds held by the allegedly soveirgn LEVIED BANKS, the outcome might be substantially different in that

-20-

LEVIED BANKS might have no choice but to pay, rendering the strife between the LEVIED

BANKS and the Plaintiffs moot.

Unlike other post-judgment remedies, the appointment of a receiver ousts the judgment

debtor and replaces the judgment debtor with a neutral court-appointed officer. Directly on point

is *Securities and Exchange Commission vs. American Capital Investments etc.*, 98 F.3d 1133

(9th Cir. 1996) at pages 1144 to 1145, in which the court stated as follows:

> "Reebok Int'l v. Marnatech Enter., Inc., 970 F.2d 552, 561-62 (9th Cir.1992) (quoting
> Brown v. Swann, 35 U.S. (10 Pet.) 497, 503. 9 L.Ed. 508 (1836)). Second, the leading
> treatise on the law of receiverships teaches:
>
> *It is generally conceded that a court of equity having custody and control of*
> *property has power to order a sale of the same in its discretion. The power of*
> *sale necessarily follows the power to take possession and control of and to*
> *preserve property, resting in the sovereignty and exercised through courts of*
> *chancery, or courts having statutory power to make the sale.*
> . . .
> *We turn now to appellants' second and third arguments, which are related--that*
> *there is no federal common law of receiverships. Consequently, they argue, a*
> *receiver does no more than "step into the shoes" of the receivership defendant*
> *under state law and can convey no more title than the defendant possessed.* For
> support, appellants rely on O'Melveny & Myers v. FDIC, 512 U.S. 79. 114 S.Ct.
> 2048, 129 L.Ed.2d 67 (1994). in which the Court held that state law, rather than
> federal law. governs the imputation of corporate officers' knowledge of fraud to a
> corporation, where the FDIC, as receiver, is prosecuting the corporation's state
> causes of action. Id. at ---- - ----, 114 S.Ct. at 2052-53.

In *Wuliger vs. Owens*, 365 F.Supp.2d 838 (N.D. Ohio. 2005) the court reiterated the classic rule

that the receiver steps into the shoes of the "debtor" as follows:

> "Federal equity receivers are appointed to take control, custody, and/or management of
> property involved in litigation. It is generally recognized that a receiver may bring suit to
> "accomplish the objective of the suit for which he or her appointment was made. or under
> the specific directions of the appointing court, or pursuant to his general duties to receive,
> control, and manage the receivership property." 12 Charles Alan Wright. Arthur R. Miller
> & Richard L. Marcus, Federal Practice & Procedure § 2984 (2d ed.1997). *See also,*
> *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 626 (6th Cir.2003) ("question
> depends on the authority granted by the appointing court and actually exercised by the

receiver"): 65 Am.Jur.2d Receivers § 129 (2d ed) (powers of a receiver flow from statute, court rules, orders of appointment and subsequent orders of appointing court). *By the same token "[a] receiver stands in the shoes of the person for whom he has been appointed and can assert only those claims which that person could have asserted."* *Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir.1983).

The receivers would step into the shoes of Iran in the relationship by and between on one hand, Iran, and on the other, the LEVIED BANKS. Clearly, certain financial institutions assert immunity from Plaintiffs' levy and execution, but have no immunity, or defense, to a directive from Iran to turnover and disburse the funds.

## VII. PROPOSED RECEIVERS.

Plaintiffs nominate the following nominees as receivers:

A.     EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.     STANLEY SPORKIN, Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.     LOUIS FREEH, Retired United States District Court Judge and Former Director of the FBI.

Each one of these individuals are retired federal judges, all with backgrounds in national security, military, and intelligence matters, and all of them would be more than capable of performing in this assignment, meeting the expectations of all parties.

Plaintiffs propose an initial bond in the amount of $50,000.00, and based upon the recovery of funds, the bond to be increased. As a normal matter of practice, assuming the motion is granted, the protocol is that the receiver would take an oath of office, file the same with the court, commence the process of placing the LEVIED BANKS on notice, and absent compliance, take appropriate action to compel turnover of the funds. Plaintiffs anticipate the receiver would

-22-

retain counsel who would aid and assist in this task, along with accountants, investigators, and

third parties.

