# EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBORAH D. PETERSON, Personal | ) | |
| Representatives of the Estate of James C. | ) | |
| Knipple (Dec.), et. al., | ) | |
| | ) | Consolidated Civil Actions: |
| Plaintiffs, | ) | 01-2094 (RCL) |
| | ) | 01-2684 (RCL) |
| vs. | ) | |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION FOR APPOINTMENT OF RECEIVER AS SUPPLEMENTAL REMEDY PURSUANT TO F.R.C.P. 69(a)(1), AND UNDER RULE 66 OF THE FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 754 AND 28 U.S.C. § 1692

### [LEVIED BANK ACCOUNTS]

Plaintiffs DEBORAH D. PETERSON, Personal Representatives of the Estate of James C.

Knipple (Dec.), and all the remaining Plaintiffs (hereinafter collectively "Plaintiffs" or

"Marines"), hereby move this court for the following relief under F.R.C.P. 69(a)(1) and under

Rule 66 of the Rules of Federal Procedure, consistent with 28 U.S.C. § 754 and 28 U.S.C. §

1692, as follows:

1. For the appointment of a receiver for the purposes of the collection, recovery, and

sequestering all of the bank accounts, accounts with any bank, stockbroker, savings and loan, or

similar institution, funds held by any bank in any trust or other account, certificates of deposit,

-1-

time certificates of deposit, lines of credit, letters of credit, credits due Iran, general intangibles

owed by any governmental entity, bank, import export bank which are due and payable to Iran

from the following listed financial institutions, banks, governmental entities, and third parties as

follows:

> JAPAN BANK FOR INTERNATIONAL COOPERATION
>
> THE WORLD BANK
>
> INTERNATIONAL FINANCE CORPORATION
>
> INTERNATIONAL MONETARY FUND
>
> IMPORT EXPORT BANK OF KOREA
>
> IMPORT EXPORT BANK OF INDIA

(hereinafter collectively "LEVIED BANKS") due to and in favor of the Islamic Republic of Iran

("Iran") for purposes of payment of the outstanding judgment in the amount of

$2,656,944,877.00 in which funds, monies, credits, deposits, right to payment of money, account

deposits are due from the LEVIED BANKS to and on behalf of Iran, and have been the subject of

service of writs of attachment on judgment, hereinafter collectively "LEVIED BANK

ACCOUNTS."

　　　2.  For an order authorizing, permitting and directing the receiver to make demand upon

all LEVIED BANKS directing all of the LEVIED BANK ACCOUNTS be paid to the receiver up

to and including the amount necessary to satisfy this judgment, plus any and all accruing interest,

costs, and other fees and charges which the court may assess from time to time herein.

　　　3.  For an order restraining, to the extent possible, Iran and all of its agencies and

instrumentalities from any act of interference with the conduct of the receiver herein, an order

prohibiting, restraining, staying and enjoining Iran from taking any action in any court, other than this court, by which the action would be to interfere with the conduct of the receiver, either in part or in whole.

4. For an order authorizing the receiver to retain counsel or take such other appropriate action by which to effectuate a recovery of the LEVIED BANK ACCOUNTS; the establishment of one or more bank accounts; the filing of one or more actions in a court of competent jurisdiction, other than this court herein, if necessary; the retention of accountants, auditors or experts, necessary to aid and assist the receiver herein; and such other action which the receiver deems just and appropriate.

5. For an order authorizing the receiver to receive any and all monies due Iran based upon any LEVIED BANK ACCOUNTS, an order permitting and authorizing the receiver to authorize the receiver to negotiate a financial disposition, either in part or in whole, of any "LEVIED BANK ACCOUNTS;" and moreover, an order permitting the receiver to settle, resolve, discount, or compromise, any and all claims, of any type or nature, which Iran may have to and against any and all parties.

6. For an order permitting the receiver to affix the name of Iran or any government official on any check, draft, money order, or other note or instrument, to cash either in part or in whole, any letter of credit, or instrument, or device thereunder.

7. For an order permitting and authorizing the receiver to take such action as if the owner of any LEVIED BANK ACCOUNTS of Iran, and to take such action as may be necessary by which to convert those assets into a sum of money, for purposes of payment, either in part or in whole, of the outstanding judgment.

-3-

8. For an order continuing the jurisdiction of this court, in which the receiver would be required to report from time to time.

9. For an order setting the bond in an amount based upon the court's discretion, and an order permitting and allowing the receiver to incur any and all obligations necessary to perform the duties, but in which such obligations are not the personal liability of the receiver.

10. For an order continuing from time to time this motion, for purposes of determining compliance by Iran with any order, judgment, or decree of this court, and an order permitting the court to refer any matter to a Magistrate Judge, or other subordinate judicial officer for any evidentiary hearing which the court may request from time to time, and/or an order appointing a referee or other fact-finder which may be necessary.

11. Plaintiff proposes the members of the Gavel Group as potential receivers:

A.   EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.   STANLEY SPORKIN, Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.   LOUIS FREEH, Retired United States District Court Judge and Former Director of the Federal Bureau of Investigation.

The basis of this motion is that the Plaintiffs have recovered a judgment in the amount of $2,656,944,877.00, that the judgment is unsatisfied, Plaintiff is informed and believes that certain financial institutions have in their possession monies, funds and properties, which constitute the property of Iran, that the monies, funds and properties consist of deposit accounts, rights to payment of money, general intangible, contract rights, rights for any refund of money, either in part or in whole, which would permit these Plaintiffs the ability by which to recover this

-4-

judgment.

Plaintiffs further seek an order setting this motion on an expedited basis to permit the appointment of the receivers, the effect of which would be to oust Iran as a potential (but non appearing) participant in these proceedings in which the receivers on behalf of Iran, and standing it the shoes of Iran, can instruct the LEVIED BANKS to turn over funds in their possession to Plaintiffs, leaving to the result that issue of purported sovereign immunity would be mooted.

This motion is based upon the foregoing, the attached Memorandum of Points and Authorities, all matters which the court may consider, all pleadings, papers and files which pertain and relate to any other matter, and upon all oral evidence and argument which may be presented at the hearing hereof. Plaintiffs request, if necessary, an evidentiary hearing by one or more experts, to testify as to various matters which the court may request, from time to time.

