1  DAVID J. COOK, ESQ. (State Bar # 060859)
   ROBERT J. PERKISS, ESQ (State Bar # 62386)
2  COOK COLLECTION ATTORNEYS
   A PROFESSIONAL LAW CORPORATION
3  165 Fell Street
   San Francisco, CA  94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA  94104-0270
5  Tel.: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52.759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12
   DEBORAH D. PETERSON, Personal       )   CASE NO. 3:08-80030-JSW (BZ)
13 Representative of the Estate of James C.  )
   Knipple (Dec.), et al.,             )   MEMORANDUM OF POINTS AND
14                                      )   AUTHORITIES IN SUPPORT OF MOTION
              Plaintiffs,              )   FOR HEARING ON OBJECTION TO REPORT
15                                      )   AND RECOMMENDATION TO DENY
   vs.                                  )   PLAINTIFFS' EX PARTE APPLICATIONS,
16                                      )   PURSUANT TO LOCAL RULE 72-3(a), AND
   ISLAMIC REPUBLIC OF IRAN, et al.,    )   MOTION FOR DE NOVO DETERMINATION
17                                      )
              Defendants.              )   Date: July 11, 2008
18 _____      )   Time: 9:00 a.m.
                                            Courtroom: 17, 16th Floor
19                                          Judge: Jeffrey S. White

20                    I. INTRODUCTION.

21        Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C.

22 Knipple (Dec.), et al. ("Plaintiffs"), bring this action to recover based upon the 1983 bombing

23 which killed 241 Marines and servicemen, commonly known as the Marines Barracks Bombing.

24 This led to the filing of an action in the United States District Court, District of Columbia, entitled

25 *Peterson vs. Islamic Republic of Iran,* Case No. 01-2094 (RCL), leading to a judgment on 9/7/07

26 in the amount of $2,656,944,877.  Plaintiffs docketed this judgment in the United States District

27

28 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
   OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
   PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
   CASE NO. 3:08-80030-JSW (BZ)                                                    1

1 | Court, Northern District of California, in the above-entitled action, on 3/11/08, pursuant to 28

2 | U.S.C. § 1963 herein.

3 | On 3/14/08, Plaintiffs filed those certain Ex Parte Application For Order Amending Writ of

4 | Execution to Include Additional Names and Second Ex Parte Application for Order Amending and

5 | to Direct Issuance of Second Amended and Alias Writ of Execution to Include Additional Names,

6 | as Docket Nos. 6 & 9, seeking to amend the Writ of Execution. These ex parte applications were

7 | filed under C.C.P. § 680.135, which provides as follows:

8 | § **680.135.**
"Affidavit of Identity" means an affidavit or declaration executed by a judgment
9 | creditor, under penalty of perjury, that is filed with the clerk of the court in which
the judgment is entered at the time the judgment creditor files for a writ of
10 | execution or an abstract of judgment. The affidavit of identity shall set forth the
case name and number, the name of the judgment debtor stated in the judgment, the
11 | additional name or names by which the judgment debtor is known, and the facts
upon which the judgment creditor has relied in obtaining the judgment debtor's
12 | additional name or names. The affidavit of identity shall not include the name or
names of persons, including any corporations, partnerships, or any legal entities not
13 | separately named in the judgment in which the judgment debtor is a partner,
shareholder, or member, other than the judgment debtor.

14 | This matter was heard by the Honorable Bernard Zimmerman, Magistrate Judge, who

15 | heard and considered both this case and the companion case of *Greenbaum vs. Islamic Republic of*

16 | *Iran,* Case No. 3:08-mc-80024-JSW (BZ). The court issued a REPORT AND

17 | RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS (Docket No. 14),

18 | in the *Greenbaum vs. Islamic Republic of Iran* action marked *Exhibit "A"* [1] and the REPORT

19 | AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATION in this

20 | action (Docket No. 36) is marked *Exhibit "B."*

21 | **II. MOTION FOR HEARING DE NOVA.**

22 | Plaintiffs move this court for a hearing de novo pursuant to Local Rule of Court 72-3(a)

23 | which provides as follows:

24 |

25 | _____

26 | [1] All exhibits are incorporated by reference as though fully set forth in this Memorandum
in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed
27 | contemporaneously herein.

