**EXHIBIT "C"**

1  DAVID J. COOK, ESQ. (State Bar # 060859)
   ROBERT J. PERKISS, ESQ (State Bar # 62386)
2  COOK COLLECTION ATTORNEYS
   A PROFESSIONAL LAW CORPORATION
3  165 Fell Street
   San Francisco, CA 94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA 94104-0270
5  Tel: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52,759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | CASE NO. 3:08-80030-JSW (BZ) <br><br> SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135 |

## I. INTRODUCTION.

Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al. ("Plaintiffs"), Judgment Creditors for and on behalf of The Islamic Republic of Iran ("Iran") have recovered approximately a $2,700,000,000 judgment against THE ISLAMIC REPUBLIC OF IRAN ("Iran") in the action entitled Peterson vs. Islamic Republic of Iran, pending in the United States District Court, District of Columbia, Case No. 01-2094 (RCL) and related matters, before the Honorable Royce C. Lamberth, Chief Judge of the United States District Court.

---

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                    1

Iran has been unresponsive to the judgment, and Plaintiffs are presently proceeding with levy and execution on a nationwide basis. Plaintiffs have identified Bank of Tokyo-Mitsubishi, UFJ, Sumitomo Mitsui Banking Corporation, and Mizuho Corporate Bank, all Japanese banks, and all with branches located in the Northern District as potentially holding Iranian funds on a world-wide basis. The method of holding such funds is by way of a deposit, collateral for the issuance of a letter of credit, holding funds as part of being a conduit to pay Iran for the sale and delivery of crude oil products, or otherwise in any other manner. Plaintiffs have levied upon all of these banks, and moreover has levied upon a series of other banks, such as and including, BNP Paribus, Credit Suisse, among others, which likewise may hold Iranian deposits, or funds held as collateral to issue a letter of credit. Plaintiffs therefore have met the threshold for properly docketing this judgment under 28 U.S.C. § 1963, which only requires a good faith belief that assets exist within this district.

## II. AVAILABILITY OF BROAD-BASED LEVY AND EXECUTION.

Plaintiffs proceed with "broad-based" levy and execution. As part of that process, Plaintiffs proceed with an order under C.C.P. § 680.135, for purposes of amending the Writ of Execution to add the additional names. To dispel any uncertainty, Plaintiffs do not seek to add additional "parties," but rather add additional names by which Iran does business. This is demonstrated as set forth below:

1. National Iranian Gas Export Company
   Website: www.nigec.ir
   Email: info@nigec.ir

2. National Iranian South Oil Company
   Website: www.nisoc.com
   Email: info@nisoc.com

3. National Iranian Offshore Oil Company
   Website: www.iooc.co.ir
   Email: webmaster@iooc.co.ir

4. National Iranian Central Oil Fields Co.
   Website: www.icofc.ir
   Email: info@icofc.ir

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                                       2

1   5.   Khazar Exploration & Production Co.
         Tehran HQ.
2        No.19 – 11th Alley - Vozara Ave. - Arjantin sq.
         Tel: +98-21-88722430, 3
3        Fax: +98-21-88711386

4   6.   Petroleum Engineering & Development Co.
         Website: www.pedec.ir
5        Email: info@pedec.net

6   7.   Pars Oil and Gas Company
         Website: www.pogc.org
7        Email: info@pogc.ir

8   8.   Pars Special Economic energy Zone Co.
         Website: www.pseez.com
9        Email: info@pseez.com

10  9.   National Iranian Oil Terminals Company
         Website: www.nioc-otc.com
11       Email: info@nioc-otc.com

12  10.  National Iranian Drilling Company
         Website: www.nidc.ir
13       Email: webmaster@nidc.ir

14  11.  North Drilling Company
         Website: www.northdrilling.com
15       Email: info@northdrilling.com

16  12.  PetroIran Development Company
         Website: petroiran.com
17       Email: info@petroiran.com

18  13.  Ahwaz Pipe Mills Company
         Website: www.apm-ir.com
19       Email: tabibi@apm-ir.com

20  14.  Petropars
         Website: www.petropars.com
21       Email: webadmin@ppars.com

22  15.  Fuel Consumption Optimization Co.
         Website: www.ifco.ir
23       Email: info@ifco.ir

24  16.  National Iranian Tanker Co.
         Website: www.nitc.co.ir
25       Email: administrator@nitc.co.ir

