1    JERROLD ABELES (SBN 138464)
     ROBERT C. O'BRIEN (SBN 154372)
2    ARENT FOX LLP
     555 W. Fifth Street, 48th Floor
3    Los Angeles, CA 90013
     Telephone:    213-629-7400
4    Facsimile:    213-629-7401
     E-mail: abeles.jerry@arentfox.com
5    E-mail: obrien.robert@arentfox.com

6    JAMES H. HULME
     STEWART S. MANELA
7    MATTHEW M. WRIGHT
     ARENT FOX LLP
8    1050 Connecticut Avenue NW
     Washington, D.C. 20036
9    Telephone: (202) 857-6000
     Facsimile: (202) 85706395
10
     Attorneys For Japan Bank for
11   International Cooperation

12                 UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

16   DEBORAH D. PETERSON,                Case No. 08-MC-80030-JSW (BZ)
     Personal Representative of the Estate
17   of James C. Knipple (Dec.) et al.,  **JAPAN BANK FOR INTERNATIONAL
                                         COOPERATION'S OPPOSITION TO
18              Plaintiffs,              PLAINTIFFS' MOTION FOR
                                         ASSIGNMENT OF RIGHTS
19        v.                             PURSUANT TO C.C.P. § 708.510(a)
                                         AND F.R.C.P. 69(a)**
20   ISLAMIC REPUBLIC OF IRAN, et
     al.,                                Date:   July 2, 2008
21                                       Time:   9:00 a.m.
                Defendants.              Place:  Courtroom G
22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

**TABLE OF CONTENTS**

                                                                                                     Page

I.     INTRODUCTION ..................................................................................................1

II.    PRELIMINARY STATEMENT ...........................................................................2

III.   ARGUMENT...........................................................................................................4

       A.    JBIC Is Immune From The Subject Matter Jurisidiction Of U.S.
             Courts Under The Foreign Sovereign Immunities Act .........................4

             1.    Plaintiffs' Counsel Badly Misconstrues the Immunity
                   Provisions of the FSIA....................................................................5

             2.    JBIC's Assets and Property Are Immune from Execution
                   or Attachment...................................................................................7

             3.    The Court Has No Jurisdiction Over Assets and Property
                   Located Abroad.................................................................................8

       B.    The Court Has No Personal Jurisdiction Over JBIC ...........................9

IV.    CONCLUSION ......................................................................................................10

1

# TABLE OF AUTHORITIES

2

**Page**

3

4
### Federal Cases

5
*Af-Cap, Inc. v. Republic of Congo,*
   383 F.3d 361 (5th Cir. 2004) ...................................................... 9

6
*Auster v. Ghana Airways Ltd.,*
   514 F.3d 44 (D.D.C. 2008) .................................................... 2, 9

7

8
*Autotech Technologies LP v. Integral Research & Development Corp.,*
   499 F.3d 737 (7th Cir. 2007) .................................................. 7

9
*Conn. Bank of Commerce v. Rep. of Congo,*
   309 F.3d 240 (5th Cir. 2002) .................................................. 7

10
*Ex parte McCardle,*
   7 Wall. 506, 514, 19 L.Ed. 264 (1868) ................................. 1

11
*Fidelity Partners v. Philippine Exp. & Foreign Loan Guar. Corp.,*
   921 F. Supp. 1113 (S.D.N.Y. 1996) ................................... 7, 9

12

13
*Goodman Holdings, Inc. v. Rafidian Bank,*
   26 F.3d 1143 (D.C. Cir. 1994) ............................................... 6

14
*Kelly v. Syria Shell Petroleum Dev. B.V.,*
   213 F.3d 841 (5th Cir. 2000) ............................................... 4

15
*Quaestor Investments, Inc. v. The State of Chiapas,*
   1997 WL 34618203 (C.D. Cal. Sept. 2, 1997) ................... 8

16
*Republica Mexicana, S.C.,*
   923 F.2d 380 (5th Cir. 1991) ............................................... 3

17

18
*Richmark Corp. v. Timber Falling Consultants,*
   959 F.2d 1468 (9th Cir. 1992) ............................................. 8

19
*Saudi Arabia v. Nelson,*
   507 U.S. 349 (1993) ............................................................... 4

20
*Tubular Inspectors, Inc. v. Petroleos Mexicanos,*
   977 F.2d 180 (5th Cir. 1992) ............................................... 6

21
*Verlinden B.V. v. Cent. Bank of Nigeria,*
   461 U.S. 480 (1983) ............................................................ 10

22

23
### State Cases
*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian,*
   218 Cal. App. 3d 1058 (1990) .............................................. 8

24

25
### Federal Statutes

26
28 U.S.C. § 1330 .................................................................... 10

28 U.S.C. § 1602 ......................................................... 1, 4, 5, 10

27
28 U.S.C. § 1603(b) .................................................................. 3

28
28 U.S.C. § 1604 .................................................................. 3, 4

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

1

2

### TABLE OF AUTHORITIES
### (continued)

Page

3    28 U.S.C. § 1605.................................................................................4, 5, 6, 10

4    28 U.S.C. § 1609.........................................................................................1, 8

5    28 U.S.C. § 1610.........................................................................................1, 7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS 08-MC-80030-
JSW (BZ)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## I.    INTRODUCTION

4

5

6

Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

7

*Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868).

8

9    The Japan Bank for International Cooperation ("JBIC") is immune from the

10    jurisdiction of U.S. Courts and from Plaintiffs' post-judgment collection efforts

11    under the Foreign Sovereign Immunities Act ("FSIA"). Indeed, Plaintiffs' counsel

12    now concedes that JBIC and other foreign sovereign garnishees in this matter "are

13    all presumably agencies or instrumentalities of their respective sovereigns."[1] JBIC

14    is manifestly exempt from the subject matter and personal jurisdiction of the Court.

15    *See* 28 U.S.C. §§ 1602, *et seq.* Moreover, JBIC's assets are specifically immune

16    from "attachment, arrest, or execution" unless one of the very narrow exceptions

17    articulated in 28 U.S.C. §§ 1610 or 1611 are met. *See* 28 U.S.C. §§ 1609. As set

18    forth below, none of these exceptions is even remotely applicable to JBIC in this

19    matter. Without jurisdiction over it or its assets, the Plaintiffs may not further

20    involve JBIC in this proceeding.

21        JBIC specifically reserves and asserts its sovereign immunity in this matter.

22    With that proviso, JBIC accepts this Court's invitation to submit a brief in

23

24

25

26

27

28

---

[1]    This acknowledgement of JBIC's sovereign immunity was made on page 6 of Plaintiffs' Memorandum of Points and Authorities in Support of its Motion for Appointment of Receiver filed in *Peterson v. Islamic Republic of Iran, et al.* (D.D.C. Case No. 01-2094) [Docket Entry No. 286, filed May 20, 2008]. A copy of that memorandum is attached hereto as Exhibit 1. That memorandum also underscores the vigor with which Plaintiff's counsel is already pursuing post-judgment collections against putative garnishees like JBIC and other foreign sovereigns in that proceeding.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1  Opposition to Plaintiffs' counsel's ill-considered efforts to pursue post-judgment

2  collection proceedings against JBIC and other foreign sovereigns and international

3  organizations.

4       JBIC respectfully requests that the Court deny Plaintiffs' counsel's motion

5  for assignment as fatally defective and permanently excuse JBIC from any further

6  involvement in this proceeding.  Because JBIC has sovereign immunity, this Court

7  is without subject matter jurisdiction and must dismiss this proceeding.  *Auster v.*

8  *Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.D.C. 2008) (where a defendant has

9  sovereign immunity, federal courts lack subject matter jurisdiction and "must

10  dismiss the case").  JBIC's filing of the instant opposition is not a waiver of its

11  rights, including its sovereign immunity.  All of JBIC's rights and defenses are

12  expressly reserved.

13       **II.     PRELIMINARY STATEMENT**

14       In 1999, JBIC was established by statute (Japanese Diet Law No. 35, 1999,

15  "Japan Bank for International Cooperation Law," or "JBIC Law") and formed

16  through the Japanese Government's merger of the Japan Export-Import Bank

17  ("ExIm Bank") and the Overseas Economic Cooperation Fund ("OECF") to

18  consolidate the Japanese Government's foreign trade and development aid efforts

19  and policies.  The Japanese Government exclusively provides JBIC's capital, and

20  Japanese laws regulate its budget and operations.  JBIC is under the direct control

21  of the Japanese Minister of Finance and the Japanese Minister of Foreign Affairs.

22       The main purpose of the institution is to promote economic cooperation

23  between Japan and developing countries by providing resources to foreign

24  investments and by fostering international commerce.  It also has a major role in

25  promoting Japanese exports and imports and Japan's development assistance

26  activities abroad.  The core functions of the offices that JBIC maintains in the

27  United States (located in Washington, D.C. and New York City) are to coordinate

28  with U.S. and international agencies to further Japanese foreign aid and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1   development policies and to gather information to assist those efforts. JBIC

2   maintains no office or employees in the State of California. JBIC regularly files a

3   Form 18-K with the United States Security and Exchange Commission. Such

4   forms are reserved for filings by foreign governments and political subdivisions

5   thereof. *See generally,* Affidavit of Rita Salamone and attachment thereto, attached

6   hereto as Exhibit 2.

7          Given the foregoing, under any reasonable construction of the Foreign

8   Sovereign Immunities Act ("FSIA"), JBIC is an "agency or instrumentality of a

9   foreign state" as defined under 28 U.S.C. § 1603(b). The FSIA provides that

10  agencies of a foreign state "shall be immune from the jurisdiction of the courts of

11  the United States." 28 U.S.C. § 1604. JBIC's immunity from the jurisdiction of

12  U.S. courts not only means that it cannot be directly sued, it also means that it is

13  immune from third party discovery and from Plaintiffs' efforts to garnish the assets

14  of the judgment debtors in the underlying litigation. *See, e.g., Stena Rederi AB v.*

15  *Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario*

16  *de Trabajadores Petroleros de la Republica Mexicana, S.C.,* 923 F.2d 380, 392 (5th

17  Cir. 1991) (a foreign state is "entitled to invoke the shield of sovereign immunity,

18  whether against direct claims or an indirect writ of garnishment"). Moreover, any

19  property of JBIC that Plaintiffs seek to garnish pursuant to their judgment against

20  the Defendants in the underlying litigation in the U.S. District Court for the District

21  of Columbia is specifically immune from attachment under Sections 1609-1611 of

22  the FSIA.

23          JBIC has neither explicitly nor impliedly waived its sovereign immunity. As

24  an organ of the Japanese Government, JBIC has an indisputable right to prevent

25  Plaintiffs from using judicial procedures to enmesh it in a dispute in which it has

26  absolutely no role or stake. While JBIC respects the U.S. courts and expresses its

27  deepest sympathies for the plaintiffs' collective loss as a result of a brutal terrorist

28  act, JBIC cannot risk compromising Japanese interests, obligations, foreign

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1  policies, and diplomatic relations with Iran, the United States, or other countries

2  with which it has confidential bilateral relationships.  Accordingly, the Court

3  should deny Plaintiffs' counsel's motion for an assignment of rights as against JBIC

4  and permanently excuse JBIC from further involvement in this matter.

5  ### III.  ARGUMENT

6  **A.    JBIC Is Immune From The Subject Matter Jurisidiction Of U.S. Courts**

7  **Under The Foreign Sovereign Immunities Act.**

8  Enacted in 1976, the FSIA contains a comprehensive set of legal standards

9  governing claims of immunity in every civil action against a foreign state or its

10  political subdivisions, agencies or instrumentalities. The FSIA is the sole source of

11  jurisdiction over a foreign state (including non-party foreign sovereigns) and

12  provides the exclusive basis for proceedings against the property of a foreign state.

13  *See* 28 U.S.C. §§ 1602, *et seq.*  Under the FSIA, a foreign state is presumed to be

14  immune from suit, and is in fact immune unless one or more of the (narrowly

15  construed) exceptions to immunity enumerated in the FSIA apply.  *See* 28 U.S.C.

16  §§ 1604-1607; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *Kelly v. Syria*

17  *Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) (FSIA exempts

18  foreign sovereigns "not only from liability, but also from the costs, in time and

19  expense, and other disruptions attendant to litigation").  None of the enumerated

20  exceptions apply to JBIC in this case such that the court may exercise jurisdiction

21  over JBIC.  *See* 28 U.S.C. § 1605. [2]

22  Plaintiffs' counsel concedes that JBIC is an agency of the Japanese

23  Government, and thus enjoys sovereign immunity from the jurisdiction of U.S.

24  _____

25  [2]    The FSIA was recently amended again on January 28, 2008 to assist victims
of terrorism to assert claims directly against terrorist states.  Newly added
Section 1605A reaffirms the federal private right of action against foreign state

26  sponsors of terrorism, and eliminates obstacles to attaching and executing against

27  assets of these states.  Importantly for foreign states like Japan and entities like

28  JBIC, **Section 1605A does not in any way affect the application of the FSIA to**
**foreign states that are not state sponsors of terrorism.**

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1   Courts.  *See* 28 U.S.C. § 1602, *et seq.*  As none of the enumerated exceptions to

2   sovereign immunity set forth in the FSIA apply to JBIC, neither the U.S. District

3   Court for the District of Columbia nor this Court have jurisdiction to issue or

4   enforce any writ of garnishment or other judicial process to "assign" JBIC's

5   interests in property and assets held anywhere in the world to Plaintiffs in

6   satisfaction of their judgment.  *See* 28 U.S.C. §§ 1605, 1609-11.  JBIC is under no

7   obligation to participate further in either of these proceedings and should be

8   excused on immunity grounds.

9       **1.    <u>Plaintiffs' Counsel Badly Misconstrues the Immunity Provisions of</u>**

10          **<u>the FSIA</u>**

11          Plaintiffs' counsel erroneously asserts that JBIC's "commercial activity" may

12  preempt its assertion of sovereign immunity in this matter under the enumerated

13  exceptions to immunity found in 28 U.S.C. § 1605.  *See* Plaintiffs' Counsel's

14  Memo. in Support of Motion for Assignment ("Assignment Memo.") at 11-14.

15  This is absolutely wrong.  There is an absolute nexus requirement between the

16  Plaintiffs' claim and the alleged "commercial activity."  That nexus is wholly

17  missing in this case.

18          The "commercial activity exception" to the FSIA provides that a foreign state

19  shall not be immune from the jurisdiction of courts of the United States or of the

20  States in any case:

21              [I]n which the action is based upon a commercial activity
22              carried on in the United States by the foreign state; or

23              [U]pon an act performed in the United States in
                connection with a commercial activity of the foreign state
24              elsewhere; or

25              [U]pon an act outside the territory of the United States in
                connection with a commercial activity of the foreign state
26              elsewhere and that act causes a direct effect in the United
                States....

27  28 U.S.C. § 1605(a)(2).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1    The jurisdictional nexus requirement of the FSIA mandates, with respect to

2    the "commercial activities" exception to sovereign immunity, not only that a

3    foreign state's commercial acts be tied to the United States, but that they form the

4    basis of the plaintiff's causes of action. *See, e.g., Goodman Holdings, Inc. v.*

5    *Rafidian Bank*, 26 F.3d 1143, 1146 (D.C. Cir. 1994) (alleged commercial activity

6    must constitute an element of the underlying claim for relief); *Tubular Inspectors,*

7    *Inc. v. Petroleos Mexicanos*, 977 F.2d 180, 184 (5th Cir. 1992) ("[i]solated or

8    unrelated commercial actions ... do not authorize the exception."). Plaintiffs'

9    counsel cannot allege any action by JBIC that brings JBIC within a recognized

10    exception to the FSIA for purposes of jurisdiction in this matter. JBIC was first

11    created by enactment of the Japanese Diet in 1999—sixteen years *after* the events

12    that serve as the basis for Plaintiffs' underlying claims against the Defendants. Any

13    alleged nexus between JBIC's "commercial activity" and Plaintiffs' claim is a legal

14    impossibility.

15    Plaintiffs' counsel also asserts (erroneously) that "[g]iven the repeal of

16    sovereign immunity both the United States and Iran under 28 U.S.C. §

17    1605A(g)(2), these banks [sovereign financial institutions like JBIC] likewise

18    would have lost their immunity from levy and execution if they are holding assets

19    of Iran." *See* Assignment Memo at 13. Iran's loss or waiver of sovereign

20    immunity under the FSIA is of no moment when considering JBIC's immunity.

21    Plaintiffs' attempt to conflate the two sovereigns demonstrates, at best, a

22    fundamental misunderstanding of the concept of sovereign immunity; at worst, it is

23    an intentional misrepresentation of fact and law. Plaintiffs' counsel urges the Court

24    to adopt a "Ready, Shoot, Aim" approach to post-judgment collections by assigning

25    rights over assets and property held by JBIC and other foreign sovereigns *before*

26    the sovereign immunity issue is resolved. If the Court has no jurisdiction over

27    sovereigns or their property in the first instance, the requested assignment of rights

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1   as against JBIC and other foreign sovereigns would be a nullity and a further waste

2   of judicial and third party resources.

3       2.      **JBIC's Assets and Property Are Immune from Execution or**

4              **Attachment**

5       To the extent that Plaintiffs' counsel seek to levy execution against assets or

6   property held by JBIC and other foreign sovereigns and their instrumentalities, the

7   FSIA strictly governs any such effort.  JBIC is not a defendant in the underlying

8   suit, thus the appropriate sections of the FSIA addressing potential exceptions to

9   JBIC's sovereign immunity from execution and attachment are found only in §§

10  1609-1611.

11      Prior to the enactment of the FSIA, "the traditional view of courts in the

12  United States was that property of foreign states was absolutely immune from

13  execution." *Fidelity Partners v. Philippine Exp. & Foreign Loan Guar. Corp.*, 921

14  F. Supp. 1113, 1117 (S.D.N.Y. 1996).  The FSIA "codified this practice by

15  establishing a general principle of immunity for foreign sovereigns from execution

16  of judgments . . . ." *Autotech Technologies LP v. Integral Research & Development*

17  *Corp.*, 499 F.3d 737, 749 (7th Cir. 2007).  Section 1610 of the FSIA -- which

18  governs the enforcement of judgments -- created exceptions to the traditional

19  immunities granted to the property of foreign states.  *See Fidelity Partners*, 921 F.

20  Supp. at 1117; *Autotech*, 499 F.3d at 749 ("Subsections 1610(a) and (d) provide

21  general exceptions to the immunity of a foreign state from execution of a judgment,

22  while subjection 1610 (b) adds additional exceptions for an instrumentality of a

23  foreign state.")  Section 1610 provides that only property of a foreign state in the

24  United States and "used for a commercial activity in the United States" may be

25  attached or executed upon—and then only if certain conditions are satisfied.  *See* 28

26  U.S.C. §§ 1610(a),(d); *see also Conn. Bank of Commerce v. Rep. of Congo*, 309

27  F.3d 240, 247 (5th Cir. 2002) ("Even when a foreign state completely waives its

28  immunity from execution, courts in the U.S. may execute only against property that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

TECH/613403.1

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

1    meets these two statutory criteria.")   JBIC does not possess or control any assets or

2    property of Iran anywhere in the United States.   Thus, under the plain terms of the

3    FSIA, JBIC is strictly immune from attachment, arrest and execution in U.S.

4    Courts.  *See* 28 U.S.C. § 1609.[3]

5        **3.    The Court Has No Jurisdiction Over Assets and Property Located**

6               **Abroad**

7            There is an equally insurmountable jurisdictional obstacle to garnishment

8    proceedings against foreign sovereigns like JBIC—the Court does not have

9    jurisdiction to order or direct the disposition of assets located abroad.  Plaintiffs'

10   counsel has failed to identify specific property or assets <u>in the United States</u> upon

11   which it is trying to act that satisfies the narrow statutory criteria set forth in

12   Section 1610.  No amount of discovery or aggressive motions practice will

13   ultimately identify any such property in JBIC's possession or custody located in the

14   United States, as any bilateral dealings or relationship between the Japanese and

15   Iranian governments have no nexus with the United States in any regard.  Japan's

16   and JBIC's dealings abroad with other foreign powers is wholly beyond the

17   purview or jurisdiction of U.S. Courts.  No provision of the FSIA or any other U.S.

18   statute authorizes this court to levy execution or attachment of JBIC's assets or

19   property located beyond the borders of the United States.  *See Richmark Corp. v.*

20   *Timber Falling Consultants,* 959 F.2d 1468, 1477 (9th Cir. 1992) (". . . Section

21   1610 does not empower United States courts to levy on assets located outside the

22   United States") (citations omitted); *Fidelity Partners, Inc. v. Philippine Export and*

23

24   [3]      California state and federal courts have ruled that Plaintiffs cannot use Code
     of Civil Procedure Section 708.510 to evade the sovereign immunity because it is
25   clear that "an assignment order [under Section 708.510] may not be issued with
     respect to assets which are immune from execution." *Quaestor Investments, Inc. v.*
26   *The State of Chiapas*, 1997 WL 34618203, at *7 (C.D. Cal. Sept. 2, 1997);
     *Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d
27   1058, 1099-1100 (1990) (denying motion under Section 708.510 as to assets
     immune from execution under the FSIA).
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

TECH/613403.1

- 8 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

1    *Foreign Loan Guarantee Corp.*, 921 F.Supp. 1113, 1119 (S.D.N.Y.1996) ("Under

2    the FSIA, assets of foreign states located outside the United States retain their

3    traditional immunity from execution to satisfy judgments entered in United States

4    courts."); *see also Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, 367 (5th Cir.

5    2004) ("[U]nder § 1610(a) of the FSIA, a court is prohibited from executing against

6    the property of a foreign state unless that property is: (1) in the United States; and

7    (2) used for commercial activity in the United States.").

8          Plaintiffs' counsel's effort to levy upon JBIC for any monies which JBIC

9    may hold for Iran or due Iran, wherever located in the world, is simply not

10   supported by the law.[4]  As the Court lacks jurisdiction to direct the disposition of

11   the assets of foreign sovereigns located abroad, the motion for assignment must be

12   denied with regard to foreign sovereigns like JBIC.  The Court is wholly without

13   subject matter jurisdiction over JBIC and its assets, so JBIC must be excused from

14   any further involvement in this proceeding.  *Ghana Airways Ltd.*, 514 F.3d at 48

15   (where a defendant has sovereign immunity, federal courts lack subject matter

16   jurisdiction and "must dismiss the case").

17   **B.     The Court Has No Personal Jurisdiction Over JBIC**

18         To initiate an action, one must establish both subject matter and personal

19   jurisdiction.  In the Introduction section of the Assignment Memo, Plaintiffs'

20   counsel asserts that Plaintiffs have docketed the underlying judgment in this

21   judicial district for purposes of levy and execution upon various garnishees, "all of

22   whom have addresses located in this district herein."  *See* Assignment Memo. at 1.

23   That statement is false.  JBIC does not have an office in this judicial district, nor

24   anywhere in the State of California.  JBIC maintains no address or registered agent

25   _____

26   [4]     To the extent the Motion for Assignment seeks to attach Iranian assets, under
     the FSIA it cannot attach any such assets located outside of the United States.  To
27   the extent it attempts to attach any assets of JBIC, of course, it should be denied for
     the additional reason that JBIC is not a judgment debtor and does not owe anything
28   to Plaintiffs.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                          - 9 -                    OPPOSITION TO MOTION FOR
                                                                  ASSIGNMENT OF RIGHTS
                                                          CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1    in the State of California.  Plaintiffs' proof of service show that the motion was

2    mailed to JBIC at their Washington, D.C. office.  Plaintiffs make no effort

3    whatsoever to demonstrate how JBIC has sufficient contacts with the State of

4    California to warrant this Court's personal jurisdiction over JBIC.

5        Moreover, there is also no personal jurisdiction over JBIC pursuant to the

6    clear language of the U.S. Code.  The FSIA (28 U.S.C. §1602, *et seq.*) and 28

7    U.S.C. §1330 provide the statutory authorization for courts to exercise subject

8    matter and personal jurisdiction over foreign states.  Section 1330(a) grants federal

9    district courts original subject matter jurisdiction over actions involving foreign

10    states when the state is not entitled to immunity, and Section 1330(b) defines when

11    courts have personal jurisdiction over foreign states.[5]  Thus, personal jurisdiction,

12    like subject-matter jurisdiction, exists only when one of the exceptions to foreign

13    sovereign immunity in 28 U.S.C. §§ 1605-1607 applies.  If none of the exceptions

14    to sovereign immunity set forth in the FSIA applies, the Court lacks both statutory

15    subject matter jurisdiction <u>and</u> personal jurisdiction over the sovereign.  *See*

16    *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n. 5 (1983) (subject

17    matter jurisdiction and personal jurisdiction each turn on application of the

18    substantive provisions of the FSIA).  As none of the enumerated exceptions to

19    immunity set forth in the FSIA apply to JBIC, this Court has neither subject matter

20    nor personal jurisdiction over JBIC.

### IV.    CONCLUSION

22        Neither the Japanese Government nor its agencies or instrumentalities have

23    anything whatsoever to do with the Plaintiffs' tragic loss.  Plaintiffs' counsel's

24    efforts to draw JBIC into this litigation (both in the District of Columbia and in this

25    ancillary proceeding) to seek an assignment of rights that would purportedly allow

26

27  [5]    "Personal jurisdiction over a foreign state shall exist as to every claim for
28    relief over which the district courts have jurisdiction under subsection (a) where
service has been made under section 1608 of this title."  28 U.S.C. § 1330(b).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

1   them to attach properties and assets that are neither sited in this judicial district nor

2   are in any way within the ambit of this Court's jurisdiction, raises serious issues in

3   connection with the sovereignty of Japan and its rights under U.S. and international

4   law.  As an instrumentality of a foreign sovereign, JBIC is immune from Plaintiffs'

5   counsel's post-judgment collection efforts.  As the Court has no jurisdiction over

6   JBIC or its assets, the result is clear.  To put an end to this wasteful and misguided

7   effort, the Court should promptly deny Plaintiffs' motion for assignment of rights,

8   direct Plaintiffs' counsel to cease and desist all collection efforts against JBIC, and

9   permanently excuse JBIC from any further involvement in this matter.

