1

**WHITE & CASE** LLP

2    Francis A. Vasquez, Jr. (*pro hac vice application pending*)
     Frank Panopoulos (*pro hac vice application pending*)
3    701 Thirteenth Street, NW
     Washington, DC  20005
4    Telephone:  (202) 626-3600
     Facsimile:   (202) 639-9355
5    fvasquez@whitecase.com
     fpanopoulos@whitecase.com
6
     Mark F. Lambert (State Bar No. 197410)
7    3000 El Camino Real
     5 Palo Alto Square, 9th Floor
8    Palo Alto, CA 94306
     Telephone: (650) 213-0347
9    Facsimile:  (650) 213-8158
     mlambert@whitecase.com
10
     *Attorneys for International Finance*
11   *Corporation*

12                    UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16   DEBORAH D. PETERSON, Personal         )    Case No. 08-MC-80030-JSW (BZ)
     Representative of the Estate of James C.  )
17   Knipple (Dec.), *et al.*,              )    INTERNATIONAL FINANCE
                                            )    CORPORATION'S MEMORANDUM
18              Plaintiffs,                  )    OF POINTS AND AUTHORITIES IN
                                            )    OPPOSITION TO PLAINTIFFS' MOTION
19        v.                                )    FOR ASSIGNMENT OF RIGHTS
                                            )    PURSUANT TO C.C.P. § 708.510(a)
20   ISLAMIC REPUBLIC OF IRAN, *et al.*     )    AND F.R.C.P. 69(a)
                                            )
21              Defendants.                  )
                                            )    Date:  July 2, 2008
22                                          )
                                            )    Time:  9:00 a.m.
23                                          )
                                            )    Place: Courtroom G
24                                          )
                                            )
25                                          )
                                            )
26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2

BACKGROUND ................................................................................................................2

3
I.    IFC IS A PUBLIC INTERNATIONAL ORGANIZATION OF SOVEREIGN
      MEMBER NATIONS THAT PROMOTES SUSTAINABLE ECONOMIC
4     GROWTH IN DEVELOPING COUNTRIES ............................................................2

5
II.   PLAINTIFFS HAVE SOUGHT TO SUBJECT IFC TO JUDICIAL PROCESS AS
      PART OF THEIR ENFORCEMENT EFFORTS ......................................................3
6

7     ARGUMENT ...................................................................................................................3

8
I.    PLAINTIFFS' MOTION SHOULD BE STAYED PENDING THE D.C. DISTRICT
      COURT'S DETERMINATION OF IFC'S IMMUNITY DEFENSES................................3

9
II.   IFC IS IMMUNE FROM THE RELIEF SOUGHT BY PLAINTIFFS IN THEIR
      MOTIONS FOR ASSIGNMENT OF RIGHTS AND TO APPOINT A RECEIVER .............5
10

11         A.    The IOIA And IFC's Articles Of Agreement Accord IFC Immunity From
                 Every Form Of Judicial Process, Including The Relief Sought By Plaintiffs ..............6

12         B.    The FSIA Expressly Reinforces IFC's Immunity From Enforcement
                 Proceedings Against A Foreign Sovereign State ...........................................8
13

14    CONCLUSION..................................................................................................................10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTERNATIONAL FINANCE CORPORATION'S
OPPOSITION TO MOTION FOR ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

1    International Finance Corporation ("IFC"), a non-party to these proceedings, respectfully

2    submits this Opposition to Plaintiffs' Motion for Assignment of Rights.  IFC appreciates the

3    importance of the judgment against the Islamic Republic of Iran ("Iran") that Plaintiffs seek to

4    enforce.  Nonetheless, IFC has had no role in any of the underlying actions, and is immune from

5    these and any related judicial proceedings.  As the private sector arm of the World Bank Group, IFC

6    is a public international organization entitled to broad immunity from every form of judicial process

7    under the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288 *et seq.*, and IFC's

8    Articles of Agreement.  In particular, absent express waiver, IFC enjoys absolute immunity from the

9    attachment of its assets or the discovery of its records or personnel.  Recent amendments to the

10   Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, have neither altered nor

11   abrogated these immunities.  In fact, the FSIA specifically reinforces IFC's IOIA immunity.

12   Plaintiffs' Motion for Assignment of Rights openly seeks to circumvent IFC's immunity.

13   Plaintiffs argue that the Court "need not necessarily resolve the issue of [IFC's] sovereign

14   immunity" because an assignment of rights would allow them to "stand in the shoes of Iran."

15   Plaintiffs' Memorandum of Points and Authorities ("Pls.' Mem.") at 14.  This argument ignores the

16   independent obligation of federal courts to consider issues of subject-matter jurisdiction whenever

17   they are raised.  Further, Plaintiffs have not identified, and cannot identify, any waiver of IFC's

18   immunity *vis-à-vis* Iran that would permit them—even if "stand[ing] in the shoes of Iran"—to attach

19   IFC accounts or other assets purportedly payable to Iran.  Indeed, Plaintiffs continue to disregard the

20   fact that IFC already informed them that it has not uncovered any debts or assets payable to Iran that

21   might be attached in satisfaction of the judgment.

22   Because IFC expressly reserves, and has not waived, its absolute immunity from these or any

23   related proceedings, Plaintiffs' Motion must be denied.  As a threshold matter, however, the same

24   immunity issues are already before the U.S. District Court for the District of Columbia ("D.C.

25   District Court") in separate proceedings in which Plaintiffs seek essentially identical (and redundant)

26   relief.  Accordingly, IFC supports the motion of the International Bank for Reconstruction and

27   Development ("World Bank") to stay Plaintiffs' Motion for Assignment of Rights that was filed in

28   this Court on May 28, 2008.  The D.C. District Court is the jurisdiction in which the original

-1-

1    judgment was rendered and in which IOIA jurisprudence has been most developed.  The D.C.

2    District Court is thus particularly well-suited to resolve the question of IFC's immunity from

3    Plaintiffs' collection efforts.  Issuing a stay in this action pending the D.C. District Court's decision

4    would promote judicial economy and reduce the risk of inconsistent rulings.

5                                            **BACKGROUND**

6    **I.    IFC IS A PUBLIC INTERNATIONAL ORGANIZATION OF SOVEREIGN
            MEMBER NATIONS THAT PROMOTES SUSTAINABLE ECONOMIC GROWTH
7            IN DEVELOPING COUNTRIES**

8            IFC is a public international organization comprised entirely of sovereign member nations,

9    and is the private sector arm of the World Bank Group.  *See, e.g.*, *IFC in Brief: Creating*

10   *Opportunities, Improving Lives*, available at http://www.ifc.org/ifcext/about.nsf/Content/

11   IFC_in_Brief ("*IFC in Brief*") at 5.  IFC was established in 1956 for the purpose of "further[ing]

12   economic development by encouraging the growth of productive private enterprise in member

13   countries, particularly in the less developed areas."  IFC's Articles of Agreement, art. I § 1; *see also*

14   *IFC in Brief* at 7.

15           Headquartered in Washington, D.C., IFC has 179 member nations—including Iran—and

16   operates in accordance with its Articles of Agreement, an international intergovernmental agreement

17   among its member nations.  *See IFC in Brief* at 5; *see also* IFC's Articles of Agreement, 7 U.S.T.

18   2197.  IFC's member nations collectively determine its policies.  *IFC in Brief* at 5.  Pursuant to its

19   Articles of Agreement, IFC invests solely in the private sector, in partnership with private businesses

20   and entrepreneurs.  *See id.* at 5-8; *see also* IFC's Articles of Agreement, art. I § 1.

21           The United States was a founding member of IFC.  In 1955, Congress authorized the

22   President to accept IFC membership for the United States, as provided for by IFC's Articles of

23   Agreement.  *See* 22 U.S.C. § 282.  The provisions of IFC's Articles of Agreement, including

24   specified privileges and immunities, have been made part of U.S. law.  *See* 22 U.S.C. § 282 *et seq.*;

25   *see also* 7 U.S.T. 2197.  Pursuant to the IOIA, the President, by Executive Order, "designate[d]

26   [IFC] as a public international organization entitled to enjoy the privileges, exemptions, and

27   immunities conferred by the said [IOIA]."  Exec. Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956).

