# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| PETERSON, *et al.* | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| *v.* | ) Civil Action No.  1-01-CV-02094 RCL |
| | ) |
| ISLAMIC REPUBLIC OF IRAN, *et al.* | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## INTERNATIONAL FINANCE CORPORATION'S
## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
## <u>MOTION FOR APPOINTMENT OF RECEIVER</u>

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Frank Panopoulos (D.C. Bar No. 459365)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600

*Attorneys for International Finance
Corporation*

June 5, 2008

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 4

I.     IFC IS IMMUNE FROM THE RELIEF SOUGHT BY PLAINTIFFS IN THEIR
MOTION TO APPOINT A RECEIVER ............................................................................ 4

      A.    IFC Is An International Organization Of Sovereign Member Nations That
Promotes Sustainable Economic Growth In Developing Countries ....................... 4

      B.    The IOIA And IFC's Articles Of Agreement Accord IFC Immunity From
Every Form Of Judicial Process, Including The Relief Sought By
Plaintiffs .............................................................................................................. 5

II.    IFC'S IMMUNITIES APPLY TO ALL MOTIONS, WRITS AND OTHER
JUDICIAL PROCESS THAT PLAINTIFFS HAVE SERVED OR MAY SERVE
UPON IFC ...................................................................................................................... 9

      A.    IFC's Assets Are Immune From Attachment Or Any Other Judicial
Process Impeding The Disbursement Of Funds To, Or On The Order Of,
A Foreign State .................................................................................................. 10

      B.    IFC's Records And Personnel Are Immune From Judicial Process .................... 11

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

FEDERAL CASES                                                        Page(s)

*Alpha Lyracom Space Commc'ns, Inc. v. Comsat Corp.*,
    113 F.3d 372 (2d Cir. 1997)....................................................................11

\* *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998) ...................................... *passim*

*Atlantic Tele-Network Inc. v. Inter-Am. Dev. Bank.*,
    251 F. Supp. 2d 126 (D.D.C. 2003) ...................................................... 7-8

*Auster v. Ghana Airways Ltd.*, 514 F.3d 44 (D.C. Cir. 2008) ........................................3

*Banco de Seguros del Estado v. Int'l Fin. Corp.*, Nos. 06 Civ. 2427 (LAP),
    06 Civ. 3739 (LAP), 2007 WL 2746808 (S.D.N.Y. Sept. 20, 2007).......................................6

*Broadbent v. Org. of Am. States*, 628 F.2d 27 (D.C. Cir. 1980)....................................12

*Foremost-McKesson, Inc. v. Islamic Rep. of Iran*,
    905 F.2d 438 (D.C. Cir. 1990) ....................................................................9

*In re Minister Papandreou*, 139 F.3d 247 (D.C. Cir. 1998) ..........................................9

\* *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*,
    No. 07-7049, 2008 WL 441836 (D.C. Cir. Feb. 14, 2008).............................................3, 7, 11

\* *Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983) ...................................... *passim*

*Renchard v. Humphreys & Harding, Inc.*, No. 2128-72, slip op.
    (D.D.C. Apr. 24, 1975) .....................................................................12

*Taiwan v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 128 F.3d 712 (9th Cir. 1997)............................12

\* *Trans Commodities, Inc. v. Kazakhstan Trading House, S.A.*,
    No. 96-316 (NHJ), slip op. (D.D.C. Feb. 20, 1997) ...............................................8

*United States v. Chalmers*, No. S5 05 CR 59(DC),
    2007 WL 624063 (S.D.N.Y. Feb. 26, 2007)........................................................11


FEDERAL STATUTES, RULES AND EXECUTIVE ORDERS

22 U.S.C. § 282..............................................................................4-5

Executive Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956) ...............................................5

Page(s)

Fed. R. Civ. P. 12(h)(3)..............................................................................................3

Fed. R. Civ. P. 45(b) ..................................................................................................1

Foreign Sovereign Immunities Act ("FSIA") of 1976 (as amended),
    28 U.S.C. § 1602 *et seq.*.................................................................1, 8, 9, 10

International Organizations Immunities Act ("IOIA") of 1945,
    22 U.S.C. § 288 *et seq.*.................................................................... *passim*


