# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRANS COMMODITIES, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>KAZAKHSTAN TRADING HOUSE, S.A.,<br>and REPUBLIC OF KAZAKHSTAN,<br><br>                    Defendants. | Civil Action Misc. No. 96-316 (NHJ)<br><br>**FILED**<br><br>FEB 2 0 1997<br><br>NANCY MAYER-WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

### MEMORANDUM ORDER

Presently before the Court is the motion of defendant Republic of Kazakhstan (hereafter "the Republic") to quash two writs of attachment issued by the Superior Court of the District of Columbia.[1] As the facts in this miscellaneous action were set out in detail in a February 5, 1997, Memorandum Order, the case is briefly summarized as follows.

On December 21, 1995, the New York Supreme Court entered a default judgment in favor of Trans Commodities, Inc. (hereafter "Trans Commodities") and against Kazakhstan Trading House, S.A. and the Republic. The judgment totaled $768,834, representing $383,000 in actual damages, $250,000 in punitive damages, $57,796 in pre-judgment interest, and $78,038 in attorneys' fees. On July 30, 1996, plaintiff docketed the New York judgment in the Superior

---

[1] In view of the Republic's request for an immediate decision regarding the writs of attachment and the representation of counsel at a February 11, 1997, hearing that the parties are currently litigating a third writ of attachment in United States District Court for the Southern District of New York, the Court does not address the validity of the default judgment entered by the New York Supreme Court.

Court of the District of Columbia. On September 18, 1996, and again on October 2, 1996, the Superior Court issued writs of attachment commanding Riggs Bank (hereafter "Riggs") to hold any property of the Republic it had in its possession. On September 27, 1996, Riggs moved in the Superior Court to quash the writ, arguing that Trans Commodities had not complied with the requirements of the Foreign Sovereign Immunities Act. On October 10, 1996, the Superior Court issued an Order requiring Riggs to hold $563,112.02 pending a decision on the writ of attachment. The case was removed to federal court on November 7, 1996.

The Republic has provided evidence that it has two categories of funds in bank accounts at Riggs: (1) embassy funds used for diplomatic and consular operations and (2) funds provided by the World Bank for designated projects in Kazakhstan. Embassy funds are used to pay only those expenses directly related to the functioning of the embassy, including payment of salaries for embassy personnel, telephone and electricity expenses, and expenses for hosting diplomatic functions. Proceeds from World Bank loans and credits, the second category of funds held at Riggs, are maintained in separate bank accounts. There is no commingling of funds among the various World Bank projects nor may the funds be disbursed for other purposes. Disbursement of funds provided by the World Bank is administered and controlled by the Ministry of Finance in Almaty, Kazakhstan. Republic's Mot. to Quash at Ex. C.

I.    Embassy Funds

Under the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227 (1991), embassy bank accounts used or intended to be used for the purposes of the diplomatic mission are absolutely immune from attachment to satisfy a civil judgment. *See, e.g.*, <u>Liberian Eastern Timber Corp. v. Government of the Republic of Liberia</u>, 659 F. Supp. 606, 608 (D.D.C. 1987)

(citing Art. 24, Art. 31, and the preamble to the Vienna Convention). Moreover, the Foreign Sovereign Immunities Act creates a presumption that property in the United States of a foreign state is immune from attachment.[2] 28 U.S.C. § 1609 (1994). Although there are certain limited exceptions for funds used for commercial activity in the United States, *see* 28 U.S.C. § 1610(a)(1) - (a)(6), there is no indication that the embassy funds on deposit at Riggs Bank are used for anything other than consular and diplomatic purposes.[3]

In its opposition to the motion to quash, Trans Commodities argues that it should be granted discovery to determine whether any embassy funds are used for commercial activity in the United States. Allowing discovery to go forward, however, would ignore the mandate of the Vienna Convention and eviscerate one of the purposes of immunity: deference to the governmental affairs of foreign states. *See* 767 Third Avenue Associates v. Permanent Mission of the Republic of Zaire, 988 F.2d 295, 297 (2d Cir. 1993) (finding that FSIA exceptions to immunity are subject to the Vienna Convention). In light of evidence offered by the Republic

---

[2]   Section 1609 of the FSIA provides that:

> [s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act, the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609 (1994).

[3]   Under section 1610, property of a foreign state in the United States "used for commercial activity in the United States" is not immune from attachment if any of six enumerated circumstances apply. 28 U.S.C. § 1610(a) (1994). Although Trans Commodities argues that the exception listed in section 1610(a)(1), waiver of immunity from attachment, applies in this case, it has not met the threshold requirement: showing that the property is used for commercial activity in the United States.

3

that its embassy bank accounts are used exclusively in the performance of the embassy's diplomatic and consular functions, and in the absence of any indication to the contrary, discovery is not warranted and would frustrate the purpose of entitlement to immunity. *See* El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996). The Court finds that the funds held on deposit at Riggs for embassy use are immune from attachment.

II.    Proceeds from the World Bank

As mentioned earlier, the Republic maintains separate bank accounts for loan proceeds received from the World Bank and disburses the proceeds from its bank accounts directly to World Bank-funded projects in Kazakhstan. Because project funds are received incrementally, the World Bank replenishes the bank accounts as needed. At a February 11, 1997, hearing, counsel for Riggs informed the Court that, because Riggs is holding funds in these accounts pursuant to the writs of attachment, the World Bank has ceased replenishing the bank accounts.

Under section 1611(a) of the FSIA, funds that are the property of "an organization designated by the President to enjoy the ... immunities provided by the International Organization Immunities Act" are absolutely immune from attachment. 28 U.S.C. § 1611(a) (1994). The World Bank is an organization protected by the International Organization Immunities Act. *See* 22 U.S.C. §§ 288-288i (1994); Exec. Order No. 9751, 11 Fed. Reg. 7713 (July 11, 1946). To allow World Bank loan proceeds to become subject to attachment while awaiting disbursement to World Bank-funded projects is untenable and contrary to the purpose of section 1611(a) immunity. *See* H.R. REP. 94-1487, § 1611 (1976) ("Purpose of [section 1611] is to permit international organizations ... to carry out their functions ... without hindrance by private claimants seeking to attach the payment of funds to a foreign state."). The Court finds

that the funds held by the Republic as proceeds from loans and credits advanced by the World Bank to finance projects in Kazakhstan are immune from attachment.

Accordingly, it is this 20th day of February 1997,

ORDERED that the motion to quash writ of attachment [# 2] be, and hereby is, granted; it is further

ORDERED that the September 18, 1996, and October 2, 1996, writs of attachment issued by the Superior Court of the District of Columbia be, and hereby are, quashed; it is further

ORDERED that Riggs Bank shall immediately make available to the Republic of Kazakhstan any funds held pursuant to an October 10, 1996, Order of the Superior Court of the District of Columbia (Salzman, J.); and it is further

ORDERED that this miscellaneous case be, and hereby is, closed.

*Norma Holloway Johnson*
NORMA HOLLOWAY JOHNSON
UNITED STATES DISTRICT JUDGE