1   Jay R. Henneberry (State Bar No. 135065)
    jhenneberry@chadbourne.com
2   CHADBOURNE & PARKE LLP
    350 South Grand Avenue, Suite 3300
3   Los Angeles, CA 90071
    Telephone:    (213) 892-1000
4   Facsimile:    (213) 622-9865

5   *Attorneys for Non-Party*
    *The Export-Import Bank of Korea*

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12   DEBORAH D. PETERSON, Personal          Case No.  3:08-mc-80030-JSW
     Representative of the Estate of James C.
13   Knipple (Dec.), et al.,                Hon. Jeffrey S. White
                                            Hon. Bernard Zimmerman
14              Plaintiffs,

15   v.                                     **THE EXPORT-IMPORT BANK OF
                                            KOREA'S RESPONSE IN OPPOSITION
16   ISLAMIC REPUBLIC OF IRAN, et al.,      TO PLAINTIFFS' MOTION FOR
                                            ASSIGNMENT OF RIGHTS PURSUANT
17              Defendants.                 TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)**

18                                          **[FINANCIAL INSTITUTIONS]**

19                                          [Proposed] Order Denying Motion And
                                            Declaration Of Hwan Kim Filed Concurrently
20                                          Herewith

21                                          Date:   July 2, 2008
                                            Time:   9:00 a.m.
22                                          Place:  Courtroom G

23

24

25

26

27

28

_____
THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT
OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW
LA1 - 119645.02

*Sidebar (vertical):* CHADBOURNE & PARKE LLP  350 South Grand Avenue, Suite 3300  Los Angeles, CA 90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071 (213) 892-1000

## INTRODUCTION

The Export-Import Bank of Korea ("KEXIM"), a non-party, submits this Memorandum of Points and Authorities in opposition to plaintiffs' Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) (the "Motion") purportedly served on it by the plaintiffs in this action.  By their Motion, plaintiffs seek an order directing: (1) the assignment all of Iran's tangible and intangible property held by KEXIM in the United States and abroad to plaintiffs; and (2) KEXIM to turn over such property to plaintiffs.  As shown below, the assignment order sought by plaintiffs is overbroad in that under applicable California law such an order can only be directed at the Islamic Republic of Iran, not KEXIM.  Moreover, KEXIM, a Korean government-owned credit export agency, possesses sovereign immunity under the Foreign Sovereign Immunity Act, 28 U.S.C. §§ 1602, et seq. ("FSIA"), and as such the Court has no jurisdiction over KEXIM, including any jurisdiction to grant the instant Motion insofar as it affects KEXIM.  In addition, the broad wording of the assignment sought by plaintiffs, which among other things seeks to reach assets of the judgment debtors purportedly held by KEXIM outside of the United States, is improper in any event since, under well-established law, an assignment in aid of execution on property of a judgment debtor foreign state can be used only with respect to assets located in the United States.

In addition to the instant Motion made in this Court, plaintiffs have made a series of motions in the District Court for the District of Columbia (where the underlying action is pending), which have implicated KEXIM and at least some of the other foreign financial institutions involved on the instant motion, as part of plaintiffs' efforts to collect on its judgment. As set forth below, plaintiffs' efforts to use the California courts, and the California motion for assignment procedure, is a transparent and ultimately improper attempt to circumvent well-settled principles of sovereign immunity, comity and international law.  Moreover, at least in the first instance, proceedings to enforce the judgment should be heard in the D.C. federal court where this action is pending. Indeed, the World Bank has made a motion in this Court to stay these proceedings in favor of the D.C. proceedings and KEXIM has joined in that motion.

**PRELIMINARY STATEMENT**

KEXIM is an official export credit agency which provides comprehensive export credit and guarantee programs to support Korean enterprises in conducting overseas business. See accompanying Declaration of Hwan Kim dated June 9, 2008 ("Kim Decl.") ¶ 3, Exh. A at 1. It was established in 1976 by the Korean government as a special financial institution under the Export-Import Bank of Korea Act to engage in facilitating export and import transactions, overseas investments, and overseas resource development. Id. ¶ 4, Exh. A at 48. Since its establishment, KEXIM has actively supported Korea's export-led economy and facilitated economic cooperation with foreign countries. Id. ¶ 3, Exh. A at 1. The majority of KEXIM's shares are directly owned by the Government of the Republic of Korea. Id. ¶ 3, Exh. A at 48. As such, KEXIM enjoys sovereign immunity under the FSIA. KEXIM has no offices or employees anywhere in California and maintains no other presence here.

Plaintiffs' Motion stems from an action in federal district court in Washington, D.C., relating to the bombing of the U.S. Marine barracks in Beirut, Lebanon in 1983. After obtaining a default judgment against Iran and certain of its instrumentalities in that action, plaintiffs served writs of attachment in the D.C. action on a multitude of third-party financial institutions, including government-owned entities such as KEXIM which are entitled to sovereign immunity. A number of those entities, including KEXIM, have moved to quash those writs on the grounds, inter alia, that as foreign sovereigns they are immune to the jurisdiction of U.S. courts with regard to such matters and that, in any event, under the FSIA plaintiffs may not execute on any of the assets of the judgment debtors in the underlying action located outside of the United States.[1]

---

[1]  Plaintiffs have also filed a motion in the D.C. action for the appointment of a receiver to execute on any assets of defendants held by foreign sovereigns, which again raises the same issues under the FSIA. Since the very issues presented by this Motion are currently being decided by Judge Lamberth in that underlying D.C. action, a number of foreign states (including KEXIM) have asked the Court to stay its ruling on the instant Motion until Judge Lamberth has had a chance to rule on these issues.

