1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone: 415.268.7000
4   Facsimile: 415.268.7522

5   NANCY R. THOMAS (CA SBN 236185)
    NThomas@mofo.com
6   MORRISON & FOERSTER LLP
    555 West Fifth Street
7   Los Angeles, California  90013-1024
    Telephone: 213.892.5200
8   Facsimile: 213.892.5454

9   Attorneys for *Amici Curiae*, the California
    Bankers Association, the Institute
10  of International Bankers, the International
    Bankers Association in California,
11  The Clearing House Association L.L.C.,
    and the Organization for International Investment

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15               **SAN FRANCISCO DIVISION**

16

17  DEBORAH D. PETERSON, Personal          Case No.  C 08-80030 MISC JSW (BZ)
    Representative of the Estate of James C.
18  Knipple (Dec.), et al.,                Hon. Jeffrey S. White
                                           Hon. Bernard Zimmerman
19                  Plaintiffs,
                                           **MEMORANDUM IN SUPPORT OF**
20          v.                             **MOTION FOR LEAVE TO APPEAR**
                                           **AS AMICI CURIAE AND TO FILE**
21  ISLAMIC REPUBLIC OF IRAN, et al.,      **AN AMICUS BRIEF IN RESPONSE**
                                           **TO MOTION FOR ASSIGNMENT**
22                  Defendants.            **OF RIGHTS PURSUANT TO C.C.P.**
                                           **§ 708.510(a) AND F.R.C.P. 69(a)**
23                                         **[FINANCIAL INSTITUTIONS]**

24                                         Date:      July 2, 2008
                                           Time:      10:00 a.m.
25                                         Courtroom: G
                                           Judge:     Bernard Zimmerman
26

27

28

The California Bankers Association ("CBA"), the Institute of International Bankers ("IIB"), the International Bankers Association in California ("IBAC"), The Clearing House Association L.L.C. ("TCH"), and the Organization for International Investment ("OFII") (collectively the "Associations") submit this Memorandum in support of their motion for leave to appear as *amici curiae* and to file the attached brief in response to the judgment creditors' Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) [Financial Institutions] (the "Motion"). The judgment creditors' Motion is scheduled to be heard on July 2, 2008. A copy of the Associations' proposed *amicus* brief is attached to this Memorandum as Exhibit A.

## I.    INTRODUCTION

The moving Associations, described below, seek leave to appear as *amici curiae* in response to the judgment creditors' Motion because the Associations believe the extraterritorial relief sought by the Motion is not authorized by California or federal law and could, if granted, cause disruptions in the workings of the global financial system with direct adverse consequences on international banking in California. The Associations do not seek to interject themselves or their respective members into these proceedings; nor, indeed, do they seek to deprive the judgment creditors of any legitimate means of enforcing their judgment under United States or foreign law. However, the relief requested in the Motion would constitute such an extraordinary extension of the law of enforcement of judgments that the Associations respectfully seek an opportunity to show the Court that there is no legal basis to grant the requested assignment.

On or about September 7, 2007, the United States District Court for the District of Columbia entered a default judgment in favor of the judgment creditors and against the Islamic Republic of Iran and the Iranian Ministry of Information and Security (the "judgment debtors"). (Ex. A. to Decl. of David Cook in Supp. of Mot.) The judgment creditors registered their judgment in this Court on March 11, 2008 and obtained a writ of execution. Thereafter, they sought to execute on the judgment through a variety of procedures provided for under California state law governing the execution of money judgments, including through service of notices of levy on the San Francisco branches of several internationally active banks (the "Banks"), seeking

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO    1
APPEAR AS *AMICI CURIAE* AND TO FILE AN *AMICUS* BRIEF
CASE NO. C 08-80030 MISC JSW (BZ)

la-980961

1    any funds held in deposit accounts of the judgment debtors. (*See* Mem. of Points and Auth. in

2    Supp. of Mot. ("Mem.") at 1.) The Banks responded by stating that they hold no such funds at

3    the branches where service had been made. (*See id.* at 14.)

4    The Motion acknowledges that under C.C.P. § 700.140(a), judgment creditors cannot

5    reach account deposits located outside the United States. (*See* Mem. at 14.) As a result, the

6    judgment creditors now seek an order pursuant to C.C.P. § 708.510(a), directing the judgment

7    debtors to assign to the judgment creditors an array of borrowing rights and/or deposits that the

8    judgment debtors may hold at international banks, anywhere in the world. The judgment

9    creditors have not identified any particular assets held by any particular financial institutions, but

10   they seek assignment of the judgment debtors' rights under credit facilities and letter of credit

11   arrangements, as well as any collateral that the Banks may hold to secure the judgment debtors'

12   debts under such facilities.

13   As set forth in detail in their proposed *amicus* brief, the Associations believe that the

14   requested relief departs substantially from settled procedures governing domestic and

15   international enforcement of money judgments. If granted, the relief sought would seriously

16   interfere with internationally active financial institutions' ability to continue to operate in multiple

17   jurisdictions, because the judgment creditors in effect seek to make United States courts the final

18   arbiters of business arrangements that have no nexus with the United States, even where doing so

19   might subject the Banks to entirely conflicting obligations under the laws of other countries.

20   Because the potentially detrimental effects of the ruling sought by the Motion go far beyond the

21   immediate case, the Associations wish to appear as *amici* in order to show that the Motion's

22   request for relief has no foundation in California law and is contrary to traditional limits on

23   extraterritorial enforcement of judgments.

24   **II.    PROPOSED AMICUS CURIAE**

25   CBA was founded in 1891 and today represents more than 300 banks in California,

26   including commercial banks, industrial loan companies, and savings institutions. California's

27   banking industry provides jobs to more than 150,000 Californians and financial security and

28   opportunity to millions more. CBA member banks hold more than $2.7 trillion in assets and

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO
APPEAR AS *AMICI CURIAE* AND TO FILE AN *AMICUS* BRIEF
CASE NO. C 08-80030 MISC JSW (BZ)                    2

la-980961

1    loans in excess of $1.5 trillion. Additional information regarding its member institutions is

2    available on its website (www.calbankers.com).

3        IIB is the only national association devoted exclusively to representing and advancing the

4    interests of the international banking community in the United States. Its membership is

5    comprised of internationally headquartered banking/financial institutions from 35 countries that

6    conduct banking, securities, and/or insurance operations in the United States. A list of IIB's

7    member banks is available on its web site (www.iib.org). Collectively, the U.S. branches,

8    agencies, banking subsidiaries, securities affiliates and other operations of IIB's member banks

9    are an important source of credit for U.S. borrowers and enhance the depth and liquidity of U.S.

10    financial markets, with total U.S. assets in excess of $5.6 trillion. IIB member banks in the

11    aggregate employ more than 250,000 individuals in the United States, and the total direct

12    expenditures of their U.S. operations is more than $60 billion annually.

