Jay R. Henneberry (State Bar No. 135065)
jhenneberry@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 892-1000
Facsimile: (213) 622-9865

*Attorneys for Non-Party*
*The Export-Import Bank of Korea*

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, et al.,

Defendants.

Case No. 3:08-mc-80030-JSW

Hon. Jeffrey S. White
Hon. Bernard Zimmerman

**THE EXPORT-IMPORT BANK OF KOREA'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)**

**[FINANCIAL INSTITUTIONS]**

[Proposed] Order Denying Motion And Declaration Of Hwan Kim Filed Concurrently Herewith

Date: July 2, 2008
Time: 9:00 a.m.
Place: Courtroom G

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................ i

PRELIMINARY STATEMENT ........................................ 2

SUMMARY OF ARGUMENT ........................................ 3

ARGUMENT ........................................ 5

I. ANY ORDER ISSUED BY THE COURT MAY ONLY BE DIRECTED TO THE JUDGMENT DEBTOR, IRAN ........................................ 5

II. THE COURT DOES NOT HAVE JURISDICTION TO ISSUE ANY ORDER WHICH DIRECTLY OR INDIRECTLY AFFECTS KEXIM ........................................ 5

III. UNDER THE FSIA, THE COURT ONLY HAS JURISDICTION TO ORDER THE ASSIGNMENT OF ASSETS LOCATED IN THE UNITED STATES ........................................ 9

A. Under the Plain Language of the FSIA, the Court May Only Assign Assets Located in the United States ........................................ 10

B. The Law Is Equally Clear that the Fact That a Bank May Have a Branch in the United States Does Not Mean Its Overseas Assets Are Located Here for Purposes of the FSIA ........................................ 12

CONCLUSION ........................................ 14

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

Atkinson v. Inter-American Dev. Bank, 156 F.3d 1335 (D.C. Cir. 1998)................................. 8

Autotech Techs. LP v. Integral Research & Dev. Corp., 499 F.3d 737 (7th Cir. 2007)10, 11, 12

Chuidian v Philippine Nat'l Bank, 912 F.2d 1095 (9th Cir. 1990)........................................... 6

Corzo v. Banco Central De Reserva Del Peru, 243 F.3d 519 (9th Cir. 2001)........................... 6

In re Estate of Ferdinand Marcos, Human Rights Lit., 25 F.3d 1467 (9th Cir. 1994)............. 13

In re Estate of Marcos Human Rights Lit., 910 F. Supp. 1470 (D. Haw. 1995)...................... 13

In re Estate of Marcos, No. 97 C 0477, 1997 WL 248544 (N.D. Ill. Jul 24, 1997)................. 13

Exch. Nat'l Bank of Chicago v. Empresa Minera Del Centro Del Peru S.A., 595 F. Supp. 502 (S.D.N.Y. 1984)........................................................................................... 7

Fidelity Partners v. Philippine Exp. & Foreign Loan Guar. Corp., 921 F. Supp. 1113 (S.D.N.Y. 1996)..........................................................................................10, 11, 13

Joseph v. Office of Consulate Gen. of Nigeria, 830 F.2d 1018 (9th Cir. 1987).................... 8, 9

Kelly v. Syria Shell Petroleum, Dev. B.V., 213 F.3d 841 (5th Cir. 2000)................................ 4

Phillipine Export and Foreign Loan Guarantee Corp. v. Chuidian, 218 Cal. App. 3d 1058 (6th Dist. 1990)..........................................................................................4, 10, 12

Quaestor Investments, Inc. v. State of Chiapas, No. CV-95-6723 JGD AJW, 1997 WL 34618203 (C.D. Cal. Sept. 2, 1997)............................................................................ 12

Randolph v. Budget Rent-A-Car, 97 F.3d 319 (9th Cir. 1996)........................................ 4, 6, 8

Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468 (9th Cir. 1992)................. 4, 11

S & S Mach. Co. v. Masinexportimport, 706 F.2d 411 (2d Cir. 1983).................................... 7

Sec. Pac. Nat'l Bank v. Derderian, , 872 F.2d 281 (9th Cir. 1989).......................................... 6

Siderman v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992).......................................... 9

Stena Rederi AB v. Comision de Contratos del Comite Ejectivo General del Sindicato Revolucionario de Trabjadores Petroleros de la Republica Mexicana, S.C., 923 F.2d 380 (5th Cir. 1991)................................................................................................. 4, 7, 9

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

## TABLE OF AUTHORITIES
## (Continued)

Page(s)

### FEDERAL STATUTES

F.R.C.P. 69(a) ..... 1

28 U.S.C. § 1602 ..... 1, 4

28 U.S.C. § 1603(a) ..... 4, 10

28 U.S.C. § 1603(b) ..... 6, 7

28 U.S.C. § 1604 ..... 5, 6, 7

28 U.S.C. § 1605(a)(2) (2006) ..... 8

28 U.S.C. § 1605A ..... 11

28 U.S.C. § 1609 ..... 7

28 U.S.C. § 1610 ..... 4, 10, 11, 12

28 U.S.C.A. § 1610 (a) ..... 10, 11

28 U.S.C.A. § 1610 (b) ..... 13

31 U.S.C. § 3727 ..... 9

### CALIFORNIA STATUTES

C.C.P. § 708.510(a) ..... 1, 3, 4, 5, 12, 13, 14

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

**INTRODUCTION**

The Export-Import Bank of Korea ("KEXIM"), a non-party, submits this Memorandum of Points and Authorities in opposition to plaintiffs' Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) (the "Motion") purportedly served on it by the plaintiffs in this action. By their Motion, plaintiffs seek an order directing: (1) the assignment all of Iran's tangible and intangible property held by KEXIM in the United States and abroad to plaintiffs; and (2) KEXIM to turn over such property to plaintiffs. As shown below, the assignment order sought by plaintiffs is overbroad in that under applicable California law such an order can only be directed at the Islamic Republic of Iran, not KEXIM. Moreover, KEXIM, a Korean government-owned credit export agency, possesses sovereign immunity under the Foreign Sovereign Immunity Act, 28 U.S.C. §§ 1602, et seq. ("FSIA"), and as such the Court has no jurisdiction over KEXIM, including any jurisdiction to grant the instant Motion insofar as it affects KEXIM. In addition, the broad wording of the assignment sought by plaintiffs, which among other things seeks to reach assets of the judgment debtors purportedly held by KEXIM outside of the United States, is improper in any event since, under well-established law, an assignment in aid of execution on property of a judgment debtor foreign state can be used only with respect to assets located in the United States.

In addition to the instant Motion made in this Court, plaintiffs have made a series of motions in the District Court for the District of Columbia (where the underlying action is pending), which have implicated KEXIM and at least some of the other foreign financial institutions involved on the instant motion, as part of plaintiffs' efforts to collect on its judgment. As set forth below, plaintiffs' efforts to use the California courts, and the California motion for assignment procedure, is a transparent and ultimately improper attempt to circumvent well-settled principles of sovereign immunity, comity and international law. Moreover, at least in the first instance, proceedings to enforce the judgment should be heard in the D.C. federal court where this action is pending. Indeed, the World Bank has made a motion in this Court to stay these proceedings in favor of the D.C. proceedings and KEXIM has joined in that motion.

