Timothy T. Scott (SBN 126971)
tscott@sidley.com
Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Mark D. Hopson
mhopson@sidley.com
Griffith L. Green
ggreen@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Attorneys For The International
Bank for Reconstruction and Development

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.) et al., <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, et al. <br><br> Defendants. | Case No. 08-mc-80030-JSW <br> Hon. Jeffrey S. White <br> Hon. Bernard Zimmerman <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR ASSIGNMENT** <br><br> Date: July 2, 2008 <br> Time: 9:00 a.m. <br> Place: Courtroom G |

**MEMORANDUM IN OPPOSITION TO MOTION FOR ASSIGNMENT – CASE NO. 08-80030**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................................2

STATEMENT OF FACTS ............................................................................................................3

    The World Bank ................................................................................................................3

    Procedural History ............................................................................................................4

ARGUMENT .................................................................................................................................5

I.    The World Bank's Assets Are Immune From Execution And Thus Unassignable Under C.C.P. § 708.510. ................................................................................................5

    A.    The World Bank's Immunities Prohibit The Assignment of Its Assets ................6

        1.    The FSIA Bars Interference With World Bank Loans ...............................6

        2.    The IOIA Bars Interference With World Bank Loans ................................7

        3.    The Relief Plaintiffs Seek Is Barred By The World Banks' Articles of Agreement, As Incorporated Into Federal Law. .............................................8

    B.    C.C.P. § 708.510 Cannot Be Used To Assign Assets Immune From Execution ..........8

    C.    Plaintiffs Cannot Avoid The Clear Rule of Quaestor and Philippine Export. ..............10

II.    Plaintiffs Have Not Identified Assets Subject To C.C.P. § 708.510. ....................................12

CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Atkinson* v. *Inter-American Development Bank*,
  156 F.3d 1335 (D.C. Cir. 1998) ............................................................................................. *passim*

*Danielson* v. *United States,*
  416 F.2d 408 (9th Cir. 1969) ......................................................................................................12

*Garden City Boxing Club, Inc.* v. *Briano*,
  No. 06-1270, 2007 WL 4463264 (E.D. Cal. Dec. 17, 2007) ......................................................14

*Inversora Murten, S.A.* v. *Energoprojekt-Niskogradnja Co. Ltd.*,
  No. 07-7049, 2008 WL 441836 (D.C. Cir. Feb. 14, 2008) ............................................. *passim*

*Mendaro* v. *The World Bank*,
  717 F.2d 610 (D.C. Cir. 1983) ...............................................................................3, 7, 11, 12

*Peterson* v. *Islamic Republic of Iran*,
  No. 01-cv-02094-RCL (D.D.C.) ..................................................................................................1

*Philippine Export & Foreign Loan Guarantee Corp.* v. *Chuidian*,
  218 Cal. App. 3d 1058 (1990) ......................................................................................... *passim*

*Price* v. *Forrest*,
  173 U.S. 410 (1899) ....................................................................................................................12

*Quaestor Investments, Inc.* v. *The State of Chiapas*,
  No. CV-95-6723JGD, 1997 WL 34618203 (C.D. Cal. Sept. 2, 1997) ............................ *passim*

*Trans Commodities, Inc.* v. *Kazakhstan Trading House,* S.A., No. 96−ms-00316 (D.D.C.
  Feb. 20, 1997) ............................................................................................................................11

*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983 ......................................................................................................................7

### STATUTES

22 U.S.C. § 286h ................................................................................................................. 4, 8, 11

22 U.S.C. § 288a(b) ...................................................................................................... *passim*

28 U.S.C. § 1611(a) ...................................................................................................... *passim*

California Commercial Code Section 9102(42)(a) .......................................................................... 13

R.C.P. 69(a) ..................................................................................................................................... 1

Section 1610 .................................................................................................................................... 6

**OTHER AUTHORITIES**

11 Fed. Reg. 7713 (1946) ......................................................................................................... 3, 4, 7

Articles of Agreement of the International Bank for Reconstruction and Development, Dec. 27, 1945, 60 Stat. 1440, T.I.A.S. No. 1502, *as amended*, 16 U.S.T. 1942, T.I.A.S. No. 5929, art. VII, § 3 ("World Bank Articles")Bretton Woods Agreements Act of 1945, 22 U.S.C. § 286 *et seq* ............................................................................................................. *passim*

