DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ. (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br>Plaintiffs, <br><br>vs. <br><br>ISLAMIC REPUBLIC OF IRAN, et al., <br><br>Defendants. | CASE NO. 3:08-mc-80030-JSW (BZ) <br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE *AMICI CURIAE* ON BEHALF OF THE CALIFORNIA BANKERS ASSOCIATION, THE INSTITUTE OF INTERNATIONAL BANKERS, THE INTERNATIONAL BANKERS ASSOCIATION IN CALIFORNIA, THE CLEARING HOUSE ASSOCIATION L.L.C., AND THE ORGANIZATION FOR INTERNATIONAL INVESTMENT <br><br>Date: July 2, 2008 <br>Time: 10:00 a.m. <br>Courtroom: G <br>Judge: Bernard Zimmerman |

## I. INTRODUCTION.

Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al. ("Plaintiffs") have docketed this judgment in this court under 28 U.S.C. § 1963 on 3/11/08. The basis of relief, among others, is the good faith belief that assets are available for levy and execution within this District. These assets would include, but are not limited to, e.g., bank accounts, deposits, rights to payment of money, in the hands, under the control, or in the

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE *AMICI CURIAE* ON BEHALF OF THE CALIFORNIA BANKERS ASSOCIATION, ETC.
CASE NO. 3:08-mc-80030-JSW (BZ)                                                                                                                                                    1

possession, e.g., of various Japanese banks, such as Bank of Tokyo, Sumitomo-Mitsui Banking Corporation, and/or Mitsui Corporate Bank, among others, which may include Credit Suisse, or the like. This information is based upon a good faith investigation indicating that these banks may hold Iranian deposits, or have in their possession funds subject to levy and execution.

### A. BANKS HAVE NO STANDING TO APPEAR, WHETHER BY *AMICI CURIAE*, OR OTHERWISE.

In the instant proceeding, Plaintiffs have filed and served a notice of motion and motion for assignment of rights under C.C.P. § 708.510(a), the effect of which would be to permit an assignment of various rights to payment of money due Iran, to and in favor of Plaintiffs in which funds are held by various financial institutions. While the statute provides for an order compelling the judgment debtor to make the assignment to the judgment creditor, the practical effect is a court-ordered assignment, in which the judgment creditors are now deemed the obligees under the contract, and the financial institutions as the obligors. This is strictly an act of judicial power, ejecting the judgment debtor, and replacing it with the judgment creditor. Unlike the classic in rem proceeding, an assignment order compels the judgment debtor to assign to the judgment creditor the judgment debtor's assignable rights. The court in *PHILIPPINE EXPORT AND FOREIGN LOAN GUARANTEE CORPORATION v. Vicente B. CHUIDIAN, et al.*, 218 Cal.App.3d 1058, 267 Cal.Rptr. 457 (Cal.App.6 Dist. 1990), stated as follows:

> "The parties cite no case considering, in the context of international law principles, the issue whether an order to assign assets in a judgment debtor proceeding is an exercise of the court's personal jurisdiction over the debtor or is an execution upon the judgment. *Examined narrowly in a vacuum, the court's order under Code of Civil Procedure section 708.510 to assign debts to the judgment creditor is a simple exercise of power over the debtor, an injunction or command, presupposing personal jurisdiction.* It is not an action in rem, as a levy of execution of a judgment against a tangible asset. However, to examine the order thus narrowly is unrealistic because the order is authorized under a statutory scheme in aid of execution, and its sole purpose is to permit execution upon the debtor's property. For that reason, the limits which generally exist upon the right to execute--most notably the exemptions of certain assets from execution--apply in a judgment debtor proceeding such as this and prevent the court, for instance, from ordering the debtor to assign exempt property to the judgment creditor. (See legis. committee com., Assembly, 1982 Addition, to West's Ann.Code Civ.Proc. (1987 ed.) § 708.510: "This section does not make any property assignable that is not already assignable.... [p] Subdivisions (e) and (f) recognize limitations on the assignment order procedure imposed by exemption laws"; see also 30 Cal.Jur.3d, Enforcement

of Judgments, § 262, p. 286, stating a debtor may claim all exemptions in judgment debtor proceedings. citing § 708.120, subd. (d); see also Code Civ.Proc., § 278, p. 304.)" (Emphasis added) (p. 1098)

