1              UNITED STATES DISTRICT COURT

2            **NORTHERN DISTRICT OF CALIFORNIA**

3        **BEFORE THE HONORABLE BERNARD ZIMMERMAN, JUDGE**

4    **----------------------------)**
                                  )
5    **DEBORAH D. PETERSON,**        )
                                  )
6                  **Plaintiff,**   )
                                  )
7        **v.**                     )        No. C 08–80030
                                  )
8    **ISLAMIC REPUBLIC OF IRAN,**    )
     et al.,                       )
9                                  )
                  **Defendants.** )        **San Francisco, California**
10                                )        **Wednesday, May 14, 2008**
     ----------------------------)          (30 pages)

11

12

13                   **TRANSCRIPT OF PROCEEDINGS**

14   **APPEARANCES:**

15   **For Plaintiff:**        **Cook Collection Attorneys**
                             **333 Pine Street**
16                            **Suite 300**
                             **San Francisco, California 94104**
17                      **BY:  DAVID J. COOK**

18   **For Defendants:**        **< No Appearance >**

19

20

21

22

23

24

25

1   <u>Wednesday, May 14, 2008</u>

2                                                        (10:30 a.m.)

3           DEPUTY CLERK:  08-80030, Deborah Peterson versus

4   Islamic Republic of Iran.  Appearances, Counsel?

5           MR. COOK:  David Cook on behalf of Deborah D.

6   Peterson.

7           THE COURT:  Good morning.

8           MR. COOK:  Good morning.

9           THE COURT:  Once again, I issued a tentative ruling,

10  and as I understand it, you wanted to be heard.

11          MR. COOK:  Yes, sir.

12          THE COURT:  I can tell you in addition -- I had a lot

13  of other problems with your application in addition to the ones

14  that are stated in the tentative ruling.  In part, I really

15  couldn't understand exactly what it was that you were trying to

16  do.  For example, your arguments -- I'll just give you several

17  examples:  Some of your papers seem to think that this matter

18  is filed in the Central District.  Is that where the assets are

19  located?  You want an order from me that would allow you to

20  execute in the Central District?

21          MR. COOK:  Assets of Iran, of course, is a very

22  interesting issue.  The assets of Iran consists of in this

23  district all sorts of --

24          THE COURT:  What I'm trying to find out is this:  What

25  do you say, for example, on Page 3, for purposes of this Court,

1   paren, "The District Court for the Central District of

2   California, these assets are located in the United States."

3          MR. COOK:  And they're also located here, because

4   we've levied here upon the Bank of Tokyo.

5          THE COURT:  So there are assets that are located here?

6          MR. COOK:  Yes.

7          THE COURT:  Now, another thing that kind of confused

8   me is you keep referring me to Section 10 -- 1605(a), capital

9   A -- small (a)(1) and (g)(1) -- of Title 28 U.S. Code.  And I

10  looked at that and it didn't seem to have any applicability to

11  anything.  I think -- is the section that you're trying to

12  refer to, is it 1610, by any chance?

13         MR. COOK:  It could have been.

14         THE COURT:  Well, it's important.

15         MR. COOK:  Yes, it may have been.  The 1605(a) is what

16  is the enactment we got on January 28th when President Bush

17  signed the defense appropriation bill.

18         THE COURT:  On January 28th of this year.

19         MR. COOK:  Of this year.  The defense appropriation

20  bill, and the history to that extremely briefly is, as part,

21  when the Marines barracks bombing judgment was entered

22  September 7th by Judge Lamberth, Iran made it very clear they

23  will not pay.  Senator Lautenberg appealed the Foreign

24  Sovereignty Immunities Act as to six countries, including Iraq.

25  It went to the president on December 31st, 2007.  And to the

 1    surprise of everybody, he refused to sign the defense

 2    appropriation bill which would be -- the amount of money at

 3    issue would be billions of dollars for appropriation.

 4         The reason why he refused to sign is is that there

 5    were many Iraqi -- judgment creditors of Iraq.  And the fear is

 6    they would levy and execute upon funds held by United States

 7    banks for Iraqi -- you know, Iraqis.

 8         It was what it was; it's not our issue here.  And when

 9    it was finally enacted, Iran was not part -- well, it was not

10    in part one of the countries that would lose sovereign

11    immunity.  Iran, Sudan, Syria, Libya, for some portion of time,

12    and another country which just escapes me.  So that is what we

13    have at the time.

14         It may be part of 1610 when it was finally codified,

15    but the gist of the matter is that for purposes of levy and

16    execution, I'm no longer barred by the Foreign Sovereignty

17    Immunities Act.  Otherwise, I wouldn't be here.  I'd be dealing

18    with issues like blocked and nonblocked assets.

