Pages 1 - 47

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE BERNARD ZIMMERMAN, MAGISTRATE

DEBORAH D. PETERSON, Personal      )
Representative of the Estate of    )
James C. Knipple (Dec.), et al.,   )
                                   )
            Plaintiffs,            )
                                   )
  VS.                              )  No. C 08-80030 JSW (BZ)
                                   )
ISLAMIC REPUBLIC OF IRAN, et al.,  )
                                   )  San Francisco, California
            Defendants.           )  Wednesday
_____ )  July 2, 2008


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          COOK COLLECTION ATTORNEYS, PLC
                            165 Fell Street
                            San Francisco, California  94102-5106
                     BY:  **DAVID J. COOK, ESQUIRE**
                          **NATHANIEL L. DUNN, ESQUIRE**
                          **ROBERT J. PERKISS, ESQUIRE**


**For World Bank:**         SIDLEY AUSTIN LLP
                            555 California St.
                            San Francisco, CA 94104-1715
                     BY:  **TIMOTHY SCOTT, ESQUIRE**
                          **RYAN SANDROCK, ESQUIRE**


(Appearances continued on next page)


**Reported By:**    *Katherine Powell Sullivan, CSR # 5812*
                    *Official Reporter - U.S. District Court*

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **For Export—Import Bank of Korea:** | CHADBOURNE & PARKE, LLP<br>350 South Grand Avenue, Suite 3300<br>Los Angeles, California  90071<br>BY:  **JAY R. HENNEBERRY, ESQUIRE** |
| **For Japan Bank:** | ARENT FOX<br>555 West Fifth Street, 48th Floor<br>Los Angeles, California  90013-1065<br>BY:  **JERROLD ABELES, ESQUIRE** |
| **Nonparty Financial Institutions:** | FARELLA, BRAUN & MARTEL LLP<br>235 Montgomery Street, 30th floor<br>San Francisco, California  94104<br>BY:  **ANDREW LEIBNITZ, ESQUIRE** |
| **For Amici Curiae:** | MORRISON FOERSTER<br>425 Market Street<br>San Francisco, California  94105-2482<br>BY:  **WILLIAM L. STERN, ESQUIRE** |
| **For International Finance Corporation:** | WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC  20005<br>BY:  **FRANK PANOPOULOS, ESQUIRE**<br><br>WHITE & CASE LLP<br>3000 El Camino Real, 9th Floor<br>Palo Alto, California  94306<br>BY:  **MARK F. LAMBERT, ESQUIRE** |
| **For Deutsche Bank Trust Company:** | WHITE & CASE<br>633 West Fifth Street, Suite 1900<br>Los Angeles, California  90071-2007<br>BY:  **MATTHEW R. LEWIS, ESQUIRE** |

<u>**P R O C E E D I N G S**</u>

1

2  **JULY 2, 2008**                                              **10:26 A.M.**

3

4          **THE CLERK:**  Calling civil matter C08-80030, Deborah

5  D. Peterson, et al. versus Islamic Republic of Iran, et al.

6          Counsel, please step forward and state your

7  appearances.

8          **MR. COOK:**  Good morning, your Honor.

9          David Cook on behalf of Deborah D. Peterson, et al.

10          **THE COURT:**  You attracted a lot of attention.

11          **MR. COOK:**  Thank you, Your Honor.  We counted.

12          **THE COURT:**  Let me simply say I don't know who all

13  you folks are.  We're going to have, at some point, a space

14  issue.  So, all right.  I see some folks are going to take

15  seats on the back bench, and I think that probably will have to

16  do.

17          **MR. DUNN:**  Good morning, Your Honor.  Nathaniel L.

18  Dunn for the plaintiff, Deborah D. Peterson.  Application

19  pending.

20          **THE COURT:**  All right.

21          **MR. PERKISS:**  Good morning, Your Honor.  Bob Perkiss

22  also for Deborah Peterson.

23          **MR. SCOTT:**  Good morning, Your Honor.  Timothy Scott,

24  Sidley Austin, specially appearing for the World Bank.

25          **MR. HENNEBERRY:**  Good morning.  Jay Henneberry,

1   Chadbourne & Parke, specially appearing for the Export-Import

2   Bank of Korea.

3        **MR. ABELES:**  Good morning, Your Honor.  Jerrold

4   Abeles from Arent Fox, specially appearing for the Japan Bank

5   of International Cooperation.

6        **MR. STERN:**  Good morning, Your Honor.  William Stern,

7   Morrison Foerster, on behalf of amici curiae California Bankers

8   Association, Institute of International Bankers, International

9   Bankers Association of California, the Clearinghouse

10  Association, and the Organization for International Investment.

11       **MR. LEIBNITZ:**  Good morning, Your Honor.  Andrew

12  Leibnitz, Farella Braun Martel, specially appearing for

13  nonparty financial institutions ABN Amro Bank, BNP Paribas,

14  Bank of Tokyo - Mitsubishi, Credit Suisse, Raiffeisen

15  ZentralBank Oesterreich, and UBS.

16       **MR. PANOPOULOS:**  Good morning, Your Honor.  Frank

17  Panopoulos of White & Case LLP, appearing pro hoc vice for the

18  International Finance Corporation.

19       **MR. LAMBERT:**  Good morning, Your Honor.  Mark

20  Lambert, White & Case, appearing for International Finance

21  Corporation.

22       **MR. SANDROCK:**  Good morning, Your Honor.  Ryan

23  Sandrock, Sidley Austin, specially appeared for World Bank.

24       **THE COURT:**  So I've got Scott and Sandrock for the

25  World Bank.

1          **MR. LEWIS:**  Good morning, Your Honor.  Matthew Lewis

2   specially appearing for nonparty Deutsche Bank Trust Company of

3   America.

4          **THE COURT:**  That's it?  All right.  You may be

5   seated, folks.

6          I have no idea how the reporter is going to remember

7   all of you.  You may have to be sensitive, if you feel you need

8   to speak, to say something, anticipating that there would be a

9   cast of thousands here.

10          I've issued a tentative ruling, to give you some idea

11   of, first, what I was thinking; secondly, thinking that might

12   keep some of you away.  But I guess I was unsuccessful, since I

13   understand at least some of you folks come from far distances.

14          So I guess I really need to hear from the plaintiffs,

15   because I think I have sort of a fundamental, I guess you would

16   call it a threshold issue that I can't get across, which is

17   that the plaintiffs seem to be asking me to do something which

18   the statute does not permit me to do.

19          Let me just say, of the other things in the tentative

20   ruling, the one thing that is the most tentative is whether I'm

21   going to allow the amici to appear.

22          I've actually got two versions of this.  And the

23   footnote 4 reads differently in each version.  I think this was

24   the one I felt most comfortable with when I decided to put this

25   online because I was trying to get something -- I think I

1   succeeded in getting it online last Friday so that some of you

2   might change travel plans.

3              All right.  Mr. Cook.

4              **MR. COOK:**  Thank you, Your Honor.

5              And, yes, I did read and evaluate the tentative

6   ruling.  Let me sort of broach a primary issue.  And the

7   touchstone, the starting point is the Court's analysis here

8   that -- if you bear with me, for the record.

9              The Court indicates, "Instead, plaintiff seeks orders

10  which circumvent the statute by declaring that the assignment

11  has occurred even though the judgment debtor was not ordered to

12  and did not sign anything.  Plaintiffs provide no authority to

13  support their contention that section 708.510(a) permits such

14  virtual assignments and the Court has found none."