## VIII. SUMMARY.

This is a classic enforcement action, in which the appropriate remedy is in fact the

appointment of a receiver.  Based upon the virtual abolition of the FSIA, the appointment of a

receiver would be the most appropriate remedy.

DATED:  May 20, 2008                    COOK COLLECTION ATTORNEYS
                                        By:   /s/ David J. Cook
                                        DAVID J. COOK, ESQ. (SB# 060859)
                                        P.O. Box 270
                                        San Francisco, CA 94104-0270
                                        Telephone: (415) 989-4730
                                        Fax: (415) 989-0491
                                        Email: Cook@Squeezebloodfromturnip.com


DATED:  May 20, 2008                    PERLES LAW FIRM
                                        By:   /s/ Steve Perles
                                             STEVE PERLES, ESQ.
                                        1146 19th Street, 5th Floor
                                        Washington D.C., DC  20036
                                        Telephone:  202-955-9055
                                        Fax: 202-955-3806


DATED:  May 20, 2008                    FAY LAW PA
                                        By:   /s/ Thomas Fortune Fay
                                             THOMAS FORTUNE FAY, ESQ.
                                        601 Pennsylvania Avenue, NW
                                        #900 - South Building
                                        Washington, DC  20004
                                        Telephone:  202-589-1300
                                        Fax:  202-589-1300
                                        Email: ThomasFay@aol.com
                                        Attorneys for Plaintiffs
                                        DEBORAH D. PETERSON, Personal
                                        Representatives of the Estate of James C. Knipple
                                        (Dec.), et. al.

F:\USERS\DJCNEW\petersonappoint.bankleviesmpa

EXHIBIT E

CO-901A
Rev. 7/90

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEBORAH D. PETERSON, Personal etc.
                                                    ISLAMIC REPUBLIC OF IRAN
    Plaintiff(s)                    vs          Defendant(s)

CIVIL ACTION NO. 01-2094 (RCL) and related case numbers
WRIT OF ATTACHMENT ON JUDGMENT
OTHER THAN WAGES, SALARY AND COMMISSIONS

To  INTERNATIONAL MONETARY FUND 7000 19th Street NW

WASHINGTON DC 20431                                    Garnishee:

You are hereby notified that any money, property or credits other than wages, salary and commissions of the above named defendant(s), are seized by the Writ of Attachment, and you are required to hold it and not to pay or surrender it to the defendant(s) or to anyone else without an order from this court, **for the entities listed**
The Judgement against the defendant was entered on **Sept. 7, 2007** in the amount of **on Ex. "A"**

SEE BELOW *                              ($2,656,944,877) 00 and the costs amounting to $ **attached and**
                                                                              **incorporated**
with interest at  4.27% % from

Sept. 7, 2007  less credits of $  -0-

Within ten (10) days after this writ is served upon you, you are required to answer the interrogatories, **UNDER PENALTY OF PERJURY**, and to file in this Court the original and one copy of the answers, and to serve a copy, by mail or other means, upon the plaintiff(s) and upon the defendant(s). If you fail to do so, judgment may be entered against you for the entire amount of the plaintiff's claims with interest and costs.

2008  Witness the Honorable Chief Judge of said Court, this    2 5th day of March

**\*Two billion, Six hundred and**                 Nancy M. Mayer-Whittington, Clerk
**fifty fix million, nine hundred and**
**fourty four thousand and eight hundred**         By  J. Currie
**and seventy seven dollars and no cents.**             Deputy Clerk

   DAVID J. COOK, Esq.  California State Bar Number: 060859
COOK COLLECTION ATTORNEYS
Attorney for Plaintiff
ADMITTED PRO HAC VICE

165 Fell Street, San Francisco, California 94102
P.O. Box 270, San Francisco, California  94104
Atorneys for Plaintiff Deborah D. Peterson, personal
Address & Telephone Number
representative etc. et. and other parties listed
therein. Phone: (877) 989 4730
Fax: (866) 989 0491; Email: DAVID COOK@CookCollectionAttorneys.Com

# RECEIVED

MAY 6 - 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



**INTERNATIONAL MONETARY FUND**

WASHINGTON, D. C. 20431

May 1, 2008

CABLE ADDRESS
INTERFUND

Nancy M. Mayer-Whittington, Clerk
United States District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Dear Ms. Mayer-Whittington:

We have received the enclosed Writ of Attachment on a Judgment dated March 25, 2008, signed by your deputy, in respect of money, property or credits other than wages, salaries and commission of the Islamic Republic of Iran, a member of the International Monetary Fund. For the reasons set out below, the Writ cannot be legally issued against the Fund.