DATED:  May 20, 2008                      COOK COLLECTION ATTORNEYS

                                          By:  /s/ David J. Cook
                                          DAVID J. COOK, ESQ. (SB# 060859)
                                          P.O. Box 270
                                          San Francisco, CA 94104-0270
                                          Telephone: (415) 989-4730
                                          Fax: (415) 989-0491
                                          Email: Cook@Squeezebloodfromturnip.com

DATED: May 20, 2008                       PERLES LAW FIRM

                                          By:  /s/ Steve Perles
                                                 STEVE PERLES, ESQ.
                                          1146 19th Street, 5th Floor
                                          Washington D.C., DC  20036
                                          Telephone:  202-955-9055
                                          Fax: 202-955-3806

DATED: May 20, 2008

FAY LAW PA

By:____ /s/ Thomas Fortune Fay_____
       THOMAS FORTUNE FAY, ESQ.
601 Pennsylvania Avenue, NW
#900 - South Building
Washington, DC  20004
Telephone:  202-589-1300
Fax:  202-589-1300
Email: ThomasFay@aol.com

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple
(Dec.), et. al.

F:\USERS\DJCNEW\peterson.appoint.banklevies

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

DEBORAH D. PETERSON, Personal )
Representatives of the Estate of James C. )
Knipple (Dec.), et. al., )
                             )    Consolidated Civil Actions:
         Plaintiffs, )        01-2094 (RCL)
                             )        01-2684 (RCL)
vs. )
                             )
ISLAMIC REPUBLIC OF IRAN, et al., )
                             )
        Defendants. )
                             )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER AS SUPPLEMENTAL REMEDY PURSUANT TO F.R.C.P. 69(a)(1), AND UNDER RULE 66 OF THE FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 754 AND 28 U.S.C. § 1692**

## TABLE OF CONTENTS

PAGES:

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.   THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A

      CIVIL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III.  LEVIED BANKS ARE NOT SUBJECT TO ABSOLUTE IMMUNITY . . . . . . . . . . -6-
      A.    FOREIGN BANKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
      B.    INTERNATIONAL BANKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

IV.   STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENT . . . -13-

V.    POWERS AND DUTIES OF THE RECEIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

VI.   RECEIVERS WOULD STEP INTO THE SHOES OF IRAN AND COMPEL AN
      OUTCOME AVOIDING AN ADJUDICATION OF SOVEREIGN IMMUNITY . . . -20-

VII.  PROPOSED RECEIVERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

VIII. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

i

## TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGES:**

*American Capital Investments etc.*

    98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Aviation Supply Corporation vs. R.S.B.I. Aerospace*

    999 F.2d 314 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Estate of Margaret Bonham*

    817 A.2d 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Federal Trade Commission vs. Productive Marketing etc.*

    136 F. Supp.2d 1096 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*In re Alan BERNARD, Linda Bernard, Debtors*

    96 F.3d 1279 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*In re ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION*

    910 F.Supp. 1470 (D.Hawai'i 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Mendaro vs. The World Bank*

    717 F. 2d 610 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

    Rule 66 of the Rules of Procedure for the District of Columbia law . . . . . . . . . -13-, -16-

*SEC vs. Bilzerian*

    127 F.Supp.2d 232. 233 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Securities & Exchange Commission and Deborah Meshulam, Appellants, vs. Paul A.*
*Bilzerian, et al.*

    378 F.3d 1100 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Securities and Exchange Commission vs. American Capital Investments etc.*

    98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Securities and Exchange Commission vs. Loving Spirits Foundation etc.*

    392 F.3d 486 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Wood vs. Noyes*

    279 F.321 (9th Cir. 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Wuliger vs. Owens*

    365 F.Supp.2d 838 (N.D. Ohio. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

## STATUTES:

*Federal:*

28 United States Code

    § 754 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

    § 1605(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    § 1605A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

    § 1605A(a)(1) & (g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

    § 1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Federal Rules of Civil Procedure

    69(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Other:*

*Federal Practice and Procedure 2d* by Wright & Miller, Vol. 12. § 2983, pages 22-23 . . . . -15-

The World Bank is set forth in its Articles. as follows:

      **SECTION 3.  Position of the Bank with Regard to judicial Process**  . . . . . . . . . . . -8-

The immunity of the IFC is as follows:
      **SECTION 3.** *Position of the Corporation with Regard to Judicial Process*  . . . . . . . -8-

The immunity of The International Monetary Fund is as follows:

      **Section 3. Immunity from judicial process**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Foreign Sovereignty Immunities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-, -3-. -4-, -23-

# I. INTRODUCTION.

Plaintiffs filed this action to seek redress for the bombing of the Marine Barracks in

Beirut, Lebanon in 1983. Suit was filed on 10/3/01 and service of process was effectuated, in

which Iran defaulted. This court conducted a number of hearings and entered a series of

Opinions, including the MEMORANDUM OPINION of 5/30/03. (Docket No. 24) Judge

Lamberth wrote in that Opinion, as follows:

> "These actions arise from the most deadly state-sponsored terrorist attack made
> against American citizens prior to September 11, 2001: the Marine barracks
> bombing in Beirut, Lebanon on October 23, 1983. In the early morning hours of
> that day, 241 American servicemen were murdered in their sleep by a suicide
> bomber. On that day, an unspeakable horror invaded the lives of those who
> survived the attack and the family members whose loved ones had been stolen
> from them. The memory of that horror continues to this day." (Exh. A, ¶ 1.)+

Thereafter on 9/7/07, the court entered a second MEMORANDUM OPINION and

JUDGMENT (Docket Nos. 228 & 229) and the court granted judgment on behalf of Plaintiffs in

the amount of $2,656,944,877.00. Individual parties in fact appealed, but these appeals were

dismissed without prejudice by an order from the Court of Appeal, District of Columbia on

2/23/08. The court stated as follows:

> "C.     The Attack
>         As testified by Mahmoud, after the meeting in Baalbek, a 19-ton truck was
> disguised so that it would resemble a water delivery truck that routinely arrived at
> the Beirut International Airport, which was located near the U.S. Marine barracks
> in Beirut, and modified the truck so that it could transport an explosive device.
> On the morning of October 23, 1983, members of Hezbollah ambushed the real
> water delivery truck before it arrived at the barracks. An observer was placed on a
> hill near the barracks to monitor the operation. The fake water delivery truck then
> set out for the barracks, driven by Ismalal Ascar, an Iranian.
>
>         At approximately 6.25 a.m. Beirut time, the truck drove past the Marine
> barracks. As the truck circled in the large parking lot behind the barracks, it
> increased its speed. The truck crashed through a concertina wire barrier and a wall

of sandbags. and entered the barracks.²¹ When the truck reached the center of the barracks. the bomb in the truck detonated.