28 | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
CASE NO. 3:08-80030-JSW (BZ)                                                                    2

**72-3. Objection to Dispositive Decision.**
**(a) Form of Objection and Response.** Any objection filed pursuant to FRCivP 72(b) and 28 U.S.C. § 636(b)(1)(B) must be accompanied by a motion for de novo determination. specifically identify the portions of the Magistrate Judge's findings, recommendation or report to which objection is made and the reasons and authority therefor.  To the extent consistent with FRCivP 72(b) and 28 U.S.C. § 636. Civil L.R. 7-2 governs presentation and consideration of such motions and objections.
**(b) Motion for Expansion of Record or for Evidentiary Hearing.** At the time a party files an objection or response, the party may make a motion for expansion or addition to the record of the proceedings before the Magistrate Judge or for an evidentiary hearing.
**( c) Ruling on Objection Limited to Record before Magistrate Judge.** Except when the Court grants a motion for expansion or addition to the record or for an evidentiary hearing, the Court's review and determination of objections filed pursuant to Civil L.R. 72-3(a) shall be upon the record of the proceedings before the Magistrate Judge.

Plaintiffs seek a hearing de novo in that Plaintiffs have objected to the Magistrate Judge's report, as follows:

1. The court ruled as follows:

"Because the judgment was entered in the District of Columbia, not the Northern District. Cal. Civ. Proc. Code section 680.135 does not authorize this court to grant plaintiffs' applications.'" (p. 5, ll. 2-5.)

BASIS OF OBJECTION: C.C.P. § 680.135, applicable herein under F.R.C.P. 69(a) specifically provides:

"Affidavit of Identity" means an affidavit or declaration executed by a judgment creditor, under penalty of perjury, that is filed with the clerk of the court in which the judgment is entered at the time the judgment creditor files for a writ of execution or an abstract of judgment.  ..."

While this judgment was originally rendered by the United States District Court, District of Columbia ("USDC, D.C.") (Judge Royce C. Lamberth, Chief Judge), Plaintiff has independently docketed the judgment in the USDC, N.D.Cal. under 28 U.S.C. § 1963, in which this is the sole court by which a Writ of Execution for purposes of execution could ever be issued. The USDC. D.C. could not issue a Writ of Execution, for purposes of Plaintiffs levying and executing upon assets in the USDC, N.D.Cal. Accordingly, the definition of the word "court" under C.C.P. § 680.135 is specifically defined as that specific court which in fact would issue the Writ of Execution. Otherwise, Plaintiffs would be left with the anomaly of seeking redress before the USDC, D.C., seeking relief in the issuance of a "Writ of Execution" by another court, under the auspices of another Judge. Furthermore, in many states, Writs of Execution are not routinely issued, but rather, various writs such as garnishments, citations, "writs of attachment on garnishments." and other devices of local supplemental law. Accordingly, the Magistrate Judge was in error in finding that only the USDC, D.C. Court could direct or redirect the form and format of a Writ of Execution, when in fact that Writ of Execution would be issued by another independent District Court.

The Court also states at page 6:

1    ". . . Applied in the federal system, this procedure has merit. Presumably, the judge
     who entered the judgment is in the best position to determine whether the debtor
2    uses additional names. And the proliferation of 'identity' proceedings around the
     country, such as has occurred with this judgment, with its concomitant risk of
3    inconsistent rulings, would be avoided." (P. 6, ll. 3-9)

4        While multi-district enforcement is common, in a case such as this, levies and execution,
     by their very nature are "local" in that a Judgment Creditor seeks to levy on a specific asset in a
5    specific district. If the Judgment Creditor has reason to believe, e.g., that an asset is held in a
     name other than the Judgment Debtor, the Judgment Creditor would be obligated to insure that the
6    Writ of Execution properly lists all of the names of the Judgment Debtor, to insure confluence
     between the levy process and the identity of the asset. Otherwise, the respondent (garnishee) under
7    a levy could potentially avoid paying over the asset, based upon the lack of identity or misidentity
     of the debtor.
8        The court also misconstrues the prospect that a Northern California Writ of Execution is
     only good within the prospect of levy in the State of California. Conversely, a Writ issued by the
9    USDC, D.C. similarly would be limited. Plaintiffs therefore, notwithstanding potentially some
     redress by the USDC, D.C., could not use a USDC, D.C. Writ to reach an asset in the USDC, N.D.
10   Cal.