26

27

28  SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE
    APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND
    ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
    CASE NO. 3:08-80030-JSW (BZ)                                                    3

17. Exploration Service Company (ESC)
    Website: www.oeoc.ir
    Email: info@oeoc.ir

18. Kala Naft London Ltd.
    Website: www.kalaltd.com
    Email: admin@kalaltd.com

19. Kala Naft Canada Ltd.
    Website: www.kalanaftcanada.com
    Email: info@kalanaftcanada.com

20. Arvandan Oil and Gas Company
    Website: www.arvandan.org
    Email: info@arvandan.org

21. National Iranian Gas Company
    Website: www.nigc.org
    Email: webmaster@nigc.org

22. National Iranian Petrochemical Company
    Website: www.nipc.net
    Email: webmaster@nipc.net

23. National Iranian Oil Refining and Distribution Co.
    Website: www.niordc.ir
    Email: info@niordc.ir

and all subsidiaries, subdivisions, affiliates, and related entities.

In response to the inquiry whether or not Plaintiffs necessarily should have added these "names" to the judgment, Plaintiffs' case, as originally filed, was against the ISLAMIC REPUBLIC OF IRAN arising out of the 1983 Marines Barracks bombing. The fact that Iran might buy and sell oil products, or conduct other commercial activities by and through its agencies and instrumentalities would not necessarily have been included under any sense of either res judicata or collateral estoppel within the context of the underlying wrongful death action.

The fact of agency or instrumentality is relevant in the context of enforcement proceedings, which was necessarily considered by Congress. On 1/28/08, President Bush signed into effect legislation which effectively repealed the FSIA, in total, which is found at (in part) 28 U.S.C. 1605A. The key parts of that new section permitting meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                                    4

"(a) IN GENERAL. --
"(1) NO IMMUNITY. – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –
"(1) IN GENERAL. – subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –
   "(A) the level of economic control over the property by the government of a foreign state;
   "(B) whether the profits of the property go to that government;
   "( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
   "(D) whether that government is the sole beneficiary in interest of the property; or
   "(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act." (Emphasis added)

Paramount is the fact that Congress sought to demolish the distinction between "agencies and instrumentalities" and the foreign state itself. This effectively seeks to render moot the holding of the *Supreme Court in First Nat'l City Bank v. Banco Para El Comercio Enterior de Cuba*, 462 U.S. 611, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983), reducing the barrier faced by a Judgment Creditor in reaching assets of the foreign entity, while in the name of an "agency or instrumentality." The last case of note is *Flatow vs. The Islamic Republic of Iran*, 308 F.3d 1065 (9th Cir. 2002), in which the court denied relief in favor of the Flatow victims in holding that they had not made the burden of proof under Bancec, in showing that Bank Sadaret, Iran, was in fact

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                                         5

part of the country, making it vulnerable to levy and execution.

Accordingly, recrafting the Writ of Execution would serve the interest of this creditor in reaching assets, housed in the name of the "agency and/or instrumentality." The amendment to FSIA by virtue of Section 1605 sought to avoid the barriers and obstacles confronted by Judgment Creditors in reaching assets in the hands of a sovereign state's "agencies and instrumentalities."

### III. WHY THIS MATTER IS BEST RESOLVED BY THIS COURT, AND NOT JUDGE LAMBERTH.

Plaintiffs proceed to levy and execute from the United States District Court, Northern District of California, and have issued (and already had issued) a Writ of Execution. The use of the Writ of Execution would enable this creditor to levy upon all assets, and each of the same, in this judicial district, or for that matter, throughout the State of California. Conversely, Plaintiffs would have an enormously difficult time (but not necessarily impossible) in seeking to levy upon California-domiciled assets through the issuance of a Writ by and through the District of Columbia. In fact, the process of the District of Columbia is proceeding on what is called a WRIT OF ATTACHMENT ON JUDGMENT, which under local law, provides as follows:

> § 16-546. Attachments of credits.
> An attachment shall be levied upon credits of the defendant, in the hands of a garnishee, by serving the garnishee with a copy of the writ of attachment and of the interrogatories accompanying the writ, and a notice that any property or credits of the defendant in his hands are seized by virtue of the attachment.