10

11  Dated:  June 9, 2008

12                                              Respectfully submitted,

13                                              ARENT FOX LLP

14

15                                              By:  /s/ Jerrold Abeles
16                                                  JERROLD ABELES
                                                    ROBERT C. O'BRIEN
17

18                                              *Of counsel*

19                                              James H. Hulme
                                                Stewart S. Manela
20                                              Matthew M. Wright
                                                Arent Fox LLP
21                                              1050 Connecticut Avenue, NW
                                                Washington, DC 20036-5339
22
                                                Attorneys for Japan Bank for
23                                              International Cooperation

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION FOR
ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

TECH/613403.1

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

DEBORAH D. PETERSON, Personal )
Representatives of the Estate of James C. )
Knipple (Dec.), et. al., )
                   )
       Plaintiffs, )
                   )
vs. )
                   )
ISLAMIC REPUBLIC OF IRAN. et al., )
                   )
       Defendants. )
                   )

Consolidated Civil Actions:
01-2094 (RCL)
01-2684 (RCL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER AS SUPPLEMENTAL REMEDY PURSUANT TO F.R.C.P. 69(a)(1), AND UNDER RULE 66 OF THE FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 754 AND 28 U.S.C. § 1692**

## TABLE OF CONTENTS

**PAGES:**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.  THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A

CIVIL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III. LEVIED BANKS ARE NOT SUBJECT TO ABSOLUTE IMMUNITY . . . . . . . . . . -6-

    A.   FOREIGN BANKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
    B.   INTERNATIONAL BANKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

IV.  STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENT . . . -13-

V.   POWERS AND DUTIES OF THE RECEIVER . . . . . . . . . . . . . . . . . . . . . . . . -17-

VI.  RECEIVERS WOULD STEP INTO THE SHOES OF IRAN AND COMPEL AN
OUTCOME AVOIDING AN ADJUDICATION OF SOVEREIGN IMMUNITY . . . -20-

VII. PROPOSED RECEIVERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

VIII. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

i

## TABLE OF AUTHORITIES

**CASES:**                                                                                          **PAGES:**

*American Capital Investments etc.*

      98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Aviation Supply Corporation vs. R.S.B.I. Aerospace*

      999 F.2d 314 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Estate of Margaret Bonham*

      817 A.2d 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Federal Trade Commission vs. Productive Marketing etc.*

      136 F. Supp.2d 1096 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*In re Alan BERNARD, Linda Bernard, Debtors*

      96 F.3d 1279 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*In re ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION*

      910 F.Supp. 1470 (D.Hawai'i 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Mendaro vs. The World Bank*

      717 F. 2d 610 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

      Rule 66 of the Rules of Procedure for the District of Columbia law . . . . . . . . . -13-, -16-

*SEC vs. Bilzerian*

      127 F.Supp.2d 232, 233 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Securities & Exchange Commission and Deborah Meshulam, Appellants, vs. Paul A. Bilzerian, et al.*

      378 F.3d 1100 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Securities and Exchange Commission vs. American Capital Investments etc.*

    98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Securities and Exchange Commission vs. Loving Spirits Foundation etc.*

    392 F.3d 486 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Wood vs. Noyes*

    279 F.321 (9th Cir. 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Wuliger vs. Owens*

    365 F.Supp.2d 838 (N.D. Ohio. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

## STATUTES:

*Federal:*

28 United States Code

    § 754 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

    § 1605(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    § 1605A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

    § 1605A(a)(1) & (g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

    § 1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

Federal Rules of Civil Procedure

    69(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Other:*

*Federal Practice and Procedure 2d* by Wright & Miller, Vol. 12. § 2983. pages 22-23 .... -15-

The World Bank is set forth in its Articles. as follows:

      **SECTION 3. Position of the Bank with Regard to Judicial Process** ........... -8-

The immunity of the IFC is as follows:
      **SECTION 3. *Position of the Corporation with Regard to Judicial Process*** ....... -8-

The immunity of The International Monetary Fund is as follows:

      **Section 3. Immunity from Judicial process** ................................. -8-

Foreign Sovereignty Immunities Act ................................. -2-. -3-. -4-, -23-

iv

## I. INTRODUCTION.

Plaintiffs filed this action to seek redress for the bombing of the Marine Barracks in

Beirut, Lebanon in 1983. Suit was filed on 10/3/01 and service of process was effectuated, in

which Iran defaulted. This court conducted a number of hearings and entered a series of

Opinions, including the MEMORANDUM OPINION of 5/30/03. (Docket No. 24) Judge

Lamberth wrote in that Opinion, as follows:

> "These actions arise from the most deadly state-sponsored terrorist attack made
> against American citizens prior to September 11, 2001: the Marine barracks
> bombing in Beirut, Lebanon on October 23, 1983. In the early morning hours of
> that day, 241 American servicemen were murdered in their sleep by a suicide
> bomber. On that day, an unspeakable horror invaded the lives of those who
> survived the attack and the family members whose loved ones had been stolen
> from them. The memory of that horror continues to this day." (Exh. A, ¶ 1.)+

Thereafter on 9/7/07, the court entered a second MEMORANDUM OPINION and

JUDGMENT (Docket Nos. 228 & 229) and the court granted judgment on behalf of Plaintiffs in

the amount of $2,656,944,877.00. Individual parties in fact appealed, but these appeals were

dismissed without prejudice by an order from the Court of Appeal, District of Columbia on

2/23/08. The court stated as follows:

> "C.    The Attack
>       As testified by Mahmoud, after the meeting in Baalbek, a 19-ton truck was
> disguised so that it would resemble a water delivery truck that routinely arrived at
> the Beirut International Airport, which was located near the U.S. Marine barracks
> in Beirut, and modified the truck so that it could transport an explosive device.
> On the morning of October 23, 1983, members of Hezbollah ambushed the real
> water delivery truck before it arrived at the barracks. An observer was placed on a
> hill near the barracks to monitor the operation. The fake water delivery truck then
> set out for the barracks, driven by Ismalal Ascar, an Iranian.
>
>       At approximately 6.25 a.m. Beirut time, the truck drove past the Marine
> barracks. As the truck circled in the large parking lot behind the barracks, it
> increased its speed. The truck crashed through a concertina wire barrier and a wall

-1-

of sandbags, and entered the barracks.[21] When the truck reached the center of the barracks, the bomb in the truck detonated.

The resulting explosion was the largest non-nuclear explosion that had ever been detonated on the face of the Earth. The force of its impact ripped locked doors from their doorjambs at the nearest building, which was 256 feet away. Trees located 370 feet away were shredded and completely exfoliated. At the traffic control tower of the Beirut International Airport, over half a mile away, all of the windows shattered. The support columns of the Marine barracks, which were made of reinforced concrete, were stretched, as an expert witness described, "like rubber bands," the explosion created a crater in the earth over eight feet deep. The four-story Marine barracks was reduced to fifteen feet of rubble.

The force of the explosion was equal to between 15,000 to 21,000 pounds of TNT. FBI and ATF explosives experts both concluded that the explosive material was "bulk form" pentaerythritol tetranitrate, or PETN. Danny A. Defenbaugh, the on-scene FBI forensic explosive investigator, testified as to his findings:

> [W]e were able to, through the forensic residue analysis, identify the explosive material, and it was unconsumed particles of PETN
> . . . .
>      PETN is a primary explosive that is manufactured commercially and primarily for U.S. military purposes. It is a primary explosive that is used in detonating cord. Detonating cord is nothing more than a plastic and fiber-wrapped cord that has the PETN, which looks like a white power . . . that is then extruded inside that cord . . . .
>      In this case, it was not [consumed]: we found unconsumed particles of PETN. That was just like we had found also in the American Embassy bombing. What that means is that it had to have been from a bulk explosive, it had to have been from a manufacturer." (P. 16 of 30)

## II.  THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A CIVIL JUDGMENT.

Prior to approximately January 2008, a Judgment Creditor of a foreign state such as Iran

was greatly hobbled in any attempt by which to recover, based upon the Foreign Sovereignty

Immunities Act ("FSIA") and various exceptions, in which, e.g., blocked assets might be subject

-2-

19

to levy and execution. Unfortunately, blocked assets were few and far between, making collection of any judgment like this extremely problematical, at best.

Congress, recognizing that the Marines needed to be compensated, ultimately enacted an amendment of the FSIA designed to facilitate collection through enactment of 28 U.S.C. § 1605A, which has now been incorporated into FSIA. The parts of that new section permitting meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

> "(a) IN GENERAL. --
> "(1) NO IMMUNITY.  – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."
>
> "(g) PROPERTY IN CERTAIN ACTIONS –
> "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –
> "(A) the level of economic control over the property by the government of a foreign state;
> "(B) whether the profits of the property go to that government;
> "( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> "(D) whether that government is the sole beneficiary in interest of the property; or
> "(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

-3-

"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Accordingly, the FSIA no longer serves as a bar, and all assets of Iran are now subject to clear levy and execution.

Plaintiffs are informed and believe that the LEVIED BANKS described below hold Iranian assets, predicated upon PR releases, website information, and other publicly available information. These funds consist of consummated loan commitments, lines of credit, funds available for disbursement, credit and trade facilities, and other commercial banking commitments entitling Iran to money. These banks in question are the following:

JAPAN BANK FOR INTERNATIONAL COOPERATION

THE WORLD BANK

INTERNATIONAL FINANCE CORPORATION

INTERNATIONAL MONETARY FUND

IMPORT EXPORT BANK OF KOREA

IMPORT EXPORT BANK OF INDIA

(Hereinafter "LEVIED BANKS.")

These accounts are now the subject of active levy and execution through the United States Marshal, District of Columbia.

Why this Receivership motion? Why not let the levy and execution process continue to fruition? Isn't this remedy redundant or unnecessary? What could the receiver undertake different

-4-

21

from the result to be achieved by the Plaintiffs through standard garnishment?

The answer is straightforward. Iran and the LEVIED BANKS have entered into line of credit. trade credit, deposit. letter of credit and other commercial relationships in which Iran as customer of the bank has. presumably. standard legal recourse in the event that the LEVIED BANK breaches the agreements, such as the failure to honor a check. line of credit. failure to pay on a letter of credit. failure to make a refund or any other breach undertaken by the LEVIED BANK in which Iran might well have recourse.  Iran presumably entered into the relationship with the LEVIED BANK in which Iran now maintains the full range of civil enforcement rights.

The purpose of this receiver motion is to oust Iran from any of the banking relations with the BANK and replace the Receivers as the owners and holders of the LEVIED BANK ACCOUNTS.  The Receivers standing in the shoes of Iran could and would direct the LEVIED BANKS to pay-over. surrender and hand over all funds held by the LEVIED BANKS to the Plaintiffs.  While the LEVIED BANKS might well claim sovereign immunity. which these Plaintiffs dispute. in part or in whole, or any other related defense. the LEVIED BANKS presumably would not be able to mount that defense against Iran.  The LEVIED BANKS might well attempt to fend off the current onslaught of levies by the Plaintiffs, but the LEVIED BANKS could not defend in good faith or otherwise. any directive by Iran to dispose of the funds held in any of the accounts.  Therefore, Plaintiffs can moot any claim asserted by any of the LEVIED BANKS. based on sovereign immunity, if the LEVIED BANKS follow a directive from Iran to pay the funds held by the LEVIED BANK to and in favor of the Plaintiffs.  This is not an end run around defenses of partial or qualified qua sovereign immunity, but a post-judgment solution rendering any claim of sovereign immunity moot.

-5-

22

This doctrine of mootness now becomes paramount in that Plaintiffs anticipate that many of the LEVIED BANKS might be sovereign entities, and therefore, unable or unwilling to cooperate with Plaintiffs in responding to the levy by claiming partial or qualified sovereign immunity, creating a multiplicity of litigation, enormous expense, and significant consumption of the judicial time, effort and energy. On the other hand, if Iran appeared, or appeared through its surrogate, the receivers, and directed the LEVIED BANKS to pay Plaintiffs, without condition or reservation from the funds on hand, the LEVIED BANKS would lose standing to assert their own sovereign immunity because the LEVIED BANKS would be acting under the order, direction and demand of Iran, or Iran's successor. Sovereign immunity asserted by the LEVIED BANKS would vanish as a barrier if the LEVIED BANKS were instructed to pay Plaintiffs by receivers as the owner and holder of Iran's rights in and to the accounts, rights to payment of money, general intangible and other contractual rights. In short, if Iran directed the LEVIED BANKS to pay Plaintiffs, the LEVIED BANKS would not be able to assert sovereign immunity as a defense. Therefore, this motion replaces Iran with the three receivers.

### III. LEVIED BANKS ARE NOT SUBJECT TO ABSOLUTE IMMUNITY.

### A.    FOREIGN BANKS.

Japan Bank for International Cooperation ("JBIC"), Import Export Bank of Korea, and Import Export Bank of India are all presumably agencies or instrumentalities of their respective sovereigns. They are not entitled to absolute sovereign immunity, but only limited sovereign immunity under 28 U.S.C. § 1605(a)(2), which provides as follows:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> (1) in which the foreign state has waived its immunity either explicitly or by implication.

-6-

notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver:

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

The typical factual issue, therefore, for these LEVIED BANKS is the nature and extent of their commercial activities, a matter typically the subject of potential litigation and discovery, matters of which are not necessarily before this court based on this motion. However, Iran in consummating large dollar loans, lines of credit, letters of credit, trade credits, deposits, credit facilities in favor of its own banks, reconstruction loans and the like certainly *would not wish* to face these difficult, time-consuming, protracted and very expensive burdens, particularly if Iran was forced to litigate these issues, for example, in the United States District Court, District of Columbia, which would attract about $5,000,000,000 of judgment liens from Iranian Judgment Creditors. Iran would have obtained a waiver of such immunity, less Iran enter into illusory transactions placing into jeopardy its own economy.

Likewise, Iran certainly would not want to litigate these alleged defenses of sovereign immunity with these Foreign Banks in their own country for fear of being "home-towned.["] which, without besmirching any of the Foreign Banks at issue, would be a realistic concern.

For Iran, the prospect of litigating sovereign immunity would destroy the economic value of the relationship with these Foreign Banks, leading to the clear and unmistakable inference that Iran obtained a complete waiver. The receivers would stand in the shoes of Iran and obtain

---

[1] A colloquialism well known to out-of-town attorneys trying cases in rural jurisdictions.

-7-

24

payment from these Foreign Banks.

**B.    INTERNATIONAL BANKS.**

The World Bank (aka The International Bank For Reconstruction And Development),

International Finance Corporation (part of The World Bank), and The International Monetary

Fund all have partial sovereign immunity.  The immunity of The World Bank is set forth in its

Articles, as follows:

> **SECTION 3. Position of the Bank with Regard to Judicial Process**
> Actions may be brought against the Bank only in a court of competent jurisdiction
> in the territories of a member in which the Bank has an office, has appointed an
> agent for the purpose of accepting service or notice of process, or has issued or
> guaranteed securities. No actions shall, however, be brought by members or
> persons acting for or deriving claims from members. The property and assets of
> the Bank shall, wheresoever located and by whomsoever held, be immune from
> all forms of seizure, attachment or execution before the delivery of final judgment
> against the Bank.

The immunity of the IFC is as follows:

> **SECTION 3.** *Position of the Corporation with Regard to Judicial Process*
> Actions may be brought against the Corporation only in a court of competent
> jurisdiction in the territories of a member in which the Corporation has an office,
> has appointed an agent for the purpose of accepting service or notice of process,
> or has issued or guaranteed securities. No actions shall, however, be brought by
> members or persons acting for or deriving claims from members. The property
> and assets of the Corporation shall, wheresoever located and by whomsoever held,
> be immune from all forms of seizure, attachment or execution before the delivery
> of final judgment against the Corporation.

The immunity of The International Monetary Fund is as follows:

> **Section 3. Immunity from Judicial process**
> The Fund, its property and its assets, wherever located and by whomsoever held,
> shall enjoy immunity from every form of judicial process except to the extent that
> it expressly waives its immunity for the purpose of any proceedings or by the
> terms of any contract.

These are multi-billion dollar loans, enabling Iran to make multi-billion dollar commitments, and prudent business experience would suggest that Iran, in making billion dollar commitments, would necessarily demand redress, in the event of a default without, again, the unbelievable burden of litigating any of these factual issues. Iran would have been unwise to leave itself vulnerable to a cataclysmic financial default without clear unfettered redress and without the barrier of partial or qualified sovereign immunity and the ensuing burden of litigation. From time to time, litigants have faced difficult battles in seeking redress against the International Banks. See *Mendaro vs. The World Bank,* 717 F.2d 610 (DC Cir. 1983) in which an employee was barred by partial sovereign in seeking redress for an employment related grievance, and a case certainly known to Iran for fear of facing the same dilemma.

In the current battle between the Plaintiffs and the LEVIED BANKS, sovereign immunity is now taking center stage. See JBIC's current filings (Docket Nos. 273 & 274), potentially the World Bank, International Monetary Fund, and International Finance Corporation (Docket No. 269) who are raising issues of sovereign immunity in which the LEVIED BANKS claim, or might claim that they are not subject to levy regardless of the fact that the bank might hold billions of dollars of Iranian assets, and in which Iran no longer is entitled to any sovereign immunity itself. A receiver in the place of Iran would promptly resolve any assertion of sovereign immunity by instructing the LEVIED BANKS to pay the Plaintiffs. Needless to say, Plaintiffs do not concede that any of these LEVIED BANKS are entitled to sovereign immunity, whether partial, qualified, or absolute. The granting of this motion on an expedited basis would end needless and fracas litigation when the solution is at hand, now raised by JBIC who seeks, no less, an expedited hearing on its own motion on the issue of sovereign immunity. Granting this

-9-

motion for the appointment of a receiver of Iran's relationship with JBIC would render

superfluous JBIC's claims of partial sovereign immunity.

Conceivably, of course, the funds might be "held" in an account which is offshore, such

as in the headquarters of the Bank, such as Tokyo etc. The appointment of a receiver would

resolve that issue in that the receiver takes possession of the funds as part of an in rem process,

succeeding to the rights of Iran for the funds themselves. In a fairly analogous case entitled *In re*

*ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION*, 910 F.Supp. 1470

(D.Hawai'i 1995), the court held that funds in an overseas account of a Swiss bank were subject

to U.S. jurisdiction based on the connection of the Swiss bank through California branches as

follows:

> **"B. Court's Implied Power to Assign**
> First, implicit in the power to enforce a judgment is the power to use all legal
> means to provide relief to judgment creditors in an appropriate case. Assignment
> of funds is one of those means.
> See *Chicago Pneumatic Tool Co. v. O.V. Stonestreet, et al.*, 107 F.R.D. 674
> (S.D.W.Va.1985). In that case the plaintiff requested that the defendant be
> required,
>> "to convey or assign to the United States Marshal for the Southern
>> District of West Virginia, such money, bank notes, securities,
>> evidences of debt, other personal property, chooses in action or
>> other intangible personal property as may be ordered by the said
>> commissioner for enforcement and payment of the judgment
>> including interest and costs, outstanding in the above matter." *Id.* at
>> 676. [4]
> Despite defendant's arguments about limitations on the power of magistrate
> judges, not here relevant, the Court concluded that in entry of any order requiring
> the debtor to transfer property to the creditor, the magistrate would only facilitate
> the District Court's inherent power to enforce Plaintiffs' judgment.
> Similarly this Court has the inherent power to order the Estate to assign its rights,
> title and interest to the Swiss bank accounts to Plaintiffs, given the uncontroverted
> evidence that those assets belong to the debtor Estate.
> An equally compelling basis for ordering the assignment is FRCP 69(a), also
> relied upon in *Chicago Pneumatic, supra.*

-10-

## C. FRCP 69(a)

Federal Rule of Civil Procedure 69(a) provides.

> "Process to enforce a judgment for the payment of money shall be a
> writ of execution, *unless the court directs otherwise.* The
> procedure on execution. in proceedings supplementary to and in
> aid of a judgment, and in proceedings on and in aid of execution
> shall be in accordance with the practice and procedure of the state
> in which the district court is held. existing at the time the remedy is
> sought. except that any statute of the United States governs to the
> extent that it is applicable." F.R.C.P. 69(a) (emphasis by the court)

In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La, Inc.*, 1993 WL 414664, 1993
U.S.Dist. LEXIS 14450 (E.D.La.1993). plaintiff moved the Court to enter an order
directing the sale of the rights and interest of the Partnership in a case where judgment
had been entered a year earlier. The District Court looked to Louisiana law as the law of
the state in which the action occurred. Applying the appropriate statute [3]. the Court
ordered judicial sale of the property by the United States Marshal. Similarly. in *Moseley
Assoc. v. Brown,* 1988 WL 68149. 1988 U.S.Dist. LEXIS 5662 (S.D.N.Y.1988). the
district court looked to state law. then New York Debtor and Creditor Law, to order
defendants to satisfy Plaintiffs' judgment out of funds which had been transferred to them.
The question here is what state's law applies to enforcement mechanisms and thus to
whether assignment may be ordered.

In this case. the judgment was entered and an order was signed transferring the
matter to other districts for the purpose of execution. The only district in which a
transfer was sought and the judgment registered was the Central District of
California. the location of branches of the Swiss banks holding the money here at
issue. The Swiss banks branches are located in Los Angeles. Plaintiffs are
conducting judgment debtor discovery in California. and all discovery disputes are
before this Court in the Central District of California. Under these circumstances.
California law should apply since the matter is now in California, solely for the
purpose of executing the judgment. Moreover. Hawaii law is consistent with this
disposition.

## D. California Law

California law on assignment of right to payment in enforcement of a judgment
provides.

> "Except as otherwise provided by law, upon application of the judgment
> creditor on noticed motion, the court may order the judgment debtor to
> assign to the judgment creditor or to a receiver appointed pursuant to
> Article 7 (commencing with Section 708.610) all or part of a right to
> payment due or to become due. whether or not the right is conditioned on
> future developments. ..." CAL.CIV.PROC.CODE section 708.510 (West
> 1987).

Case law interpreting this statute has consistently upheld a courts' power to
require debtors to assign their interests in debts or other property. See. e.g..

-11-

28

*Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian,* 218 Cal.App.3d 1058. 267 Cal.Rptr. 457 (6 Dist.1990). *See generally,* 8 Witkin. Cal.Procedure (3d ed. 1985), Enforcement of Judgments, §§ 299 and 300: *Civil Procedure: enforcement of judgments.* 14 Pacific L.J. 397, 431 (1983). Similarly, here CCP 708.510 and its case law exegesis permit an order of assignment of the Estate's interests in the Swiss accounts for the benefit of the judgment creditors. class action Plaintiffs.

**III. CONCLUSION**

For all of the above reasons. the defendant Estate by Imelda Marcos and Ferdinand Marcos. Jr. are ordered to forthwith execute an assignment of the funds in the respective Swiss banks in favor of the class and individual Plaintiffs. In default thereof the clerk of the court is ordered to execute the assignment on behalf of the judgment debtor."

The appointment of a receiver is similar to an assignment in compelling the assignment of the debtor's assets to a third party. In an assignment setting the assignment order is directly to the judgment creditor to permit the judgment creditor the opportunity to collect. In a receivership setting the asset is transferred to the receiver who is charged with the duty to liquidate the asset.

See *Federal Trade Commission vs. Productive Marketing etc.,* 136 F. Supp.2d 1096 (C.D., Cal. 2001). at pages 105 to 107 in which the court stated as follows:

"The FTC further asserts that the court's power to enjoin ACCPC "is derived from its inherent authority to fashion effective relief." and that such power is broader than the authority conferred by Rule 65(d). FTC Supp. Brief. at 2-3. That federal courts possess broad authority "to issue a variety of 'ancillary relief' measures in [enforcement] actions brought by [federal agencies]" cannot be gainsaid. SEC v. Wencke, 622 F.2d 1363. 1369 (9th Cir. 1980): *see also SEC v. Universal Financial.*760 F.2d 1034, 1038 (9th Cir. 1985) (District court's power to enter a blanket receivership stay "is broader than the court's authority to grant or deny injunctive relief under Fed.R.Civ.P. 65."). *"The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." Wencke, 622 F.2d at 1371.*
*****
*An order issued to preserve the assets of a receivership estate is a classic example of an in rem injunction. Cf. Wencke, 622 F.2d at 1369 (the district court's power "to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the ... action.").*
*****.

-12-

*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F.Supp. 369, 372 (D.Colo.1995); *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) (**"***There is substantial jurisdictional basis for allowing the federal court receiver to have and keep custody and control of the assets in question, and to obtain the relief needed to implement that custody.***"**); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions."); *Paccione*, 964 F.2d at 1275 (affirming criminal contempt sanctions against "a person who interfered with the *res*, the disposition of which the court had specifically restricted"). (Emphasis added)

Under traditional principals of federal equity receivership, the receivers would subsume

the entirety of Iran's ownership in any of the accounts and other rights held by the LEVIED

BANK, and ultimately take control over the fracas litigation by and between the LEVIED

BANKS and the Plaintiffs.

## IV.  STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENT.

The starting point of enforcement is found in F.R.C.P. 69(a)(1), which provides as

follows:

> Rule 69. Execution
> (a) In General.
> (1) Money Judgment: Applicable Procedure.
> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Rule 66 of the Rules of Procedure for the District of Columbia law provides for receivers

as follows:

> "Rule 66. Receivers appointed by the Superior Court
> An action wherein a receiver has been appointed shall not be dismissed except by order of the Court. The practice in the administration of estates by receivers or by other similar officers appointed by the Court shall be in accordance with the practice heretofore followed in the United States District Court for the District of Columbia or provided by the Rules promulgated by this Court. In all respects the

-13-

action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these Rules."