28

INTERNATIONAL FINANCE CORPORATION'S
                                            OPPOSITION TO MOTION FOR ASSIGNMENT OF RIGHTS
                                            CASE NO. 08-MC-80030-JSW (BZ)

## II.  PLAINTIFFS HAVE SOUGHT TO SUBJECT IFC TO JUDICIAL PROCESS AS PART OF THEIR ENFORCEMENT EFFORTS

This collection action is one of two proceedings that Plaintiffs have initiated against IFC as part of their efforts to enforce their judgment against Iran.  As detailed in IFC's Memorandum of Law in Opposition to Plaintiffs' Motion for Appointment of Receiver in the action before the D.C. District Court ("IFC's D.C. Opp'n") (submitted herewith as Exhibit A), Plaintiffs mailed a subpoena dated April 9, 2008 to IFC directing it to produce certain documents and witness testimony regarding Iranian assets allegedly held by IFC, and served a writ of attachment on judgment via U.S. Marshals on April 30.  IFC's D.C. Opp'n at 1-3.  In each instance, IFC responded by letter to inform Plaintiffs of its immunities under the IOIA and its Articles of Agreement.  *Id.* at 1-2.  In the letter responding to the writ of attachment, IFC also informed Plaintiffs that IFC had not uncovered any records indicating debts or assets owed to Iran or any of the State ministries, divisions, agencies or instrumentalities identified in the writ.  *Id.* at 2.  In response, Plaintiffs filed a motion to appoint a receiver for the purpose of collecting IFC assets purportedly payable to Iran.  IFC and the World Bank, among other parties, have filed oppositions to the motion.[1]

The present Motion identifies IFC as one of several "financial institutions" that, according to Plaintiffs' speculative reasoning, "[c]ommons [sic] sense would dictate" entered into commercial transactions with Iran and thus "may have funds" to which Iran is entitled to draw down.  Pls.' Mem. at 2.  Just as in the motion to appoint a receiver, Plaintiffs argue here that they can sidestep IFC's immunity by "stand[ing] in the shoes" of Iran through an assignment of rights.  *Id.* at 14.  Because Plaintiffs' Motion implicates the same immunity defenses currently before the D.C. District Court, the World Bank moved on May 28 to stay this Motion pending the ruling in the D.C. proceedings on Plaintiffs' motion to appoint a receiver.

## ARGUMENT

## I.  PLAINTIFFS' MOTION SHOULD BE STAYED PENDING THE D.C. DISTRICT COURT'S DETERMINATION OF IFC'S IMMUNITY DEFENSES

The Court should exercise its discretionary authority to stay these proceedings.  *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to

---

[1]    Other parties have also raised sovereign immunity defenses in motions to quash the writs of attachment.

1   the power inherent in every court to control the disposition of the causes on its docket with economy

2   of time and effort for itself, for counsel, and for litigants."); *Leyva v. Certified Grocers of Cal., Ltd.*,

3   593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own

4   docket and the fairest course for the parties to enter a stay of an action before it, pending resolution

5   of independent proceedings which bear upon the case."). As set forth in detail in the World Bank's

6   motion for a stay, a stay here would both promote judicial economy and reduce the risk of

7   inconsistent rulings, thereby furthering the interests of all parties.

8       The D.C. District Court has been seized of this matter since Plaintiffs initiated the underlying

9   proceedings in October 2001. The threshold immunity issues presented on Plaintiffs' Motion for

10  Assignment of Rights and their motion for appointment of receiver in Washington, D.C. are virtually

11  identical. As both the seat of the judgment and the home to IFC, the World Bank and other public

12  international organizations accorded IOIA immunity, the D.C. District Court is best situated to

13  address the intersection of the enforcement actions and immunities of the international organizations.

14  In that regard, the D.C. Circuit has established the widely adopted "corresponding-benefits" standard

15  for IOIA immunity, discussed further below, pursuant to which the "virtually absolute immunity"

16  under the IOIA is "construed as *not waived* unless the particular type of suit would *further* [IFC's]

17  objectives." *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1338, 1340-41 (D.C. Cir. 1998)

18  (emphasis in original); *see also Banco de Seguros del Estado v. Int'l Fin. Corp.*, Nos. 06 Civ. 2427

19  (LAP), 06 Civ. 3739 (LAP), 2007 WL 2746808 (S.D.N.Y. Sept. 20, 2007) (relying on *Atkinson* and

20  applying "corresponding-benefits" standard); *In re Dinastia, L.P.*, No. 04:07-cv-02501, 2007 WL

21  4845977 (S.D. Tex. Nov. 8, 2007) (same); *Ashford Int'l, Inc. v. World Bank Group*, No. 1:04-CV-

22  3822-JOF, 2006 WL 783357 (N.D. Ga. Mar. 24, 2006) (same).

23      Given the D.C. District Court's familiarity with the underlying action and with the law

24  governing IOIA immunity, it would promote judicial economy—and potentially narrow the issues

25  that this Court must address—to stay these proceedings while the D.C. District Court resolves the

26  immunity arguments raised by IFC and other public international organizations. *See FormFactor,*

27  *Inc. v. Micronics Japan Co., Ltd.*, No. CV-06-07159 JSW, 2008 WL 361128, at *3 (N.D. Cal.

28  Feb. 11, 2008 ) (White, J.) (noting that a stay is favored "when the orderly course of justice will be

-4-        INTERNATIONAL FINANCE CORPORATION'S
           OPPOSITION TO MOTION FOR ASSIGNMENT OF RIGHTS
           CASE NO. 08-MC-80030-JSW (BZ)

advanced through the simplifying of issues, proof, and questions of law").  Likewise, a stay here would reduce the risk of inconsistent rulings on the same immunity issues implicated by Plaintiffs' motions in the D.C. action and these proceedings.  *See Nielsen v. Merck & Co.*, No. C07-00076 MJS, 2007 WL 806510, at *2 (N.D. Cal. Mar. 15, 2007) ("[A]bsent a stay, there would be a significant risk of inconsistent rulings given the number of cases . . . that raise the same jurisdictional question.").  In both instances, a stay would inure to the benefit of all parties.

## II.    IFC IS IMMUNE FROM THE RELIEF SOUGHT BY PLAINTIFFS IN THEIR MOTIONS FOR ASSIGNMENT OF RIGHTS AND TO APPOINT A RECEIVER

As part of their effort to circumvent IFC's immunity from these and any related proceedings, Plaintiffs erroneously argue that the question of the Court's subject-matter jurisdiction over IFC "is clearly a matter subject to the individual enforcement of the assignment order in a separate satellite proceeding" and thus "need not be precisely determined" here.  Pls.' Mem. at 10 n.2.  To the contrary, a federal court must consider issues of subject-matter jurisdiction whenever they are raised. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also EOTT Energy Operating Ltd. v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 996 (9th Cir. 2001) (noting, in sovereign immunity case, that "we have an obligation to determine whether we and the court below have . . . jurisdiction") (citing Fed. R. Civ. P. 12(h)(3)); *Benetatos v. Hellenic Republic*, No. C 06-06819 SBA, 2008 WL 2079191, at *1 (N.D. Cal. May 15, 2008) (same).

IFC's immunity is necessarily a threshold jurisdictional issue because sovereign immunity safeguards immune entities not only from suit and liability, but also all "attendant burdens of litigation."  *In re Minister Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) (quoting *Foremost-McKesson, Inc. v. Islamic Rep. of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)).  In addition, the Court also must address IFC's immunity at this juncture because "[a]n assignment order [pursuant to C.C.P. § 708.510] may not be issued with respect to assets which are immune from execution." *Quaestor Invs., Inc. v. State of Chiapas*, No. CV-95-6723 JGD AJW, 1997 WL 34618203, at *6 (C.D. Cal. Sept. 2, 1997) (citing C.C.P. § 708.510(f)); *see also Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 1099-1100 (1990) (denying motion under

C.C.P. § 708.510 as to sovereign assets immune from execution under the FSIA).  While, as discussed, IFC has not uncovered any records indicating debts or assets owed to Iran or any of the State ministries, divisions, agencies or instrumentalities identified in the writ of attachment, for the sake of brevity IFC hereby incorporates by reference and adheres to the argument in the World Bank's Memorandum of Points and Authorities in Opposition to Motion for Assignment regarding the inapplicability of C.C.P. § 708.510 to assets that are immune from execution.