TREATIES, TREATISES AND OTHER AUTHORITIES

Foreign Sovereign Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976),
    *as reprinted in* 1976 U.S.C.C.A.N. 6604 ........................................... 8-9

International Finance Corporation's Articles of Agreement,
    7 U.S.T. 2197 ................................................................................... *passim*

Restatement (Third) of Foreign Relations Law § 468 (1986)......................................11

Restatement (Third) of Foreign Relations Law § 478 cmt. b (1986)............................11

Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961,
    23 U.S.T. 3227, 500 U.N.T.S. 95................................................. 11-12

## INTRODUCTION

International Finance Corporation ("IFC") is a non-party to these proceedings.  While IFC recognizes the importance of the judgment, IFC has had no role in any of the underlying actions.  Accordingly, IFC respectfully submits this Opposition to Plaintiffs' Motion for Appointment of Receiver.

IFC is the private sector arm of the World Bank Group and a public international organization entitled to broad immunity from every form of judicial process under the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288 *et seq.*, and IFC's Articles of Agreement.  In particular, absent express waiver, IFC enjoys absolute immunity from the attachment of its assets or the discovery of its records or personnel.  IFC has not waived, and indeed expressly reserves, its immunity as to all judicial process served upon it in these proceedings.

Notwithstanding this immunity, Plaintiffs have sought—by various means and in multiple jurisdictions[1]—to subject IFC to judicial process as part of their efforts to enforce a multi-billion dollar judgment against the Islamic Republic of Iran ("Iran").  Plaintiffs first mailed a subpoena dated April 9 to IFC's Washington, D.C. headquarters, directing IFC to produce certain documents as part of post-judgment discovery related to this case.[2]  The subpoena also

---

[1]  In addition to the Motion for Appointment of Receiver before this Court, Plaintiffs are pursuing essentially identical (and redundant) relief before the U.S. District Court for the Northern District of California.  On May 1, 2008, Plaintiffs filed a motion for assignment of rights, pursuant to California state law, to collect Iranian funds purportedly held by certain "financial institutions," including IFC.  As addressed below, all of these collection efforts—whether based on federal or state law—are barred by IFC's immunity under the IOIA, as well as the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*  On May 28, the International Bank for Reconstruction and Development ("World Bank") filed a motion with the Northern District of California to stay Plaintiffs' motion for assignment of rights until this Court has ruled on the present Motion.  That motion is scheduled to be heard on July 2, 2008, by Magistrate Judge Bernard Zimmerman.

[2]  Letter from David J. Cook to "International Finance Company" dated April 9, 2008, enclosing subpoena dated April 9, 2008 (submitted herewith as Exhibit 1 to the Declaration of Francis A. Vasquez, Jr. ("Vasquez Declaration")).  As a preliminary matter, the delivery of the subpoena by mail alone did not constitute effective service.  *See* Fed. R. Civ. P. 45(b) (requiring personal service of subpoena).

purported to command deposition testimony, although elsewhere it stated that no appearance was required. On April 29, 2008, IFC responded to the subpoena by letter, informing Plaintiffs of IFC's immunities under the IOIA.[3] The following day, U.S. Marshals appeared at IFC's headquarters to serve a writ of attachment on judgment that had been issued on March 25, 2008.[4] Later, on May 5, Plaintiffs faxed a letter to IFC contesting IFC's entitlement to immunity.[5]

On May 14, IFC responded to the writ of attachment by letter, copied to the Court, reiterating and further detailing its immunity under both the IOIA and FSIA.[6] In the letter, IFC also informed Plaintiffs that its internal inquiries in connection with the writ had not uncovered any records indicating debts owed by IFC to Iran or any of the State ministries, divisions, agencies or instrumentalities identified in Exhibit A to the writ of attachment, nor any goods, chattel or credit of such entities in IFC's possession. Plaintiffs responded with a two-sentence faxed letter on May 15 stating that they "disagree with [IFC's] analysis."[7] Then, on May 20, Plaintiffs filed the present Motion.[8]

Plaintiffs suggest that they are not attempting an "end run" around IFC's immunity. Memorandum of Points and Authorities in Support of Motion ("Pls.' Mem.") at 5. However,

---

[3] Letter from Francis A. Vasquez, Jr. to David J. Cook dated Apr. 29, 2008 (submitted herewith as Exhibit 2 to the Vasquez Declaration).