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW
LA1 - 119645.02

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

Plaintiffs have now come to California -- even though this State appears to have no connection with the underlying lawsuit or any particular assets of the judgment debtors -- to file the instant Motion. Plaintiffs' Motion is brought pursuant to California Code of Civil Procedure ("C.C.P.") § 708.510(a), which provides for the assignment under certain circumstances of a judgment debtor's "right to payment due or to become due."[2] Plaintiffs do not, however, restrict their requested relief to the kind of rights to payments due specified in that statute. Instead, in an apparent end-run around California's levy statutes, plaintiffs ask for the assignment of an extremely broad range of assets, including "deposits [and] deposit accounts" and "rights to direct, transfer or dispose of any account . . . ." Motion, p. 2. Indeed, from their papers it appears that what they truly seek is an order levying on all domestic and overseas bank accounts, even though such an order would go well beyond the plain language of C.C.P. § 708.510(a). See, e.g., Motion at 6 (maintaining that "to the extent that any of the financial institutions . . . hold any funds, . . . these funds would now be the subject of the reach of this assignment order.")[3]

## SUMMARY OF ARGUMENT

Plaintiffs' Motion should not be granted with regard to KEXIM for several reasons. First, under the plain language of C.C.P. § 708.510(a), a court can only "order the judgment debtor" to make assignments, and thus any order issued by the Court cannot be directed to non-party financial institutions such as KEXIM, but instead can only be directed to Iran and the other judgment debtors. See C.C.P. § 708.510(a). Moreover, as noted, plaintiffs' requested relief -- which appears to go so far as to request the seizure of bank accounts and undisbursed loan

---

[2]  Section 708.510(a) provides further that "right[s] to payment" include "[w]ages," "[r]ents," "[c]ommissions" and "[r]oyalties." C.C.P. § 708.510(a). Notably, section 708.510(a) does not list such things as bank accounts.

[3]  In contravention of this Court's rules, plaintiffs did not submit a proposed order with their Motion, and thus it cannot be ascertained precisely what they are seeking. Nonetheless, their papers make it clear that the relief they seek goes well beyond anything that could be considered "a right to payment due."

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW
LA1 - 119645.02

1    proceeds -- goes well beyond anything contemplated by C.C.P. § 708.510(a), which only allows

2    for the assignment of "a right to payment due or to become due."

3        Second, as a "foreign state" -- as that term is defined in 28 U.S.C. § 1603(a) (2006) --

4    KEXIM enjoys sovereign immunity and thus is not subject to the jurisdiction of this Court.

5    Accordingly, under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq. ("FSIA"),

6    the Court has no jurisdiction to order any assignment of property held by KEXIM or to require

7    KEXIM to participate further in these proceedings.  See Randolph v. Budget Rent-A-Car, 97 F.3d

8    319, 323-24 (9th Cir. 1996); Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo

9    General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.,

10   923 F.2d 380, 392 (5th Cir. 1991).

11       Finally, even if under the circumstances presented here the Court did have jurisdiction

12   over KEXIM (which is not the case), it is also clear under the express terms of the FSIA that the

13   Court would only have jurisdiction to issue or enforce an assignment in aid of execution on

14   property of a judgment debtor foreign state located in the United States.  See 28 U.S.C. § 1610;

15   see also Philippine Exp. and Foreign Loan Guar. Corp. v. Chuidian, 218 Cal. App. 3d 1058, 1093

16   (6th Dist. 1990); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1477 (9th Cir.

17   1992).  Here, there are no assets of the judgment debtor held by KEXIM located anywhere in the

18   United States, much less in California.  Kim Decl., ¶ 5 and Exh. B.

19       For all of these reasons, KEXIM respectfully requests that the Court issue an order

20   denying the motion with regard to KEXIM and excusing KEXIM from further participation in

21   these proceedings.  As a foreign state enjoying sovereign immunity, KEXIM is beyond the

22   jurisdiction of the Court and thus should not be required to incur the time and expense necessary

23   to participate in these proceedings.  Cf. Kelly v. Syria Shell Petroleum, Dev. B.V. 213 F.3d 841,

24   849 (5th Cir. 2000) (noting that "FSIA immunity is immunity not only from liability, but also

25   from the costs, in time and expense, and other disruptions attendant to litigation").

26

27

28

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071 (213) 892-1000

- 4 -

1

# ARGUMENT

2

## I.    ANY ORDER ISSUED BY THE COURT MAY ONLY
## BE DIRECTED TO THE JUDGMENT DEBTOR, IRAN

3

4          In their papers, Plaintiffs imply that the Court should compel the financial institutions

5    that allegedly hold property of Iran, including KEXIM, to assign such property to plaintiffs.

6    Assuming that in fact they are making such a request, that request directly contradicts the plain

7    language of C.C.P. § 708.510(a).  Under that subsection, the Court can only order the <u>judgment</u>

8    <u>debtor</u> to make such an assignment.  As stated in that subsection,

9               "Except as otherwise provided by law, upon application of the
judgment creditor on noticed motion, the court **may order the**
10              **judgment debtor** to assign to the judgment creditor, or to a
receiver appointed pursuant to Article 7 (commencing with section
11              708.610) all or part of a **right to payment due or to become due**,
whether or not the right is conditional upon future developments,
12              including but not limited to, the following types of payment:
1. Wages due from the federal government that are not subject to
13                 withholding under an earnings withholding order.
2. Rents.
14              3. Commissions.
4. Royalties.
15              5. Payments due from a patent or copyright.
6. Insurance policy loan value."