13        IBAC is a not-for-profit corporation incorporated in California that represents the interests

14    of the global community of financial service providers that have substantial international business

15    and do business in California. Members include offices of foreign-headquartered commercial

16    banks; local domestic banks with international shareholders, customers and offices; and providers

17    of legal, accounting and other professional services to these financial services companies. IBAC

18    was organized in 1972 in San Francisco. Today it has members located all over the state and is

19    represented by a board of directors located in both Northern and Southern California. Additional

20    information regarding its member institutions is available on its website (www.ibacal.org).

21        TCH, founded over 150 years ago, is an association of eleven leading U.S. and non-U.S.

22    commercial banks that through an affiliate provides payment, clearing and settlement services to

23    its member banks and other financial institutions. Additional information regarding its member

24    institutions is available on its website (www.theclearinghouse.org).

25        OFII is the largest business association in the United States representing the interests of

26    U.S. subsidiaries of international companies. Its member companies employ hundreds of

27    thousands of workers in thousands of plants and locations throughout the United States.

28

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO       3
APPEAR AS *AMICI CURIAE* AND TO FILE AN *AMICUS* BRIEF
CASE NO. C 08-80030 MISC JSW (BZ)

la-980961

1    Additional information regarding its member institutions is available on its website

2    (www.ofii.org).

3        The Associations collectively represent virtually all major internationally active banking

4    organizations, including on the basis of deposits, the five largest U.S. domestic banks and three of

5    the four largest banks operating in California.  A majority of the Banks are members of CBA, IIB,

6    IBAC, TCH, and/or OFII.

7        The Associations regularly appear as *amici curiae* in cases raising significant legal issues

8    relating to banking and in particular, in cases which, like the present proceeding, present issues of

9    vital importance to the U.S. banking system and the global financial system.

10   **III.    ARGUMENT**

11       The Associations seek leave to appear as *amici curiae* and to file the attached *amicus* brief

12   in order to show the Court that the relief sought by the Motion goes far beyond what is permitted

13   under applicable California and federal law, and would have a significant detrimental impact on

14   the Associations' members and on the international banking system more generally.  It is well-

15   settled that a "district court has broad discretion to appoint *amici curiae*."  *Hoptowit v. Ray*, 682

16   F.2d 1237, 1260 (9th Cir. 1982).  "District courts frequently welcome amicus briefs from

17   nonparties concerning legal issues that have potential ramifications beyond the parties directly

18   involved or if the amicus has 'unique information or perspective that can help the court beyond

19   the help that the lawyers for the parties are able to provide.'"  *NGV Gaming, Ltd. v. Upstream

20   Point Molate, LLC*, 355 F.Supp.2d 1061, 1067 (N.D. Cal. 2005).

21       Here, the Associations offer just the type of unique perspective that warrants consideration

22   through the submission of an amicus brief.  This collection proceeding raises significant issues

23   regarding the scope of judgment creditors' rights under California's Enforcement of Judgments

24   Law.  The requested relief has implications for financial institutions operating domestically and

25   internationally, and for the international banking system as a whole.  The Associations, through

26   their members, have extensive experience with customary procedures for the enforcement of

27   judgments, and particularly with established limitations on the extraterritorial application of such

28   enforcement procedures.  Their familiarity with these issues allows the Associations to offer a

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO            4
APPEAR AS *AMICI CURIAE* AND TO FILE AN *AMICUS* BRIEF
CASE NO. C 08-80030 MISC JSW (BZ)

la-980961

1 perspective that is not reflected in the submissions to date and may not otherwise be available to

2 the Court.

3       Based on their members' extensive experience with matters of international finance and

4 knowledge of the functioning of international financial markets, the Associations respectfully

5 submit that their *amicus* brief will assist the Court in evaluating the issues raised by the judgment

6 creditors' Motion.  Accordingly, the Associations respectfully request that this Court grant them

7 leave to appear as *amici curiae* and to file their proposed *amicus* brief in response to the judgment

8 creditors' Motion for Assignment of Rights Pursuant to C.C.P.§ 708.510(a) and F.R.C.P. 69(a).

9 Dated: June 9, 2008                    WILLIAM L. STERN
                                         NANCY R. THOMAS
10                                       MORRISON & FOERSTER LLP

11

12                              By:   /s/  William L. Stern
                                     William L. Stern

13                                   Attorneys for *Amici Curiae*, the California
                                     Bankers Association, the Institute of
14                                   International Bankers, the International
                                     Bankers Association in California, The
15                                   Clearing House Association L.L.C. and
                                     the Organization for International
16                                   Investment

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO          5
APPEAR AS *AMICI CURIAE* AND TO FILE AN *AMICUS* BRIEF
CASE NO. C 08-80030 MISC JSW (BZ)

la-980961

# EXHIBIT A

1  WILLIAM L. STERN (CA SBN 96105)
   WStern@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone: 415.268.7000
4  Facsimile: 415.268.7522

5  NANCY R. THOMAS (CA SBN 236185)
   NThomas@mofo.com
6  MORRISON & FOERSTER LLP
   555 West Fifth Street
7  Los Angeles, California  90013-1024
   Telephone: 213.892.5200
8  Facsimile: 213.892.5454

9  Attorney for *Amici Curiae*, the California
   Bankers Association, the Institute
10 of International Bankers, the International
   Bankers Association in California, The
11 Clearing House Association L.L.C., and the
   Organization For International Investment

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15               **SAN FRANCISCO DIVISION**

16 DEBORAH D. PETERSON, Personal          CASE NO. C 08-80030 MISC JSW (BZ)
   Representative of the Estate of James C.
17 Knipple (Dec.), et al.,                Hon. Jeffrey S. White
                                          Hon. Bernard Zimmerman
18                  Plaintiffs,
                                          MEMORANDUM OF *AMICI CURIAE* THE
19 vs.                                    CALIFORNIA BANKERS ASSOCIATION,
                                          THE INSTITUTE OF INTERNATIONAL
20 ISLAMIC REPUBLIC OF IRAN, et al.       BANKERS, THE INTERNATIONAL
                                          BANKERS ASSOCIATION IN CALIFORNIA,
21                  Defendants.           THE CLEARING HOUSE ASSOCIATION
                                          L.L.C., AND THE ORGANIZATION FOR
22                                        INTERNATIONAL INVESTMENT

23                                        MOTION FOR ASSIGNMENT OF RIGHTS
                                          PURSUANT TO C.C.P. § 708.510(a) AND
24                                        F.R.C.P. 69(a) [FINANCIAL INSTITUTIONS]

25                                        Date:        July 2, 2008
                                          Time:        10:00 a.m.
26                                        Courtroom:   G
                                          Judge:       Bernard Zimmerman
27