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

**PRELIMINARY STATEMENT**

KEXIM is an official export credit agency which provides comprehensive export credit and guarantee programs to support Korean enterprises in conducting overseas business. See accompanying Declaration of Hwan Kim dated June 9, 2008 ("Kim Decl.") ¶ 3, Exh. A at 1. It was established in 1976 by the Korean government as a special financial institution under the Export-Import Bank of Korea Act to engage in facilitating export and import transactions, overseas investments, and overseas resource development. Id. ¶ 4, Exh. A at 48. Since its establishment, KEXIM has actively supported Korea's export-led economy and facilitated economic cooperation with foreign countries. Id. ¶ 3, Exh. A at 1. The majority of KEXIM's shares are directly owned by the Government of the Republic of Korea. Id. ¶ 3, Exh. A at 48. As such, KEXIM enjoys sovereign immunity under the FSIA. KEXIM has no offices or employees anywhere in California and maintains no other presence here.

Plaintiffs' Motion stems from an action in federal district court in Washington, D.C., relating to the bombing of the U.S. Marine barracks in Beirut, Lebanon in 1983. After obtaining a default judgment against Iran and certain of its instrumentalities in that action, plaintiffs served writs of attachment in the D.C. action on a multitude of third-party financial institutions, including government-owned entities such as KEXIM which are entitled to sovereign immunity. A number of those entities, including KEXIM, have moved to quash those writs on the grounds, inter alia, that as foreign sovereigns they are immune to the jurisdiction of U.S. courts with regard to such matters and that, in any event, under the FSIA plaintiffs may not execute on any of the assets of the judgment debtors in the underlying action located outside of the United States.[1]

---

[1] Plaintiffs have also filed a motion in the D.C. action for the appointment of a receiver to execute on any assets of defendants held by foreign sovereigns, which again raises the same issues under the FSIA. Since the very issues presented by this Motion are currently being decided by Judge Lamberth in that underlying D.C. action, a number of foreign states (including KEXIM) have asked the Court to stay its ruling on the instant Motion until Judge Lamberth has had a chance to rule on these issues.

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

Plaintiffs have now come to California -- even though this State appears to have no connection with the underlying lawsuit or any particular assets of the judgment debtors -- to file the instant Motion. Plaintiffs' Motion is brought pursuant to California Code of Civil Procedure ("C.C.P.") § 708.510(a), which provides for the assignment under certain circumstances of a judgment debtor's "right to payment due or to become due."[2] Plaintiffs do not, however, restrict their requested relief to the kind of rights to payments due specified in that statute. Instead, in an apparent end-run around California's levy statutes, plaintiffs ask for the assignment of an extremely broad range of assets, including "deposits [and] deposit accounts" and "rights to direct, transfer or dispose of any account . . . ." Motion, p. 2. Indeed, from their papers it appears that what they truly seek is an order levying on all domestic and overseas bank accounts, even though such an order would go well beyond the plain language of C.C.P. § 708.510(a). See, e.g., Motion at 6 (maintaining that "to the extent that any of the financial institutions . . . hold any funds, . . . these funds would now be the subject of the reach of this assignment order.")[3]

**SUMMARY OF ARGUMENT**

Plaintiffs' Motion should not be granted with regard to KEXIM for several reasons. First, under the plain language of C.C.P. § 708.510(a), a court can only "order the judgment debtor" to make assignments, and thus any order issued by the Court cannot be directed to non-party financial institutions such as KEXIM, but instead can only be directed to Iran and the other judgment debtors. See C.C.P. § 708.510(a). Moreover, as noted, plaintiffs' requested relief -- which appears to go so far as to request the seizure of bank accounts and undisbursed loan

[2] Section 708.510(a) provides further that "right[s] to payment" include "[w]ages," "[r]ents," "[c]ommissions" and "[r]oyalties." C.C.P. § 708.510(a). Notably, section 708.510(a) does not list such things as bank accounts.

[3] In contravention of this Court's rules, plaintiffs did not submit a proposed order with their Motion, and thus it cannot be ascertained precisely what they are seeking. Nonetheless, their papers make it clear that the relief they seek goes well beyond anything that could be considered "a right to payment due."

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

proceeds -- goes well beyond anything contemplated by C.C.P. § 708.510(a), which only allows for the assignment of "a right to payment due or to become due."

Second, as a "foreign state" -- as that term is defined in 28 U.S.C. § 1603(a) (2006) -- KEXIM enjoys sovereign immunity and thus is not subject to the jurisdiction of this Court. Accordingly, under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq. ("FSIA"), the Court has no jurisdiction to order any assignment of property held by KEXIM or to require KEXIM to participate further in these proceedings. See Randolph v. Budget Rent-A-Car, 97 F.3d 319, 323-24 (9th Cir. 1996); Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C., 923 F.2d 380, 392 (5th Cir. 1991).

Finally, even if under the circumstances presented here the Court did have jurisdiction over KEXIM (which is not the case), it is also clear under the express terms of the FSIA that the Court would only have jurisdiction to issue or enforce an assignment in aid of execution on property of a judgment debtor foreign state located in the United States. See 28 U.S.C. § 1610; see also Philippine Exp. and Foreign Loan Guar. Corp. v. Chuidian, 218 Cal. App. 3d 1058, 1093 (6th Dist. 1990); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1477 (9th Cir. 1992). Here, there are no assets of the judgment debtor held by KEXIM located anywhere in the United States, much less in California. Kim Decl., ¶ 5 and Exh. B.

For all of these reasons, KEXIM respectfully requests that the Court issue an order denying the motion with regard to KEXIM and excusing KEXIM from further participation in these proceedings. As a foreign state enjoying sovereign immunity, KEXIM is beyond the jurisdiction of the Court and thus should not be required to incur the time and expense necessary to participate in these proceedings. Cf. Kelly v. Syria Shell Petroleum, Dev. B.V. 213 F.3d 841, 849 (5th Cir. 2000) (noting that "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation").

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

## ARGUMENT

## I. ANY ORDER ISSUED BY THE COURT MAY ONLY BE DIRECTED TO THE JUDGMENT DEBTOR, IRAN

In their papers, Plaintiffs imply that the Court should compel the financial institutions that allegedly hold property of Iran, including KEXIM, to assign such property to plaintiffs. Assuming that in fact they are making such a request, that request directly contradicts the plain language of C.C.P. § 708.510(a). Under that subsection, the Court can only order the judgment debtor to make such an assignment. As stated in that subsection,

> "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court **may order the judgment debtor** to assign to the judgment creditor, or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or part of a **right to payment due or to become due**, whether or not the right is conditional upon future developments, including but not limited to, the following types of payment:
> 1. Wages due from the federal government that are not subject to withholding under an earnings withholding order.
> 2. Rents.
> 3. Commissions.
> 4. Royalties.
> 5. Payments due from a patent or copyright.
> 6. Insurance policy loan value."

C.C.P. § 708.510(a) (emphasis added).

Accordingly, as a threshold matter, under the plain language of C.C.P. § 708.510, any order issued by the Court in response to plaintiffs' motion can only be directed to Iran, the judgment debtor. It cannot be directed to non-party financial institutions such as KEXIM.