Exec. Order No. 9751 .............................................................................................................. 3, 4, 7

Foreign Sovereign Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976) ................................. 6

http://go.worldbank.org/F3SMXIS5K0 (last visited May 30, 2008) ............................................... 3

http://go.worldbank.org/M7ARDFNB60 (last visited June 9, 2008) ............................................. 4

*Restatement (Third) of the Foreign Relations Law of the United States* § 467(1) (1987) ............... 4

The International Bank for Reconstruction and Development ("World Bank" or "Bank")[1] respectfully submits this Memorandum of Points and Authorities in opposition to Plaintiffs' "Motion For Assignment Of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a) [Financial Institutions]" (the "Motion," Memorandum Of Points and Authorities in support thereof referred to herein as the "Memo").[2]  For the reasons set forth below, the Foreign Sovereign Immunities Act ("FSIA") protects the World Bank's funds from attachment and other judicial process that would interfere with the distribution of those funds.  *See* 28 U.S.C. § 1611(a). Moreover, under the International Organizations Immunities Act ("IOIA"), the World Bank itself has "immunity from suit and *every form of judicial process*." 22 U.S.C. § 288a(b) (emphasis added). As the D.C. Circuit held just four months ago, this immunity extends to immunity from garnishment and collection proceedings by third parties.  *See Inversora Murten, S.A.* v. *Energoprojekt-Niskogradnja Co. Ltd.*, No. 07-7049, 2008 WL 441836 (D.C. Cir. Feb. 14, 2008).  *Accord Atkinson* v. *Inter-American Development Bank*, 156 F.3d 1335, 1342 (D.C. Cir. 1998).  Plaintiffs' Motion for Assignment to draw down undisbursed development loan funds held by the World Bank should, accordingly, be denied.

As explained in the World Bank's pending motion to stay this proceeding (dkt. no. 37), the issue of the World Bank's immunity is already being litigated in the D.C. District Court. *See Peterson* v. *Islamic Republic of Iran*, No. 01-cv-02094-RCL (D.D.C.) ("D.D.C. proceeding"). Indeed, just last week, Plaintiffs filed a motion in the D.C. District Court seeking discovery from the World Bank.  *See* Pltfs' Mot. For Discovery (D.D.C. proceeding, dkt. no. 295).  This recent discovery request by Plaintiffs only reinforces the sensibility of staying this action until the D.C. District Court resolves the common questions regarding the World Bank's immunities.

---

[1] As used herein, the term "World Bank" refers solely to the IBRD.  The IBRD is part of the World Bank Group and is affiliated with — but legally and operationally distinct from — the International Finance Corporation ("IFC").

[2] By filing this motion, the World Bank reserves and does not waive any of its rights and defenses, including but not limited to lack of service.

# INTRODUCTION

This litigation involves a tremendous tragedy for which Plaintiffs were awarded a default judgment against the Defendant Islamic Republic of Iran and the Iranian Ministry of Information (collectively, "Iran"). The World Bank is not a party to this litigation and was not involved in the underlying events. As an international development organization, the World Bank's principal function is to loan money to its member countries, including Iran, to fund development, anti-poverty, and humanitarian projects.[3]

Plaintiffs have embarked on a multi-pronged (and multi-district) campaign to collect their judgment from the World Bank, and, as part of that process, are seeking to draw down the development loans that the Bank has made available to Iran. These collection efforts are, however, barred by the Foreign Sovereign Immunities Act ("FSIA"), the International Organization Immunities Act ("IOIA"), and the World Bank's Articles of Agreement. The FSIA flatly prohibits the use of judicial process to interfere with the distribution of developmental funds from the World Bank to a foreign country, 28 U.S.C. § 1611(a), the IOIA provides the World Bank with "immunity from suit and *every form of judicial process,*" 22 U.S.C. § 288a(b) (emphasis added), and the Bank's Articles declare that "the property and assets of the Bank" shall be immune from "all forms of seizure, attachment, or execution before the delivery of final judgment against the Bank," Articles of Agreement of the International Bank for Reconstruction and Development, Dec. 27, 1945, 60 Stat. 1440, T.I.A.S. No. 1502, *as amended*, 16 U.S.T. 1942, T.I.A.S. No. 5929, art. VII, § 3 ("World Bank Articles") (attached to Declaration of Ryan M. Sandrock ("Sandrock Declaration") as Exhibit A).