Typically, third parties have no standing under ***Kracht vs. Perrin, Gartland & Doyle***, 219 Cal.App.3d 1019, 268 Cal.Rptr. 637 (Cal.App.4 Dist. 1990), in which the court stated at footnote 1, as follows:

> "Code of Civil Procedure section 708.510 does not require that notice of the motion to cause an assignment be given to the obligor of the judgment debtor. The order of assignment does not affect the obligor's rights until notice of the order is received by the obligor. (Code Civ.Proc., § 708.540.) The fact that the choses in action were ordered assigned under Code of Civil Procedure section 708.510 does not preclude a challenge to whether the claims were assignable ab initio, because the Legislature specifically noted that section 708.510 "... does not make any property assignable that is not already assignable." (See Legis.Com.Comment, Assembly 1982 Addition, West's Ann.Code Civ.Proc., § 708.510.)"

Furthermore, service upon the obligors is not even required, as service is only required upon the judgment debtor pursuant to C.C.P. § 708.510(b), which provides as follows:

> "(b) The notice of the motion shall be served on the judgment debtor. Service shall be made personally or by mail."

Additionally, the obligors may or may not be the subject matter of the assignment, unless and until the judgment creditors seek to enforce those rights, if any. In many cases, C.C.P. § 708.510(a) does not even anticipate any type of "clash" by and between the judgment creditors and the banks. In fact the obligees remain unaffected unless and until service of the order C.C.P. § 708.540 as follows:

> "The rights of an obligor are not affected by an order assigning the right to payment until notice of the order is received by the obligor. For the purpose of this section, "obligor" means the person who is obligated to make payments to the judgment debtor or who may become obligated to make payments to the judgment debtor depending upon future developments."

Therefore any relief granted by the Plaintiffs would have no effect upon the relationship by and between the judgment debtor as obligee and the banks as obligors, unless and until the judgment creditors serve the same.

### B. THE PROPOSED BRIEF, AND MOVING PAPERS FAILS TO PROVIDE SUFFICIENT SPECIFICS TO DETERMINE WHAT RIGHTS POTENTIALLY SUBJECT TO AN ASSIGNMENT ARE THE SUBJECT MATTER OF THE ADJUDICATION.

The proposed *amici curiae* brief fails to bring into focus what specific rights would be adversely affected by the outcome of this hearing, such as, deposit accounts, certificates of deposit, safety deposit boxes, lines of credit, or the like. While the moving papers hits upon a few of these items, nonetheless, the court cannot meaningfully address issues raised by what appears to be nearly 1,000 banks, without some clarity as to the precision of what rights would be adversely affected. This issue becomes part and parcel of the doctrine of ripeness.

## II. ANY RELIEF BY THE "BANKS" BY WAY OF THE FILING OF AN *AMICI CURIAE* BRIEF IS PREMATURE.

The starting point is that an assignment motion seeks relief by way of compelling the judgment debtor to assign certain rights to the judgment creditor for purposes of enforcement of the judgment under C.C.P. § 708.510(a), which provides as follows:

> "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor, or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditional upon future developments, including but not limited to, the following types of payment:
>
> 1. Wages due from the federal government that are not subject to withholding under an earnings withholding order.
> 2. Rents.
> 3. Commissions.
> 4. Royalties.
> 5. Payments due from a patent or copyright.
> 6. Insurance policy loan value."

In summary, the totality of the assignment is to eject the judgment debtor as an obligee and replace the judgment debtor with the judgment creditor. The judgment creditor, however, may or may not proceed, and the rights of the obligee remain unaffected under C.C.P. § 708.530.