19         THE COURT:  I understand that, and I think you may

20    have provided some of that explanation in your papers.  I guess

21    the reason I'm asking this is when I first read what to me is

22    1610 -- and I guess it probably is important to make sure we're

23    on the same page.  1610 -- I don't think I have an A, a capital

24    A or anything, but I'm looking at 1610.  I pulled this off of

25    Westlaw.  And I pulled it off on April 29th.  All right?  It's

1   28 U.S. Code 1610.  1610(g), I suppose could be read as saying

2   that federal law now is supreme in dealing with attachments in

3   aid of execution upon judgments which are covered by 1610.  And

4   so I remember when I read this, I thought to myself, Well, does

5   this mean now that -- we're acting strictly under federal law,

6   but your papers don't read it that way.  Your papers are asking

7   me to issue an order under state law.

8          MR. COOK:  Actually --

9          THE COURT:  And that's where I think you and I have a

10   disagreement, because I don't really see how I can avoid the

11   plain meaning of the state statute.  You may be entitled to

12   your relief, but it has to be gotten from the court in which

13   the judgment is entered, and I'm not that court.

14          MR. COOK:  Well, actually, sort of reaching where your

15   Honor is, we had thought about that before kind of coming down

16   here, and our analysis somewhat differs from the Court's

17   analysis.  It is obvious that Judge Lamberth and the District

18   Court for the District of Columbia obviously entered on

19   September 7th this judgment.  We have gone out and --

20          THE COURT:  May I ask you a question about that?  I

21   know I've read his judgment.  He said he had trials.  Were the

22   trials opposed?

23          MR. COOK:  No, Iran did not -- I want to make it

24   absolutely clear:  Iran in this case and every other case that

25   I know of never participated in a trial.  Never participated.

| | |
|---|---|
| 1 | THE COURT:  Okay.  So in effect, he entered a default |
| 2 | judgment and then you had a hearing to prove up the damages, |
| 3 | and that resulted in this two billion whatever it is, this |
| 4 | judgment that's before me. |
| 5 | MR. COOK:  Yes.  And without being discourteous, |
| 6 | the -- in the trials -- the judge conducted actually two |
| 7 | trials.  In September was one.  And these trials -- and I |
| 8 | understand "trials" in a default setting, but these were |
| 9 | meaningful trials with all the normal trappings except nobody |
| 10 | was sitting at the defendant's table, so to speak, here. |
| 11 | THE COURT:  The only reason I ask is I'm wondering |
| 12 | whether in connection with any of these proceeds there's been |
| 13 | any resistance, is there an opposition that for example is |
| 14 | going to surface here at anytime?  I know that you filed a |
| 15 | bunch of related motions.  And I understand there's a |
| 16 | suggestion that the State Department may wish to be heard on at |
| 17 | least some of the motions.  But I guess one of the things that |
| 18 | I would be interested in is if the State Department has a view |
| 19 | of whether you can proceed or the Court has authority now, I |
| 20 | don't even have to worry about Rule -- well, not that I don't |
| 21 | have to worry about Rule 69.  Rule 69 states that I only have |
| 22 | to look -- that I look to state procedures, unless federal law |
| 23 | governs.  I'm paraphrasing. |
| 24 | I guess one question I had was whether the provision |
| 25 | that I know as 1610 is now -- and especially (g) is now federal |

1    law that governs such that I don't have to worry about the

2    intricacies of the state process?  That still raises a question

3    of whether Judge Lamberth is not really the right judge that

4    you want to do, and why you decide to come out to San

5    Francisco.  It's especially a trouble issue where most of the

6    property at issue seems to be in Washington, D.C., or at least

7    the banks you want to go after are in Washington, D.C., and I

8    don't want to use the coals to Newcastle analogy, but it would

9    seem to suggest that you're trying to avoid Judge Lambert's

10   ruling on some of these issues.

11            MR. COOK:  Can I take everything from the top here?

12   Let me take everything from the level top here.

13            THE COURT:  Sure.  Go right ahead.

14            MR. COOK:  As we have stated, whether or not it is

15   ruled by federal law or not, the mechanism of enforcement is

16   always relegated to state law.  Federal Rules of Civil

17   Procedure do not independently provide for the mechanism of

18   levy and execution, in standard supplemental process.  So we

19   would never find within the confines of the Federal Rule of

20   Civil Procedure what we call classic post judgment levy and

21   execution.  All the repeal of FSIA did was to make Iran and

22   Iran's assets vulnerable to levy and execution.

23            THE COURT:  I think (g) can be read more broadly than

24   that.