15             There are very few cases interpreting this statute.

16  The best case we have is Kracht, K-r-a-t-c-h, which is cited

17  here.  Kracht is a case which we think is very close on many of

18  the issues and concerns raised by the Court and some of the

19  issues which are raised by adverse counsel.

20             Kracht was a judgment creditor of the debtor, and

21  perceived that the judgment debtor had a malpractice claim

22  against the lawyer in prior litigation.  Moved under C.C.P.

23  708.510 for an assignment order.  The Court granted the order

24  and thereafter proceeded against the attorneys.

25             The attorneys vested the lawsuit, so to speak, on a

1   non-supplementary grounds because claims against attorneys are

2   not assignable, under Goodley -- I think it's Goodley &

3   Goodley, versus Wang, or something along that order, under

4   preestablished California case law.

5           **THE COURT:**  Just give me one moment.  I'm trying to

6   see if I have Kracht on the bench.  I've got some of your cases

7   between what you cited and what they cited.

8           **MR. COOK:**  Runs the gamut of post judgment

9   supplemental process here.

10          **THE COURT:**  I don't think I have Kracht.

11          **MR. COOK:**  It's a helpful case.

12          **THE COURT:**  Well, it is and it isn't.

13          Let me just say one thing.  You and I have a

14  different view of what immunity means.  Immunity means to be

15  immune from litigation; not that you have a right to engage in

16  litigation and hopefully win at the end.

17          So that's one of the difficulties I had with your --

18  one of your analyses of Kracht, which is that all of these

19  issues should somewhere be dealt with at the back end.  I think

20  some of them, in my judgment, have to be dealt with at the

21  front end; otherwise, it would defeat the very purpose of an

22  immunity.

23          **MR. COOK:**  That -- that level of analysis might be

24  relevant in dealing with one of the motions which deal with

25  financial institutions, and as we classify for just this

1   discussion, sovereign banks.  However --

2          **THE COURT:**  And I agree with you.

3          **MR. COOK:**  -- it doesn't deal with --

4          **THE COURT:**  The point I made was a little off.  Go

5   ahead.

6          **MR. COOK:**  Okay.  So just working through Kracht and

7   working through that case and then working through -- and I'm

8   going to mispronounce it, called Chuidian.  I'm sure there's

9   many ways to pronounce it.  Chuidian.  Which the other leading

10  California case is called Philippine -- probably get it wrong,

11  called Philippine Guarantee National whatever.

12         **THE COURT:**  I've been calling it the Philippine case.

13  I know there are several.

14         **MR. COOK:**  There are several.

15         **THE COURT:**  I've read that case.

16         **MR. COOK:**  Which is the '91 case.  And there's a

17  handful of others.

18         So focusing on the Court's immediate issue is under

19  708.510 the language says, quote, "The Court may order the

20  judgment debtor to assign to the judgment creditor or to a

21  receiver," which is the textual language.  The Court's concern

22  here is that -- and I perceive this, that the Court's thinking

23  is, a, I need to get an order from the Court which would say

24  the debtor is ordered to assign.

25         **THE COURT:**  I need to order, and ran to assign.

```
 1          MR. COOK:  Right.  And then I would, theoretically,
 2    find my jolly debtor and say:  I have this order.  Now you need
 3    to sign this piece of paper.  And if you don't sign this piece
 4    of paper, mister judgment debtor, then I immediately come back
 5    here and gin up an OSC for contempt.
 6          That is essentially the -- the mechanism which the
 7    Court is suggesting.  We do not believe that, in looking at
 8    708.530 308 and 708.540, that the California legislature
 9    intended, as we say, or as the Court would envision,
10    essentially a two-step process, meaning that there's an order
11    for assignment, that we would serve the debtor, the debtor
12    would have to sign a piece of paper, so to speak, and in
13    refusal --
14          THE COURT:  How can you interpret the statute any
15    other way?  Maybe I should ask you that way.
16          MR. COOK:  We would not interpret the statute that
17    way --
18          THE COURT:  I'm pulling 708.  I have it in front of
19    me.
20          MR. COOK:  -- because that would necessarily involve
21    the following.
22          THE COURT:  You're assuming, of course, that the
23    judgment debtor won't sign the assignment.
24          MR. COOK:  Well, in this case I can say with
25    reasonable certainty that the likelihood is very low.
```

1      **THE COURT:**  You can say that.  Judge Lambert perhaps

2  can say that.  I can't say that.

3      I have had situations in which people have had the

4  full judgment entered against them and they have appeared in

5  connection with execution proceedings.  And I have ordered them

6  to sign, for example, to make assignments or to do other

7  things.  Sometimes they do and sometimes they don't.

8      I would agree with you, I suppose, judging by what I

9  read in the newspapers and what I know of the situation, it's

10  probably unlikely.  I'm not sure I could take -- I don't know

11  that because of that I would avoid the statute.  It seems to me

12  there's no reason to not follow the strictures of the statute.

13      **MR. COOK:**  Well, then, the Court's analysis would be

14  contrary to Kracht, because Kracht ordered the assignment.  And

15  what the judgment creditor did is file the lawsuit against the

16  underlying obligors.  That's what happened in Kracht.

17      **THE COURT:**  The judge, as I recall, in Kracht -- it's

18  about a week or two since I've read these cases -- I think

19  ordered the debtors to make the assignments.

20      **MR. COOK:**  There's an order for assignment.

21      **THE COURT:**  Right.

22      **MR. COOK:**  And thereafter that's where they filed

23  suit.  I mean, to incorporate in the statutory loss a statement

24  saying, quote, in the event -- because if you really want to

25  essentially rewrite the statute, we would have to find

1    somewhere under 708.510 language which says the following:  In

2    the event that the judgment debtor refused to sign the

3    assignment the Court can do what --

4            **THE COURT:**  No.  That becomes an issue of my contempt

5    authority.

6            **MR. COOK:**  -- the court can throw them in jail?

7    What?

8            **THE COURT:**  That becomes an issue of my ability to

9    enforce court orders.  That's a different issue.  That becomes

10   federal law, as far as I'm concerned.

11           It's not -- at that point, you are no longer dealing

12   solely with the requirements of state execution law.  I've

13   issued an order.  I've ordered somebody to do something.  If

14   they disobey a lawful order, then there's a body of federal law

15   that kicks in as to what the consequences shall be.

16           **MR. COOK:**  Well, the body of federal law is power of

17   contempt.  Whether it's state or federal doesn't matter.  It's

18   still contempt.  At that point, within the confines of 708.510,

19   you don't have that mechanism.  Looking at the statute, it says

20   "ordered to," the judge orders the assignment.

21           What we're really doing is creating, what the Court

22   is creating, another structure here, the effect of which would

23   be that -- and let's presume this is a recalcitrant debtor.

24   And I have many recalcitrant debtors.  We would in effect

25   create an order to show cause for contempt out of every

1    assignment.

2         **THE COURT:**  Well, but if what you're saying is

3    correct, then all the legislature would have done is altered

4    the statute to simply say that upon application of the judgment

5    debtor, the Court not may order the judgment debtor to assign

6    but may order an assignment.  And they plainly didn't do that.