Article IX, Section 3 and 4 of the Articles of Agreement of the International Monetary Fund, reprinted in 60 Statutes at Large, beginning at page 1401, provide as follows:

> "*Section 3. Immunity from judicial process*
>
> The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract.
>
> *Section 4. Immunity from other action*
>
> Property and assets of the Fund, wherever located and by whomsoever held, shall be immune From search, requisition, confiscation, expropriation, or any other form of seizure by executive or legislative action."

Article IX, Sections 2 through 9 of the Fund's Articles have been given full force and effect in the United States by Section 11 of the Bretton Woods Agreements Act (Public Law 171 - 79th Congress, 59 Statutes at Large, page 512 et seq., approved July 3, 1945, 22 U.S.C. Section 286h), which states:

# RECEIVED

### MAY 6 - 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2

## "STATUS, IMMUNITIES AND PRIVILEGES

*Section 11.* The provisions of article IX, sections 2 to 9, both inclusive, and the first sentence of article VIII, section 2(b) of the Articles of Agreement of the Fund, and the provisions of article VI, section 5(i) and article VII, sections 2 to 9, both inclusive, of the Articles of Agreement of the Bank, shall have full force and effect in the United States and its Territories and possessions upon acceptance of membership by the United States in, and the establishment of, the Fund and the Bank, respectively."

Executive Order 9751 of July 11, 1946 designated the International Monetary Fund as a public international organization entitled to enjoy certain privileges, exemptions, and immunities under the International Organizations Immunities Act (Public Law 291 -- 79th Congress, 59 Statutes at Large, page 669 et seq., approved December 29, 1945; 22 U.S.C. Sections 288 to 288f). Section 2 of the Act provides in part as follows:

"Section 2. International organizations shall enjoy the status, immunities, exemptions, and privileges set forth in this section, as follows:

(b) International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract."

As you can see from the above, the Writ for attachment of money, property or credits cannot legally be issued against the International Monetary Fund. The Writ is being returned herewith.

Please feel free to contact me if you have any questions concerning the above.

Sincerely yours,

Joan S. Powers
Assistant General Counsel
Legal Department

Enclosure

cc:     Mr. David J. Cook
        Cook Collection Attorneys
        Attorneys at Law
        P.O. Box 270
        San Francisco, CA 94104-0270

EXHIBIT F

# SIDLEY

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

ggreen@sidley.com
(202) 736-8126

| | |
|---|---|
| BEIJING | LOS ANGELES |
| BRUSSELS | NEW YORK |
| CHICAGO | SAN FRANCISCO |
| DALLAS | SHANGHAI |
| FRANKFURT | SINGAPORE |
| GENEVA | SYDNEY |
| HONG KONG | TOKYO |
| LONDON | WASHINGTON, D.C. |

FOUNDED 1866

May 23, 2008

**BY EMAIL**

David J. Cook, Esq.
Cook Collection Attorneys PLC
165 Fell Street
San Francisco, CA 94012-5106

     Re:    Peterson v. Islamic Republic of Iran, No 01-2094 (D.D.C.)

Dear Mr. Cook:

     Thank you for your email dated May 21, 2008. The World Bank is disappointed that it now appears that the Court will have to become involved to resolve this matter. As I noted in our telephone discussion on May 21, 2008, both statutory and case-law authority make absolutely plain that there is no legal basis for pursuing garnishment proceedings (and the other relief you seek on behalf of your clients) against the World Bank.