The resulting explosion was the largest non-nuclear explosion that had ever been detonated on the face of the Earth. The force of its impact ripped locked doors from their doorjambs at the nearest building. which was 256 feet away. Trees located 370 feet away were shredded and completely exfoliated. At the traffic control tower of the Beirut International Airport. over half a mile away. all of the windows shattered. The support columns of the Marine barracks. which were made of reinforced concrete. were stretched, as an expert witness described. "like rubber bands." the explosion created a crater in the earth over eight feet deep. The four-story Marine barracks was reduced to fifteen feet of rubble.

The force of the explosion was equal to between 15.000 to 21.000 pounds of TNT. FBI and ATF explosives experts both concluded that the explosive material was "bulk form" pentaerythritol tetranitrate, or PETN. Danny A. Defenbaugh. the on-scene FBI forensic explosive investigator. testified as to his findings:

> [W]e were able to. through the forensic residue analysis. identify the explosive material, and it was unconsumed particles of PETN . . . .
>
> PETN is a primary explosive that is manufactured commercially and primarily for U.S. military purposes. It is a primary explosive that is used in detonating cord. Detonating cord is nothing more than a plastic and fiber-wrapped cord that has the PETN. which looks like a white power . . . that is then extruded inside that cord . . . .
>
> In this case. it was not [consumed]: we found unconsumed particles of PETN. That was just like we had found also in the American Embassy bombing. What that means is that it had to have been from a bulk explosive, it had to have been from a manufacturer." (P. 16 of 30)

## II. THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A CIVIL JUDGMENT.

Prior to approximately January 2008. a Judgment Creditor of a foreign state such as Iran was greatly hobbled in any attempt by which to recover, based upon the Foreign Sovereignty Immunities Act ("FSIA") and various exceptions. in which, e.g.. blocked assets might be subject

-2-

to levy and execution. Unfortunately, blocked assets were few and far between, making

collection of any judgment like this extremely problematical, at best.

Congress, recognizing that the Marines needed to be compensated, ultimately enacted an

amendment of the FSIA designed to facilitate collection through enactment of 28 U.S.C. §

1605A, which has now been incorporated into FSIA. The parts of that new section permitting

meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as

follows:

"(a) IN GENERAL. --
    "(1) NO IMMUNITY. – A foreign state shall not be immune from the
jurisdiction of courts of the United States or of the States in any case not
otherwise covered by this chapter in which money damages are sought against a
foreign state for personal injury or death that was caused by an act of torture,
extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material
support or resources for such act if such act or provision of material support or
resources is engaged in by an official, employee, or agent of such foreign state
while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –
    "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign
state against which a judgment is entered under section 1605A, and the property
of an agency or instrumentality of such a state, including property that is a
separate juridical entity or is an interest held directly or indirectly in a separate
juridical entity, is subject to attachment in aid of execution, and execution, upon
that judgment as provided in this section, regardless of –
        "(A) the level of economic control over the property by the
    government of a foreign state;
        "(B) whether the profits of the property go to that government;·
        "( C) the degree to which officials of that government manage the
    property or otherwise control its daily affairs;
        "(D) whether that government is the sole beneficiary in interest of
    the property; or
        "(E) whether establishing the property as a separate entity would
    entitle the foreign state to benefits in United States courts while
    avoiding its obligations.

-3-

"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Accordingly, the FSIA no longer serves as a bar, and all assets of Iran are now subject to clear levy and execution.

Plaintiffs are informed and believe that the LEVIED BANKS described below hold Iranian assets, predicated upon PR releases, website information, and other publicly available information. These funds consist of consummated loan commitments, lines of credit, funds available for disbursement, credit and trade facilities, and other commercial banking commitments entitling Iran to money. These banks in question are the following:

JAPAN BANK FOR INTERNATIONAL COOPERATION

THE WORLD BANK

INTERNATIONAL FINANCE CORPORATION

INTERNATIONAL MONETARY FUND

IMPORT EXPORT BANK OF KOREA

IMPORT EXPORT BANK OF INDIA

(Hereinafter "LEVIED BANKS.")

These accounts are now the subject of active levy and execution through the United States Marshal, District of Columbia.

Why this Receivership motion? Why not let the levy and execution process continue to fruition? Isn't this remedy redundant or unnecessary? What could the receiver undertake different

-4-

from the result to be achieved by the Plaintiffs through standard garnishment?

The answer is straightforward. Iran and the LEVIED BANKS have entered into line of credit, trade credit, deposit, letter of credit and other commercial relationships in which Iran as customer of the bank has, presumably, standard legal recourse in the event that the LEVIED BANK breaches the agreements, such as the failure to honor a check, line of credit, failure to pay on a letter of credit, failure to make a refund or any other breach undertaken by the LEVIED BANK in which Iran might well have recourse. Iran presumably entered into the relationship with the LEVIED BANK in which Iran now maintains the full range of civil enforcement rights.

The purpose of this receiver motion is to oust Iran from any of the banking relations with the BANK and replace the Receivers as the owners and holders of the LEVIED BANK ACCOUNTS. The Receivers standing in the shoes of Iran could and would direct the LEVIED BANKS to pay-over, surrender and hand over all funds held by the LEVIED BANKS to the Plaintiffs. While the LEVIED BANKS might well claim sovereign immunity, which these Plaintiffs dispute, in part or in whole, or any other related defense, the LEVIED BANKS presumably would not be able to mount that defense against Iran. The LEVIED BANKS might well attempt to fend off the current onslaught of levies by the Plaintiffs, but the LEVIED BANKS could not defend in good faith or otherwise, any directive by Iran to dispose of the funds held in any of the accounts. Therefore, Plaintiffs can moot any claim asserted by any of the LEVIED BANKS, based on sovereign immunity, if the LEVIED BANKS follow a directive from Iran to pay the funds held by the LEVIED BANK to and in favor of the Plaintiffs. This is not an end run around defenses of partial or qualified qua sovereign immunity, but a post-judgment solution rendering any claim of sovereign immunity moot.