11       2. Plaintiffs further object to the following:

12   "Nor is it clear that the relief plaintiffs seek is available under Cal. Civ. Proc. Code
     sections 680.135 and 699.510. Plaintiffs are not claiming that Iran is literally
13   known by the names of the many oil companies named in the applications. Rather,
     plaintiffs are claiming that Iran nationalized or otherwise owns a number of oil
14   companies, some of which have subsidiaries, and it wishes to execute against these
     entities. A literal reading of the California statutes suggests that they are meant to
15   address judgment debtors known by multiple names or aliases, (see Richard L.
     Enkelis, Action Guide: Enforcing Civil Money Judgments, Step. 13, p. 19 (2006))
16   rather than subsidiaries or affiliates of the judgment debtor.[1] In fact, section 680.135
     states that:
17
         [t]he affidavit of identity **shall not include** the name of names of
18       persons, including **any corporations,** partnerships, or any legal
         entities not separately named in the judgment **in which the**
19       **judgment debtor is a partner, shareholder, or member,** other
         than the judgment debtor.
20
     Cal. Civ. Proc. Code § 680.135 (emphasis added).
21
22       BASIS OF OBJECTION: Many of the concerns raised by the Magistrate Judge are in fact
     resolved by the legislation found at section 1605A, which is now part of the Foreign Sovereign
23   Immunities Act ("FSIA"), as set forth by the attached enabling legislation. The effective abolition
     of the FSIA as to Iran and other terrorist states completely vitiates the barrier between a state
24   sponsor of terror, on the one hand, and its "agencies and instrumentalities." Plaintiffs have
     demonstrated that Iran obviously owns and controls its own Ministry of Petroleum and their many
25   subsidiaries, and the legislation essentially sought to "collapse" all of these entities into the
     Judgment Debtor. Accordingly, the Court's analysis, e.g., that these are alleged "different entities"
26   fails to address the fact that Congress sought to abolish "separateness" and conflate Iran and all of
     its agencies and instrumentalities into one debtor.

27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
     OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
     PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
     CASE NO. 3:08-80030-JSW (BZ)                                                        4

1    3. Plaintiffs also object to the following:

2    "Plaintiffs showing is also deficient from an evidentiary standpoint. Cal. Civ. Proc.
     Code section 680.135 requires an affidavit or declaration under penalty of perjury
3    which sets forth the factual basis for assertion that the debtor is known by other
     names. Here plaintiffs' applications are supported by declarations of counsel which
4    attaches a number of unauthenticated or poorly authenticated documents which
     purportedly establish that the government of Iran, the judgment debtor, owns one or
5    more national oil companies which in turn have a number of subsidiaries. As
     proof, plaintiffs rely principally on screen shots of various internet websites.
6    Plaintiffs have not established that the websites from which these screen shots were
     taken are owned or maintained by the companies in question, let alone that the
7    information on those websites is accurate. Wady v. Provident Life & Accident Ins.
     Co. Of Am., 216 F.Supp.2d 1060, 1064 - 65 (C.D. Cal. 2002) (court sustained
8    objection to printouts from a company's website because the affiant lacked
     'personal knowledge' of who maintains the website, who authored the documents,
9    or accuracy of their content'). See also Internet and Email Evidence, Am. Law
     Institute-Am. Bar Ass'n. Trial Evidence in the Federal Courts: Problems and
10   Solutions, 559, 562 - 64 (2008)."