(Dec. 23, 1963, 77 Stat. 552, Pub. L. 88-241, § 1; 1973 Ed., § 16-546; 1981 Ed., § 16-546.) Needless to say, a California-domiciled "garnishee" would have great resistance, claiming all sorts of jurisdictional issues, in responding to service upon a District of Columbia issued WRIT OF ATTACHMENT ON JUDGMENT. The better practice always is to docket the judgment and serve the garnishee with a Writ of Execution pursuant to local process under F.R.C.P. 69(a)(1). Better practice dictates docketed the judgment in the probable district in which the judgment creditor would be able to reach assets.

### IV. IRAN-U.S. CLAIMS TRIBUNAL.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                                                       6

The Iran-U.S. Claims Tribunal was established by the Declaration of the Government of the Democratic and Popular Republic of Algeria, a copy marked *Exhibit "A."*[1] The Declaration provides for the settlement of disputes at paragraph 17, as follows:

> "17. If any other dispute arises between the parties as to the interpretation or performance of any provision of this Declaration, either party may submit the dispute to binding arbitration by the tribunal established by, and in accordance with the provisions of, the Claims Settlement Agreement. Any decision of the tribunal with respect to such dispute, including any award of damages to compensate for a loss resulting from a breach of this Declaration or the Claims Settlement Agreement, may be enforced by the prevailing party in the courts of any nation in accordance with its laws."

The Declaration established a Tribunal. This is known as the Iran-U.S. Claims Tribunal, which obviously renders decisions from time to time, the subject matter of the previously filed Declaration of David J. Cook, Esq.

## V. COLLATERAL ESTOPPEL.

The Iran-U.S. Claims Tribunal has rendered multiple decisions, adjudicating that The National Iranian Oil Company and related entities are in fact "part of Iran." The Iran-U.S. Claims Tribunal is a tribunal established by mutual agreement by and between the U.S. and Iran. A tribunal, arbitration panel, or administrative agency, under the laws of the State of California, is entitled to collateral estoppel. This is seen in such cases as *People vs. Sims*, 32 Cal.3d 486 (1982), in which the court held that administrative agency decisions will support collateral estoppel, by and among the parties. Clearly, the Iran-U.S. Claims Tribunal was enacted to enable the governments to litigate their respective claims in which the jurisdictional prerequisite is whether an agency or instrumentality was in fact part of the country, and therefore subject to the jurisdiction of the Tribunal.

The Supreme Court has had a number of occasions to adjudicate matters relating to the Iran-U.S. Claims Tribunal in *Supreme Court of the United States, United States, Appellant, vs.*

---

[1] All exhibits are incorporated by reference as though fully set forth in this Memorandum in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed contemporaneously herein.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                 7

1 | *Sperry Corporation et al.*, 493 U.S. 52, at pages 55 to 56, 110 S.Ct. 387, 107 L.Ed.2d 290, 58
2 | USLW 4018 (Decided Nov. 28, 1989), which the court noted that the U.S. and Iran entered into an
3 | agreement embodied in two declarations of the government of Algeria commonly known as The
4 | Algiers Accord, providing for the establishment in The Hague of an international arbitral tribunal
5 | known as the Iran-U.S. Claims Tribunal, to hear claims brought by Americans against the
6 | government of Iran. *In Dames & Moore vs. Donald T. Regan*, 453 U.S. 654, at page 664 to
7 | 665,101 S.Ct. 2972, 6 L.Ed.2d 918 (Decided July 2, 1981), the court at page 665 stated that the
8 | Algiers Accord called for the establishment of a tribunal arbitrating any claim, in which the awards
9 | are final and binding and enforceable in the courts of any nation in accordance with its laws. The
10 | court stated as follows:

> "On December 19, 1979, petitioner Dames & Moore filed suit in the United States District Court for the Central District of California against the Government of Iran, the Atomic Energy Organization of Iran, and a number of Iranian banks. In its complaint, petitioner alleged that its wholly owned subsidiary, Dames & Moore International, S.R.L., was a party to a written contract with the Atomic Energy Organization, and that the subsidiary's entire interest in the contract had been assigned to petitioner. Under the contract, the subsidiary was to conduct site studies for a proposed nuclear power plant in Iran. As provided in the terms of the contract, the Atomic Energy Organization terminated the agreement for its own convenience on June 30, 1979. Petitioner contended, however, that it was owed $3,436,694.30 plus interest for services performed under the contract prior to the date of termination.[4] The District Court issued orders of [101 S.Ct. 2979] attachment directed against property of the defendants, and the property of certain Iranian banks was then attached to secure any judgment that might be entered against them. *On January 20, 1981, the Americans held hostage were released by Iran pursuant to an Agreement entered into the day before and embodied in two Declarations of the Democratic and Popular Republic of Algeria. Declaration of the Government of the Democratic and Popular Republic of Algeria (App. to Pet. for Cert. 21-29), and Declaration of the Government of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran (id. at 335).* **The Agreement stated that [i]t is the purpose of [the United States and Iran] . . . to terminate all litigation as between the Government of each party and the nationals of the other, and to bring about the settlement and termination of all such claims through binding arbitration. Id. at 21-22. In furtherance of this goal, the Agreement called for the establishment of an Iran-United States Claims Tribunal which would arbitrate any claims not settled within six months. Awards of the Claims Tribunal are to be "final and binding," and "enforceable . . . in the courts of any nation in accordance with its laws."** *Id.* **at 32. . . .**