The Comment provides as follows:

> "Identical to *Federal Rule of Civil Procedure 66* except for the change in title and change in the designation on prior practice to be followed. The insertion of reference to practice heretofore followed in the United States District Court for the District of Columbia is designed to insure maximum possible continuity in the handling of District of Columbia receivership matters. (Amended May 9, 1975)

District of Columbia law would be consistent with federal law in interpreting identical federal rules. See *Estate of Margaret Bonham*, 817 A.2d 192 at page 195.

The court has broad discretion in appointing a receiver. In *Aviation Supply Corporation vs. R.S.B.I. Aerospace*, 999 F.2d 314 (8ᵗʰ Cir. 1993) at pages 316 to 317, the court stated as follows:

> "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. See Fed.R.Civ.P. 66 and Advisory Committee's Note; New York Life Ins. Co. v. Watt West Inv. Corp., 755 F.Supp. 287, 289-92 (E.D.Cal.1991); Midwest Sav. Ass'n v. Riversbend Assocs. Partnership. 724 F.Supp. 661 (D.Minn.1989); 12 C. Wright & A. Miller, Federal Practice and Procedure § 2983. A *receiver is an extraordinary equitable remedy that is only justified in extreme situations. Although there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.* See Consolidated Rail Corp. v. Fore River Ry., 861 F.2d 322, 326-27 (1st Cir.1988); Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 826 (3d Cir.1959); Bookout v. Atlas Fin. Corp., 395 F.Supp. 1338, 1342 (N.D.Ga.1974), aff'd. 514 F.2d 757 (5th Cir.1975). We review the decision to appoint a receiver for abuse of discretion.
>
> In this case, appointment of the receiver was sought by ASC, a judgment creditor. A receiver may be appointed "to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment." Leone Indus. v. Associated Packaging, Inc., 795 F.Supp. 117, 120 (D.N.J.1992). See also Levin v. Garfinkle, 514 F.Supp. 1160, 1163

-14-

(E.D.Pa.1981)."

Receivers are appointed for purposes of taking possession and control. and ultimately

liquidating the property of a Judgment Debtor. See *Federal Practice and Procedure 2d* by

Wright & Miller, Vol. 12. § 2983. pages 22-23 [multiple citations omitted]. Receivers are

traditionally appointed in a supplemental proceeding when the interest of equity suggests such a

result, specifically. when property would be difficult to reach in any other traditional manner.

See *Wood vs. Noyes*. 279 F.321 (9th Cir. 1922). Therefore. this court has the power to appoint a

receiver as a general equitable matter. and does appoint receivers from time to time.

This is found in such cases as *Securities & Exchange Commission and Deborah*

*Meshulam, Appellants, vs. Paul A. Bilzerian, et al.*. 378 F.3d 1100 (D.C. Cir. 2004), in which

the trial court authorized the appointment of a receiver for "purposes of identifying, marshaling.

receiving and liquidating [Bilzerian's assets]. See *SEC vs. Bilzerian,* 127 F.Supp.2d 232, 233

(D.C. Cir. 2000). and affirmed.  In that case. the receivership authorized the receiver to take and

maintain complete and exclusive control, possession and custody of Bilzerian's assets wherever

situated and to liquidate any interest in any asset held by anyone on behalf of Bilzerian, including

but not limited to, the initiation and prosecution of litigation against others to recover such assets,

but not limited to. the initiation and prosecution of litigation against others to recover such assets,

or interest in assets on behalf of the receivership estate.  See page 233.  This is, of course. a

classic receiver.  In *Securities and Exchange Commission vs. Loving Spirits Foundation etc.*,

392 F.3d 486 (D.C. Cir. 2004). the court stated as follows:

> "That court ordered Bilzerian to disgorge over $62 million. representing profits
> from his fraudulent activities and prejudgment interest. SEC v. Bilzerian. 814
> F.Supp. 116 (D.D.C.1993) (ordering disgorgement of profits). *aff'd* 29 F.3d 689

-15-

(D.C.Cir. 1994): *SEC v. Bilzerian*, No. 89-1854, 1993 WL 542584 (D.D.C. June 25. 1993) (setting value of interest). Seven years later, with the judgment still unpaid. the district court found Bilzerian in contempt of the disgorgement order. *SEC v. Bilzerian*. 112 F.Supp.2d 12 (D.D.C.2000). *aff'd* 75 Fed.Appx. 3 (D.C.Cir. 2003). established a receivership estate *"for the purpose of identifying, marshaling, receiving, and liquidating his assets."* *SEC v. Bilzerian*, 127 F.Supp.2d 232. 232 (D.D.C.2000), appointed appellee Deborah Meshulam as receiver. *id.*, and sent Bilzerian back to prison for continued noncompliance, *SEC v. Bilzerian*, 131 F.Supp.2d 10 (D.D.C.2001). (Emphasis added) (p.488)

Receivers are found in Rule 66, which provides as follows:

"These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order."

The relationship between a bank and its customer is debtor-creditor in which the bank is

the debtor and the customer is the creditor.  See *In re Alan BERNARD, Linda Bernard,*

*Debtors*. 96 F.3d 1279 (9th Cir. 1996). in which the court stated as follows:

"The Bernards did not own money gathering dust in their LEVIED BANK ACCOUNTS. "As between the bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited." Chang v. Redding Bank of Commerce. 29 Cal.App.4th 673. 681. 35 Cal.Rptr.2d 64 (Cal.App.1994) (citation omitted): Crocker-Citizens Nat. Bank v. Control Metals Corp.. 566 F.2d 631, 637 (9th Cir.1977) ("It is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor. Therefore, when funds are deposited, title to those funds passes immediately to the bank.") (citations omitted): see also Barnhill v. Johnson. 503 U.S. 393, 398, 112 S.Ct. 1386, 1389. 118 L.Ed.2d 39 (1992) ("A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance.").

Instead of owning money sitting in their accounts. the Bernards owned claims against their bank. When they withdrew from their accounts, they exchanged debt for money (which, more than incidentally. was more difficult for the Sheaffers to acquire). Thus, when the Bernards made their withdrawals they parted with property. satisfying the Code's definition of transfer. Because they parted with their claims against the bank to hinder the Sheaffers. the Bernards violated §

-16-

727(a)(2)(A). warranting denial of discharge." (Emphasis added) (P. 1283)

The starting point is found under 28 U.S.C. § 754. which provides as follows:

> **§ 754. Receivers of property in different districts**
> A receiver appointed in any civil action or proceeding involving property. real. personal or mixed. situated in different districts shall. upon giving bond as required by the court. be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
>
> Such receiver shall. within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

Furthermore. the receiver's rights are found under 28 U.S.C. § 1692. which provides as follows:

> **§ 1692. Process and orders affecting property in different districts**
> In proceedings in a district court where a receiver is appointed for property, real. personal. or mixed. situated in different districts. process may issue and be executed in any such district as if the property lay wholly within one district. but orders affecting the property shall be entered of record in each of such districts.

## V. POWERS AND DUTIES OF THE RECEIVER.

The court has broad powers to confer upon a receiver as exercised in the *Bilzerian* cases.

Plaintiffs propose that the powers and duties of the receiver are set forth below:

1. For the appointment of a receiver for the purposes of the collection, recovery, and sequestering all of the bank accounts. accounts with any bank. stockbroker, savings and loan. or similar institution, funds held by any bank in any trust or other account. certificates of deposit. time certificates of deposit. lines of credit. letters of credit. credits due Iran. general intangibles

-17-

34

owed by any governmental entity. bank, import export bank which are due and payable to Iran

from the following listed financial institutions, banks, governmental entities. and third parties as

follows:

        JAPAN BANK FOR INTERNATIONAL COOPERATION

        THE WORLD BANK

        INTERNATIONAL FINANCE CORPORATION

        INTERNATIONAL MONETARY FUND

        IMPORT EXPORT BANK OF KOREA

        IMPORT EXPORT BANK OF INDIA

(hereinafter collectively "LEVIED BANKS") due to and in favor of the Islamic Republic of Iran

("Iran") for purposes of payment of the outstanding judgment in the amount of

$2,656.944.877.00 in which funds. monies. credits. deposits. right to payment of money. account

deposits are due from the LEVIED BANKS to and on behalf of Iran. and have been the subject of

service of writs of attachment on judgment. hereinafter collectively "LEVIED BANK

ACCOUNTS."

    2. For an order authorizing. permitting and directing the receiver to make demand upon

all LEVIED BANKS directing all of the LEVIED BANK ACCOUNTS be paid to the receiver up

to and including the amount necessary to satisfy this judgment. plus any and all accruing interest.

costs. and other fees and charges which the court may assess from time to time herein.

    3. For an order restraining. to the extent possible, Iran and all of its agencies and

instrumentalities from any act of interference with the conduct of the receiver herein. an order

prohibiting. restraining. staying and enjoining Iran from taking any action in any court, other than

-18-

this court. by which the action would be to interfere with the conduct of the receiver, either in part or in whole.

    4.  For an order authorizing the receiver to retain counsel or take such other appropriate action by which to effectuate a recovery of the LEVIED BANK ACCOUNTS:  the establishment of one or more bank accounts; the filing of one or more actions in a court of competent jurisdiction, other than this court herein, if necessary: the retention of accountants, auditors or experts. necessary to aid and assist the receiver herein; and such other action which the receiver deems just and appropriate.

    5.  For an order authorizing the receiver to receive any and all monies due Iran based upon any LEVIED BANK ACCOUNTS. an order permitting and authorizing the receiver to authorize the receiver to negotiate a financial disposition. either in part or in whole. of any "LEVIED BANK ACCOUNTS;" and moreover. an order permitting the receiver to settle, resolve. discount. or compromise, any and all claims, of any type or nature. which Iran may have to and against any and all parties.

    6.  For an order permitting the receiver to affix the name of Iran or any government official on any check. draft, money order. or other note or instrument. to cash either in part or in whole. any letter of credit. or instrument. or device thereunder.

    7.  For an order permitting and authorizing the receiver to take such action as if the owner of any LEVIED BANK ACCOUNTS of Iran. and to take such action as may be necessary by which to convert those assets into a sum of money. for purposes of payment. either in part or in whole, of the outstanding judgment.

    8.  For an order continuing the jurisdiction of this court. in which the receiver would be

-19-

required to report from time to time.

9. For an order setting the bond in an amount based upon the court's discretion. and an order permitting and allowing the receiver to incur any and all obligations necessary to perform the duties. but in which such obligations are not the personal liability of the receiver.

10. For an order continuing from time to time this motion. for purposes of determining compliance by Iran with any order. judgment, or decree of this court. and an order permitting the court to refer any matter to a Magistrate Judge. or other subordinate judicial officer for any evidentiary hearing which the court may request from time to time. and/or an order appointing a referee or other fact-finder which may be necessary.

11. Plaintiff proposes the members of the Gavel Group as potential receivers:

A.    EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.    STANLEY SPORKIN. Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.    LOUIS FREEH. Retired United States District Court Judge and Former Director of the Federal Bureau of Investigation.

## VI. RECEIVERS WOULD STEP INTO THE SHOES OF IRAN AND COMPEL AN OUTCOME AVOIDING AN ADJUDICATION OF SOVEREIGN IMMUNITY.

The LEVIED BANKS may well claim sovereign immunity. creating a storm of litigation over a whole host of issues. such as. and including. the entitlement to discovery. the nature and extent of the commercial activity of the bank. and whether the LEVIED BANK is an agency and instrumentality. Without doubt. the parties can battle over these issues creating reams of filings, and years of endless civil litigation. However. if Iran directs payments of funds held by the allegedly soveirgn LEVIED BANKS, the outcome might be substantially different in that

-20-

37

LEVIED BANKS might have no choice but to pay, rendering the strife between the LEVIED

BANKS and the Plaintiffs moot.

Unlike other post-judgment remedies, the appointment of a receiver ousts the judgment

debtor and replaces the judgment debtor with a neutral court-appointed officer. Directly on point

is *Securities and Exchange Commission vs. American Capital Investments etc.*, 98 F.3d 1133

(9th Cir. 1996) at pages 1144 to 1145, in which the court stated as follows:

> "Reebok Int'l v. Marnatech Enter., Inc., 970 F.2d 552, 561-62 (9th Cir.1992) (quoting
> Brown v. Swann. 35 U.S. (10 Pet.) 497, 503. 9 L.Ed. 508 (1836)). Second, the leading
> treatise on the law of receiverships teaches:
>
> *It is generally conceded that a court of equity having custody and control of
> property has power to order a sale of the same in its discretion. The power of
> sale necessarily follows the power to take possession and control of and to
> preserve property, resting in the sovereignty and exercised through courts of
> chancery, or courts having statutory power to make the sale.*
> . . .
> *We turn now to appellants' second and third arguments, which are related--that
> there is no federal common law of receiverships. Consequently, they argue, a
> receiver does no more than "step into the shoes" of the receivership defendant
> under state law and can convey no more title than the defendant possessed.* For
> support, appellants rely on O'Melveny & Myers v. FDIC, 512 U.S. 79, 114 S.Ct.
> 2048, 129 L.Ed.2d 67 (1994). in which the Court held that state law, rather than
> federal law. governs the imputation of corporate officers' knowledge of fraud to a
> corporation, where the FDIC, as receiver, is prosecuting the corporation's state
> causes of action. Id. at ---- - ----, 114 S.Ct. at 2052-53.

In *Wuliger vs. Owens*, 365 F.Supp.2d 838 (N.D. Ohio. 2005) the court reiterated the classic rule

that the receiver steps into the shoes of the "debtor" as follows:

> "Federal equity receivers are appointed to take control, custody, and/or management of
> property involved in litigation. It is generally recognized that a receiver may bring suit to
> "accomplish the objective of the suit for which he or her appointment was made. or under
> the specific directions of the appointing court, or pursuant to his general duties to receive,
> control, and manage the receivership property." 12 Charles Alan Wright, Arthur R. Miller
> & Richard L. Marcus. Federal Practice & Procedure § 2984 (2d ed.1997). *See also,
> Javitch v. First Union Securities, Inc.*, 315 F.3d 619. 626 (6th Cir.2003) ("question
> depends on the authority granted by the appointing court and actually exercised by the

-21-

receiver"): 65 Am.Jur.2d Receivers § 129 (2d ed) (powers of a receiver flow from statute. court rules, orders of appointment and subsequent orders of appointing court). *By the same token "[a] receiver stands in the shoes of the person for whom he has been appointed and can assert only those claims which that person could have asserted."* *Armstrong v. McAlpin*, 699 F.2d 79. 89 (2d Cir.1983).

The receivers would step into the shoes of Iran in the relationship by and between on one hand, Iran. and on the other. the LEVIED BANKS.  Clearly. certain financial institutions assert immunity from Plaintiffs' levy and execution. but have no immunity. or defense, to a directive from Iran to turnover and disburse the funds.

## VII. **PROPOSED RECEIVERS.**

Plaintiffs nominate the following nominees as receivers:

A,     EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of Appeals Court for the Armed Forces.

B.     STANLEY SPORKIN, Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.     LOUIS FREEH, Retired United States District Court Judge and Former Director of the FBI.

Each one of these individuals are retired federal judges, all with backgrounds in national security, military. and intelligence matters. and all of them would be more than capable of performing in this assignment. meeting the expectations of all parties.

Plaintiffs propose an initial bond in the amount of $50.000.00. and based upon the recovery of funds. the bond to be increased.  As a normal matter of practice. assuming the motion is granted, the protocol is that the receiver would take an oath of office. file the same with the court, commence the process of placing the LEVIED BANKS on notice. and absent compliance. take appropriate action to compel turnover of the funds.  Plaintiffs anticipate the receiver would

-22-

retain counsel who would aid and assist in this task, along with accountants, investigators, and third parties.

## VIII. SUMMARY.

This is a classic enforcement action, in which the appropriate remedy is in fact the appointment of a receiver. Based upon the virtual abolition of the FSIA, the appointment of a receiver would be the most appropriate remedy.

DATED: May 20, 2008

COOK COLLECTION ATTORNEYS
By: _/s/ David J. Cook_
DAVID J. COOK, ESQ. (SB# 060859)
P.O. Box 270
San Francisco, CA 94104-0270
Telephone: (415) 989-4730
Fax: (415) 989-0491
Email: Cook@Squeezebloodfromturnip.com

DATED: May 20, 2008

PERLES LAW FIRM
By: _/s/ Steve Perles_
        STEVE PERLES, ESQ.
1146 19th Street, 5th Floor
Washington D.C., DC 20036
Telephone: 202-955-9055
Fax: 202-955-3806

DATED: May 20, 2008

FAY LAW PA
By: _/s/ Thomas Fortune Fay_
        THOMAS FORTUNE FAY, ESQ.
601 Pennsylvania Avenue, NW
#900 - South Building
Washington, DC 20004
Telephone: 202-589-1300
Fax: 202-589-1300
Email: ThomasFay@aol.com
Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple
(Dec.), et. al.

F:\USERS\DJCNEW\petersonappoint.bankleviesmpa

-1-

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBORAH D. PETERSON, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 01-2094 (RCL) |
| | : | |
| THE ISLAMIC REPUBLIC OF IRAN, *et. al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DECLARATION OF RITA SALAMONE

I, RITA SALAMONE, pursuant to 28 U.S.C. §1746, hereby declare under the penalty of perjury as follows:

1.     My name is Rita Salamone. I am a Senior Paralegal at Arent Fox LLP, a law firm with its principal place of business located at 1050 Connecticut Avenue NW, Washington, DC 20036. I am competent and authorized to execute this affidavit. I have personal knowledge of the facts stated in this declaration, which is based upon my review of publicly available information about the Japan Bank for International Cooperation ("JBIC" or the "Bank") that is published on the Internet web site of the United States Securities and Exchange Commission ("SEC").

2.     On May 12, 2008, I used the Internet to access JBIC's 2007 Annual Report that was filed on October 5, 2007 with the SEC on Form 18-K, which is the form used by "Foreign Governments and Political Subdivisions Thereof." I reviewed JBIC's 2007 Annual Report (18-K), which is published on the SEC's Internet web site at http://www.secinfo.com/d14D5a.u6H3p.htm.

3.    Ex. 99.1 to JBIC's 2007 Annual Report ("Description of Japan Bank for International Cooperation, dated October 5, 2007") provides a detailed description of JBIC, its formation, and its mandate.  A true and correct copy of Ex 99.1, published on the SEC's Internet web site at http://www.secinfo.com/d14D5a.u6H3p.d.htm, is attached to this Declaration as Appendix A.

4.    JBIC's own description of its formation, mandate, and operations is set forth on Page 3 of Appendix A, which reads:

### JAPAN BANK FOR INTERNATIONAL COOPERATION

Japan Bank for International Cooperation (the *"Bank"*) was established on October 1, 1999 as a governmental financial institution. The Bank's name and basic mandate are provided by the Japan Bank for International Cooperation Law (the *"JBIC Law"*). The Bank is the result of a merger between The Export-Import Bank of Japan (*"JEXIM"*) and the Overseas Economic Cooperation Fund, Japan (*"OECF"*). The Bank's purpose, as set forth in Article 1 of the JBIC Law, is to contribute to the sound development of Japan and the international economy and society, by promoting Japan's exports and imports and overseas economic activities, contributing to the stability of the international financial order, and to contributing to the economic and social development and economic stability of developing regions overseas. The Bank carries out the following operations formerly conducted by JEXIM and OBCF:

- *"International financial operations"* (succeeded from JEXIM) — contributing to the promotion of Japanese exports and imports as well as Japanese economic activities overseas, and to the stability of international financial order; and
- *"Overseas economic cooperation operations"* (succeeded from OECF) — supporting self-reliant development efforts in developing countries.

Apart from the above mentioned two operations, the Bank is required to carry out the financial operations for facilitating realignment of U.S. military forces in Japan (hereinafter referred to as the *"Financial Operations for Facilitating Realignment of U.S. Forces in Japan"*) in order to facilitate the relocation of such forces to the United States pursuant to the relevant legislation that became effective in August 2007.

5.    Page 7 of Appendix A states that "[t]he Bank's capital is wholly owned by Government of Japan, and the Bank is under Japanese Government control and supervision in conducting its operations.  The Minister of Finance and the Minister of Foreign Affairs have supervisory powers over the Bank."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008.

RITA SALAMONE

# APPENDIX A

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 49 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1        Page 1 of 59
Case 1:01-cv-02094-RCL    Document 273-3    Filed 05/13/2008    Page 5 of 32

**SEC Info**   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Japan Bank for International Cooperation · 18-K · For 3/31/07 · EX-99.1

**Filed On 10/5/07** 3:10pm ET · **SEC File** 333-11680 · **Accession Number** 1193125-7-214134

| Find |

in this entire Filing.   Show Docs searched   and every "hit".

Help...   *Wildcards:* ? (any letter). * (many). *Logic:* for Docs: & (and). | (or): for Text: | (anywhere). "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs |
|---|---|---|---|---|
| 10/05/07 | Japan Bank for Int'l Cooperation | 18-K | 3/31/07 | 7:327 |

### Annual Report of a Foreign Government or Political Subdivision · Form 18-K
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: 18-K | Annual Report | HTML | 31K |
| 2: EX-99.1 | Description of Japan Bank for International Cooperation | HTML | 836K |
| 3: EX-99.2 | Consent of the Auditors | HTML | 6K |
| 4: EX-99.4 | Japanese Gaap Financial Statements | HTML | 1,133K |
| 5: EX-99.5 | Consent of Ernst & Young Shinnihon | HTML | 5K |
| 6: EX-99.6 | The Japan Bank for International Cooperation Law | HTML | 110K |
| 7: EX-99.7 | Certificate of Nagashima Ohno & Tsunematsu | HTML | 5K |

### EX-99.1 · Description of Japan Bank for International Cooperation
### Exhibit Table of Contents

| Page | (sequential) | | (alphabetic) | Top |
|---|---|---|---|---|
| 1 | 1st Page | | • Alternative Formats (RTF, XML, et al.) | |
| " | Table of Contents | | • Annual Operations results for FY 2006 | |
| " | Further Information | | • Bank s Missions, The | |
| " | Japan Bank for International Cooperation | | • Bank s Predecessors, The | |
| " | Capitalization | | • Business | |
| " | Statements of Earnings | | • Capitalization | |
| " | Business | | • Capital of the Bank | |
| " | The Bank s Missions | | • Debt Record | |
| " | The Bank s Predecessors | | • Financial Statements of Japan Bank for International Cooperation and Auditors | |
| " | Government Control and Supervision | | • Further Information | |
| " | Recent Developments Regarding Special Public Institutions | | • Government Control and Supervision | |
| | | | • International Financial Operations | |

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 50 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1        Page 2 of 59
Case 1:01-cv-02094-RCL    Document 273-3    Filed 05/13/2008    Page 6 of 32

- Annual Operations results for FY 2006
- International Financial Operations
- Overseas Economic Cooperation Operations
- Capital of the Bank
- Non-performing Loans
- Risk Management
- Management
- Debt Record
- Financial Statements of Japan Bank for International Cooperation and Auditors

- Japan Bank for International Cooperation
- Management
- Non-performing Loans
- Overseas Economic Cooperation Operations
- Recent Developments Regarding Special Public Institutions
- Risk Management
- Statements of Earnings
- Table of Contents
- The Bank s Missions
- The Bank s Predecessors

*This is an EDGAR HTML document rendered as filed.  [ Alternative Formats ]*

## Description of Japan Bank for International Cooperation

Table of Contents

Exhibit 1

### Japan Bank for International Cooperation

This description of Japan Bank for International Cooperation is dated October 5, 2007 and appears as Exhibit 1 to its Annual Report on Form 18-K to the U.S. Securities and Exchange Commission.

Table of Contents

    THE DELIVERY OF THIS DOCUMENT AT ANY TIME DOES NOT IMPLY THAT THE INFORMATION IS CORRECT AS OF ANY TIME SUBSEQUENT TO ITS DATE. THIS DOCUMENT (OTHERWISE THAN AS PART OF A PROSPECTUS CONTAINED IN A REGISTRATION STATEMENT FILED UNDER THE U.S. SECURITIES ACT OF 1933) DOES NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY ANY SECURITIES OF JAPAN BANK FOR INTERNATIONAL COOPERATION.

TABLE OF CONTENTS

| | Page |
|---|---|
| FURTHER INFORMATION | 2 |
| JAPAN BANK FOR INTERNATIONAL COOPERATION | 3 |
| CAPITALIZATION | 4 |
| STATEMENTS OF EARNINGS | 6 |
| BUSINESS | 7 |
|     The Bank's Missions | 7 |
|     The Bank's Predecessors | 7 |
|     Government Control and Supervision | 7 |
|     Recent Developments Regarding Special Public Institutions | 8 |
|     Annual Operations results for FY 2006 | 9 |
|     International Financial Operations | 11 |
|     Overseas Economic Cooperation Operations | 17 |
|     Capital of the Bank | 20 |
|     Non-performing Loans | 22 |
|     Risk Management | 25 |
| MANAGEMENT | 28 |
| DEBT RECORD | 29 |
| FINANCIAL STATEMENTS OF JAPAN BANK FOR INTERNATIONAL COOPERATION AND AUDITORS | 29 |

FURTHER INFORMATION

    This document appears as an exhibit to the Annual Report of Japan Bank for International Cooperation filed with the U.S. Securities and Exchange Commission (the "*Commission*") on Form 18-K. Additional information with respect to Japan Bank for International Cooperation is available in such Annual Report, in the other exhibits to such Annual Report and in amendments thereto. Such Annual Report, exhibits and amendments may be inspected and copied at the public reference room maintained by the Commission at: 100F Street, N.E., Washington, D.C. 20549. Information regarding the operations of the public reference room can be obtained by calling the Commission at 1-800-SEC-0330 or, without charge, from Japan Bank for International Cooperation by telephoning 813-5218-3304. The Annual Report and its exhibits and amendments are also available through the Commission's Internet website at http://www.sec.gov.