Because Plaintiffs' efforts to attach IFC assets in satisfaction of the judgment against Iran plainly fall within the purview of international organizational immunity under both the IOIA and FSIA, the Motion for Assignment of Rights must be denied.

A.    **The IOIA And IFC's Articles Of Agreement Accord IFC Immunity From Every Form Of Judicial Process, Including The Relief Sought By Plaintiffs**

The IOIA provides that "[i]nternational organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit ***and every form of judicial process*** as is enjoyed by foreign governments," absent an express waiver of that immunity.  22 U.S.C. § 288a(b) (emphasis added).  This immunity is co-extensive with the "virtually absolute immunity" accorded to foreign sovereigns in 1945.  *Atkinson*, 156 F.3d at 1340-41 (affirming dismissal of garnishment proceedings) (quotation omitted); *see also Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983) ("It is well established under international law that an international organization is entitled to such privileges and such immunity from the jurisdiction of a member state as are necessary for the fulfillment of the purposes of the organization . . . .") (quotation omitted).  As detailed in IFC's Opposition in the D.C. District Court proceedings, this absolute immunity encompasses all IFC assets, records and personnel.  IFC's D.C. Opp'n at 9-13; *see also Taiwan v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 128 F.3d 712, 718-719 (9th Cir. 1997) (holding, with reference to the IOIA, that the employee of an international organization is entitled to broad testimonial immunity).

In addition, IFC's Articles of Agreement expressly prohibit judicial recourse against IFC by "member[] [nations] or persons acting for or deriving claims from members."  IFC's Articles of Agreement, art. VI § 3.  Plaintiffs have not identified, and cannot identify, any express waiver of

IFC's immunity *vis-à-vis* Iran that would permit them—even if allowed to "stand in the shoes of Iran" (Pls.' Mem. at 14)—to attach IFC accounts or other assets purportedly payable to Iran. Indeed, Plaintiffs' purportedly "[c]ommons [sic] sense" claim that IFC engaged in some kind of commercial activity with Iran (*see, e.g.*, *id.* at 2) is nothing more than unsubstantiated conjecture. As discussed above, IFC invests solely in the private sector. *See IFC in Brief* at 5-8; *see also* IFC's Articles of Agreement, art. I § 1 ("The purpose of the Corporation is to further economic development by encouraging the growth of productive private enterprise in member countries . . . .").

Moreover, U.S. courts have interpreted Article VI § 3 of IFC's Articles of Agreement extremely narrowly, such that there is a waiver only in the most limited circumstances.[2]  *See Mendaro*, 717 F.2d at 611 (holding that immunity waiver "must be narrowly read in light of both national and international law").  Under the "corresponding-benefits" standard established by the D.C. Circuit, IFC's immunity is "construed as *not waived* unless the particular type of suit would *further* [IFC's] objectives." *Atkinson*, 156 F.3d at 1338 (emphasis in original); *see also Mendaro*, 717 F.2d at 615 (holding that waiver of immunity in Articles of Agreement identical to those of IFC encompasses only "suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom [IFC] would have to subject itself to suit in order to achieve its chartered objectives").  The waiver is not applicable in this case because IFC would not receive any conceivable "corresponding benefit" by waiving its immunity from Plaintiffs' efforts to enforce a judgment against Iran.

In fact, the D.C. Circuit has held specifically that international organizations under the IOIA do not derive benefits warranting a waiver of immunity in the context of third-party garnishment or attachment proceedings. *See Atkinson*, 156 F.3d at 1338-39 (holding, in action to garnish wages of Inter-American Development Bank employee, that the "clear lack of benefit—indeed,

---

[2]    Article VI § 3 of IFC's Articles of Agreement states:

Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.  No actions shall, however, be brought by members or persons acting for or deriving claims from members.  The property and assets of the Corporation shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation.

An identical waiver provision is included in the Articles of Agreement of the other World Bank entities. *See Banco de Seguros*, 2007 WL 2746808, at *4 n.7 ("The status of the immunities of IFC and of the other World Bank entities is virtually indistinguishable. . . . [E]ven the relevant portions of their Articles of Agreement are the same . . . .").

INTERNATIONAL FINANCE CORPORATION'S
OPPOSITION TO MOTION FOR ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

1  disadvantage—of a waiver of immunity from garnishment proceedings compels the conclusion" that

2  immunity applied); *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co*., No. 07-7049, 2008

3  WL 441836, at *2 (D.C. Cir. Feb. 14, 2008) (holding that World Bank's "interests are not advanced

4  by subjecting itself to non-wage garnishment proceedings initiated by third-party judgment creditors

5  of member nations' contractors") (internal citation omitted).

6        Given IFC's status as a public international organization comprised of individual member

7  nations, it is essential that IFC retain its immunity in this instance.  IFC's chartered objectives would

8  not be furthered—and, indeed, would be seriously impaired—if it were deemed to relinquish its

9  immunity to every third-party judgment creditor of any one of its 179 member nations.  *See*

10  *Mendaro*, 717 F.2d at 617 ("[L]imitations on immunity that subject the organization to suits which

11  could significantly hamper the organization's functions are inherently less likely to have been

12  intended . . . .").  The flood of post-judgment discovery requests and writs of attachment arising from

13  all cases against member nations would pose a costly and time-consuming impediment to the

14  achievement of IFC's development objectives.  *Cf. Atlantic Tele-Network Inc. v. Inter-Am. Dev.*

15  *Bank*, 251 F. Supp. 2d 126, 132 (D.D.C. 2003) ("[W]ere this suit to be allowed, virtually any U.S.

16  citizen with a commercial grievance against a debtor nation could challenge a [Bank] loan to that

17  nation without any 'corresponding benefit' accruing thereby to the [Bank] whatsoever.").  Judgment

18  creditors anxious to satisfy a judgment against a member nation should not do so at the doors of IFC.

19  In any such instance, the benefit to IFC of waiving its immunity would be nonexistent.  *See*

20  *Atkinson*, 156 F.3d at 1338 (holding that "immunity should be construed as *not waived* unless the

21  particular type of suit would *further* [IFC's] objectives") (emphasis in original).

    **B.**    **The FSIA Expressly Reinforces IFC's Immunity From Enforcement Proceedings**
              **Against A Foreign Sovereign State**

22

23        To the extent Plaintiffs rely on the FSIA, the FSIA expressly reinforces IFC's IOIA

24  immunity in the specific context of enforcement proceedings against a foreign sovereign state.

25  Section 1611(a) of the FSIA establishes that "the property of those organizations designated by the

26  President as being entitled to enjoy the privileges, exemptions, and immunities provided by the

27  [IOIA] ***shall not be subject to attachment or any other judicial process*** impeding the disbursement

28

-8-

of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States." 28 U.S.C. § 1611(a) (emphasis added); *see also* Exec. Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956) (designating IFC as international organization entitled to IOIA privileges and immunities); *Atkinson*, 156 F.3d at 1342 (noting that, under Section 1611(a), "a judgment creditor cannot execute upon funds held by international organizations for disbursement to [a] foreign state judgment debtor"); *Trans Commodities, Inc. v. Kazakhstan Trading House, S.A.*, No. 96-316 (NHJ), slip op. at 4-5 (D.D.C. Feb. 20. 1997) (submitted herewith as Exhibit B) (quashing writ of attachment issued against foreign state's bank accounts for loan proceeds from World Bank and holding that "[t]o allow World Bank loan proceeds to become subject to attachment . . . is untenable and contrary to the purpose of section 1611(a) immunity"). As evident on its face, the intended purpose of this provision is to permit international organizations entitled to IOIA immunity "to carry out their functions from their offices located in the United States *without hindrance by private claimants seeking to attach the payment of funds to a foreign state*." Foreign Sovereign Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604 (emphasis added). Section 1611(a) thus prohibits the very kind of judicial process that Plaintiffs seek here—namely, the assignment of rights to "reach all [IFC] accounts, accounts receivable and rights to payment of money" (Pls.' Mem. at 9) purportedly payable to Iran.