[4] Writ of Attachment on Judgment other than Wages, Salary and Commissions dated March 25, 2008 (submitted herewith as Exhibit 3 to the Vasquez Declaration).

[5] Letter from David J. Cook to Francis A. Vasquez, Jr. dated May 2, 2008 (submitted herewith as Exhibit 4 to the Vasquez Declaration).

[6] Letter from Francis A. Vasquez, Jr. to David J. Cook dated May 14, 2008 (submitted herewith as Exhibit 5 to the Vasquez Declaration).

[7] Letter from David J. Cook to Francis A. Vasquez, Jr. dated May 14, 2008 (submitted herewith as Exhibit 6 to the Vasquez Declaration).

[8] Plaintiffs still have not properly served the Motion on IFC because they apparently mailed it to the wrong address. IFC's headquarters address is 2121 Pennsylvania Avenue, N.W., Washington, D.C. 20433. *See, e.g.*, *IFC in Brief: Creating Opportunities, Improving Lives*, available at http://www.ifc.org/ifcext/about.nsf/Content/ IFC_in_Brief, ("*IFC in Brief*") (submitted herewith as Exhibit 7 to the Vasquez Declaration) at 10. Plaintiffs' proof of service indicates that service on IFC was attempted by mailing a copy of the Motion to 1818 H Street, Washington D.C. 20433.

Plaintiffs' Motion seeks to do just that.  Based on the legally erroneous and purely speculative claim that IFC would have waived its immunity to Iran in order to engage in (unspecified) business transactions with Iran, Plaintiffs argue that the appointment of a receiver would allow them to "step into the shoes of Iran" and thus sidestep IFC's immunity.  *See, e.g.*, Pls.' Mem. at 7, 9, 22.  Plaintiffs do not—and cannot—identify any such express waiver of immunity by IFC.

Further, the limited waivers of immunity under the IOIA are interpreted narrowly and, consistent with D.C. Circuit precedent, permitted only where a waiver would further IFC's chartered objectives.  *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1338 (D.C. Cir. 1998).  IFC has not waived its immunity as to these proceedings because it would receive no benefit by waiving its immunity to third-party judgment creditors seeking to enforce against an IFC member nation.  *See id.* at 1338-39 (affirming dismissal of action to garnish wages of Inter-American Development Bank employee); *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, No. 07-7049, 2008 WL 441836, at *2 (D.C. Cir. Feb. 14, 2008) (affirming dismissal of non-wage garnishment action by creditors of World Bank member nation's contractors).  A waiver of immunity in such circumstances would subject IFC to a flood of burdensome litigation proceedings.  This would greatly hinder, and not further, IFC's objectives to promote economic growth in developing countries through private sector investment.

Accordingly, Plaintiffs' Motion must be denied.  In addition, because a federal court must also consider issues of subject-matter jurisdiction whenever they are raised,[9] IFC also respectfully requests that the Court order that Plaintiffs cease and desist from serving any further process upon IFC, and quash the subpoena and writ of attachment.

---

[9]   *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008) (where a defendant has immunity, federal courts lack subject-matter jurisdiction and "must dismiss the case") (citing Fed. R. Civ. P. 12(h)(3)).

## **ARGUMENT**

**I.    IFC IS IMMUNE FROM THE RELIEF SOUGHT BY PLAINTIFFS IN THEIR MOTION TO APPOINT A RECEIVER**

>   **A.    IFC Is An International Organization Of Sovereign Member Nations That Promotes Sustainable Economic Growth In Developing Countries**

IFC is a public international organization comprised entirely of sovereign member nations, and is the private sector arm of the World Bank Group. *See, e.g.*, *IFC in Brief* at 5. IFC was established in 1956 for the purpose of "further[ing] economic development by encouraging the growth of productive private enterprise in member countries, particularly in the less developed areas." IFC's Articles of Agreement, art. I § 1;[10] *see also IFC in Brief* at 7. IFC's work as global investor and advisor reaches some 140 emerging markets. *IFC in Brief* at 7.