16   C.C.P. § 708.510(a) (emphasis added).

17          Accordingly, as a threshold matter, under the plain language of C.C.P. § 708.510, any

18   order issued by the Court in response to plaintiffs' motion can only be directed to Iran, the

19   judgment debtor.  It cannot be directed to non-party financial institutions such as KEXIM.

20          Moreover, as noted, the relief that plaintiffs request in the Motion -- which appears to

21   ask for the seizure assets of any kind both here and abroad -- is breathtakingly broad.  Section

22   510, however, only provides for the assignment of a "right to payment due or to become due . . .

23   ."  C.C.P. § 708.510(a).

24

## II.    THE COURT DOES NOT HAVE JURISDICTION TO
## ISSUE ANY ORDER WHICH DIRECTLY OR
## INDIRECTLY AFFECTS KEXIM

25

26

27          The FSIA states the general rule that foreign sovereigns and their agencies and

28   instrumentalities are immune from the jurisdiction of the courts of the United States.  <u>See</u> 28

- 5 -

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

U.S.C. § 1604; <u>Randolph</u> v. <u>Budget Rent-A-Car</u>, 97 F.3d 319, 323-24 (9th Cir. 1996).  The FSIA

provides a comprehensive scheme for obtaining jurisdiction over foreign governments and their

agencies and instrumentalities in certain limited circumstances.  "The Act conflates the usually

distinct questions of sovereign immunity, subject matter jurisdiction, and personal jurisdiction.

Jurisdiction exists only if immunity does not."  <u>Corzo</u> v. <u>Banco Cent. De Reserva Del Peru</u>, 243

F.3d 519, 522 (9th Cir. 2001) (internal citations omitted).  Under the FSIA, a court in the United

States can exercise jurisdiction over a foreign sovereign only if one of the exceptions to sovereign

immunity provided in Sections 1605-1607 of the FSIA apply.  <u>See</u> <u>Randolph</u>, 97 F.3d at 323.  "If

the claim does not fall within one of the exceptions, the court cannot entertain the action and must

dismiss the action against the foreign state for lack of jurisdiction."  <u>Sec. Pac. Nat'l Bank</u> v.

<u>Derderian</u>, 872 F.2d 281, 285 (9th Cir. 1989).

        As noted above, KEXIM was created by the Republic of Korea, which owns the

majority of its shares, to be the official export credit agency of the Korean government.  Kim

Decl., ¶¶ 3-4, Ex. A.  It thus is manifestly an "agency or instrumentality of a foreign state" as

defined in the FSIA.[4]  <u>See</u> <u>Chuidian</u> v. <u>Philippine Nat'l Bank</u>, 912 F.2d 1095, 1098 (9th Cir. 1990)

(holding that "[a]t all relevant times, the Philippine government owned a majority interest in the

Bank.  Thus, the Bank qualifies as an 'agency or instrumentality of a foreign state' under 28

_____

[4]  The FSIA provides that

      "[a]n 'agency or instrumentality of a foreign state' means any entity -

      "(1) which is a separate legal person, corporate or otherwise, and

      "(2) which is an organ of a foreign state or political subdivision thereof, or
      a majority of whose shares or other ownership interest is owned by a
      foreign state or political subdivision thereof, and

      "(3) which is neither a citizen of a State of the United States as defined in
      section 1332(c) and (e) of this title, nor created under the laws of any third
      country."

28 U.S.C. § 1603(b).

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT
OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW

LA1 - 119645.02

U.S.C. § 1603(b)."); see also S & S Mach. Co. v. Masinexportimport, 706 F.2d 411, 414 (2d Cir. 1983) (finding that a state-owned Romanian bank which, like KEXIM, had been "established to serve the state's foreign trade goals," was an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b)); Exch. Nat'l Bank of Chicago v. Empresa Minera Del Centro Del Peru S.A., 595 F. Supp. 502, 503 (S.D.N.Y. 1984) (finding that defendant bank owned by the Peruvian government was an "agency or instrumentality of a foreign state"). Accordingly, it is immune from the jurisdiction of this Court.

This analysis does not change, as plaintiffs imply, because KEXIM is not a party to this action. The notion that a sovereign somehow loses its immunity when it is not named as a party to an action has no support in the language or legislative history of the FSIA. Indeed, any other result would run afoul of principles of comity and adversely affect international relations. If KEXIM has sovereign immunity, then under the FSIA it is immune from any "jurisdiction of the courts of the United States," 28 U.S.C. § 1604, regardless of how Plaintiffs purport to assert that jurisdiction. Moreover, it defies common sense to argue that KEXIM should be entitled to fewer rather than more rights as a non-party.

The Fifth Circuit's decision in Stena Rederi AB v. Comision de Contratos, 923 F.2d 380 (5th Cir. 1991), is on all fours. In Stena, plaintiff, who had obtained a judgment against a private Mexican company, obtained a writ of garnishment against Pemex (the nationalized Mexican oil company, a foreign sovereign) on debts owed by Pemex to that private company (i.e., the judgment debtor). Id. at 383. Pemex objected to the writ of garnishment on the ground that it was immune from suit under the FSIA. Id. at 392. The plaintiffs in that case argued that the FSIA should not apply, since the proceeding was not really an action against the foreign sovereign but simply a garnishment against that sovereign as a third-party creditor. Id. at 392.