28

1

**TABLE OF CONTENTS**

2   I.    PRELIMINARY STATEMENT ...................................................................1

3   II.   RELEVANT FACTUAL BACKGROUND.............................................2

4       A.    The Associations.............................................................................2

5       B.    The Motion.......................................................................................4

III.  ARGUMENT ...........................................................................................5

      A.    The Motion Fails to Identify an Assignable Right to Payment in the United States. ...............................................................................6

           1.    California Courts Have Limited Assignment Orders to Funds Located in the United States. .....................................6

           2.    California and Federal Law Does Not Permit an Assignment Order to Bind Non-Party Banks..................................9

           3.    The Motion Does Not Identify an Assignable Right Under C.C.P. § 708.510(a)................................................10

      B.    Extraterritorial Application of the Assignment Order Would Offend Fundamental Principles of Comity and International Law, Disrupt the Workings of the Global Financial System and Harm the Public Interest. ............12

           1.    Extraterritorial Application of an Assignment Order Would Subject the Banks to Conflicting Laws.....................13

           2.    Extraterritorial Application of an Assignment Order Would Disrupt the Workings of the Global Financial System and Harm the Public Interest. ........................................14

IV.  CONCLUSION......................................................................................17

MEMORANDUM OF *AMICI CURIAE*;          i
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d
737 (7th Cir. 2007).................................................................................................7

4

*Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985)...................................7

5

*Credit Suisse v. U.S. District Court for the Central District of California*, 130 F.3d
1342 (9th Cir. 1997).............................................................................................8

6

7

*In re Estate of Ferdinand Marcos Human Rights Litigation*, 910 F. Supp. 1470 (D.
Haw. 1995)..........................................................................................................8

8

9

*Garden City Boxing Club, Inc. v. Briano*, 2007 WL 4463264 (E.D. Cal. Dec. 17,
2007) .................................................................................................................10

10

*Hilao v. Estate of Marcos*, 95 F.3d 848 (9th Cir. 1996) ..............................5, 10

11

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600 (S.D.N.Y.
1997) .................................................................................................................14

12

13

*Lok Prakashan Ltd. v. India Broad Publications, Inc.*, 2002 WL 1585820 (S.D.N.Y.
July 16, 2002) ......................................................................................................5

14

*Philippine Export and Foreign Loan Guarantee Corp. v. Chiudian*, 218 Cal. App.
3d 1058 (Cal. App. 1990) ...............................................................5, 6, 7, 8, 11

15

16

*Phillips Medical Systems Intern. B.V. v. Bruetman*, 8 F.3d 600 (7th Cir. 1994) .................6

*Quaestor Investments, Inc. v. State of Chiapas*, 1997 WL 34618203 (C.D. Cal. Sept.
2, 1997) .........................................................................................................10, 11

17

18

*Sara Lee Corporation v. Gregg*, 2003 WL 23120116 (M.D.N.C. Dec. 18, 2003).........5, 14

19

*Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854 (2d Cir. 1981)...................7

20

**STATUTES AND RULES**

21

28 U.S.C. § 1609...................................................................................................8

22

28 U.S.C. § 1610(g) ..............................................................................................8

23

C.C.P. § 695.010 *et seq.* .......................................................................................5

24

C.C.P. § 699.710 ...................................................................................................5

25

C.C.P. § 699.080(a)(5)...........................................................................................5

26

C.C.P. § 700.170 .................................................................................................12

27

C.C.P. § 708.510(a).......................................................................................*passim*

28

C.C.P. § 708.520 .................................................................................................9

C.C.P. § 708.560(a)............................................................................................9

Fed. R. Civ. Pro. 69(a) ......................................................................................1

Pub. L. No. 110-181...........................................................................................8

## OTHERS

44 B Am. Jur. 2d International Law § 8 (2008).................................................12

Clyde Mitchell, *'Separate Entity' Rule – U.S. Branches of Non-U.S. Banks*, New
    York Law Journal, Vol. 220, No. 97 (Nov. 18, 1998) .................................14

Lawrence Collins, Dicey, Morris & Collins on the Conflict of Laws (14th ed.,
    Sweet & Maxwell 2008) ..............................................................................13

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 441, Reporter's
    Note 1 (1987) ..............................................................................................12

Wendy A. Kennett, The Enforcement of Judgments in Europe (Oxford University
    Press 2000) ..................................................................................................13

MEMORANDUM OF *AMICI CURIAE*;
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

iii

# I.    PRELIMINARY STATEMENT

The California Bankers Association ("CBA"), the Institute of International Bankers ("IIB"), the International Bankers Association in California ("IBAC"), The Clearing House Association L.L.C. ("TCH"), and the Organization For International Investment ("OFII") (collectively, the "Associations") respectfully submit this brief as *amici curiae* regarding the judgment creditors' Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) [Financial Institutions] (the "Motion"). By submitting this brief, the Associations are not seeking to interject themselves or their respective members into these proceedings. The Associations are not expressing a view on the judgment debtors, on the action that gave rise to the default judgment, or on the judgment creditors' efforts to enforce that judgment. Indeed, the Associations have no objection to the judgment creditors obtaining any relief against the judgment debtors to which they are legitimately entitled under California law, Federal law, or through the courts of foreign nations.

The Associations, however, believe that the extraterritorial relief requested by the Motion is impermissibly broad and not authorized by California or Federal law, and, if granted, would unfairly place non-party international banks at risk and would produce untenable consequences for the global financial system to the detriment of the public interest.

In this regard, the Motion admits that it seeks funds maintained in accounts outside the United States; specifically, it seeks assignment of all "Accounts[1] . . . to and in favor of . . . Iran"[2] held around the world by more than 30 internationally active banks (the "Banks"). (Mot. at 2.) We respectfully submit that Section 708.510 does not authorize the Court to issue an assignment order by which a judgment creditor can execute upon bank accounts or other sources of funds outside the United States. Moreover, the Motion neither adequately identifies the rights that are to be assigned,

---

[1]    The Motion defines "Accounts" as "deposits, deposit accounts, rights to receive payment of money, contingent rights, future rights, general intangibles, rights of any refund, rights to direct, transfer or dispose of any account, deposit account, rights to receive any checks, drafts or money orders, rights to transfer, use or control any account, regardless of the name." (Mot. at 2.)

[2]    The Motion defines "Iran" as "the Islamic Republic of Iran and all of its agencies and instrumentalities." (Mot. at 2.)

1  nor clearly articulates the reach of the requested assignment as to the parties it may bind.  As set

2  forth below, these statutory requirements serve an important role in protecting the rights of non-

3  parties such as the Banks, and their absence renders the Motion subject to dismissal.