Moreover, as noted, the relief that plaintiffs request in the Motion -- which appears to ask for the seizure assets of any kind both here and abroad -- is breathtakingly broad. Section 510, however, only provides for the assignment of a "right to payment due or to become due . . . ." C.C.P. § 708.510(a).

## II. THE COURT DOES NOT HAVE JURISDICTION TO ISSUE ANY ORDER WHICH DIRECTLY OR INDIRECTLY AFFECTS KEXIM

The FSIA states the general rule that foreign sovereigns and their agencies and instrumentalities are immune from the jurisdiction of the courts of the United States. See 28

U.S.C. § 1604; Randolph v. Budget Rent-A-Car, 97 F.3d 319, 323-24 (9th Cir. 1996). The FSIA provides a comprehensive scheme for obtaining jurisdiction over foreign governments and their agencies and instrumentalities in certain limited circumstances. "The Act conflates the usually distinct questions of sovereign immunity, subject matter jurisdiction, and personal jurisdiction. Jurisdiction exists only if immunity does not." Corzo v. Banco Cent. De Reserva Del Peru, 243 F.3d 519, 522 (9th Cir. 2001) (internal citations omitted). Under the FSIA, a court in the United States can exercise jurisdiction over a foreign sovereign only if one of the exceptions to sovereign immunity provided in Sections 1605-1607 of the FSIA apply. See Randolph, 97 F.3d at 323. "If the claim does not fall within one of the exceptions, the court cannot entertain the action and must dismiss the action against the foreign state for lack of jurisdiction." Sec. Pac. Nat'l Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989).

As noted above, KEXIM was created by the Republic of Korea, which owns the majority of its shares, to be the official export credit agency of the Korean government. Kim Decl., ¶¶ 3-4, Exh. A. It thus is manifestly an "agency or instrumentality of a foreign state" as defined in the FSIA.[4] See Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1098 (9th Cir. 1990) (holding that "[a]t all relevant times, the Philippine government owned a majority interest in the Bank. Thus, the Bank qualifies as an 'agency or instrumentality of a foreign state' under 28

---

[4] The FSIA provides that

> "[a]n 'agency or instrumentality of a foreign state' means any entity -
>
> "(1) which is a separate legal person, corporate or otherwise, and
>
> "(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> "(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country."

28 U.S.C. § 1603(b).

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

U.S.C. § 1603(b)."); see also S & S Mach. Co. v. Masinexportimport, 706 F.2d 411, 414 (2d Cir. 1983) (finding that a state-owned Romanian bank which, like KEXIM, had been "established to serve the state's foreign trade goals," was an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b)); Exch. Nat'l Bank of Chicago v. Empresa Minera Del Centro Del Peru S.A., 595 F. Supp. 502, 503 (S.D.N.Y. 1984) (finding that defendant bank owned by the Peruvian government was an "agency or instrumentality of a foreign state"). Accordingly, it is immune from the jurisdiction of this Court.

This analysis does not change, as plaintiffs imply, because KEXIM is not a party to this action. The notion that a sovereign somehow loses its immunity when it is not named as a party to an action has no support in the language or legislative history of the FSIA. Indeed, any other result would run afoul of principles of comity and adversely affect international relations. If KEXIM has sovereign immunity, then under the FSIA it is immune from any "jurisdiction of the courts of the United States," 28 U.S.C. § 1604, regardless of how Plaintiffs purport to assert that jurisdiction. Moreover, it defies common sense to argue that KEXIM should be entitled to fewer rather than more rights as a non-party.

The Fifth Circuit's decision in Stena Rederi AB v. Comision de Contratos, 923 F.2d 380 (5th Cir. 1991), is on all fours. In Stena, plaintiff, who had obtained a judgment against a private Mexican company, obtained a writ of garnishment against Pemex (the nationalized Mexican oil company, a foreign sovereign) on debts owed by Pemex to that private company (i.e., the judgment debtor). Id. at 383. Pemex objected to the writ of garnishment on the ground that it was immune from suit under the FSIA. Id. at 392. The plaintiffs in that case argued that the FSIA should not apply, since the proceeding was not really an action against the foreign sovereign but simply a garnishment against that sovereign as a third-party creditor. Id. at 392.

The court gave short shrift to plaintiff's contentions, holding that ". . . there can be no other conclusion except that the FSIA applies to garnishment proceedings." Id. at 392 (emphasis added). As explained by the court, a foreign state is "entitled to invoke the shield of

sovereign immunity, whether against direct claims or an indirect writ of garnishment." Id. at 392. Indeed, the court commented further that not only would any other result run afoul of the FSIA, but also run counter to underlying notions of sovereign immunity and comity. As explained by the court,

> "[i]f this Court were to authorize the use of garnishment against foreign governmental agencies with operations in the United States to prosecute claims against third parties, the agencies would be required repeatedly to appear in court to protect their own relations with the third parties. This result would be inconsistent with the spirit of grace and comity that underlies the doctrine of sovereign immunity."

Id. See also Atkinson v. Inter-American Dev. Bank, 156 F.3d 1335, 1339 (D.C. Cir. 1998) (citing Stena Rederi with approval and holding that immunity of international financial institutions required the dismissal of garnishment proceedings against an international financial institution which was a third-party creditor of the judgment debtor).

Plaintiffs in their Motion also suggest that, even though KEXIM is indisputably an "agency or instrumentality of a foreign state," it nonetheless may not be entitled to sovereign immunity because it "may" fall within two exceptions to the FSIA: those relating to commercial activity and implied waiver. See Motion at 11. This argument -- which is presented merely as a hypothetical possibility with no factual support whatsoever -- is also without merit.

With regard to the commercial activity exception, it is well established that the commercial activity must be directly related to the underlying suit, and indeed must form the basis for that suit. See, 28 U.S.C. § 1605(a)(2) (2006); see also Randolph, 97 F.3d at 324 ("the plaintiff's cause of action must *arise* from the defendant's commercial activity in the United States. In other words, not only must the activity be commercial in nature, but the commercial activity must cause the harm alleged.") (citations omitted; italics in original); Joseph v. Office of Consulate Gen. of Nigeria, 830 F.2d 1018, 1023 (9th Cir. 1987) ("In determining whether the commercial activity exception applies, the courts focus only on those *specific* acts that form the basis of the suit.") (citation omitted; italics in original). Here, it is clear that KEXIM had nothing to do with the 1983 bombing, and thus is not subject to the jurisdiction of U.S. courts. As the

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

Fifth Circuit's opinion in Stena Rederi makes clear, sovereign immunity protects foreign states from the very types of intrusions that Plaintiffs here seek to make, so that such sovereigns are not forced to "repeatedly . . . appear in court to protect their own relations with [] third parties." Id. at 392.

Plaintiffs' "implied waiver" argument is equally misguided. The Ninth Circuit has held that the waiver exception is to be "narrowly construed." Siderman v. Republic of Argentina, 965 F.2d 699, 720 (9th Cir. 1992). "Implicit waivers are ordinarily found only where: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." Joseph, 830 F.2d at 1022. Here, none of these exceptions apply. KEXIM has not agreed to arbitration, has not entered into any pertinent contract and has not filed a responsive pleading without raising the defense of sovereign immunity. Tellingly, Plaintiffs do not make any showing to the contrary -- nor can they, for the simple reason that no waiver ever occurred. Accordingly, this exception does not apply either.[5]

In short, under well-settled principles of sovereign immunity, this Court does not have jurisdiction over KEXIM to issue any order -- either direct or indirect -- that affects KEXIM. Given this lack of jurisdiction, the Court should deny the Motion insofar as it affects KEXIM and excuse KEXIM from any further proceedings in this matter.