Plaintiffs cannot use C.C.P. § 708.510 to evade the World Bank's immunities because it is clear that "an assignment order [under C.C.P. § 708.510] may not be issued with respect to assets which are immune from execution." *Quaestor Investments, Inc.* v. *The State of Chiapas*, No. CV-95-6723JGD, 1997 WL 34618203, at *7 (C.D. Cal. Sept. 2, 1997); *Philippine Export & Foreign*

---

[3] The loans in question here were approved to fund earthquake relief, water, sanitation, health care, and nutrition projects. *See* Attachment to Letter from D. Cook to P. Miranda (dated May 12, 2008) (attached to Sandrock Declaration as Exhibit B).

*Loan Guarantee Corp.* v. *Chuidian*, 218 Cal. App. 3d 1058, 1099-1100 (1990).  Moreover, independent from these comprehensive and dispositive immunities, Plaintiffs' theory also fails because C.C.P. § 708.510 does not extend to "letters of credit" or to the vague "rights to payment" described in the Motion.

## STATEMENT OF FACTS

### The World Bank

The World Bank "is an international financial institution whose purposes include assisting the development of its member countries' territories, promoting and supplementing private foreign investment, and promoting long range balanced growth in international trade." *Mendaro* v. *The World Bank*, 717 F.2d 610, 611 (D.C. Cir. 1983).  The World Bank was created in 1944 under its Articles of Agreement, an international treaty initially joined by representatives of 44 countries, including the United States.  *See* World Bank Articles, Exhibit A to Sandrock Declaration.  The United States accepted these Articles and became a member of the Bank pursuant to the Bretton Woods Agreements Act of 1945, 22 U.S.C. § 286 *et seq*.[4]  The World Bank was subsequently designated an "international organization" by Executive Order, *see* Exec. Order No. 9751, 11 Fed. Reg. 7713 (1946), entitling it to the privileges and immunities provided by the International Organizations Immunities Act, 22 U.S.C. § 288a(b).  *See Mendaro*, 717 F.2d at 613 n. 26.

The World Bank's Articles confer on the Bank an international and intergovernmental status independent of any individual member country.  In order to protect the Bank from interference by any member — or that member's courts — its Articles provide, *inter alia,* that the Bank's property is immune from attachment or any other form of seizure, World Bank Articles, art. VII, §§ 3, 4, Exhibit A to Sandrock Declaration; that the "archives of the Bank shall be inviolable," *id*. § 5; that its property and assets are free from restrictions, regulations, or controls of any kind, *id*. § 6; that its official communications must be treated as official communications of a sovereign country, *id*. § 7; and that its officers and employees are immune from legal process for acts performed in their official capacity, unless the Bank waives that immunity, *id*. § 8.

---

[4] A total of 185 countries, including Iran, are currently members of the World Bank.  *See* The World Bank Group, About Us, http://go.worldbank.org/F3SMXIS5K0 (last visited May 30, 2008).

As explained in the Articles, the World Bank's immunities and privileges, which are established by international agreement, are intended "[t]o enable the Bank to fulfill the functions with which it is entrusted." *Id*. § 1. *Accord 1 Restatement (Third) of the Foreign Relations Law of the United States* § 467(1) (1987) ("Under international law, an international organization generally enjoys such privileges and immunities from the jurisdiction of a member state as are necessary for the fulfillment of the purposes of the organization, including immunity from legal process . . . ."). The World Bank's immunities under its Articles have been incorporated into the United States Code. *See* 22 U.S.C. § 286h ("[A]rticle VII, sections 2 to 9, both inclusive, of the Articles of Agreement of the [World] Bank, shall have full force and effect in the United States.").[5]

The World Bank is not — and never has been — a commercial bank. It neither accepts deposits from the public nor maintains deposit accounts for its member nations, including Iran. On the contrary, the World Bank is an international development bank. Its principal function is to provide loans to fund anti-poverty and development projects undertaken by its member countries. For example, in 2007, the World Bank provided $23.6 billion for 279 projects in developing countries worldwide. *See* The World Bank Group, About Us, at http://go.worldbank.org/M7ARDFNB60 (last visited June 9, 2008). These monies were used to fund literally tens of thousands of contracts for goods or services in support of the development projects in question.