By the very nature of the assignment order, the judgment creditors reaches monies which are due in the future, conditional, and based on events which might not even occur. Potentially, Plaintiff might well be assigned rights which are never collectable, or only collectable in the future, or in event any contractual rights which are due the judgment debtor, in which such rights might be contingent or uncertain. The actual language of C.C.P. § 708.510 provides the court with detail list of obligations by their very nature which are typically contingent such as royalties,

payments due from a patent or copyright, insurance policy loan value, and commissions. Most importantly is that fact that Plaintiff can obtain an assignment as follows:

> "Wages due from the federal government that are not subject to withholding under an earnings withholding order."

The California Legislature clearly anticipated that an assignment order would be used an alternative method by which to seek assets which are not readily subject to levy and execution, such as wages due a federal employee, which at the time of the passage of the Enforcement of Judgment Law, were not subject to levy and execution through a typical wage garnishment. This extraordinary relief, even in the face of apparent sovereign immunity,

In summary, any participation by the banks, including any national or international banks, at this point is completely and wholly premature, in that the outcome or impact of an assignment order is based upon service upon a particular bank and based upon what the bank might or might not owe.

### III. COURT IS WITHOUT JURISDICTION TO ADJUDICATE A CONTROVERSY WHICH IS NOT RIPE.

The banks seeks an advisory opinion, in which the matters are not "ripe," which is specifically as intended under C.C.P. § 708.540 and under the case of *Kracht vs. Perrin, Gartland & Doyle, supra*. The battle, if any, by and between these Judgment Creditors and The banks may arise, might never arise, or might well arise in another context, when and if, and only if these judgment creditors seek to enforce those rights, potentially in another tribunal, which is precisely the outcome anticipated by C.C.P. §§ 708.510(a), 708.530 and 708.540. The claims of a jurisdictional defense (or any defense) are not ripe, and accordingly the court should decline any adjudication, which is consistent with the fact that participation by the obligors is not required under C.C.P. § 708.520(a). Clearly, the Legislature could have mandated service upon the obligors under C.C.P. § 708.510(b) and declined to do so.

Classically as stated, there is no subject matter jurisdiction to grant declaratory relief as to rights or liabilities that do not yet exist or are not yet certain to arise. See *Calderon vs. Ashmus*, 523 U.S. 740, 746-747, 118 S.Ct. 1694, 1698-1699 (1998). The court has no case or controversy

where action seeks declaratory relief as to the validity of a defense the defendant may or may not raise in subsequent litigation. The doctrine of ripeness prevents premature adjudication and is aimed at those cases that do not yet have a concrete impact upon the parties arising from a dispute in an analysis similar to an injury-in-fact inquiry under the standing doctrine. See *Thomas vs. Union Carbine Agricultural Product Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 3332 (1985) and *Exxon Corp. vs. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994). Federal courts have no power to render advisory opinions as to what the law ought to be for affecting a dispute that has not yet arisen. See *Aetna Life Ins. Co. of Hartford, Conn. vs. Haworth* (1937) 300 US 227, 240, 57 S.Ct. 461, 494; and see *Webster vs. Reproductive Health Services* (1989) 492 US 495, 500, 109 S.Ct. 3040, 3050.

Directly on point is *Calderon vs. Ashmus, supra*, in which the court stated as follows:

> "We think previous decisions of this Court bar the use of the Declaratory Judgment Act for this purpose. In *Coffman v. Breeze Corps.*, 323 U.S. 316 (1945), a patent owner brought suit seeking to have the Royalty Adjustment Act declared unconstitutional and to enjoin his licensee from paying accrued royalties to the government. The Court held that the action presented no case or controversy. The validity of the Act would properly arise only in a suit by the patent holder to recover the royalties, which could afford complete and adequate relief." (P. 746-747)

In *Exxon Corp. vs. Heinze, supra*, the court stated as follows:

> "... Whether a dispute is ripe depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149, 87 S.Ct. at 1515-16; Assinboine & Souix Tribes of the Fort Peck Indian Reservation v. Bd. of Oil & Gas, 792 F.2d 782, 789 (9th Cir.1986). A claim is "fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Schaible, 874 F.2d at 627.
>
> Here, Exxon's bias claims require further factual development. The parties have filed no pleadings and conducted only limited discovery on the remaining gas claims and counterclaims. Without any information on these claims' value or their potential impact, if any, on Permanent Fund dividends, we cannot weigh intelligently the potential bias of Alaska judges and jurors or determine whether their alleged interest has "sufficient substance to disqualify them, given the context in which this case arose." Gibson, 411 U.S. at 579, 93 S.Ct. at 1698." (P. 1404)