25            MR. COOK:  Well, the mechanism, which would be by --

1    under 69(a)(1), for example, is by writ of execution, or such

2    other supplemental process, which means I would be entitled to

3    enforcement of this judgment as to any Iranian assets with all

4    your standard post judgment process.  Otherwise, it would be a

5    right without a remedy.

6         THE COURT:  I agree with you that the mechanism, so to

7    speak to getting execution is still going to be the -- whatever

8    the state writ of execution is.  But it would seem to me that

9    this statute can be read to say, Here's what you can seize if

10   you get a state writ of execution:  You can seize the property

11   of a foreign state against which the judgment is entered under

12   Section 1605(a) -- that's why I think we're looking at

13   different statutes, because 1610 still talks about a judgment

14   entered under 1605(a).

15        And then it goes on to say:  And you can also seize

16   the property of an agency or instrumentality of such a state.

17   Even if it is a separate juridical entity.  I thought that

18   might be one way of reading it, but in any event, I'm not

19   looking to -- I'm not the one that's collecting the judgment.

20        What I have in front of me is a request under 699.510

21   of the California Code of Civil Procedure and, as I stated --

22   and I won't interrupt you, I know I've done it two or three

23   times -- that that -- that that application needs to go back to

24   the court in which the judgment was entered.

25        MR. COOK:  Let me address something else that your

1    Honor raised.  I have currently pending in front of Judge

2    Lamberth three separate motions for appointment of receiver of

3    Iranian assets here.  We have approximately 40 writs -- they

4    call it writs of attachment on judgment.  But they're glorified

5    garnishments pending in the district court at this time.  And

6    we have -- extremely extensive action.  Plus a whole slew of

7    subpoenas.  So I'm clearly happy to be in front of Judge

8    Lamberth here.  But the value of being here in California is I

9    do have a basis here under 28 USC 1963.  And once I can sort

10   of, you know, sink the flag down here, so to speak, you know --

11            THE COURT:  Which flag were you planning to sink?

12            MR. COOK:  Well, this one for this case, to to speak.

13            Once I can find a home here, one of the reasons -- and

14   we'll get to 680.135, just chatting about the peripheral

15   motions and in the interest of the State Department, is only

16   California has a -- what we call a coerced assignment statute,

17   which is 708.510.  And unlike a typical levy, which is usually

18   standard in rem process, where we have a debter, debter has a

19   bank account, the sheriff or the marshal serves the bank and

20   says, Any money you're holding, pay to the marshal and

21   ultimately to the judgment creditor.  Standard in rem process.

22   An assignment, however, is not an in rem process.  An

23   assignment under 708.510, what that does is that replaces the

24   judgment debtor with the judgment creditor.

25            THE COURT:  That's not the motion before me today.

1    That's the motion that's on for a couple of weeks from now.

2              MR. COOK:  That's correct.  But just to tell you --

3    the mechanism as you raised it, the reason why we're here is I

4    don't have that statute anywhere else in the United States.

5              THE COURT:  Well, okay, I'll deal with that case when

6    I have to.  The issue I have in front of me is this -- well, go

7    ahead.

8              MR. COOK:  I can explain it.

9              THE COURT:  I've already said what the issue is.

10             MR. COOK:  I clearly understand the issue here.  And

11   what we're asking the Court to do is to amend what we call the

12   local process, which is the writ of execution.  Giving credit

13   that I'm properly here for this discussion here, it's only this

14   clerk issue, downstairs, a writ of execution from this court.

15   If I went to Judge Lamberth and I said, In D.C., and subject to

16   D.C. law, I want you to have your clerk or some clerk issue a

17   writ of execution with additional names, Judge Lamberth would

18   say, My court, the D.C. court, is not issuing writs.  If you

19   don't like your writ, go to the Court issuing the writ.

20   Because -- just bear with me.

21             THE COURT:  The problem with that is this:  Let's

22   assume that you had gotten your judgment in San Diego but the

23   assets were located in San Francisco.

24             MR. COOK:  That's correct.

25             THE COURT:  The writ of execution you'd be trying to

1    get issued in San Francisco --

2              MR. COOK:  No.

3              THE COURT:  Even if the assets were located here.

4              MR. COOK:  That would be an incorrect statement.

5              THE COURT:  You'd be getting your writ out of

6    San Diego.

7              MR. COOK:  If I'm in state court, state court, I would

8    be having from the state court a writ of execution issued out

9    of that court that says to the sheriff of the county of "X" --

10   San Diego State Court would say to the sheriff of the County of

11   San Francisco, everything in state court would be issued out of

12   the originating court.