7    The legislature plainly contemplated a procedure in which the

8    Court orders the judgment debtor to do something.

9         Now, obviously, you know, when courts, whether they

10   are state or federal, order the judgment -- order anybody to do

11   something, it doesn't always happen.  But that doesn't mean but

12   because you are confident that this won't happen -- and I don't

13   have any basis for that confidence, because these folks have

14   not yet not done something I've ordered them to do.  I'm not

15   going to tell you that they would have any reason to fear my

16   order any more than they would fear, say, Judge Lambert's.  But

17   Judge Lambert has experience with them and I don't.

18        So I don't see any reason to circumvent the plain

19   letter of the statute.  Frankly, it strikes me that it could

20   create mischief if I were to, in effect, interpret the statute

21   in a sort of passive way to say that the Court may order

22   assignments as opposed to may ordering the judgment debtor to

23   assign.

24        **MR. COOK:**  The issue here is, what the nightmare

25   would be following, if I'm in state court, have a valid

1    California judgment against a New York debtor, valid, we are

2    all happy with it here, and there you have it, I've got a

3    California assignment order from my California judge, ship it

4    off to New York or wherever this person is, and say, sign here

5    and there, and the guy says, no, I'm not going to sign here,

6    there or anywhere, as the case may be.

7           Then what I would do is I would come -- show up in my

8    California court, say to my California judge, Didn't show up;

9    perfect case of contempt.  He's going to say, Wait, a second;

10   this person is in New York.  Now, I might have had jurisdiction

11   over, say, the corporate debtor but you have the corporate

12   president.  I may not.  And may say for me, being the

13   California judge, gee I think you need to start an ancillary

14   proceeding in New York, docket it there, and then go out and

15   get contempt against him.

16          Ultimately, what that would do is it would destroy

17   the value of 708.510, which basically puts the judgment

18   creditor in the shoes of the judgment debtor in a manner where

19   the judgment creditor can enforce the contractual rights.

20   Which is exactly what's intended under 708.530 and 708.540.

21   That is what was intended.  That's the exact language.

22   Otherwise, the streamline nature here would be destroyed by

23   circuitous litigation.

24          **THE COURT:**  I'm looking at 530, and I don't see how

25   you get support from this.

1          **MR. COOK:**  It says the following, "Except as provided

2   in subdivision (b), the effect and priority of an assignment

3   ordered," and it says "assignment ordered" --

4          **THE COURT:**  Right.

5          **MR. COOK:**  -- "pursuant to this article as governed

6   by section 955.1 of the Civil Code."

7          955.1, just for general -- this dialogue, is the

8   general rules of priority of contractual assignments.  Presume

9   that's correct here.

10          708.540, "The rights of an obligor are not affected

11   by an order assigning the right to payment until notice of the

12   order is received by the obligor."  Standard language.

13          **THE COURT:**  But those all presuppose an assignment

14   pursuant to 510 --

15          **MR. COOK:**  That's --

16          **THE COURT:**  -- which requires me, as I read the

17   statute, to issue an order requiring the judgment debtor to

18   make the assignment.

19          **MR. COOK:**  In this case, we believe that in making

20   the order you make the assignment.  Once you order the debtor

21   to assign, it becomes the assignment itself.  Otherwise --

22          **THE COURT:**  Do you have any authority for that?

23          **MR. COOK:**  There are, I would guess, five cases

24   dealing with this section here.

25          **THE COURT:**  All right.  And I probably have read all

```
 1  those cases.  And the closest thing that I could see, and the
 2  case that you don't cite for this purpose, but you cite for a
 3  lot of other purposes -- I have so many binders in front of me
 4  I don't know which one I'm relying on -- is Judge --
 5            MR. COOK:  Is that Judge Davies' case?
 6            THE COURT:  -- one of Judge Real's opinions, in which
 7  he basically read the law the same way I read the law --
 8            MR. COOK:  That's the --
 9            THE COURT:  -- and, basically, ordered the -- you
10  know, the assignment.  And then said something to the effect
11  of, If they don't do what I've ordered them to do, then I'll
12  consider having, you know, an involuntary assignment, or words
13  to that effect.
14            I can't -- unfortunately, you have so many papers, I
15  can't find the passage.
16            MR. COOK:  That's the -- we affectionately call that
17  the Marcos torture cases.  It's at 940 F.Supp 1470.
18            THE COURT:  I was trying to find where --
19            MR. COOK:  It's in one set of my moving papers.
20            THE COURT:  Well, in any event, I can't find it.  But
21  my recollection of that case is that what Judge Real did --
22  now, he's in a somewhat different situation than I am, because,
23  as I recall, he actually tried that case while he was sitting
24  in Hawaii.  So he's much more like Judge Lambert.  He's much
25  more likely to be in a position to know that -- to have
```

1  firsthand knowledge of the fact that the judgment debtor is

2  going to disregard his orders.  I'm not sure that I'm yet

3  prepared to say that.

4         All I'm simply saying is that, if I remember his

5  ruling -- which regrettably I cannot find right now -- what he

6  said -- I wonder if it may have come up in one of the briefs

7  from the banks.

8         **MR. COOK:**  It came up in one of the briefs, in a

9  footnote.

10        **THE COURT:**  But if I remember, what he said is that,

11 I will issue an order requiring, you know, the judgment debtor

12 to issue an assignment.  And if the judgment debtor doesn't

13 issue the assignment, then I will consider having an

14 involuntary assignment, or words to that effect.

15        **MR. COOK:**  Your Honor --

16        **THE COURT:**  I'm saying that's the closest authority

17 that I can come up with.

18        **MR. COOK:**  Well, if we really -- in going down that

19 path, the other issue would be it would be irreconcilable for

20 the fact that at this hearing, this particular hearing, the

21 judgment debtor would be entitled to, for example, assert a

22 claim of exemption under 708.550.  The debtor -- occasionally,

23 we get claims of exemption here.  Assuming it was an individual

24 and would be able to assert 708 --

25        **THE COURT:**  What's the problem with that?

1          **MR. COOK:**  Well, the problem is that if we adopted --

2     in due respect to you, the idea that this is a two-tier

3     process then --

4          **THE COURT:**  To me, it's a one-tier process.  You're

5     plugging in a second tier because you're confident that the

6     judgment debtor won't assign.  But I'm not there yet.

7          Okay.  So I don't treat this any differently right

8     now than I do any other order that I issue permitted by a law.

9     I don't issue it with the assumption that it's going to be

10    disobeyed.

11         I realize -- and you may well have good reason for

12    believing it's going to be disobeyed, but if I adopt your line

13    of thinking, then in an awful lot of cases I would not be

14    issuing orders.  I would simply assume they are going to be

15    disobeyed.

16         And a lot of times I issue an order, and I can tell

17    that it may not be obeyed.  And I would immediately jump to the

18    next stage.  Then I would be violating a whole bunch of other

19    rules that say that if I'm going to hold someone in contempt, I

20    have to follow a set procedure.

21         **MR. COOK:**  Again, I'm not necessarily disagreeing

22    with that analysis.  But looking at -- which I disagree.  But

23    looking at the face of all of the motions that we filed, and

24    looking at the contents of the motions, we asked for, taking

25    the first one -- which is docket number 18, just for the

1   record, Your Honor, and --

2            **THE COURT:**  Which one is it?  I have not --

3            **MR. COOK:**  We call them under landing rights.