     First, the Foreign Sovereign Immunities Act ("FSIA") poses an insuperable obstacle to exactly the sort of garnishment efforts you are pursuing against the Bank:

> Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act *shall not be subject to attachment or any other judicial process impeding the disbursement of funds to, or on the order of, a foreign state* as the result of an action brought in the courts of the United States or of the States.

28 U.S.C. § 1611(a) (emphasis added). The World Bank is an "international organization" under the International Organization Immunities Act of 1945 ("IOIA") and has been designated as such by the President. *See* 22 U.S.C. § 288 *et seq.*; Exec. Order No. 9751, 11 Fed. Reg. 7713 (1946). Also, although Congress recently amended some aspects of the FSIA, § 1611(a) was not altered in any way. *See* National Defense Authorization Act for Fiscal Year 2008, Pub. L. 110-181, § 1083, 122 Stat. 3, 338-344 (Jan. 28, 2008). Thus, by its plain terms, § 1611(a) expressly



David J. Cook, Esq.
May 23, 2008
Page 2

prohibits what you are attempting to do in this case: use judicial process to interfere with the distribution of development funds to, or on behalf of, a foreign country.

Second, just three months ago, the D.C. Circuit reaffirmed the World Bank's immunity from garnishment proceedings. In *Inversora Murten, S.A.* v. *Energoprojekt-Niskogradnja Co. Ltd.*, 2008 WL 441836 (D.C. Cir. Feb. 14, 2008), the Court squarely held that World Bank was immune from garnishment proceedings because "its interests are not advanced by subjecting itself to" such proceedings. *Inversora* followed *Atkinson* v. *Inter-American Development Bank*, 156 F.3d 1335 (D.C. Cir. 1998), which also held that international organizations were immune from garnishment proceedings. *Atkinson* made clear that international organizations had absolute immunity from suit, *see id.* at 1341, and that that immunity "should be construed as *not waived* unless the particular type of suit would *further* the Bank's objectives," *id. at* 1338 (citing *Mendaro* v. *World Bank*, 717 F.2d 610 (D.C. Cir. 1983)).

Third, the World Bank's Articles of Agreement provide that the "*property and assets of the Bank shall*, wheresoever located and by whomsoever held, *be immune from all forms of seizure, attachment or execution* before the delivery of final judgment against the Bank." *See* Articles of Agreement of the International Bank for Reconstruction and Development, Dec. 27, 1945, art. VII, § 3, 60 Stat. 1440, 1458 (emphases added). This treaty provision is not only binding as part of federal law, but has also been *expressly* incorporated into the United States Code. See 22 U.S.C. § 286h.

The World Bank has made every effort to explain to you the bases for its immunity from your various collection efforts, which now include a motion to appoint a receiver. Nonetheless, you have declined to desist and — in your last email — threatened to seek civil penalties and a restraining order.

The World Bank, accordingly, now has no alternative other than to involve the Court and will oppose your motion to appoint a receiver. It may also seek to recover its expenses incurred in doing so from plaintiffs' counsel under Rule 11.

Please call me if you wish to discuss this matter further.

Sincerely,

Griffith L. Green

EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEBORAH D. PETERSON,** *et al.,* | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| v. | :   **Civil Action No. 01-2094 (RCL)** |
| | : |
| **THE ISLAMIC REPUBLIC OF IRAN,** *et. al.,* | : |
| | : |
| **Defendants.** | : |
| _____ | : |

### EMERGENCY MOTION TO SHORTEN TIME FOR
### PLAINTIFFS TO RESPOND TO JBIC'S MOTION TO QUASH
### WRIT OF ATTACHMENT ON JUDGMENT

Pursuant to Fed. R. Civ. P. 6(c), Japan Bank for International Cooperation ("JBIC"), a third party stranger to the above captioned litigation, hereby moves the Court to shorten the time for Plaintiffs to oppose JBIC's motion to quash the writ of attachment on judgment served upon it by the U.S. Marshal's office on April 30, 2008. In support of this motion, JBIC states:

1.    JBIC is a Japanese Government financial institution. As such, it is a foreign sovereign immune from jurisdiction and attachment in U.S. courts.

2.    Notwithstanding JBIC's sovereign immunity, on March 25, 2008, the Plaintiffs caused this Court to issue a writ of attachment directed to JBIC.