-5-

This doctrine of mootness now becomes paramount in that Plaintiffs anticipate that many of the LEVIED BANKS might be sovereign entities, and therefore, unable or unwilling to cooperate with Plaintiffs in responding to the levy by claiming partial or qualified sovereign immunity, creating a multiplicity of litigation, enormous expense, and significant consumption of the judicial time, effort and energy. On the other hand, if Iran appeared, or appeared through its surrogate, the receivers, and directed the LEVIED BANKS to pay Plaintiffs, without condition or reservation from the funds on hand, the LEVIED BANKS would lose standing to assert their own sovereign immunity because the LEVIED BANKS would be acting under the order, direction and demand of Iran, or Iran's successor. Sovereign immunity asserted by the LEVIED BANKS would vanish as a barrier if the LEVIED BANKS were instructed to pay Plaintiffs by receivers as the owner and holder of Iran's rights in and to the accounts, rights to payment of money, general intangible and other contractual rights. In short, if Iran directed the LEVIED BANKS to pay Plaintiffs, the LEVIED BANKS would not be able to assert sovereign immunity as a defense. Therefore, this motion replaces Iran with the three receivers.

## III. LEVIED BANKS ARE NOT SUBJECT TO ABSOLUTE IMMUNITY.

### A.    FOREIGN BANKS.

Japan Bank for International Cooperation ("JBIC"), Import Export Bank of Korea, and Import Export Bank of India are all presumably agencies or instrumentalities of their respective sovereigns. They are not entitled to absolute sovereign immunity, but only limited sovereign immunity under 28 U.S.C. § 1605(a)(2), which provides as follows:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the
> United States or of the States in any case—
> (1) in which the foreign state has waived its immunity either explicitly or by implication.

notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

The typical factual issue, therefore, for these LEVIED BANKS is the nature and extent of their commercial activities, a matter typically the subject of potential litigation and discovery, matters of which are not necessarily before this court based on this motion. However, Iran in consummating large dollar loans, lines of credit, letters of credit, trade credits, deposits, credit facilities in favor of its own banks, reconstruction loans and the like certainly *would not wish* to face these difficult, time-consuming, protracted and very expensive burdens, particularly if Iran was forced to litigate these issues, for example, in the United States District Court, District of Columbia, which would attract about $5,000,000,000 of judgment liens from Iranian Judgment Creditors. Iran would have obtained a waiver of such immunity, less Iran enter into illusory transactions placing into jeopardy its own economy.

Likewise, Iran certainly would not want to litigate these alleged defenses of sovereign immunity with these Foreign Banks in their own country for fear of being "home-towned.[1]" which, without besmirching any of the Foreign Banks at issue, would be a realistic concern.

For Iran, the prospect of litigating sovereign immunity would destroy the economic value of the relationship with these Foreign Banks, leading to the clear and unmistakable inference that Iran obtained a complete waiver. The receivers would stand in the shoes of Iran and obtain

---

[1] A colloquialism well known to out-of-town attorneys trying cases in rural jurisdictions.

payment from these Foreign Banks.

## B.    INTERNATIONAL BANKS.

The World Bank (aka The International Bank For Reconstruction And Development),

International Finance Corporation (part of The World Bank), and The International Monetary

Fund all have partial sovereign immunity.  The immunity of The World Bank is set forth in its

Articles, as follows:

> **SECTION 3. Position of the Bank with Regard to judicial Process**
> Actions may be brought against the Bank only in a court of competent jurisdiction
> in the territories of a member in which the Bank has an office, has appointed an
> agent for the purpose of accepting service or notice of process, or has issued or
> guaranteed securities. No actions shall, however, be brought by members or
> persons acting for or deriving claims from members. The property and assets of
> the Bank shall, wheresoever located and by whomsoever held, be immune from
> all forms of seizure, attachment or execution before the delivery of final judgment
> against the Bank.

The immunity of the IFC is as follows:

> **SECTION 3. *Position of the Corporation with Regard to Judicial Process***
> Actions may be brought against the Corporation only in a court of competent
> jurisdiction in the territories of a member in which the Corporation has an office,
> has appointed an agent for the purpose of accepting service or notice of process,
> or has issued or guaranteed securities. No actions shall, however, be brought by
> members or persons acting for or deriving claims from members. The property
> and assets of the Corporation shall, wheresoever located and by whomsoever held,
> be immune from all forms of seizure, attachment or execution before the delivery
> of final judgment against the Corporation.

The immunity of The International Monetary Fund is as follows:

> **Section 3. Immunity from judicial process**
> The Fund, its property and its assets, wherever located and by whomsoever held,
> shall enjoy immunity from every form of judicial process except to the extent that
> it expressly waives its immunity for the purpose of any proceedings or by the
> terms of any contract.

These are multi-billion dollar loans. enabling Iran to make multi-billion dollar commitments. and prudent business experience would suggest that Iran. in making billion dollar commitments. would necessarily demand redress, in the event of a default without. again. the unbelievable burden of litigating any of these factual issues.  Iran would have been unwise to leave itself vulnerable to a cataclysmic financial default without clear unfettered redress and without the barrier of partial or qualified sovereign immunity and the ensuing burden of litigation. From time to time. litigants have faced difficult battles in seeking redress against the International Banks. See *Mendaro vs. The World Bank,* 717 F.2d 610 (DC Cir. 1983) in which an employee was barred by partial sovereign in seeking redress for an employment related grievance. and a case certainly known to Iran for fear of facing the same dilemma.

In the current battle between the Plaintiffs and the LEVIED BANKS. sovereign immunity is now taking center stage.  See JBIC's current filings (Docket Nos. 273 & 274). potentially the World Bank, International Monetary Fund. and International Finance Corporation (Docket No. 269) who are raising issues of sovereign immunity in which the LEVIED BANKS claim. or might claim that they are not subject to levy regardless of the fact that the bank might hold billions of dollars of Iranian assets, and in which Iran no longer is entitled to any sovereign immunity itself.  A receiver in the place of Iran would promptly resolve any assertion of sovereign immunity by instructing the LEVIED BANKS to pay the Plaintiffs.  Needless to say. Plaintiffs do not concede that any of these LEVIED BANKS are entitled to sovereign immunity, whether partial. qualified. or absolute.  The granting of this motion on an expedited basis would end needless and fracas litigation when the solution is at hand. now raised by JBIC who seeks. no less, an expedited hearing on its own motion on the issue of sovereign immunity. Granting this

-9-

motion for the appointment of a receiver of Iran's relationship with JBIC would render

superfluous JBIC's claims of partial sovereign immunity.