11        BASIS OF OBJECTION: Plaintiffs are obviously severely hobbled by the fact that Iran is a
     sovereign state: that Iran is a state sponsor of terror; that Iran is not readily subject to any type of
12   discovery, whether by way of depositions, orders of examination under C.C.P. § 708.110(a), or
     post-judgment interrogatories, or the like. Iran has made it clear that Iran will never pay this
13   judgment, and needless to say, is not about to cooperate with the victims of its terrorist conduct,
     leading to now a $2.7 billion judgment. Plaintiffs are therefore left to whatever available resources
14   there are. Plaintiffs' evidence includes, but is not limited to, e.g., information which Iran makes
     available through its public website under the title of "Ministry of Petroleum," information
15   available from the Energy Information Administration of the Department of Energy, various
     reports and proceedings from the Iran-U.S. Claims Tribunal, and other sources. Plaintiffs do not
16   claim that the level of evidence necessarily would rise to the dignity of a successful party in a
     summary judgment proceeding, but has provided sufficient evidence or some evidence by which
17   the Court can independently determine that Plaintiffs have demonstrated that Iran operates under
     various names which include the Ministry of Petroleum, National Iranian Oil Company, National
18   Iranian Gas Export Company, and the like. Furthermore, the information which Plaintiffs have
     provided is consistent with each other, and supported by independent government reports,
19   including the EIA/DOE Report, along with and including, information from the Iran-U.S. Claims
     Tribunal. Plaintiffs have certainly provided a sufficient quantum of evidence which would
20   demonstrate to any trier of fact, that Iran owns its own Ministry of Petroleum, has multiple
     subsidiaries, sells 3 billion barrels of oil a day, constitutes the fourth largest holder of oil reserves,
21   fourth largest exporter, and under any set of facts, that Plaintiffs are entitled to redraft the Writ of
     Execution showing that Iran is the owner and holder thereof, and recasting the Writ according.

22
                          III. FUNDAMENTAL OBJECTIONS.
23
          Plaintiffs have a number of fundamental objections which are summarized as follows:
24
     Plaintiffs seek to amend the Writ of Execution issued by the USDC, N.D.Cal., in which this court
25
     and only this court has the power to issue the Writ and control its process, and only this court.
26
     Plaintiffs have addressed all of these issues in great detail by way of the SUPPLEMENTAL
27

28   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
     OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
     PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
     CASE NO. 3:08-80030-JSW (BZ)                                                                    5

1   what is available to them through the websites made available by Iran, reports from the United

2   States government, including the EIA/DOE Report, and more specifically, the findings from the

3   Iran-U.S. Claims Tribunal. The total quantum of evidence should be sufficient to permit Plaintiffs

4   to demonstrate to this court that Iran in fact does business under its nationalized oil companies.

5   No evidence is before this court to the contrary.

6        If these Plaintiffs are held to the standard of providing evidence to the satisfaction of the

7   court akin to a summary judgment, Plaintiffs like these would never be able to get a Writ amended,

8   as a Judgment Debtor could readily make itself unavailable or impossible to reach. Compelling

9   the Judgment Debtor to proceed with broad-based discovery for this type of relief would convert a

10  simplified process under California law into broad-based civil litigation, the expense of which

11  would serve as an impossible barrier. The language of C.C.P. § 680.135 permits an ex parte

12  application, not full blown civil litigation.

13               **V. CONFLATING AGENCIES AND INSTRUMENTALITIES.**

14       Magistrate Judge Zimmerman also indicated concern that the "agencies and

15  instrumentalities" are separate. The viewpoint of the court is a substantial concern that Plaintiffs

16  are using an incorrect or wrong remedy, and in which Plaintiffs are unable to use C.C.P. §

17  680.135. (See REPORT, p. 6, ll. 10-22.)

18       The court has incorrectly viewed both the relief sought and the entitlement of Plaintiffs to

19  reach these assets. Plaintiffs seek to amend the Writ because these entities are the property of Iran,

20  as demonstrated through the website EIA/DOE Report and the Iran-U.S. Claims Tribunal, that

21  Plaintiffs can reach these assets through the abolition of FSIA, and as a result, such names as The

22  National Iranian Oil Company etc. are names by which Iran conducts business. The purpose in the

23  abolition of FSIA was to demolish the artificial barrier or artifice between Iran and its agencies and

24  instrumentalities, making such assets available for levy and execution.