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                                           8

Whether under the doctrine of collateral estoppel or judicial notice, Plaintiff has proffered before this court sufficient evidence to demonstrate that in fact the National Iranian Oil Company (and related entities) are agencies and instrumentalities. From the viewpoint of classic collateral estoppel the court can readily apply these principals under the leading California case of *Bernhard vs. Bank of America,* 19 Cal.2d807 at page 813 (1942) which permits a stranger to invoke collateral estoppel. Plaintiffs can invoke classic collateral estoppel in that Iran was a party to the proceedings; that the issue of "agency and instrumentality" was in fact an issue; and that the matters were decided. For the parties to obtain relief for conduct arising out of, or relating to, for example, the National Iranian Oil Company, the Tribunal must have necessary found that the NICO was in fact an agency and instrumentality, which is precisely the finding in the relevant Iran US Claims Tribunal cases.

## VI. PROOF OF AGENCIES AND INSTRUMENTALITIES.

The fact that Iran has multiple agencies and instrumentalities is seen from the download of The Ministry of Petroleum of Iran. The information therein is established by way of *Exhibits "B" "C" "D" & "E."* This proceeding is clearly not a summary judgment, and Iran is not subject to ready discovery, as any civil litigant would be. Iran is a sovereign state and has not indicated the slightest inclination in payment or resolution of this matter, much less cooperation with the Plaintiffs in the collection of this judgment. Plaintiffs have ascertained this information, which Plaintiffs believe is readily reliable. This is confirmed in part by information from The Energy Information Administration, whose report is marked *Exhibit "F,"* specifically at pages 2, bottom paragraph, page 3, bottom paragraph, through page four, top paragraph. This information for purposes of amending the writ of execution should be sufficient in that Plaintiff has demonstrated some evidence in support.

## VII. PLAINTIFFS ARE LEFT WITH THE LIMITED OPTIONS

Plaintiffs of course are left with the options as they present themselves. Iran has been extremely uncooperative, to say the least, will not be readily subject to information obtained by

way of subpoena, legal process, or otherwise, and has indicated its refusal to compensate these Plaintiffs, much less accept responsibility from one of the most significant events, reshaping the landscape in the Middle East. While the court has indicated its concern over many of these issues in this case, the fact remains that Plaintiffs have a judgment against Iran, that Plaintiffs are properly levying and executing against the assets of Iran in this district, that Plaintiffs have demonstrate sufficient evidence to indicate and identify the agencies and instrumentalities, and that Plaintiffs are entitled to levy and execute, for purposes of satisfaction of this judgment within this district.

## VIII. INCORPORATION INTO THE U.S. CODE.

Section 1605A has been incorporated into the U.S. Code, and the legislation, and specifically the conforming amendments, are marked *Exhibit "G,"* in which the conforming amendments start at page 848. *Exhibit "G"* traces Section 1605A into current United States Code with the amendment tracking the changes.

DATED: May 20, 2008                COOK COLLECTION ATTORNEYS

By:   /s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs DEBORAH D. PETERSON,
Personal Repr. of the Estate of James C. Knipple.

F:\USERS\DJCNEW\peterson.sfamendwritmpa

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND EX PARTE APPLICATION FOR ORDER AMENDING AND TO DIRECT ISSUANCE OF SECOND AMENDED AND ALIAS WRIT OF EXECUTION TO INCLUDE ADDITIONAL NAMES PURSUANT TO C.C.P. § 680.135
CASE NO. 3:08-80030-JSW (BZ)                                                                                   10