    *In this document all amounts are expressed in Japanese Yen ("¥" or "yen"), except as otherwise specified. The spot buying rate quoted on the Tokyo Foreign Exchange Market on October 4, 2007 as reported by the Bank of Japan at 5:00 p.m., Tokyo time, was 116.56 =$1.00, and the noon buying rate on October 4, 2007 for cable transfers in New York City payable in yen, as reported by the Federal Reserve Bank of New York, was 116.59 = $1.00.*

    *References to fiscal years of Japan Bank for International Cooperation are to the 12-month periods beginning on April 1 of the year indicated. Japan Bank for International Cooperation was established on October 1, 1999, and its initial fiscal period was the six months ended March 31, 2000.*

    *Figures in tables may not add up to totals due to rounding.*

2

Case 3:08-mc-80030-JSW     Document 52     Filed 06/09/2008     Page 53 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1     Page 5 of 59
Case 1:01-cv-02094-RCL     Document 273-3     Filed 05/13/2008     Page 9 of 32

Table of Contents

### JAPAN BANK FOR INTERNATIONAL COOPERATION

Japan Bank for International Cooperation (the *"Bank"*) was established on October 1, 1999 as a governmental financial institution. The Bank's name and basic mandate are provided by the Japan Bank for International Cooperation Law (the *"JBIC Law"*). The Bank is the result of a merger between The Export-Import Bank of Japan (*"JEXIM"*) and the Overseas Economic Cooperation Fund, Japan (*"OECF"*). The Bank's purpose, as set forth in Article 1 of the JBIC Law, is to contribute to the sound development of Japan and the international economy and society, by promoting Japan's exports and imports and overseas economic activities, contributing to the stability of the international financial order, and contributing to the economic and social development and economic stability of developing regions overseas. The Bank carries out the following operations formerly conducted by JEXIM and OECF:

- *"International financial operations"* (succeeded from JEXIM) — contributing to the promotion of Japanese exports and imports as well as Japanese economic activities overseas, and to the stability of international financial order; and

- *"Overseas economic cooperation operations"* (succeeded from OECF) — supporting self-reliant development efforts in developing countries.

Apart from the above mentioned two operations, the Bank is required to carry out the financial operations for facilitating realignment of U.S. military forces in Japan (hereinafter referred to as the *"Financial Operations for Facilitating Realignment of U.S. Forces in Japan"*) in order to facilitate the relocation of such forces to the United States pursuant to the relevant legislation that became effective in August 2007.

3

Case 3:08-mc-80030-JSW     Document 52     Filed 06/09/2008     Page 54 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1     Page 6 of 59
Case 1:01-cv-02094-RCL     Document 273-3     Filed 05/13/2008     Page 10 of 32

Table of Contents

## CAPITALIZATION

Reflecting the different objectives of the international financial operations and the overseas economic cooperation operations, the JBIC Law provides that the Bank maintain two separate accounts for the respective operations (*i.e.*, the international financial account and the overseas economic cooperation account). (The Bank will set up another special account solely designated for the Financial Operations for Facilitating Realignment of U.S. Forces in Japan pursuant to the relevant legislation.) The capital of each account is segregated, and the reserves of each account can be appropriated only for losses in that account.

In respect of the international financial account, under the JBIC Law, the Bank is authorized to borrow up to an amount equal to 10 times the total of the capital and statutory reserve funds of the international financial account. As of March 31, 2007, total borrowings were ¥6,295 billion, representing 36.4% of the Bank's borrowing authority on that date.

In respect of the overseas economic cooperation account, under the JBIC Law, the Bank is authorized to borrow up to an amount equal to three times the total of the capital and statutory reserve funds of the overseas economic cooperation account. As of March 31, 2007, total borrowings were ¥3,715 billion, representing 16.7% of the Bank's borrowing authority on that date.

The capitalization of the Bank, its international financial account and its overseas economic cooperation account as of March 31, 2007 was as follows:

### Capitalization - The Bank

| | (millions of yen) |
|---|---|
| Long-term borrowings from the Government | ¥ 8,094,826 |
| Bonds and notes | 1,914,517 |
| Total long-term borrowings[1] | 10,009,343 |
| Capital and reserves: | |
| Capital of the account for international financial operations | 985,500 |
| Capital of the account for overseas economic cooperation operations | 7,231,508 |
| Reserve of the account for international financial operations | 745,236 |
| Reserve of the account for overseas economic cooperation operations | 166,062 |
| Total capital and reserves | 9,128,307 |
| Total capitalization | ¥19,137,650 |

(1) Includes current maturities.

4

Table of Contents

### Capitalization – International Financial Account

|  | (millions of yen) |
|---|---|
| Long-term borrowings from the Government | ¥ 4,380,023 |
| Bonds and notes | 1,914,517 |
| Total long-term borrowings[1] | 6,294,540 |
| Capital and reserve: |  |
| Capital | 985,500 |
| Reserve | 745,236 |
| Total capital and reserve | 1,730,736 |
| Total capitalization | ¥ 8,025,276 |

(1)  Includes current maturities.

### Capitalization – Overseas Economic Cooperation Account

|  | (millions of yen) |
|---|---|
| Long-term borrowings from the Government | ¥ 3,714,803 |
| Bonds and notes | — |
| Total long-term borrowings[1] | 3,714,803 |
| Capital and reserve: |  |
| Capital | 7,231,508 |
| Reserve | 166,062 |
| Total capital and reserve | 7,397,571 |
| Total capitalization | ¥ 11,112,374 |

(1)  Includes current maturities.

5

Table of Contents

## STATEMENTS OF EARNINGS

The statements of earnings of the Bank and its international financial and overseas economic cooperation accounts are set forth on pages 34, 37 and 40.

6

Table of Contents

## BUSINESS

### The Bank's Missions

The JBIC Law provides two distinct missions of the Bank, which correspond to the respective operations that the Bank assumed from its predecessor entities, the Export-Import Bank of Japan, or JEXIM, and the Overseas Economic Cooperation Fund, or OECF: (1) to provide Japanese corporations with export loans, import loans, overseas investment loans, untied loans, guarantees and equity participation in overseas projects (*"international financial operations"*); and (2) to provide financial assistance including Japanese official development assistance (*"ODA"*) loans with the basic tenet of providing concessionary long-term, low-interest funds needed for the self-help efforts of developing countries, including their economic and social infrastructure development and stabilization of their economies (*"overseas economic cooperation operations"*). Pursuant to the special legislation that became effective in August 2007, the Financial Operations for Facilitating Realignment of U.S. Forces in Japan have been added as the Bank's additional mission.

### The Bank's Predecessors

Pursuant to the JBIC Law, JEXIM and OECF were dissolved upon the establishment of JBIC on October 1, 1999. Also pursuant to the JBIC Law, all of the rights and obligations of JEXIM and OECF were assigned to and assumed by JBIC.

### *The Export-Import Bank of Japan*

JEXIM was established in 1950 as a governmental financial institution. Its name and basic mandate were set by the Export-Import Bank of Japan Law in 1952. JEXIM's purpose was to facilitate Japan's economic interchange with foreign countries by providing a wide range of financial facilities to supplement and encourage financing by commercial banks and other financial institutions in Japan. Its activities were mainly the following: supporting the Japanese companies' activities such as the export of ships, plants and equipment, the development and import into Japan of natural resources, the import of manufactured goods, overseas investment and extending untied direct loans to developing countries.

### *The Overseas Economic Cooperation Fund, Japan*

OECF was established in 1961 as a governmental organization. OECF's purpose was to promote Japan's overseas economic cooperation by providing concessionary funds for industrial development and economic stability of developing countries. OECF traditionally provided developing countries with assistance for economic and social infrastructure development, environmental conservation and human resources development. Also, as one of the primary organizations implementing support policies, OECF (and later the Bank) in recent years placed special emphasis on avoidance of balance-of-payments crises, creation of employment, economic recovery and alleviation of poverty.

### Government Control and Supervision

The Bank's capital is wholly owned by Government of Japan, and the Bank is under Japanese Government control and supervision in conducting its operations.

The Minister of Finance and the Minister of Foreign Affairs have supervisory power over the Bank. The Minister of Finance and the Minister of Defense have such supervisory power in case the Bank conducts the Financial Operations for Facilitating Realignment of U.S. Forces in Japan. The Governor and Auditors of the Bank are appointed by the Minister of Finance.

The Minister of Finance draws up a budget for the government fiscal investment and loan program (*"zaito"*) each year that determines the allocation of funds to institutions like the Bank which implement government policy. The Bank's budget of revenues and expenditures is included in the Government Agencies Budget for that fiscal year and need to be passed through the Diet. The Government may, within the limits of the budget, provide additional equity and may grant to the Bank an amount corresponding to a part of the expenses required for the overseas economic cooperation operations. The Government may also grant to the Bank, within the limits of the budget, an amount corresponding to a part of the expenses required for the Financial Operations for Facilitating Realignment of U.S. Forces in Japan. The Bank's accounts are audited by the Bank's Auditor and are submitted to the Diet after examination by the Board of Audit, an independent government body.

Until the year ended March 31, 2001, the Bank's lending operations were financed in part by funds from the program

of the Government of Japan and issuances of the Bank's bonds in the international market explicitly guaranteed by Government of Japan. Effective April 1, 2001, the *zaito* program was changed from a system in which funds provided to the Bank and other relevant agencies were derived from the Government Trust Fund Bureau and Postal Life Insurance Accounts to a system in which these agencies, including the Bank, also seek to raise funds in the capital markets rather than relying on the *zaito* funds.

In light of this change in the *zaito* program, the Bank intends to diversify its fund raising sources by issuing bonds without a guarantee from Government of Japan in the Japanese domestic market, continuing to seek borrowings from Government of Japan, and issuing bonds guaranteed by Government of Japan in the international market. In the fiscal year ending March 31, 2008, the Bank currently plans to issue (1) up to an equivalent of $2.2 billion in aggregate principal amount of bonds guaranteed by Government of Japan in international markets and (2) up to ¥200 billion in aggregate principal amount of bonds without a guarantee from Government of Japan in the Japanese market.

7

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 59 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 11 of 59
Case 1:01-CV-02094-RCL    Document 273-3    Filed 05/13/2008    Page 15 of 32

## Table of Contents

### International Financial Operations

As a governmental institution, the Bank conducts its international financial operations to materialize the Japanese Government's basic external economic policies. The Bank has taken over JEXIM's basic responsibilities with respect to its international financial operations: (1) Export Loans, (2) Import Loans, (3) Overseas Investment Loans, (4) Untied Loans, and (5) Guarantees, etc.

The Minister of Finance has supervisory powers with regard to the Bank's international financial operations and may require it to make reports as to its operations or examine its books and records whenever the Minister deems it necessary. On the basis of any such report or examination, the Minister of Finance may issue such orders to the Bank concerning its business as the Minister deems necessary for the enforcement of the JBIC Law.

### Overseas Economic Cooperation Operations

The Bank's overseas economic cooperation operations provide Japan's ODA loans and private-sector investment finance. The Bank's overseas economic cooperation operations are the cornerstone of Japan's ODA. The Bank's policy for executing its overseas economic cooperation operations is based on Japanese government policy, and on the Medium-Term Strategy for Overseas Economic Operations, and is made public after the approval of the Minister of Foreign Affairs. As set forth in the Bank's Medium-Term Strategy for Overseas Economic Operations for the three-year period from April 1, 2005 through March 31, 2008, ODA loan operations will place priority on the following four areas (1) Poverty Reduction, (2) Foundation for Sustained Growth, (3) Global Issues and Peace-Building and (4) Human Resource Development.

The Minister of Foreign Affairs has supervisory powers with regard to the Bank's overseas economic cooperation operations and may require the Bank to make reports as to its operations or examine its books and records whenever the Minister deems it necessary. On the basis of any such report or examination, the Minister of Foreign Affairs may issue such orders to the Bank concerning its business as the Minister deems necessary for the enforcement of the JBIC Law.

### Recent Developments Regarding Special Public Institutions

With regard to reforms of governmental financial institutions, the Law Concerning Promotion of Administrative Reform to Realize a Streamlined and Efficient Government, which partially came into effect on June 2, 2006, provides that the international financial operations of the Bank will, together with functions of certain other governmental financial institutions, be transferred to a new policy-based financial institution within the fiscal year ending March 31, 2009 and that the overseas economic cooperation operations of the Bank will be succeeded by the Japan International Cooperation Agency ("JICA").

On November 15, 2006, the Law Concerning Partial Amendments of the Japan International Cooperation Agency Law (the "Law Concerning Partial Amendments of the JICA Law") was promulgated. Under the Law Concerning Partial Amendments of the JICA Law, rights and obligations of the Bank concerning its overseas economic cooperation operations will, in principle, be transferred to JICA on October 1, 2008.

On May 25, 2007, the Japan Finance Corporation (tentative name of the new policy-based financial institution in English, hereinafter referred as "JFC") Law was promulgated. JFC is scheduled to be established on October 1, 2008. The JFC Law prescribes certain matters including, but not limited to, the following matters:

- JFC will be established and, at the same time, (i) the National Life Finance Corporation, (ii) the Japan Finance Corporation for Small and Medium Enterprise, (iii) the Agriculture Forestry and Fisheries Finance Corporation, and (iv) the Bank will be dissolved. In addition, rights and obligations concerning these dissolved entities (including rights and obligations concerning the international financial operations of the Bank) will, in principle, be transferred to JFC.

- JFC and JICA will be jointly and severally responsible for the obligations of the bonds issued by the Bank, JEXIM and OECF.

- The government of Japan shall hold all of the issued shares of JFC at all times and has general authority to monitor operations of JFC and to make orders necessary to supervise the business of JFC.

- JFC is required to establish a separate internal organization that is to solely and exclusively conduct the international financial operations. The internal organization may operate under the name of "Japan Bank for International Cooperation".

- The budget and account of JFC is classified by its policies and purposes. Thus, the budget and account for the

international financial operations to be taken over from the Bank will be calculated separately. The budget of JFC, including the budget for the international financial operations, will be subject to Diet approval.

- The guarantee by Japan in respect of the bonds included in such obligations transferred to JFC will continue to be effective under the same terms and conditions.

- The government of Japan may provide guarantees for certain debt obligations of the bonds issued by JFC, and may provide loans to JFC.

JFC will also take over from the Bank the Financial Operations for Facilitating Realignment of U.S. Forces in Japan. These operations will be conducted on a separate budget and account by the internal organization which may operate under the name of *"Japan Bank for International Cooperation"*.

8

57

Case 3:08-mc-80030-JSW      Document 52      Filed 06/09/2008      Page 62 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1      Page 14 of 59
Case 1:01-cv-02094-RCL      Document 273-3      Filed 05/13/2008      Page 18 of 32

**Table of Contents**

**Annual Operations Results for FY 2006**

*Overall Operations*

In fiscal 2006, JBIC made total commitments of 2,416.5 billion yen in loans, equity participation, and guarantees. This sharp increase of 26.4% from the previous year is mainly attributable to a boost in guarantees in International Financial Operations and a positive growth of ODA loans in Overseas Economic Cooperation Operations to fulfill the international pledges made by the Government of Japan, which aim an increase of ODA volume by 10 billion U.S. dollars.

Outstanding loans and equity participation edged down 0.7% to 19,351.7 billion yen as of the end of the fiscal 2006 on March 31, 2007. Outstanding guarantees, however, surged 41.5% to 1,492.4 billion yen, which reflects a major boost in the provision of guarantees in fiscal 2006.

*International Financial Operations*

Loan, equity participation, and guarantee commitments in the Bank's International Financial Operations, which support facilitating Japanese trade and investment activities, securing natural resource supplies, and ensuring a stable international financial order, increased 23.2% from the previous year to 1,652.8 billion yen in fiscal 2006.

*Highlights of the Bank's International Financial Operation in FY2006*

Amid continued tight supplies of natural resources in the world, the Bank supported natural resource projects and transactions such as off-taking of crude oil and petroleum products in Venezuela and the Tangguh LNG Project in Indonesia. As a result, commitments for Energy and Natural Resources Finance increased 29% to 519.2 billion yen. This amount accounted for 49% of the total commitments in International Financial Operations (excluding guarantees).

Given increasingly active overseas business operations of Japanese firms, the Bank promoted projects where financing is structured in project finance and structured finance as well as transactions where JBIC takes the risk of local corporations and financial institutions in developing countries. Financial commitments to these projects/transactions thus increased to 668.7 billion yen, 64% of total commitments in International Financial Operations (excluding guarantees).

Commitments to Latin American countries jumped to 406.8 billion yen, 39% of total commitments in International Financial Operations (excluding guarantees), which was due partly to large resource projects in Brazil and Venezuela. Thus in fiscal 2006, financial commitments to projects/transactions in Latin America exceeded those in Asia (331.5 billion yen) and in the Middle East (250.2 billion yen).

Guarantee operations expanded, with their cover ranging from cofinanced loans to international syndicated loans to corporate bonds issued by local Japanese subsidiaries and affiliates. As a result, guarantee commitments jumped 120.7% to a record 603.8 billion yen over 273.6 billion yen in the previous year.

9

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 63 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX.99.1          Page 15 of 59
Case 1:01-cv-02094-RCL    Document 273-3 - Filed 05/13/2008 - Page 19 of 32

## Table of Contents

### Overseas Economic Cooperation Operations

Loan and equity participation commitments in the Bank's Overseas Economic Cooperation Operations, which as part of Japanese official development assistance primarily consist of ODA loans, was ¥763.7 billion in fiscal 2006.

### Highlights of the Bank's Overseas Economic Cooperation Operations in FY2006

By region, Asia was given the top priority for the Bank's new commitments in its Overseas Economic Cooperation Operations (accounting for 84.3% of the total amount of new commitments). By sector, social services (including education and water supply/sewerage) accounted for 44.2%, followed by power/gas at 16.7%, and transportation at 16.2%. By country, India topped the list of recipients with loan commitments totaling ¥184.9 billion, followed by China with ¥137.1 billion, Indonesia at ¥125.2 billion, and Vietnam at ¥95.1 billion.

Loans to environmental and poverty reduction projects have been on the rise in recent years. In FY2006, 36 loans were provided for environmental projects, with their share reaching to 47.7% of the total volume of ODA loan commitments. 27 loans were provided for poverty reduction projects, with their share increasing to 35% of the total.

The Special Term for Economic Partnership ("STEP") was instituted in FY2004 to draw on advanced Japanese technology and Know-how and to raise the visibility of Japan's ODA. This special term applied to six loans for a total of 53.5 billion, including for Ho Chi Minh City Urban Railway Construction Project in The Government of the Socialist Republic of Vietnam. Its share amounted to 7% of the total ODA in FY 2006.

As the result of a reducing number of order won by Japanese firms for large-scale contracts, the share of orders won by Japanese firms in the procurement of ODA loan-financed projects decreased to 17%. The share of orders won by Japanese firms in the foreign currency portion of procurements decreased to 28%.

With respect to the Medium-Term Strategy for Overseas Economic Cooperation Operations, which was prepared in March 2002, an evaluation was conducted and an evaluation report was produced. In addition, a new Medium-Term Strategy covering a 3-year period starting in FY2005 was released in April 2005 after an invitation for the public to submit comments.

### Other Highlights in Overall Bank Activities

In an effort to seek public understanding of its operations and to further increase transparency, the Bank has continued to release interim and term-end financial statements in accordance with generally accepted accounting principles and practices for Japanese private corporations ("Japanese GAAP").

The Bank released the Annual Business Performance Report for FY2005 and the Annual Business Plan for FY2007, in accordance with the "Performance Measurement for Strategic Management" system. Under this system, JBIC's business performance is monitored in light of operational direction and targets which are set in advance. In addition, the medium-term Operational Strategy was revised to reflect the Japanese Governments major policies, including the Reform of Policy-Based Financing, an increase in ODA volume, and the doubling of ODA to Africa.

10

**Table of Contents**

### International Financial Operations

*In this section, references to financial information of the Bank are to the relevant financial information with respect to the Bank's international financial account.*

#### Categories of Operations

The Bank's international financial operations fall into seven categories: export loans, import loans, overseas investment loans, untied loans, equity participation, guarantee operations and bridge loans.

*Export Loans.* The Bank extends export loans to (1) Japanese exporters (supplier credits) and (2) foreign financial institutions and foreign importers in developing countries, which from time to time obtain a guarantee issued by a foreign government or a first ranked financial institution, in order to finance the export of plant, machinery and technologies by Japanese firms. The principal items eligible for these loans are equipment and machinery, such as power generation and communications equipment and machinery for the heavy and chemical industries, ships and aircraft and technologies.

*Import Loans.* The Bank provides import loans to Japanese importers and foreign exporters, in order to promote the import of natural resources which are deemed essential to the Japanese economy.

*Overseas Investment Loans.* The Bank extends overseas investment loans to (1) Japanese entities in order to provide them with funds for overseas investments (including investments in development of natural resources) in developing countries, (2) joint ventures in developing countries in which Japanese firms have equity interests and (3) foreign governments or financial institutions that make equity investments in or provide loans to the aforesaid joint ventures in developing countries. Encouraging Japanese overseas investments contributes to the improvement of the Japanese industrial structure and the achievement of a harmonized division of labor on a global basis as well as to the stable and diversified supply of natural resources to Japan.

*Untied Loans.* The Bank extends untied loans to foreign governments and financial institutions to provide them with long-term funds for development projects, especially in the infrastructure and energy fields, as well as to strengthen the industrial structure of developing countries and assist their economic restructuring programs. Untied loans are not tied to the procurement of goods and services from Japan.

*Equity Participation.* The Bank makes equity participations in either (1) corporations conducting business outside Japan or (2) Japanese corporations whose sole purpose is to make overseas investments in corporations conducting business overseas. To support efforts to mitigate global warming and improve energy efficiency in Asia, the Bank made equity investments totaling ¥2.2 billion in the Asia ESCO Fund, the Japan GHG Reduction Fund ("*JGRF*") and Japan Carbon Finance, Ltd. ("*JCF*"), the first cases of equity participation since the Bank was established.

*Guarantee Operations.* The Bank grants guarantees on (1) loans from Japanese private financial institutions for purposes consistent with those of the Bank, (2) bonds issued by Japanese entities, joint ventures, foreign government and financial institutions for purposes identical to those of the Bank's overseas investment loans and untied loans. The net balance of the Bank's guarantees outstanding as of March 31, 2007 totaled ¥1,492 billion.

*Bridge Loans.* Under certain circumstances, as part of the Japanese Government's debt-relief measures, the Bank provides bridge loans with the authorization of the Minister of Finance. Bridge loans are short-term loans extended to foreign governments to provide short-term liquidity until the disbursement of the loans from international financial organizations such as the International Monetary Fund and the World Bank.

The Bank's total commitments (international financial operations) for the year ended March 31, 2007 amounted to ¥1,653 billion, and the outstanding balance as of March 31, 2007 was ¥9,326 billion.