The recent amendments to the FSIA highlighted by Plaintiffs (Pls.' Mem. at 6-7, 13) do not disturb the IOIA immunities preserved by Section 1611(a). The new provision governing the attachment of foreign state assets (*see id.* at 6-7 (quoting "(g) Property in Certain Actions")) amends Section 1610 of the FSIA, which enumerates certain exceptions to the immunity from attachment or execution to which foreign sovereign states are entitled.[3] Section 1611(a) of the FSIA—which remains unchanged by the recent amendments—expressly provides that international organizations under the IOIA retain their immunity "*[n]otwithstanding the provisions of section 1610 of this* chapter." 28 U.S.C. § 1611(a) (emphasis added). In arguing that the immunity of IFC "would be no

---

[3]    The new provision governing attachment is not, as Plaintiffs suggest (Pls.' Mem. at 6-7), a subsection of 28 U.S.C. § 1605A.

INTERNATIONAL FINANCE CORPORATION'S
OPPOSITION TO MOTION FOR ASSIGNMENT OF RIGHTS
CASE NO. 08-MC-80030-JSW (BZ)

1  greater than the sovereign immunity of the United States which was waived under 28 U.S.C.

2  § 1605A(g)(2)" (Pls.' Mem. at 13), Plaintiffs are simply ignoring the plain language of the statute.[4]

3  ### CONCLUSION

4  For the foregoing reasons, IFC respectfully requests that the Court (i) stay these proceedings

5  pending the D.C. District Court's ruling on Plaintiffs' motion for an appointment of receiver in that

6  action; or, in the alternative, (ii) deny Plaintiffs' Motion for Assignment of Rights and order that

7  Plaintiffs cease and desist from serving any further process upon IFC in these or any related

8  proceedings.

9

10  Dated: June 9, 2008                          Respectfully submitted,

11

12                                               **WHITE & CASE** LLP

13                                               /s/ Mark F. Lambert

14                                               Mark F. Lambert (State Bar No. 197410)
                                                 3000 El Camino Real

15                                               5 Palo Alto Square, 9th Floor
                                                 Palo Alto, CA 94306

16                                               Telephone: (650) 213-0347
                                                 Facsimile:  (650) 213-8158

17                                               mlambert@whitecase.com

18                                               Francis A. Vasquez, Jr. (*pro hac vice pending*)
                                                 Frank Panopoulos (*pro hac vice pending*)

19                                               701 Thirteenth Street, NW
                                                 Washington, DC  20005

20                                               Telephone:  (202) 626-3600
                                                 Facsimile:   (202) 639-9355

21                                               fvasquez@whitecase.com
                                                 fpanopoulos@whitecase.com

22
                                                 *Attorneys for International Finance*

23                                               *Corporation*

24

25

26  ---

27  [4]    In fact, contrary to Plaintiffs' suggestion, Section 1610(g)(2) also does not waive the immunity of the United States.
    The plain language of that provision makes clear that it relates to the "property of a foreign state, or agency or

28  instrumentality . . . regulated by the United State Government by reason of action taken against that foreign state under
    the Trading With the Enemy Act or the International Emergency Economic Powers Act."  *See* Pls.' Mem. at 7 (quoting
    28 U.S.C. § 1610(g)(2)).

1

## CERTIFICATE OF SERVICE

2    I hereby certify that a true and correct copy of the foregoing International Finance

3  Corporation's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for

4  Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) was served this 9th day of

5  June 2008 by electronic notice through the United States District Court for the Northern District of

6  California upon all parties registered for electronic notification pursuant to the Court's electronic

7  filing procedures, and upon the following parties by e-mail and first class mail:

8        President Dr. Ahmadinejad
         dr-ahmadinejad@president.ir
9

10       ISLAMIC REPUBLIC OF IRAN
         Pasadaran Avenue
11       Golestan Yekom
         Tehran, Iran
12       Attn: Responsible Officer

13       ISLAMIC REPUBLIC OF IRAN
14       Khomeini Avenue
         United Nations Street
15       Tehran, Iran
         Attn: Responsible Officer
16

17       ISLAMIC REPUBLIC OF IRAN
         acting through its
18       MINISTRY OF DEFENSE AND
         SUPPORT OF ARMED FORCES
19       No. 1 Shahid Kaboli Street
         Beginning of Resalat Highway
20       Seyyed Khandan Bridge
         P.O. Box 16765-1479
21       Tehran, Iran
         Attn: Responsible Officer
22

23
         I declare that I am employed in the office of a member of the bar of this Court at whose
24
   directions the service was made. I declare under penalty of perjury that the foregoing is true and
25
   correct and that this declaration was executed on June 9, 2008 at Palo Alto, California.
26

27                          _____
                            Michael T. Kenny
28

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

PETERSON, *et al.*                     )
                                       )
        *Plaintiffs*,                  )
                                       )
        *v.*                           )        Civil Action No.  1-01-CV-02094 RCL
                                       )
ISLAMIC REPUBLIC OF IRAN, *et al.*     )
                                       )
        *Defendants.*                  )
                                       )


# INTERNATIONAL FINANCE CORPORATION'S
# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
# <u>MOTION FOR APPOINTMENT OF RECEIVER</u>


**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Frank Panopoulos (D.C. Bar No. 459365)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600

*Attorneys for International Finance Corporation*

June 5, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.   IFC IS IMMUNE FROM THE RELIEF SOUGHT BY PLAINTIFFS IN THEIR
     MOTION TO APPOINT A RECEIVER ............................................................................ 4

     A.   IFC Is An International Organization Of Sovereign Member Nations That
          Promotes Sustainable Economic Growth In Developing Countries ...................... 4

     B.   The IOIA And IFC's Articles Of Agreement Accord IFC Immunity From
          Every Form Of Judicial Process, Including The Relief Sought By
          Plaintiffs ......................................................................................................... 5

II.  IFC'S IMMUNITIES APPLY TO ALL MOTIONS, WRITS AND OTHER
     JUDICIAL PROCESS THAT PLAINTIFFS HAVE SERVED OR MAY SERVE
     UPON IFC ..................................................................................................................... 9

     A.   IFC's Assets Are Immune From Attachment Or Any Other Judicial
          Process Impeding The Disbursement Of Funds To, Or On The Order Of,
          A Foreign State ............................................................................................... 10

     B.   IFC's Records And Personnel Are Immune From Judicial Process ................... 11

CONCLUSION ................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL CASES</u>                                                                                    Page(s)

*Alpha Lyracom Space Commc'ns, Inc. v. Comsat Corp.*,
    113 F.3d 372 (2d Cir. 1997).......................................................................11

\* *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998) ...................................... *passim*

*Atlantic Tele-Network Inc. v. Inter-Am. Dev. Bank.*,
    251 F. Supp. 2d 126 (D.D.C. 2003) ..................................................................... 7-8

*Auster v. Ghana Airways Ltd.*, 514 F.3d 44 (D.C. Cir. 2008) ........................................3

*Banco de Seguros del Estado v. Int'l Fin. Corp.*, Nos. 06 Civ. 2427 (LAP),
    06 Civ. 3739 (LAP), 2007 WL 2746808 (S.D.N.Y. Sept. 20, 2007).......................................6

*Broadbent v. Org. of Am. States*, 628 F.2d 27 (D.C. Cir. 1980)....................................12

*Foremost-McKesson, Inc. v. Islamic Rep. of Iran*,
    905 F.2d 438 (D.C. Cir. 1990) .........................................................................9

*In re Minister Papandreou*, 139 F.3d 247 (D.C. Cir. 1998) ........................................9

\* *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*,
    No. 07-7049, 2008 WL 441836 (D.C. Cir. Feb. 14, 2008)..............................3, 7, 11

\* *Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983) ...................................... *passim*

*Renchard v. Humphreys & Harding, Inc.*, No. 2128-72, slip op.
    (D.D.C. Apr. 24, 1975) ...............................................................................12

*Taiwan v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 128 F.3d 712 (9th Cir. 1997)............................12

\* *Trans Commodities, Inc. v. Kazakhstan Trading House, S.A.*,
    No. 96-316 (NHJ), slip op. (D.D.C. Feb. 20. 1997) ...............................................8

*United States v. Chalmers*, No. S5 05 CR 59(DC),
    2007 WL 624063 (S.D.N.Y. Feb. 26, 2007)..........................................................11