Headquartered in Washington, D.C., IFC has 179 member nations—including Iran—and operates in accordance with its Articles of Agreement, an international intergovernmental agreement among its member nations. *See id.* at 5; *see also* IFC's Articles of Agreement, 7 U.S.T. 2197. IFC's member nations collectively determine its policies. *IFC in Brief* at 5. Pursuant to its Articles of Agreement, IFC invests solely in the private sector, in partnership with private businesses and entrepreneurs.[11] *See id.* at 5-8.

The United States was a founding member of IFC. In 1955, Congress authorized the President to accept IFC membership for the United States, as provided for by IFC's Articles of Agreement. *See* 22 U.S.C. § 282. The provisions of IFC's Articles of Agreement, including specified privileges and immunities, have been made part of U.S. law. *See* 22 U.S.C. § 282 *et*

---

[10]  IFC's Articles of Agreement are submitted herewith as Exhibit 8 to the Vasquez Declaration.

[11]  As stated in its May 14, 2008 letter (Vasquez Decl. Ex. 5), IFC has not uncovered any records indicating debts owed by IFC to Iran or any of the State ministries, divisions, agencies or instrumentalities identified in Exhibit A to the writ of attachment, nor any goods, chattel or credit of such entities in IFC's possession or charge. Because, as detailed herein, IFC's records and assets are immune from both discovery and attachment in these proceedings, IFC declines to respond further to the subpoena or the writ of attachment.

*seq.*; *see also* 7 U.S.T. 2197. Pursuant to the IOIA, the President, by Executive Order, "designate[d] [IFC] as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the said [IOIA]." Exec. Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956).

> **B.** **The IOIA And IFC's Articles Of Agreement Accord IFC Immunity From Every Form Of Judicial Process, Including The Relief Sought By Plaintiffs**

The IOIA provides that "[i]nternational organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit ***and every form of judicial process*** as is enjoyed by foreign governments," absent an express waiver of that immunity. 22 U.S.C. § 288a(b) (emphasis added). This immunity is co-extensive with the "virtually absolute immunity" accorded to foreign sovereigns in 1945. *Atkinson*, 156 F.3d at 1340-41 (affirming dismissal of garnishment proceedings) (quotation omitted); *see also Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983) ("It is well established under international law that an international organization is entitled to such privileges and such immunity from the jurisdiction of a member state as are necessary for the fulfillment of the purposes of the organization . . . .") (quotation omitted).

In addition, IFC's Articles of Agreement expressly prohibit judicial recourse against IFC by "member[] [nations] or persons acting for or deriving claims from members." IFC's Articles of Agreement, art. VI § 3. Plaintiffs have not identified, and cannot identify, any express waiver of IFC's immunity *vis-à-vis* Iran that would permit them—even if allowed to "step into the shoes of Iran" (Pls.' Mem. at 22)—to attach IFC accounts or other assets purportedly payable to Iran. Indeed, Plaintiffs' suggestion that such a waiver could have arisen in the context of commercial transactions between IFC and Iran (*see, e.g., id.* at 7, 9) is nothing more than unsubstantiated

conjecture.[12]  As discussed above, IFC invests solely in the private sector.  *See, e.g.*, *IFC in Brief* at 5-8; *see also* IFC's Articles of Agreement, art. I § 1 ("The purpose of the Corporation is to further economic development by encouraging the growth of productive private enterprise in member countries . . . .").

Moreover, U.S. courts have interpreted Article VI § 3 of IFC's Articles of Agreement extremely narrowly, such that there is a waiver only in the most limited circumstances.[13]  *See Mendaro*, 717 F.2d at 611 (holding that immunity waiver "must be narrowly read in light of both national and international law").  Under the "corresponding-benefits" standard established by the D.C. Circuit, IFC's immunity is "construed as *not waived* unless the particular type of suit would *further* [IFC's] objectives."  *Atkinson*, 156 F.3d at 1338 (emphasis in original); *see also Mendaro*, 717 F.2d at 615 (holding that waiver of immunity in Articles of Agreement identical to those of IFC encompasses only "suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom [IFC] would have to subject itself to suit in order to achieve its chartered objectives").  The waiver is not applicable in this case because IFC would not receive

---

[12]  Plaintiffs' argument is plainly speculative even on its face.  *See, e.g.*, Pls.' Mem. at 5 ("Iran presumably entered into the relationship with the LEVIED BANK in which Iran now maintains the full range of civil enforcement rights."); *id.* ("[T]he LEVIED BANKS presumably would not be able to mount [a sovereign immunity] defense against Iran."); *id.* at 7; (noting the "clear and unmistakable inference that Iran obtained a complete waiver" of IFC's immunity); *id.* at 9 ("[P]rudent business experience would suggest that Iran . . . would necessarily demand redress . . . without, again, the unbelievable burden of litigating . . . .").