The court gave short shrift to plaintiff's contentions, holding that ". . . there can be no other conclusion except that the FSIA applies to garnishment proceedings." Id. at 392 (emphasis added). As explained by the court, a foreign state is "entitled to invoke the shield of

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW

LA1 - 119645.02

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

sovereign immunity, whether against direct claims or an indirect writ of garnishment." Id. at 392.

Indeed, the court commented further that not only would any other result run afoul of the FSIA,

but also run counter to underlying notions of sovereign immunity and comity.  As explained by

the court,

> "[i]f this Court were to authorize the use of garnishment against
> foreign governmental agencies with operations in the United States
> to prosecute claims against third parties, the agencies would be
> required repeatedly to appear in court to protect their own relations
> with the third parties.  This result would be inconsistent with the
> spirit of grace and comity that underlies the doctrine of sovereign
> immunity."

Id.  See also Atkinson v. Inter-American Dev. Bank, 156 F.3d 1335, 1339 (D.C. Cir. 1998) (citing

Stena Rederi with approval and holding that immunity of international financial institutions

required the dismissal of garnishment proceedings against an international financial institution

which was a third-party creditor of the judgment debtor).

Plaintiffs in their Motion also suggest that, even though KEXIM is indisputably an

"agency or instrumentality of a foreign state," it nonetheless may not be entitled to sovereign

immunity because it "may" fall within two exceptions to the FSIA:  those relating to commercial

activity and implied waiver.  See Motion at 11.  This argument -- which is presented merely as a

hypothetical possibility with no factual support whatsoever -- is also without merit.

With regard to the commercial activity exception, it is well established that the

commercial activity must be directly related to the underlying suit, and indeed must form the

basis for that suit.  See, 28 U.S.C. § 1605(a)(2) (2006); see also Randolph, 97 F.3d at 324 ("the

plaintiff's cause of action must *arise* from the defendant's commercial activity in the United

States.  In other words, not only must the activity be commercial in nature, but the commercial

activity must cause the harm alleged.") (citations omitted; italics in original); Joseph v. Office of

Consulate Gen. of Nigeria, 830 F.2d 1018, 1023 (9th Cir. 1987) ("In determining whether the

commercial activity exception applies, the courts focus only on those *specific* acts that form the

basis of the suit.") (citation omitted; italics in original).  Here, it is clear that KEXIM had nothing

to do with the 1983 bombing, and thus is not subject to the jurisdiction of U.S. courts.  As the

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071 (213) 892-1000

- 8 -

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

Fifth Circuit's opinion in <u>Stena Rederi</u> makes clear, sovereign immunity protects foreign states from the very types of intrusions that Plaintiffs here seek to make, so that such sovereigns are not forced to "repeatedly . . . appear in court to protect their own relations with [] third parties." <u>Id</u>. at 392.

Plaintiffs' "implied waiver" argument is equally misguided. The Ninth Circuit has held that the waiver exception is to be "narrowly construed." <u>Siderman</u> v. <u>Republic of Argentina</u>, 965 F.2d 699, 720 (9th Cir. 1992). "Implicit waivers are ordinarily found only where: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." <u>Joseph</u>, 830 F.2d at 1022. Here, none of these exceptions apply. KEXIM has not agreed to arbitration, has not entered into any pertinent contract and has not filed a responsive pleading without raising the defense of sovereign immunity. Tellingly, Plaintiffs do not make <u>any</u> showing to the contrary -- nor can they, for the simple reason that no waiver ever occurred. Accordingly, this exception does not apply either.[5]

In short, under well-settled principles of sovereign immunity, this Court does not have jurisdiction over KEXIM to issue any order -- either direct or indirect -- that affects KEXIM. Given this lack of jurisdiction, the Court should deny the Motion insofar as it affects KEXIM and excuse KEXIM from any further proceedings in this matter.

## III. UNDER THE FSIA, THE COURT ONLY HAS JURISDICTION TO ORDER THE ASSIGNMENT OF ASSETS LOCATED IN THE UNITED STATES

---

[5] In what can only be called a *non seqitur*, plaintiffs also argue that KEXIM's sovereign immunity is irrelevant because the federal Anti-Assignment Statute, 31 U.S.C. § 3727, which governs the assignment of rights under U.S. federal contracts, does not proscribe involuntary transfers. Motion at 12-13. The Anti-Assignment Statute, however, has absolutely nothing to do with sovereign immunity of <u>any</u> country (including that of the United States), and thus does not change anything with regard to that immunity. That statute, accordingly, is completely inapposite.

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT
OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW

LA1 - 119645.02

1

2

**A.    Under the Plain Language of the FSIA, the Court May Only Assign Assets Located in the United States**

3      As noted above, this Court has no jurisdiction over KEXIM.  For this reason alone, the

4  Court should deny the Motion as it relates to KEXIM and excuse KEXIM from further

5  proceedings.  In addition, the Court should also deny the Motion because the requested

6  assignment improperly seeks to assign assets of judgment debtors, who are themselves

7  sovereigns, that are located outside of the United States.  Specifically, as noted, KEXIM does not

8  have any property of Iran or the other judgment debtors in the United States,[6] and under the FSIA

9  the Court does not have jurisdiction to order or otherwise direct the disposition of any assets of a

10  foreign sovereign that are located outside of the United States.  Accordingly, there simply are no

11  assets to be assigned.