4       Granting the requested relief would undermine international law and the principles of

5  comity found controlling in the California cases considering such assignments.  For example, the

6  Motion seeks the assignment of funds maintained in accounts located outside the United States

7  regardless of whether the laws and regulations governing the relevant bank office and any affected

8  accounts conflict with or prohibit such an assignment.  Further, this would create the very type of

9  corrosive conflict with foreign laws and foreign courts that the California courts have tried to avoid

10 by limiting the reach of the assignment statute.

11      Finally, the potential precedent of an assignment order reaching funds located at bank

12 operations outside the United States would have serious adverse consequences for all banks,

13 including U.S. banks, that operate internationally and conduct business in California.  Here, the

14 Banks, which have no relationship to the litigation or the resulting judgment, would effectively

15 have their own assets placed at risk by virtue of a purported assignment of funds pursuant to the

16 Motion.  The Banks could be left out-of-pocket and without recourse to recover any financial

17 losses or face other adverse consequences.  Not only would this create unquantifiable risks, but it

18 would also discourage banks from operating in California.

19      The Associations therefore urge this Court to deny the Motion.

20 **II.**     **RELEVANT FACTUAL BACKGROUND**

21      **A.**     **The Associations**

22      CBA was founded in 1891 and today represents more than 300 banks in California,

23 including commercial banks, industrial loan companies, and savings institutions.  California's

24 banking industry provides jobs to more than 150,000 Californians and financial security and

25 opportunity to millions more.  CBA member banks hold more than $2.7 trillion in assets and loans

26 in excess of $1.5 trillion.  Additional information regarding its member institutions is available on

27 its website (www.calbankers.com).

28

MEMORANDUM OF *AMICI CURIAE*;     2
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1    IIB is the only national association devoted exclusively to representing and advancing the

2    interests of the international banking community in the United States.  Its membership is comprised

3    of internationally headquartered banking/financial institutions from 35 countries that conduct

4    banking, securities, and/or insurance operations in the United States.  A list of IIB's member banks

5    is available on its web site (www.iib.org).  Collectively, the U.S. branches, agencies, banking

6    subsidiaries, securities affiliates and other operations of IIB's member banks are an important

7    source of credit for U.S. borrowers and enhance the depth and liquidity of U.S. financial markets,

8    with total U.S. assets in excess of $5.6 trillion.  IIB member banks in the aggregate employ more

9    than 250,000 individuals in the United States, and the total direct expenditures of their U.S.

10    operations is more than $60 billion annually.

11    IBAC is a not-for-profit corporation incorporated in California that represents the interests

12    of the global community of financial service providers that have substantial international business

13    and do business in California.  Members include offices of foreign-headquartered commercial

14    banks; local domestic banks with international shareholders, customers and offices; and providers

15    of legal, accounting and other professional services to these financial services companies.  IBAC

16    was organized in 1972 in San Francisco.  Today it has members located all over the state and is

17    represented by a board of directors located in both Northern and Southern California.  Additional

18    information regarding its member institutions is available on its website (www.ibacal.org).

19    TCH, founded over 150 years ago, is an association of eleven leading U.S. and non-U.S.

20    commercial banks that through an affiliate provides payment, clearing and settlement services to its

21    member banks and other financial institutions.  Additional information regarding its member

22    institutions is available on its website (www.theclearinghouse.org).

23    OFII is the largest business association in the United States representing the interests of

24    U.S. subsidiaries of international companies.  Its member companies employ hundreds of

25    thousands of workers in thousands of plants and locations throughout the United States.  Additional

26    information regarding its member institutions is available on its website (www.ofii.org).

27

28
MEMORANDUM OF *AMICI CURIAE*;                                3
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1    The Associations collectively represent virtually all major internationally active banking

2    organizations, including on the basis of deposits, the five largest U.S. domestic banks and three of

3    the four largest banks operating in California.  A majority of the Banks are members of CBA, IIB,

4    IBAC, TCH, and/or OFII.

5    The Associations regularly appear as *amici curiae* in cases raising significant legal issues

6    relating to banking and in particular, in cases which, like the present proceeding, present issues of

7    vital importance to the U.S. banking system and the global financial system.

8    **B.    The Motion**

9    On or about September 7, 2007, the United States District Court for the District of

10    Columbia entered a default judgment in favor of the judgment creditors and against the Islamic

11    Republic of Iran and the Iranian Ministry of Information and Security.  (Ex. A. to Decl. of

12    David Cook in Supp. of Mot.)  The judgment creditors registered their judgment in this Court on

13    March 11, 2008 and obtained a writ of execution.  Thereafter, the judgment creditors sought to

14    execute on the judgment through a variety of procedures provided by California state laws

15    governing the execution of money judgments, including through the service of Notices of Levy on

16    the San Francisco branches of several internationally active banks.  (*See* Mem. of Points and Auth.

17    in Supp. of Mot. ("Mem.") at 1.)  According to the Motion, these branches responded to the

18    Notices of Levy by stating that they hold no funds of the judgment debtors at their respective

19    branches where the levies were served.  (*See* Mem. at 14.)  Conceding that any accounts on deposit

20    outside the United States are not subject to execution by levy, the Motion now asserts that funds

21    that "might well" be maintained by the Banks are subject to assignment "no matter where located."

22    (*See* Mem. at 2, 4.)

23    None of the Banks identified in the Motion or in the supporting exhibits are parties to the

24    underlying dispute between the judgment creditors and judgment debtors or to the present

25    proceedings on the Motion.[3]

26

27    [3]    Although the judgment creditors mailed copies of the Motion to certain of the Banks,
the Banks have not been served with process in this action.  As further discussed *infra* at page 9, to

28    *(cont'd)*

1  ## III.  **ARGUMENT**

2  A party seeking to enforce a Federal judgment must proceed in accordance with the law of

3  the state where the Federal court sits, except in rare circumstances not present here.  Fed. R. Civ.

4  Pro. 69(a)(1);[4] *Hilao v. Estate of Marcos,* 95 F.3d 848, 851 (9th Cir. 1996) ("*Hilao*") (citing C.C.P.

5  §§ 695.010, *et seq.*).  The Motion asserts that the Banks "may have funds available" through

6  various lines of credit or undisbursed loan proceeds established under unspecified agreements with

7  the judgment debtors, and the Motion seeks assignment of such funds pursuant to the California

8  Enforcement of Judgments Law ("EJL").  (*See* Mem. at 3.)

9  California's "comprehensive scheme governing the enforcement of judgments," *i.e.*, the

10  EJL, does not permit the assignment the Motion seeks.  *Hilao*, 95 F.3d at 851.  The EJL allows a

11  party to levy against a judgment debtor's property, "including a debtor's deposit accounts." *Id.*

12  (*citing* C.C.P. §§ 695.010, 699.710, 699.080(a)(5)).  However, as the Motion concedes, the levy

13  statute governing deposit accounts —Section 700.140—cannot reach bank deposits located outside

14  the United States.[5]  *See* Mem. at 14; *Hilao*, 95 F.3d at 851 ("Because there is no dispute that the

15  deposit accounts of the [judgment debtors] are not carried at the Banks' Los Angeles offices, under

16

17

---

18  *(cont'd from previous page)*
the extent the Motion seeks an assignment order that would be binding on anyone other than the

19  judgment debtors, the relief sought exceeds that authorized by Section 708.510.