## III. UNDER THE FSIA, THE COURT ONLY HAS JURISDICTION TO ORDER THE ASSIGNMENT OF ASSETS LOCATED IN THE UNITED STATES

[5] In what can only be called a *non seqitur*, plaintiffs also argue that KEXIM's sovereign immunity is irrelevant because the federal Anti-Assignment Statute, 31 U.S.C. § 3727, which governs the assignment of rights under U.S. federal contracts, does not proscribe involuntary transfers. Motion at 12-13. The Anti-Assignment Statute, however, has absolutely nothing to do with sovereign immunity of any country (including that of the United States), and thus does not change anything with regard to that immunity. That statute, accordingly, is completely inapposite.

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

### A. Under the Plain Language of the FSIA, the Court May Only Assign Assets Located in the United States

As noted above, this Court has no jurisdiction over KEXIM. For this reason alone, the Court should deny the Motion as it relates to KEXIM and excuse KEXIM from further proceedings. In addition, the Court should also deny the Motion because the requested assignment improperly seeks to assign assets of judgment debtors, who are themselves sovereigns, that are located outside of the United States. Specifically, as noted, KEXIM does not have any property of Iran or the other judgment debtors in the United States,[6] and under the FSIA the Court does not have jurisdiction to order or otherwise direct the disposition of any assets of a foreign sovereign that are located outside of the United States. Accordingly, there simply are no assets to be assigned.

Prior to the enactment of the FSIA in 1976, "the traditional view of courts in the United States was that property of foreign states was absolutely immune from execution." Fidelity Partners Inc. v. Philippine Exp. & Foreign Loan Guar. Corp., 921 F. Supp. 1113, 1117 (S.D.N.Y. 1996); Philippine Exp. & Foreign Loan Guar. Corp. v. Chuidian, 267 Cal. App. 3d 1058, 1093 (6th Dist. 1999) (same). The FSIA "codified this practice by establishing a general principle of immunity for foreign sovereigns from execution of judgments . . . ." Autotech Techs. LP v. Integral Research & Dev. Corp., 499 F.3d 737, 749 (7th Cir. 2007). Section 1610 of the FSIA -- which governs the enforcement of judgments -- created exceptions to the traditional immunities granted to the property of foreign states. See Fidelity Partners, 921 F. Supp. at 1117-18. Notably, however, section 1610 only waives sovereign immunity with regard to property located in the United States. As stated in that section,

"The property **in the United States** of a foreign state, as defined in

---

[6] Korean law places significant restrictions on the disclosure of banking-related information. Accordingly, KEXIM takes no position on whether it does or does not have any Iranian assets in locations outside of the United States.

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

> section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if [certain conditions are met] -"

28 U.S.C.A. § 1610 (a) (emphasis added).

Interpreting the plain language of this statute, courts have uniformly held that under the FSIA courts may not assign or attach payments or assets of foreign state judgment debtors that are located outside of the United States.[7] See, e.g., Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1477 (9th Cir. 1992) (". . . Section 1610 does not empower United States courts to levy on assets located outside the United States"); Autotech, 499 F.3d at 750 ("It is also of no small moment that the FSIA authorizes execution only against properties 'in the United States.' The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world") (citations omitted); Fidelity Partners, 921 F. Supp. at 1119 ("Under the FSIA, assets of foreign states located outside the United States retain their traditional immunity from execution to satisfy judgments entered in United States courts").[8]

---

7 As set forth in Section II above, given the sovereign immunity that KEXIM enjoys, a Court cannot attach a foreign state's property in KEXIM's possession even if located in the United States. As noted above, KEXIM does not have any property of the judgment debtors in the United States in any event.

8 In short, to the extent the Motion seeks to assign or otherwise seize Iranian assets, under the FSIA it cannot reach any such assets located outside of the United States. To the extent it attempts to attach any assets of KEXIM, of course, the Motion should be denied for the additional reason that KEXIM is not a judgment debtor and does not owe anything to plaintiffs.

Notably, the analysis with regard to this issue was not changed by the recent amendments to the FSIA relating to terrorist acts. See 28 U.S.C. § 1605A. With regard to the enforcement of judgments against terrorist states such as Iran, those amendments simply cross-reference Section 1610, which, as noted above, does not allow for the attachment of assets located outside of the United States. See 28 U.S.C. § 1605A(a)(1)(A) (providing that property must be subject to attachment under Section 1610); see also 28 U.S.C. § 1605A(a)(1)(B) (providing further that the property must be "located within [the district court's] judicial district").

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian, 218 Cal. App. 3d 1058 (6th Dist. 1990) is directly on point. The plaintiff in Chuidian, like plaintiffs here, tried to use C.C.P. § 708.510 to obtain an order assigning debts of a foreign state located overseas. The court issued a writ of mandate modifying the order below to exclude all overseas debts. Id. at 1099-1100. As held by the court,

> "Section 1610, the only arguably relevant provision, speaks only of a foreign state's property in the United States. Accordingly **the statute creates no exception to immunity for property outside the United States**."

Id. at 1093 (emphasis added); see also Autotech, 499 F.3d at 750 ("The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world. We would need some hint from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction.").

In short, the law under the FSIA is crystal clear: under the plain language of 28 U.S.C. § 1610, any order issued by this Court may only assign assets and rights to payments located in the United States. Accordingly, plaintiffs' argument that the Court can issue an order affecting overseas assets and payment streams is simply wrong.

### B. The Law Is Equally Clear that the Fact That a Bank May Have a Branch in the United States Does Not Mean Its Overseas Assets Are Located Here for Purposes of the FSIA

In order to get around the well settled law on this issue, plaintiffs also argue that the Court has the power to direct the assignment of Iran's overseas assets because KEXIM and other banks "have a branch office located in the United States." Motion at 4. Again, plaintiffs' position is without merit.

Indeed, in a case directly on point, a federal court in California rejected that very argument -- i.e., that the assets of a foreign state maintained at an international bank's home office could be assigned to the judgment creditor under C.C.P. § 708.510 simply because the bank had a branch in the court's jurisdiction. Quaestor Investments, Inc. v. State of Chiapas, No. CV-95-6723 JGD AJW, 1997 WL 34618203, at *7 (C.D. Cal. Sept. 2, 1997). In Quaestor, plaintiff

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

asserted that the "right to payment" should be construed as located "in the United States" because the judgment debtor was allegedly capable of accessing its accounts from within California. Id. The court flatly rejected that argument, holding that "the abstract 'right to payment' in the absence of conjunction with some physical or at least specific asset located within the boundaries of the United States upon which that right may be exercised, is insufficient standing alone to be amenable to assignment under C.C.P. § 708.510." Id.