**Procedural History**

In 2001, Plaintiffs filed suit against the Islamic Republic of Iran and the Iranian Ministry of Information (collectively, "Iran"), alleging that they had provided support for the 1983 bombing of the United States Marine Barracks in Beirut, Lebanon. After a trial, and consideration of damages issues by special masters, the D.C. District Court issued an order granting a default judgment against Defendants for $2,656,944,877. Plaintiffs now seek to collect this judgment from Iran.

---

[5] The Executive Order that recognized the World Bank as an international organization under the IOIA also expressly confirmed the Bank's immunities under its Articles of Agreement. *See* Exec. Order No. 9751, 11 Fed. Reg. 7713.

On March 11, 2008, Plaintiffs registered this judgment in this district and obtained a writ of execution. On May 1, 2008, Plaintiffs filed the Motion, which purportedly seeks to have funds that "may" be available to Iran through "a line of credit, undisbursed loan proceeds, loan proceeds and other financial accommodations in which Iran is entitled to draw down," (Memo, p. 2), as well as "deposits, deposit accounts, rights to receive payment of money, contingent rights, future rights, general intangibles, rights of any refund, rights to direct, transfer or dispose of any account, deposit account, rights to receive any checks, drafts or money orders, rights to transfer, use or control any account, regardless of the name," (Motion, p. 2), assigned to them. Because the World Bank does not maintain any deposit accounts or similar assets for Iran, as to the World Bank, the Motion appears to be directed only at development loans made available to Iran. As the procedural hook for the Motion, Plaintiffs rely on C.C.P. § 708.510, which they claim "permits the judgment creditor to reach receivable [sic] due now, or due in the future, receivables which might be contingent, or uncertain, or receivables in which performance might still be due." (Memo, p. 10).

Plaintiffs concede that the World Bank's immunity is central to resolution of this matter. In particular, they note that "[s]ome of the financial institutions, such as The World Bank, Japanese Bank for International Cooperation, Export Import Bank of Korea, Export Import Bank of India, International Finance Corporation, if not others, might well claim their own sovereign immunity." (Memo, p. 11). Plaintiffs assert, however, that the assignment mechanism may allow the Court to sidestep this issue — "[t]his court need not necessarily resolve the issue of sovereign immunity of the foreign and International Banks [including the World Bank], as Plaintiffs would stand in the shoes of Iran . . ." (Memo, p. 14). They are mistaken.

Because of the World Bank's immunities, federal courts lack jurisdiction to order the Bank to draw down Iran's loans and to use the money to pay Plaintiffs. As set forth below, Plaintiffs' Motion for Assignment should be denied, and the World Bank should be dismissed from these proceedings.

## ARGUMENT

### I. The World Bank's Assets Are Immune From Execution And Thus Unassignable Under C.C.P. § 708.510.

C.C.P. § 708.510 cannot be used to assign assets which are immune from execution.

*Quaestor,* 1997 WL 34618203, at *6; *Philippine Export*, 218 Cal. App. 3d at 1099-1100 (denying motion under C.C.P. § 708.510 as to assets immune from execution under the FSIA). Because the FSIA, the IOIA, and the World Bank's Articles prohibit the use of any form of judicial process that would interfere with the World Bank's assets (such as the development loans at issue), C.C.P. § 708.510 simply does not authorize the relief sought by Plaintiffs.

### A. The World Bank's Immunities Prohibit The Assignment of Its Assets.

#### 1. The FSIA Bars Interference With World Bank Loans.

Congress has specifically and unambiguously prohibited United States courts from issuing attachments, orders, or other forms of process that would interfere with the disbursement of funds from the World Bank to its member nations. Section 1611(a) of the FSIA provides as follows:

> Notwithstanding the provisions of section 1610 of this chapter [providing for limited exceptions to a foreign state's sovereign immunity], the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the [IOIA] shall not be subject to attachment or any other judicial process impeding the disbursement of funds to . . . a foreign state as a result of an action brought in the courts of the United States.