In an assignment setting, a judgment creditor does not have the mechanism by which to engage in meaningful discovery, such as discovery to determine the jurisdictional claims, or for that matter, any other meaningful vehicle by which to pierce the otherwise opaque declarations.

C.C.P. § 708.510 never anticipated, e.g., that a judgment creditor could, without more, conduct broad-based discovery against potential obligors, which would be a condition of relief.

The banks seeks a litigational and unsupported advantage in pre-adjudicating a jurisdictional defense, which is precisely the conduct condemned in *Calderon vs. Ashmus, supra*. at page 747 as follows:

> "We think previous decisions of this Court bar the use of the Declaratory Judgment Act for this purpose. In *Coffman v. Breeze Corps.* 323 U.S. 316 (1945), a patent owner brought suit seeking to have the Royalty Adjustment Act declared unconstitutional and to enjoin his licensee from paying accrued royalties to the government. The Court held that the action presented no case or controversy. *The validity of the Act would properly arise only in a suit by the patent holder to recover the royalties, which could afford complete and adequate relief. In such a suit, if the licensee were to assert compliance with the Act as a defense to an obligation to pay the amounts due, the patent holder's right of recovery would then depend on a determination of the Act's validity.* Id., at 322-323. The Court thus concluded that there was no justiciable question "unless and until [the patent owner] seeks recovery of the royalties, and then only if [the licensee] relies on the Act as a defense." Id., at 324. See also *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 245-246 (1952).
>
> *As in Coffman, respondent here seeks a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding.* Such a suit does not merely allow the resolution of a "case or controversy" in an alternative format, as in *Aetna Life Ins., supra,* but rather attempts to *gain a litigation advantage by obtaining an advance ruling on an affirmative defense,* see *Coffman, supra,* at 322-324; *Wycoff Co., supra,* at 245-246. The "case or controversy" actually at stake is the class members' claims in their individual habeas proceedings. Any judgment in this action thus would not resolve the entire case or controversy as to any one of them, but would merely determine a collateral legal issue governing certain aspects of their pending or future suits." (Emphasis added)

In *Coffman vs. Breeze Corps.* 323 U.S. 316 (1945) the Supreme Court made its clear that the courts should decline to pre-adjudicate an affirmative defense (i.e., validity of the act) to a potential action which has yet to be filed. The issue in *Coffman* was whether a licensee was properly paying royalties to the government in which and the patent holder sought a pre-adjudication of the licensee's obligation. The Supreme Court found the patent holder's suit as non-justiciable as follows:

> "So far as the present suit seeks a declaratory judgment or an injunction restraining payment of the royalties into the Treasury, it raises no justiciable issue. Appellant asserts in the present suit no right to recover the royalties. It asks only a determination that the Royalty Adjustment Act is unconstitutional, and, if so found,

that compliance with the Act be enjoined -- an issue which appellee by its answer declines to contest. If contested, the validity of the Act would be an issue which. so far as it could ever become material. would properly arise only in a suit to recover the royalties, where it could be appropriately decided." (P. 323)

This case is directly on point to this issue. The banks can readily see adjudication of entire panoply of jurisdictional defenses when and if the judgment creditors seek to enforce the assignment order and in which that proceeding will provide a full and fair tribunal to test each defense proffered by The banks. Otherwise. as here and in *Coffman*, the banks is seeking an advance adjudication of jurisdictional defenses when no controversy has been raised, nor anticipated to be raised by the statutory framework of California assignment order. Worse, without a statutory mandate required under C.C.P. § 708.510(b), the California Legislature made it clear that the assignment motion does not serve as the adjudication of non-parties.