13             THE COURT:  Oh.

14             MR. COOK:  That's correct.  I would not take my

15   San Diego state judgment and in some way magically docket it in

16   the San Francisco state Court.  It wouldn't be done.  We get

17   writs issued in all 58 -- not all 58, but multiple counties

18   morning, noon and night.  So I would never do that.

19             THE COURT:  So the problem you're having here is there

20   is no California court -- you haven't made this application to

21   Judge Lamberth.  In other words, this isn't a situation where

22   Judge Lamberth said, This is all interesting, but I'm in D.C.

23   and the assets are in California, and you really need to bring

24   this before a California judge.

25             MR. COOK:  If I went to Judge Lamberth and said, I

found this $2.7 billion bank account and it's in the name of

the National Iranian Oil Company sitting at Bank of Tokyo at

450 California Street, San Francisco, and assuming I came with

magic documents, he'd say, Well, there's really nothing I can

do.  Why don't you, Mr. Cook, go docket it in the Northern

District and go get that writ issued, and if you don't like the

writ, go see Judge Zimmerman and he'll fix this problem for

you.

THE COURT:  Let me ask you a couple of more questions.

I mean, one of the things that struck me as odd, for example,

if I accept -- there are a number of things I didn't want to

put in the -- a number of other problems with your application,

one of which is just a simple proof issue.  I have very little

that's been authenticated properly.  You're asking me to spend

an awful lot of time accepting information which is on

websites.  I know of no law that says that websites are sort of

an exception to the hearsay rule or that I can accept them as

true.  Some of your websites are written in either Farsi or

Arabic, and the mere fact that I can't tell which would suggest

that I can read neither.

MR. COOK:  That makes two of us.

THE COURT:  So I'm having a lot of difficulty even

accepting some of the things you've said, just as a matter of

basic proof.  You know, I'm not even being told, for example,

that I have true and correct copies of things in front of me.

1   It's just, Here's a document that came off of a website.

2            Now, let's rise above that.  If I accept your proof,

3   you've known -- everyone's known since 1951 that the National

4   Iranian Oil Corporation is an arm of the government of Iran.

5   So I guess the first thing that occurred to me is, Okay,

6   perhaps you didn't want to name them in the lawsuit because

7   they were not the party who had been involved in the nefarious

8   deeds, but would it not have been appropriate to, when the

9   judgment was issued, to have asked Judge Lamberth to include as

10  judgment debtors all these various entities which you knew were

11  instrumentalities of the government of Iran, or were you

12  somehow blocked by the Sovereign Immunities Act from doing that

13  at that time?

14          MR. COOK:  I'm going to give you the following

15  response:  The events occurred in 1983.  The evidence at the

16  trial summarizing it showed -- names Hezbollah as an agency and

17  instrumentality of Iran, basically financed, led these bombers

18  to blow up the Marines barracks.  That's in the judgment here.

19          As to the other assets of Iran that ultimately would

20  not have been relevant by Judge Lamberth, obviously many

21  sovereign countries, including the United States, clearly do

22  business through lots of agencies and instrumentalities,

23  including wholly-owned government entities.  That's the way all

24  governments work.

25          THE COURT:  But isn't that precisely my point?  Trying

1    to collect a judgment against a governmental entity is not

2    going to be easy to do unless you have the ability to collect

3    it against the enemies for which it works, and you knew who

4    those enemies were, at least some of them?

5        MR. COOK:  I would say that in any government, none of

6    that would be necessarily a secret.  But it would not

7    necessarily be relevant in Judge Lamberth's analysis.  All he

8    was seeking to do, or all the plaintiffs were doing, is that

9    the Islamic Republic of Iran, is a government.

10       As to the government agencies and instrumentalities,

11   those would be relevant in later supplemental proceedings to

12   seek what assets there are or are not.

13       THE COURT:  Wouldn't it still be more economical,

14   efficient, consistent and what-have-you to have one judge

15   decide the issues of who is an instrumentality and who is an

16   agency and against whom shall the judgment run, than in effect

17   to have it done on a piecemeal basis?

18       MR. COOK:  Well, the answer is that would be depending

19   upon what asset and in which way the judgment creditor was

20   attempting to seize assets and what assets, at the time.  I

21   mean, we could not have necessarily a whole, you know, "What is

22   Iran?" trial.  That would be ultimately an advisory opinion and

23   a very long trial.  But we would just take asset by asset by

24   asset and say what is or what isn't it, and for what specific

25   levy and execution here.

1          We do know that the National Iranian Oil Company is

2     part of the Ministry of Petroleum and is responsible, given

3     today's values, of about $350 million of crude oil on a daily

4     basis.