4            **THE COURT:**  The landing rights motion.  Okay.

5            **MR. COOK:**  Sorry.

6            **THE COURT:**  All right.  I have that one in front of

7   me.

8            **MR. COOK:**  Okay.

9            **THE COURT:**  That was one, as I recall, in which you

10  did not serve any of the parties.  I mean, any of the potential

11  creditors.

12           **MR. COOK:**  Potential obligors.

13           **THE COURT:**  Obligors.

14           **MR. COOK:**  And that would be under -- because under

15  708.510(b) it says, "The notice of motion shall be served on

16  the judgment debtor.  Service shall be made personally or by

17  mail."

18            But looking under -- again, for the record here --

19  docket 18, filed on April 25th, at page 2, line 2, we -- the

20  precise language is "for the issuance of an order for

21  assignment of rights, accounts" and the continuous language

22  here.

23           **THE COURT:**  Now, this troubled me a lot.  And

24  obviously troubled some of the amicus.  I couldn't figure out

25  what you were doing.  That's why I asked you to submit a

1    proposed order, which you were obliged to do with your original

2    motion.

3            Because I thought, at first, you were asking for an

4    order of the sort that I would have been inclined to entertain,

5    putting aside some of the other issues, some of which were

6    apparent to me.  Problems with overbreadth, for example.

7    Questions of territorial scope.  Some of which were not.

8            For example, even with respect to this one, I have no

9    idea whether any of these airlines enjoy sovereign immunity.

10   I'm not saying that they do, but I just have no idea who owns

11   Qatar Airlines.  I know that there are flag carriers which I'm

12   told are owned by national governments, but I don't know.

13           But the point I'm simply making is this:  The reason

14   I asked you to submit a proposed order was because I couldn't

15   tell whether you wanted an order, which I would have thought

16   was permitted by the statute, or whether you wanted something

17   else.  Because there were points in your papers in which you

18   were acting as though the assignment had already been issued.

19   It was almost as if you were asking for a declaratory relief

20   that an assignment had been issued.

21           And I would have to go back and try to figure out,

22   you know, some of the things that you were talking about.  But

23   you were sort of jumping ahead to the next step.  That's when I

24   said, look, I think I really have to get an order to know

25   exactly what it is you're asking.  And when I got your proposed

```
 1   order it confirmed my concern that you were asking me to

 2   circumvent the statute.

 3            MR. COOK:  I respectfully disagree with that.

 4            THE COURT:  I understand that.  Obviously, you have

 5   your rights before Judge White.

 6            MR. COOK:  I appreciate that, also.

 7            First of all, we're not circumventing the statute.  A

 8   708.510 order is a, as we say, a two-party dual between the

 9   judgment creditor, the judgment creditor and the judgment

10   debtor.  And that's all what the statute anticipated, is:  Can

11   the judgment creditor obtain an assignment of the rights?

12            As to all the vast, you know, census of third

13   parties, whether it's the banks or the airlines or the other

14   one, as the -- as 708.540 specifically indicates in the

15   legislative comments, that the disposition of the Court,

16   disposition of the Court at this hearing, does not alter,

17   affect or change the status of any of these entities.  Their

18   rights remain unaffected.  That's what -- exactly what Kracht

19   says.

20            THE COURT:  I understand that.

21            MR. COOK:  And the appellate court upheld the

22   assignment order, even though the object of the assignment

23   collapsed based on the fact that the underlying obligation was

24   not assignable.

25            THE COURT:  Mr. Cook, I understand what you're
```

1  saying.  If this were a routine assignment, if you were asking

2  me to order, you know, the XYZ company from Van Ness Avenue to

3  assign you some rents, I would, I think, agree with you.

4          But you created -- I mean, I found it interesting to

5  see in some of the last papers you filed that you talk about,

6  you know, the totality of the -- there are too many parties.

7  "The totality of the proposed motion indicates an entire

8  anagram of banks, some of which may or may not be located in

9  the United States.  They may or may not have branches.  The

10 vast potpourri of banks leaves the Court with a cluttered

11 environment in determining exactly what the position of each

12 bank is," and so on and so forth.

13          **MR. COOK:**  Uh-huh.

14          **THE COURT:**  But you created all of that.

15          From my perspective, what you're trying to do is very

16 ambitious.  And I have no problem with that.  But I think it

17 needs to be pursued with some degree of surgical precision

18 instead of with a blunderbuss, which is what I'm concerned

19 about.

20          I understand what you're telling me about how the

21 statute works and the fact you don't have to give notice except

22 on the judgment debtor absentia.

23          The problem is that you are inviting me to do things

24 which appear to me to be illegal.  Kind of reminds me of some

25 of the agents who walk in here looking for warrants.  And say

1  to them, gee, the scope of your warrant is overbroad; it's

2  unconstitutional.  And they say:  Well, we don't have to worry

3  about that now, Judge.  Just issue the warrant.  Maybe I won't

4  seize it.  If I seize it, the judge will suppress it.  And so

5  on.  And I say:  Look.  I don't issue unconstitutional

6  warrants.  If I think that the scope is too broad, if it's a

7  general warrant, I won't issue it.  I'm not going to rely on

8  some other judge to decide whether I went too far.

9          This reminds me a little bit of the same thing.  I'm

10 not prepared to issue orders, for example, which might invade

11 someone's sovereign immunity simply on the grounds:  Well,

12 somewhere later on.  Well, let me just have the order.  Maybe

13 I'll serve it; maybe I won't.  Maybe I'll try and do something

14 with it; maybe I won't.  Some other judge can always quash it,

15 or you can, you know, later on.

16         I need to be satisfied that what I'm doing is

17 permitted by law.  Now, one of the difficulties, again, I had

18 with your proposed order is it has so many problems inherent in

19 it that I'm not prepared to say that all of these problems

20 should be dealt with at the end.

21         Because I think I would be creating a lot of mischief

22 if I simply started issuing blank orders for -- I forget how

23 many banks are implicated in this, but you chose to name all

24 the banks.  You chose to name all the airlines, and so on.

25         So I just want you to understand, because, you know,

1    it sounds like we're going to be together for a while, that I

2    view this as a matter that needs to be pursued with some

3    precision, and not simply with a blunderbuss and, you know,

4    let's see what ultimately may stick down the line.

5            There are a lot of very sensitive issues here.  I

6    agree that you're entitled to pursue enforcement of the

7    judgment.  I have no problem if you try to do it in an

8    aggressive or ambitious fashion.

9            But when you start doing it in an imprecise fashion,

10   when you start, in fact, inviting me to issue orders which I

11   don't think are proper, that's where I begin to have a problem.

12           So here we have a threshold issue which, as I

13   believe, the statute requires me to issue an order requiring

14   the judgment debtor to do something.

15           And we have a lot of other issues which I haven't

16   touched upon, but which trouble me.  And I just want you to

17   know that I don't think the answer to a lot of these immunity

18   issues, extraterritoriality issues, and so on, issues are

19   simply things that can be swept under the rug because they can

20   be dealt with later.

21           **MR. COOK:**  Let me respond to that, of what our two

22   concerns are.

23           One, we properly cited 708.510, and did not presume

24   in any of our moving papers some type of -- and I -- sort of

25   reading between the lines, we were not perceiving here that

1  there would be a pre-adjudication by this court of the

2  underlying rights of the third-party obligors.  That is not

3  anticipated in the statute.  And, more importantly, that would

4  not as matter of -- that would not, as a matter of a

5  contractual assignment, be accurate.