3.    Notwithstanding JBIC's sovereign immunity, on April 14, 2008, Plaintiffs delivered, by first class mail, a subpoena in aid of attachment to JBIC.

4.    On April 23, 2008, counsel for JBIC served written objections to the subpoena, alerting Plaintiffs to JBIC's sovereign immunity.

5.    Notwithstanding JBIC's sovereign immunity, on April 30, 2008, JBIC was served with the writ of attachment requested by Plaintiffs.

1

6.      Notwithstanding JBIC's sovereign immunity and notwithstanding that Plaintiffs were on written notice of JBIC's sovereign immunity, on May 1, 2008, Plaintiffs commenced an ancillary proceeding to enforce the judgment entered in this case by filing a motion for enforcement in the United States District Court for the Northern District of California.  That motion has now been set for hearing on July 2, 2008, and third party garnishees like JBIC have been invited to submit opposition briefs in that proceeding by June 9, 2008.

7.      Not only does JBIC have sovereign immunity, but it maintains no office in California and there is no basis for jurisdiction or venue over JBIC in California.

8.      For the reasons set forth in the memorandum of points and authorities accompanying the contemporaneously filed motion to quash, JBIC respectfully requests that the Court: (1) shorten the time for Plaintiffs' opposition to JBIC's motion to quash the writ of attachment directed to seven calendar days from the docketing of this motion;  and (2) issue a ruling on JBIC's status as a foreign sovereign, immune from the jurisdiction of U.S. courts, at the Court's earliest possible opportunity so as to resolve the matter prior to Plaintiffs' noticed hearing on July 2, 2008 and in any future efforts by Plaintiffs to hail JBIC into an American court.

9.      JBIC respectfully requests that the Court intercede on an expedited basis to prevent JBIC from expending further effort or expense to extricate itself from a litigation matter in which it has no stake or role, either in this Court or in any other state or federal court in the United States.

10.     Unless immediately halted, Plaintiffs efforts to seek attachment of the assets of foreign sovereigns like JBIC may do irreparable damage to America's relationships and credibility with other foreign states who have no connection to state sponsored terrorism, such as

2

the sovereign nation of Japan.

11.    This Court has the authority to shorten time for Plaintiffs' response to JBIC's

motion to quash under Rule 6(c), Federal Rules of Civil Procedure.

WHEREFORE, Japan Bank for International Cooperation asks this Court to grant this

motion, to order Plaintiffs to respond to JBIC's motion to quash on or before, May 20, 2008, and

to set this matter for resolution in as expeditious manner as possible.

Dated:  May 13, 2008                    Respectfully submitted,

                                        ARENT FOX PLLC


                                         /s/ James H. Hulme
                                        James H. Hulme (#323014)
                                        Stewart S. Manela (#948679)
                                        Matthew M. Wright (#474731)
                                        1050 Connecticut Ave, N.W.
                                        Washington, DC 20036-5339
                                        (202) 857-6000/Telephone
                                        (202) 857-6395/Facsimile

                                        *Attorneys for Japan Bank for International
                                        Cooperation*

                                        Pursuant to L. Civ. R. 7(m), I contacted David J.
                                        Cook, Esq., Plaintiff's collection counsel, on May
                                        12, 2008 via telephone to seek consent to the relief
                                        requested in this motion.  He declined to consent
                                        and Plaintiffs oppose this motion.


                                        _____
                                        Matthew M. Wright, Esq.

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of May 2008, I caused a copy of the foregoing Emergency Motion to Shorten Time for Plaintiffs to Respond to JBIC's Motion to Quash Writ of Attachment on Judgment and Proposed Order to be served by U.S. Mail, first-class postage pre-paid, and electronic mail upon the following:

David J. Cook, Esq.
Cook Collection Attorneys, P.L.C.
165 Fell Street
San Francisco, CA 94102

Thomas Fay, Esq.
601 Pennsylvania Avenue NW
South Building - Suite 900
Washington, DC 20004

Steven Perles, Esq.
Perles Law Firm, P.C.
1146 19th Street 5th Floor
Washington, DC 20036

_/s/ James H. Hulme_____
James H. Hulme