Conceivably, of course, the funds might be "held" in an account which is offshore, such

as in the headquarters of the Bank, such as Tokyo etc. The appointment of a receiver would

resolve that issue in that the receiver takes possession of the funds as part of an in rem process,

succeeding to the rights of Iran for the funds themselves. In a fairly analogous case entitled *In re*

*ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION*, 910 F.Supp. 1470

(D.Hawai'i 1995), the court held that funds in an overseas account of a Swiss bank were subject

to U.S. jurisdiction based on the connection of the Swiss bank through California branches as

follows:

> **"B. Court's Implied Power to Assign**
> First, implicit in the power to enforce a judgment is the power to use all legal
> means to provide relief to judgment creditors in an appropriate case. Assignment
> of funds is one of those means.
> See *Chicago Pneumatic Tool Co. v. O.V. Stonestreet, et al.*, 107 F.R.D. 674
> (S.D.W.Va.1985). In that case the plaintiff requested that the defendant be
> required.
>> "to convey or assign to the United States Marshal for the Southern
>> District of West Virginia. such money, bank notes, securities,
>> evidences of debt, other personal property, chooses in action or
>> other intangible personal property as may be ordered by the said
>> commissioner for enforcement and payment of the judgment
>> including interest and costs, outstanding in the above matter." *Id.* at
>> 676. [4]
> Despite defendant's arguments about limitations on the power of magistrate
> judges, not here relevant, the Court concluded that in entry of any order requiring
> the debtor to transfer property to the creditor, the magistrate would only facilitate
> the District Court's inherent power to enforce Plaintiffs' judgment.
> Similarly this Court has the inherent power to order the Estate to assign its rights,
> title and interest to the Swiss bank accounts to Plaintiffs, given the uncontroverted
> evidence that those assets belong to the debtor Estate.
> An equally compelling basis for ordering the assignment is FRCP 69(a), also
> relied upon in *Chicago Pneumatic, supra.*

C. FRCP 69(a)

Federal Rule of Civil Procedure 69(a) provides.

> "Process to enforce a judgment for the payment of money shall be a
> writ of execution, *unless the court directs otherwise.* The
> procedure on execution. in proceedings supplementary to and in
> aid of a judgment, and in proceedings on and in aid of execution
> shall be in accordance with the practice and procedure of the state
> in which the district court is held. existing at the time the remedy is
> sought. except that any statute of the United States governs to the
> extent that it is applicable." F.R.C.P. 69(a) (emphasis by the court)

In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La. Inc.,* 1993 WL 414664. 1993
U.S.Dist. LEXIS 14450 (E.D.La.1993). plaintiff moved the Court to enter an order
directing the sale of the rights and interest of the Partnership in a case where judgment
had been entered a year earlier. The District Court looked to Louisiana law as the law of
the state in which the action occurred. Applying the appropriate statute [5]. the Court
ordered judicial sale of the property by the United States Marshal. in *Moseley
Assoc. v. Brown,* 1988 WL 68149. 1988 U.S.Dist. LEXIS 5662 (S.D.N.Y.1988). the
district court looked to state law. then New York Debtor and Creditor Law, to order
defendants to satisfy Plaintiffs' judgment out of funds which had been transferred to them.
The question here is what state's law applies to enforcement mechanisms and thus to
whether assignment may be ordered.

In this case. the judgment was entered and an order was signed transferring the
matter to other districts for the purpose of execution. The only district in which a
transfer was sought and the judgment registered was the Central District of
California. the location of branches of the Swiss banks holding the money here at
issue. The Swiss banks branches are located in Los Angeles. Plaintiffs are
conducting judgment debtor discovery in California. and all discovery disputes are
before this Court in the Central District of California. Under these circumstances.
California law should apply since the matter is now in California. solely for the
purpose of executing the judgment. Moreover. Hawaii law is consistent with this
disposition.

D. California Law

California law on assignment of right to payment in enforcement of a judgment
provides.

> "Except as otherwise provided by law, upon application of the judgment
> creditor on noticed motion, the court may order the judgment debtor to
> assign to the judgment creditor or to a receiver appointed pursuant to
> Article 7 (commencing with Section 708.610) all or part of a right to
> payment due or to become due. whether or not the right is conditioned on
> future developments. ..." CAL.CIV.PROC.CODE section 708.510 (West
> 1987).

Case law interpreting this statute has consistently upheld a courts' power to
require debtors to assign their interests in debts or other property.  See. e.g..

-11-

*Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian,* 218
Cal.App.3d 1058. 267 Cal.Rptr. 457 (6 Dist.1990). *See generally,* 8 Witkin,
Cal.Procedure (3d ed. 1985), Enforcement of Judgments, §§ 299 and 300: *Civil
Procedure: enforcement of judgments,* 14 Pacific L.J. 397, 431 (1983). Similarly,
here CCP 708.510 and its case law exegesis permit an order of assignment of the
Estate's interests in the Swiss accounts for the benefit of the judgment creditors.
class action Plaintiffs.

### III. CONCLUSION

For all of the above reasons. the defendant Estate by Imelda Marcos and Ferdinand
Marcos. Jr. are ordered to forthwith execute an assignment of the funds in the respective
Swiss banks in favor of the class and individual Plaintiffs. In default thereof the clerk of
the court is ordered to execute the assignment on behalf of the judgment debtor."

The appointment of a receiver is similar to an assignment in compelling the assignment of

the debtor's assets to a third party.  In an assignment setting the assignment order is directly to

the judgment creditor to permit the judgment creditor the opportunity to collect. In a receivership

setting the asset is transferred to the receiver who is charged with the duty to liquidate the asset.

See *Federal Trade Commission vs. Productive Marketing etc.,* 136 F. Supp.2d 1096 (C.D., Cal.

2001). at pages 105 to 107 in which the court stated as follows:

"The FTC further asserts that the court's power to enjoin ACCPC "is derived from
its inherent authority to fashion effective relief." and that such power is broader
than the authority conferred by Rule 65(d). FTC Supp. Brief. at 2-3. That federal
courts possess broad authority "to issue a variety of 'ancillary relief' measures in
[enforcement] actions brought by [federal agencies]" cannot be gainsaid. SEC v.
Wencke, 622 F.2d 1363. 1369 (9th Cir. 1980): *see also SEC v. Universal
Financial.*760 F.2d 1034, 1038 (9th Cir. 1985) (District court's power to enter a
blanket receivership stay "is broader than the court's authority to grant or deny
injunctive relief under Fed.R.Civ.P. 65."). *"The Supreme Court has repeatedly
emphasized the broad equitable powers of the federal courts to shape equitable
remedies to the necessities of particular cases, especially where a federal agency
seeks enforcement in the public interest." Wencke, 622 F.2d at 1371.*
*****
*An order issued to preserve the assets of a receivership estate is a classic
example of an in rem injunction. Cf. Wencke, 622 F.2d at 1369 (the district
court's power "to issue a stay, effective against all persons, of all proceedings
against the receivership entities rests as much on its control over the property
placed in receivership as on its jurisdiction over the parties to the ... action.").*
*****.