25       Prior to 1/28/08, Iran was generally protected by the Foreign Sovereignty Immunities Act

26  ("FSIA") found at 28 U.S.C. § 1601 et seq., with a number of exceptions, principally centering

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
    OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
    PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
    CASE NO. 3:08-80030-JSW (BZ)                                                          7

1  around assets which were "blocked" and "unblocked" and the like. However, on 1/28/08,

2  President Bush signed into effect legislation which effectively repealed the FSIA, in total, which is

3  found at (in part) 28 U.S.C. 1605A. The key parts of that new section permitting meaningful

4  collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

5      "(a) IN GENERAL. --
            "(1) NO IMMUNITY. – A foreign state shall not be immune from the
6      jurisdiction of courts of the United States or of the States in any case not otherwise
       covered by this chapter in which money damages are sought against a foreign state
7      for personal injury or death that was caused by an act of torture, extrajudicial
       killing, aircraft sabotage, hostage taking, or the provision of material support or
8      resources for such an act if such act or provision of material support or resources is
       engaged in by an official, employee, or agent of such foreign state while acting
9      within the scope of his or her office, employment, or agency."

10     "(g) PROPERTY IN CERTAIN ACTIONS –
            "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign
11     state against which a judgment is entered under section 1605A, and the property of
       an agency or instrumentality of such a state, including property that is a separate
12     juridical entity or is an interest held directly or indirectly in a separate juridical
       entity, is subject to attachment in aid of execution, and execution, upon that
13     judgment as provided in this section, regardless of –
            "(A) the level of economic control over the property by the
14     government of a foreign state;
            "(B) whether the profits of the property go to that government;
15     "( C) the degree to which officials of that government manage the
       property or otherwise control its daily affairs;
16     "(D) whether that government is the sole beneficiary in interest of
       the property; or
17     "(E) whether establishing the property as a separate entity would
       entitle the foreign state to benefits in United States courts while
18     avoiding its obligations.
            "(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any
19     property of a foreign state, or agency or instrumentality of a foreign state, to which
       paragraph (1) applies shall not be immune from attachment in aid of execution, or
20     execution, upon a judgement entered under section 1605A because the property is
       regulated by the United States Government by reason of action taken against that
21     foreign state under the Trading With the Enemy Act or the International Emergency
       Economic Powers Act."

22     Accordingly, Iran no longer has the shield of the FSIA, and a Judgment Creditor is free to

23  proceed against Iranian assets, as any other Judgment Debtor, rendering moot detailed discussions

24  and analysis over concepts of whether assets are blocked or otherwise.

25     Congress sought to ease the burden of levy and execution by conflating all of the entities,

26  including agencies and instrumentalities, such as and e.g., The National Iranian Oil Company, into

27

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
    OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
    PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
    CASE NO. 3:08-80030-JSW (BZ)                                                          8

1  the debtor itself, specifically to avoid the crisis faced by a debtor, in which a government entity can

2  effectively hide and shield its assets through its "corporate subsidiaries." Congress sought to

3  abolish the same. otherwise. a Judgment Creditor would never be able to collect.

### VI. CONCLUSION.

5  In the filing of a judgment in a District Court, a plaintiff has the right to have execution

6  issued, and as stated, all execution is typically local.  Only this court could issue an order

7  amending its own writs.

8  In response to the court's concern over the quantum or quality of evidence, these Plaintiffs

9  are facing a unique setting in seeking redress against a sovereign nation who is not readily

10  available to respond to discovery.  Plaintiffs have made out their case based upon Defendant's own

11  statements, government reports, and decisions by a tribunal established by the Algiers Accord and

12  recognized by the Supreme Court as the tribunal to resolve claims by and between citizens of the

13  United States and the United States against Iran and Iran against the United States.

14  Finally. the changes to the FSIA dismantles the barriers between a foreign sovereign and its

15  agencies and instrumentalities, entitling Plaintiffs to this relief.

16  DATED:  June 2, 2008                          COOK COLLECTION ATTORNEYS

18                                         By:    /s/ David J. Cook
                                           DAVID J. COOK, ESQ. (SB# 060859)
19                                         Attorneys for Plaintiffs
                                           STEVEN M. GREENBAUM, ALAN
                                           HAYMAN. and SHIRLEE HAYMAN

21  F:\USERS\DJCNEW\peterson.objexs

28  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR HEARING ON
OBJECTION TO REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE APPLICATIONS,
PURSUANT TO LOCAL RULE 72-3(a), AND MOTION FOR DE NOVO DETERMINATION
CASE NO. 3:08-80030-JSW (BZ)                                                          9