11

60

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 65 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 17 of 59
Case 1:01-cv-02094-RCL    Document 273-3    Filed 05/13/2008    Page 21 of 32

Table of Contents

The following table sets forth, as of the dates indicated, the total amounts of loans outstanding provided by the Bank, by type of credit and geographical distribution:

### Loans Outstanding by Type of Credit and Geographical Distribution

| | Japan Bank for International Cooperation | | | | | | | | | |
| | As of March 31, | | | | | | | | | |
| | 2003 | | 2004 | | 2005 | | 2006 | | 2007 | |
| | (millions of yen) | | | | | | | | | |
| **EXPORT LOANS** | | | | | | | | | | |
| Asia | ¥ 847,204 | 8.7% | ¥ 818,544 | 9.0% | ¥ 773,987 | 9.1% | ¥ 712,586 | 9.0% | ¥ 667,500 | 8.5% |
| The Pacific | — | | — | | — | | — | | — | |
| Europe | 123,374 | 1.3 | 124,681 | 1.4 | 120,293 | 1.4 | 84,660 | 1.1 | 66,736 | 0.9 |
| The Middle East | 112,999 | 1.2 | 150,602 | 1.7 | 170,348 | 2.0 | 192,290 | 2.4 | 213,341 | 2.7 |
| Africa | 168,521 | 1.7 | 161,147 | 1.8 | 152,676 | 1.8 | 98,021 | 1.2 | 66,559 | 0.8 |
| North America | — | | — | | — | | — | | — | |
| Latin America | 226,403 | 2.3 | 224,382 | 2.5 | 180,657 | 2.1 | 148,468 | 1.9 | 127,091 | 1.6 |
| International Organizations, etc. | 4,749 | 0.0 | 4,036 | 0.0 | 3,774 | 0.0 | 3,370 | 0.0 | 3,169 | 0.0 |
| Total | 1,483,249 | 15.2 | 1,483,392 | 16.3 | 1,401,735 | 16.5 | 1,239,396 | 15.7 | 1,144,396 | 14.6 |
| **IMPORT LOANS** | | | | | | | | | | |
| Asia | 18,201 | 0.2 | 17,420 | 0.2 | 19,820 | 0.2 | 31,201 | 0.4 | 33,665 | 0.4 |
| The Pacific | 40,981 | 0.4 | 37,781 | 0.4 | 41,377 | 0.5 | 57,710 | 0.7 | 57,603 | 0.7 |
| Europe | 21,682 | 0.2 | 15,433 | 0.2 | 10,866 | 0.1 | 9,115 | 0.1 | 12,234 | 0.2 |
| The Middle East | 309,910 | 3.2 | 348,585 | 3.8 | 400,956 | 4.7 | 406,810 | 5.1 | 388,239 | 5.0 |
| Africa | 9,096 | 0.1 | 8,369 | 0.1 | 8,452 | 0.1 | 7,538 | 0.1 | 8,062 | 0.1 |
| North America | 390,613 | 4.0 | 318,054 | 3.5 | 257,313 | 3.0 | 206,526 | 2.6 | 161,804 | 2.1 |
| Latin America | 33,470 | 0.3 | 33,470 | 0.4 | 33,470 | 0.4 | 20,340 | 0.3 | 21,060 | 0.3 |
| International Organizations, etc. | 3,503 | 0.0 | 3,483 | 0.0 | 3,009 | 0.0 | 25 | 0.0 | 20 | 0.0 |
| Total | 827,457 | 8.5 | 782,596 | 8.6 | 775,264 | 9.1 | 739,265 | 9.3 | 682,687 | 8.7 |
| **OVERSEAS INVESTMENT LOANS** | | | | | | | | | | |
| Asia | 1,793,955 | 18.4 | 1,594,992 | 17.6 | 1,474,180 | 17.3 | 1,359,694 | 17.2 | 1,278,170 | 16.3 |
| The Pacific | 121,771 | 1.2 | 117,754 | 1.3 | 163,709 | 1.9 | 167,502 | 2.1 | 158,731 | 2.0 |
| Europe | 332,487 | 3.4 | 371,421 | 4.1 | 415,938 | 4.9 | 467,606 | 5.9 | 469,518 | 6.0 |
| The Middle East | 369,769 | 3.8 | 354,358 | 3.9 | 389,304 | 4.6 | 556,961 | 7.0 | 862,484 | 11.0 |
| Africa | 50,437 | 0.5 | 79,040 | 0.9 | 67,056 | 0.8 | 97,490 | 1.2 | 105,189 | 1.3 |
| North America | 437,245 | 4.5 | 353,665 | 3.9 | 253,249 | 3.0 | 217,656 | 2.8 | 173,042 | 2.2 |
| Latin America | 736,590 | 7.5 | 721,138 | 7.9 | 621,805 | 7.3 | 580,193 | 7.3 | 709,565 | 9.1 |
| International Organizations, etc. | 173,635 | 1.8 | 198,720 | 2.2 | 188,352 | 2.2 | 194,484 | 2.5 | 199,754 | 2.6 |
| Total | 4,015,890 | 41.1 | 3,791,089 | 41.7 | 3,573,593 | 42.0 | 3,641,587 | 46.0 | 3,956,453 | 50.5 |
| **UNTIED LOANS** | | | | | | | | | | |
| Asia | 1,685,940 | 17.3 | 1,344,365 | 14.8 | 1,159,060 | 13.6 | 937,234 | 11.8 | 846,929 | 10.8 |
| The Pacific | 471 | 0.0 | 424 | 0.0 | 377 | 0.0 | 329 | 0.0 | 282 | 0.0 |
| Europe | 250,009 | 2.6 | 196,662 | 2.2 | 165,571 | 1.9 | 138,988 | 1.8 | 101,993 | 1.3 |
| The Middle East | 75,015 | 0.8 | 61,325 | 0.7 | 49,990 | 0.6 | 42,413 | 0.5 | 33,743 | 0.4 |
| Africa | 67,945 | 0.7 | 56,317 | 0.6 | 44,158 | 0.5 | 34,509 | 0.4 | 24,833 | 0.3 |
| North America | — | | — | | — | | — | | — | |
| Latin America | 643,952 | 6.6 | 640,772 | 7.1 | 618,076 | 7.3 | 598,110 | 7.6 | 553,293 | 7.1 |
| International | | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Organizations, etc. | 583,733 | 6.0 | 608,054 | 6.7 | 593,853 | 7.0 | 452,242 | 5.7 | 405,192 | 5.2 |
| **Total** | 3,307,064 | 33.9 | 2,907,919 | 32.0 | 2,631,085 | 30.9 | 2,203,826 | 27.9 | 1,966,264 | 25.1 |
| **GOVERNMENTAL LOANS(1)** | | | | | | | | | | |
| Asia | 37,396 | 0.4 | 35,114 | 0.4 | 32,532 | 0.4 | 30,504 | 0.4 | 29,065 | 0.4 |
| The Pacific | — | — | — | — | — | — | — | — | — | — |
| Europe | 1,876 | 0.0 | 1,761 | 0.0 | 1,679 | 0.0 | 1,589 | 0.0 | 1,490 | 0.0 |
| The Middle East | 45,262 | 0.5 | 44,905 | 0.5 | 44,547 | 0.5 | 35,294 | 0.4 | 35,847 | 0.5 |
| Africa | 27,272 | 0.3 | 25,711 | 0.3 | 25,701 | 0.3 | 6,613 | 0.1 | 4,314 | 0.1 |
| North America | — | — | — | — | — | — | — | — | — | — |
| Latin America | 15,231 | 0.2 | 14,507 | 0.2 | 13,650 | 0.2 | 12,670 | 0.2 | 11,772 | 0.2 |
| International Organizations, etc. | — | — | — | — | — | — | — | — | — | — |
| **Total** | 127,038 | 1.3 | 121,998 | 1.3 | 118,108 | 1.4 | 86,670 | 1.1 | 82,488 | 1.1 |
| **INVESTMENTS** | | | | | | | | | | |
| Asia | — | — | — | — | — | — | — | — | — | — |
| The Pacific | — | — | — | — | — | — | — | — | — | — |
| Europe | — | — | — | — | — | — | — | — | — | — |
| The Middle East | — | — | — | — | — | — | — | — | — | — |
| Africa | — | — | — | — | — | — | — | — | — | — |

12

Table of Contents

| | Japan Bank for International Cooperation | | | | | | | | |
| | As of March 31, | | | | | | | | |
| | 2003 | | 2004 | | 2005 | | 2006 | | 2007 | |
| | | | | | (millions of yen) | | | | | |
| North America | 1,141 | 0.0 | — | — | | | — | — | — | — |
| Latin America | — | — | — | — | | | — | — | — | — |
| International | | | | | | | | | | |
| Organizations, etc. | — | — | — | — | 112 | 0.0 | 385 | 0.0 | 810 | 0.0 |
| Total | 1,141 | 0.0 | — | — | 112 | 0.0 | 385 | 0.0 | 810 | 0.0 |
| Total loans outstanding | ¥9,761,839 | 100.0% | ¥9,086,993 | 100.0% | ¥8,499,897 | 100.0% | ¥7,911,129 | 100.0% | ¥7,833,098 | 100.0% |

As a part of the Japan's ODA, JEXIM conducted a part of the Government's ODA loans. There has been no new JEXIM ODA commitment since 1987 and the Bank's international financial operations did not take over such operations from JEXIM.

13

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 68 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 20 of 59
Case 1:01-cv-02094-RCL    Document 273-3    Filed 05/13/2008    Page 24 of 32

Table of Contents

The following table sets forth the new loan commitments made by the Bank, by type of credit and geographical distribution in accordance with the Bank's system of classification for the periods indicated.

### Credit Commitments by Type of Credit and Geographical Distribution

| | Fiscal year ended March 31, | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2003 | | 2004 | | 2005 | | 2006 | | 2007 | |
| | | | | | (millions of yen) | | | | | |
| **EXPORT LOANS** | | | | | | | | | | |
| Asia | ¥ 158,401 | 14.9% | ¥ 57,904 | 5.3% | ¥ 31,327 | 3.5% | ¥ 7,432 | 0.7% | ¥ 11,727 | |
| The Pacific | — | — | — | — | — | — | — | — | — | |
| Europe | 6,850 | 0.6 | 1,845 | 0.2 | 22,101 | 2.4 | 9,420 | 0.9 | 15,150 | |
| The Middle East | 1,026 | 0.1 | 48,397 | 4.5 | 58,724 | 6.5 | 44,180 | 4.1 | 16,220 | |
| Africa | 282 | 0.0 | 5,509 | 0.5 | 821 | 0.1 | — | — | — | |
| North America | — | — | — | — | — | — | — | — | — | |
| Latin America | 28,311 | 2.7 | 2,553 | 0.2 | 1,720 | 0.2 | 12,068 | 1.1 | 32,561 | |
| International Organizations, etc. | — | — | — | — | 118 | 0.0 | — | — | — | |
| Total | 194,869 | 18.4 | 116,208 | 10.7 | 114,811 | 12.7 | 73,100 | 6.8 | 75,659 | |
| **IMPORT LOANS** | | | | | | | | | | |
| Asia | — | — | — | — | 31,586 | 3.5 | 5,267 | 0.5 | 678 | |
| The Pacific | 14,097 | 1.3 | 15,331 | 1.4 | 15,429 | 1.7 | 14,834 | 1.4 | 2,000 | |
| Europe | — | — | — | — | — | — | 17,903 | 1.7 | — | |
| The Middle East | 12,410 | 1.2 | 117,300 | 10.8 | 9,862 | 1.0 | 3,338 | 0.3 | — | |
| Africa | 718 | 0.1 | 733 | 0.1 | 411 | 0.0 | 482 | 0.0 | 830 | |
| North America | 492 | 0.0 | — | — | 1,217 | 0.1 | — | — | 1,135 | |
| Latin America | — | — | — | — | — | — | 18,900 | 1.8 | 3,569 | |
| International Organizations, etc. | — | — | — | — | — | — | — | — | — | |
| Total | 27,717 | 2.6 | 133,364 | 12.3 | 58,505 | 6.3 | 60,724 | 5.7 | 8,212 | |
| **OVERSEAS INVESTMENT LOANS** | | | | | | | | | | |
| Asia | 192,264 | 18.1 | 292,627 | 27.0 | 187,027 | 20.7 | 268,442 | 25.1 | 258,344 | |
| The Pacific | 16,621 | 1.6 | 66,344 | 6.1 | 61,098 | 6.8 | 1,138 | 0.1 | 4,331 | |
| Europe | 25,003 | 2.4 | 132,077 | 12.2 | 65,903 | 7.3 | 74,756 | 7.0 | 7,815 | |
| The Middle East | 113,361 | 10.7 | 67,890 | 6.3 | 232,016 | 25.7 | 417,033 | 39.1 | 223,564 | |
| Africa | 33,883 | 3.2 | 31,167 | 2.9 | — | — | 18,790 | 1.8 | 4,716 | |
| North America | 17,680 | 1.7 | 3,215 | 0.3 | 20,384 | 2.3 | 17,086 | 1.6 | 24,570 | |
| Latin America | 82,064 | 7.7 | 119,640 | 11.0 | 150,385 | 16.6 | 77,184 | 7.2 | 366,301 | |
| International Organizations, etc. | 199,590 | 18.8 | 16,422 | 1.5 | — | — | — | — | — | |
| Total | 680,467 | 64.2 | 729,383 | 67.3 | 716,814 | 79.4 | 874,430 | 81.9 | 889,642 | |
| **UNTIED LOANS** | | | | | | | | | | |
| Asia | — | — | 41,256 | 3.8 | 6,540 | 0.7 | 20,550 | 1.9 | 60,699 | |
| The Pacific | — | — | — | — | — | — | — | — | — | |
| Europe | — | — | — | — | — | — | — | — | — | |
| The Middle East | — | — | — | — | 5,400 | 0.6 | — | — | 10,440 | |
| Africa | — | — | — | — | — | — | — | — | — | |
| North America | — | — | — | — | — | — | — | — | — | |
| Latin America | 156,780 | 14.8 | 62,880 | 5.8 | — | — | 32,700 | 3.1 | 4,350 | |
| International Organizations, etc. | — | — | — | — | — | — | 6,300 | 0.6 | — | |
| Total | 156,780 | 14.8 | 104,136 | 9.6 | 11,940 | 1.3 | 59,550 | 5.6 | 75,489 | |
| **INVESTMENT** | | | | | | | | | | |
| International Organizations, etc. | — | — | — | — | 2,243 | 0.2 | — | — | — | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total** | — | — | — | — | 2,243 | 0.2 | — | — | — |
| **Total credit commitments** | ¥1,059,833 | 100.0% | ¥1,083,090 | 100.0% | ¥904,312 | 100.0% | ¥1,067,803 | 100.0% | ¥1,049,001 |

14

Table of Contents

*Loan and Guarantee Terms*

The JBIC Law provides that the Bank's interest rates and guarantee charges shall be determined in light of the interest rates and commissions charged for guarantees by private banks on a basis such that the Bank's International Financial Operation revenues will cover its expenditures and losses. In addition, the Bank may not compete with private financial institutions in extending loans and guarantees, and may extend loans and guarantees only if financing by private financial institutions on ordinary terms is deemed difficult. The Bank carefully investigates the financial position of each prospective borrower and the technical and financial aspects of the project to be financed, and a loan or guarantee is extended only if there is reasonable assurance of repayment.

The Bank itself determines the interest rates, maturities, loan participation percentages, security and other terms on which it lends its funds or extends its guarantees. The interest rate to be applied to each loan is set by the Governor of the Bank, taking into consideration the Bank's funding cost and the rate for borrowers of the highest credit standing from private banks extending long-term loans (see *"Business—International Financial Operations—Sources of Funds"* on page 16).

Most of the Bank's international financial operations involve the financing of projects in cooperation with private financial institutions. Loans extended to domestic borrowers are usually secured by a bank guarantee, a mortgage or other collateral, or supported by a covenant requiring the borrower to provide security to the Bank at the Bank's request. Overseas direct loans, which are usually extended to banks, governmental institutions in foreign countries or private companies with Japanese capital, are generally secured by guarantees issued by the foreign government or the foreign governmental financial institution, by securities issued by Japanese domestic companies, or by cash flow and other assets of the borrower taken as security by the Bank.

In addition to the loan terms provided in the JBIC Law, the Bank's terms and conditions for export loans are determined, in the case of plant and equipment exports, in accordance with the OECD's *"Arrangement on Guidelines for Officially Supported Export Credits"*, commonly referred to as the Consensus and, in the case of ship exports, the OECD's *"Understanding on Export Credits for Ships"*, commonly referred to as the Understanding. The Consensus and the Understanding, which were established to avoid excessive competition in the area of financing for plant or ship exports, stipulate minimum interest rates, maximum credit terms and minimum down payments for officially supported medium- and long-term export credit.

The following table sets forth information concerning the balances of the Bank's outstanding international financial operations loans as of March 31, 2007.

**Loan Balances by Remainder of Term[1]**

|  | As of March 31, 2007 (millions of yen) | |
|---|---:|---:|
| One year or less | ¥1,207,056 | 15.6% |
| More than 1 to 2 years | 1,102,293 | 14.3 |
| More than 2 years to 3 years | 946,529 | 12.3 |
| More than 3 years to 4 years | 802,465 | 10.4 |
| More than 4 years to 5 years | 699,146 | 9.0 |
| More than 5 years to 6 years | 616,631 | 8.0 |
| More than 6 years to 7 years | 541,241 | 7.0 |
| More than 7 years to 8 years | 406,734 | 5.3 |
| More than 8 years to 9 years | 338,932 | 4.4 |
| More than 9 years to 10 years | 265,450 | 3.4 |
| More than 10 years | 799,764 | 10.4 |
| **Total** | **¥7,726,241** | **100.0%** |

(1) The amounts do not include principal that is overdue and unpaid, and principal that may possibly be waived according to the *"Changes in Debt Relief Method"* announced by Government of Japan in December 2002.

15

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 71 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 23 of 59
Case 1:01-CV-02094-RCL    Document 273-3    Filed 05/13/2008    Page 27 of 32

## Table of Contents

*Allowance for Possible Loan and Investment Losses*

The Bank provides an allowance for possible loan and investment losses in its international financial operations, pursuant to the relevant cabinet order and related regulations. As of March 31, 2007, the Bank's allowance totaled ¥55 billion in its international financial operations. See Note 1 of *"Notes to Financial Statements"*.

For the fiscal year ended March 31, 2007, the Bank wrote off loans totaling ¥732 million in its international financial operations. The amount of loans written off decreased ¥34,994 million from the previous fiscal year.

In cases where borrowers indicate that they may be unable to meet payments on their loans, the Bank may revise the terms of repayment. In the case of direct loans to foreign governments, the international system provides several mechanisms and institutions through which countries facing repayment difficulties can effect remedial measures in agreement with their creditors (Paris Club rescheduling). Therefore, rescheduled principal and interest payments may have to be accepted in order to facilitate the collectibility of some loans or portions of loans. Should a default occur in the payment of principal or interest (whether by reason of a failure to agree on modified loan terms or otherwise), the Bank considers the related loan to be in arrears immediately to the extent of the defaulted amount. As of March 31, 2007, of the Bank's loans, outstanding principal totaling ¥94,640 million was in arrears for six months or more, most of which were overseas direct loans. See *"Non-performing Loans"* and Note 3 of *"Notes to Financial Statements"*.

*Sources of Funds*

The following table sets forth information concerning the sources of funds for the Bank's international financial operations. See also *"Financial Statements—Statement of Changes in Financial Position (International Financial Account)"*.

### Sources of Funds

|  | Year ended March 31, | |
|---|---|---|
|  | 2006 | 2007 |
|  | (millions of yen) | |
| Borrowings from the Government Fund for Fiscal Investment and Loan Program [(1)] | ¥383,100 | ¥367,500 |
| Borrowings from the Postal Life Insurance Account | — | — |
| Bonds and Notes[(2)] | 526,200 | 187,800 |

(1) Includes both short-term and long-term borrowings.
(2) Guaranteed by the Government except for the Fiscal Investment and Loan Program Agency Bond.

The Bank has raised funds for its international financial account through borrowings from Government of Japan and issuances of Japanese Government-guaranteed bonds and notes in international markets. In accordance with the government's policy to reform the *zaito* program (see *"Government Control and Supervision"*), the Bank began to raise funds in the Japanese domestic capital market on its own creditworthiness, starting in the fiscal year ended March 31, 2002. Specifically, the Bank issued bonds without a guarantee from the Government of Japan ¥100 billion during the fiscal years ended March 31, 2007, and plans to issue up to ¥200 billion during the fiscal year ending March 31, 2008.

16

**Table of Contents**

**Overseas Economic Cooperation Operations**

*In this section, references to financial information of the Bank are to the relevant financial information with respect to the Bank's overseas economic cooperation account.*

*General*

The Bank's overseas economic cooperation operations fall into two categories: Official Development Assistance (ODA) loans and private-sector investment finance. All ODA loans and private-sector investment finance with a grant element of more than 25% are counted as ODA.

The Bank provides ODA loans to developing countries for their economic and social development and economic stability. All ODA loans are made according to agreements between the Government of Japan and the recipient countries. The Bank also provides private-sector investment finance to corporations in Japan and in developing countries to undertake projects in developing countries.

The Bank's total commitments for the year ended March 31, 2007, amounted to ¥764 billion, and all of this amount is for the commitment of ODA. Total disbursements of the Bank for the year ended March 31, 2007 amounted to ¥607 billion, including ¥606.7 billion of ODA loans and ¥0.1 billion of private-sector investment finance. As of March 31, 2007, the outstanding balance of total ODA loans and private-sector investment finance was ¥11,519 billion.

*Official Development Assistance Loans*

The average interest rate of ODA loans committed by the Bank during the year ended March 31, 2007 was 1.03%, while the average repayment period was 33 years and 8 months (including the average grace period of 9 years and 9 months).

*Measures for bridging regional income gaps in upper-middle income countries*

As a result of recent rapid economic development, asymmetric growth in income across socio-economic classes and regions is becoming a serious challenge in upper-middle income countries. Encouraging their self-help efforts to address this problem, the Government of Japan will provide support for such countries by means of ODA loans.

ODA loans to upper-middle income countries have until now been limited in-principle to environmental, human resource development, and anti-seismic measures projects. In order to assist such countries to reduce regional income disparities, projects to develop specified economic and social infrastructure in low-income regions are now also included.

The following table shows the information concerning the balances of the Bank's outstanding ODA loans as of the dates indicated:

**Official Development Assistance Loans**

| | Fiscal year ended March 31, | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2003 | | 2004 | | 2005 | | 2006 | | 2007 |
| | | | | | (millions of yen) | | | | |
| Asia | ¥ 9,000,862 | 80.2% | ¥ 9,167,288 | 81.0% | ¥ 9,306,086 | 82.1% | ¥ 9,540,274 | 83.4% | ¥ 9,541,808 | 83.9% |
| The Middle East | 519,327 | 4.6 | 508,390 | 4.5 | 491,549 | 4.3 | 475,278 | 4.2 | 467,737 | 4.1 |
| Africa | 1,000,212 | 8.9 | 973,441 | 8.6 | 875,648 | 7.7 | 773,951 | 6.8 | 718,974 | 6.3 |
| Latin America and the Caribbean | 626,015 | 5.6 | 580,355 | 5.1 | 565,132 | 5.0 | 525,304 | 4.6 | 512,703 | 4.5 |
| Oceania | 47,285 | 0.4 | 45,152 | 0.4 | 42,939 | 0.4 | 40,384 | 0.4 | 37,740 | 0.3 |
| Europe | 32,803 | 0.3 | 45,198 | 0.4 | 54,550 | 0.5 | 69,536 | 0.6 | 85,899 | 0.8 |
| Others | — | — | — | — | — | — | — | — | 10,010 | 0.1 |
| Total | ¥11,226,503 | 100.0% | ¥11,319,823 | 100.0% | ¥11,335,904 | 100.0% | ¥11,424,728 | 100.0% | ¥11,374,832 | 100.0% |

17

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 73 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1          Page 25 of 59
Case 1:01-cv-02094-RCL    Document 273-3    Filed 05/13/2008    Page 29 of 32

Table of Contents

The following table shows the geographic distribution of ODA loans committed by the Bank, as the case may be, for the periods indicated:

### Geographical Distribution of ODA Loan Commitments

| | 2003 | | 2004 | | 2005 | | 2006 | | 2007 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (millions of yen) | | | | | |
| Asia | ¥529,233 | 95.7% | ¥528,370 | 89.9% | ¥624,983 | 78.3% | ¥475,384 | 83.4% | ¥644,023 | 84.3% |
| The Middle East | 12,022 | 2.2 | — | — | — | — | — | — | — | — |
| Africa | 11,845 | 2.1 | 46,013 | 7.8 | 46,013 | 7.8 | 50,694 | 8.9 | 102,188 | 13.4 |
| Latin America and the Caribbean | — | — | 3,595 | 0.6 | 21,320 | 2.7 | 43,760 | 7.7 | 5,972 | 0.8 |
| Oceania | — | — | — | — | — | — | — | — | — | — |
| Europe | — | — | 9,689 | 1.6 | 47,838 | 6.0 | — | — | — | — |
| Others | — | — | — | — | — | — | — | — | 11,500 | 1.5 |
| Total | ¥553,100 | 100.0% | ¥587,667 | 100.0% | ¥798,605 | 100.0% | ¥569,838 | 100.0% | ¥763,683 | 100.0% |

The following table shows the sectorial distribution of ODA loans committed by the Bank, as the case may be, for the periods indicated:

### Sectorial Distribution of ODA Loan Commitments

| | 2003 | | 2004 | | 2005 | | 2006 | | 2007 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (millions of yen) | | | | | |
| Electric Power and Gas | ¥206,241 | 37.3% | ¥281,186 | 47.8% | ¥189,736 | 23.8% | ¥170,102 | 29.9% | ¥127,876 | 16.7% |
| Transportation | 110,775 | 20.0 | 132,381 | 22.5 | 306,869 | 38.4 | 194,245 | 34.1 | 124,078 | 16.2 |
| Telecommunications | 19,497 | 3.5 | 20,202 | 3.4 | 3,029 | 0.4 | — | — | 15,717 | 2.1 |
| Irrigation and Flood Control | 47,741 | 8.6 | 11,115 | 1.9 | 51,126 | 6.4 | 37,192 | 6.5 | 46,900 | 6.1 |
| Agriculture, Forestry and Fisheries | 52,070 | 9.4 | 24,760 | 4.2 | 31,530 | 3.9 | 13,937 | 2.4 | 42,180 | 5.5 |
| Mining and Manufacturing | — | — | — | — | 21,001 | 2.6 | 3,299 | 0.6 | 17,995 | 2.4 |
| Social Services | 109,336 | 19.8 | 118,023 | 20.1 | 182,520 | 22.9 | 125,614 | 22.0 | 348,883 | 45.7 |
| Commodity Loans | 7,440 | 1.3 | — | — | 12,794 | 1.6 | 25,449 | 4.5 | 40,054 | 5.2 |
| Total | ¥553,100 | 100.0% | ¥587,667 | 100.0% | ¥798,605 | 100.0% | ¥569,838 | 100.0% | ¥763,683 | 100.0% |

18

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 74 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 26 of 59
Case 1:01-CV-02094-RCL    Document 273-3    Filed 05/13/2008    Page 30 of 32

**Table of Contents**

The following table sets forth information concerning the balances of the Bank's outstanding Overseas Economic Cooperation loans as of March 31, 2007:

**Loan Balances by Remainder of Term[1]**

|  | As of March 31, 2007 (millions of yen) | |
|---|---|---|
| One year or less | ¥   603,063 | 5.4% |
| More than 1 to 2 years | 629,244 | 5.7 |
| More than 2 years to 3 years | 656,707 | 5.9 |
| More than 3 years to 4 years | 616,308 | 5.5 |
| More than 4 years to 5 years | 616,181 | 5.5 |
| More than 5 years to 6 years | 600,722 | 5.4 |
| More than 6 years to 7 years | 598,327 | 5.4 |
| More than 7 years to 8 years | 598,434 | 5.4 |
| More than 8 years to 9 years | 583,333 | 5.2 |
| More than 9 years to 10 years | 559,757 | 5.0 |
| More than 10 years to 11 years | 558,300 | 5.0 |
| More than 11 years to 12 years | 527,129 | 4.7 |
| More than 12 years to 13 years | 491,841 | 4.4 |
| More than 13 years to 14 years | 463,300 | 4.2 |
| More than 14 years to 15 years | 408,130 | 3.7 |
| More than 15 years | 2,617,133 | 23.5 |
| Total | ¥11,127,910 | 100.0% |

(1)  The amounts do not include principal that is overdue and unpaid, and principal that may possibly be waived according to the *"Changes in Debt Relief Method"* announced by the Government of Japan in December 2002.