<u>FEDERAL STATUTES, RULES AND EXECUTIVE ORDERS</u>

22 U.S.C. § 282.................................................................................................... 4-5

Executive Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956) ............................................5

Page(s)

Fed. R. Civ. P. 12(h)(3)..................................................................................................3

Fed. R. Civ. P. 45(b) ....................................................................................................1

Foreign Sovereign Immunities Act ("FSIA") of 1976 (as amended),
  28 U.S.C. § 1602 *et seq.*...........................................................................1, 8, 9, 10

International Organizations Immunities Act ("IOIA") of 1945,
  22 U.S.C. § 288 *et seq.*.................................................................................. *passim*


TREATIES, TREATISES AND OTHER AUTHORITIES

Foreign Sovereign Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976),
  *as reprinted in* 1976 U.S.C.C.A.N. 6604............................................................ 8-9

International Finance Corporation's Articles of Agreement,
  7 U.S.T. 2197 ..................................................................................... *passim*

Restatement (Third) of Foreign Relations Law § 468 (1986)........................................11

Restatement (Third) of Foreign Relations Law § 478 cmt. b (1986)............................11

Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961,
  23 U.S.T. 3227, 500 U.N.T.S. 95...................................................................... 11-12

# <u>INTRODUCTION</u>

International Finance Corporation ("IFC") is a non-party to these proceedings.  While IFC recognizes the importance of the judgment, IFC has had no role in any of the underlying actions.  Accordingly, IFC respectfully submits this Opposition to Plaintiffs' Motion for Appointment of Receiver.

IFC is the private sector arm of the World Bank Group and a public international organization entitled to broad immunity from every form of judicial process under the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288 *et seq.*, and IFC's Articles of Agreement.  In particular, absent express waiver, IFC enjoys absolute immunity from the attachment of its assets or the discovery of its records or personnel.  IFC has not waived, and indeed expressly reserves, its immunity as to all judicial process served upon it in these proceedings.

Notwithstanding this immunity, Plaintiffs have sought—by various means and in multiple jurisdictions[1]—to subject IFC to judicial process as part of their efforts to enforce a multi-billion dollar judgment against the Islamic Republic of Iran ("Iran").  Plaintiffs first mailed a subpoena dated April 9 to IFC's Washington, D.C. headquarters, directing IFC to produce certain documents as part of post-judgment discovery related to this case.[2]  The subpoena also

---

[1]  In addition to the Motion for Appointment of Receiver before this Court, Plaintiffs are pursuing essentially identical (and redundant) relief before the U.S. District Court for the Northern District of California.  On May 1, 2008, Plaintiffs filed a motion for assignment of rights, pursuant to California state law, to collect Iranian funds purportedly held by certain "financial institutions," including IFC.  As addressed below, all of these collection efforts—whether based on federal or state law—are barred by IFC's immunity under the IOIA, as well as the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*  On May 28, the International Bank for Reconstruction and Development ("World Bank") filed a motion with the Northern District of California to stay Plaintiffs' motion for assignment of rights until this Court has ruled on the present Motion.  That motion is scheduled to be heard on July 2, 2008, by Magistrate Judge Bernard Zimmerman.

[2]  Letter from David J. Cook to "International Finance Company" dated April 9, 2008, enclosing subpoena dated April 9, 2008 (submitted herewith as Exhibit 1 to the Declaration of Francis A. Vasquez, Jr. ("Vasquez Declaration")).  As a preliminary matter, the delivery of the subpoena by mail alone did not constitute effective service.  *See* Fed. R. Civ. P. 45(b) (requiring personal service of subpoena).

purported to command deposition testimony, although elsewhere it stated that no appearance was required. On April 29, 2008, IFC responded to the subpoena by letter, informing Plaintiffs of IFC's immunities under the IOIA.[3] The following day, U.S. Marshals appeared at IFC's headquarters to serve a writ of attachment on judgment that had been issued on March 25, 2008.[4] Later, on May 5, Plaintiffs faxed a letter to IFC contesting IFC's entitlement to immunity.[5]

On May 14, IFC responded to the writ of attachment by letter, copied to the Court, reiterating and further detailing its immunity under both the IOIA and FSIA.[6] In the letter, IFC also informed Plaintiffs that its internal inquiries in connection with the writ had not uncovered any records indicating debts owed by IFC to Iran or any of the State ministries, divisions, agencies or instrumentalities identified in Exhibit A to the writ of attachment, nor any goods, chattel or credit of such entities in IFC's possession. Plaintiffs responded with a two-sentence faxed letter on May 15 stating that they "disagree with [IFC's] analysis."[7] Then, on May 20, Plaintiffs filed the present Motion.[8]

Plaintiffs suggest that they are not attempting an "end run" around IFC's immunity. Memorandum of Points and Authorities in Support of Motion ("Pls.' Mem.") at 5. However,

---

[3] Letter from Francis A. Vasquez, Jr. to David J. Cook dated Apr. 29, 2008 (submitted herewith as Exhibit 2 to the Vasquez Declaration).

[4] Writ of Attachment on Judgment other than Wages, Salary and Commissions dated March 25, 2008 (submitted herewith as Exhibit 3 to the Vasquez Declaration).

[5] Letter from David J. Cook to Francis A. Vasquez, Jr. dated May 2, 2008 (submitted herewith as Exhibit 4 to the Vasquez Declaration).

[6] Letter from Francis A. Vasquez, Jr. to David J. Cook dated May 14, 2008 (submitted herewith as Exhibit 5 to the Vasquez Declaration).

[7] Letter from David J. Cook to Francis A. Vasquez, Jr. dated May 14, 2008 (submitted herewith as Exhibit 6 to the Vasquez Declaration).

[8] Plaintiffs still have not properly served the Motion on IFC because they apparently mailed it to the wrong address. IFC's headquarters address is 2121 Pennsylvania Avenue, N.W., Washington, D.C. 20433. *See, e.g.*, *IFC in Brief: Creating Opportunities, Improving Lives*, available at http://www.ifc.org/ifcext/about.nsf/Content/IFC_in_Brief, ("*IFC in Brief*") (submitted herewith as Exhibit 7 to the Vasquez Declaration) at 10. Plaintiffs' proof of service indicates that service on IFC was attempted by mailing a copy of the Motion to 1818 H Street, Washington D.C. 20433.

Plaintiffs' Motion seeks to do just that.  Based on the legally erroneous and purely speculative claim that IFC would have waived its immunity to Iran in order to engage in (unspecified) business transactions with Iran, Plaintiffs argue that the appointment of a receiver would allow them to "step into the shoes of Iran" and thus sidestep IFC's immunity.  *See, e.g.*, Pls.' Mem. at 7, 9, 22.  Plaintiffs do not—and cannot—identify any such express waiver of immunity by IFC.

Further, the limited waivers of immunity under the IOIA are interpreted narrowly and, consistent with D.C. Circuit precedent, permitted only where a waiver would further IFC's chartered objectives.  *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1338 (D.C. Cir. 1998). IFC has not waived its immunity as to these proceedings because it would receive no benefit by waiving its immunity to third-party judgment creditors seeking to enforce against an IFC member nation.  *See id.* at 1338-39 (affirming dismissal of action to garnish wages of Inter-American Development Bank employee); *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, No. 07-7049, 2008 WL 441836, at *2 (D.C. Cir. Feb. 14, 2008) (affirming dismissal of non-wage garnishment action by creditors of World Bank member nation's contractors).  A waiver of immunity in such circumstances would subject IFC to a flood of burdensome litigation proceedings.  This would greatly hinder, and not further, IFC's objectives to promote economic growth in developing countries through private sector investment.

Accordingly, Plaintiffs' Motion must be denied.  In addition, because a federal court must also consider issues of subject-matter jurisdiction whenever they are raised,[9] IFC also respectfully requests that the Court order that Plaintiffs cease and desist from serving any further process upon IFC, and quash the subpoena and writ of attachment.

---

[9]  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008) (where a defendant has immunity, federal courts lack subject-matter jurisdiction and "must dismiss the case") (citing Fed. R. Civ. P. 12(h)(3)).