[13]  Article VI § 3 of IFC's Articles of Agreement states:

> Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.  No actions shall, however, be brought by members or persons acting for or deriving claims from members.  The property and assets of the Corporation shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation.

An identical waiver provision is included in the Articles of Agreement of the other World Bank entities.  *See Banco de Seguros del Estado v. Int'l Fin. Corp.*, Nos. 06 Civ. 2427 (LAP), 06 Civ. 3739 (LAP), 2007 WL 2746808, at *4 n.7 (S.D.N.Y. Sept. 20, 2007) ("The status of the immunities of IFC and of the other World Bank entities is virtually indistinguishable. . . . [E]ven the relevant portions of their Articles of Agreement are the same . . . .").

any conceivable "corresponding benefit" by waiving its immunity to Plaintiffs' efforts to enforce a judgment against Iran.

In fact, the D.C. Circuit has held specifically that international organizations under the IOIA do not derive benefits warranting a waiver of immunity in the context of third-party garnishment or attachment proceedings. *See Atkinson*, 156 F.3d at 1338-39 (holding, in action to garnish wages of Inter-American Development Bank employee, that the "clear lack of benefit— indeed, disadvantage—of a waiver of immunity from garnishment proceedings compels the conclusion" that immunity applied); *Inversora Murten*, 2008 WL 441836, at *2 (holding that World Bank's "interests are not advanced by subjecting itself to non-wage garnishment proceedings initiated by third-party judgment creditors of member nations' contractors") (internal citation omitted).

Given IFC's status as a public international organization comprised of individual member nations, it is essential that IFC retain its immunity in this instance. IFC's chartered objectives would not be furthered—and, indeed, would be seriously impaired—if it were deemed to relinquish its immunity to every third-party judgment creditor of any one of its 179 member nations. *See Mendaro*, 717 F.2d at 617 ("[L]imitations on immunity that subject the organization to suits which could significantly hamper the organization's functions are inherently less likely to have been intended . . . ."). The flood of post-judgment discovery requests and writs of attachment arising from all cases against member nations would pose a costly and time-consuming impediment to the achievement of IFC's development objectives. *Cf. Atlantic Tele-Network Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 132 (D.D.C. 2003) ("[W]ere this suit to be allowed, virtually any U.S. citizen with a commercial grievance against a debtor nation could challenge a [Bank] loan to that nation without any 'corresponding benefit' accruing

thereby to the [Bank] whatsoever.").  Judgment creditors anxious to satisfy a judgment against a member nation should not do so at the doors of IFC.  In any such instance, the benefit to IFC of waiving its immunity would be nonexistent.  *See Atkinson*, 156 F.3d at 1338 (holding that "immunity should be construed as *not waived* unless the particular type of suit would *further* [IFC's] objectives") (emphasis in original).

Finally, to the extent Plaintiffs rely on the FSIA, the FSIA expressly reinforces IFC's IOIA immunity in the specific context of enforcement proceedings against a foreign sovereign state.  Section 1611(a) of the FSIA establishes that "the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the [IOIA] **shall not be subject to attachment or any other judicial process** impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States."  28 U.S.C. § 1611(a) (emphasis added); *see also Atkinson*, 156 F.3d at 1342 (noting that, under Section 1611(a), "a judgment creditor cannot execute upon funds held by international organizations for disbursement to [a] foreign state judgment debtor"); *Trans Commodities, Inc. v. Kazakhstan Trading House, S.A.*, No. 96-316 (NHJ), slip op. at 4-5 (D.D.C. Feb. 20. 1997)[14] (quashing writ of attachment issued against foreign state's bank accounts for loan proceeds from World Bank and holding that "[t]o allow World Bank loan proceeds to become subject to attachment . . . is untenable and contrary to the purpose of section 1611(a) immunity").  As evident on its face, the intended purpose of this provision is to permit international organizations entitled to IOIA immunity "to carry out their functions from their offices located in the United States **without hindrance by private claimants seeking to attach the payment of funds to a foreign state**."  Foreign Sovereign

---

[14]  Submitted herewith as Exhibit 9 to the Vasquez Declaration.

Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604 (emphasis added).  Section 1611(a) thus prohibits the very kind of judicial process that Plaintiffs seek here—namely, the appointment of a receiver to compel IFC to "pay-over, surrender and hand over all funds" (Pls.' Mem. at 5) purportedly payable to Iran.

The recent amendments to the FSIA highlighted by Plaintiffs (Pls.' Mem. at 2-4) do not disturb the IOIA immunities preserved by Section 1611(a).  The new provision governing the attachment of foreign state assets (*see id.* at 3 (quoting "(g) Property in Certain Actions")) amends Section 1610 of the FSIA, which enumerates certain exceptions to the immunity from attachment or execution to which foreign sovereign states are entitled.[15]  Section 1611(a) of the FSIA—which remains unchanged by the recent amendments—expressly provides that international organizations under the IOIA retain their immunity "***[n]otwithstanding the provisions of section 1610*** of this chapter."  28 U.S.C. § 1611(a) (emphasis added).  In proceeding with their Motion, Plaintiffs are simply ignoring the plain language of the statute.

## II.  IFC'S IMMUNITIES APPLY TO ALL MOTIONS, WRITS AND OTHER JUDICIAL PROCESS THAT PLAINTIFFS HAVE SERVED OR MAY SERVE UPON IFC

Because IFC would receive no corresponding benefit through a waiver here, it retains absolute immunity over "every form of judicial process" in these or any related proceedings.  *See* 22 U.S.C. § 288a(b); 28 U.S.C. § 1611(a); *see also Atkinson*, 156 F.3d at 1340-41; *In re Minister Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) (holding that sovereign immunity safeguards immune entities not only from suit and liability, but also the "attendant burdens of litigation") (quoting *Foremost-McKesson, Inc. v. Islamic Rep. of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)).  Such immunity encompasses all IFC assets, records and personnel, thus requiring that the Court

---

[15]  The new provision governing attachment is not, as Plaintiffs suggest (Pls.' Mem. at 3), a subsection of 28 U.S.C. § 1605A.

deny Plaintiffs' Motion and order that Plaintiffs cease and desist from serving any further motions or other process upon IFC, as well as quashing both the writ of attachment and subpoena.

### A. IFC's Assets Are Immune From Attachment Or Any Other Judicial Process Impeding The Disbursement Of Funds To, Or On The Order Of, A Foreign State

Pursuant to the IOIA and IFC's Articles of Agreement, IFC's assets are immune from attachment, as well as search, seizure and any other form of interference or restriction. 22 U.S.C. § 288a(b) (providing that IFC's "property and . . . assets" are immune from judicial process); IFC's Articles of Agreement, art. VI § 3 ("The property and assets of the Corporation shall, wheresover located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation."); *see also* 22 U.S.C. § 288a(c) ("Property and assets of international organizations, wherever located and by whomsoever held, shall be immune from search, unless such immunity be expressly waived, and from confiscation."); IFC's Articles of Agreement, art. VI § 4 ("Property and assets of the Corporation, wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation or any other form of seizure . . . ."); *id.* § 6 ("To the extent necessary to carry out the operations provided for in this Agreement . . . all property and assets of the Corporation shall be free from restrictions, regulations, controls and moratoria of any nature.").

As discussed, Plaintiffs' efforts to attach IFC assets in satisfaction of the judgment against Iran—whether through the writ of attachment or Motion for Appointment of Receiver— plainly fall within the purview of international organizational immunity under both the IOIA and FSIA. *See* 22 U.S.C. § 288a(b); 28 U.S.C. § 1611(a); *see also Atkinson*, 156 F.3d at 1338-39;

*Inversora Murten*, 2008 WL 441836, at *2.  Accordingly, Plaintiffs' Motion must be dismissed and the writ of attachment must be quashed.