12      Prior to the enactment of the FSIA in 1976, "the traditional view of courts in the

13  United States was that property of foreign states was absolutely immune from execution."

14  Fidelity Partners Inc. v. Philippine Exp. & Foreign Loan Guar. Corp., 921 F. Supp. 1113, 1117

15  (S.D.N.Y. 1996); Philippine Exp. & Foreign Loan Guar. Corp. v. Chuidian, 267 Cal. App. 3d

16  1058, 1093 (6th Dist. 1999) (same).  The FSIA "codified this practice by establishing a general

17  principle of immunity for foreign sovereigns from execution of judgments . . . ." Autotech Techs.

18  LP v. Integral Research & Dev. Corp., 499 F.3d 737, 749 (7th Cir. 2007).  Section 1610 of the

19  FSIA -- which governs the enforcement of judgments -- created exceptions to the traditional

20  immunities granted to the property of foreign states.  See Fidelity Partners, 921 F. Supp. at 1117-

21  18.  Notably, however, section 1610 only waives sovereign immunity with regard to property

22  located in the United States.  As stated in that section,

23      "The property **in the United States** of a foreign state, as defined in

24  _____

25  [6]  Korean law places significant restrictions on the disclosure of banking-related information.
26  Accordingly, KEXIM takes no position on whether it does or does not have any Iranian assets in locations outside of the United States.

27

28

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW

LA1 - 119645.02

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071 (213) 892-1000

section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if [certain conditions are met] -"

28 U.S.C.A. § 1610 (a) (emphasis added).

Interpreting the plain language of this statute, courts have uniformly held that under the FSIA courts may not assign or attach payments or assets of foreign state judgment debtors that are located outside of the United States.[7]  See, e.g., Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1477 (9th Cir. 1992) (". . . Section 1610 does not empower United States courts to levy on assets located outside the United States"); Autotech, 499 F.3d at 750 ("It is also of no small moment that the FSIA authorizes execution only against properties 'in the United States.'  The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world") (citations omitted); Fidelity Partners, 921 F. Supp. at 1119 ("Under the FSIA, assets of foreign states located outside the United States retain their traditional immunity from execution to satisfy judgments entered in United States courts").[8]

---

[7]  As set forth in Section II above, given the sovereign immunity that KEXIM enjoys, a Court cannot attach a foreign state's property in KEXIM's possession even if located in the United States.  As noted above, KEXIM does not have any property of the judgment debtors in the United States in any event.

[8]  In short, to the extent the Motion seeks to assign or otherwise seize Iranian assets, under the FSIA it cannot reach any such assets located outside of the United States.  To the extent it attempts to attach any assets of KEXIM, of course, the Motion should be denied for the additional reason that KEXIM is not a judgment debtor and does not owe anything to plaintiffs.

Notably, the analysis with regard to this issue was not changed by the recent amendments to the FSIA relating to terrorist acts.  See 28 U.S.C. § 1605A.  With regard to the enforcement of judgments against terrorist states such as Iran, those amendments simply cross-reference Section 1610, which, as noted above, does not allow for the attachment of assets located outside of the United States.  See 28 U.S.C. § 1605A(a)(1)(A) (providing that property must be subject to attachment under Section 1610); see also 28 U.S.C. § 1605A(a)(1)(B) (providing further that the property must be "located within [the district court's] judicial district").

- 11 -

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

1       *Philippine Export and Foreign Loan Guarantee Corp*. v. *Chuidian*, 218 Cal. App. 3d

2   1058 (6th Dist. 1990) is directly on point.  The plaintiff in *Chuidian*, like plaintiffs here, tried to

3   use C.C.P. § 708.510 to obtain an order assigning debts of a foreign state located overseas.  The

4   court issued a writ of mandate modifying the order below to exclude all overseas debts.  *Id*. at

5   1099-1100.  As held by the court,

6           "Section 1610, the only arguably relevant provision, speaks only of
        a foreign state's property in the United States.  Accordingly **the**
7           **statute creates no exception to immunity for property outside**
        **the United States**."

8   

9   *Id*. at 1093 (emphasis added); *see also* *Autotech*, 499 F.3d at 750 ("The FSIA did not purport to

10  authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever

11  that property is located around the world.  We would need some hint from Congress before we

12  felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction.").

13      In short, the law under the FSIA is crystal clear:  under the plain language of 28

14  U.S.C. § 1610, any order issued by this Court may only assign assets and rights to payments

15  located in the United States.  Accordingly, plaintiffs' argument that the Court can issue an order

16  affecting overseas assets and payment streams is simply wrong.

17      **B.**     **The Law Is Equally Clear that the Fact That a**
18          **Bank May Have a Branch in the United States**
        **Does Not Mean Its Overseas Assets Are**
19          **Located Here for Purposes of the FSIA**

20      In order to get around the well settled law on this issue, plaintiffs also argue that the

21  Court has the power to direct the assignment of Iran's overseas assets because KEXIM and other

22  banks "have a branch office located in the United States."  Motion at 4.  Again, plaintiffs' position

23  is without merit.

24      Indeed, in a case directly on point, a federal court in California rejected that very

25  argument -- *i.e.*, that the assets of a foreign state maintained at an international bank's home office

26  could be assigned to the judgment creditor under C.C.P. § 708.510 simply because the bank had a

27  branch in the court's jurisdiction.  *Quaestor Investments, Inc.* v. *State of Chiapas*, No. CV-95-

28  6723 JGD AJW, 1997 WL 34618203, at *7 (C.D. Cal. Sept. 2, 1997).  In *Quaestor*, plaintiff

- 12 -

1    asserted that the "right to payment" should be construed as located "in the United States" because

2    the judgment debtor was allegedly capable of accessing its accounts from within California.  Id.