20  [4]     Rule 69(a)(1) provides that: "a money judgment is enforced by a writ of execution, unless the court directs otherwise" and further provides that the procedures on execution "must

21  accord with the procedure of the state where the court is located . . ." Fed. R. Civ. Pro. 69(a).

22  [5]     This statutory scheme is consistent with the majority "separate entity" rule, which provides that deposit accounts may only be executed upon by serving the writ at the branch or main

23  office maintaining the account for the debtor.  *See Sara Lee Corporation v. Gregg*, No. 1:02CV195, 2003 WL 23120116, *3 (M.D.N.C. Dec. 18, 2003) (refusing to permit attachment of out-of-state

24  bank account as North Carolina courts "likely would follow the majority rule and adopt the separate entity rule").  This rule is founded on the principle that each branch of a bank is

25  considered a separate entity and is 'in no way concerned with accounts maintained by depositors in other branches or at the home office' when it comes to attachment or garnishment." *Id.*  The

26  rationale for the separate entity rule is that an "intolerable burden" would otherwise be placed upon banking and commerce. *Lok Prakashan Ltd. v. India Broad Publications, Inc.*, No. 00CIV5852,

27  2002 WL 1585820, *1-2 (S.D.N.Y. July 16, 2002) (denying levy seeking transfer of accounts from bank accounts in India to the New York branch) (citations omitted).

28

1  California law the personal service of the writs of execution and notices of levy at those locations

2  was ineffective to levy on the [judgment debtors'] accounts.").

3       An assignment order cannot be used to end run this restriction. *See Philippine Export and*

4  *Foreign Loan Guarantee Corp. v. Chiudian*, 218 Cal. App. 3d 1058, 1099 (Cal. App. 1990)

5  ("*Philippine Export*") (refusing to interpret the assignment statute so as to provide the judgment

6  creditor "that which he could not straightforwardly achieve through ordinary creditors' remedies,

7  namely, execution upon foreign property.")  Rather, a judgment creditor must seek recognition and

8  enforcement of the judgment in the relevant local jurisdiction.  Because the Motion seeks to reach

9  beyond that which is permitted by California law, it must be denied.

10     **A.**    **The Motion Fails to Identify an Assignable Right to Payment in the**

11             **United States.**

12        **1.**    **California Courts Have Limited Assignment Orders to Funds Located**

13             **in the United States.**

14      California courts have consistently refused to permit an assignment order to attach accounts

15 or funds outside the United States.  Based on conflict of laws, sovereign immunity, or act-of-state

16 considerations, these courts have indicated that:  (i) the assignment statute applies only to funds

17 within the borders of the United States, and (ii) a plaintiff seeking non-U.S. funds must proceed

18 through the legal process of the country in which the funds are located.[6]

19      For example, in *Philippine Export*, the plaintiff, a government-owned entity, sought relief

20 from a settlement agreement with several U.S. entities regarding an earlier loan guarantee lawsuit.

21 *Philippine Export*, 218 Cal. App. 3d at 1068-69.  The plaintiff sought a writ of mandate to

22

23

---

24     [6]    Requiring a judgment creditor to enforce the judgment in the appropriate foreign
court is merely the reciprocal application of the obligation U.S. courts impose on foreign litigants

25 seeking to execute on foreign judgments within the United States. *See, e.g.*, RESTATEMENT
(THIRD) OF FOREIGN RELATIONS LAW § 481; *Phillips Medical Systems Intern. B.V. v.*

26 *Bruetman*, 8 F.3d 600, 605 (7th Cir. 1994).  This established rule is a central element of the
Uniform Foreign Money Judgments Recognition Act, which has been adopted in California. *See*

27 C.C.P. ¶ 1713, *et seq.*

28
MEMORANDUM OF *AMICI CURIAE*;         6
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1    permanently stay an assignment order, arguing that the order would affect funds that were located

2    outside the United States and immune from execution. *Id.*

3        The California Court of Appeal held that an assignment order that reached sovereign funds

4    outside the United States would "evade[ ] the rule of international law." *Id.* at 1098-99. The

5    appellate court therefore vacated the assignment order to the extent it purported to reach non-U.S.

6    assets "without the creditor having to submit his claim to [the foreign] court." *Id.* at 1099. Thus,

7    an assignment order does not create:

8             a right to execute against assets of a foreign state or agency located outside
the United States . . . ; instead, once a United States judgment is obtained

9             the creditor must rely on doctrines of comity in the foreign state to have his
judgment enforced. This is the law in most, if not all, jurisdictions. . .

10

11    *Id.* at 1094. The court therefore limited the trial court's order to debts located in the United States.

12        Federal courts of appeal have come to the same conclusion that enforcement against assets

13    located outside the United States must take place through the process in the relevant local

14    jurisdiction. *See Autotech Technologies LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751

15    (7th Cir. 2007) (vacating a writ of execution on the grounds that there was "nothing that the writ of

16    execution could validly reach.") As the Seventh Circuit recently held:

17             If assets exist in another country, the person seeking to reach them must try
to obtain recognition and enforcement of the U.S. judgment in the courts of

18             that country. If that effort is successful, then those courts can use their
powers to assure enforcement of the judgment.

19

20    *Id.* at 751.

21        Here, as in *Philippine Export*, the Motion seeks assignment of accounts or funds maintained

22    in foreign countries. The judgment creditors admit (Mem. at 1), and the law is clear, that funds in

23    an account having a *situs* in a foreign country are not located in the United States even if the bank

24    holding such funds maintains a branch in this country. *See, e.g., Vishipco Line v. Chase Manhattan*

25    *Bank, N.A.*, 660 F.2d 854, 862 (2d Cir. 1981); *see also Callejo v. Bancomer, S.A.*, 764 F.2d 1101,

26    1123 (5th Cir. 1985) (test for determining *situs* of deposits is the place of the deposits, as well as

27    place of payment, intent of parties, and involvement of American banking system in transaction).

28

MEMORANDUM OF *AMICI CURIAE*;               7
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1  The judgment creditors therefore may not execute against funds outside the United States without

2  first going through the judicial processes of the foreign country where the funds are located.