Similarly, in Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp., 921 F. Supp. 1113, 1117 (S.D.N.Y. 1996), the plaintiff moved to attach the overseas accounts of a foreign state held in an international bank with a branch office in New York. The court denied the motion, holding that since the accounts were in Manila, they were beyond the court's reach since they were "not 'in the United States' as Section 1610(b) of the FSIA requires." Id. at 1119. As stated by the court, "whether the accounts are characterized as 'debts' of [the international bank] or 'assets' of [the judgment debtor], a determination of the situs of the accounts is necessary to preserve the limited reach of the FSIA's exceptions to immunity". See also In re Estate of Marcos, No. 97 C 0477, 1997 WL 248544, at * 3 (N.D. Ill. Jul 24, 1997) (finding that assets maintained by Swiss bank in Switzerland were not subject to execution in the U.S. despite location of bank branches in Chicago).

Tellingly, the only case cited by plaintiffs on this point is In re Estate of Marcos Human Rights Lit., 910 F. Supp. 1470 (D. Haw. 1995), which plaintiffs quote at great length. See Motion at 6-8. The FSIA, however, did not even apply to that action, and thus the case is completely inapposite. See In re Estate of Ferdinand Marcos, Human Rights Lit., 25 F.3d 1467 (9th Cir. 1994) (in prior appeal in the same action, Ninth Circuit held that since the defendant, Marcos, was acting as an individual, the FSIA did not apply). It is because of sovereign immunity and the FSIA that the Court lacks jurisdiction to order the disposition of the overseas assets of foreign sovereigns.

In short, under the plain language of the FSIA, any order issued by the Court may only be directed to assets located in the United States. Any assets of the judgment debtors located outside of the United States are beyond the jurisdiction of this Court.

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

**CONCLUSION**

At least insofar as it may affect KEXIM, plaintiffs' Motion should be denied. First, as a threshold matter, under C.C.P. § 708.510, the Court can only issue orders directed to the judgment debtors in the underlying lawsuit, not to strangers to that litigation such as KEXIM. The scope of plaintiffs' requested order also goes well beyond what is allowed under C.C.P. § 705.510 insofar as it seeks to levy on accounts and other assets. In addition, because of sovereign immunity, the Court does not have jurisdiction to issue any order which affects KEXIM and, in addition, does not have jurisdiction to order the assignment of any of the assets of Iran or the other judgment debtors located outside of the United States. While the circumstances in the underlying litigation are undeniably tragic, it is also undeniable that neither the Korean government nor its agencies or instrumentalities had anything to do with that loss. Any order that implicates assets held by KEXIM could impact international relations, since sovereign banks have to be free to deal with other sovereigns without judicial interference. Accordingly, since KEXIM is entitled to sovereign immunity, KEXIM respectfully requests that any order issued by the Court specifically state that it does not apply to KEXIM or to any assets being held by KEXIM, that it does not affect any assets of the judgment debtors located outside of the United States, and that KEXIM is excused from any further involvement in these proceedings.[9]

---

[9] KEXIM's filing of this opposition is not intended to be construed as a waiver any of its rights and defenses, including sovereign immunity and lack of proper service and personal jurisdiction. All of those rights and defenses are expressly reserved.

Dated: June 9, 2008

CHADBOURNE & PARKE LLP

By: /s/ Jay R. Henneberry

Jay R. Henneberry (Bar No. 135065)
CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 300
Los Angeles, California 90071
Tel. (213) 892-1000
Fax (213) 622-9865

*Attorneys for Non-Party*
*The Export-Import Bank of Korea*

Of Counsel:

Hwan Kim
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C.
Tel. (202) 974-5600
Fax (202) 974-5602



CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

Jay R. Henneberry (State Bar No. 135065)
jhenneberry@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 892-1000
Facsimile: (213) 622-9865

*Attorneys for Non-Party*
*The Export-Import Bank of Korea*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, et al.,

Defendants.

Case No. 3:08-mc-80030-JSW

Hon. Jeffrey S. White
Hon. Bernard Zimmerman

**DECLARATION OF HWAN KIM**

Date: July 2, 2008
Time: 9:00 a.m.
Place: Courtroom G

Hwan Kim, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am a member of the law firm of Chadbourne & Parke LLP, counsel to the Export-Import Bank of Korea ("KEXIM"). I have personal knowledge of the facts stated in this declaration, which is based upon my review of publicly available information about KEXIM that is published on the official Internet website for KEXIM.

2. On May 30, 2008, I used the Internet to access KEXIM's 2007 Annual Report, which is published at http://www.koreaexim.go.kr/en/about/m02/s01_01.jsp. A true and correct copy of selected pages of the 2007 Annual Report is attached to this Declaration as Exhibit A.

3. Page 1 of Exhibit A provides a profile of KEXIM, which reads:



CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

"The Export-Import Bank of Korea (Korea EXIMBank) is an official export credit agency providing comprehensive export credit and guarantee programs to support Korean enterprises in conducting overseas business. Since its establishment in 1976, the Bank has actively supported Korea's export-led economy and facilitated economic cooperation with foreign countries."

4. Page 48 of Exhibit A provides a detailed description of KEXIM, its formation, and its mandate, which reads:

"The Export-Import Bank of Korea (the "Bank") was established in 1976 as a special financial institution under the Export-Import Bank of Korea Act (the "EXIM Bank Act") to engage in facilitating export and import transactions, overseas investments, and overseas resources development through the extension of loans and other financial facilities. The Bank has eleven domestic branches, four overseas subsidiaries and thirteen overseas offices as of December 31, 2007.

"The Bank has ₩ 4,000,000 million of authorized capital and as of December 31, 2007, its paid-in-capital is ₩ 3,308,755 million through several capital increases. The Bank is owned by the Government of the Republic of Korea (the "Government'), the Bank of Korea ("BOK") and Korea Development Bank with 60.15%, 35.21% and 4.64% shareholding, respectively, as of December 31, 2007.

"The Bank, as an agent of the Government, has managed The Economic Development Cooperation Fund and the Inter-Korean Cooperation Fund (the "Funds") since June 1987 and March 1991, respectively. The Funds are managed under separate accounts from the Bank's own accounts and not included in the accompanying non-consolidated financial statements. The related management commissions are received from the Government."

5. A true and correct copy of the Answer and Objections of Export Import Bank of Korea to Plaintiffs' Interrogatories in Attachment dated June 2, 2008 is attached to this Declaration as Exhibit B.

I declare under the penalty of perjury that foregoing is true and correct.

Dated: June 9, 2008

CHADBOURNE & PARKE LLP

By /s/ Hwan Kim

Hwan Kim

CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

# EXHIBIT A

www.koreaexim.go.kr

# YOUR PARTNER FOR GLOBAL BUSINESS

ANNUAL REPORT 2007











INTRODUCTION

01 Profile
02 Financial Highlights
04 Message from the Chairman & President
08 2007 at a Glance
10 Economic Situation & Outlook

12 REVIEW OF OPERATIONS

14 Bank Account Activities
24 Government Account Activities - EDCF
30 Government Account Activities - IKCF

34 SERVING THE COMMUNITY

36 Corporate Social Responsibility
38 Ethics Management

39 FINANCIAL REPORT

92 APPENDIX

92 Board of Directors
94 Financial Services
97 Organization
98 Domestic Branches
99 Overseas Network



[illegible] BANK OF [illegible] EXIMBANK) IS AN OFFICIAL EXPORT CREDIT AGENCY PROVIDING EXPORT CREDIT AND GUARANTEE PROGRAMS TO SUPPORT KOREAN ENTERPRISES IN OVERSEAS BUSINESS. SINCE ITS ESTABLISHMENT IN 1976, THE BANK HAS ACTIVELY SUPPORTED [illegible] EXPORT-LED ECONOMY AND FACILITATED ECONOMIC COOPERATION WITH FOREIGN COUNTRIES.