28 U.S.C. § 1611(a). Under § 1611(a), "a judgment creditor cannot execute upon funds held by international organizations for disbursement to the foreign state judgment debtor." *Atkinson* v. *Inter-American Development Bank*, 156 F.3d 1335, 1342 (D.C. Cir. 1998). "The purpose of this subsection is to permit international organizations . . . to carry out their functions from their offices located in the United States without hindrance by private claimants seeking to attach the payment of funds to a foreign state." *See* Foreign Sovereign Immunities Act of 1976, H.R. Rep. No. 94-1487 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6629.

Section 1611(a) applies in this case. The World Bank is a designated "international organization." *See* Exec. Order No. 9751, 11 Fed. Reg. 7713 (1946). The undisbursed loan funds in question are the "property" of the World Bank, not Iran. *See Inversora Murten S.A.* v. *Energoprojekt Holding Co.* No. 03-ms-00073, slip op. (D.D.C. Feb. 22, 2007), affirmed, *Inversora,* 2008 WL 441836, at *2 (funds related to "a loan made to a member nation" are "funds that belong to the World Bank"). And a court order assigning undisbursed loan proceeds to Plaintiffs for the

purposes of collecting on the default judgment is a form of "judicial process impeding the disbursement of funds to . . . a foreign state" that is prohibited by § 1611(a).

### 2. The IOIA Bars Interference With World Bank Loans.

In addition to specifically prohibiting interference with the World Bank's disbursement of funds through the FSIA, Congress also conferred on the Bank a broad immunity from the jurisdiction of United States courts — including immunity from garnishment and other collection proceedings. The IOIA provides in relevant part:

> International organizations, their property and their assets, wherever located, and by whomsoever held, *shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments*, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

22 U.S.C. § 288a(b) (emphasis added). By its plain terms, this provision grants designated international organizations — including the World Bank[6] — a broad immunity from "every form of judicial process." As the D.C. Circuit has held, this immunity is the same as was enjoyed by foreign governments in 1945, when the "immunity of foreign sovereigns was absolute." *Atkinson*, 156 F.3d at 1341; *see also id.* at 1340 (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983)). In particular, the court of appeals held that the IOIA did *not* incorporate the various exceptions to *foreign sovereign* immunities contained in the later-enacted FSIA. *See id.* at 1341-42.

In *Atkinson*, the D.C. Circuit squarely held that the IOIA prohibited the garnishment of the wages of an employee of an international organization, the Inter-American Development Bank ("IADB").[7] 156 F.3d at 1336. The Court held that "[t]he IOIA speaks in terms of 'immunity from suit and *every form of judicial process*,'" and that "the plain language" of this provision included wage garnishment proceedings. *Id.* at 1339.

Just four months ago, in a case involving the World Bank, the D.C. Circuit held that

---

[6] The World Bank was designated an "international organization" by Executive Order. *See* Exec. Order No. 9751, 11 Fed. Reg. 7713. *See also Mendaro*, 717 F.2d at 613 n. 26.

[7] The relevant language in the international agreement establishing the IADB is identical to that in the World Bank's Articles of Agreement. *See Atkinson*, 156 F.3d at 1337-38.

---

the IOIA likewise prohibits the "non-wage garnishment proceedings initiated by third-party judgment creditors of member nations' contractors." *Inversora*, 2008 WL 441836, at *2. *Inversora* involved an attempt by a plaintiff to collect on a default judgment against Energoprojekt Holding Company ("Energoprojekt") by attaching contracts awarded to Energoprojekt for projects purportedly financed by the World Bank. *Id.* at *1. Both the D.C. District Court and the D.C. Circuit denied the plaintiff's motion for a default judgment against the World Bank, holding that the "immunity conferred upon international organizations by the IOIA is absolute" and that the World Bank had done nothing to waive such immunity. *Id.* at *2.

The assignment order that Plaintiffs seek is merely another permutation of "judicial process" directed to the World Bank that is prohibited by the IOIA. The result here should therefore be the same as in *Atkinson* and *Inversora*.

### 3. The Relief Plaintiffs Seek Is Barred By The World Banks' Articles of Agreement, As Incorporated Into Federal Law.

The World Bank's Articles of Agreement provide an additional basis of immunity from assignment. These Articles declare in unequivocal terms that

> The property and assets of the Bank shall, wheresoever located and by whomsoever held, *be immune from all forms of seizure, attachment or execution* before the delivery of final judgment against the Bank.