In short, because this motion has not been granted, that the judgment creditors have not served the underlying obligors, that the obligors have not even been identified, that the nature of the relationship has not even been set forth with any specificity, any adjudication at this point would not only be premature, but incomplete. When and if, and only if, enforcement is sought, would a particular bank under a particular set of facts have any type of entitlement to assert an individual claim.

### IV. NO IMMUNITY FOR IRAN.

Missing in the analysis is that Iran lacks any immunity under the Foreign Sovereignty Immunities Act ("FSIA"). Accordingly, to the extent that Plaintiffs locate any assets in favor of Iran, Plaintiffs are entitled to freely levy and execute. The fact that these banks hold or may not hold assets serves as no deterrent. as the banks themselves are obligors, in that these would be assets (deposits or accounts) owed directly to Iran itself.

### V. TOO MANY PARTIES.

The totality of the proposed motion indicates an entire anagram of banks. in which some may or may not be located in the United States, some may or may not have branches, some might be local banks, and the like. This vast potpourri of banks leaves the court with a cluttered

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE *AMICI CURIAE* ON BEHALF OF THE CALIFORNIA BANKERS ASSOCIATION, ETC.
CASE NO. 3:08-mc-80030-JSW (BZ)                                                                                                    8

environment in determining exactly what the position is of each bank, and on what basis. Accordingly, in granting any relief, the court would be unable to essentially permit the adjudication, without determining what assets would be sought, and what their individual status would be.

Plaintiffs are facing apparently claims, defenses, and issues by what appears to be hundreds (or thousands) of banks on a multitude of issues which far reaching. Without Plaintiff knowing what rights and deposits might be due Iran, and what might or might be the subject of the assignment order, and the circumstances of enforcement, attempt to approach these large issues becomes an exercise policy and not dispute resolution.

## VI. LINES OF CREDIT.

Plaintiffs take the position that any lines of credit due and in favor of Iran would be subject to an assignment order under C.C.P. § 708.510. However, whether or not Plaintiffs seek relief against a line of credit, deposits, deposit accounts, funds held, e.g., as collateral for an unissued letter of credit, would be dependent upon Plaintiffs' right of enforcement under C.C.P. § 708.530 and C.C.P. § 708.540.

## VII. PROPOSED BRIEF MASQUERADES AS SUPER-LEGISLATION.

The proposed *amici curiae* brief serves as surrogate legislation, seeking to rewrite C.C.P. § 708.510, in which the financial institutions themselves would be effectively withdrawn from the reach.

The ultimate defense to this motion is that the interests of the banks who are responding are adequately set forth by a multitude of briefs and claims. Monies due from a bank are assignable. See *In re Alan BERNARD, Linda Bernard, Debtors*, 96 F.3d 1279 (9th Cir. 1996), in which the court stated as follows:

> "The Bernards did not own money gathering dust in their bank accounts. "As between the bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited." Chang v. Redding Bank of Commerce, 29 Cal.App.4th 673, 681, 35 Cal.Rptr.2d 64 (Cal.App.1994) (citation omitted); Crocker-Citizens Nat. Bank v. Control Metals Corp., 566 F.2d 631, 637 (9th Cir.1977) ("**It is a well-settled principle of California law that the relationship between a bank and its depositor is one of**

debtor and creditor. Therefore, when funds are deposited, title to those funds passes immediately to the bank.") (citations omitted); see also Barnhill v. Johnson, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance.").

Instead of owning money sitting in their accounts, the Bernards owned claims against their bank. When they withdrew from their accounts, they exchanged debt for money (which, more than incidentally, was more difficult for the Sheaffers to acquire). Thus, when the Bernards made their withdrawals they parted with property, satisfying the Code's definition of transfer. Because they parted with their claims against the bank to hinder the Sheaffers, the Bernards violated § 727(a)(2)(A), warranting denial of discharge." (Emphasis added) (P. 1283)

The *amici curiae* brief seeks to create super-legislation which would make a deposit account unassignable.