5          THE COURT:  One of the related-proof problems that I

6     have is you spent a lot of time when it comes to the National

7     Iranian Oil Company citing me findings of this tribunal that

8     existed in the early to mid-80's, the Iranian Claims Tribunal.

9     I have no idea to what degree that is binding on me, whether

10    it's persuasive, whether I could take judicial notice of it.

11    My understanding, it was some sort of a private, some sort of

12    an arbitral body?  I know it was created pursuant to some

13    legislation.

14         MR. COOK:  Well, actually it was the -- in November of

15    1979, after a huge debacle with the Shah, the Iranian students

16    seized 52 hostages and held them for 440 days which, as we

17    know, effectively politically toppled President Carter.

18         On January 19th, 1981, as part of the deal to free the

19    hostages, restore Iran's financial condition and otherwise

20    attempt to ameliorate the rupture between Iran and the United

21    States, the parties entered into the Algiers accord which binds

22    the United States and says, All disputes by and between these

23    two governments and various groups are to be adjudicated by

24    final binding arbitration called the Iran/U.S. Claims Tribunal,

25    of which the accord provides that any ruling or adjudication

1    would be enforceable in any court, in any -- you know, any

2    court, so to speak.  We haven't gotten that far yet.

3          The United States and Iran have been busy litigating

4    since approximately the early 80's in rendering various -- and

5    Iran, by the way, has obtained various orders and adjudications

6    against the United States.

7          Now, Iran didn't want to be -- the heck out of its

8    suit in the United States, and part of the U.S.'s deals is to

9    terminate all pending U.S. litigation.  So all of the U.S. and

10   aggrieved parties have filed their own independent actions in

11   the Iran/U.S. Claims Tribunal.  It is a claims tribunal.  There

12   are -- reported --

13         THE COURT:  Let's assume a court in Nevada decides a

14   fact.  My understanding of the law is that that's not binding

15   on me unless you go by way of res judicata or collateral

16   estoppel.  Otherwise, that same fact has to be proved in this

17   court.  Just because the Iranian Tribunal concluded for

18   purposes of its statute and the issues in front of it that in

19   1985, say, the National Iranian Oil Company was going to be

20   deemed to be an instrumentality of the State of Iran, I don't

21   believe that that finding is binding on me.  I think that it

22   might be -- you might get there through res judicata or

23   collateral estoppel -- am I wrong about that?

24         MR. COOK:  Actually, I believe it would not -- it

25   would not be res judicata.  It would be collateral estoppel,

1    and since it is an adjudicatory entity with jurisdiction over

2    the parties, then it would be collateral estoppel on those

3    narrow issues.

4              THE COURT:  Well, there are a lot of assumptions being

5    made about what you have proven about these entities.  And the

6    concern I have is that if I start issuing writs and -- on

7    what's a very casual record, I could be creating a lot of

8    mischief because I assume that you're going to be starting to

9    pursue assets.

10             MR. COOK:  Just so you know, we are commencing the

11   process here.  We do not need a court order to have a writ

12   issued on a docketed judgment here.

13             THE COURT:  And as I say, your strongest case was with

14   respect to the oil company.  Then, as I understand it, you want

15   me to also declare that for example, I don't know, the Arvandan

16   Oil and Gas Company is an instrumentality of the State of Iran?

17             MR. COOK:  Yes, because those are subsidiaries.

18             THE COURT:  How do I know that?

19             MR. COOK:  It's on the list.

20             THE COURT:  It's a website you cite me to, or it's in

21   Farsi or Arabic.

22             MR. COOK:  No, I think the information we gave you,

23   which was everything's which was available to us, showed a

24   complete list on their website.

25             THE COURT:  On whose website?

1          MR. COOK:  I mean, it's their website.

2          THE COURT:  Again, unless you have some authority -- I

3    have -- this comes up a lot now.  People are acting on the

4    assumption that if something appears on a website, it's true.

5    And my understanding of the law is that the law hasn't gotten

6    there yet.  It's kind of interesting.  We're thinking of having

7    a topic at our next Court retreat on the degree to which we can

8    rely on the websites because people are just assuming that

9    anything they see on there is true.

10          MR. COOK:  Under no set of circumstances would -- what

11    one puts on the web is just a human being who has some computer

12    skills and can put up there.  As to this particular defendant

13    here, and this particular website, we believe it would be

14    admissible because it's a statement of a party.  This isn't

15    so-and-so third party providing this information.  This is Iran

16    providing this information.