6          So to the extent that --

7      **THE COURT:**  Let me show you where I run into

8  problems.  So here's your very first piece of paper:  Motion

9  for Assignment of Rights.  You hereby move the Court -- I'm

10 reading from page 1 of your motion -- for the following relief:

11 One, for an order assigning to plaintiffs all deposits, deposit

12 accounts, rights to receive, et cetera, et cetera, et cetera.

13         Right there I'm sitting there thinking to myself:

14 That's odd.  He should be moving for an order requiring the

15 judgment debtor to make the assignment.

16         And if you go on and you read through your papers,

17 again, they -- I read them as having -- assuming -- you're

18 assuming you already have the assignment.  And I think some of

19 the banks read it the same way.  And then you're moving on, you

20 know, to sort of try to deal with the assignments.

21     **MR. COOK:**  I disagree with the Court's

22 characterization of our moving papers.  We do not and could not

23 under the statute anticipate we have the assignment.

24         We moved for an order for assignment.  And between --

25 and specifically between the judgment debtor and the judgment

1  creditor, the judgment creditor -- the judgment debtor, whether

2  it's the Islamic Republic of Iran or Joe's garage down the

3  street, is entitled to fair notice of what we intend to do,

4  because they have lots and lots of statutory rights to defend.

5          The person who -- I know it sounds odd.  The person

6  who should be here and is not here is Iran.

7          **THE COURT:**  I would agree with that.

8          **MR. COOK:**  Which something needs to be said about

9  that.  And I'm really left here with the following:  Is to say,

10  well, respectfully disagree with you, and take it up with

11  Judge White, as the case may be.  Or to say to you the

12  following:  Well, okay.  I'll concede that first we need an

13  order compelling the Islamic Republic of Iran to assign all of

14  these rights.  Just hear me out.

15          If I do that -- just work with me for a second -- I

16  walk away with such and such order either today or another

17  date.  And then I walk in here with an OSC re contempt.  Okay.

18  Assuming everything is perfect here.  At the hearing on the OSC

19  re contempt, then the issue really becomes of this Court's

20  jurisdiction, under post judgment California law, to say, well,

21  the person didn't do what they -- I ordered them to do.

22          Your remedies would be, traditionally:  Dollars per

23  day.  We saw that in a number of cases.  I say this with a

24  smile on my face, for the record, incarceration.  Which would

25  be a little difficult here, for the Islamic Republic of Iran or

1  some named official.  And that's certainly not going to work.

2  And rest assured that the United States or the DOJ would be

3  filing a statement of interest on that one.  I think that's a

4  fair one.  And then we'd, say, well, you can't incarcerate the

5  person.  Money won't do me -- money is not going to do me any

6  good here.  Your Honor, you need to assign this to me.

7          And Your Honor would say, well, I guess we're still

8  back in California law.  You want me to enforce the judgment.

9  Where does it say that I -- "I" being Your Honor -- or

10  appointed third person to start assigning these contracts to

11  you?  Where is it?  And I couldn't tell you that.

12          **THE COURT:**  I wouldn't ask you that question.  Why

13  would I ask you that question?

14          **MR. COOK:**  Because ultimately --

15          **THE COURT:**  Are you saying that the failure to obey a

16  federal court order is ultimately a matter of California

17  collection law?

18          **MR. COOK:**  If the purpose of the failure to pay that

19  court order for purposes of enforcement of the judgment.

20  Otherwise --

21          **THE COURT:**  I'm not going to quarrel with you,

22  Mr. Cook.  You may be right.  Okay.  All I can tell you is

23  that -- and I'm not -- one thing I agree with everybody here,

24  both the plaintiff and defendants, I don't issue advisory

25  opinions.  So I'm not going to predict what will happen if the

1   OSC for contempt were ever to come before me.  All I can tell

2   you is that they have come before me in the past, and I have

3   ordered judgment debtors to issue assignments.  And my

4   recollection is that in at least one case where they didn't, I

5   think I ordered one done.

6           **MR. COOK:**  Then if you order -- if you hear me out.

7   If the Court says, I have the power to order it assigned, which

8   means then the Court would be saying that I have that ability

9   to do that.  And you --

10          **THE COURT:**  As a matter of my inherent authority to

11  enforce my orders, I do not perceive that that would be a

12  matter of interpreting section 708.510.

13          **MR. COOK:**  Well, that would be a power, at that

14  point, for the Court -- and assume you went down that path,

15  which would be, say, the Court says, I have the inherent power

16  to assign that right to plaintiff for purposes of enforcement.

17  Then you would be reading that power of assignment somewhere

18  within the context of 708.510 through 708.560, as a post

19  judgment matter under FRCP 69(a)(1).

20          **THE COURT:**  Well, it sounds as though you're telling

21  me that I can't do what I thought I could do.  And it may well

22  be that I can't.  I can only tell you that I have done it the

23  in past.  And perhaps the advocates involved were not as

24  knowledgeable or skillful as you, and I did something wrong.

25          **MR. COOK:**  I'm not suggesting that.

```
 1            THE COURT:   The only point that I'm trying to make is

 2    that, in my mind, if my order is disobeyed my powers at that

 3    point are the powers that a federal judge has to enforce a

 4    contempt.

 5            Now, there's one fillip immediately that I haven't

 6    thought through, because the law has changed, and that would be

 7    whether that order would have to be issued by me or by Judge

 8    White.

 9            I have certain contempt powers.  Judge White has

10    other contempt powers.  This came to me, as I recall, in a

11    report and recommendation.  So I think all I could probably do

12    is issue a report and recommendation.  I just wanted to clarify

13    that.

14            MR. COOK:   By the Court -- the court is the court, so

15    to speak.

16            I'm left here with the following, is we don't know

17    what the Islamic Republic of Iran will do.  I can't predict.  I

18    would readily suggest --

19            THE COURT:   There's nobody in court representing

20    them; am I correct?  I notice a number of folks in the back who

21    haven't spoken up.  All right.

22            MR. COOK:   The experience has been, in dealing with

23    the Islamic Republic of Iran, is that they do appear.  They are

24    currently active in Judge Manning's court in the Northern

25    District of Illinois, in a case called Ruben vs. The Islamic
```

1  Republic of Iran, and have active counsel, and is being

2  actively litigated in that court.

3          **THE COURT:**  I notice you have been serving papers on

4  people who I think are identified as counsel for them.

5          **MR. COOK:**  We -- in the beginning of this case, we

6  attempted in our diligence and zeal to make sure that Iran has

7  clear notice to develop addresses and people who seem to have a

8  connection.  That list is ever expanding, as we say.

9          But getting back to something earlier is, it leaves

10  us in a position of redrafting these papers and moving forward

11  here, and, ultimately, potentially recycling everything which

12  we're doing.

13          It would be unfortunate to have all of these good

14  folks show up again on another hearing, at great effort and

15  expense.  So at least for this hearing, so we can avoid --

16  because, ultimately, I would either take my chances with

17  Judge White or refile this and redraft my motion consistent

18  with Your Honor's thinking.  My suggestion would be, because I

19  do not want -- zeal is one thing, but I don't want to see

20  another 16 people show up here, you know, at great effort and

21  expense.