*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F.Supp. 369, 372 (D.Colo.1995); *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) ("***There is substantial jurisdictional basis for allowing the federal court receiver to have and keep custody and control of the assets in question, and to obtain the relief needed to implement that custody.***"); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions."); *Paccione*, 964 F.2d at 1275 (affirming criminal contempt sanctions against "a person who interfered with the *res*, the disposition of which the court had specifically restricted"). (Emphasis added)

Under traditional principals of federal equity receivership, the receivers would subsume the entirety of Iran's ownership in any of the accounts and other rights held by the LEVIED BANK, and ultimately take control over the fracas litigation by and between the LEVIED BANKS and the Plaintiffs.

## IV.  STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENT.

The starting point of enforcement is found in F.R.C.P. 69(a)(1), which provides as follows:

> Rule 69. Execution
> (a) In General.
> (1) Money Judgment: Applicable Procedure.
> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Rule 66 of the Rules of Procedure for the District of Columbia law provides for receivers as follows:

> "Rule 66. Receivers appointed by the Superior Court
> An action wherein a receiver has been appointed shall not be dismissed except by order of the Court.  The practice in the administration of estates by receivers or by other similar officers appointed by the Court shall be in accordance with the practice heretofore followed in the United States District Court for the District of Columbia or provided by the Rules promulgated by this Court.  In all respects the

action in which the appointment of a receiver is sought or which is brought by or
against a receiver is governed by these Rules."

The Comment provides as follows:

"Identical to *Federal Rule of Civil Procedure 66* except for the change in title and
change in the designation on prior practice to be followed.  The insertion of
reference to practice heretofore followed in the United States District Court for
the District of Columbia is designed to insure maximum possible continuity in the
handling of District of Columbia receivership matters. (Amended May 9, 1975)

District of Columbia law would be consistent with federal law in interpreting identical federal

rules.  See *Estate of Margaret Bonham*, 817 A.2d 192 at page 195.

The court has broad discretion in appointing a receiver.  In *Aviation Supply Corporation*

*vs. R.S.B.I. Aerospace*, 999 F.2d 314 (8th Cir. 1993) at pages 316 to 317, the court stated as

follows:

"The appointment of a receiver in a diversity case is a procedural matter governed
by federal law and federal equitable principles. See Fed.R.Civ.P. 66 and Advisory
Committee's Note; New York Life Ins. Co. v. Watt West Inv. Corp., 755 F.Supp.
287, 289-92 (E.D.Cal.1991); Midwest Sav. Ass'n v. Riversbend Assocs.
Partnership, 724 F.Supp. 661 (D.Minn.1989); 12 C. Wright & A. Miller, Federal
Practice and Procedure § 2983. A *receiver is an extraordinary equitable remedy
that is only justified in extreme situations. Although there is no precise formula
for determining when a receiver may be appointed, factors typically warranting
appointment are a valid claim by the party seeking the appointment; the
probability that fraudulent conduct has occurred or will occur to frustrate that
claim; imminent danger that property will be concealed, lost, or diminished in
value; inadequacy of legal remedies; lack of a less drastic equitable remedy;
and likelihood that appointing the receiver will do more good than harm.* See
Consolidated Rail Corp. v. Fore River Ry., 861 F.2d 322, 326-27 (1st Cir.1988);
Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 826 (3d Cir.1959); Bookout v.
Atlas Fin. Corp., 395 F.Supp. 1338, 1342 (N.D.Ga.1974), aff'd. 514 F.2d 757 (5th
Cir.1975). We review the decision to appoint a receiver for abuse of discretion.

In this case, appointment of the receiver was sought by ASC, a judgment creditor.
A receiver may be appointed "to protect a judgment creditor's interest in a debtor's
property when the debtor has shown an intention to frustrate attempts to collect
the judgment." Leone Indus. v. Associated Packaging, Inc., 795 F.Supp. 117, 120
(D.N.J.1992). See also Levin v. Garfinkle, 514 F.Supp. 1160, 1163

-14-

(E.D.Pa.1981)."

Receivers are appointed for purposes of taking possession and control. and ultimately

liquidating the property of a Judgment Debtor. See *Federal Practice and Procedure 2d* by

Wright & Miller, Vol. 12, § 2983, pages 22-23 [multiple citations omitted]. Receivers are

traditionally appointed in a supplemental proceeding when the interest of equity suggests such a

result, specifically, when property would be difficult to reach in any other traditional manner.

See *Wood vs. Noyes*. 279 F.321 (9th Cir. 1922). Therefore. this court has the power to appoint a

receiver as a general equitable matter. and does appoint receivers from time to time.

This is found in such cases as *Securities & Exchange Commission and Deborah*

*Meshulam, Appellants, vs. Paul A. Bilzerian, et al.*. 378 F.3d 1100 (D.C. Cir. 2004), in which

the trial court authorized the appointment of a receiver for "purposes of identifying. marshaling.

receiving and liquidating [Bilzerian's assets]. See *SEC vs. Bilzerian*, 127 F.Supp.2d 232, 233

(D.C. Cir. 2000). and affirmed. In that case. the receivership authorized the receiver to take and

maintain complete and exclusive control. possession and custody of Bilzerian's assets wherever

situated and to liquidate any interest in any asset held by anyone on behalf of Bilzerian, including

but not limited to. the initiation and prosecution of litigation against others to recover such assets,

but not limited to. the initiation and prosecution of litigation against others to recover such assets,

or interest in assets on behalf of the receivership estate. See page 233. This is, of course. a

classic receiver. In *Securities and Exchange Commission vs. Loving Spirits Foundation etc.*,

392 F.3d 486 (D.C. Cir. 2004). the court stated as follows:

> "That court ordered Bilzerian to disgorge over $62 million. representing profits
> from his fraudulent activities and prejudgment interest. SEC v. Bilzerian. 814
> F.Supp. 116 (D.D.C.1993) (ordering disgorgement of profits). *aff'd* 29 F.3d 689

(D.C.Cir. 1994): *SEC v. Bilzerian,* No. 89-1854, 1993 WL 542584 (D.D.C. June 25, 1993) (setting value of interest). Seven years later, with the judgment still unpaid, the district court found Bilzerian in contempt of the disgorgement order, *SEC v. Bilzerian,* 112 F.Supp.2d 12 (D.D.C.2000), *aff'd* 75 Fed.Appx. 3 (D.C.Cir. 2003), established a receivership estate "*for the purpose of identifying, marshaling, receiving, and liquidating his assets,*" *SEC v. Bilzerian,* 127 F.Supp.2d 232, 232 (D.D.C.2000), appointed appellee Deborah Meshulam as receiver, *id.,* and sent Bilzerian back to prison for continued noncompliance, *SEC v. Bilzerian,* 131 F.Supp.2d 10 (D.D.C.2001).  (Emphasis added) (p.488)

Receivers are found in Rule 66, which provides as follows:

"These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order."