*Private-sector Investment Finance*

The Bank's private-sector investment finance operations provide economic cooperation through extending loans and making equity investment for private sector activities in developing countries. The outstanding amount of private-sector investment financed by the Bank as of March 31, 2007 was ¥144 billion, including equity participation totaling ¥140 billion.

**Commitment of Private Sector Investment Finance**

| Fiscal year ended March 31, | Amount (in millions) | Number of Commitments |
|---|---|---|
| 2000[1] | 878 | 1 |
| 2001 | 4,983 | 3 |
| 2002 | — | — |
| 2003[2] | 486 | 1 |

(1)  Combined data for the six months ended September 30, 1999 with respect to OECF and for the six months ended March 31, 2000 with respect to the Bank.
(2)  Private Sector Investment Finance discontinued making new loans starting April 1, 2003, in accordance with the Reorganization and Rationalization Plan for Special Public Institutions.

19

Case 3:08-mc-80030-JSW     Document 52     Filed 06/09/2008     Page 75 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1     Page 27 of 59
Case 1:01-cv-02094-RCL     Document 273-3   Filed 05/13/2008   Page 31 of 32

Table of Contents

*Allowance for Possible Loan and Investment Losses*

The Bank provides an allowance for possible loan and investment losses in its overseas economic cooperation operations, pursuant to the relevant cabinet order and related regulations. As of March 31, 2007, the Bank's allowance totaled ¥394 billion in its overseas economic cooperation operations. See Note 1 of *"Notes to Financial Statements"*.

For the fiscal year ended March 31, 2007, the Bank wrote off loans totaling ¥46,590 million in its overseas economic cooperation operations. The amount of loans written off decreased ¥80,886 million from the previous fiscal year.

In cases where borrowers indicate that they may be unable to meet payments on their loans, the Bank may revise the terms of repayment. In the case of direct loans to foreign governments, the international system provides several mechanisms and institutions through which countries facing repayment difficulties can effect remedial measures in agreement with their creditors (Paris Club rescheduling). Therefore, rescheduled principal and interest payments may have to be accepted in order to facilitate the collectibility of some loans or portions of loans. Should a default occur in the payment of principal or interest (whether by reason of a failure to agree on modified loan terms or otherwise), the Bank considers the related loan to be in arrears immediately to the extent of the defaulted amount. As of March 31, 2007, of the Bank's loans, outstanding principal totaling ¥334,750 million was in arrears for six months or more, most of which related to overseas direct loans. See *"Non-performing Loans"* and Note 3 of *"Notes to Financial Statements"*.

*Sources of Funds*

The following table sets forth information concerning the sources of funds for the Bank's overseas economic cooperation operations. See also *"Financial Statements—Statement of Changes in Financial Position (Overseas Economic Corporation Account)"*.

**Sources of Funds**

| | Year ended March 31, | |
| --- | --- | --- |
| | 2006 | 2007 |
| | (millions of yen) | |
| Borrowings from the Government Fund for Fiscal Investment and Loan Program | ¥343,800 | ¥334,600 |
| Capital subscriptions from the general account budget | 174,400 | 165,900 |

Moreover, the Government of Japan may, within the limits of the budget, grant to the Bank an amount corresponding to a part of the expenses required for the Overseas Economic Cooperation operations.

**Capital of the Bank**

The following table sets forth information concerning the Bank's total assets and equity based on both statutory financial statements (*"JBIC Law financial statements"*) and Japanese GAAP financial statements.

**JBIC Law Financial Statements**

| (millions of yen) | Total | | | International Financial Account | | | Overseas Economic Cooperation Account | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Year ended March 31, | | | | | |
| | 2005 | 2006 | 2007 | 2005 | 2006 | 2007 | 2005 | 2006 | 2007 |
| Total assets | 21,024,581 | 21,061,482 | 20,934,069 | 9,779,508 | 9,782,576 | 9,668,546 | 11,245,073 | 11,278,906 | 11,265,5 |
| Total equity | 8,730,107 | 8,998,531 | 9,337,987 | 1,727,538 | 1,766,824 | 1,801,015 | 7,002,569 | 7,231,707 | 7,536,9 |
| Capital | 7,876,744 | 8,051,144 | 8,217,008 | 985,500 | 985,500 | 985,500 | 6,891,244 | 7,065,644 | 7,231,5 |
| Reserve | 761,749 | 820,473 | 911,299 | 676,258 | 709,148 | 745,236 | 85,491 | 111,325 | 166,0 |
| Earnings | 91,614 | 126,914 | 209,680 | 65,780 | 72,176 | 70,279 | 25,834 | 54,738 | 139,4 |
| Total equity/ Total | | | | | | | | | |

| assets | 41.52% | 42.73% | 44.61% | 17.66% | 18.06% | 18.63% | 62.27% | 64.12% | 66. |

20

Table of Contents

## Japanese GAAP Financial Statements

| (millions of yen) | Total | | | International Financial Account Year ended March 31, | | | Overseas Economic Cooperation Account | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2005 | 2006 | 2007 | 2005 | 2006 | 2007 | 2005 | 2006 | 2007 |
| Total assets | 20,653,038 | 20,897,824 | 20,822,723 | 9,827,312 | 9,863,621 | 9,736,893 | 10,825,726 | 11,034,203 | 11,085,8 |
| Total equity | 8,175,343 | 8,626,381 | — | 1,599,369 | 1,646,190 | — | 6,575,973 | 6,980,190 | – |
| Capital | 7,876,744 | 8,051,144 | — | 985,500 | 985,500 | — | 6,891,244 | 7,065,644 | – |
| Reserve | 298,598 | 575,236 | — | 613,869 | 660,690 | — | (315,270) | (85,454) | – |
| Total equity/ Total assets | 39.58% | 41.28% | — | 16.27% | 16.69% | — | 60.74% | 63.26% | — |
| Total net assets | — | — | 9,028,911 | — | — | 1,678,527 | — | — | 7,350,3 |
| Capital | — | — | 8,217,008 | — | — | 985,500 | — | — | 7,231,5 |
| Retained Earnings | — | — | 813,052 | — | — | 694,149 | — | — | 118,8 |
| Total net assets/ Total assets | — | — | 43.36% | — | — | 17.24% | — | — | 66. |

In the fiscal year ended March 31, 2002, the Bank began to compute its BIS based capital adequacy ratio as set forth in the table below.

| (millions of yen) | Year ended March 31, | | | | | |
|---|---|---|---|---|---|---|
| | 2006 | | | 2007 | | |
| | Total | International Financial Account | Overseas Economic Cooperation Account | Total | International Financial Account | Overseas Economic Cooperation Account |
| Core Capital (Tier I)(A) | 8,590,293 | 1,610,103 | 6,980,190 | 8,994,894 | 1,644,510 | 7,350,383 |
| Supplementary Capital (Tier II) (B) | 86,390 | 40,872 | 45,518 | 73,933 | 25,064 | 48,869 |
| Exclusion (C) | — | — | — | — | — | — |
| Total Capital (A)+(B)-(C) (D) | 8,676,683 | 1,650,975 | 7,025,708 | 9,068,827 | 1,669,574 | 7,399,252 |
| Risk Assets, etc (E) | 21,443,350 | 8,926,180 | 12,517,170 | 18,638,647 | 8,661,525 | 9,977,122 |
| Total Capital Ratio (D)/(E) | 40.46% | 18.49% | 56.12% | 48.65% | 19.27% | 74.16% |
| Tier I Ratio (A)/(E) | 40.06% | 18.03% | 55.76% | 48.25% | 18.98% | 73.67% |

(1)  Because general loan loss allowance of up to 1.25% of risk assets, etc (Item (E)) can be in the calculation for supplementary capital, the sum of International Financial Account and Overseas Economic Cooperation Account do not reconcile to the total figure.

(2)  Beginning from the fiscal year ended March 31, 2007, credit risk is computed in accordance with the Standardized Approach pursuant to Basel II.

21

Table of Contents

Non-performing Loans

In the fiscal year ended March 31, 2001, the Bank began to assess all claims and monitor risks on its loans and other credits in accordance with the standards set forth in the Financial Inspection Manuals of the Financial Services Agency of Japan, and is applying to its assets the asset quality self-assessment standards applied by Japanese commercial financial institutions to their assets. The Bank's asset quality self-assessment is based on its financial statements prepared in accordance with Japanese GAAP.

The Bank assessed its loans and other credits in accordance with disclosure requirements that are based, in all material respects, on two sets of disclosure regulations that are followed by commercial financial institutions in Japan, although the Bank is not required to follow either set of regulations. The first set of disclosure regulations includes those set forth under the Banking Law of 1981, as amended (the *"Banking Law"*). The Banking Law standards require *"Risk-monitored Loans"* to be disclosed in four categories: (1) bankrupt loans, (2) non-accrual loans, (3) past due loans (three months or more), and (4) restructured loans. The loan categories can be described in greater detail as follows:

*"Bankrupt loans"* are loans to borrowers which have begun bankruptcy, composition, reorganization, winding-up or special liquidation proceedings under the Bankruptcy Law, the Corporate Reorganization Law, the Commercial Code or other similar laws of Japan or have had their transactions with the promissory note clearinghouse suspended, or loans to borrowers which have begun similar proceedings under any foreign law.

*"Non-accrual loans"* are loans which are placed non-accrual status when collection of either the principal or interest becomes doubtful, but exclude *"Bankrupt loans"*.

*"Past due loans (three months or more)"* are loans for which principal and/or interest is past due three months or more from the date following the scheduled payment date, but exclude *"Bankrupt loans"* and *"Non-accrual loans"*.

*"Restructured loans"* are loans the terms of which the Bank has modified in favor of borrowers in order to expedite the borrowers' restructuring and to support the borrower by, among other things, reducing the stated interest rate, deferring interest payments or write downs, but exclude (1) *"Bankrupt loans"*, (2) *"Non-accrual loans"*, and (3) *"Past due loans (three months or more)"*.

22

Table of Contents

The following tables set forth the results of the Bank's assessment of its loans according to the Banking Law standards as of March 31, 2006 and 2007:

### Principal Amount of Non-Performing Loans
### Calculated and Disclosed under Banking Law

| | As of March 31, 2006 | | |
| | International Financial Account | Overseas Economic Cooperation Account | Total |
| --- | --- | --- | --- |
| | | (millions of yen) | |
| Bankrupt loans | ¥   47,333 | ¥      — | ¥  47,333 |
| Non-accrual loans | 156,454 | 96,998 | 253,452 |
| Loans past due three months or more as to principal or interest payments | 2,714 | — | 2,714 |
| Restructured loans | 141,007 | 184,691 | 325,699 |
| Total | ¥ 347,510 | ¥ 281,689 | ¥629,199 |

| | As of March 31, 2007 | | |
| | International Financial Account | Overseas Economic Cooperation Account | Total |
| --- | --- | --- | --- |
| | | (millions of yen) | |
| Bankrupt loans | ¥   47,333 | ¥      — | ¥  47,333 |
| Non-accrual loans | 126,610 | 76,876 | 203,487 |
| Loans past due three months or more as to principal or interest payments | — | — | — |
| Restructured loans | 112,868 | 185,191 | 298,060 |
| Total | ¥ 286,813 | ¥ 262,068 | ¥548,881 |

In addition, the Bank has assessed its loans and other assets in accordance with disclosure requirements that are based, in all material respects, on the requirements set forth in the Law on Emergency Measures for the Revitalization of the Functions of the Financial System of 1998, as amended (the *"Financial Revitalization Law"*). The Financial Revitalization Law requires that problem assets be categorized in three categories: (1) bankrupt and quasi-bankrupt assets, (2) doubtful assets and (3) substandard loans, which may be described more fully as follows:

*"Bankrupt and quasi-bankrupt assets"* are loans to and other credits to debtors which have begun proceedings under the Bankruptcy Law, the Corporate Reorganization Law, the Financial Revitalization Law or other similar laws of Japan and have financially failed, as well as similar loans as so designated.

*"Doubtful Assets"* are loans to and other credits to debtors whose financial and operational conditions have been deteriorated and which are unlikely to make payment of principal and/or interest on a contractual basis.

*"Substandard loans"* are (1) *"Past due loans (three months or more)"* for which principal and/or interest is past due three months or more from the date following the scheduled payment date excluding *"Bankrupt and quasi-bankrupt assets"* and *"Doubtful assets"*, and (2) restructured loans on which the Bank granted concessions to borrowers in financial difficulties to assist them in their financial recovery and eventually be able to pay to creditors, but exclude *"Bankrupt and quasi-bankrupt assets"*, *"Doubtful assets"* and *"Past due loans (three months or more)"*.

23

Case 3:08-mc-80030-JSW     Document 52     Filed 06/09/2008     Page 80 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1     Page 32 of 59
Case 1:01-cv-02094-RCL     Document 273-4     Filed 05/13/2008     Page 4 of 31

**Table of Contents**

The following table sets forth the result of the Bank's assessment of its loan portfolio according to the Financial Revitalization Law standards as of March 31, 2006 and 2007:

**Problem Assets**
**Calculated and Disclosed under Financial Revitalization Law**

| | As of March 31, 2006 | | |
|---|---|---|---|
| | International Financial Account | Overseas Economic Cooperation Account | Total |
| | (millions of yen) | | |
| Bankrupt and quasi-bankrupt assets | ¥ 47,664 | ¥ — | ¥ 47,664 |
| Doubtful assets | 156,123 | 96,998 | 253,121 |
| Substandard loans | 143,722 | 184,691 | 328,413 |
| Total | ¥ 347,510 | ¥ 281,689 | ¥629,199 |

| | As of March 31, 2007 | | |
|---|---|---|---|
| | International Financial Account | Overseas Economic Cooperation Account | Total |
| | (millions of yen) | | |
| Bankrupt and quasi-bankrupt assets | ¥ 47,665 | ¥ — | ¥ 47,665 |
| Doubtful assets | 126,278 | 76,876 | 203,155 |
| Substandard loans | 112,868 | 185,191 | 298,060 |
| Total | ¥ 286,813 | ¥ 262,068 | ¥548,881 |

In the event that a debtor country is temporarily unable to repay its external public debt (debts to creditors that are public institutions such as central governments, trade insurance agencies and export credit agencies) due to a decline in its balance of payments, meetings of creditor countries (the "Paris Club") may be held to discuss debt relief measures. When creditor countries agree on debt relief measures, debt rescheduling agreements between the creditors and a debtor are agreed, and repayments are made according to the agreements. During this temporary liquidity assistance effort, the debtor country implements an economic reform program pursuant to an agreement with the IMF and continues repayments of its debts. The principal amount of loans as of March 31, 2007, for which the Bank agreed to provide debt relief pursuant to the Paris Club agreements was ¥347,972 million on the International Financial Account and ¥1,246,893 million on the Overseas Economic Cooperation Account.

In the past, the Bank had not categorized the loans rescheduled under the Paris Club agreements, described above, under "Restructured loans." This practice was based on the assumption that, unlike loans provided by private financial institutions, the Bank's loans, as loans from a public creditor, benefit from an asset securing mechanism under the international framework which accords a high probability of repayment. However, in order to facilitate comparison with private financial institutions, effective from the fiscal year ended March 31, 2005, the Bank now classifies its loans rescheduled under the Paris Club made to borrowers classified under the Banking Law self assessment as "Watchlisted", but not "Past due loans (3 months or more)", as "Restructured loans". The amount of such loans as of March 31, 2007, included in "Restructured loans" in the above table, is ¥7,753 million attributable to the International Financial Account, of which ¥3,838 million represents original principal and ¥185,191 million attributable to the Overseas Economic Cooperation Account, of which ¥101,267 million represents original principal.

24

**Table of Contents**

**Risk Management**

The Bank manages major risks in its operations as a policy-lending institution in the following manner.

*Credit Risks*

*Managing credit risks*

The cornerstone of credit risk management at the Bank is evaluation of an individual borrower's creditworthiness, among other factors, in the process leading to credit approval. When a new credit is processed, the relevant financing departments, credit analysis department and country economic analysis department collect and analyze information on the borrower. The overseas representative offices also play a part in collecting information on foreign governments and corporations. Credit appraisal takes place, with checks and balances at work between these different departments throughout the process, leading to the final decision by the management.

For lending to foreign governments and corporations, the Bank makes most use of its position as a public institution and exchanges views and information with governments and other authorities in recipient countries, international institutions such as the IMF and the World Bank, other regional development banks and official export credit agencies as well as private financial institutions in the industrial countries. Using all these channels, the Bank evaluates sovereign or country risk based on a broad range of information on government and government agency borrowers as well as political and economic conditions in their countries.

For credit to domestic and foreign corporations, there is need to evaluate their creditworthiness and the appropriateness of the collateral they provide. In particular, for credit related to projects overseas, credit evaluation involves checking and examining the certainty of transactions to be financed, feasibility studies of projects and the industry in which the borrower operates.

*Internal credit rating*

The Bank recently started an internal credit rating program that covers substantially all of its borrowers. The Bank uses its internal credit ratings for loan appraisals and to quantify its credit risks.

*Internal assessment of asset portfolio*

As part of its internal credit risk management, the Bank started self-assessments of its asset portfolio in the year ended March 31, 2001. The Bank is undertaking internal assessments, similar to Japanese private financial institutions, in accordance with the Financial Inspection Manuals prepared by the Financial Services Agency as well as in discussion with an auditing firm to assure the appropriateness of the Bank's self-assessment of its loan assets. In this process, the Bank, following the examples of private financial institutions, conducts first stage assessments by the relevant financing departments, second stage assessments by the credit and country economic analysis departments, and inspections by the auditing department. The results of this internal assessment of asset portfolios are used for the disclosure of the quality of assets to enhance the transparency of the Bank's financial position. See Note 5 of *"Notes to Financial Statements"*.

*Quantifying credit risks*

In addition to individual credit risk management, the Bank is working on quantifying credit risks with a view to reflecting them in financing policy in the future. To quantify credit risks, it is important to take into account the characteristic of the Bank's loan portfolio that there is a significant proportion of long-term loans and loans involving sovereign risk or country risk. Also to be taken into account is the mechanism of securing assets, such as the framework of international financial assistance to debtor countries through the Paris Club, which is unique to official creditors. Currently, work is under way on measuring the volume of overall credit risks, incorporating these factors.

25

Case 3:08-mc-80030-JSW     Document 52     Filed 06/09/2008     Page 82 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1     Page 34 of 59
Case 1:01-cv-02094-RCL     Document 273-4     Filed 05/13/2008     Page 6 of 31

Table of Contents

*Market Risks*

*Exchange rate risk*

Foreign currency-denominated loans of the Bank's international financial operations involve risks related to exchange rate fluctuations. The Bank has a consistent policy of managing its risk by hedging the full amount of such exposure through currency swaps and forward exchange transactions. Loans provided by the Bank's overseas economic cooperation operations do not involve exchange rate risk, since none of the loans are denominated in foreign currencies.

*Interest rate risk*

In the Bank's international financial operations, interest rate risk for foreign currency-denominated (and for a portion of yen-denominated loans) is mainly hedged by using interest rate swaps by which both foreign currency-denominated loans (and for a portion of yen-denominated loans) and the related funding arrangements can be managed on a floating rate basis. Interest rate risk for yen-denominated loans is limited since maturity of loans and the related funding arrangements, both on a fixed-rate basis, are generally matched. In addition, the Bank makes careful projections of its future asset/liability structure and profits and losses.

In the Bank's overseas economic cooperation operations, the capacity for absorbing interest rate risk is enhanced by capital injection from the national budget along with borrowing under the *zaito* program (see *"Government Control and Supervision"*). As in the case of the international financial operations, careful projections are made by the Bank of its future asset/liability structure and profits and losses.

*Derivatives transactions*

*Policy for derivatives transactions*

The Bank engages in derivatives transactions exclusively for the purpose of hedging exchange rate and interest rate risks that are involved in its lending and funding operations.

*Transactions*

Derivatives transactions of the Bank include interest rate and currency swaps and forward exchange contracts. The table below gives details of these transactions as of March 31, 2007.

**Credit Risk Amounts of Derivatives, etc.**

| | As of March 31, 2007 | |
| | Notional Amount | Credit Risk |
| | (billions of yen) | |
|---|---|---|
| Interest Rate Swap | ¥ 2,610 | ¥ 44 |
| Currency Swaps | 4,592 | 399 |
| Forward Exchange Contracts | 2.3 | 0.1 |
| Other Derivatives | — | — |
| Credit Risk Reductions through Netting | — | (201) |
| Total | ¥ 7,204 | ¥ 242 |

26

**Table of Contents**

*Risks involved in derivatives transactions and policies for addressing risks*

*Credit risk.* Potential loss from the failure of a counterparty to perform its obligations in accordance with terms and conditions of the contract governing transactions due to bankruptcy or deteriorating business conditions.

The Bank constantly monitors the market value of derivatives transactions as to each counterparty and the amount of its credit exposure to and creditworthiness of each counterparty in order to ascertain the appropriateness of entering into or maintaining a transaction with each counterparty.

*Liquidity Risk.* Liquidity risk refers to the risk of cash flow tightening due to worsening fund-raising capability that arises from deterioration of creditworthiness or mismatches in the maturity of assets and liabilities. The Bank is minimizing the liquidity risk through effective cash flow management and diversification of its funding sources. In addition, multiple financial institutions have established short-term credit line with the Bank. The Bank borrows under the *zaito* program and issues government-guaranteed bonds in the international capital markets. The Bank started to issue bonds without a government guarantee in the domestic capital market in the year ended March 31, 2001.

*Operational Risk.* Operational risk refers to the potential loss from neglecting of duty or from accidents or misdeeds on the part of the Bank's management and staff or from external events. The Bank has been minimizing this risk by ensuring accurate operations through checks on the administrative process, creating operational manuals, improving training programs, and streamlining and computerizing the procedures. In addition, the Audit Department, in charge of internal auditing, inspects the administrative practices of the head office, the Osaka Branch and overseas representative offices.

*Computer System Risk.* Computer system risk refers to the potential loss from a breakdown or malfunction in computer systems as well as from their misuse. With greater reliance on information systems, there is an increasing need to make the operations of the Bank smoother and more effective by exchanging information with Japanese firms as well as foreign governments through information networks. It is thus important to give greater weight to information management and staff with respect to internal information management and by putting in place measures to block illegal access to the Bank's information systems from external sources by way of information networks. As part of an effort to ensure information security, the Bank drew up the Information Security Policy and created the Information Security Committee, consisting of the Senior Executive Director in charge and heads of the relevant departments.

27

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 84 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 36 of 59
Case 1:01-cv-02094-RCL    Document 273-4 - Filed 05/13/2008    Page 8 of 31

Table of Contents

# MANAGEMENT

The JBIC Law stipulates that Bank's management consists of a Governor, two Deputy Governors and Managing Directors and up to seven Senior Executive Directors. In addition to these officers, the Bank shall have up to two Auditors. The Governor and the Auditors are appointed by the Minister of Finance and the Deputy Governors and Managing Directors are appointed by the Governor with the consent of the Minister of Finance. Senior Executive Directors are appointed by the Governor.

The Governor is the Bank's chief executive officer, and the Deputy Governors and Managing Directors are his alternates. The Senior Executive Directors exercise various management functions in accordance with delegations from the Governor, but final authority in all matters resides exclusively with the Governor.

The Auditors audit the business of the Bank and may submit their views to the Governor or the supervising Ministers (the Minister of Finance and the Minister of Foreign Affairs, or the Minister of Finance and the Minister of Defense in case the Bank conducts the Financial Operations for Facilitating Realignment of U.S. Forces in Japan) when they deem it necessary. Every half year, the Auditors audit the Bank's statutory financial statements. Their opinion, together with the statutory financial statements, is submitted to the Minister of Finance within two months after termination of the first six-month period of each fiscal year and within three months after termination of each fiscal year.

## The Bank's Executive Officers (as of October 1, 2007)

| Title | Name |
|---|---|
| Governor | Koji Tanami |
| Deputy Governor and Managing Director | Yoshihiko Morita |
| Senior Executive Director | Fumio Hoshi |
| Senior Executive Director | Tetsuo Shioguchi |
| Senior Executive Director | Manabu Morimoto |
| Senior Executive Director | Wataru Yoshida |
| Senior Executive Director | Hideo Matsui |
| Senior Executive Director | Izumi Arai |
| Senior Executive Director | Koji Sumiya |
| Auditor | Yorihiro Narita |
| Auditor | Hisanao Sato |
| | |
| Executive Director, JBIC Institute | Hiroto Arakawa |
| Resident Executive Director, Osaka Branch | Yoshitaka Narita |
| Executive Director | Kazushi Hashimoto |
| Executive Director | Aya Yamazaki |
| Resident Executive Director for Asia and Oceania | Takaya Naito |
| Resident Executive Director for Europe and the Middle East | Kohei Nakanishi |
| Resident Executive Director for Africa | Shigeru Kiyama |
| Resident Executive Director for the Americas | Yasushi Momose |

28

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 85 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 37 of 59
Case 1:01-cv-02094-RCL    Document 273-4    Filed 05/13/2008    Page 9 of 31

Table of Contents

## DEBT RECORD

There has been no default on any obligation of the Bank.

## FINANCIAL STATEMENTS OF JAPAN BANK FOR INTERNATIONAL COOPERATION AND AUDITORS

The JBIC Law requires the Bank to prepare statutory financial statements twice a year and to submit them, with an opinion of the Bank's Auditors thereon, to the Minister of Finance. The accounts of the Government Agencies, which include the Bank, are examined semi-annually by the Board of Audit to determine compliance with certain statutory requirements. The Board of Audit is an independent body created by the Constitution of Japan, and its Examination Reports on the accounts of the Bank and the other Government Agencies, together with its Audit Reports on the final accounts of the Government, are submitted to the Diet through the Cabinet.