## ARGUMENT

I.    **IFC IS IMMUNE FROM THE RELIEF SOUGHT BY PLAINTIFFS IN THEIR MOTION TO APPOINT A RECEIVER**

   A.    **IFC Is An International Organization Of Sovereign Member Nations That Promotes Sustainable Economic Growth In Developing Countries**

IFC is a public international organization comprised entirely of sovereign member nations, and is the private sector arm of the World Bank Group. *See, e.g.*, *IFC in Brief* at 5. IFC was established in 1956 for the purpose of "further[ing] economic development by encouraging the growth of productive private enterprise in member countries, particularly in the less developed areas." IFC's Articles of Agreement, art. I § 1;[10] *see also IFC in Brief* at 7. IFC's work as global investor and advisor reaches some 140 emerging markets. *IFC in Brief* at 7.

Headquartered in Washington, D.C., IFC has 179 member nations—including Iran—and operates in accordance with its Articles of Agreement, an international intergovernmental agreement among its member nations. *See id.* at 5; *see also* IFC's Articles of Agreement, 7 U.S.T. 2197. IFC's member nations collectively determine its policies. *IFC in Brief* at 5. Pursuant to its Articles of Agreement, IFC invests solely in the private sector, in partnership with private businesses and entrepreneurs.[11] *See id.* at 5-8.

The United States was a founding member of IFC. In 1955, Congress authorized the President to accept IFC membership for the United States, as provided for by IFC's Articles of Agreement. *See* 22 U.S.C. § 282. The provisions of IFC's Articles of Agreement, including specified privileges and immunities, have been made part of U.S. law. *See* 22 U.S.C. § 282 *et*

---

[10] IFC's Articles of Agreement are submitted herewith as Exhibit 8 to the Vasquez Declaration.

[11] As stated in its May 14, 2008 letter (Vasquez Decl. Ex. 5), IFC has not uncovered any records indicating debts owed by IFC to Iran or any of the State ministries, divisions, agencies or instrumentalities identified in Exhibit A to the writ of attachment, nor any goods, chattel or credit of such entities in IFC's possession or charge. Because, as detailed herein, IFC's records and assets are immune from both discovery and attachment in these proceedings, IFC declines to respond further to the subpoena or the writ of attachment.

*seq.*; *see also* 7 U.S.T. 2197.   Pursuant to the IOIA, the President, by Executive Order, "designate[d] [IFC] as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the said [IOIA]."   Exec. Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956).

> **B.      The IOIA And IFC's Articles Of Agreement Accord IFC Immunity From Every Form Of Judicial Process, Including The Relief Sought By Plaintiffs**

The IOIA provides that "[i]nternational organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit ***and every form of judicial process*** as is enjoyed by foreign governments," absent an express waiver of that immunity.   22 U.S.C. § 288a(b) (emphasis added).   This immunity is co-extensive with the "virtually absolute immunity" accorded to foreign sovereigns in 1945.   *Atkinson*, 156 F.3d at 1340-41 (affirming dismissal of garnishment proceedings) (quotation omitted); *see also Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983) ("It is well established under international law that an international organization is entitled to such privileges and such immunity from the jurisdiction of a member state as are necessary for the fulfillment of the purposes of the organization . . . .") (quotation omitted).

In addition, IFC's Articles of Agreement expressly prohibit judicial recourse against IFC by "member[] [nations] or persons acting for or deriving claims from members."   IFC's Articles of Agreement, art. VI § 3.   Plaintiffs have not identified, and cannot identify, any express waiver of IFC's immunity *vis-à-vis* Iran that would permit them—even if allowed to "step into the shoes of Iran" (Pls.' Mem. at 22)—to attach IFC accounts or other assets purportedly payable to Iran. Indeed, Plaintiffs' suggestion that such a waiver could have arisen in the context of commercial transactions between IFC and Iran (*see, e.g.*, *id.* at 7, 9) is nothing more than unsubstantiated

conjecture.[12]  As discussed above, IFC invests solely in the private sector.  *See, e.g.*, *IFC in Brief* at 5-8; *see also* IFC's Articles of Agreement, art. I § 1 ("The purpose of the Corporation is to further economic development by encouraging the growth of productive private enterprise in member countries . . . .").

Moreover, U.S. courts have interpreted Article VI § 3 of IFC's Articles of Agreement extremely narrowly, such that there is a waiver only in the most limited circumstances.[13]  *See Mendaro*, 717 F.2d at 611 (holding that immunity waiver "must be narrowly read in light of both national and international law").  Under the "corresponding-benefits" standard established by the D.C. Circuit, IFC's immunity is "construed as *not waived* unless the particular type of suit would *further* [IFC's] objectives."  *Atkinson*, 156 F.3d at 1338 (emphasis in original); *see also Mendaro*, 717 F.2d at 615 (holding that waiver of immunity in Articles of Agreement identical to those of IFC encompasses only "suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom [IFC] would have to subject itself to suit in order to achieve its chartered objectives").  The waiver is not applicable in this case because IFC would not receive

---

[12]  Plaintiffs' argument is plainly speculative even on its face.  *See, e.g.*, Pls.' Mem. at 5 ("Iran presumably entered into the relationship with the LEVIED BANK in which Iran now maintains the full range of civil enforcement rights."); *id.* ("[T]he LEVIED BANKS presumably would not be able to mount [a sovereign immunity] defense against Iran."); *id.* at 7; (noting the "clear and unmistakable inference that Iran obtained a complete waiver" of IFC's immunity); *id.* at 9 ("[P]rudent business experience would suggest that Iran . . . would necessarily demand redress . . . without, again, the unbelievable burden of litigating . . . .").

[13]  Article VI § 3 of IFC's Articles of Agreement states:

> Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.  No actions shall, however, be brought by members or persons acting for or deriving claims from members.  The property and assets of the Corporation shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation.

An identical waiver provision is included in the Articles of Agreement of the other World Bank entities.  *See Banco de Seguros del Estado v. Int'l Fin. Corp.*, Nos. 06 Civ. 2427 (LAP), 06 Civ. 3739 (LAP), 2007 WL 2746808, at *4 n.7 (S.D.N.Y. Sept. 20, 2007) ("The status of the immunities of IFC and of the other World Bank entities is virtually indistinguishable. . . . [E]ven the relevant portions of their Articles of Agreement are the same . . . .").

any conceivable "corresponding benefit" by waiving its immunity to Plaintiffs' efforts to enforce a judgment against Iran.

In fact, the D.C. Circuit has held specifically that international organizations under the IOIA do not derive benefits warranting a waiver of immunity in the context of third-party garnishment or attachment proceedings.  *See Atkinson*, 156 F.3d at 1338-39 (holding, in action to garnish wages of Inter-American Development Bank employee, that the "clear lack of benefit—indeed, disadvantage—of a waiver of immunity from garnishment proceedings compels the conclusion" that immunity applied); *Inversora Murten*, 2008 WL 441836, at *2 (holding that World Bank's "interests are not advanced by subjecting itself to non-wage garnishment proceedings initiated by third-party judgment creditors of member nations' contractors") (internal citation omitted).

Given IFC's status as a public international organization comprised of individual member nations, it is essential that IFC retain its immunity in this instance.  IFC's chartered objectives would not be furthered—and, indeed, would be seriously impaired—if it were deemed to relinquish its immunity to every third-party judgment creditor of any one of its 179 member nations.  *See Mendaro*, 717 F.2d at 617 ("[L]imitations on immunity that subject the organization to suits which could significantly hamper the organization's functions are inherently less likely to have been intended . . . .").  The flood of post-judgment discovery requests and writs of attachment arising from all cases against member nations would pose a costly and time-consuming impediment to the achievement of IFC's development objectives.  *Cf. Atlantic Tele-Network Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 132 (D.D.C. 2003) ("[W]ere this suit to be allowed, virtually any U.S. citizen with a commercial grievance against a debtor nation could challenge a [Bank] loan to that nation without any 'corresponding benefit' accruing

thereby to the [Bank] whatsoever."). Judgment creditors anxious to satisfy a judgment against a member nation should not do so at the doors of IFC. In any such instance, the benefit to IFC of waiving its immunity would be nonexistent. *See Atkinson*, 156 F.3d at 1338 (holding that "immunity should be construed as *not waived* unless the particular type of suit would *further* [IFC's] objectives") (emphasis in original).