> **B.      IFC's Records And Personnel Are Immune From Judicial Process**

In addition to the immunity generally encompassing all IFC assets and property, the IOIA and IFC's Articles of Agreement specifically confer upon IFC absolute archival immunity, which safeguards all IFC records, documents and official communications from compulsory disclosure.    22 U.S.C. § 288a(c) ("The archives of international organizations shall be inviolable."); IFC's Articles of Agreement, art. VI § 5 (same).  The D.C. Circuit has long recognized this form of immunity enjoyed by international organizations.  *See Mendaro*, 717 F.2d at 615 ("The premises, archives, and communications of international organizations are shielded from interference by member states."); *see also Alpha Lyracom Space Commc'ns, Inc. v. Comsat Corp.*, 113 F.3d 372 (2d Cir. 1997) (affirming district court ruling that international organization's official session records were immune from discovery); *United States v. Chalmers*, No. S5 05 CR 59(DC), 2007 WL 624063, at *2 (S.D.N.Y. Feb. 26, 2007) (holding, with reference to IOIA, that international organization remained immune from discovery after the voluntary production of documents subject to express reservation of privileges and immunities).

It is widely recognized as a principle of international law that public international organizations like IFC "enjoy[] immunity from any exercise of jurisdiction . . . that would interfere with official use by the organization of its premises, archives, documents, or communications."  Restatement (Third) of Foreign Relations Law § 468 (1986).  In this respect, the immunity of IFC's property and archives is akin to the immunity granted diplomatic missions.  *See id.* § 478 cmt. b ("[T]he premises, archives, couriers, and bags of major international organizations enjoy the same inviolability and immunity as those of diplomatic missions."); *cf.* Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T.

3227, 500 U.N.T.S. 95 ("The archives and documents of the mission shall be inviolable at any time and wherever they may be."); *see also Renchard v. Humphreys & Harding, Inc.*, No. 2128-72, slip op. (D.D.C. Apr. 24, 1975)[16] (denying motion to compel discovery against Brazil and holding that archives of the Brazilian Embassy are inviolable) (citing Vienna Convention, arts. 23, 24, 27, 30, 31, and 37).

To the extent that the subpoena purports to summon any IFC officer or employee for deposition testimony, such individuals likewise enjoy absolute immunity from judicial process, including discovery.  22 U.S.C. § 288d(b) ("[O]fficers and employees of such organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity . . . ."); IFC's Articles of Agreement, art. VI § 8 ("All Governors, Directors, Alternates, officers and employees of [IFC] (i) shall be immune from legal process with respect to acts performed by them in their official capacity . . . .").  In considering the immunity of international organization employees, the D.C. Circuit has emphasized that the "unique nature of the *international* civil servant is relevant" and that such "officials should be as free as possible, within the mandate granted by the member states, to perform their duties free from the peculiarities of national politics."  *Mendaro*, 717 F.2d at 616 (quoting *Broadbent v. Org. of Am. States*, 628 F.2d 27, 34-35 (D.C. Cir. 1980)) (emphasis in original); *see also Taiwan v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 128 F.3d 712, 718-719 (9th Cir. 1997) (holding, with reference to the IOIA, that the employee of an international organization is entitled to broad testimonial immunity).

Thus, pursuant to the IOIA and its Articles of Agreement, IFC remains immune from any form of process in these proceedings, including the compulsory production of documents or the

---

[16]  Submitted herewith as Exhibit 10 to the Vasquez Declaration.

testimony of IFC officials and employees.  22 U.S.C. § 288a(c); IFC's Articles of Agreement, art. VI § 5; *see also Mendaro*, 717 F.2d at 615.  In the absence of any waiver of IFC's absolute immunity, the subpoena is without binding legal effect and must be quashed.

## CONCLUSION

For the foregoing reasons, IFC respectfully requests that the Court deny Plaintiffs' Motion to Appoint Receiver, order that Plaintiffs cease and desist from serving any further process upon IFC, and quash the writ of attachment dated March 25, 2008 and subpoena dated April 9, 2008.

Dated: June 5, 2008                                     Respectfully submitted,
       Washington, D.C.


                                                        **WHITE & CASE** LLP


                                                        / s / Francis A. Vasquez, Jr.
                                                        Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
                                                        Frank Panopoulos (D.C. Bar No. 459365)
                                                        Jonathan C. Ulrich (D.C. Bar No. 500832)
                                                        701 Thirteenth Street, N.W.
                                                        Washington, D.C. 20005-3807
                                                        (202) 626-3600

                                                        *Attorneys for International Finance
                                                        Corporation*