3    The court flatly rejected that argument, holding that "the abstract 'right to payment' in the absence

4    of conjunction with some physical or at least specific asset located within the boundaries of the

5    United States upon which that right may be exercised, is insufficient standing alone to be

6    amenable to assignment under C.C.P. § 708.510."  Id.

7            Similarly, in Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee

8    Corp., 921 F. Supp. 1113, 1117 (S.D.N.Y. 1996), the plaintiff moved to attach the overseas

9    accounts of a foreign state held in an international bank with a branch office in New York.  The

10   court denied the motion, holding that since the accounts were in Manila, they were beyond the

11   court's reach since they were "not 'in the United States' as Section 1610(b) of the FSIA requires."

12   Id. at 1119.  As stated by the court, "whether the accounts are characterized as 'debts' of [the

13   international bank] or 'assets' of [the judgment debtor], a determination of the situs of the

14   accounts is necessary to preserve the limited reach of the FSIA's exceptions to immunity".  See

15   also In re Estate of Marcos, No. 97 C 0477, 1997 WL 248544, at * 3 (N.D. Ill. Jul 24, 1997)

16   (finding that assets maintained by Swiss bank in Switzerland were not subject to execution in the

17   U.S. despite location of bank branches in Chicago).

18           Tellingly, the only case cited by plaintiffs on this point is In re Estate of Marcos

19   Human Rights Lit., 910 F. Supp. 1470 (D. Haw. 1995), which plaintiffs quote at great length.

20   See Motion at 6-8.  The FSIA, however, did not even apply to that action, and thus the case is

21   completely inapposite.  See In re Estate of Ferdinand Marcos, Human Rights Lit., 25 F.3d 1467

22   (9th Cir. 1994) (in prior appeal in the same action, Ninth Circuit held that since the defendant,

23   Marcos, was acting as an individual, the FSIA did not apply).  It is because of sovereign

24   immunity and the FSIA that the Court lacks jurisdiction to order the disposition of the overseas

25   assets of foreign sovereigns.

26           In short, under the plain language of the FSIA, any order issued by the Court may only

27   be directed to assets located in the United States.  Any assets of the judgment debtors located

28   outside of the United States are beyond the jurisdiction of this Court.

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT
OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW

LA1 - 119645.02

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

1

## **CONCLUSION**

2    At least insofar as it may affect KEXIM, plaintiffs' Motion should be denied.  First, as

3  a threshold matter, under C.C.P. § 708.510, the Court can only issue orders directed to the

4  judgment debtors in the underlying lawsuit, not to strangers to that litigation such as KEXIM.

5  The scope of plaintiffs' requested order also goes well beyond what is allowed under

6  C.C.P. § 705.510 insofar as it seeks to levy on accounts and other assets.  In addition, because of

7  sovereign immunity, the Court does not have jurisdiction to issue any order which affects KEXIM

8  and, in addition, does not have jurisdiction to order the assignment of any of the assets of Iran or

9  the other judgment debtors located outside of the United States.  While the circumstances in the

10  underlying litigation are undeniably tragic, it is also undeniable that neither the Korean

11  government nor its agencies or instrumentalities had anything to do with that loss.  Any order that

12  implicates assets held by KEXIM could impact international relations, since sovereign banks have

13  to be free to deal with other sovereigns without judicial interference.  Accordingly, since KEXIM

14  is entitled to sovereign immunity, KEXIM respectfully requests that any order issued by the Court

15  specifically state that it does not apply to KEXIM or to any assets being held by KEXIM, that it

16  does not affect any assets of the judgment debtors located outside of the United States, and that

17  KEXIM is excused from any further involvement in these proceedings.[9]

18

19

20

21

22

23

24

---

25  [9]   KEXIM's filing of this opposition is not intended to be construed as a waiver any of its rights
and defenses, including sovereign immunity and lack of proper service and personal
26  jurisdiction.  All of those rights and defenses are expressly reserved.

27

28

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT
OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW

LA1 - 119645.02

1    Dated:    June 9, 2008                    CHADBOURNE & PARKE LLP

2

3                                              By: /s/ Jay R. Henneberry
                                                  Jay R. Henneberry (Bar No. 135065)
4                                                 CHADBOURNE & PARKE LLP
                                                  350 South Grand Avenue, Suite 300
5                                                 Los Angeles, California 90071
                                                  Tel. (213) 892-1000
6                                                 Fax (213) 622-9865

7                                              *Attorneys for Non-Party*
                                               *The Export-Import Bank of Korea*
8
     Of Counsel:
9
     Hwan Kim
10   CHADBOURNE & PARKE LLP
     1200 New Hampshire Avenue, N.W.
11   Washington, D.C.
     Tel. (202) 974-5600
12   Fax (202) 974-5602

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE EXPORT-IMPORT BANK OF KOREA'S OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT
OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) -- CASE NO. 3:08-mc-80030-JSW
LA1 - 119645.02

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

PRELIMINARY STATEMENT .......................................................................................... 2

SUMMARY OF ARGUMENT............................................................................................ 3

ARGUMENT ....................................................................................................................... 5

I.   ANY ORDER ISSUED BY THE COURT MAY ONLY BE DIRECTED TO
     THE JUDGMENT DEBTOR, IRAN.......................................................................... 5