3      This commonsense rule avoids the serious problems that have arisen after a district court

4  erroneously extended an assignment order to funds in foreign accounts.[7]  In *Credit Suisse v. U.S.*

5  *Dist. Court for the Cent. Dist. of California*, 130 F.3d 1342 (9th Cir. 1997), the Ninth Circuit

6  issued a writ of mandamus regarding an assignment order directed at Swiss banks.[8]  The judgment

7  creditor initially attempted to enforce a monetary judgment against the Estate of the former

8

9      [7]    The conflict of laws is particularly acute when sovereign assets are involved, an
issue reflected in the limitations against the extraterritorial waiver of sovereign immunity under the

10  Foreign Sovereign Immunities Act ("FSIA").  Although the Associations seek through this *amicus*
brief to focus only on the important issues relevant directly to the Banks and the working of the

11  global financial system, we note that, as raised by the court in *Philippine Export*, because the
Motion seeks the assignment of assets outside the United States that are immune from execution

12  under the FSIA, there is a separate question whether the Court has subject matter jurisdiction over
this collection proceeding.  *See Philippine Export*, 218 Cal. App. 3d 1058 at 1094-1095, 1099

13  ("Immunity of a foreign state creates a lack of subject matter jurisdiction. [...] If the debtor may
not be ordered to assign exempt property, should not assets which are immune from execution

14  under international law, such as property of a foreign state located outside the United States, be
similarly immune?")  Thus, the approach adopted by the court in *Philippine Export* and by the

15  Ninth Circuit in *Credit Suisse* regarding property outside the United States is consistent with the
limits of the FSIA  *See* 28 U.S.C. § 1609 ("the property *in the United States* of a foreign state shall

16  be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of
this chapter") (emphasis added).

17      Likewise, 28 U.S.C. § 1610(g), which created an exception to § 1609's immunity for
property in the United States, has no application to this Court's (or any court's) ability to reach

18  property of a foreign state located *outside the United States*.  (*See* Mem. at 6-7.)  Further, the 2008
amendments to the FSIA (the "Lautenberg Amendments") on which the Motion purports to rely

19  (although the Lautenberg Amendments post-date the judgment), further confirm that Congress did
not intend to broaden the scope of attachments, but instead to limit them to property in the U.S.

20  judicial district where the attachment is sought.  Section 1605A(g), enacted as part of the
Lautenberg Amendments, recognizes this limitation by expressly providing: "(g) PROPERTY

21  DISPOSITION. - (1) IN GENERAL. - In every action filed in a United States district court in
which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to

22  this section, to which is attached a copy of the complaint filed in the action, shall have the effect of
establishing a lien of *lis pendens* upon any real property or tangible personal property that is - (A)

23  subject to attachment in aid of execution, or execution, under section 1610; (B) *located within that
judicial district*; and (C) *titled in the name of any defendant*, or titled in the name of any entity

24  controlled by any defendant if such notice contains a statement listing such controlled entity."
(emphasis added) Pub. L. No. 110-181.

25      [8]    The assignment order, which was effectively quashed by the Ninth Circuit in

26  *Credit Suisse* vis-à-vis the banks, was issued in connection with the *Estate of Marcos* opinion cited
by judgment creditors in support of their Motion.  *In re Estate of Ferdinand Marcos Human Rights*

27  *Litigation*, 910 F. Supp. 1470 (D. Haw. 1995) (Real, J., (*see* Mem. at 4-6).

28

MEMORANDUM OF *AMICI CURIAE*;        8
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1    President of the Philippines, Ferdinand Marcos, and others, by levying against the banks' offices in

2    California. The Ninth Circuit deemed those efforts ineffective because the deposit accounts were

3    not located in California. *Id.* at 1344. The judgment creditor then obtained an order of assignment

4    and filed an action directly against the Swiss banks seeking to enjoin them from transferring the

5    funds and to declare that the assignment order was valid and binding on the banks. *Id.* The Swiss

6    banks moved to dismiss the action, arguing that the declaratory and injunctive relief would violate

7    the act-of-state doctrine in light of an executive order from the Swiss government freezing all funds

8    of the Marcos family held in Switzerland. *Id.* at 1346.

9        After the district court denied the Swiss banks' motion, the Ninth Circuit granted a writ of

10    mandamus, ordering the district court to vacate its denial of the banks' motion to dismiss. The

11    Ninth Circuit agreed with the Swiss banks that the requested declaratory and injunctive relief

12    would "render nugatory" Switzerland's efforts to control the disposition of the funds and would

13    require the Swiss banks to disregard the Swiss Executive order. *Id.* at 1347-48. The court directed

14    plaintiffs to test the "validity" of the assignment order "or to seek an injunction compelling the

15    banks to turn over their assets [...] via the Swiss judicial system." *Id.*

16        **2.    California and Federal Law Does Not Permit an Assignment Order to
                Bind Non-Party Banks.**

17

18        The Motion should also be denied because it seeks an assignment order that would be

19    binding on third parties to the underlying litigation. Under the EJL, a court may "order the

20    *judgment debtor* to assign to the *judgment creditor* [...] all or part of a right to payment due or to

21    become due, whether or not the right is conditioned on future developments[.]" C.C.P. § 708.510

22    (emphasis added). The statute does not, however, permit a court to order a non-party to pay the

23    judgment creditor directly. This statutory construction is consistent with numerous other

24    provisions of the California Code of Civil Procedure. *See, e.g.,* C.C.P. § 708.520(a) (court may

25    issue an order *"restraining the judgment debtor* from assigning or otherwise disposing of the right

26    to payment that is sought to be assigned"); § 708.550 (*judgment debtor alone* may make a claim of

27    exemption to be heard at the hearing on the issuance of an assignment order); § 708.560(a) (*only*

28

1 *judgment debtor* or creditor may apply to the court for an order to modify or set aside the

2 assignment order); *cf.* C.C.P. § 708.540 ("[t]he rights of an obligor are not affected by an order

3 assigning the right to payment until notice of the order is received by the obligor") (emphasis

4 added).

5       To the extent the Motion requests the Court to issue an order that would require non-parties,

6 such as the Banks, to pay funds directly to the judgment creditors, such an order indisputably

7 exceeds the scope of the Court's authority to enforce a judgment under California or Federal law.