KOREA EXIMBANK'S PRIMARY SERVICES INCLUDE EXPORT LOANS, TRADE FINANCE, AND GUARANTEE PROGRAMS STRUCTURED TO MEET THE NEEDS OF CLIENTS IN A DIRECT EFFORT TO BOTH COMPLEMENT AND STRENGTHEN THE CLIENTS' COMPETITIVENESS IN GLOBAL MARKETS. THE BANK ALSO PROVIDES OVERSEAS INVESTMENT CREDIT, NATURAL RESOURCES DEVELOPMENT CREDIT, IMPORT CREDIT, AND INFORMATION SERVICES RELATED TO BUSINESS OPPORTUNITIES ABROAD.

FURTHERMORE, THE BANK IS RESPONSIBLE FOR THE OPERATION OF TWO GOVERNMENT FUNDS, THE ECONOMIC DEVELOPMENT COOPERATION FUND (EDCF), A KOREAN OFFICIAL DEVELOPMENT ASSISTANCE PROGRAM, AND THE INTER-KOREAN COOPERATION FUND (IKCF), AN ECONOMIC COOPERATION PROGRAM WITH NORTH KOREA.

THE BANK STRIVES TO BECOME "YOUR PARTNER FOR GLOBAL BUSINESS" AS REFLECTED IN ITS VISION BY CONTINUOUSLY FOSTERING INNOVATION AND DEVELOPMENT THROUGHOUT ITS OPERATIONS.



# NOTES TO NON-CONSOLIDATED **FINANCIAL STATEMENTS**

FOR THE YEARS ENDED DECEMBER 31, 2007 AND 2006

## 1. GENERAL:

The Export-Import Bank of Korea (the "Bank") was established in 1976 as a special financial institution under the Export-Import Bank of Korea Act (the "EXIM Bank Act") to engage in facilitating export and import transactions, overseas investments, and overseas resources development through the extension of loans and other financial facilities. The Bank has eleven domestic branches, four overseas subsidiaries and thirteen overseas offices as of December 31, 2007.

The Bank has ₩4,000,000 million of authorized capital and as of December 31, 2007, its paid-in capital is ₩3,308,755 million through several capital increases. The Bank is owned by the Government of the Republic of Korea (the "Government"), the Bank of Korea ("BOK") and Korea Development Bank with 60.15%, 35.21% and 4.64% shareholding, respectively, as of December 31, 2007.



The Bank, as an agent of the Government, has managed The Economic Development Cooperation Fund and the Inter-Korean Cooperation Fund (the "Funds") since June 1987 and March 1991, respectively. The Funds are managed under separate accounts from the Bank's own accounts and not included in the accompanying non-consolidated financial statements. The related management commissions are received from the Government.

## 2. SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES:

### BASIS OF NON-CONSOLIDATED FINANCIAL STATEMENT PRESENTATION

The Bank maintains its official accounting records in Korean Won and prepares statutory non-consolidated financial statements in the Korean language (Hangul) in conformity with the accounting principles and banking accounting standards generally accepted in the Republic of Korea. Certain accounting principles and banking accounting standards applied by the Bank that conform with financial accounting standards and accounting principles in the Republic of Korea may not conform with generally accepted accounting principles and banking accounting practices in other countries. Accordingly, these non-consolidated financial statements are intended for use by those who are informed about Korean accounting principles and practices. The accompanying financial statements have been condensed, restructured and translated into English (with certain expanded descriptions) from the Korean language non-consolidated financial statements. Certain information included in the Korean language financial statements, but not required for a fair presentation of the Bank's financial position, results of operations, changes in shareholders' equity or cash flows, is not presented in the accompanying financial statements.

The significant accounting policies followed by the Bank in preparing the accompanying financial statements are summarized below.

### INTEREST INCOME RECOGNITION

The Bank applies the accrual basis in recognizing interest income related to deposits, loans and securities, except for non-secured uncollectible receivables. Interest on loans, whose principal or interest is past due at the balance sheet date, is generally not accrued, with the exception of interest on certain loans secured by guarantee of governments or government agencies, or collateralized by bank deposits. When a loan is placed on non-accrual status, previously accrued interest is generally reversed and deducted from current interest income, and future interest income is recognized on cash basis in accordance with the accounting standards of the banking industry. As of December 31, 2007 and 2006, the accrued interest income not recognized in the accompanying financial statements based on the above criteria, amounted to ₩50,099 million and ₩16,373 million, respectively.

# EXHIBIT B

CO-901A
Rev. 7/90

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEBORAH D. PETERSON etc. et. al. vs ISLAMIC REPUBLIC OF IRAN

Plaintiff(s) Defendant(s)

CIVIL ACTION NO. 01 2094 and related case numbers (RCL)

WRIT OF ATTACHMENT ON JUDGMENT
OTHER THAN WAGES, SALARY AND COMMISSIONS

To EXPORT IMPORT BANK OF KOREA
1300 L Street NW, Suite 825, Washington DC 20005 Garnishee:
and all divisions, subdivisions, subsidiaries, affiliates and related entities

You are hereby notified that any money, property or credits other than wages, salary and commissions of the above named defendant(s), are seized by the Writ of Attachment, and you are required to hold it and not to pay or surrender it to the defendant(s) or to anyone else without an order from this court., and all agencies and **
The Judgement against the defendant was entered on Sept. 7, 2007 in the amount of See below* ($2,656,944,877.00) the costs amounting to $ ________ with interest at 4.27 % from 9/7/2007 less credits of $ -0-.

Within ten (10) days after this writ is served upon you, you are required to answer the interrogatories, UNDER PENALTY OF PERJURY, and to file in this Court the original and one copy of the answers, and to serve a copy, by mail or other means, upon the plaintiff(s) and upon the defendant(s). If you fail to do so, judgment may be entered against you for the entire amount of the plaintiff's claims with interest and costs.

Witness the Honorable Chief Judge of said Court, this 2nd day of April, 2008.

** and instrumentalities which are generally described on Exhibit "A" and which is attached hereto and incorporated herein for purposes of illustration only.

Nancy M. Mayer-Whittington, Clerk

By [signature]
Deputy Clerk

DAVID J. COOK, Esq. CSB: 060859
ADMITTED PRO HAC VICE

Attorney for Plaintiff
165 Fell Street, San Francisco, California 94102
P.O. Box 270, San Francisco, California 94104
Phone: (877) 989 4730; Fax: (866) 989 0491
Address & Telephone Number

*Two billion, six hundred and fifty fix million, nine hundred and fourty four thousand, eight hundred and seventy seven hundred and no cents.