World Bank Articles, art. VII, § 3 (emphasis added). The Articles, and the immunities provided thereby, are not only binding as a treaty provision, but have also been expressly incorporated into the United States Code. *See* 22 U.S.C. § 286h ("[A]rticle VII, sections 2 to 9, both inclusive, of the Articles of Agreement of the [World] Bank, shall have full force and effect in the United States."). The assignment Plaintiffs seek indisputably involves the "seizure, attachment or execution" of assets of the World Bank — indeed, that is its very purpose. Because there has been no judgment against the Bank — final or otherwise, Plaintiffs' Motion for Assignment is barred by the World Bank's Articles of Agreement.

### B. C.C.P. § 708.510 Cannot Be Used To Assign Assets Immune From Execution.

Because federal law — *i.e.*, the FSIA, the IOIA, and the World Bank's Articles —

prohibits the use of any form of judicial process that would interfere with the World Bank's assets, C.C.P. § 708.510 bars an assignment of World Bank loans to Plaintiffs. As made plain in the *Quaestor* case, an assignment order under C.C.P. § 708.510 *cannot* include assets immune from execution. In *Quaestor*, an investment company sought to use this provision to collect on a judgment from the Mexican State of Chiapas. In particular, the investment company filed an Assignment Motion in California state court, pursuant to C.C.P. § 708.510, seeking an order assigning to it any and all debts owed to Chiapas by a Mexican bank with a branch in California. *Quaestor,* 1997 WL 34618203, at *4. The court rejected this claim, holding that "an assignment order may not be issued with respect to assets which are *immune from execution*." *Id.* at *6 (emphasis added); *see also* Legis. Com. West's Ann. Cal. C.C.P. § 708.510 (Section § 708.510 does not reach "any property […] that is not already assignable."). Because Chiapas' assets were immune from collection under the FSIA, the Court therefore held that they could not be assigned under C.C.P. § 708.510. *Id.* at *6.

As support for its holding, the court cited *Philippine Export,* a case involving an attempt to collect on a judgment against Philippine Export & Foreign Loan Corp. ("Philguarantee"), a bank wholly owned by the government of the Philippines. *Philippine Export,* 218 Cal. App. 3d at 1099-1100. The trial court issued an order pursuant to C.C.P. § 708.510 assigning to plaintiffs Philguarantees' rights to receive certain monies. The appellate court reversed, holding that immune property, such as property of a foreign state located outside the United States and therefore protected by FSIA, could not be assigned. *Id.* at 1099. The court expressed particular concern that the "technical circumstance" that an order to assign debts under C.C.P. § 708.510 "is not itself a levy" could be used to evade the immunity provided by federal law. *Id.* More generally, the *Philippine Export* court came to the same conclusion as the *Quaestor* court: "the limits which generally exist upon the right to execute — most notably the exemptions of certain assets from execution" apply to an assignment proceeding. *Id.*

Here, because the undisbursed loan funds in question are immune from execution by virtue of federal law, Plaintiffs' attempted evasion of those immunities using California assignment law must be rejected.

### C. Plaintiffs Cannot Avoid The Clear Rule of *Quaestor and Philippine Export.*

Based on Plaintiffs' filings in this district and the D.C. District, it can be expected that Plaintiffs will make three responses to this straightforward application of the World Bank's immunity, none of which have any merit. First, they may contend that Iran's asserted lack of sovereign immunity demands a different result than *Philippine Export* and allows for assignment of the undisbursed loan proceeds. (Memo, p. 6 and 11, fn 3).[8] But such a claim fundamentally misconstrues the nature of the World Bank's immunities: the World Bank is asserting that *its* assets — including the undisbursed development loan funds at issue — are immune from execution, not that *Iran's* assets are immune from execution; it is thus irrelevant whether or not Iran has sovereign immunity.

Second, they may contend that the undisbursed loan funds are not the property of the World Bank (and not immune from execution) because Iran is allegedly entitled to "payment on demand" in the same way a customer of a commercial bank can claim funds it has deposited into a checking or savings account. (Memo, p. 3, "Monies due Iran from its various lending institutions would be subject to levy in the same manner that Iran would be entitled to payment upon demand"). Plaintiffs are seeking assignment of a *right to borrow*, not a right to payment. The World Bank is not a commercial bank. *See Mendaro*, 717 F.2d at 612. It does not accept or maintain deposits from its member nations. To the contrary, it makes *loans* to its members to fund anti-poverty and humanitarian projects undertaken by those members. When it does so, the Bank is a creditor and the borrower country a debtor.