## VIII. CONCLUSION.

The effect of an assignment order is to replace a judgment debtor with a judgment creditor. Whatever the relationship may or may not be, is not only specific as to the individual bank, but specific as to whether or not the judgment creditor will seek to enforce those rights, and in what particular setting.

The generalized overall requests are wholly premature, and could not and would not be raises unless and until the judgment creditor seeks specific relief against a specific bank. This court otherwise would be without any type of jurisdiction to render what amounts to be an advisory opinion, when the facts are not before this court. This is specifically why the federal courts, in their unique position, are barred from issuing advisory opinions, the effect of which would be having far-reaching repercussions, particularly when the controversy is not ripe at all.

DATED: June 11, 2008                COOK COLLECTION ATTORNEYS

By:   /s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs DEBORAH D. PETERSON,
Personal Representatives of the Estate of James C. Knipple
(Dec.), et al.

F:\USERS\DJCNEW\petersonsf.opposamici

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE *AMICI CURIAE* ON BEHALF OF THE CALIFORNIA BANKERS ASSOCIATION, ETC.
CASE NO. 3:08-mc-80030-JSW (BZ)                                                                          10

# PROOF OF SERVICE

| | |
|---|---|
| HIS EXCELLENCY MAHMOUD AHMADINEJAD THE PRESIDENT<br>Palestine Avenue<br>Azerbaijan Intersection<br>Tehran, Islamic Republic of Iran<br>Fax: +98 21 6 649 5880 | WILLIAM L. STERN<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>Fax: (415) 268-7522 |
| ISLAMIC REPUBLIC OF IRAN<br>Pasadaran Avenue<br>Golestan Yekom<br>Teheran, Iran<br>ATTN: Responsible Officer | NANCY R. THOMAS<br>MORRISON & FOERSTER LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013-1024 |
| ISLAMIC REPUBLIC OF IRAN<br>Khomeini Avenue<br>United Nations Street<br>Teheran, Iran<br>ATTN: Responsible Officer | JAY R. HENNEBERRY<br>CHADBOURNE & PARKE LLP<br>350 South Grand Avenue, Suite 3300<br>Los Angeles, CA 90071<br>Fax: 213-622-9865 |
| TIMOTHY T. SCOTT<br>RYAN M. SANDROCK<br>SIDLEY AUSTIN LLP<br>555 California Street<br>San Francisco, CA 94104<br>Fax: (415) 772-7400 | MATTHEW PAUL LEWIS<br>WHITE & CASE LLP<br>633 West Fifth Street, Suite 1900<br>Los Angeles, CA 90071-2007<br>Fax: 213-452-2329 |
| MARK D. HOPSON<br>GRIFFITH L. GREEN<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>Fax: (202) 736-8711 | NOEL ANDREW LEIBNITZ<br>FARELLA BRAUN & MARTEL LLP<br>235 Montgomery Street, 17th Floor<br>San Francisco, CA 94104<br>Fax: 415-954-4480 |
| JERROLD ABELES<br>ARENT FOX LLP<br>555 W. Fifth Street, 48th Floor<br>Los Angeles, CA 90013 | MARK FREDRICK LAMBERT<br>WHITE & CASE LLP<br>3000 El Camino Real<br>Five Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306<br>Fax: 650/213-8158 |
| JAMES H. HULME<br>ARENT FOX LLP<br>1050 Connecticut Avenue NW<br>Washington, D.C. 20036 | |

I declare:

I am employed in the County of San Francisco, California. I am over the age of eighteen (18) years and not a party to the within cause. My business address is 165 Fell Street, San Francisco, CA 94102. On the date set forth below, I served the attached:

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE *AMICI CURIAE* ON BEHALF OF THE CALIFORNIA BANKERS ASSOCIATION, THE INSTITUTE OF INTERNATIONAL BANKERS, THE INTERNATIONAL BANKERS ASSOCIATION IN CALIFORNIA, THE CLEARING HOUSE ASSOCIATION L.L.C., AND THE ORGANIZATION FOR INTERNATIONAL INVESTMENT

on the above-named person(s) by:

__XXX__ (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the person(s) served above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2008.

                                         /s/ Karene Jen
                                              Karene Jen