17          THE COURT:  Let's take that one as an example.  Show

18    me where is the proof that that particular company, the

19    Arvandan Oil and Gas Company, is an instrumentality of the

20    State of Iran.

21          Another problem I had with your papers is that you had

22    many references like, See Exhibit A, Page 12, and I went to

23    Exhibit A, Page 12 and I could not find what you were talking

24    about.  And part of the problem is I now have so many of these

25    documents in front of me -- there's an original writ, there's

1    an amended application, and so on -- it's very difficult for me

2    to go back and review another document to see whether anything

3    has changed between your original application and your amended

4    application, so I have been largely working with the documents

5    I started to work with, which was your original application.

6    But I couldn't find anything about Arvandan other than a

7    website address.  I won't tell you that I read each word that's

8    in here, these are quite thick.  But I certainly tried to go to

9    where you were directing me.  Unless I just didn't understand.

10         MR. COOK:  Hold on.  We should have given you here the

11   website for the National Iranian Oil Company here, the

12   petrochemical company, the National Oil Refinishing and

13   Distribution Company here, Iranian Gas Company here.

14         THE COURT:  You've given me a lot of websites.  Some

15   of them I can make no sense out of because I can't read them.

16   One I went into is under construction, and so on.

17         But where would I -- let's assume I were to try to

18   figure out whether -- you've submitted enough evidence that the

19   Arvandan Oil Company is an entity of the government of Iran.

20   Where would I find that evidence?

21         MR. COOK:  I'd have to go through this voluminous

22   material.  The answer to that would be on the Ministry of

23   Petroleum website, which is also the National Iranian Oil

24   Company website.  If you click it open, you'll see that you can

25   translate it into English.  It has English there.  I don't know

1    whether you saw that.

2              THE COURT:  Ministry of Petroleum website?

3              MR. COOK:  It's called Ministry of Petroleum.

4              THE COURT:  Is that a website that you have cited to

5    me?  This is not the National Iranian Oil Company.

6              MR. COOK:  They're one and the same.  If you type up

7    NIOC, you will immediately get their website.  When you first

8    see it, it's in Farsi, not Arabic, and then in the middle of

9    the page you'll see English, and that will get you to English.

10   Otherwise, I couldn't have done this.

11             THE COURT:  So what is the proof?  You established,

12   you've established that there is a website.  So let's see.

13   First I have to accept your word that this is the -- that this

14   is a website that is run by the Ministry of Petroleum.

15             MR. COOK:  Yes, sir.

16             THE COURT:  I have no proof have that.  No one has

17   even said that to me.

18             Secondly, I have to assume that everything on that

19   website is true, which I have a feeling there are going to be

20   some things on that website you're going to tell me are not

21   true.  Supposing that website had a statement on there that

22   said, you know, We are in no way responsible for anything that

23   happened to Peterson, et al.?  Would you want me to accept that

24   as true because it's on their website?

25             MR. COOK:  Clearly, we would not want you to accept

1    that.

2          THE COURT:  Part of the problem I have when I'm being

3    asked to assume that everything on the website is true -- and

4    especially when I don't have any information about how that

5    website is generated, who maintains it and so on and so forth.

6          MR. COOK:  I certainly understand the dilemma.  But

7    Iran is not an entity readily subject to deposition, as one can

8    imagine.

9          THE COURT:  I understand that.  I guess I was

10   wondering -- well, for example, this is why I come back to the

11   State Department.  Is the State Department, for example, either

12   willing or prepared to make a statement that the, you know, the

13   State -- as far as the State Department is concerned, the

14   National Iranian Oil Company is an arm of the government of

15   Iran?  That these are its subsidiaries and so on and so forth?

16         MR. COOK:  We've had a lot of dealings with the

17   Department of Justice here.  And one of our Central District

18   cases, they have indicated in another notion dealing with

19   the -- a companion case called Greenbaum which is here, and

20   also in front of Magistrate Judge Chen, is they will be filing

21   a statement of interest.  The government does have the right to

22   file a statement of interest and may or may not file a

23   statement of interest.  I was in touch with them as of last

24   week on the issue of subpoenas.

25         THE COURT:  Well, these are just -- so it sounds as

```
1    though you have made applications like this in other

2    jurisdictions.

3              MR. COOK:  I've made a similar application here in the

4    Central District of California.

5              THE COURT:  And was it granted?

6              MR. COOK:  It's still pending.

7              THE COURT:  What judge has that one?

8              MR. COOK:  Judge Feess, F-e-e-s-s.  And that's

9    Magistrate Judge Siegel.

10             THE COURT:  I don't think I know Judge Siegel.

11             Well, I think you have some idea of why I've been

12   struggling with this case.  As I say, the problems exist on a

13   number of levels, but the one I had I thought might be

14   dispositive would be -- and again, so now I'm sitting here and

15   what you're telling me is by not going back to Judge Lamberth

16   and having him do something, judges all across the country --

17   you've now got two -- are going to try to struggle to figure

18   out whether these various entities are subsidiaries and so on,

19   you may wind up getting inconsistent rules unless you can find

20   somebody who can read Farsi or Arabic who may rule differently

21   than someone who can't.

22             MR. COOK:  I'm not sure I would quite go that far, but

23   the answer is I have this pending in the Southern District of

24   Texas, Northern District of Illinois, here, Southern District

25   of California, and we potentially would crank up in the
```