22          And I feel fairly confident the Islamic Republic of

23  Iran is not going to cooperate with me.  And I will trust to

24  whatever the Court's general equitable powers in the event of

25  contempt.  And if the Court believes that the Court has the

1  power to order an assignment in that setting, then we would

2  suggest --

3          **THE COURT:**  Again, let me be clear.  I'm not sure

4  that I have the power in this case because this came to me on a

5  report and recommendation.

6          **MR. COOK:**  That's correct.

7          **THE COURT:**  I have to distinguish between cases in

8  which everyone has consented in my jurisdiction.  And I am

9  acting as a district judge in this one, which is a much -- I

10 have a much lower level of authority.  I have no idea whether I

11 can actually issue the contempt order or not.

12         You've raised a number of issues.  Perhaps I don't

13 have the authority to do so.  You've raised jurisdictional

14 questions.  Does it have to be issued in New York?  You know,

15 the cases in which I have done it have not raised those kinds

16 of issues.  That's about all I can say.

17         **MR. COOK:**  I appreciate that.

18         So the only issue we have here, is, this level here,

19 so I don't have to recycle this for all these folks coming out

20 here, is to amend the request consistent with the Court's

21 thinking that instead of seeking an order for assignment,

22 seeking here an order compelling the judgment debtor to assign.

23         If I do that -- if you hear me out for a second --

24 what that would do is permit the Court to at least hear

25 everybody else out on this issue.  Because if I refile this,

1  consistent with the Court's thinking, and don't take it up in

2  front of Judge White or don't prevail on Judge White, then we

3  would have another group of people, at phenomenal expense,

4  coming out here.

5          What I would like to see is if the Court is going to

6  issue any other order vis-a-vis that, we would like to do it

7  here now rather than, you know, essentially repeating this

8  process.

9          **THE COURT:**  I'm not quite sure I understand what you

10 mean.

11         **MR. COOK:**  I have moving papers which are clear on

12 their face what we are seeking.  The gap between, essentially,

13 you and me is I think I can have the Court order an assignment

14 of the debtors' rights here now, so to speak.

15         The Court's sentiment to me is saying, no, I issue an

16 order to the judgment debtor to assign.  And if he fails to do

17 that, then we have a later proceeding.  And maybe the Court

18 generically has the power to issue the order for assignment.

19 We don't know if that's at a later date.

20         **THE COURT:**  My suggestion is, if you want to

21 proceed -- you may well -- I could be wrong, and Judge White

22 may have a different view, and this is his case.  As I say, I

23 just have this report and recommendation.

24         But many of the arguments that were raised by the

25 banks resonated with me.  I mean, I didn't see a good answer to

1  some of the sovereign immunity issues.  And I realize they are

2  complex because some banks, or some of the institutions -- I

3  don't know if I would even call them banks -- are raising

4  statutory immunity.  Some are raising international treaty.

5  Some are raising bilateral treaty.  Somebody raised executive

6  order.  A number of folks are relying on -- what is it --

7  section 1611, I think, of Title 28 and so on.  So it's not a

8  one-size-fits-all issue.

9            But those issues troubled me.  And I think you even

10  suggested, at one point, that you would not oppose a request

11  for stay so that Judge Lambert, I think, could rule on some of

12  those issues, if I'm not mistaken.

13            **MR. COOK:**  As to certain banks, that's correct.

14            **THE COURT:**  As to certain banks.

15            **MR. COOK:**  That's correct.

16            **THE COURT:**  I'm just curious.  What is the status of

17  the proceedings that are pending in Washington, D.C.?  As I

18  understand it, they are proceedings to determine the immunity

19  of some of the banks.  And there's also a proceeding to

20  determine whether a receiver will be appointed.  Of course,

21  that might alter some of the equations, too.

22            **MR. COOK:**  That's correct.

23            I have filed in D.C. a multitude of motions.

24  Relevant to this, we have a motion -- well, we have two

25  extremes of motions.  One, we have used traditional District of

1    Columbia process and levied on many banks.  A number of banks,

2    without going through a long list, have filed independent

3    motions to quash, of which they have been briefed.  And we're

4    waiting for Judge Lambert either to decide them or set them for

5    hearing.

6            We have filed a motion for appointment of a receiver,

7    a general FRCP 66, you know, general all-purpose receiver.

8    That motion has been filed.  I think the briefing is now

9    closed.  Has or will close, or probably is closed within the

10   last couple of days.  And then we're waiting -- it's actually

11   Chief Judge Lambert to set those matters for hearing.

12           So as the issue vis-a-vis, as we call them, the

13   sovereign banks or banks who are entitled to qualified

14   sovereign immunity, there's been a motion to stay that matter

15   as to those banks.  And, basically, discretion is the better

16   part of valor.  So we don't have any real opposition to that.

17           There are, however, a whole host of other banks,

18   which are commercial banks doing business in the United States,

19   doing business in downtown San Francisco, so to speak, and

20   would not be subject to that, and are not subject to my

21   receivership motion.

22           **THE COURT:**  Let me simply say, I was also struck by

23   some of the sort of what I'll call the extraterritoriality

24   arguments.  And I could not tell, once again -- I mean, there

25   are places in your motion -- and, again, I have so many papers

1  in front of me, I just couldn't figure out a good way of

2  keeping track of them all.  There are places in your motions in

3  which you suggest that all you're trying to do is reach assets

4  which you believe are located within this district, and so on

5  and so forth.

6          And then there are places in your -- here you go.  So

7  in one of the last pieces of paper you filed, which is the

8  memorandum of points and authorities in opposition to the amici

9  motion, you say that the basis for what we are doing is, quote,

10 the good faith belief that assets are available for levy and

11 execution within this district.  And then you define a bunch of

12 things.

13         Now, I don't -- I'm not going to offer you advice in

14 the sense that you're much more knowledgeable about this area

15 than I am.  But it would seem to me I'm going to proceed very

16 cautiously, as I think you've figured out by now, because I

17 don't think these issues are -- as I say, I think they require

18 a degree of precision.  I don't think I can do it on a cookie

19 cutter basis.

20         So my suggestion is that since you yourself seem to

21 have some doubts as to whether I can issue a substantive

22 contempt order, would be to file -- seek an order against a

23 bank or banks, if you want, to locate it in this district which

24 has -- can have no claim of sovereign immunity, so I think it's

25 probably going to be a commercial bank, and seek an assignment

1   of rights or assets.

2          Now, I read the statute and I'm not sure that we

3   agree.  Do you agree that when the statute talks in terms of a

4   right of payment due or to become due it has to be an existing

5   right?

6          I realize that the payments may be due in the future,

7   but the right has to exist at the time of assignment.

8          **MR. COOK:**  The good folks filing the amicus brief

9   have raised this issue, which has been a long-standing battle

10  we've had with the use of assignment orders serving on banks.

11  I just must tell you that.

12          I -- I have no issue here in coming back again and

13  reshaping this in a more refined fashion here, vis-a-vis the

14  banks or anybody else, and then, as we say, letting the chips

15  fall where they proverbially may.

16          **THE COURT:**  As I say, you can do whatever you want.

17  What I'm saying to you is that the likeliest order that I am to

18  issue would be one against a bank located in this district,

19  which has no claim for immunity, which seeks an assignment of

20  rights which are presently in existence, and there's some

21  description of the rights, because that was another problem I

22  had.  Some of your descriptive language in your orders was very

23  broad and very vague.