The relationship between a bank and its customer is debtor-creditor in which the bank is

the debtor and the customer is the creditor.  See *In re Alan BERNARD, Linda Bernard,*

*Debtors.* 96 F.3d 1279 (9th Cir. 1996), in which the court stated as follows:

"The Bernards did not own money gathering dust in their LEVIED BANK ACCOUNTS. "As between the bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited." Chang v. Redding Bank of Commerce, 29 Cal.App.4th 673, 681, 35 Cal.Rptr.2d 64 (Cal.App.1994) (citation omitted); Crocker-Citizens Nat. Bank v. Control Metals Corp., 566 F.2d 631, 637 (9th Cir.1977) (**"It is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor. Therefore, when funds are deposited, title to those funds passes immediately to the bank."**) (citations omitted); see also Barnhill v. Johnson, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance.").

Instead of owning money sitting in their accounts, the Bernards owned claims against their bank. When they withdrew from their accounts, they exchanged debt for money (which, more than incidentally, was more difficult for the Sheaffers to acquire). Thus, when the Bernards made their withdrawals they parted with property, satisfying the Code's definition of transfer. Because they parted with their claims against the bank to hinder the Sheaffers, the Bernards violated §

-16-

727(a)(2)(A), warranting denial of discharge." (Emphasis added) (P. 1283)

The starting point is found under 28 U.S.C. § 754, which provides as follows:

**§ 754. Receivers of property in different districts**
A receiver appointed in any civil action or proceeding involving property, real,
personal or mixed, situated in different districts shall, upon giving bond as
required by the court, be vested with complete jurisdiction and control of all such
property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and
may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of his order of appointment, file
copies of the complaint and such order of appointment in the district court for
each district in which property is located. The failure to file such copies in any
district shall divest the receiver of jurisdiction and control over all such property
in that district.

Furthermore, the receiver's rights are found under 28 U.S.C. § 1692, which provides as

follows:

**§ 1692. Process and orders affecting property in different districts**
In proceedings in a district court where a receiver is appointed for property, real,
personal, or mixed, situated in different districts, process may issue and be
executed in any such district as if the property lay wholly within one district, but
orders affecting the property shall be entered of record in each of such districts.

## V. POWERS AND DUTIES OF THE RECEIVER.

The court has broad powers to confer upon a receiver as exercised in the *Bilzerian* cases.

Plaintiffs propose that the powers and duties of the receiver are set forth below:

1. For the appointment of a receiver for the purposes of the collection, recovery, and

sequestering all of the bank accounts, accounts with any bank, stockbroker, savings and loan, or

similar institution, funds held by any bank in any trust or other account, certificates of deposit,

time certificates of deposit, lines of credit, letters of credit, credits due Iran, general intangibles

owed by any governmental entity, bank, import export bank which are due and payable to Iran

from the following listed financial institutions, banks, governmental entities, and third parties as

follows:

> JAPAN BANK FOR INTERNATIONAL COOPERATION
>
> THE WORLD BANK
>
> INTERNATIONAL FINANCE CORPORATION
>
> INTERNATIONAL MONETARY FUND
>
> IMPORT EXPORT BANK OF KOREA
>
> IMPORT EXPORT BANK OF INDIA

(hereinafter collectively "LEVIED BANKS") due to and in favor of the Islamic Republic of Iran

("Iran") for purposes of payment of the outstanding judgment in the amount of

$2,656,944,877.00 in which funds, monies, credits, deposits, right to payment of money, account

deposits are due from the LEVIED BANKS to and on behalf of Iran, and have been the subject of

service of writs of attachment on judgment, hereinafter collectively "LEVIED BANK

ACCOUNTS."

    2. For an order authorizing, permitting and directing the receiver to make demand upon

all LEVIED BANKS directing all of the LEVIED BANK ACCOUNTS be paid to the receiver up

to and including the amount necessary to satisfy this judgment, plus any and all accruing interest,

costs, and other fees and charges which the court may assess from time to time herein.

    3. For an order restraining, to the extent possible, Iran and all of its agencies and

instrumentalities from any act of interference with the conduct of the receiver herein, an order

prohibiting, restraining, staying and enjoining Iran from taking any action in any court, other than

-18-

this court, by which the action would be to interfere with the conduct of the receiver, either in part or in whole.

4. For an order authorizing the receiver to retain counsel or take such other appropriate action by which to effectuate a recovery of the LEVIED BANK ACCOUNTS: the establishment of one or more bank accounts; the filing of one or more actions in a court of competent jurisdiction, other than this court herein, if necessary; the retention of accountants, auditors or experts, necessary to aid and assist the receiver herein; and such other action which the receiver deems just and appropriate.

5. For an order authorizing the receiver to receive any and all monies due Iran based upon any LEVIED BANK ACCOUNTS, an order permitting and authorizing the receiver to authorize the receiver to negotiate a financial disposition, either in part or in whole, of any "LEVIED BANK ACCOUNTS;" and moreover, an order permitting the receiver to settle, resolve, discount, or compromise, any and all claims, of any type or nature, which Iran may have to and against any and all parties.

6. For an order permitting the receiver to affix the name of Iran or any government official on any check, draft, money order, or other note or instrument, to cash either in part or in whole, any letter of credit, or instrument, or device thereunder.

7. For an order permitting and authorizing the receiver to take such action as if the owner of any LEVIED BANK ACCOUNTS of Iran, and to take such action as may be necessary by which to convert those assets into a sum of money, for purposes of payment, either in part or in whole, of the outstanding judgment.

8. For an order continuing the jurisdiction of this court, in which the receiver would be

-19-

required to report from time to time.

9. For an order setting the bond in an amount based upon the court's discretion. and an order permitting and allowing the receiver to incur any and all obligations necessary to perform the duties. but in which such obligations are not the personal liability of the receiver.

10. For an order continuing from time to time this motion. for purposes of determining compliance by Iran with any order. judgment, or decree of this court. and an order permitting the court to refer any matter to a Magistrate Judge. or other subordinate judicial officer for any evidentiary hearing which the court may request from time to time. and/or an order appointing a referee or other fact-finder which may be necessary.