Since the fiscal year ended March 31, 2001, the Bank has prepared and made public financial statements in accordance with generally accepted accounting principles and practices for Japanese private corporations (Japanese GAAP), in addition to preparing the statutory financial statements in accordance with the JBIC Law and regulations thereunder. The Bank's Japanese GAAP financial statements consist of a balance sheet, statement of operations, statement of cash flows, statement of equity, and accompanying notes, all presented in accordance with Japanese GAAP and available in English as well as in Japanese (see Exhibit 4 to this Annual Report on Form 18-K). The Bank's Japanese GAAP financial statements for the fiscal years ended March 31, 2006 and 2007 are set forth in Exhibit 4 to this Annual Report on Form 18-K. The portion relating to the fiscal year ended March 31, 2007 has been audited by Ernst & Young ShinNihon, independent accountants, as stated in their report, which is incorporated in that exhibit. The previous accounting firm that audited the Bank's Japanese GAAP financial statements for the fiscal years ended March 31, 2001 through 2006 was replaced by Ernst & Young ShinNihon starting in the fiscal year ended March 31, 2007. JBIC may from time to time review its financial statements and accounting procedures and to make appropriate changes to them reflecting market practices and regulations. In preparing the financial statements presented in accordance with Japanese GAAP, the Bank made necessary adjustments to its statutory financial statements, which were prepared based on the Bank's statutes and related regulations as well as accounting principles applied to special public corporations. The principal differences in accounting practice between the two sets of financial statements pertain to the calculation of the provision for allowance for possible loan losses, the calculation of the allowance for employee retirement benefits, and the accounting treatment of foreign currency transactions and financial products.

29

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 86 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 38 of 59
Case 1:01-cv-02094-RCL    Document 273-4    Filed 05/13/2008    Page 10 of 31

**Table of Contents**

### Key Differences Between the Japanese GAAP and JBIC Law Financial Statements

| | Japanese GAAP Financial Statements | JBIC Law Financial Statements |
|---|---|---|
| Profit distribution | • Payments to the National Treasury are classified as profit distribution | • The JBIC Law and Cabinet orders provide that half of profits in the International Financial Account shall be transferred to reserves. All profits in the Overseas Economic Cooperation Account shall be transferred to reserves |
| | | • Profits remaining in the International Financial Account after providing for reserves shall be paid to the National Treasury |
| Allowance for possible loan and investment losses | • Provided based on the results of a self-assessment of assets according to the Financial Inspection Manuals | • JBIC provides an allowance based on a MOF Notification |
| | • Conducts a self-assessment of loan assets and provide a general allowance based on a projected loss rate for loans to Normal borrowers and Watch borrowers | <International Financial Account> |
| | | • In principle, provided at 3/1,000 of loans outstanding at the fiscal year-end |
| | • As for loans to Potentially bankrupt borrowers, Substantially bankrupt borrowers and Bankrupt borrowers, establishes specific allowance / depreciation according to a self-assessment of loan assets | • For loans to countries subject to Paris Club relief measures, the allowance is provided within an amount calculated based on the agreed reduced rate |
| | • Establishes allowance for possible investment losses for Category III investments and depreciation for Category IV investments | • The allowance is provided equal to 100% of each of the following outstanding loans: (i) loans to the countries which are categorized as HIPCs, and have reached the Completion Point at fiscal year-end, (ii) loans to the HIPCs which have not reached the Decision Point at the end of FY2002, and (iii) loans under TDB scheme |
| | | <Overseas Economic Cooperation Account> |
| | | • For ODA loans, provided at 0.1/1,000 of loans outstanding at fiscal year-end |
| | | • For private-sector investment finance, provided at 30/1,000 of loans outstanding at fiscal year-end |
| | | • For equity participation, to cover undistributed losses of invested corporations, provided in proportion to JBIC's investment against total investment to the corporations |
| | | • The allowance is provided equal to 100% of each of the outstanding loans to the HIPCs which have not reached |

Case 1:01-cv-02094-RCL    Document 273-4    Filed 05/13/2008    Page 11 of 31

|  |  |  | the Decision Point at the end of FY 2002 |
|---|---|---|---|
| Allowance for employee retirement benefits | • | Calculates retirement benefit obligations and provides allowance after deducting the current market value of pension assets | • Not provided |
| Translation of foreign currency transactions | • | Previous month-end TTM for transactions during the year. Fiscal year-end stock at fiscal year-end TTM | • Non-exchange transactions are stated at the Basic Rate of Exchange (revised semi-annually in January and July by The Bank of Japan). Transactions covered by a forward exchange contract are stated at the contract rate |
| Financial products (derivatives) | • | All derivative financial instruments are carried at fair value, except for certain derivatives for that hedge accounting is employed | • Off balance sheet transactions |
| Statements of cash flows | • | Cash flows during the period are classified into operating activities, investing activities and financing activities | • Not prepared |

30

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 88 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX.99.1    Page 40 of 59
Case 1:01-cv-02094-RCL    Document 273-4    Filed 05/13/2008    Page 12 of 31

Table of Contents

**Differences between the Japanese GAAP and JBIC Law Financial Statements with regard to total assets and total net assets as of March 31, 2007**

| | Total | | | International Financial Account | | | Overseas Economic Cooperation Ac |  |  |
|---|---|---|---|---|---|---|---|---|---|
| | Japanese GAAP ① | JBIC Law ② | ① – ② | Japanese GAAP ① | JBIC Law ② | ① – ② | Japanese GAAP ① | JBIC Law ② | ① |
| | | | | (Millions of yen) | | | | | |
| Total Assets | ¥20,823 | ¥20,934 | ¥(111) | ¥ 9,737 | ¥ 9,669 | ¥ 68 | ¥ 11,086 | ¥ 11,266 | ¥ |
| Total Net Assets[1] | 9,029 | 9,338 | (309) | 1,679 | 1,801 | (123) | 7,350 | 7,537 | — |
| Capital | 8,217 | 8,217 | — | 986 | 986 | — | 7,232 | 7,232 | |
| Retained Earnings[2] | 813 | 1,121 | (308) | 694 | 816 | (121) | 119 | 305 | |
| Total Net Assets/ Total Assets | 43.36% | 44.61% | (1.25)% | 17.24% | 18.63% | (1.39)% | 66.30% | 66.90% | ( |

(1) In the JBIC Law Financial Statements, this column shows Total Equity.
(2) In the JBIC Law Financial Statements, this column shows the sum of Reserve and Net Earnings.

31

Table of Contents

### Report of Auditors of Japan Bank for International Cooperation

JAPAN BANK FOR INTERNATIONAL COOPERATION
4-1, Ohtemachi 1-chome
Chiyoda-ku, Tokyo

As auditors of Japan Bank for International Cooperation, we have audited the balance sheet of Japan Bank for International Cooperation as of March 31, 2007 and the related statement of earnings for the year ended March 31, 2007. Our audit was made in accordance with the Japan Bank for International Cooperation Law and regulations thereunder.

The aforesaid financial statements were prepared in accordance with JBIC Law, the regulations thereunder and the accounting principles for special public corporations (Report dated October 2, 1987 from the Sub-Committee on the Accounting Practices for Public Corporations under the Fiscal System Council).

In our opinion, the financial statements referred to above present fairly the financial position of Japan Bank for International Cooperation as of March 31, 2007 and the results of its operations for the year then ended.

/s/ Yorihiro Narita
YORIHIRO NARITA
Auditor
Japan Bank for International Cooperation


/s/ Hisanao Sato
HISANAO SATO
Auditor
Japan Bank for International Cooperation

September 28, 2007

32

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
### BALANCE SHEETS (THE BANK)

| | March 31, 2007 | March 31, 2006 | March 31, 2007 |
|---|---|---|---|
| | (Millions of Yen) | | (Millions of U.S. Dollars) |
| **ASSETS:** | | | |
| Cash and Cash Equivalents | ¥ 326,200 | ¥ 646,577 | $ 2,788 |
| Loans (Note 2) | 19,202,282 | 19,329,471 | 164,122 |
| Investments | 140,750 | 153,183 | 1,203 |
| Securities | 8,622 | 10,186 | 74 |
| Accrued Interest Income | 145,276 | 144,337 | 1,242 |
| Miscellaneous Assets | 38,836 | 149,247 | 332 |
| Premises and Equipment | 25,647 | 25,969 | 219 |
| Deferred Charges | 3,062 | 4,018 | 26 |
| Customers' Liabilities for Acceptances and Guarantees | 1,492,439 | 1,055,083 | 12,756 |
| Allowance for Possible Loan and Investment Losses | (449,046) | (456,589) | (3,838) |
| TOTAL ASSETS | ¥20,934,069 | ¥21,061,482 | $ 178,924 |
| **LIABILITIES, CAPITAL AND RESERVES** | | | |
| Liabilities: | | | |
| Borrowings (Note 4): | ¥ 8,094,826 | ¥ 8,926,789 | $ 69,187 |
| Bonds and Notes | 1,914,517 | 1,991,422 | 16,363 |
| Accrued Expenses | 84,237 | 81,866 | 720 |
| Miscellaneous Liabilities | 10,063 | 7,791 | 86 |
| Acceptances and Guarantees | 1,492,439 | 1,055,083 | 12,756 |
| TOTAL LIABILITIES | 11,596,081 | 12,062,951 | 99,112 |
| Capital and Reserves: | | | |
| Capital of the International Financial Account (Note 5) | 985,500 | 985,500 | 8,423 |
| Capital of the Overseas Economic Cooperation Account (Note 5) | 7,231,508 | 7,065,644 | 61,808 |
| Reserve of the International Financial Account (Note 6) | 745,236 | 709,148 | 6,370 |
| Net Earnings of the International Financial Account | 70,279 | 72,176 | 601 |
| Reserve of the Overseas Economic Cooperation Account (Note 6) | 166,062 | 111,325 | 1,419 |
| Net Earnings of the Overseas Economic Cooperation Account | 139,402 | 54,738 | 1,191 |
| TOTAL CAPITAL AND RESERVES | 9,337,987 | 8,998,531 | 79,812 |
| TOTAL LIABILITIES, CAPITAL AND RESERVES | ¥20,934,069 | ¥21,061,482 | $ 178,924 |

See *"Notes to Financial Statements"*.

33

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## STATEMENTS OF EARNINGS (THE BANK)

| | Fiscal Year Ended March 31, 2007 | Fiscal Year Ended March 31, 2006 | Fiscal Year Ended March 31, 2007 |
|---|---|---|---|
| | (Millions of Yen) | | (Millions of U.S. Dollars) |
| **Ordinary Income:** | | | |
| Interest on Loans | ¥ 577,217 | ¥ 568,359 | $ 4,933 |
| Guarantee Commissions | 4,254 | 3,866 | 36 |
| Interest on Securities | 217 | 40 | 2 |
| Dividends on Investments | 7,142 | 5,692 | 61 |
| Grant from General Account | 30,000 | 30,000 | 256 |
| Interest on Deposits in Banks | 8,349 | 5,867 | 71 |
| Interest on Swaps and Miscellaneous Interest Received | 12,941 | 19,942 | 111 |
| Commissions | 2,189 | 2,275 | 19 |
| Foreign Exchange Gains | 3,413 | 6,347 | 29 |
| Gain on Disposal of Investments | 75 | — | 1 |
| Other Income | 2,542 | 3,174 | 22 |
| Reversal of Allowance for Possible Loan and Investment Losses | 456,589 | 449,023 | 3,902 |
| Total | ¥ 1,104,928 | ¥ 1,094,583 | $ 9,444 |
| **Ordinary Expenses:** | | | |
| Interest on Borrowings | ¥ 157,505 | ¥ 180,350 | $ 1,346 |
| Interest on Bonds and Notes | 70,799 | 54,746 | 605 |
| Interest on Swaps and Miscellaneous Interest Payment | 129,007 | 71,776 | 1,103 |
| Administrative Expenses | 24,368 | 23,793 | 208 |
| Depreciation of Premises and Equipment | 1,073 | 1,076 | 9 |
| Commissions | 6,219 | 5,849 | 53 |
| Foreign Exchange Losses | 3,023 | 5,448 | 26 |
| Loss from Disposal of Investments | 4,624 | 1,684 | 40 |
| Write-off of Loans | 47,322 | 163,202 | 404 |
| Amortization of Discounts on Bonds and Notes | 569 | 558 | 5 |
| Amortization of Bond and Note Issue Expenses | 972 | 1,044 | 8 |
| Other Expenses | 719 | 1,555 | 6 |
| Provision for Allowance for Possible Loan and Investment Losses | 449,046 | 456,589 | 3,838 |
| | 895,247 | 967,670 | 7,652 |
| Net Earnings of the International Financial Account | 70,279 | 72,176 | 601 |
| Net Earnings of the Overseas Economic Cooperation Account | 139,402 | 54,738 | 1,191 |
| Total | ¥ 1,104,928 | ¥ 1,094,583 | $ 9,444 |

See *"Notes to Financial Statements"*.

34

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 92 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 44 of 59
Case 1:01-cv-02094-RCL    Document 273-4    Filed 05/13/2008    Page 16 of 31

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## STATEMENTS OF CHANGES IN FINANCIAL POSITION (THE BANK)

| | Fiscal Year Ended March 31, 2007 | Fiscal Year Ended March 31, 2006 |
|---|---|---|
| | (millions of yen) | |
| Funds Brought Forward from the Prior Fiscal Period | ¥ 646,577 | ¥ 169,036 |
| SOURCE OF FUNDS: | | |
| Investments from Government | 165,864 | 174,400 |
| Grant from Government | 30,000 | 30,000 |
| Long-term Borrowings from Government Trust Fund Bureau | 702,100 | 726,900 |
| Long-term Borrowings from Government Post Office Life Insurance Fund | — | — |
| Short-term Borrowings from Private Banks | 23,500 | 50,000 |
| Bonds and Notes | 187,750 | 526,200 |
| Collection from Loans | 1,918,497 | 2,082,300 |
| Interest on Loans | 546,555 | 462,493 |
| Guarantee Commissions | 3,807 | 3,656 |
| Interest on Securities | 192 | 25 |
| Interest on Deposits in Banks | 8,349 | 5,867 |
| Interest on Swaps and Miscellaneous Interest Received | 146,840 | 125,561 |
| Others | 28,623 | 21,330 |
| TOTAL SOURCES | ¥ 3,762,077 | ¥ 4,208,732 |
| USE OF FUNDS: | | |
| Loans | 1,661,565 | 1,504,432 |
| Investments | 568 | 405 |
| Repayment of Borrowings from Government Trust Fund Bureau | 1,494,820 | 1,308,284 |
| Repayment of Borrowings from Government Post Office Life Insurance Fund | 39,243 | 51,562 |
| Repayment of Borrowings from Private Banks | 23,500 | 50,000 |
| Redemption of Bonds and Notes | 305,256 | 333,536 |
| Purchase of Premises and Equipment | 807 | 721 |
| Interest on Borrowings from Government Trust Fund Bureau | 161,768 | 180,378 |
| Interest on Borrowings from Government Post Office Life Insurance Fund | 1,901 | 3,060 |
| Interest on Borrowings from Private Banks | 0 | 1 |
| Interest on Bonds and Notes | 68,772 | 48,530 |
| Interest on Swaps and Miscellaneous Interest Payment | 254,819 | 161,370 |
| Outsourcing Costs | 6,198 | 5,848 |
| Administrative Expenses | 24,154 | 23,548 |
| Miscellaneous Expenses for Bond Issuance | 214 | 244 |
| Others | 2,555 | 24,545 |
| Payment to National Treasury | 36,315 | 34,726 |
| TOTAL USES | ¥ 4,082,454 | ¥ 3,731,191 |
| Funds Carried Forward to the Next Fiscal Period | ¥ 326,200 | ¥ 646,577 |

35

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## BALANCE SHEETS
### (INTERNATIONAL FINANCIAL ACCOUNT)

| | March 31, 2007 | March 31, 2006 | March 31, 2007 |
|---|---|---|---|
| | (Millions of Yen) | | (Millions of U. S. Dollars) |
| **ASSETS:** | | | |
| Cash and Cash Equivalents | ¥ 258,234 | ¥ 628,142 | $ 2,207 |
| Loans (Note 2) | 7,823,666 | 7,900,557 | 66,869 |
| Investments | 810 | 385 | 7 |
| Securities | 8,622 | 10,186 | 74 |
| Accrued Interest Income | 79,593 | 71,461 | 680 |
| Miscellaneous Assets | 38,224 | 148,631 | 327 |
| Premises and Equipment | 18,847 | 19,121 | 161 |
| Deferred Charges | 3,062 | 4,018 | 26 |
| Customers' Liabilities for Acceptances and Guarantees | 1,492,439 | 1,055,083 | 12,756 |
| Allowance for Possible Loan and Investment Losses | (54,950) | (55,009) | (470) |
| TOTAL ASSETS | ¥ 9,668,546 | ¥ 9,782,576 | $ 82,637 |
| **LIABILITIES, CAPITAL AND RESERVES:** | | | |
| Liabilities: | | | |
| Borrowings (Note 4): | ¥ 4,380,023 | ¥ 4,906,569 | $ 37,436 |
| Bonds and Notes | 1,914,517 | 1,981,422 | 16,363 |
| Accrued Expenses | 70,604 | 65,919 | 603 |
| Miscellaneous Liabilities | 9,949 | 6,759 | 85 |
| Acceptances and Guarantees | 1,492,439 | 1,055,083 | 12,756 |
| TOTAL LIABILITIES | 7,867,531 | 8,015,752 | 67,244 |
| Capital and Reserves: | | | |
| Capital (Note 5) | 985,500 | 985,500 | 8,423 |
| Reserve (Note 6) | 745,236 | 709,148 | 6,370 |
| Net Earnings for the Period | 70,279 | 72,176 | 601 |
| TOTAL CAPITAL AND RESERVES | 1,801,015 | 1,766,824 | 15,393 |
| TOTAL LIABILITIES, CAPITAL AND RESERVES | ¥ 9,668,546 | ¥ 9,782,576 | $ 82,637 |

See *"Notes to Financial Statements"*.

36

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## STATEMENTS OF EARNINGS
### (INTERNATIONAL FINANCIAL ACCOUNT)

| | Fiscal Year Ended March 31, 2007 | Fiscal Year Ended March 31, 2006 | Fiscal Year Ended March 31, 2007 |
|---|---|---|---|
| | (Millions of Yen) | | (Millions of U.S. Dollars) |
| **Ordinary Income:** | | | |
| Interest on Loans | ¥ 336,857 | ¥ 320,026 | $ 2,879 |
| Guarantee Commissions | 4,254 | 3,866 | 36 |
| Interest on Securities | 217 | 40 | 2 |
| Interest on Deposits in Banks | 8,338 | 5,867 | 71 |
| Interest on Swaps and Miscellaneous Interest Received | 12,939 | 19,939 | 111 |
| Commissions | 1,628 | 1,589 | 14 |
| Foreign Exchange Gains | 3,413 | 6,347 | 29 |
| Other Income | 2,255 | 2,843 | 19 |
| Reversal of Allowance for Possible Loan and Investment Losses | 55,009 | 46,076 | 470 |
| Total | ¥ 424,911 | ¥ 406,593 | $ 3,632 |
| **Ordinary Expenses:** | | | |
| Interest on Borrowings | ¥ 76,547 | ¥ 91,355 | $ 654 |
| Interest on Bonds and Notes | 70,619 | 54,136 | 604 |
| Interest on Swaps and Miscellaneous Interest Payment | 129,006 | 71,776 | 1,103 |
| Administrative Expenses | 15,195 | 14,843 | 130 |
| Depreciation of Premises and Equipment | 748 | 761 | 6 |
| Commissions | 2,192 | 3,015 | 19 |
| Foreign Exchange Losses | 3,022 | 5,448 | 26 |
| Write-off of Loans | 732 | 35,726 | 6 |
| Amortization of Discounts on Bonds and Notes | 569 | 553 | 5 |
| Amortization of Bond and Note Issue Expenses | 972 | 1,044 | 8 |
| Other Expenses | 79 | 751 | 1 |
| Provision for Allowance for Possible Loan and Investment Losses | 54,950 | 55,009 | 470 |
| | 354,632 | 334,417 | 3,031 |
| Net Earnings | 70,279 | 72,176 | 601 |
| Total | ¥ 424,911 | ¥ 406,593 | $ 3,632 |

See *"Notes to Financial Statements"*.

37

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## STATEMENTS OF CHANGES IN FINANCIAL POSITION
## (INTERNATIONAL FINANCIAL ACCOUNT)

| | Fiscal Year Ended March 31, 2007 | Fiscal Year Ended March 31, 2006 |
|---|---|---|
| | (millions of yen) | |
| Funds Brought Forward from the Prior Fiscal Period | ¥ 628,142 | ¥ 105,346 |
| SOURCE OF FUNDS: | | |
| Long-term Borrowings from Government Trust Fund Bureau | 367,500 | 383,100 |
| Long-term Borrowings from Government Post Office Life Insurance Fund | — | — |
| Short-term Borrowings from Private Banks | 23,500 | 50,000 |
| Bonds and Notes | 187,750 | 526,200 |
| Collection from Loans | 1,299,420 | 1,579,111 |
| Interest on Loans | 312,513 | 272,567 |
| Guarantee Commissions | 3,807 | 3,656 |
| Interest on Securities | 192 | 25 |
| Interest on Deposits in Banks | 8,338 | 5,867 |
| Interest on Swaps and Miscellaneous Interest Received | 146,839 | 125,559 |
| Others | 13,114 | 13,539 |
| TOTAL SOURCES | ¥ 2,362,973 | ¥ 2,959,624 |
| USE OF FUNDS: | | |
| Loans | 1,059,104 | 851,402 |
| Investment | 433 | 293 |
| Repayment of Borrowings from Government Trust Fund Burean | 869,316 | 802,713 |
| Repayment of Borrowings from Government Post Office Life Insurance Fund | 24,730 | 33,094 |
| Repayment of Borrowings from Private Banks | 23,500 | 50,000 |
| Redemption of Bonds and Notes | 295,256 | 318,536 |
| Purchase of Premises and Equipment | 500 | 447 |
| Interest on Borrowings from Government Trust Fund Bureau | 79,232 | 92,108 |
| Interest on Borrowings from Government Post Office Life Insurance Fund | 1,173 | 1,927 |
| Interest on Borrowings from Private Banks | 0 | 1 |
| Interest on Bonds and Notes | 68,583 | 47,907 |
| Interest on Swaps and Miscellaneous Interest Payment | 254,819 | 161,370 |
| Outsourcing Costs | 2,171 | 2,988 |
| Administrative Expenses | 14,992 | 14,616 |
| Miscellaneous Expenses for Bond Issuance | 203 | 227 |
| Others | 2,554 | 24,472 |
| Payment to National Treasury | 36,315 | 34,726 |
| TOTAL USES | ¥ 2,732,881 | ¥ 2,436,828 |
| Funds Carried Forward to the Next Fiscal Period | ¥ 258,234 | ¥ 628,142 |

38

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## BALANCE SHEETS
## (OVERSEAS ECONOMIC COOPERATION ACCOUNT)

|  | March 31, 2007 | March 31, 2006 | March 31, 2007 |
|---|---|---|---|
|  | (Millions of Yen) | | (Millions of U. S. Dollars) |
| **ASSETS:** | | | |
| Cash and Cash Equivalents | ¥ 67,966 | ¥ 18,435 | $ 581 |
| Loans (Note 2) | 11,378,616 | 11,428,913 | 97,253 |
| Investments | 139,940 | 152,798 | 1,196 |
| Accrued Interest Income | 65,683 | 72,876 | 561 |
| Miscellaneous Assets | 613 | 615 | 5 |
| Premises and Equipment | 6,800 | 6,848 | 58 |
| Allowance for Possible Loan and Investment Losses | (394,095) | (401,580) | (3,368) |
| TOTAL ASSETS | ¥11,265,523 | ¥11,278,906 | $ 96,287 |
| **LIABILITIES, CAPITAL AND RESERVES:** | | | |
| Liabilities: | | | |
| Borrowings (Note 4): | ¥ 3,714,803 | ¥ 4,020,220 | $ 31,750 |
| Bonds and Notes | — | 10,000 | — |
| Accrued Interest Expenses | 13,633 | 15,947 | 117 |
| Miscellaneous Liabilities | 114 | 1,032 | 1 |
| TOTAL LIABILITIES | 3,728,550 | 4,047,199 | 31,868 |
| Capital (Note 5) | 7,231,508 | 7,065,644 | 61,808 |
| Reserve (Note 6) | 166,062 | 111,325 | 1,419 |
| Net Earnings for the Period | 139,402 | 54,738 | 1,191 |
| TOTAL CAPITAL AND RESERVES | 7,536,973 | 7,231,707 | 64,419 |
| TOTAL LIABILITIES, CAPITAL AND RESERVES | ¥11,265,523 | ¥11,278,906 | $ 96,287 |

See *"Notes to Financial Statements"*.