Finally, to the extent Plaintiffs rely on the FSIA, the FSIA expressly reinforces IFC's IOIA immunity in the specific context of enforcement proceedings against a foreign sovereign state. Section 1611(a) of the FSIA establishes that "the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the [IOIA] ***shall not be subject to attachment or any other judicial process*** impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States." 28 U.S.C. § 1611(a) (emphasis added); *see also Atkinson*, 156 F.3d at 1342 (noting that, under Section 1611(a), "a judgment creditor cannot execute upon funds held by international organizations for disbursement to [a] foreign state judgment debtor"); *Trans Commodities, Inc. v. Kazakhstan Trading House, S.A.*, No. 96-316 (NHJ), slip op. at 4-5 (D.D.C. Feb. 20. 1997)[14] (quashing writ of attachment issued against foreign state's bank accounts for loan proceeds from World Bank and holding that "[t]o allow World Bank loan proceeds to become subject to attachment . . . is untenable and contrary to the purpose of section 1611(a) immunity"). As evident on its face, the intended purpose of this provision is to permit international organizations entitled to IOIA immunity "to carry out their functions from their offices located in the United States ***without hindrance by private claimants seeking to attach the payment of funds to a foreign state***." Foreign Sovereign

---

[14]  Submitted herewith as Exhibit 9 to the Vasquez Declaration.

Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604 (emphasis added). Section 1611(a) thus prohibits the very kind of judicial process that Plaintiffs seek here—namely, the appointment of a receiver to compel IFC to "pay-over, surrender and hand over all funds" (Pls.' Mem. at 5) purportedly payable to Iran.

The recent amendments to the FSIA highlighted by Plaintiffs (Pls.' Mem. at 2-4) do not disturb the IOIA immunities preserved by Section 1611(a). The new provision governing the attachment of foreign state assets (*see id.* at 3 (quoting "'(g) Property in Certain Actions'")) amends Section 1610 of the FSIA, which enumerates certain exceptions to the immunity from attachment or execution to which foreign sovereign states are entitled.[15] Section 1611(a) of the FSIA—which remains unchanged by the recent amendments—expressly provides that international organizations under the IOIA retain their immunity "***[n]otwithstanding the provisions of section 1610*** of this chapter." 28 U.S.C. § 1611(a) (emphasis added). In proceeding with their Motion, Plaintiffs are simply ignoring the plain language of the statute.

## II.   IFC'S IMMUNITIES APPLY TO ALL MOTIONS, WRITS AND OTHER JUDICIAL PROCESS THAT PLAINTIFFS HAVE SERVED OR MAY SERVE UPON IFC

Because IFC would receive no corresponding benefit through a waiver here, it retains absolute immunity over "every form of judicial process" in these or any related proceedings. *See* 22 U.S.C. § 288a(b); 28 U.S.C. § 1611(a); *see also Atkinson*, 156 F.3d at 1340-41; *In re Minister Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) (holding that sovereign immunity safeguards immune entities not only from suit and liability, but also the "attendant burdens of litigation") (quoting *Foremost-McKesson, Inc. v. Islamic Rep. of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). Such immunity encompasses all IFC assets, records and personnel, thus requiring that the Court

---

[15] The new provision governing attachment is not, as Plaintiffs suggest (Pls.' Mem. at 3), a subsection of 28 U.S.C. § 1605A.

deny Plaintiffs' Motion and order that Plaintiffs cease and desist from serving any further motions or other process upon IFC, as well as quashing both the writ of attachment and subpoena.

### A. IFC's Assets Are Immune From Attachment Or Any Other Judicial Process Impeding The Disbursement Of Funds To, Or On The Order Of, A Foreign State

Pursuant to the IOIA and IFC's Articles of Agreement, IFC's assets are immune from attachment, as well as search, seizure and any other form of interference or restriction. 22 U.S.C. § 288a(b) (providing that IFC's "property and . . . assets" are immune from judicial process); IFC's Articles of Agreement, art. VI § 3 ("The property and assets of the Corporation shall, wheresover located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation."); *see also* 22 U.S.C. § 288a(c) ("Property and assets of international organizations, wherever located and by whomsoever held, shall be immune from search, unless such immunity be expressly waived, and from confiscation."); IFC's Articles of Agreement, art. VI § 4 ("Property and assets of the Corporation, wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation or any other form of seizure . . . ."); *id.* § 6 ("To the extent necessary to carry out the operations provided for in this Agreement . . . all property and assets of the Corporation shall be free from restrictions, regulations, controls and moratoria of any nature.").

As discussed, Plaintiffs' efforts to attach IFC assets in satisfaction of the judgment against Iran—whether through the writ of attachment or Motion for Appointment of Receiver— plainly fall within the purview of international organizational immunity under both the IOIA and FSIA. *See* 22 U.S.C. § 288a(b); 28 U.S.C. § 1611(a); *see also Atkinson*, 156 F.3d at 1338-39;

*Inversora Murten*, 2008 WL 441836, at *2.  Accordingly, Plaintiffs' Motion must be dismissed and the writ of attachment must be quashed.

**B.    IFC's Records And Personnel Are Immune From Judicial Process**

In addition to the immunity generally encompassing all IFC assets and property, the IOIA and IFC's Articles of Agreement specifically confer upon IFC absolute archival immunity, which safeguards all IFC records, documents and official communications from compulsory disclosure.  22 U.S.C. § 288a(c) ("The archives of international organizations shall be inviolable."); IFC's Articles of Agreement, art. VI § 5 (same).  The D.C. Circuit has long recognized this form of immunity enjoyed by international organizations.  *See Mendaro*, 717 F.2d at 615 ("The premises, archives, and communications of international organizations are shielded from interference by member states."); *see also Alpha Lyracom Space Commc'ns, Inc. v. Comsat Corp.*, 113 F.3d 372 (2d Cir. 1997) (affirming district court ruling that international organization's official session records were immune from discovery); *United States v. Chalmers*, No. S5 05 CR 59(DC), 2007 WL 624063, at *2 (S.D.N.Y. Feb. 26, 2007) (holding, with reference to IOIA, that international organization remained immune from discovery after the voluntary production of documents subject to express reservation of privileges and immunities).

It is widely recognized as a principle of international law that public international organizations like IFC "enjoy[] immunity from any exercise of jurisdiction . . . that would interfere with official use by the organization of its premises, archives, documents, or communications."  Restatement (Third) of Foreign Relations Law § 468 (1986).  In this respect, the immunity of IFC's property and archives is akin to the immunity granted diplomatic missions.  *See id.* § 478 cmt. b ("[T]he premises, archives, couriers, and bags of major international organizations enjoy the same inviolability and immunity as those of diplomatic missions."); *cf.* Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T.

3227, 500 U.N.T.S. 95 ("The archives and documents of the mission shall be inviolable at any time and wherever they may be."); *see also Renchard v. Humphreys & Harding, Inc.*, No. 2128-72, slip op. (D.D.C. Apr. 24, 1975)[16] (denying motion to compel discovery against Brazil and holding that archives of the Brazilian Embassy are inviolable) (citing Vienna Convention, arts. 23, 24, 27, 30, 31, and 37).

To the extent that the subpoena purports to summon any IFC officer or employee for deposition testimony, such individuals likewise enjoy absolute immunity from judicial process, including discovery. 22 U.S.C. § 288d(b) ("[O]fficers and employees of such organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity . . . ."); IFC's Articles of Agreement, art. VI § 8 ("All Governors, Directors, Alternates, officers and employees of [IFC] (i) shall be immune from legal process with respect to acts performed by them in their official capacity . . . ."). In considering the immunity of international organization employees, the D.C. Circuit has emphasized that the "unique nature of the *international* civil servant is relevant" and that such "officials should be as free as possible, within the mandate granted by the member states, to perform their duties free from the peculiarities of national politics." *Mendaro*, 717 F.2d at 616 (quoting *Broadbent v. Org. of Am. States*, 628 F.2d 27, 34-35 (D.C. Cir. 1980)) (emphasis in original); *see also Taiwan v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 128 F.3d 712, 718-719 (9th Cir. 1997) (holding, with reference to the IOIA, that the employee of an international organization is entitled to broad testimonial immunity).

Thus, pursuant to the IOIA and its Articles of Agreement, IFC remains immune from any form of process in these proceedings, including the compulsory production of documents or the

---

[16] Submitted herewith as Exhibit 10 to the Vasquez Declaration.

testimony of IFC officials and employees.  22 U.S.C. § 288a(c); IFC's Articles of Agreement, art. VI § 5; *see also Mendaro*, 717 F.2d at 615.  In the absence of any waiver of IFC's absolute immunity, the subpoena is without binding legal effect and must be quashed.

## **CONCLUSION**

For the foregoing reasons, IFC respectfully requests that the Court deny Plaintiffs' Motion to Appoint Receiver, order that Plaintiffs cease and desist from serving any further process upon IFC, and quash the writ of attachment dated March 25, 2008 and subpoena dated April 9, 2008.

Dated: June 5, 2008                                Respectfully submitted,
       Washington, D.C.

**WHITE & CASE** LLP

/ s / Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Frank Panopoulos (D.C. Bar No. 459365)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600

*Attorneys for International Finance Corporation*

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRANS COMMODITIES, INC.,

Plaintiff,

v.

KAZAKHSTAN TRADING HOUSE, S.A.,
and REPUBLIC OF KAZAKHSTAN,

Defendants.

Civil Action Misc. No. 96-316  (NHJ)

**FILED**

FEB 2 0 1997

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## <u>MEMORANDUM ORDER</u>

Presently before the Court is the motion of defendant Republic of Kazakhstan (hereafter "the Republic") to quash two writs of attachment issued by the Superior Court of the District of Columbia.[1] As the facts in this miscellaneous action were set out in detail in a February 5, 1997, Memorandum Order, the case is briefly summarized as follows.

On December 21, 1995, the New York Supreme Court entered a default judgment in favor of Trans Commodities, Inc. (hereafter "Trans Commodities") and against Kazakhstan Trading House, S.A. and the Republic. The judgment totaled $768,834, representing $383,000 in actual damages, $250,000 in punitive damages, $57,796 in pre-judgment interest, and $78,038 in attorneys' fees. On July 30, 1996, plaintiff docketed the New York judgment in the Superior

---

[1]    In view of the Republic's request for an immediate decision regarding the writs of attachment and the representation of counsel at a February 11, 1997, hearing that the parties are currently litigating a third writ of attachment in United States District Court for the Southern District of New York, the Court does not address the validity of the default judgment entered by the New York Supreme Court.

Court of the District of Columbia. On September 18, 1996, and again on October 2, 1996, the

Superior Court issued writs of attachment commanding Riggs Bank (hereafter "Riggs") to hold

any property of the Republic it had in its possession. On September 27, 1996, Riggs moved in

the Superior Court to quash the writ, arguing that Trans Commodities had not complied with the

requirements of the Foreign Sovereign Immunities Act. On October 10, 1996, the Superior

Court issued an Order requiring Riggs to hold $563,112.02 pending a decision on the writ of

attachment. The case was removed to federal court on November 7, 1996.

The Republic has provided evidence that it has two categories of funds in bank accounts

at Riggs: (1) embassy funds used for diplomatic and consular operations and (2) funds provided

by the World Bank for designated projects in Kazakhstan. Embassy funds are used to pay only

those expenses directly related to the functioning of the embassy, including payment of salaries

for embassy personnel, telephone and electricity expenses, and expenses for hosting diplomatic

functions. Proceeds from World Bank loans and credits, the second category of funds held at

Riggs, are maintained in separate bank accounts. There is no commingling of funds among the

various World Bank projects nor may the funds be disbursed for other purposes. Disbursement

of funds provided by the World Bank is administered and controlled by the Ministry of Finance

in Almaty, Kazakhstan. Republic's Mot. to Quash at Ex. C.

I.    Embassy Funds

Under the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227 (1991), embassy

bank accounts used or intended to be used for the purposes of the diplomatic mission are

absolutely immune from attachment to satisfy a civil judgment. *See, e.g.*, Liberian Eastern

Timber Corp. v. Government of the Republic of Liberia, 659 F. Supp. 606, 608 (D.D.C. 1987)

(citing Art. 24, Art. 31, and the preamble to the Vienna Convention).  Moreover, the Foreign

Sovereign Immunities Act creates a presumption that property in the United States of a foreign

state is immune from attachment.[2]  28 U.S.C. § 1609 (1994).  Although there are certain limited

exceptions for funds used for commercial activity in the United States, *see* 28 U.S.C.

§ 1610(a)(1) - (a)(6), there is no indication that the embassy funds on deposit at Riggs Bank are

used for anything other than consular and diplomatic purposes.[3]

In its opposition to the motion to quash, Trans Commodities argues that it should be

granted discovery to determine whether any embassy funds are used for commercial activity in

the United States.  Allowing discovery to go forward, however, would ignore the mandate of the

Vienna Convention and eviscerate one of the purposes of immunity:  deference to the

governmental affairs of foreign states.  *See* 767 Third Avenue Associates v. Permanent Mission

of the Republic of Zaire, 988 F.2d 295, 297 (2d Cir. 1993) (finding that FSIA exceptions to

immunity are subject to the Vienna Convention).  In light of evidence offered by the Republic

---

[2]        Section 1609 of the FSIA provides that:

[s]ubject to existing international agreements to which the United States is a party
at the time of enactment of this Act, the property in the United States of a foreign
state shall be immune from attachment arrest and execution except as provided in
sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609 (1994).

[3]        Under section 1610, property of a foreign state in the United States "used for
commercial activity in the United States" is not immune from attachment if any of six
enumerated circumstances apply.  28 U.S.C. § 1610(a) (1994).  Although Trans Commodities
argues that the exception listed in section 1610(a)(1), waiver of immunity from attachment,
applies in this case, it has not met the threshold requirement:  showing that the property is used
for commercial activity in the United States.

3

that its embassy bank accounts are used exclusively in the performance of the embassy's

diplomatic and consular functions, and in the absence of any indication to the contrary, discovery

is not warranted and would frustrate the purpose of entitlement to immunity.  *See* El-Fadl v.

Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996).  The Court finds that the funds held

on deposit at Riggs for embassy use are immune from attachment.

II.    Proceeds from the World Bank

As mentioned earlier, the Republic maintains separate bank accounts for loan proceeds

received from the World Bank and disburses the proceeds from its bank accounts directly to

World Bank-funded projects in Kazakhstan.  Because project funds are received incrementally,

the World Bank replenishes the bank accounts as needed.  At a February 11, 1997, hearing,

counsel for Riggs informed the Court that, because Riggs is holding funds in these accounts

pursuant to the writs of attachment, the World Bank has ceased replenishing the bank accounts.

Under section 1611(a) of the FSIA, funds that are the property of "an organization

designated by the President to enjoy the . . . immunities provided by the International

Organization Immunities Act" are absolutely immune from attachment.  28 U.S.C. § 1611(a)

(1994).  The World Bank is an organization protected by the International Organization

Immunities Act.  *See* 22 U.S.C. §§ 288-288i (1994); Exec. Order No. 9751, 11 Fed. Reg. 7713

(July 11, 1946).  To allow World Bank loan proceeds to become subject to attachment while

awaiting disbursement to World Bank-funded projects is untenable and contrary to the purpose

of section 1611(a) immunity.  *See* H.R. REP. 94-1487, § 1611 (1976) ("Purpose of [section 1611]

is to permit international organizations . . . to carry out their functions . . . without hindrance by

private claimants seeking to attach the payment of funds to a foreign state.").  The Court finds

4

that the funds held by the Republic as proceeds from loans and credits advanced by the World

Bank to finance projects in Kazakhstan are immune from attachment.

Accordingly, it is this _20th_ day of February 1997,

ORDERED that the motion to quash writ of attachment [# 2] be, and hereby is, granted; it

is further

ORDERED that the September 18, 1996, and October 2, 1996, writs of attachment issued

by the Superior Court of the District of Columbia be, and hereby are, quashed; it is further

ORDERED that Riggs Bank shall immediately make available to the Republic of

Kazakhstan any funds held pursuant to an October 10, 1996, Order of the Superior Court of the

District of Columbia (Salzman, J.); and it is further

ORDERED that this miscellaneous case be, and hereby is, closed.


_Norma Holloway Johnson_
NORMA HOLLOWAY JOHNSON
UNITED STATES DISTRICT JUDGE

5