II.  THE COURT DOES NOT HAVE JURISDICTION TO ISSUE ANY ORDER
     WHICH DIRECTLY OR INDIRECTLY AFFECTS KEXIM ................................... 5

III. UNDER THE FSIA, THE COURT ONLY HAS JURISDICTION TO ORDER
     THE ASSIGNMENT OF ASSETS LOCATED IN THE UNITED STATES .................. 9

     A.   Under the Plain Language of the FSIA, the Court May Only Assign Assets
          Located in the United States ............................................................................ 10

     B.   The Law Is Equally Clear that the Fact That a Bank May Have a Branch in
          the United States Does Not Mean Its Overseas Assets Are Located Here
          for Purposes of the FSIA.................................................................................. 12

CONCLUSION .................................................................................................................. 14

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

i

1  Jay R. Henneberry (State Bar No. 135065)
   jhenneberry@chadbourne.com
2  CHADBOURNE & PARKE LLP
   350 South Grand Avenue, Suite 3300
3  Los Angeles, CA 90071
   Telephone:    (213) 892-1000
4  Facsimile:    (213) 622-9865

5  *Attorneys for Non-Party*
   *The Export-Import Bank of Korea*

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11  DEBORAH D. PETERSON, Personal          Case No. 3:08-mc-80030-JSW
    Representative of the Estate of James C.
12  Knipple (Dec.), et al.,                 Hon. Jeffrey S. White
                                            Hon. Bernard Zimmerman
13              Plaintiffs,
                                            **DECLARATION OF HWAN KIM**
14  v.
                                            Date:  July 2, 2008
15  ISLAMIC REPUBLIC OF IRAN, et al.,       Time:  9:00 a.m.
                                            Place: Courtroom G
16              Defendants.

17

18        Hwan Kim, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

19        1.  I am a member of the law firm of Chadbourne & Parke LLP, counsel to the

20  Export-Import Bank of Korea ("KEXIM"). I have personal knowledge of the facts stated in this

21  declaration, which is based upon my review of publicly available information about KEXIM that

22  is published on the official Internet website for KEXIM.

23        2.  On May 30, 2008, I used the Internet to access KEXIM's 2007 Annual Report,

24  which is published at http://www.koreaexim.go.kr/en/about/m02/s01_01.jsp. A true and correct

25  copy of the 2007 Annual Report is attached to this Declaration as Exhibit A.

26        3.  Page 1 of Exhibit A provides a profile of KEXIM, which reads:

27

28                              1

LA1 - 119741.01

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

1       "The Export-Import Bank of Korea (Korea EXIMBank) is an
    official export credit agency providing comprehensive export credit
2       and guarantee programs to support Korean enterprises in
    conducting overseas business.  Since its establishment in 1976, the
3       Bank has actively supported Korea's export-led economy and
    facilitated economic cooperation with foreign countries."

4

5       4.   Page 48 of Exhibit A provides a detailed description of KEXIM, its formation, and

6   its mandate, which reads:

7       "The Export-Import Bank of Korea (the "Bank") was established in
    1976 as a special financial institution under the Export-Import Bank
8       of Korea Act (the "EXIM Bank Act") to engage in facilitating
    export and import transactions, overseas investments, and overseas
9       resources development through the extension of loans and other
    financial facilities.  The Bank has eleven domestic branches, four
10      overseas subsidiaries and thirteen overseas offices as of December
    31, 2007.

11

12      "The Bank has ₩ 4,000,000 million of authorized capital and as of
    December 31, 2007, its paid-in-capital is ₩ 3,308,755 million
13      through several capital increases.  The Bank is owned by the
    Government of the Republic of Korea (the "Government'), the Bank
14      of Korea ("BOK") and Korea Development Bank with 60.15%,
    35.21% and 4.64% shareholding, respectively, as of December 31,
    2007.

15

16      "The Bank, as an agent of the Government, has managed The
    Economic Development Cooperation Fund and the Inter-Korean
17      Cooperation Fund (the "Funds") since June 1987 and March 1991,
    respectively.  The Funds are managed under separate accounts from
18      the Bank's own accounts and not included in the accompanying
    non-consolidated financial statements.  The related management
    commissions are received from the Government."

19

20      5.   A true and correct copy of the Answer and Objections of Export Import Bank of

21  Korea to Plaintiffs' Interrogatories in Attachment dated June 2, 2008 is attached to this

22  Declaration as Exhibit B.

23      I declare under the penalty of perjury that foregoing is true and correct.

24  Dated:   June 9, 2008                        CHADBOURNE & PARKE LLP

25

26      By  *Hwan Kim*
                        Hwan Kim

27

28

              2

LAI - 119741.01

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

EXHIBIT A

EXHIBIT A

1   Jay R. Henneberry (State Bar No. 135065)
    jhenneberry@chadbourne.com
2   CHADBOURNE & PARKE LLP
    350 South Grand Avenue, Suite 3300
3   Los Angeles, CA  90071
    Telephone:    (213) 892-1000
4   Facsimile:    (213) 622-9865

5   *Attorneys for Non-Party*
    *The Export-Import Bank of Korea*
6

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  DEBORAH D. PETERSON, Personal          Case No.  3:08-mc-80030-JSW
    Representative of the Estate of James C.
13  Knipple (Dec.), et al.,

14               Plaintiffs,

15  v.

16  ISLAMIC REPUBLIC OF IRAN, et al.,

17               Defendants.

18
                        **[PROPOSED] ORDER**
19
            WHEREAS, this matter having come to be heard on non-party The Export-Import
20
    Bank of Korea's ("KEXIM's") opposition to plaintiffs' Motion for Assignment of Rights Pursuant
21
    to C.C.P. § 708.510(a) and F.R.C.P. 69(a) (the "Motion"); and
22

23          WHEREAS, the Court finds that KEXIM: (a) is a "foreign state" as that term is defined

24  in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a) (2006); and (b) enjoys

25  sovereign immunity under the FSIA, 28 U.S.C. § 1604;

26

27

28                                    1

IMPORT EXPORT BANK OF KOREA'S IN OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF
RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]
LA1 - 119743.01

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071 (213) 892-1000

1    IT IS HEREBY ORDERED that the Motion is DENIED with regard to KEXIM; and

2    IT IS FURTHER ORDERED that KEXIM, as an agency or instrumentality of a foreign

3

4    sovereign, is exempt from the jurisdiction of this Court and shall not be required to participate in

5    this matter.

6    SO ORDERED.

7    Dated:  July ____, 2008

8

9    _____

10   Hon. Bernard Zimmerman, U.S.M.J.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1   Jay R. Henneberry (State Bar No. 135065)
    jhenneberry@chadbourne.com
2   CHADBOURNE & PARKE LLP
    350 South Grand Avenue, Suite 3300
3   Los Angeles, CA 90071
    Telephone:    (213) 892-1000
4   Facsimile:    (213) 622-9865

5   *Attorneys for Non-Party*
    *The Export-Import Bank of Korea*

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  DEBORAH D. PETERSON, Personal          Case No. 3:08-mc-80030-JSW
    Representative of the Estate of James C.
12  Knipple (Dec.), et al.,                Hon. Jeffrey S. White
                                           Hon. Bernard Zimmerman
13              Plaintiffs,
                                           **PROOF OF SERVICE**
14  v.
                                           Date:   July 2, 2008
15  ISLAMIC REPUBLIC OF IRAN, et al.,      Time:   9:00 a.m.
                                           Place:  Courtroom G
16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

---

                        PROOF OF SERVICE

LA1 - 119702.02

1

**PROOF OF SERVICE**

2      I am employed in the County of Los Angeles State of California.  I am over the age of 18
and not a party to the within action; my business address is:  350 South Grand Avenue, Suite
3      3300, Los Angeles, California  90071-3406.

4      On **June 9, 2008**, I caused the true and correct copy(s) of :

5      **MEMORANDUM OF THE EXPORT-IMPORT BANK OF KOREA IN
       OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS
6      PURSUANT TO C.C.P. § 708.51(a) AND F.R.C.P. 69(a)**

7      **[PROPOSED] ORDER DENYING MOTION AND DECLARATION OF HWAN
       KIM FILED CONCURRENTLY HEREWITH**

8
to be served in the manner so indicated to the following individual(s) listed below:
9
**PLEASE SEE ATTACHED LIST**
10
☒  **BY MAIL TO ALL COUNSEL:**
11
       ☒  I deposited such envelope in the mail at Los Angeles, California.  The envelope was
12     mailed with postage thereon fully prepaid.

13     ☒  As follows:  I am "readily familiar" with the firm's practice of collection and
       processing correspondence for mailing.  Under that practice it would be deposited with U.S.
14     Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in
       the ordinary course of business.  I am aware that on motion of the party served, service is
15     presumed invalid if postal cancellation date or postage meter date is more than one day after date
       of deposit for mailing in affidavit.
16
       ☒  **BY ELECTRONIC MAIL:**  Pursuant to the Court's e-filing procedures, counsel registered
17     will receive a copy via electronic mail.

18     ☐  **BY FACSIMILE:**  I transmitted a true copy of said document via facsimile machine
       pursuant to Rule 2005.  The facsimile machine I used complied with Rule 2003(3), and no error
19     was reported by the machine.

20     ☐  **BY OVERNIGHT DELIVERY (Federal Express):**  I deposited such envelope(s) at the
       appropriate location for collection and overnight delivery to the person(s) or office(s) named on
21     the attached list.

22     I declare that I am employed in the office of a member of the bar of this court at whose
       direction the service was made.
23
       Executed on **June 9, 2008**, at Los Angeles, California.
24

25

26     _____            _____
           Romina Cabatbat                                  Romina Cabatbat
27          Type Name                                         Signature

28
                                          - 2 -
LA1 - 119702.02

1

**SERVICE LIST**

2

Peterson v. Islamic Republic of Iran, et al.
USDC Northern Dist. Case No.: 3:08-mc-80030-JSW

3

4

David J. Cook, Esq.                                    **[BY ELECTRONIC MAIL]**
Cook Collection Attorneys

5

165 Fell Street
San Francisco, CA 94102

6

Email: cookdavidj@aol.com

7

8

Thomas Fay, Esq.                                       **[BY MAIL]**
601 Pennsylvania Avenue NW
South Building, Suite 900

9

Washington, D.C. 20004

10

11

Steven Perles, Esq.                                    **[BY MAIL]**
Perles Law Firm, P.C.
1146 19th Street, 5th Floor

12

Washington, D.C. 20036

13

14

ISLAMIC REPUBLIC OF IRAN                               **[BY MAIL]**
Pasdaran Avenue
Golestan Yekom

15

Tehran, Iran
Attn: Responsible Officer

16

17

ISLAMIC REPUBLIC OF IRAN                               **[BY MAIL]**
Khomeni Avenue

18

United Nations Street
Tehran, Iran

19

Attn: Responsible Officer

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

LA1 - 119702.02