8 *See Hilao*, 95 F.3d at 848 (vacating order directing Swiss banks with branches in Los Angeles to

9 transfer contested Swiss funds into the court's registry).[9]

10               **3.      The Motion Does Not Identify an Assignable Right Under C.C.P.
                          § 708.510(a).**

11

12       Even if the Motion were limited to accounts or funds in the United States, the Motion fails

13 to identify adequately a right to payment subject to assignment under California law, and, therefore,

14 should be denied on that ground alone.[10]

15       First, an abstract "right to payment" is insufficient to warrant the issuance of an assignment

16 order under Section 708.510. *See Garden City Boxing Club, Inc. v. Briano*, No. CIV-F-06-1270,

17 2007 WL 4463264, *1 (E.D. Cal. Dec. 17, 2007) ("Plaintiff's request appears to be for a general

18 assignment of all possible funds due to [d]efendant; he has failed to identify any specific source of

19

20       [9]      The judgment creditors may not rely on Rule 69(a)'s residual grant of authority
21 ("unless the court orders otherwise") to seek a transfer of funds directly from the Banks.  In *Hilao*,
   the Ninth Circuit vacated a lower court's order directing the transfer of funds held in bank accounts
22 outside the United States. *Hilao*, 95 F.3d at 854. The Ninth Circuit first found that no provision of
   California law authorized such an order. *Id.* Turning to whether the order was authorized under
23 Federal law, the Ninth Circuit narrowly construed the court's residual authority under Rule 69(a) to
   permit execution of a monetary judgment through methods other than a writ of execution only
24 where "extraordinary circumstances are present." *Id.* In a holding of equal import here, the Ninth
   Circuit held that sufficiently extraordinary circumstances *did not exist* where: (1) the assets were
25 located abroad and (2) the judgment debtors refused to cooperate in the enforcement of the
   judgment. *Id.* at 854-55. Here, as in *Hilao*, there is no basis in Rule 69(a) for the Court to order
26 the transfer of funds from outside the United States.

27       [10]     *See supra* footnotes 1 and 2 setting forth the definitions used in the Motion's broad
   request for an assignment order.

28

1  money to be assigned. Without more information, the court cannot … determine what kind of

2  assignment order is warranted or permissible."); *Quaestor Investments, Inc. v. State of Chiapas*, No.

3  CV-95-6723 JGD, 1997 WL 34618203, *7 (C.D. Cal. Sept. 2, 1997) ("*Quaestor*") ("The abstract

4  'right to payment,' in the absence of conjunction with some physical or at least specific asset

5  located within the boundaries of the United States upon which that right may be exercised, is

6  insufficient standing alone to be amenable to assignment under C.C.P. § 708.510.")[11]

7      Second, Section 708.510(a) does not apply to the "rights of payment" described in the

8  Motion. There is no "assignable right to payment" in the United States simply by virtue of the fact

9  that a bank has a presence in California. *Quaestor*, 1997 WL 34618203, *7. In denying a motion

10  for an assignment order relating to deposits with a bank in Mexico, but allegedly accessible

11  through the bank's branch in California, the court in *Quaestor* stated:

12        [I]t is this Court's impression, based on independent scrutiny of § 708.510,
   that the general power to withdraw money from one's bank, as a generic

13        "right to payment," is not the sort of right contemplated by § 708.510, and
   thus amenable to assignment pursuant to the statute. Though the list

14        presented in the statute is merely illustrative, the items listed—wages,
   rents, commissions, royalties, payments due from a patent or copyright,

15        and insurance policy loan value—are in a crucial respect "sums certain,"
   predictable amounts owed to the debtor by a third party, capable of

16        specific and relatively precise determination. Such income constitutes a
   concrete amount "in the hand" of the third party debtor.

17

18  *Id.*

19      Third, the Motion also improperly seeks "rights to borrow." To the extent that the Motion

20  includes a request for undisbursed loan proceeds, the Motion effectively is asking the Court to

21  order the Banks to lend undeterminable amounts of funds to the judgment debtors to satisfy the

22  judgment, which is well beyond the abstract "power to withdraw money from one's bank account"

23

24      [11]    Indeed, the vague relief sought by the Motion lacks the information sufficient to
   permit the Court to conduct the analysis necessary under Section 708.510(c), which includes, "The

25  amount remaining due on the money judgment [… and …] the amount being or to be received in
   satisfaction of the right to payment that may be assigned." The requested relief is also overly broad

26  to the extent that it seeks relief from "agencies and instrumentalities" the Court declined to include
   as judgment debtors for purposes of the writ of execution. *See* Report and Recommendation to

27  Deny Plaintiffs' *Ex Parte* Applications, Hon. Bernard Zimmerman, United States Magistrate Judge,
   dated May 22, 2008 (Docket No. 36).

28

MEMORANDUM OF *AMICI CURIAE*;           11
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

1  deemed insufficient to warrant assignment in *Quaestor*,[12] and a patently unreasonable intrusion

2  into the Banks' conduct of business.

3    Fourth, the Motion's claim that funds are subject to assignment as "general intangibles"

4  flowing from "letters of credit" is contrary to California law.  While the Motion correctly asserts

5  that the assignment statute applies to "general intangibles," a letter of credit, included in the

6  definition of "Accounts" subject to the Motion, is expressly excluded from the definition of general

7  intangibles:

8    'General intangible' means any personal property, including things in
   action, *other than* accounts, chattel paper, commercial tort claims, deposit
9    accounts, documents, goods, instruments, investment property,
   *letter-of-credit rights, letters of credit*, money, and oil, gas, or other
10   minerals before extraction.

11  *See* C.C.P. § 700.170; C.C.P § 680.210 incorporating by reference the definition found in

12  paragraph (42) of subdivision (a) of Section 9102 of the California Commercial Code) (emphasis

13  added).  Any other rule would fundamentally change the risks and costs of letters of credit

14  generally.

15    In sum, the Motion fails to identify the funds at issue or to show that they are subject to the

16  Court's jurisdiction, subject to execution under California law, or otherwise assignable under the

17  law governing the underlying obligations.

18    **B.    Extraterritorial Application of the Assignment Order Would Offend
        Fundamental Principles of Comity and International Law, Disrupt the
19       Workings of the Global Financial System and Harm the Public Interest.**

20    International comity is a well-established and commonsense principle based on reciprocity

21  of obligations and restraint between nations.[13]  It both protects the jurisdiction of a court by

22

---

23    [12]    Section 708.510 does not permit assignment of property "that is not already
   assignable." *See* §708.510, Legis. Committee Com., West's Code Civ. Pro. (1987 ed.); *Philippine*
24   *Export*, 218 Cal. App. 3d at 1099.  Any determination of whether the "Accounts" this Motion seeks
   to reach are, in fact, assignable, will be necessarily based on factors including whether the terms of
25   the underlying agreements, the law of the jurisdiction where the funds are located, and the law
   governing the agreements permit and recognize the assignment of the particular type of funds
26   sought.  Such issues are best determined by the courts in the relevant foreign jurisdictions.

27    [13]    The doctrine of comity is rooted in the basic principles of respect for the sovereignty
   of other states or countries. *See* 44 B Am. Jur. 2d International Law § 8 (2008).  It is essentially an
28                                                                                    *(cont'd)*

1   avoiding conflicts with foreign law and the authority of other courts and prevents entities in

2   international commerce from having to choose between complying with a court's order or violating

3   a conflicting foreign law.  Extending the assignment statute to funds outside the United States

4   would unfairly expose both U.S. and non-U.S. banks to an untenable conflict of laws and disrupt

5   the global financial system to the detriment of the public interest.

6           **1.      Extraterritorial Application of an Assignment Order Would Subject the
                       Banks to Conflicting Laws.**
7

8           The assignment order the judgment creditors seek would, if granted, unfairly subject the

9   non-party Banks to conflicting legal obligations.  This is because the order seeks to alter the legal

10  rights and obligations of the non-party Banks in foreign jurisdictions regardless of whether those

11  jurisdictions permit or recognize such alterations.  This result should not be countenanced by the

12  Court.

13          Generally, in the foreign jurisdictions where the Banks conduct business, transferring client

14  funds without the authorization of their customers or under a direction by order of a local court

15  would expose the Banks to liability to their customers on the grounds that the transfer was

16  unauthorized.[14]  Thus, the Motion would force the Banks to choose between two equally

17  unacceptable options: (i) attempt to pay and unilaterally reduce the debt of their non-U.S.

18  customers, and then face potential liability to their customers for that payment; or (ii) do nothing

19

20

---

21  *(cont'd from previous page)*
    abstention doctrine, which, at its core, recognizes that there are circumstances in which the

22  application of foreign law may be more appropriate than the application of U.S. law.  Jurisdictional
    conflicts are contemplated by the restatement on international law, which indicates that it is

23  reasonable to provide a party with "protection from being caught between the jaws of [a] judgment
    and the operation of laws in foreign countries where it does its business."  *See* RESTATEMENT

24  (THIRD) OF FOREIGN RELATIONS LAW § 441, Reporter's Note 1 (1987) (citation omitted).

25  [14]     For example, neither England nor Germany permit the seizure of debt to take place
    without a court order.  *See* Lawrence Collins, Dicey, Morris & Collins on the Conflict of Laws

26  (14th ed., Sweet & Maxwell 2008), at 1197 (explaining that a Third Party Debt Order is required
    under English law, which, in the case of foreign judgments, can only be obtained after the creditor

27  has brought the requisite enforcement proceeding in England).  *See also* Wendy A. Kennett, The
    Enforcement of Judgments in Europe (Oxford University Press 2000), at 249-86.

28

1  and risk the possibility of repercussions for noncompliance with a court order in the United States.

2  Either option exposes the Banks to potential liability and thus places the Banks' own assets at risk.

3           2.      **Extraterritorial Application of an Assignment Order Would Disrupt the Workings of the Global Financial System and Harm the Public Interest.**

4

5           Placing the non-party Banks' assets (and those of their depositors and investors) at risk

6  would have direct adverse consequences on international banking in California and the United

7  States, and would interfere with the workings of the global financial system to the detriment of the

8  public interest.

9           Risk management is essential to the safe and sound operation of the international banking

10 system.  Requiring the Banks to honor a California court's assignment order with respect to assets

11 having a *situs* outside the United States without requiring that order first to be considered by the

12 foreign court with jurisdiction over the assets in question would effectively put the Banks' own

13 assets at risk.  Because the Banks could not conceivably monitor every potential claim against each

14 of their global customers, they could not measure or manage the risk of being compelled to honor a

15 California court assignment order with respect to funds outside the United States when doing so

16 would subject the Banks to potential liability outside the United States.  If this unquantifiable risk

17 is a cost of doing business in California, it would discourage internationally active banks from

18 doing business here.

19          This real yet untenable consequence of the requested relief can be avoided by requiring that

20 any attempt to enforce the judgment against assets outside the United States be undertaken

21 pursuant to the locally applicable procedures for the recognition and enforcement of judgments in

22 the jurisdiction where the funds are located.  In this way, the bank office holding the funds could

23 the be assured that it was in compliance with the judicial process governing its banking activities.

24          In addition, affording extraterritorial reach to a California court's assignment order would

25 force costly changes in routine global banking practices.  As the court articulated in *Sara Lee*, 2003

26 WL 23120116, at *3, in the context of a discussion of the "separate entity" doctrine, but equally

27 applicable here:

28

1
2
3
4

> Transaction costs and potential liability are both increased if all branches of a bank are considered a single entity for attachment purposes. Specifically, each branch would face potential liability every time it released funds without verifying that no attachment had been placed on those funds at any other branch. Banks' transaction costs would increase from the communication necessary to avoid such liability.

5
6
7
8
9

Likewise, as courts have recognized in applying this doctrine, it is critical that a restraint on funds in one branch of a bank "not be permitted to accomplish a restraint on accounts and funds in other branches because of the substantial interference with routine banking business." *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 607 (S.D.N.Y. 1997).[15]

10
11
12
13
14
15
16

The practical implications of a California court order purporting to alter the rights and obligations of the Banks with respect to a client relationship outside the United States and subject to foreign law are significant. The diminished certainty in the Banks' ability to rely on local bank regulatory requirements, contractual terms and other factors governing the conduct of their client relationships in the respective foreign jurisdictions would adversely impact the efficiency of the global financial system and call into question the Banks' ability to operate in any jurisdiction that sought to assert worldwide authority over the Banks' relationships with non-U.S. customers.

17
18
19
20
21
22
23
24
25

In sum, it is difficult to overstate the impact on internationally active banks doing business in California—including those headquartered in the United States or elsewhere—of an assignment order that reaches funds held overseas without submitting that order to the customary local enforcement mechanisms. Internationally active banks, of course, provide a substantial portion of the banking services available in California and are essential to the functioning of the California economy. The potential withdrawal in whole or in part of internationally active banks from California because of their concern over effectively being held responsible for civil claims against their global customers would reduce the availability and significantly increase the cost of banking services to California residents, harm California's position as a financial center and significantly

26
27
28

---

[15]    *For additional discussion, see also* Clyde Mitchell, *'Separate Entity' Rule – U.S. Branches of Non-U.S. Banks*, New York Law Journal, Vol. 220, No. 97, at 3 (Nov. 18, 1998).

1   undermine its international commercial activities.  The public interest firmly militates against such

2   a result.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF *AMICI CURIAE*;
MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
CASE NO. C 08-80030 MISC JSW (BZ)
981470

16

## IV.    CONCLUSION

The worldwide assignment requested by the Motion is not permitted by applicable law and would have real and unworkable consequences for the Banks, international banking and commerce to the detriment of California and the United States that extend well beyond these collection proceedings.  For the reasons stated above, the Associations respectfully submit that the Motion does not support the relief requested and should be denied.

June 9, 2008                                        Respectfully submitted,

                                                   WILLIAM L. STERN
                                                   NANCY R. THOMAS
                                                   MORRISON & FOERSTER LLP


                                        By:   /s/ William L. Stern
                                                   William L. Stern

                                                   Attorneys for *Amici Curiae*, the
                                                   California Bankers Association, the
                                                   Institute of International Bankers, the
                                                   International Bankers Association in
                                                   California, The Clearing House
                                                   Association L.L.C. and the
                                                   Organization for International
                                                   Investment