RECEIVED 2008 APR 30 P 1:13

EXHIBIT B

INTERROGATORIES IN ATTACHMENT

NOTICE

As a garnishee, you are required by law to file answers to the following Interrogatories in Attachment1 within ten (10) days after service of the writ upon you [Title 16, Section 521 (a), D.C. Code 1981 ed.]. If you fail to answer the Interrogatories, judgment may be entered against you for the entire amount of the plaintiff's claim and costs [Title 16, Section 526(b), D.C. Code 1981 ed.].

The garnishee is required to file the original and one copy of the answers in this Court, and to serve a copy upon the plaintiff(s) and defendant(s).

If, within ten (10) days after service of the answers, the party at whose request the Attachment was issued does not contest the answers pursuant to Title 15, Section 522, D.C. Code (1981 ed.), the garnishee's obligations under the attachment shall be limited by the answers.

1. Were you at the time of the service of the writ of attachment, or have you been between the time of such service and the filing of your answers to this interrogatory indebted to the defendant(s), and, if so, how, and in what amount?

ANSWER

The Export Import Bank of Korea ("KEXIM") objects to this interrogatory on the grounds of sovereign immunity and lack of personal and subject matter jurisdiction. KEXIM further objects to the interrogatory on the ground that it can be interpreted as impermissibly asking for information relating to overseas branches, divisions, subdivisions, subsidiaries, affiliates and related entities and thus is overly burdensome and in violation of KEXIM's sovereign immunity and KEXIM's obligations under Korean law. Subject to and without waiving these objections, KEXIM states that it has none of the requested items at 1300 L Street NW, Suite 825, Washington, D.C. or anywhere else in the United States.

2. Had you at the time of the service of the writ of attachment, or have you had between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the defendant(s) in you possession or charge, and, if so, what?

ANSWER

KEXIM objects to this interrogatory on the grounds of sovereign immunity and lack of personal and subject matter jurisdiction. KEXIM further objects to the interrogatory on the ground that it can be interpreted as impermissibly asking for information relating to overseas branches, divisions, subdivisions, subsidiaries, affiliates and related entities and thus is overly burdensome and in violation of KEXIM's sovereign immunity and KEXIM's obligations under Korean law. Subject to and without waiving these objections, KEXIM states that it has none of the requested items at 1300 L Street NW, Suite 825, Washington, D.C. or anywhere else in the United States.

I declare under the penalties of perjury that the answers to the above interrogatories are, to the best of my knowledge and belief, true and correct as to every material matter.

Date: 06/01/2008

[signature]
Garnishee

**EXHIBIT "A" TO WRIT OF ATTACHMENT, ON JUDGMENT, OTHER THAN WAGES, SALARY AND COMMISSION.**

This attachment applies to credits, accounts, accounts receivable, rights to payment of money, general intangibles, deposits, deposit accounts, claim for payment of money, debts due, rights to draw down on any line of credit or banking relationship, rights to receive and demand payment from any loan or credit account, rights to demand and receive any advance of money, funds or credit in which the obligor (debtor or person owing the money) is the ***garnishee on this Writ of Attachment on Judgment (non wages),*** as listed on the front page of this Writ of Attachment, and the obligee (or creditor or person to whom the money is owed) is the Islamic Republic of Iran, or any of its ministries, divisions, subdivisions, agencies and/or instrumentalities or any one of the same, which include, but are not limited to, the following[1]:

The Ministry of Petroleum on Behalf of the Islamic Republic of Iran, Ministry of Oil on Behalf of the Islamic Republic of Iran, and The National Iranian Oil Company on Behalf of the Islamic Republic of Iran, and its branches, affiliates, subsidiaries, division and subdivisions:

1. National Iranian Oil Company

1. National Iranian Gas Export Company
   Website: www.nigec.ir
   Email: info@nigec.ir

2. National Iranian South Oil Company
   Website: www.nisoc.com
   Email: info@nisoc.com

3. National Iranian Offshore Oil Company
   Website: www.iooc.co.ir
   Email: webmaster@iooc.co.ir

---

[1] This writ of attachment on judgment (non wages) applies to all obligations owed directly or indirectly, by the garnishees to the Islamic Republic of Iran and its agencies and instrumentalities as listed herein.



May 23 08 01:20p The Export Import ...

4. National Iranian Central Oil Fields Co.
   Website: www.icofc.ir
   Email: info@icofc.ir

5. Khazar Exploration & Production Co.
   Tehran HQ.
   No.19 – 11th Alley - Vozara Ave. - Arjantin sq.
   Tel: +98-21-88722430, 3
   Fax: +98-21-88711386

6. Petroleum Engineering & Development Co.
   Website: www.pedec.ir
   Email: info@pedec.net

7. Pars Oil and Gas Company
   Website: www.pogc.org
   Email: info@pogc.ir

8. Pars Special Economic energy Zone Co.
   Website: www.pseez.com
   Email: info@pseez.com

9. National Iranian Oil Terminals Company
   Website: www.nioc-otc.com
   Email: info@nioc-otc.com

10. National Iranian Drilling Company
    Website: www.nidc.ir
    Email: webmaster@nidc.ir

11. North Drilling Company
    Website: www.northdrilling.com
    Email: info@northdrilling.com

12. PetroIran Development Company
    Website: petroiran.com
    Email: info@petroiran.com

13. Ahwaz Pipe Mills Company
    Website: www.apm-ir.com
    Email: tabibi@apm-ir.com

14. Petropars
    Website: www.petropars.com
    Email: webadmin@ppars.com

15. Fuel Consumption Optimization Co.
    Website: www.ifco.ir
    Email: info@ifco.ir

16. National Iranian Tanker Co.
    Website: www.nitc.co.ir
    Email: administrator@nitc.co.ir

17. Exploration Service Company (ESC)
    Website: www.oeoc.ir
    Email: info@oeoc.ir

18. Kala Naft London Ltd.
    Website: www.kalaltd.com
    Email: admin@kalaltd.com

19. Kala Naft Canada Ltd.
    Website: www.kalanaftcanada.com
    Email: info@kalanaftcanada.com

20. Arvandan Oil and Gas Company
    Website: www.arvandan.org
    Email: info@arvandan.org

21. National Iranian Gas Company
    Website: www.nigc.org
    Email: webmaster@nigc.org

22. National Iranian Petrochemical Company
    Website: www.nipc.net

May 23 08 01:20p

Email: webmaster@nipc.net

23. National Iranian Oil Refining and Distribution Co.
Website: www.niordc.ir
Email: info@niordc.ir

24. Agricultural Cooperative Bank of Iran
No. 129 Patrice Lumumba Street
Jalal-Al-Ahmad Expressway Tehran, Iran

The following banks and all branches, affiliates, subsidiaries, division and subdivisions:

25. Agricultural Development Bank of Iran
Farahzad Expressway
Tehran, Iran or any other branch

26. Bank Josiaiyi Keshahvarzi
Farahzad Expressway
Tehran, Iran or any other branch

27. Bank Taavon Keshavarzi Iran
P.O. Box 14155/6395
Tehran, Iran or any other branch

28. Bank Markazi Jomhouri Islami Iran
Ferdowsi Avenue
P O Box 11365-8551 Tehran, Iran or any other branch

29. The Central Bank of Iran
Ferdowsi Avenue
P O Box 11365-8551 Tehran, Iran or any other branch

30. Bank Maskan
Ferdowsi Street
Tehran, Iran or any other branch

31. Housing Bank Of Iran

Ferdowski Street
Tehran, Iran or any other branch

32. Bank Mellat
Park Shahr, Varzesh Avenue
P.O. Box 11365/5964 Tehran, Iran or any other branch

33. Bank Melli
P O Box 11365-171
Ferdowsi Avenue Tehran, Iran or any other branch

34. Bank Melli
333 New Tokyo Building
3-1 Marunouchi, 3-chrome, Chiyoda-ku, Tokyo Japan

35. Bank of Industry and Mine of Iran
Hafez Avenue
P O Box 11365/4978 Tehran, Iran or any other branch

36. Bank Sanat Va Madan
Hafez Avenue
P O Box 11365/4978 Tehran, Iran or any other branch

37. Bank Refah Kargaran
Moffetah No. 125
P O Box 15815 1866 Tehran, Iran or any other branch

38. Workers Welfare Bank of Iran
Moffetah No. 125
P O Box 15815 1866 Tehran, Iran or any other branch

39. Bank Saderat Iran
Bank Saderat Tower P O Box 15745-631 Somayeh Street Tehran, Iran or any other branch

40. Bank Sepah
Eman Khomeini Square
P O Box 11364 Tehran, Iran or any other branch

41. Bank Sepah Muenchener Strasse 49
P.O Box 10 03 47 W-6000 Frankfurt am Main1
Germany

42. Bank Sepah
5/7 Eastcheap
EC3M 1JT London, England

43. Bank Sepah
650 Fifth Avenue
New York, NY 10019

44. Bank Tejarat
130 Taleghani Avenue, Nejatoullahie
P O Box 11365-5416 Tehran, Iran or any other branch

45. Deutsch-Iranische Handelsbank AG
Depenau 2, W-2000 Hamburg 1
Germany or any other branch

46. Europaeisch-Iranische Handelsbank AG
Depenau 2, W-2000 Hamburg 1
Germany or any other branch

47. Deutsch-Iranische Handelsbank AG
23 Argentine Square, Beihaghi Bulvard or any other branch
P O Box 15815/1787 Tehran 15148, Iran

48. Housing Bank of Iran
Ferdowsi St
Tehran, Iran or any other branch

49. Bank Maskan
Ferdowsi St
Tehran, Iran or any other branch.

50. Iran Overseas Investment Bank Limited
120 Moorgate, London

EC2M 6TS, ngland or any other branch

51. Iran Overseas Investment Corporation Limited
120 Moorgate, London
EC2M 6TS, England or any other branch

52. Iran Overseas Investment Bank Limited
Improgetti, Via Germanico 24
00192 Rome, Italy

53. Iran Overseas Trading Company Limited
120 Moorgate, London
EC2M 6TS, England

54. Bank Keshavarzi
No. 129 Patrice Lumumba Street
Jalal-al-Ahmad Exp. Tehran, Iran or any other branch

55. Bank of Industry and Mine
No. 1655 vali-e-asr Avenue
(After Chamran Crossroads) Tehran, Iran or any other branch

56. Export Development Bank of Iran
No. 4, Gandi Avenue
Postal Code 1517479913 Tehran, Iran or any other branch

57. Bank Markazi Iomhouri Islami Iran
Ferdowsi Avenue
P O Box 11365-8551 Tehran, Iran

This list include any of the above entities, directly, or a conduit, or any subsidiaries, affiliates, divisions, subdivisions, branches, sub-branches, representative offices, ancand related entities and all intermediaries on their behalf.

Jay R. Henneberry (State Bar No. 135065)
jhenneberry@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 892-1000
Facsimile: (213) 622-9865

*Attorneys for Non-Party*
*The Export-Import Bank of Korea*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, et al.,

Defendants.

Case No. 3:08-mc-80030-JSW

**[PROPOSED] ORDER**

WHEREAS, this matter having come to be heard on non-party The Export-Import Bank of Korea's ("KEXIM's") opposition to plaintiffs' Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) (the "Motion"); and

WHEREAS, the Court finds that KEXIM: (a) is a "foreign state" as that term is defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a) (2006); and (b) enjoys sovereign immunity under the FSIA, 28 U.S.C. § 1604;



CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071 (213) 892-1000

IT IS HEREBY ORDERED that the Motion is DENIED with regard to KEXIM; and

IT IS FURTHER ORDERED that KEXIM, as an agency or instrumentality of a foreign sovereign, is exempt from the jurisdiction of this Court and shall not be required to participate in this matter.

SO ORDERED.

Dated: July ____, 2008

______________________________________
Hon. Bernard Zimmerman, U.S.M.J.

Jay R. Henneberry (State Bar No. 135065)
jhenneberry@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 892-1000
Facsimile: (213) 622-9865

*Attorneys for Non-Party*
*The Export-Import Bank of Korea*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendants. | Case No. 3:08-mc-80030-JSW<br><br>Hon. Jeffrey S. White<br>Hon. Bernard Zimmerman<br><br>**PROOF OF SERVICE**<br><br>Date: July 2, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom G |

# PROOF OF SERVICE

I am employed in the County of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 350 South Grand Avenue, Suite 3300, Los Angeles, California 90071-3406.

On **June 9, 2008,** I caused the true and correct copy(s) of :

**MEMORANDUM OF THE EXPORT-IMPORT BANK OF KOREA IN OPPOSITION TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.51(a) AND F.R.C.P. 69(a)**

**[PROPOSED] ORDER DENYING MOTION AND DECLARATION OF HWAN KIM FILED CONCURRENTLY HEREWITH**

to be served in the manner so indicated to the following individual(s) listed below:

**PLEASE SEE ATTACHED LIST**

☒ **BY MAIL TO ALL COUNSEL**:

☒ I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☒ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY ELECTRONIC MAIL**: Pursuant to the Court's e-filing procedures, counsel registered will receive a copy via electronic mail.

☐ **BY FACSIMILE**: I transmitted a true copy of said document via facsimile machine pursuant to Rule 2005. The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine.

☐ **BY OVERNIGHT DELIVERY (Federal Express)**: I deposited such envelope(s) at the appropriate location for collection and overnight delivery to the person(s) or office(s) named on the attached list.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **June 9, 2008**, at Los Angeles, California.

Romina Cabatbat
Type Name

Romina Cabatbat
Signature

**SERVICE LIST**

Peterson v. Islamic Republic of Iran, et al.
USDC Northern Dist. Case No.: 3:08-mc-80030-JSW

David J. Cook, Esq.
Cook Collection Attorneys
165 Fell Street
San Francisco, CA 94102
Email: cookdavidj@aol.com

**[BY ELECTRONIC MAIL]**

Thomas Fay, Esq.
601 Pennsylvania Avenue NW
South Building, Suite 900
Washington, D.C. 20004

**[BY MAIL]**

Steven Perles, Esq.
Perles Law Firm, P.C.
1146 19th Street, 5th Floor
Washington, D.C. 20036

**[BY MAIL]**

ISLAMIC REPUBLIC OF IRAN
Pasdaran Avenue
Golestan Yekom
Tehran, Iran
Attn: Responsible Officer

**[BY MAIL]**

ISLAMIC REPUBLIC OF IRAN
Khomeni Avenue
United Nations Street
Tehran, Iran
Attn: Responsible Officer

**[BY MAIL]**