Undisbursed loan funds are the property of the World Bank, not the borrower country. *See Inversora*, 2008 WL 441836, at *2 (funds related to "a loan made to a member nation" are "funds that belong to the World Bank"). Indeed, World Bank loan proceeds awaiting use in World Bank-funded projects remain the "property of [the World Bank]" under § 1611(a) even *after* those funds have been transferred to a member country. In *Trans Commodities, Inc.* v. *Kazakhstan*

---

[8] Plaintiffs attempt but fail (as set forth above) to distinguish *Philipine Export* in the Motion. Plaintiffs fail to cite *Quaestor* in the Motion at all.

*Trading House,* S.A., No. 96‑ms-00316, (D.D.C. Feb. 20, 1997) (attached to Sandrock Declaration as Exhibit C)*,* the court rejected an attempt to attach funds that had already been paid by the World Bank into a commercial bank account held by the Republic of Kazakhstan at Riggs Bank for use by Kazakhstan in development projects.  Applying § 1611(a), the court held "that funds held by the Republic as proceeds from loans and credits advanced by the World Bank to finance projects in Kazakhstan are immune from attachment." *Trans Commodities*, slip op. at 5 (Exh. C).  The court explained:  "To allow World Bank loan proceeds to become subject to attachment while awaiting disbursement to World Bank-funded projects is untenable and contrary to the purposes of section 1611(a) immunity." *Id*. at 4.  *A fortiori*, World Bank funds that have *not yet been transferred* to Iran (and still in the World Bank's possession) are "property of [the World Bank]" and, therefore, are immune from attachment and other forms of restraint under § 1611(a).

In addition, Iran does not have recourse to lay claim to the World Bank's funds.  The Bank's Articles of Agreement — which have been incorporated into the U.S. Code, *see* 22 U.S.C. § 286h — unequivocally forbid suits brought by member nations against the Bank. *See* World Bank Articles, art. VII, § 3 ("No actions shall . . . be brought by members or persons acting for or deriving claims from members.").  Plaintiffs, therefore, would acquire no enforceable rights by "step[ping] into Iran's shoes."

Third, Plaintiffs may contend that the World Bank has waived its immunities.  Plaintiffs suggest as much when they contend that "[the World Bank and other International Banks] only have partial immunity" which is "limited by various considerations" and may be waived in certain contexts.  (Memo, p. 13).  The only support Plaintiffs cite for this sweeping proposition, however, is *Mendaro v. The World Bank*, 717 F.2d 610, which considered whether the Bank had waived its immunity under its Articles of Agreement.[9]  However, the *Mendaro* Court expressly held

---

[9] Plaintiffs' citations on page 12 of their Motion are similarly unavailing.  Plaintiffs cite *Danielson* v. *United States,* 416 F.2d 408, 410 (9th Cir. 1969), and *Price* v. *Forrest*, 173 U.S. 410 (1899), as support for the claim that it "is well-tread territory" that courts "are willing to permit the assignment of monies due from an entity which is subject to sovereign immunity."  (Motion, p. 12).  These cases simply hold that the federal anti-assignment statute applicable at that time only prohibited voluntary assignments of claims against the United States.  Putting aside the question of what relevance the federal anti-assignment statute has here,  these cases are inapposite because, as set forth above, Iran does not have any claims against the World Bank to be assigned.  In addition, Plaintiffs' claim that courts regularly assign monies due from entities protected by sovereign immunity is flatly contradicted by *Quaestor* and *Philippine Export*.

that the Articles' "facially broad waiver of immunity . . . must be narrowly read in light of both national and international law governing the immunity of international organizations." *Mendaro*, 717 F.2d at 611. More specifically, the D.C. Circuit has held that the World Bank's Articles waive its immunity only "when an insistence on immunity would actually *prevent or hinder* the organization from conducting its activities." *Id.* at 617 (emphasis added). Under an unbroken line of precedents, not only should "the Bank's immunity . . . be construed as not waived unless the particular type of suit would further the Bank's objectives," *Atkinson*, 156 F.3d at 1338 (emphases omitted), but it is not waived unless the World Bank "would *have* to subject itself to [the] suit in order to achieve its chartered objectives." *Mendaro*, 717 F.2d at 615 (emphasis added).

Applying this stringent test, the D.C. Circuit has already decided *twice* that the World Bank has not waived its immunity from garnishment proceedings. *See Inversora*, 2008 WL 441836, at *2 ("Just as the World Bank's interests are not furthered by subjecting itself to wage garnishment proceedings, its interests are not advanced by subjecting itself to non-wage garnishment proceedings . . . .") (internal citation omitted); *Atkinson*, 156 F.3d at 1338-39 ("waiver of immunity from garnishment proceedings . . . provides no conceivable benefit"). Indeed, the World Bank would derive absolutely no benefit to its development mission by "giving a third party funds that belong to the World Bank." *Inversora*, 2008 WL 441836, at *2.

**II.    Plaintiffs Have Not Identified Assets Subject To C.C.P. § 708.510.**

As set forth above, C.C.P. § 708.510 does not allow Plaintiffs to reach the undisbursed development loan funds at issue because these funds are the World Bank's property and subject to the immunities provided by the FSIA, IOIA, and the World Bank's Articles. *Quaestor,* 1997 WL 34618203, at *6. Putting these arguments aside, and assuming for the sake of argument that the development loans could somehow be characterized as Iran's property, the Motion still fails because the loans described by Plaintiffs are not assignable assets under the terms of C.C.P. § 708.510. To the extent Plaintiffs seek to characterize these loans as a "letter of credit," (Memo, p. 2), their claim fails because C.C.P. § 708.510 does not extend to "letters of credit" or "letter of credit rights." To the extent Plaintiffs seek to sweep these loans into the vague "rights to payment" described in the Motion, their claim fails because the case law interpreting C.C.P. § 708.510 has

made clear that a judgment creditor must identify an assignable right with specificity.

First, the assignment statute does not apply to letters of credit. Plaintiffs claim that C.C.P. § 699.710 authorizes the collection of property of a judgment debtor including "general intangibles" as defined under C.C.P. § 680.210 (which incorporates the definition set forth in California Commercial Code Section 9102(42)(a)). (Memo, p. 2). However, the statutory definition of "general intangible" expressly excludes lines of credit:

> 'General intangible' means any personal property, including things in action, *other than* accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, ***letter-of-credit rights, letters of credit***, money, and oil, gas, or other minerals before extraction.

California Commercial Code Section 9102 (42)(a)) (emphasis added).

Second, C.C.P. § 708.510 does not extend to any of the other vague "rights of payment" described in the Motion. The Motion specifies an amazingly broad and indefinite set of assets it seeks to assign:

> all deposits, deposit accounts, rights to receive payment of money, contingent rights, future rights, general intangibles, rights of any refund, rights to direct, transfer or dispose of any account, deposit account, rights to receive any checks, drafts or money orders, rights to transfer, use or control any account, regardless of the name, (all hereinafter collectively "Accounts"), to and in favor of THE ISLAMIC REPUBLIC OF IRAN, and all of its agencies and instrumentalities (hereinafter collectively "Iran"), in which such accounts, and each of the same, are in the possession, control, dominion, custody, care, or held by the following financial institutions as listed on Exhibit "E" to the Declaration of David J. Cook.

(Motion, p. 1). Such catch-all requests for rights to assets and payments of any kind are insufficient under California law. *See Garden City Boxing Club, Inc. v. Briano*, No. 06-1270, 2007 WL 4463264, at *1 (E.D. Cal. Dec. 17, 2007) ("Plaintiff's request appears to be for a general assignment of all possible funds due to Defendant; he has failed to identify any specific sources of money to be assigned. Without more information, the court cannot consider the factors listed in C.C.P. § 708.510(c) to determine what kind of assignment order is warranted or permissible."); *Quaestor*, 1997 WL 34618203, at *7 ("The abstract 'right to payment,' in the absence of conjunction with some physical or at least specific asset located within the boundaries of the United States upon

which that right may be exercised, is insufficient standing alone to be amenable to assignment under C.C.P. § 708.510.").

## CONCLUSION

For all the reasons set forth above, this Court should deny the Plaintiffs' Motion For Assignment.

Dated: June 9, 2008                                         SIDLEY AUSTIN LLP


By: /s/ Ryan M. Sandrock

Attorney For The International Bank for Reconstruction and Development