1    District of Oklahoma.

2              THE COURT:  Interesting.

3              MR. COOK:  That's the nature of this case.

4              THE COURT:  And I suppose, perhaps since we're all --

5    I keep coming back to the statute.  When I read that statute,

6    it brought to me that all they have to do, they have to get a

7    writ of execution and then simply under that statute instruct

8    the marshal to execute against whatever entity you want to

9    execute against.

10             MR. COOK:  Let me say this much here:  I understand

11   there are people behind me on this calendar.  There's been an

12   embargo between the United States and Iran for the last 20

13   years, an embargo enforceable by criminal penalties, so the

14   answer is there's very little business, per se, in the United

15   States, and very few assets because, just so the Court knows,

16   and when President Reagan came to office, President Reagan made

17   a number of executive edicts, essentially freed a number of the

18   Iranian funds which were frozen.

19             So the answer is if I have the United States Marshal,

20   which I do, by the way, for the District of Columbia out

21   executing, nonetheless there has to be a method for executing

22   and an asset to seize, whether it's a general tangible, a bank

23   account, a piece of property, whatever it would be.  So all the

24   change in the law did was basically unshield Iranian assets

25   from standard stock levy and execution -- and depending upon

1    how we docket and in what tribunal.

2          THE COURT:  It seemed to me that it did more.  I would

3    agree with you if they had stopped, but when they go ahead and

4    they say that you can also seize property of an agency or

5    instrumentality of such a state including property that is

6    separate juridical entity or is an interest held directly or

7    indirectly in a separate juridical entity, and that that can be

8    seized in aid of execution, it seems to me that they're going a

9    little bit further.

10          You're going to find some states, for example, in

11   which you might not be able to seize properties of agencies and

12   instrumentalities and so on under state law, but I see the

13   federal law here sort of overriding.  I say that -- it hasn't

14   been briefed to me.  I'm just reading the statute.  I don't

15   know what the legislative history was.

16          MR. COOK:  Let me state just again briefly:  The

17   background to that was Bancec, and that is short for a series

18   of cases brought by the -- what we call the Cuban shoot-down

19   victims.  As the Court may recall, a number of American

20   civilians flew -- essentially, a civilian airplane was shot

21   down by the Cuban Air Force for no reason at all, and led to

22   some very large dollar judgments.  What they found out is that

23   there were many Cuban-Americans, of course, living in Miami who

24   had free access to pick up the phone and call the good people

25   in Cuba.  American phone companies owed various sums of money

1    to the National Telephone Company of Cuba which was owned by

2    the government, and sought to seize those moneys.  And then we

3    had all sort of discussions with -- well, are these agencies

4    and instrumentalities, are they really separate commercial

5    entities?  Are they part of the government?  On and on and on,

6    and came into a very interesting discussion under Bancec among

7    other cases saying, is this entity part of the government in

8    the government expression of its activities such as the Army,

9    Navy, you know, whatever it would be, or are they separate

10   commercial enterprises and therefore who has the burden of

11   proof to say whether or not it's a separate entity or not.  So

12   agency and instrumentality now becomes a big deal in the

13   enforcement of a judgment.  Do we have a Bancec issue?

14           The purpose of that is to wipe that away in saying,

15   Hey, this is a government wholly-owned corporation.  It's the

16   government.  We don't have to say what this thing is doing.

17           There is another case called California Land Holding

18   Company, which was a Flatow matter, and that was an Iranian

19   bombing victim, and Flatow found -- I think it was either Bank

20   Melli in Southern California, owned California Holdings and

21   Land Company which held some real estate in Calabasas,

22   California, and that was a Ninth Circuit case.  And that was a

23   detailed analysis of agency and instrumentality.

24           Everybody conceded that Bank Melli was part of Iran.

25   But they lost because they couldn't show that Bank Melli acted

1    for the government.  It had its own board of directors.  And

2    ultimately they lost the levy.

3          The Flatow case was the catalyst for the Flatow

4    amendment, and the attorneys in that case are Steven Perliss

5    and Tom Fay, who are also the lead counsel in the Marines case.

6          Welcome to a new world, your Honor.

7          THE COURT:  I think I need to do some more thinking

8    about what I'm going to do with this case.  It's a very

9    interesting argument.

10          MR. COOK:  Thank you, your Honor.  My only request is

11    in the Court issuing any relief as to matters of authentication

12    or the like, I would like the opportunity, if it's curable, to

13    cure anything which could be curable.

14          THE COURT:  Basically, you've left it to me to puzzle

15    all this through.  You've sort of put it all out there.  And

16    again, it would seem to be one comprehensive proceeding would

17    seem to make more sense.  I've got your declaration.  You say,

18    for example, the energy information administration of the

19    department of -- has identified the countries which are the

20    recipients of Iranian crude oil experts as listed on Exhibit A.

21    You haven't even done such basic things as tell me that

22    Exhibit A is a true and correct copy of the determination.  I

23    don't know whether you're suggesting that that's a public

24    record and therefore I have to take -- I don't have to worry

25    about hearsay problems; whether you're asking me to take

1    judicial notice of it -- I just have it here and I'm expected

2    to figure out, What does this prove?

3          And as I say, I have just simple proof problems with

4    virtually every statement you have made.

5          You know, you say, In further confirmation that NIOC

6    is a state entity is an excerpt from the NIOC annual report is

7    marked as Exhibit C.  Well, I understand this is not summary

8    judgment.  But again, at some point, if push comes to shove,

9    somebody's going to be sitting back and wondering why I was

10   accepting unauthenticated documents.  I mean, you know, the law

11   of the Ninth Circuit as set forth in -- I think it's Orr versus

12   Bank of America, is very clear in how you authenticate

13   documents for summary judgment.

14         This is not summary judgment, but -- and I have nobody

15   objecting, which is one of the reasons I was asking you whether

16   there was any opposition.  And I don't know -- and I know there

17   are rules.  I mean, obviously hearsay can come in, for example,

18   unless it's objected to.  But I have authentication issues.

19         I have an awful lot of issues I need to struggle my

20   way through if I decide I'm the right court to be doing what

21   you're doing.

22         As I said, I didn't want to just write lengthy

23   rulings, say, Here are all the problems I have.  Because I

24   thought I just wasn't the one who should be doing it.  Now you

25   have given me some pause to think, and I have a better

1    understanding of what you're asking.

2          MR. COOK:  The only request I have of your Honor here

3    is I would hate to see something that would be reasonably

4    curable on my end here in terms of proof issues here, and to

5    give me till Friday to file an amended declaration resolving

6    those issues.

7          THE COURT:  I don't have a problem with that.  I

8    have -- but I have, as I say, even a more basic issue is I'm

9    still not clear we're talking about the same statute.  You're

10   in 1605(a) and I'm in 1610.  And I need to figure out how to

11   resolve that.

12         MR. COOK:  Why don't we do this:  What -- the Court

13   has raised what I think are not impossible matters, and I would

14   like to in finally adjudicating this matter avoid the smaller

15   issues so the Court can reach the larger issues and give myself

16   to Friday to file anything which would resolve the Court's

17   concerns here.

18         THE COURT:  As I said to you, what I printed out was

19   the closest version -- on-line, as of the date we are looking

20   -- I don't think any of these statutes have made their way into

21   the books, because they were all fairly recent, at least the

22   books I have -- but on-line, when I found what looked like the

23   statute you were citing to me is 1610.  But 1610 refers to a

24   1605(a).  So I think there are two separate statutes there.

25         MR. COOK:  I won't say that the ink is still wet on

```
 1   the president's signature, so to speak, but it's barely drying.

 2          THE COURT:  I'll certainly -- I'm not going to rule

 3   before Friday or however much time you think you need.  And

 4   obviously the more that you can nail down some of these

 5   problems, the less of a problem they're going to be.

 6          MR. COOK:  I think we can do that, your Honor.

 7          THE COURT:  Then I'll take this matter under

 8   submission and I'll wait at least a week or so before I issue a

 9   ruling.

10          MR. COOK:  Thank you very much.

11          THE COURT:  But if you're going to file something, try

12   to get it in as soon as possible because I need to get this

13   thing resolved before, for example, I go into criminal month.

14          MR. COOK:  Yes, sir.

15          THE COURT:  All right.  Let's take a short recess and

16   we'll come back and deal with Tech Know.

17          Recess for about five minutes.

18          (Adjourned)

19                              oOo

20

21

22

23

24

25
```

CERTIFICATE OF REPORTER

I, Connie Kuhl, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in Case No. C 08-80030, DEBORAH D. PETERSON v. ISLAMIC REPUBLIC OF IRAN, et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____s/s_____

Connie Kuhl, RMR, CRR

Tuesday, June 24, 2008