24          And then I think we would find out whether the

25  process that I've used before would work and whether, as I say,

1    Judge White would agree with it.

2              I think I would require you to serve the bank.  I

3    would agree with you that there are specific disputes over

4    specific assets which I would not entertain at the outset.

5              But, again, because of the ambitious way in which

6    you've proceeded, I need to be certain that I'm not dealing --

7    I'm not going to wind up issuing an order that would violate

8    somebody's immunity.

9              These are commercial banks.  I don't know whether

10   that necessarily means they are immune.  They all have foreign

11   interests of one kind or another.  I don't know what all they

12   do.  More importantly, I don't know whether what you are asking

13   for would, to the extent that they wear more than one hat,

14   would be strictly commercial or something else.

15             I am concerned, as I say, about the territoriality.

16   But if you believe there are assets located in this district, I

17   don't see why we are spending time trying to figure out whether

18   you can get something that belongs to the Japan Import-Export

19   Bank that may be located in Tokyo.  Why don't you pursue the

20   assets that you believe are located in this district?

21             **MR. COOK:**  Well, the question --

22             **THE COURT:**  Against commercial banks?

23             **MR. COOK:**  Well, the issue what's, quote, located or

24   not located rises and falls on the description of that asset.

25             It would be -- how can I say this?  We would find it

1   unusual but not improbable that the Islamic Republic of Iran

2   has a bank account at Bank of America at the corner of

3   California and Montgomery.  That's not really likely here.

4         It would be more likely or highly likely that Iran,

5   who's the number two importer of gasoline -- we know this from

6   the DOE reports -- that to acquire such gasoline they have to

7   have a third-party bank issue very large letters of credit to

8   the seller of gasoline.  This is presuming I'm correct.  And

9   those letters of credit are frequently collateralized with

10  funds.

11        The funds held by the issuing bank may be subject to

12  an assignment order, but it is a fair statement -- I don't want

13  to say it's a fair statement.  It is uncertain where those

14  funds may or may not lie.  And, of course, they're general and

15  tangible and, therefore, transitory.

16        **THE COURT:**  All right.  Look.  I think we're getting

17  to the point now where, again, I haven't gotten there.  I'm

18  going to do this in a methodical fashion.  I want to be

19  careful.

20        You're not looking at an ordinary judgment.  There is

21  a 2-and-a-half billion dollars judgment at stake.  It is not

22  your ordinary judgment debtor.  This is --

23        **MR. COOK:**  One of a kind.

24        **THE COURT:**  I'm not going to characterize them any

25  further.

1          So I'm going to proceed very cautiously.  All I'm

2 simply telling you is that if you proceed -- you're more likely

3 to proceed with a surgical strike than you are with the present

4 approach.

5          I am troubled by some of the points made by some of

6 the banks.  I've said territoriality, the necessity -- I

7 believe it needs to be a right that's in existence.  In other

8 words, I don't think I can order an assignment now.

9          Let's say the debtor was an author.  I don't know

10 that I could -- I can order an assignment of royalties that are

11 presently in existence.  I don't know that I could issue an

12 order that says:  If you write a book five years from now,

13 you're going to have to assign that as well.  I think you would

14 have to come back and get another assignment if the

15 circumstances were appropriate.

16          What else troubled me about what you were doing?

17 Hopefully, I've hit all of the main problems.  But you were the

18 one who said that you think there are rights that can be

19 collected in this district.  And I'm simply saying --

20          **MR. COOK:**  There may be.

21          **THE COURT:**  -- that I think we need to focus on them

22 and go after them.

23          And to the extent that you're trying to do something

24 other than what is absolutely by the book, then I think I'm

25 going to -- I need the assistance of the banks to tell me

1  whether what you are seeking violates international law,

2  violates, you know, any kind of laws.

3           And I'm not in a good position -- I would not have

4  known, for example, many -- I suspected there was some

5  immunities.  I did not know that the Japan Import-Export Bank

6  claimed sovereign immunity.  I just assumed they were just an

7  ordinary Japanese bank.

8           And that's why I think it's important to serve the

9  banks or to serve some of these other -- as I said, I have the

10 same problem with the airlines.  I know that a lot of flag

11 carriers are owned by national -- by their countries.  And

12 sometimes to their regret.  And I just have no idea where the

13 immunities flow.

14          So I'm not pre-admitting anything.  I'm simply saying

15 that that's more likely to proceed.  Of course, Judge White may

16 feel otherwise.  And I think that that is your recourse.

17          I'm not going to sit here today and start ruling on

18 the immunities, because I don't think I have a proper

19 application for an assignment in front of me.  And I want to

20 take it one step at a time.

21          I mean, there's a part of me that's also hopeful that

22 in effect what I'm doing is granting the stay, so that by the

23 time you come back against these folks, maybe Judge Lambert

24 will have ruled on some of these issues.  But if not, I

25 ultimately will.

1          **MR. COOK:**  I appreciate it, Your Honor.  I think the

2   other -- of all the other items is the one motion we thought

3   that -- despite the effort here, is the shipping dock fees and

4   bunkered fuel oil sales.  We thought that would be the one

5   matter which seemed to resonate most clearly here.

6          We have from the Islamic Republic of Iran a lot of

7   information.  We have their tariffs.  In other words, we have

8   as much information as I could provide the Court.  And by

9   tariffs meaning their price schedule, for lack of a better

10  expression.

11         We have a press release put out by the Islamic

12  Republic of Iran, saying that they are selling bunkered fuel,

13  that they're saying that they sell $640 million a year, a year,

14  and, hopefully, going up to $1 billion.  Which given that I

15  have a large dollar judgment, that's not inconsequential here.

16         And in this particular case, that we would not

17  necessarily perceive, or perceive less, many of the issues as

18  indicated by the Court, or barriers for lack of a better

19  expression.

20         We thought that motion, on its face, if granted,

21  would provide an avenue of recompense for the plaintiffs in

22  this case.

23         **THE COURT:**  I have -- again, the proposed order has

24  the same basic flaw in it, which is why I denied it.

25         This, too, I'm curious, apparently you chose to serve

1  these banks, if I understood your proof of service, but you

2  chose not to serve any of the airlines or the shipping

3  companies.

4          So when I see, for example, CMA CGM, the French line,

5  I don't know what that means.  Is there going to be an

6  assertion of immunity by the French line?  When I see the

7  Emirates shipping line, for example, there are a few names I

8  recognize, which I believe are just commercial lines and may

9  not have any immunities.  But, again, I simply -- I simply

10 don't know.

11         **MR. COOK:**  Well, I think, again, as we say,

12 discretion is the better part of valor.  If the Court's

13 indicating concerns, I think that gives us a number of options,

14 which is putting all of these various shipping lines on notice

15 and letting them come forward, if they so choose to come

16 forward.

17         **THE COURT:**  I know that some of these shipping lines

18 come to the Bay Area and presumably have offices here.  I mean,

19 I've had Maersk as a defendant in front of me.  I've had some

20 of the Kawasaki companies.  I forget how they all fit together

21 in front me.  I think I have had Hanjin Shipping in front of

22 me.

23         **MR. COOK:**  Evergreen docks in Oakland.  Just drive

24 across the Bay Bridge.  There isn't a day we don't see

25 Evergreen.

1      **THE COURT:**  What I'm simply saying is, you don't have

2  to create the problem that you're complaining about of having

3  too many parties floating around.

4      You know, you might be better off just trying to

5  develop an effective template that I can accept, Judge White

6  can accept.  Somebody might even want to take it up to the

7  Circuit to find out.

8      Again, you know, your efforts present some

9  interesting problems.  Which, as we recognize, a number of them

10  are issues of first impression.  And a number of them are very

11  complex.  And the consequences are greater than simply, gee, I

12  made a mistake; I can undo it tomorrow.

13      That's why I intend to be cautious.

14      **MR. COOK:**  Thank you, Your Honor.

15      **THE COURT:**  Now, does anybody from the other side

16  want to be heard?  I see a number of folks who are getting

17  ready to jump up.

18      **MR. PANOPOULOS:**  Your Honor, Frank Panopoulos for the

19  International --

20      **THE COURT:**  You jumped first.

21      **MR. PANOPOULOS:**  I don't want to respond.  I just

22  want to clarify something.  I heard Your Honor say that you

23  were in effect granting the motion to stay because you did not

24  want to rule on the immunity issues.

25      **THE COURT:**  No.  I said the practical effect of my

1 motion is going to be to grant a motion to stay, without

2 granting it.  Because I'm not going to grant this assignment.

3          All right.  So you don't have to worry about this

4 request for assignment.  Nobody has to worry about their

5 immunities being invaded.

6          **MR. PANOPOULOS:**  That's all I wanted to clarify.

7          **THE COURT:**  What he'll come back with, I don't know.

8 Whether it will present an immunity issue, I don't know.  Or,

9 he may simply go upstairs to Judge White, and Judge White may

10 disagree with me, and you can make your arguments to

11 Judge White.

12          **MR. PANOPOULOS:**  Thank you, Your Honor.

13          **THE COURT:**  Who else?

14          I thought I would hear from you.  You're the attorney

15 for the amici.

16          **MR. STERN:**  Yes, Your Honor.  And I will keep it

17 brief.  William Stern for -- for shorthand, should we just say

18 for the amici?

19          **THE COURT:**  That's fine.

20          **MR. STERN:**  Okay.  I simply wanted to address

21 footnote 5 of the tentative, which is the Court's observation

22 that because the amici are simply repeating arguments that add

23 little to what the other banks have argued, what I wanted to

24 point out is that there are two -- as Your Honor knows, there

25 are two different classes of banks that have appeared here

1    today.  Broadly speaking, we have the sovereign banks which are

2    instrumentalities of foreign governments, and we have

3    commercial banks, which aren't.

4            Our amicus presentation was on behalf of the

5    commercial banks.  And in large part, some of the arguments we

6    make do repeat what some of the sovereign banks say, with one

7    exemption.  We do advance an argument that the sovereign banks

8    don't make.  They largely make immunity arguments.

9            The argument that we make, which is joined in by

10   counsel for the commercial banks, is the extraterritoriality

11   argument.  And we address in our brief the Judge Real decision

12   and the Ferdinand Marcos torture cases.  Because in our brief

13   we point out that the Ninth Circuit largely quashed Judge

14   Real's orders in the Credit Suisse cases.

15           I simply point this out to say, Your Honor, that if

16   our brief isn't accepted, there isn't a brief that will be

17   addressing those issues, none of which may matter if Your Honor

18   adheres to the narrow tentative, because you're not reaching

19   those issues anyway.  You're making the statutory C.C.P., Code

20   of Civil Procedure ruling at least in the tentative.

21           If Your Honor were to reach those other issues, then

22   I would ask that you reconsider footnote 5.

23           **THE COURT:**  All right.  Thank you.

24           Anybody else wish to be heard?

25           All right.  I will -- as I said, on that last issue,

```
1    that was the one I was most tentative about.  So I'll think

2    about that some more.  And then I will --

3            MR. COOK:  Your Honor, if I could be heard on it,

4    briefly.

5            THE COURT:  Certainly.

6            MR. COOK:  A little bit of just bookkeeping here.

7            The amicus -- without getting into the substantive --

8            THE COURT:  One thing you don't have to tell me is, I

9    believe some of the other banks make the extraterritoriality

10   argument.

11           MR. COOK:  Right.

12           THE COURT:  I don't think Mr. Stern implied that,

13   but --

14           MR. COOK:  All right.  I think I have more of a

15   management issue.

16           If the Court grants the right of these various

17   entities to file an amicus brief, for whatever the content is,

18   then we don't -- depends what we do here.  They can file a

19   brief, but there's nothing to be heard --

20           THE COURT:  I don't think I'm inclined to do that.

21   And I think -- because the more I think about it, the

22   discussion you and I were having, and why I think it's

23   important that the banks be given notice, I don't know that I

24   would see a need for an amicus group to come in.

25           For example, if you were to decide to seek an
```

```
 1  assignment of rights against Mitsubishi bank -- I forget, you

 2  have a list of banks, which you tell me are local, and I think

 3  that's one of them.  I'm not trying to single them out.  I

 4  would expect that if the bank had something to say they would

 5  say it.  I would not expect to be hearing from an amicus.

 6          So I can see why at this level there was some

 7  interest.  But I think, again, as I said in the footnote, in

 8  view of the disposition and in view of the fact that the

 9  arguments were advanced, I thought by all the other banks, I

10  don't think I see the need for an amicus.

11          So I'm going to think about it, but I just want you

12  to understand that right now I don't see a need for one.

13          MR. COOK:  Thank you.

14          Should the Court change its view then, we would need

15  to have the Court's management of schedules and how to address

16  this.  That is really my only issue.  Just giving them the

17  right to appear doesn't do me -- it ultimately may be futile.

18          THE COURT:  All right.

19          MR. COOK:  Thank you.

20          THE COURT:  Anything else anybody wishes to add?

21          Thank you, all, for coming out.  And I will issue a

22  viable ruling sometime, hopefully, before the end of the week.

23          MR. COOK:  Thank you, Your Honor.

24          THE COURT:  And you have a hearing scheduled before

25  Judge White any day, now as I remember.
```

1             **MR. COOK:**  We -- the last hearing I had before Your

2  Honor was amending the writs.

3             **THE COURT:**  Right.

4             **MR. COOK:**  And we have that in front of Judge White.

5  If I pause, you'll bear with me.  It's sometime during July.

6  It's soon.

7             **THE COURT:**  All right.  We're adjourned.

8             (At 11:30 a.m. the proceedings were adjourned.)

9                         -  -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    **CERTIFICATE OF REPORTER**

3        I, KATHERINE POWELL SULLIVAN, Official Reporter for

4 the United States Court, Northern District of California,

5 hereby certify that the foregoing proceedings in 08-80030 JSW

6 (BZ), Deborah D. Peterson vs. Islamic Republic of Iran were

7 reported by me, a certified shorthand reporter, and were

8 thereafter transcribed under my direction into typewriting;

9 that the foregoing is a full, complete and true record of said

10 proceedings as bound by me at the time of filing.

11      The validity of the reporter's certification of said

12 transcript may be void upon disassembly and/or removal

13 from the court file.

14

15                s/b Katherine Powell Sullivan

16           _____

          Katherine Powell Sullivan, CSR #5812, RPR, CRR
17                    Tuesday, July 8, 2008

18

19

20

21

22

23

24

25