11. Plaintiff proposes the members of the Gavel Group as potential receivers:

A.     EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.     STANLEY SPORKIN. Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.     LOUIS FREEH. Retired United States District Court Judge and Former Director of the Federal Bureau of Investigation.

## VI. RECEIVERS WOULD STEP INTO THE SHOES OF IRAN AND COMPEL AN OUTCOME AVOIDING AN ADJUDICATION OF SOVEREIGN IMMUNITY.

The LEVIED BANKS may well claim sovereign immunity. creating a storm of litigation over a whole host of issues. such as. and including. the entitlement to discovery. the nature and extent of the commercial activity of the bank. and whether the LEVIED BANK is an agency and instrumentality. Without doubt. the parties can battle over these issues creating reams of filings, and years of endless civil litigation. However. if Iran directs payments of funds held by the allegedly soveirgn LEVIED BANKS, the outcome might be substantially different in that

-20-

LEVIED BANKS might have no choice but to pay, rendering the strife between the LEVIED

BANKS and the Plaintiffs moot.

Unlike other post-judgment remedies, the appointment of a receiver ousts the judgment

debtor and replaces the judgment debtor with a neutral court-appointed officer. Directly on point

is *Securities and Exchange Commission vs. American Capital Investments etc.*, 98 F.3d 1133

(9th Cir. 1996) at pages 1144 to 1145. in which the court stated as follows:

> "Reebok Int'l v. Marnatech Enter., Inc., 970 F.2d 552, 561-62 (9th Cir.1992) (quoting
> Brown v. Swann. 35 U.S. (10 Pet.) 497, 503. 9 L.Ed. 508 (1836)). Second. the leading
> treatise on the law of receiverships teaches:
>
> *It is generally conceded that a court of equity having custody and control of
> property has power to order a sale of the same in its discretion. The power of
> sale necessarily follows the power to take possession and control of and to
> preserve property, resting in the sovereignty and exercised through courts of
> chancery, or courts having statutory power to make the sale.*
> . . .
> *We turn now to appellants' second and third arguments, which are related--that
> there is no federal common law of receiverships. Consequently, they argue, a
> receiver does no more than "step into the shoes" of the receivership defendant
> under state law and can convey no more title than the defendant possessed.* For
> support. appellants rely on O'Melveny & Myers v. FDIC, 512 U.S. 79. 114 S.Ct.
> 2048. 129 L.Ed.2d 67 (1994). in which the Court held that state law, rather than
> federal law. governs the imputation of corporate officers' knowledge of fraud to a
> corporation, where the FDIC, as receiver. is prosecuting the corporation's state
> causes of action. Id. at ---- - ----, 114 S.Ct. at 2052-53.

In *Wuliger vs. Owens*, 365 F.Supp.2d 838 (N.D. Ohio. 2005) the court reiterated the classic rule

that the receiver steps into the shoes of the "debtor" as follows:

> "Federal equity receivers are appointed to take control, custody, and/or management of
> property involved in litigation. It is generally recognized that a receiver may bring suit to
> "accomplish the objective of the suit for which he or she appointment was made. or under
> the specific directions of the appointing court, or pursuant to his general duties to receive,
> control, and manage the receivership property." 12 Charles Alan Wright. Arthur R. Miller
> & Richard L. Marcus, Federal Practice & Procedure § 2984 (2d ed.1997). *See also,
> Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 626 (6th Cir.2003) ("question
> depends on the authority granted by the appointing court and actually exercised by the

-21-

receiver"): 65 Am.Jur.2d Receivers § 129 (2d ed) (powers of a receiver flow from statute, court rules, orders of appointment and subsequent orders of appointing court). *By the same token "[a] receiver stands in the shoes of the person for whom he has been appointed and can assert only those claims which that person could have asserted."* *Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir.1983).

The receivers would step into the shoes of Iran in the relationship by and between on one hand, Iran, and on the other, the LEVIED BANKS.  Clearly, certain financial institutions assert immunity from Plaintiffs' levy and execution, but have no immunity, or defense, to a directive from Iran to turnover and disburse the funds.

## VII. PROPOSED RECEIVERS.

Plaintiffs nominate the following nominees as receivers:

A.    EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.    STANLEY SPORKIN, Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.    LOUIS FREEH, Retired United States District Court Judge and Former Director of the FBI.

Each one of these individuals are retired federal judges, all with backgrounds in national security, military, and intelligence matters, and all of them would be more than capable of performing in this assignment, meeting the expectations of all parties.

Plaintiffs propose an initial bond in the amount of $50,000.00, and based upon the recovery of funds, the bond to be increased.  As a normal matter of practice, assuming the motion is granted, the protocol is that the receiver would take an oath of office, file the same with the court, commence the process of placing the LEVIED BANKS on notice, and absent compliance, take appropriate action to compel turnover of the funds.  Plaintiffs anticipate the receiver would

retain counsel who would aid and assist in this task, along with accountants, investigators, and third parties.

## VIII. SUMMARY.

This is a classic enforcement action, in which the appropriate remedy is in fact the appointment of a receiver. Based upon the virtual abolition of the FSIA, the appointment of a receiver would be the most appropriate remedy.

DATED: May 20, 2008                COOK COLLECTION ATTORNEYS
                                   By:  /s/ David J. Cook
                                   DAVID J. COOK, ESQ. (SB# 060859)
                                   P.O. Box 270
                                   San Francisco, CA 94104-0270
                                   Telephone: (415) 989-4730
                                   Fax: (415) 989-0491
                                   Email: Cook@Squeezebloodfromturnip.com


DATED: May 20, 2008                PERLES LAW FIRM
                                   By:  /s/ Steve Perles
                                        STEVE PERLES, ESQ.
                                   1146 19th Street, 5th Floor
                                   Washington D.C., DC  20036
                                   Telephone:  202-955-9055
                                   Fax: 202-955-3806


DATED: May 20, 2008                FAY LAW PA
                                   By:  /s/ Thomas Fortune Fay
                                        THOMAS FORTUNE FAY, ESQ.
                                   601 Pennsylvania Avenue, NW
                                   #900 - South Building
                                   Washington, DC  20004
                                   Telephone:  202-589-1300
                                   Fax:  202-589-1300
                                   Email: ThomasFay@aol.com
                                   Attorneys for Plaintiffs
                                   DEBORAH D. PETERSON, Personal
                                   Representatives of the Estate of James C. Knipple
                                   (Dec.), et. al.

F:\USERS\DJCNEW\petersonappoint.bankleviesmpa

-1-