39

Case 3:08-mc-80030-JSW    Document 52    Filed 06/09/2008    Page 97 of 112

SEC Info - Japan Bank for International Cooperation - 18-K - For 3/31/07 - EX-99.1    Page 49 of 59
Case 1:01-cv-02094-RCL    Document 273-4    Filed 05/13/2008    Page 21 of 31

Table of Contents

## JAPAN BANK FOR INTERNATIONAL COOPERATION
## STATEMENTS OF EARNINGS
## (OVERSEAS ECONOMIC COOPERATION ACCOUNT)

| | Fiscal Year Ended March 31, 2007 | Fiscal Year Ended March 31, 2006 | Fiscal Year Ended March 31, 2007 |
|---|---|---|---|
| | (Millions of Yen) | | (Millions of U.S. Dollars) |
| **Ordinary Income:** | | | |
| Interest on Loans | ¥ 240,360 | ¥ 248,333 | $ 2,054 |
| Dividends on Investments | 7,142 | 5,692 | 61 |
| Grant from General Account | 30,000 | 30,000 | 256 |
| Interest on Deposits in Banks | 11 | 0 | 0 |
| Miscellaneous Interest Received | 1 | 2 | 0 |
| Commissions | 561 | 686 | 5 |
| Foreign Exchange Gains | 0 | 0 | 0 |
| Gain on Disposal of Investments | 75 | — | 1 |
| Other Income | 287 | 331 | 2 |
| Reversal of Allowance for Possible Loan and Investment Losses | 401,580 | 402,946 | 3,432 |
| Total | ¥ 680,017 | ¥ 687,991 | $ 5,812 |
| **Ordinary Expenses:** | | | |
| Interest on Borrowings | ¥ 80,958 | ¥ 88,995 | $ 692 |
| Interest on Bonds and Notes | 180 | 610 | 2 |
| Miscellaneous Interest Payment | 1 | — | 0 |
| Administrative Expenses | 9,173 | 8,950 | 78 |
| Depreciation of Premises and Equipment | 325 | 315 | 3 |
| Commissions | 4,027 | 2,834 | 34 |
| Foreign Exchange Losses | 0 | — | 0 |
| Loss from Disposal of Investments | 4,624 | 1,684 | 40 |
| Write-off of Loans | 46,590 | 127,476 | 398 |
| Amortization of Discounts on Bonds and Notes | — | 5 | — |
| Other Expenses | 640 | 804 | 5 |
| Provision for Allowance for Possible Loan and Investment Losses | 394,095 | 401,580 | 3,368 |
| | 540,615 | 633,253 | 4,621 |
| Net Earnings | 139,402 | 54,738 | 1,191 |
| Total | ¥ 680,017 | ¥ 687,991 | $ 5,812 |

See *"Notes to Financial Statements"*.

40

Table of Contents

### JAPAN BANK FOR INTERNATIONAL COOPERATION

### STATEMENTS OF CHANGES IN FINANCIAL POSITION
### (OVERSEAS ECONOMIC COOPERATION ACCOUNT)

| | Fiscal Year Ended March 31, 2007 | Fiscal Year Ended March 31, 2006 |
|---|---|---|
| | (millions of yen) | |
| Funds Brought Forward from the Prior Fiscal Period | ¥ 18,435 | ¥ 63,689 |
| SOURCE OF FUNDS: | | |
| Investments from Government | 165,864 | 174,400 |
| Grant from Government | 30,000 | 30,000 |
| Long-term Borrowings from Government Trust Fund Bureau | 334,600 | 343,800 |
| Long-term Borrowings from Government Post Office Life Insurance Fund | — | — |
| Collection from Loans | 619,077 | 503,189 |
| Interest on Loans | 234,042 | 189,926 |
| Interest on Securities | — | — |
| Interest on Deposits in Banks | 11 | 0 |
| Interest on Swaps and Miscellaneous Interest Received | 1 | 2 |
| Others | 15,509 | 7,791 |
| TOTAL SOURCES | ¥ 1,399,104 | ¥ 1,249,108 |
| USE OF FUNDS: | | |
| Loans | 602,461 | 653,030 |
| Investment | 135 | 112 |
| Repayment of Borrowings from Government Trust Fund Bureau | 625,504 | 505,571 |
| Repayment of Borrowings from Government Post Office Life Insurance Fund | 14,513 | 18,468 |
| Redemption of Bonds and Notes | 10,000 | 15,000 |
| Purchase of Premises and Equipment | 307 | 274 |
| Interest on Borrowings from Government Trust Fund Bureau | 82,536 | 88,269 |
| Interest on Borrowings from Government Post Office Life Insurance Fund | 728 | 1,132 |
| Interest on Bonds and Notes | 189 | 623 |
| Interest on Swaps and Miscellaneous Interest Payment | — | — |
| Outsourcing Costs | 4,027 | 2,860 |
| Administrative Expenses | 9,162 | 8,933 |
| Miscellaneous Expenses for Bond Issuance | 11 | 17 |
| Others | 1 | 73 |
| TOTAL USES | ¥ 1,349,573 | ¥ 1,294,362 |
| Funds Carried Forward to the Next Fiscal Period | ¥ 67,966 | ¥ 18,435 |

41

Table of Contents

## 1. Summary of Principal Accounting Policies:

### Basis of presentation

The accompanying financial statements of Japan Bank for International Cooperation (the *"Bank"*) are prepared in conformity with the Japan Bank for International Cooperation Law (the *"JBIC Law"*) and the regulations thereunder and accounting principles and practices generally accepted in Japan. The Bank was established on October 1, 1999. The Bank is the result of a merger between The Export-Import Bank of Japan (*"JEXIM"*) and the Overseas Economic Cooperation Fund, Japan (*"OECF"*).

Pursuant to the JBIC Law, the Bank's international financial operations (succeeded from JEXIM) and overseas economic cooperation operations (succeeded from OECF) are accounted for separately in the international financial account and the overseas economic cooperation account, respectively. The Bank reports the results of operations of the Bank as a whole as well as those of its international financial account and its overseas economic cooperation account separately.

The United States dollar amounts included herein are presented solely for convenience and are stated, as a matter of arithmetical computation only, at the exchange rate effective as of the end of the fiscal year, that is, ¥117 per US$1 for the amounts as of March 31, 2007 and for the year then ended.

### Translation of foreign currencies

Foreign currency loans, bonds and notes are translated into yen equivalent at the Basic Rate of Exchange (revised semi-annually by the Minister of Finance based on the market rates prevailing during the preceding six-month period), except for those covered by forward exchange contracts, which have been translated into yen equivalent at the contracted rates.

### Securities

Total average cost method

### Allowance for possible loan and investment losses

Pursuant to the relevant cabinet order and regulations, the Bank is required to provide an allowance for possible loan and investment losses. The proportion of such an allowance to outstanding loans and investments amount is determined by the Minister of Finance.

#### i) International Financial Account

The Bank provided an allowance in the amount of ¥23,471 million equal to 0.3% of outstanding loan amount as of March 31, 2007.

For (i) loans to the countries, which are categorized as Heavily Indebted Poor Countries (*"HIPCs"*), and have not reached the Decision Point at the end of the Fiscal Year ended March 31, 2003, and (ii) loans under TDB (the Trade and Development Board) scheme, the Bank provided a separate allowance to cover possible losses in the amount of ¥2,086 million and 12,806 million, respectively, equal to 100% of each of the outstanding loans as of March 31, 2007.

In addition, for loans stipulated in the regulation 293 of the Ministry of Finance dated as of September 30, 1999, the Bank provided a separate allowance to cover possible losses in the amount of ¥16,587 million.

#### ii) Overseas Economic Cooperation Account

For official development assistance (ODA) loans, the Bank provided an allowance in the amount of ¥1,137 million equal to 0.01% of outstanding loans as of March 31, 2007.

For loans for private-sector investment finance, the Bank provided an allowance in the amount of ¥114 million equal to 3% of outstanding loans as of March 31, 2007.

In addition, for loans to the HIPCs, which have not reached the Decision Point at the end of the fiscal year ended March 31, 2003, the Bank provided a separate allowance to cover possible losses in the amount of ¥363,533 million equal to 100% of outstanding loans as of March 31, 2007.

For investments, the Bank provided an allowance in the amount of ¥29,311 million to cover possible losses: the amount of such an allowance is calculated in proportion to the ratio of accumulated losses of each invested firm/fund to the total capital hereof.

*Bank premises and equipment and depreciation*

Premises and equipment are stated at cost. Depreciation has been computed by the declining-balance method for buildings (other than those acquired on or after April 1, 1998 by the Bank or its predecessors), furniture and fixtures, and by the straight-line method for intangible assets, based on the estimated useful lives as prescribed by the Corporate Tax Law of Japan. Accumulated depreciation amount is ¥19,062 million as of March 31, 2007.

*Consumption tax*

Consumption tax (including local consumption tax) are included in the transaction amount.

*Method of amortization for deferred charges*

*"Discounts of bonds and notes"* are amortized over terms of redemption (5, 10, 11, 12 and 15 years), and *"Bonds and notes issuance cost"* are amortized over 3 years, on a straight-line basis in accordance with the regulation 293 of the Ministry of Finance dated as of September 30, 1999.

42

**Table of Contents**

**2. Loans:**

Loans are stated at face value. Loans of the Bank as of March 31, 2007 consisted of the following:

|  | March 31, 2007 (millions of yen) | March 31, 2007 (millions of U. S. dollars) |
|---|---|---|
| International financial account: |  |  |
| Loans in Japanese yen | ¥ 2,951,271 | $ 25,225 |
| Loans in foreign currency | 4,872,395 | 41,644 |
| Subtotal | ¥ 7,823,666 | $ 66,869 |
| Overseas economic cooperation account: |  |  |
| Loans in Japanese yen | ¥11,378,616 | $ 97,253 |
| Loans in foreign currency | — | — |
| Subtotal | ¥11,378,616 | $ 97,253 |
| Total loans in Japanese yen | ¥14,329,887 | $ 122,478 |
| Total loans in foreign currency | 4,872,395 | 41,644 |
| Total loans | ¥19,202,282 | $ 164,122 |

**3. Loans Past Due:**

Loans of the Bank include the following non-performing loans:

|  | March 31, 2007 (millions of yen) | | |
|---|---|---|---|
|  | International Financial Account | Overseas Economic Cooperation Account | Total |
| Loans past due | ¥ 94,640 | ¥ 334,750 | ¥429,390 |

*"Loans past due"* are loans which are placed on non-accrual status if they are past due for more than six months or for other reasons in accordance with the regulation 293 of the Ministry of Finance dated as of September 30, 1999.

In the event that a debtor country requests debt restructuring with respect to external public debt, meetings of creditor countries (*"The Paris Club"*) will be held about debt relief measures. When creditor countries agree on debt relief measures, a rescheduled agreement between a creditor and a debtor is agreed, and repayments are made according to the agreement. Therefore, loans which are agreed on debt relief on the Paris Club are excluded from *"Loans past due."* Such amount excluded from *"Loan past due"* and the amounts which are decided by the Japanese government to be waived are:

|  | March 31, 2007 (millions of yen) | | |
|---|---|---|---|
|  | International Financial Account | Overseas Economic Cooperation Account | Total |
| Amounts agreed at the Paris Club | ¥ 6,997 | ¥ 64,814 | ¥71,811 |
| Amounts decided by the Japanese government to be waived | — | 44,728 | 44,728 |

43

Table of Contents

**4. Borrowings:**

With respect to the Bank's international financial account, borrowings, including borrowings due within one year, as of March 31, 2007 consisted of the following:

|  | March 31, 2007 (millions of yen) | | March 31, 2007 (millions of U. S. dollars) |
|---|---|---|---|
| BORROWINGS FROM: | | | |
| Government Fund for Fiscal Investment and Loan Program | ¥ 4,342,505 | $ | 37,115 |
| Government Post Office Life Insurance Fund | 37,518 | | 321 |
| Total borrowings from the Government | ¥ 4,380,023 | $ | 37,436 |

With respect to the Bank's overseas economic cooperation account, borrowings, including borrowings due within one year, as of March 31, 2007 consisted of the following:

|  | March 31, 2007 (millions of yen) | | March 31, 2007 (millions of U. S. dollars) |
|---|---|---|---|
| BORROWINGS FROM: | | | |
| Government Fund for Fiscal Investment and Loan Program | ¥ 3,687,708 | $ | 31,519 |
| Government Post Office Life Insurance Fund | 27,095 | | 232 |
| Total borrowings from the Government | ¥ 3,714,803 | $ | 31,750 |

**5. Capital:**

In accordance with the provisions of the JBIC Law and regulations thereunder, the capital of the Bank as of March 31, 2007 consisted of ¥985,500 million with respect to its international financial account and ¥7,231,508 million with respect to its overseas economic cooperation account, all of which had been contributed in cash by the Government.

The Government is the sole owner of the equity interest, which is evidenced at the Registration Office of the Legal Affairs Bureau of Japan.

**6. Reserve:**

In accordance with the JBIC Law and the cabinet order with respect to its international financial account, the Bank is required to appropriate out of net earnings, as a reserve, up to an amount equivalent to 50% of net earnings until it reaches the same amount as the capital contributed into the international financial account. This reserve amounted to ¥745,236 million as of March 31, 2007.

The reserve so provided may only be used to cover net losses. The balance of the net earnings remaining each year, after provision for this reserve, is to be paid to the National Treasury of Japan by May 31 of the following fiscal year.

In accordance with the JBIC Law, with respect to its overseas economic cooperation account, the Bank is required to cover any loss brought forward from the previous fiscal year if, upon calculation of profit and loss of the overseas economic cooperation account for each year, there is a surplus. If there is a surplus thereafter, the Bank is required to accumulate such surplus as a reserve until it reaches the same amount as the capital contributed to the overseas economic cooperation account. Such reserve amounted to ¥166,062 million as of March 31, 2007.

Pursuant to the JBIC Law, the reserves of the international financial account and the overseas economic cooperation account can be appropriated only for such losses.

**7. Debt Assumption Agreements:**

Based on debt assumption agreements with financial institutions, the Bank has transferred the debt repayment obligation for certain bonds to such financial institutions. As of March 31, 2007, the Bank had contingent obligations in respect to the following bonds.

|  | (millions of yen) | |
|---|---|---|
| FILP Agency Bond 5 (*) | ¥ | 50,000 |
| FILP Agency Bond 7 | ¥ | 60,000 |
| FILP Agency Bond 9 | ¥ | 50,000 |

| FILP Agency Bond 11 | ¥ | 50,000 |
| --- | --- | --- |

(*)  Fiscal Investment and Loan Program Agency Bond: Non-government guaranteed bonds issued in domestic market.

44

Table of Contents

### SUPPLEMENTAL TABLE OF JAPAN BANK FOR INTERNATIONAL COOPERATION
### (INTERNATIONAL FINANCIAL ACCOUNT)

|  | (In millions) |
|---|---|
| Government-guaranteed bonds and notes issued in overseas markets as of March 31, 2007(1) | |
| U.S. Dollar obligations | |
| 7.0% Guaranteed Bonds due 2009 ($1,000) issued in 1999 | ¥ 117,000 |
| 4.625% Guaranteed Bonds due 2014 ($500) issued in 2004 | 58,500 |
| 4.125% Guaranteed Bonds due 2010 ($750) issued in 2005 | 87,750 |
| 4.0% Guaranteed Bonds due 2010 ($750) issued in 2005 | 87,750 |
| 4.75% Guaranteed Bonds due 2011 ($1,000) issued in 2005 | 117,000 |
| 5.25% Guaranteed Bonds due 2016 ($650) issued in 2006 | 76,050 |
| 4.875% Guaranteed Bonds due 2012 ($750) issued in 2007 | 87,750 |
| Subtotal | ($5,400) ¥ 631,800 |
| Japanese yen obligations | |
| 0.35% Guaranteed Bonds due 2008 (¥60,000) issued in 2003 | 58,982 |
| Subtotal | (¥60,000) ¥ 58,982 |
| Euro obligations | |
| 6.625% Guaranteed Bonds due 2007 (EUR229) issued in 1996 | 34,244 |
| 5.75% Guaranteed Bonds due 2008 (EUR305) issued in 1997 | 40,770 |
| 5.75% Guaranteed Bonds due 2007 (EUR511) issued in 1997 | 67,689 |
| 3.25% Guaranteed Bonds due 2008 (EUR500) issued in 2003 | 66,228 |
| 4.5% Guaranteed Bonds due 2013 (EUR500) issued in 2003 | 68,732 |
| 4.375% Guaranteed Bonds due 2014 (EUR750) issued in 2004 | 106,704 |
| Subtotal | (EUR 2,795) ¥ 384,366 |
| Thai baht obligations | |
| 4.78% Guaranteed Bonds due 2010 (THB3,000) issued in 2005 | 9,369 |
| Subtotal | (THB 3,000) ¥ 9,369 |
| Non-government guaranteed bonds issued in domestic market as of March 31, 2006 | |
| Japanese yen obligations | |
| 1.45% FILP Agency Bonds due 2011 (¥50,000) issued in 2001 | 50,000 |
| 1.52% FILP Agency Bonds due 2012 (¥50,000) issued in 2002 | 50,000 |
| 1.19% FILP Agency Bonds due 2012 (¥50,000) issued in 2002 | 50,000 |
| 0.65% FILP Agency Bonds due 2013 (¥60,000) issued in 2003 | 60,000 |
| 1.47% FILP Agency Bonds due 2013 (¥70,000) issued in 2004 | 70,000 |
| 1.60% FILP Agency Bonds due 2014 (¥50,000) issued in 2004 | 50,000 |
| 1.91% FILP Agency Bonds due 2019 (¥20,000) issued in 2004 | 20,000 |
| 0.86% FILP Agency Bonds due 2009 (¥50,000) issued in 2004 | 50,000 |
| 1.74% FILP Agency Bonds due 2014 (¥50,000) issued in 2004 | 50,000 |
| 2.07% FILP Agency Bonds due 2019 (¥20,000) issued in 2004 | 20,000 |
| 0.54% FILP Agency Bonds due 2010 (¥50,000) issued in 2005 | 50,000 |
| 1.34% FILP Agency Bonds due 2015 (¥50,000) issued in 2005 | 50,000 |
| 1.67% FILP Agency Bonds due 2020 (¥20,000) issued in 2005 | 20,000 |
| 0.87% FILP Agency Bonds due 2010 (¥50,000) issued in 2005 | 50,000 |
| 1.58% FILP Agency Bonds due 2015 (¥50,000) issued in 2005 | 50,000 |
| 1.89% FILP Agency Bonds due 2021 (¥20,000) issued in 2006 | 20,000 |
| 2.09% FILP Agency Bonds due 2025 (¥20,000) issued in 2006 | 20,000 |
| 1.59% FILP Agency Bonds due 2011 (¥50,000) issued in 2006 | 50,000 |
| 2.04% FILP Agency Bonds due 2016 (¥50,000) issued in 2006 | 50,000 |
| Subtotal | (¥830,000) ¥ 830,000 |
| Total bonds and notes | ¥1,914,517 |

(1) The actual foreign currency amounts of obligations are set forth in parentheses (in millions of units of relevant

foreign currency) for foreign borrowings. Translations of actual foreign currency amounts into yen amounts have been made in accordance with the method stated in Note 1 of *"Notes to Financial Statements"*.

45

Table of Contents

### SUPPLEMENTAL TABLE OF JAPAN BANK FOR INTERNATIONAL COOPERATION
### (OVERSEAS ECONOMIC COOPERATION ACCOUNT)

| | (in millions) |
|---|---|
| Government-guaranteed bonds issued in the domestic market as of March 31, 2007 | |
| Japanese yen obligations | — |
| Subtotal (¥ — ) | ¥ — |
| Total bonds | ¥ — |

46

**Dates Referenced Herein  *and*  Documents Incorporated By Reference**

| *This 18-K Filing* | *Date* | *Other Filings* |
|---|---|---|
| | ▼ | |
| | 4/1/98 | |
| | 9/30/99 | |
| | 10/1/99 | |
| | 3/31/00 | |
| | 3/31/01 | |
| | 4/1/01 | |
| | 3/31/02 | |
| | 3/31/03 | 18-K |
| | 4/1/03 | |
| | 3/31/05 | 18-K, 18-K/A |
| | 4/1/05 | |
| | 3/31/06 | 18-K |
| | 6/2/06 | |
| | 11/15/06 | |
| For The Period Ended | 3/31/07 | |
| | 5/25/07 | |
| | 9/28/07 | |
| | 10/1/07 | |
| | 10/4/07 | |
| Filed On / Filed As Of | 10/5/07 | |
| | 3/31/08 | |
| | 10/1/08 | |
| | 3/31/09 | |

Top                                                   List All Filings

Filing Submission   -   Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

*Copyright © 2008 Fran Finnegan & Company  All Rights Reserved.*
*www.secinfo.com - Mon, 12 May 2008 16:59:44.6 GMT - Help at SEC Info*

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over

3  the age of 18 and not a party to the above-captioned action.  My business address is

4  555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

5      On May 30, 2008, I served the following documents on all interested parties

6  in this action as follows:

7

8  **JAPAN BANK FOR INTERNATIONAL COOPERATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)**

9

10  via electronic mail upon:

11      David J. Cook, Esq.
       Cook Collection Attorneys, P.L.C.
12      165 Fell Street
       San Francisco, CA 94102
13      cook@squeezebloodfromturnip.com

14      dr-ahmadinejad@president.ir (President of the Islamic Republic of Iran)

15  and via U.S. Mail upon:

16

17      ISLAMIC REPUBLIC OF IRAN
       Pasdaran Avenue
       Golestan Yekom
18      Tehran, Iran
       Attn:  Responsible Officer

19

20      ISLAMIC REPUBLIC OF IRAN
       Khomeni Avenue
21      United Nations Street
       Tehran, Iran
       ATTN: Responsible Officer

22

23

24

25

26

27

28

| | |
|---|---|
| ABN Amro<br>101 California Street, Suite 4300<br>San Francisco, CA 94111<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | BNP Paribas<br>One Front Street<br>San Francisco, CA 94111<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| Abu Dhabi International Bank<br>1020 19th St NW # 500<br>Washington, DC  20036<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | BNP Paribas<br>725 Figueroa Street, Suite 2090<br>Los Angeles, CA  90017<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| Asian Development Bank<br>815 Connecticut Ave NW # 325<br>Washington, DC 20006<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | Commercial Bank of Kuwait<br>1120 Avenue of the Americas<br>New York, New York 10036<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| AUSTRIAN NATIONAL BANK<br>745 5th Ave. Suite 2005<br>New York, New York  10151<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | Commerzbank<br>633 West Fifth Street, Suite 6600<br>Los Angeles, CA 90071<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| Bank of Tokyo Mitsubishi-UFJ<br>1909 K St NW. Suite 350<br>Washington, DC 20006<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | Commerzbank AG<br>2 World Financial Center<br>New York, New York 10281<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| Bank of Tokyo Mitsubishi-UFJ<br>400 California Street<br>San Francisco, CA 94104<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | Credit Suisse Group<br>1201 F St NW # 450<br>Washington, DC 20004<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| Bank of Tokyo Mitsubishi UFJ<br>777 South Figueroa Street #600<br>Los Angeles, CA 90017<br>Attn: PRESIDENT OR AGENT<br>FOR SERVICE OF PROCESS | Credit Suisse AG<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |
| CALYON [BANK] fka CREDIT<br>LYONNAIS and FKA CREDIT<br>AGRICOLE<br>1301 Avenue of the Americas<br>New York, New York  10019<br>Attn: PRESIDENT OR AGENT | Deutsche Bank AG<br>101 California Street<br>San Francisco, CA  94111<br>Attn: PRESIDENT OR AGENT FOR<br>SERVICE OF PROCESS |

| FOR SERVICE OF PROCESS | |
|---|---|
| CALYON [BANK] fka CREDIT LYONNAIS and FKA CREDIT AGRICOLE care of CT CORPORATION SYSTEM 818 West 7th Street Los Angeles, CA 90017 | Development Bank of Japan 1101 17th St NW # 1001 Washington, DC 20036 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Credit Suisse AG 2121 Avenue of the Stars Los Angeles, CA 90067 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | DZ BANK 609 5th Avenue, Suite 601 New York, New York 10017 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Credit Suisse AG 1201 F St NW # 450 Washington, DC 20004 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Export Import Bank of Korea 1300 L St NW # 825 Washington, DC 20005 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Deutsche Bank 300 South Grant Ave Los Angeles, CA 90071 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Export Import Bank of Korea 460 Park Avenue New York, NY 10022 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| UBS AG 1501 K St NW Washington, DC 20005 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Export Important Bank of India 1750 Pennsylvania Ave NW Washington, DC 20006 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Industrial Bank 4812 Georgia Ave NW Washington, DC 20011 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Natexis Banques Populaires 1901 Avenue of the Stars, Suite 1901 Los Angeles, CA 90067 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| International Monetary fund 700 19th St NW Washington, DC 20431 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Natexis Banques Populaires 1251 – 6th Avenue New York, NY 10020 Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| International Finance Corporation 2121 Pennsylvania Ave NW Washington, DC 20433 | NATIONAL BANK OF PAKISTAN 100 Wall Street New York, NY 10005 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

PROOF OF SERVICE
CASE NO. 08-MC-80030-JSW

106

| | |
|---|---|
| Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS<br>Attn: LEGAL PROCESSING DEPT. |
| INTERNATIONAL BANK FOR RECONSTRUCTION AND DEVELOPMENT (aka THE WORLD BANK)<br>1818 H St NW<br>Washington, DC 20433<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Rabobank International<br>1825 I St NW # 400<br>Washington, DC 20006<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| UBS AG<br>633 West Fifth Street<br>Los Angeles, CA 90017<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Raiffeisen Zentral Bank<br>1133 Avenue of the Americas<br>New York, NY 10036<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Mitsubishi Trust and Banking<br>520 Madison Ave., Suite 2501<br>New York, NY 10022<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | Societe Generale<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Mizuho Corporate Bank (Japan)<br>350 South Grand Ave, Suite 1500<br>Los Angeles, CA 90017<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | State Bank of India<br>2001 Pennsylvania Ave NW # 625<br>Washington, DC 20006<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS |
| Sumitomo Mitsui Banking Corporation<br>555 California St., Suite 3350<br>San Francisco, CA 94104<br>Attn: PRESIDENT OR AGENT FOR SERVICE OF PROCESS | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2  | Sumitomo Mitsui Banking |
3  | Corporation |
   | 777 South Figueroa, Suite 2600 |
4  | Los Angeles, CA 90017 |
   | Attn:  PRESIDENT OR AGENT |
5  | FOR SERVICE OF PROCESS |

6

7  I declare under penalty of perjury that the foregoing is true and correct and that this

8  Proof of Service was executed on June 9, 2008, at Los Angeles, California.

9

10

11

12                                        /s/

13                                  EvaAngelina Rubio

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES