1   Paul J. Hall (State Bar No. 066084)
    phall@nixonpeabody.com
2   Walter T. Johnson (State Bar No: 111094)
    wjohnson@nixonpeabody.com
3   Isabelle L. Ord (State Bar No. 198224)
    iord@nixonpeabody.com
4   NIXON PEABODY LLP
    One Embarcadero Center, 18th Floor
5   San Francisco, CA 94111-3996
    Telephone: (415) 984-8200
6   Facsimile: (415) 984-8300

7   Attorneys for Third Parties
    MITSUI O.S.K. LINES, LTD.,
8   HANJIN SHIPPING CO., LTD., and
    COMPAÑIA SUD AMERICANA DE VAPORES

9

10

11

12                      UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15

16   DEBORAH D. PETERSON, Personal          Case No. 3:08-mc-80030-JSW
     Representative of the Estate of James C. Knipple
17   (Dec.), et al.,                        **JOINT OPPOSITION OF THIRD PARTIES
                                            MITSUI O.S.K. LINES, LTD., HANJIN
18                      Plaintiff,          SHIPPING CO., LTD., AND COMPAÑIA
                                            SUD AMERICANA DE VAPORES TO
19                                          PLAINTIFFS' MOTIONS FOR
          vs.                               ASSIGNMENT OF RIGHTS PURSUANT
20                                          TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)**

21   ISLAMIC REPUBLIC OF IRAN, et al.,
                                            Date:  November 26, 2008
22                                          Time:  10:00 a.m.
                        Defendants.         Dept.: G, 15th Floor
23                                          Magistrate Judge:  Bernard Zimmerman

24

25

26

27

28

11144030.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 1

    A.   Hanjin. ........................................................................................................ 2

    B.   MOL. .......................................................................................................... 2

    C.   CSAV. ........................................................................................................ 3

III. SUMMARY OF ARGUMENT ........................................................................... 3

IV.  LEGAL ARGUMENT ......................................................................................... 6

    A.   The Motion Must Be Denied As Moot Because The Shipping Lines Do Not Owe Money To Iran Or To Any Of Its Agencies Or Instrumentalities. ........................................................................................ 6

    B.   The Agencies And Instrumentalities Mentioned In Plaintiffs' Moving Papers Are Not Parties To This Proceeding And Cannot Be Made Parties To This Proceeding. ....................................................................... 6

        1.   Plaintiffs Fail To Identify Specific Agencies Or Instrumentalities With Admissible Evidence. .................................... 7

        2.   Plaintiffs Fail To Show That Any Agency Or Instrumentality Waived Sovereign Immunity. ..................................................... 8

            a.   Plaintiffs Do Not Show That The Entities In Question Are Engaged In Commerce In The United States. ..................... 10

            b.   Plaintiffs Do Not Show That The Assets In Question Are Located In The United States. ..................................... 10

        3.   Plaintiffs Failed To Serve Any Agency Or Instrumentality Of Iran In This Proceeding. ................................................... 12

        4.   Plaintiffs Failed To Show That Exercise Of Jurisdiction Over The Alleged Agencies And Instrumentalities Would Comport With The Requirements Of Due Process. ..................................... 14

    C.   Section 1610(g) Does Not Apply Here, And Even If It Did Apply It Would Not Permit An Assignment Of Assets Belonging To Iran's Agencies And Instrumentalities. ....................................................... 15

        1.   Sections 1605A And 1610(g) Of The FSIA Do Not Apply. ....................... 16

        2.   Even If Section 1610(g) Applied, The Result Would Be The Same. ................................................................................ 17

D.    The Court Cannot Compel An Assignment Under The Facts Of This Case. ........................................................................................................ 19

    1.    C.C.P. Section 708.510 Does Not Apply To The Facts Of This Case. .................................................................................................. 20

        a.    Section 708.510 Applies Only To "Judgment Debtors." ................. 20

        b.    Section 708.510 Does Not Apply To Accounts Receivable. ....................................................................... 20

        c.    Section 708.510 Cannot Be Used To Circumvent Federal Law. ........................................................................ 21

    2.    Exercise Of The Court's Discretion To Apply Section 708.510 Would Result In An Injustice. ................................................................. 21

    3.    Application Of Section 708.510 Would Violate The Shipping Lines' Due Process Rights. ........................................................... 22

V.    CONCLUSION .................................................................................................. 23

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

Page

4

*Af-Cap Inc. v. Chevron Overseas (Congo) Limited,*
    475 F.3d 1080 (9th Cir. 2007)............................................................................... 19

5

*Allied Bank International v. Banco Credito Agricola de Cartago,*
    757 F.2d 516 (2d Cir. 1985)................................................................................... 11

6

7

*Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989)............................................................................................... 12

8

*Autotech Technologies LP v. Integral Research & Development Corp.,*
    499 F.3d 737 (7th Cir. 2007).................................................................... 7, 10, 19

9

10

*Blais v. Islamic Republic of Iran,*
    2008 U.S. Dist. LEXIS 57905 (D.D.C. 2008) ...................................................... 17

11

*E.E.O.C. v. Arabian American Oil Co.,*
    499 U.S. 244 (1991)............................................................................................... 19

12

13

*EM Ltd. v. Republic of Argentina,*
    473 F.3d 463 (2d Cir. 2006)..................................................................................... 8

14

*FG Hemisphere Associates, LLC v. Republic of Congo,*
    447 F.3d 835 (D.C. Cir. 2006) ................................................................................ 8

15

16

*FG Hemisphere Associates, LLC v. The Republique du Congo,*
    455 F.3d 575 (5th Cir. 2006)......................................................... 8, 9, 10, 11

17

*Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.,*
    921 F.Supp. 1113 (S.D.N.Y. 1996).................................................................. 9, 11

18

19

*First National City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec"),*
    462 U.S. 611 (1983)...................................................................... 6, 17, 18

20

*Flatow v. Bank Saderat Iran,*
    308 F.3d 1065 (9th Cir. 2002)................................................................................. 6

21

22

*Gerritsen v. Consulado General de Mexico,*
    989 F.2d 940 (9th Cir. 1993)................................................................................. 13

23

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
    284 F.3d 1114 (9th Cir. 2002)........................................................................... 7, 8

24

25

*Gregorian v. Izvestia,*
    871 F.2d 1515 (9th Cir. 1989)............................................................................... 14

26

*Haim v. Islamic Republic of Iran,*
    2008 U.S.Dist. LEXIS 57901 (D.D.C. 2008) ...................................................... 17

27

28

*Holland v. Islamic Republic of Iran,*
    545 F.Supp.2d 120 (D.D.C. 2008) ............................................................ 17

*In re Terrorist Attacks on September 11, 2001,*
    ___ F.3d ___, 2008, U.S. App. LEXIS 17223 (2d Cir., August 14, 2008) .............. 13, 14

*In re Tuli,*
    172 F.3d 707 (9th Cir. 1999) ................................................................... 14

*Ma v. Ashcroft,*
    257 F.3d 1095 (9th Cir. 2001) ................................................................. 19

*Magness v. Russian Federation,*
    247 F.3d 609 (5th Cir. 2001) .................................................................. 13

*McCulloch v. Socieded Nacional de Marineros de Honduras,*
    372 U.S. 10 (1963) ............................................................................. 19

*Murray v. The Schooner Charming Betsy,*
    6 U.S. (2 Cranch) 64 (1804) .................................................................. 19

*Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian,*
    218 Cal.App.3d 1058, 267 Cal.Rptr. 457 (Cal. App. 1990) .................................. 9, 12

*Price v. Socialist People's Libyan Arab Jamahiriya,*
    294 F.3d 82 (D.C. Cir. 2002) ................................................................. 14

*Quaestor Investments, Inc. v. The State of Chiapas,*
    1997 U.S. Dist. LEXIS 24271 (C.D. Cal. 1997) .............................. 11, 12, 20, 21

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ................................................................ 10

*Rush v. Savchuk,*
    444 U.S. 320 (1980) .................................................................. 11, 15, 22

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993) ........................................................................... 8

*Severnoe Securities Corp.v. London & Lancashire, Inc.,*
    255 N.Y. 120 (N.Y. 1931) .................................................................... 10

*Shaffer v. Heitner,*
    433 U.S. 186 (1977) .......................................................................... 15

*Siderman de Blake v. Republic of Argentina,*
    965 F.2d 699 (9th Cir. 1972) ................................................................. 14

*Simon v. Republic of Iraq,*
    529 F.3d 1187 (D.C. Cir. 2008) ........................................................... 16, 17

*Small v. United States,*
    544 U.S. 385 (2005) .......................................................................... 19

*Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General, etc.*,
   923 F.2d 380 (5th Cir. 1991) ......................................................................... 15

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria*,
   647 F.2d 300 (2d Cir. 1981) ........................................................................ 14

*Thos. P. Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica*,
   614 F.2d 1247 (9th Cir. 1980) ..................................................................... 14

*Union Refrigerator Transit Co. v. Kentucky*,
   199 U.S. 194 (1905) ..................................................................................... 22

*U.S.I. Properties Corp. v. M.D. Construction Co.*,
   230 F.3d 489 (1st Cir. 2000) .......................................................................... 9

*Verlinden B.V. v. Central Bank of Nigeria*,
   461 U.S. 480 (1983) ....................................................................................... 8

*Wady v. Provident Life & Accident Insurance Co. of America*,
   216 F.Supp.2d 1060 (C.D. Cal. 2002) ........................................................... 7

*Walker International Holdings, Ltd. v. Republic of Congo*,
   415 F.3d 413 (5th Cir. 2005) .......................................................................... 9

*Weininger v. Castro*,
   462 F.Supp.2d 457 (S.D.N.Y. 2006) ........................................................ 9, 21

*Western Union Telegraph Co. v. Commonwealth of Pennsylvania*,
   368 U.S. 71 (1961) ...................................................................................... 23

**FEDERAL STATUTES**

28 U.S.C. § 1330 ................................................................................................ 13

28 U.S.C. § 1603 .................................................................................................. 6

28 U.S.C. § 1605 .......................................................................................... 16, 17

28 U.S.C. § 1605A .............................................................................. 15, 16, 17, 18

28 U.S.C. § 1608 ................................................................................. 4, 5, 13, 14, 18

28 U.S.C. § 1609 .................................................................................................. 8

28 U.S.C. § 1610 ......................................................................................... passim

28 U.S.C. § 1963 .................................................................................................. 8

**FEDERAL RULES**

Federal Rule of Civil Procedure 69 .................................................................... 21

**FEDERAL REGULATIONS**

31 C.F.R. Part 560...................................................................................................... 10

**STATE STATUTES**

California Civil Code § 1045 ........................................................................................ 21

California Code of Civil Procedure § 680.135............................................................... 12

California Code of Civil Procedure § 708.510.................................................. 5, 19, 20, 21, 22

**MISCELLANEOUS**

4A Wright & Miller, Federal Practice and Procedure, § 1070.................................. 15

P.L. 110-181 § 1083 ........................................................................................ 16. 17, 18

Restatement of the Law (Third) of the Foreign Relations Law
    of the United States, § 114 ........................................................................ 19

By invitation of the Court under its July 25, 2008 Briefing Order, counsel for third parties Mitsui O.S.K. Lines, Ltd. ("MOL"), Hanjin Shipping Co., Ltd. ("Hanjin"), and Compañia Sud Americana de Vapores ("CSAV") (collectively the "Shipping Lines,"), jointly represented in this matter, hereby state their opposition to the Motions for Assignment of Rights (the "Motions").  In making this limited appearance, the Shipping Lines and their counsel expressly reserve all rights, objections, and defenses, including but not limited to lack of personal jurisdiction and failure to serve the Shipping Lines.

## I.    INTRODUCTION

Plaintiffs' Motions demanding orders compelling the Islamic Republic of Iran to assign to them any and all rights to money allegedly owed by the Shipping Lines either to Iran or to various agencies and instrumentalities of the Iranian government must be denied for the simple reason that none of the Shipping Lines owes a debt to the Iranian government or to any agency of the Iranian government.  There is nothing to assign.  Plaintiffs have failed to sustain their burden of showing either the existence of a particular debt or the identity of an actual creditor.  Even if such debts existed, the California statute on which Plaintiffs rely – Code of Civil Procedure Section 708.510 – does not apply here.  Only a "judgment debtor" can be compelled to assign its rights.  None of the agencies that Plaintiffs have attempted to identify in their Motions is a "judgment debtor."  (Plaintiffs apparently do not contend that the Shipping Lines have incurred any debt directly to the Iranian government, but only to its agencies and instrumentalities.)  Further, all such agencies of Iran are presumed to be separate juridical entities, and each is presumed to be entitled to sovereign immunity in its own right.  Plaintiffs have failed to submit any admissible evidence to overcome this presumption of immunity, and under the circumstances it is impossible for them to do so.

## II.    FACTUAL BACKGROUND

Plaintiffs speculate that the Shipping Lines owe money to certain vaguely identified agencies of the Iranian government on the grounds that vessels operated by the Shipping Lines may call at Iranian ports, employ various port services, purchase bunker fuel and other commodities, and incur debt to Iranian agencies when they do so.  Plaintiffs are mistaken on several fronts, as the supporting

declarations of the Shipping Lines show.

**A.    Hanjin**

Hanjin is an international shipping company headquartered in Seoul, Korea.  (Declaration of Dong Bin Im at ¶ 2.)  Hanjin operates vessels around the world but does not make scheduled port calls in Iran.  *Id.*  As Hanjin ships do not call at Iranian ports, Hanjin does not purchase bunker fuel in Iran or incur any harbor or port charges in Iranian ports.  *Id.*  Hanjin does not do business with the government of Iran or its agencies and does not owe any payments to Iran or its agencies.  *Id.* at ¶ 3.  On rare occasions, Hanjin may contract with private parties to provide services to customers in Iran.  These transactions are handled by contracting for services from other shipping lines through shipping agents and do not result in the presence of a Hanjin vessel in an Iranian port and do not result in a debt owed by Hanjin to the Iranian government or its agencies.  *Id.* at ¶ 4.  Any payments involved in such transactions are transmitted from Korea to Hanjin's bank in the Middle East and have no connection with the United States.  *Id.* at ¶ 5.  Hanjin does not hold any assets of Iran or its agencies or any funds payable to Iran or its agencies.  *Id.* at ¶ 7.

**B.    MOL**

MOL is an international shipping company headquartered in Tokyo, Japan.  (Declaration of Masaru Ogawa at ¶ 3.)  MOL operates vessels around the world.  *Id.*  MOL's container service vessels do not call at ports in Iran; thus, MOL's container service vessels do not purchase bunker fuel in Iran or incur any harbor or port charges in Iranian ports.  *Id.* at ¶ 4.  To the extent that MOL provides container service to Iran, MOL purchases slots on the vessels of other carriers.  *Id.* at ¶ 5.  Since those other carriers are responsible for any fuel or services provided in Iranian ports, this activity does not result in a debt or account receivable of MOL payable to the Iranian government or its agencies.  *Id.*  Other MOL vessels – those not involved in container service – do on rare occasions make calls at Iranian ports (no more than a few times a year) and do purchase fuel, but such purchases are made from third-party trading companies and not from the government of Iran or its agencies.  *Id.* at ¶ 6.  If an MOL vessel calls at an Iranian port, MOL does not make direct payments for harbor or other charges incurred.  *Id.* at ¶ 7.  The direct agents of the charterer of the MOL vessel

or MOL's agents generally handle payments by estimating the amounts due to the various private companies in Iran, which are then advanced by MOL to the agents and paid by the agents on the spot. *Id.* Additional charges above the estimated amounts are covered by the agents on the spot and are later reimbursed to the agents by MOL. *Id.* These payments are largely made to private companies; but in any event none of these transactions results in a debt or account receivable that is payable by MOL to the Iranian government or to any of its agencies. *Id.* Payments made by MOL to its agents are transmitted from Japan to the agents' bank in Dubai and have no connection with the United States. *Id.* at ¶ 8. MOL does not hold any assets of Iran or its agencies or any funds payable to Iran or its agencies. *Id.* at ¶ 10.

### C.    CSAV

CSAV is an international shipping company headquartered in Valparaiso, Chile.[1] CSAV operates vessels around the world. (Declaration of Claudio Barroilhet at ¶ 3.) CSAV does not purchase bunker fuel in Iran. *Id.* at ¶ 4. To the extent that CSAV incurs harbor or other fees or expenses in Iran, those fees and expenses are paid to the vendors by CSAV's agent on the spot when the expense is incurred. *Id.* at ¶ 4. These payments are largely made to private companies; but in any event, since payment is made on the spot none of the transactions results in a debt or an account receivable that is payable by CSAV to the Iranian government or its agencies. *Id.* Any payments relating to transactions in Iran are transmitted from Chile or from the United Kingdom to CSAV's agent in Dubai, without the use of United States banks or bank accounts. *Id.* at ¶ 5. These transactions have no connection to the United States. *Id.* CSAV does not hold any assets of Iran or its agencies or any funds payable to Iran or its agencies. *Id.* at ¶ 7.

## III.    SUMMARY OF ARGUMENT

**1. There is no debt.** Plaintiffs' Motions must be denied because the Shipping Lines do not owe money to Iran or to any of Iran's agencies or instrumentalities. There is nothing to assign.

---

[1] Plaintiffs have incorrectly identified CSAV as "CSAV/Euroatlantic Container Line." The correct name of the company is "Compañia Sud Americana de Vapores."

**2. There is no admissible evidence of a debt or a creditor.** Plaintiffs have failed to sustain their burden of showing with admissible evidence that a specific debt exists and the entity to which it is owed. Mere speculation or conjecture based on information gleaned from the internet is not enough, and the Shipping Lines' declarations confirm that Plaintiffs' speculation is incorrect.

**3. The alleged creditors are not before the Court.** Even if Plaintiffs' website "evidence" were sufficient to sustain their burden, the alleged debts would not be owed to Iran itself but to certain agencies and instrumentalities of Iran, which the law presumes to be separate juridical entities. Iran itself has nothing to assign. Plaintiffs have done nothing to overcome the presumption that Iran's agencies and instrumentalities are entitled to separate legal status. The Court cannot order execution upon the assets of those entities because (a) they are not parties to the underlying judgment; (b) they are not parties to this proceeding because they have not been properly served as required by Section 1608 of the Foreign Sovereign Immunities Act ("FSIA"); and (c) they cannot be made parties to this proceeding because they do not have "minimum contacts" with the United States and do not own property within the jurisdiction of the Court that is in any way connected with the underlying action.

**4. The assets in question are immune from execution.** Even if the agencies in question did hold accounts receivable, as alleged, the property of an agency of a foreign state is immune unless (a) the agency or instrumentality is "engaged in commercial activity in the United States" and (b) the property is "in the United States." Plaintiffs have failed to sustain their burden of proof on both counts. First, the entities in question are forbidden to engage in commercial activity in the United States. Second, courts have consistently held that a debtor's mere presence in the forum for jurisdictional purposes, without more, will not support a determination that a debt exists "in the United States" for purposes of the FSIA.

**5. Section 1610(g) of the FSIA does not apply.** Plaintiffs are not entitled the benefits of Section 1610(g) of the FSIA. Subsection (g), which was added to the FSIA in January 2008, provides that a judgment entered against a designated state sponsor of terrorism may be executed upon the assets of an agency of that state, even though the agency may otherwise be entitled to

separate juridical status. The January 2008 amendments to the FSIA apply to actions like this one only if the plaintiffs make a proper showing on a motion in the court where the judgment was entered to have their action treated as if it had been brought under the amendments. The motion must be brought within sixty days of enactment of the January 2008 amendments. Plaintiffs failed to bring the requisite motion within the sixty day period and are therefore not entitled to invoke Section 1610(g). In any event, Section 1610(g) did not alter the fact that the property of the agency or instrumentality must be "in the United States" under Section 1610(b); the entity must be "engaged in commercial activity in the United States"; proper service must be made on the government entity under Section 1608; and the Court's exercise of jurisdiction must comport with the requirements of the Due Process Clause. Plaintiffs cannot satisfy any of those criteria.

   **6. C.C.P. Section 708.510 does not apply.** A "deemed assignment" of Iranian assets would be a legal fiction because it would be unenforceable in Iran, where the debt (if any) arose, and would most likely result in the Shipping Lines having to pay twice. Legal fictions are employed only to do justice, not to impose injury on an innocent third party. Further, California Code of Civil Procedure Section 708.510, by its express terms, is an optional remedy that the Court "may" use at its discretion in light "all relevant factors." Its use under the circumstances presented here would be extremely unfair and would result in an unconstitutional "taking." In any event, Section 708.510 does not apply because (a) the government agencies in question are not "judgment debtors" as the statute requires; (b) the statute was not intended to apply to accounts receivable and would be a poor device for capturing such assets anyway because of their transitory nature; and (c) the statute cannot be used to circumvent applicable federal law.

   **7. <u>Discovery would not assist Plaintiffs</u>.** No amount of discovery will cure Plaintiffs' failures. Even if Plaintiffs could prove the existence of a debt and the identity of a creditor, they would still be unable to comply with the FSIA, Code of Civil Procedure Section 708.510, or the Due Process Clause.

1

IV.   **LEGAL ARGUMENT**

2

    A.    <u>The Motion Must Be Denied As Moot Because The Shipping Lines Do Not Owe Money To Iran Or To Any Of Its Agencies Or Instrumentalities.</u>

3

    The Shipping Lines' Declarations show that the Shipping Lines do not owe money to Iran or

4

to any of its agencies or instrumentalities.  Payments for goods and services, if any, are made on the

5

spot in Iran by shipping agents.  The transactions do not involve direct payments by the Shipping

6

Lines and do not result in accounts receivable.  That being so, there is nothing to assign, and

7

Plaintiffs' Motions are moot.

8

    B.    <u>The Agencies And Instrumentalities Mentioned In Plaintiffs' Moving Papers Are Not Parties To This Proceeding And Cannot Be Made Parties To This Proceeding.</u>

9

10

    Plaintiffs seek an order compelling "Iran" to assign to them all rights to payment of accounts

11

receivable and the like arising out of the Shipping Lines' alleged use of port facilities in Iran and/or

12

purchase of bunker fuel from Iran.  In a footnote to their Notices of Motions, Plaintiffs state "Iran

13

includes all agencies and instrumentalities," and it is clear from Plaintiffs' supporting exhibits that

14

they are not actually contending that Iran itself is the holder of the alleged debt.  Rather, Plaintiffs'

15

real targets in these Motions are various "agencies and instrumentalities" of the Iranian government,

16

perhaps the Ports & Shipping Organization of Iran and/or the National Iran Oil Products Distribution

17

Company.  It is fundamental to the doctrine of sovereign immunity that "agencies and instrumenta-

18

lities of a foreign state," as defined in Section 1603(b) of the FSIA, even if they are wholly owned by

19

a foreign government, are subject to a presumption of separate juridical status.  <u>First National City</u>

20

<u>Bank v. Banco Para El Comercio Exterior de Cuba</u>, 462 U.S. 611, 626-627 (1983) ("<u>Bancec</u>") ("Due

21

respect for the actions taken by foreign sovereigns and for principles of comity between nations . . .

22

leads us to conclude . . . that government instrumentalities established as juridical entities distinct and

23

independent from their sovereign should normally be treated as such.").  The debts and liabilities of

24

the foreign sovereign state are not necessarily the debts of its agencies and instrumentalities; and by

25

the same token, the assets of the agencies and instrumentalities are not necessarily the assets of the

26

sovereign state itself.  <u>Bancec</u>, 462 U.S. at 627-628; <u>Flatow v. Bank Saderat Iran</u>, 308 F.3d 1065,

27

1069-1074 (9th Cir. 2002).  Plaintiffs' Motions are fatally flawed because Plaintiffs ignore the legal

28

separateness of the actual owners of the alleged assets.  Plaintiffs fail to identify these entities with admissible evidence; they do not even try to rebut the presumption that each is a separate entity; they fail to show that foreign sovereign immunity has been waived; they have failed to serve the target entities as required by the FSIA; and they fail to show how the Court's exercise of jurisdiction over these entitles would comport with due process.  In short, Plaintiffs have not even shown that their Motions are properly before the Court, let alone that they are entitled to relief.

## 1. **Plaintiffs Fail To Identify Specific Agencies Or Instrumentalities With Admissible Evidence.**

It is Plaintiffs' burden to identify with admissible evidence specific agencies or instrumentalities of Iran and the specific assets held by each that it contends are subject to execution.

> The FSIA says that immunity from execution is waived only for specific "property."  As a result, in order to determine whether immunity from execution or attachment has been waived, the plaintiff must identify specific property upon which it is trying to act. . . .  <u>A court cannot give a party a blank check when a foreign sovereign is involved</u>: property belonging to the sovereign itself, or a different instrumentality, may still enjoy immunity while property of the instrumentality that is in the case may not.  The only way the court can decide whether it is proper to issue the writ is if it knows which property is targeted.

*Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d 737, 750 (7th Cir. 2007) (emphasis added).  If *quasi in rem* jurisdiction is asserted, Plaintiffs are required to identify specific assets <u>in the forum</u> in order to establish that the Court has personal jurisdiction over alleged creditors.  Speculation is not enough.  "[T]he *sine qua non* of basing jurisdiction on a defendant's assets in the forum is the identification of some asset." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002).

Plaintiffs have failed to submit any admissible evidence on these points.  They have instead submitted a hodge podge of print outs of pages from various websites, all of which is hearsay without exception. *See Wady v. Provident Life & Accident Insurance Co. of America*, 216 F. Supp. 2d 1060, 1064-1065 (C.D. Cal. 2002).  (The Shipping Lines have each submitted evidentiary objections with the Opposition, which are incorporated herein.)  Much of the "information" Plaintiffs have submitted concerning the activities of the Shipping Lines in Iran is outdated, misconstrued, or simply incorrect.

*See* Shipping Lines' Declarations. Plaintiffs clearly have no idea how (or even if) the Shipping Lines do business in Iran. In the *Glencore* case, cited above, the Ninth Circuit Court of Appeals held that evidence that the defendant's property had passed through the forum in the past along with the plaintiff's good faith belief that the defendant "has or will have assets located in the forum" in the future was "simply not enough" to support the exercise of jurisdiction. *Glencore*, 284 F.3d at 1128.

### 2.   Plaintiffs Fail To Show That Any Agency Or Instrumentality Waived Sovereign Immunity.

Even if Plaintiffs could properly identify an agency or instrumentality of Iran to which one of the Shipping Lines owes money, they would still be required to show that the entity holding the debt has waived its immunity. They have not done so. "The FSIA is the exclusive source of subject matter jurisdiction over all civil actions against foreign states or their agencies or instrumentalities." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Accordingly, "at the threshold of every district court action against a foreign state, the court must satisfy itself that one of the exceptions [to immunity] applies [because its] subject matter jurisdiction . . . depends on that application." *FG Hemisphere Associates, LLC v. The Republique du Congo*, 455 F.3d 575, 584 (5th Cir. 2006). For that reason, "even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the [FSIA]." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 fn. 20 (1983). It is Plaintiffs' burden to produce evidence to show that immunity should not be granted. *FG Hemisphere Associates, LLC v. Republic of Congo*, 447 F.3d 835, 842 (D.C. Cir. 2006). They have not sustained that burden, and they cannot sustain it.

In the context of an enforcement proceeding, Section 1609 renders the property of a foreign state immune from execution or attachment, including garnishment, unless Sections 1610 and 1611 provide otherwise. 28 U.S.C. § 1609. "The FSIA's protections against attachment and execution extend to the instrumentalities of a foreign state. . . ." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2nd Cir. 2006). To exercise subject matter jurisdiction in such a proceeding, the Court must find that a statutory exception to immunity exists under the FSIA. Because the issue is jurisdictional, a "sovereign immunity claim may be raised by a garnishee as well as by a foreign

sovereign." *FG Hemisphere Associates*, 455 F.3d at 584, citing *Walker International Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005). The Court has subject matter jurisdiction over this proceeding through its ancillary jurisdiction to enforce a judgment, but only to the extent that it concerns Iran, the actual judgment debtor. *See Weininger v. Castro*, 462 F. Supp. 2d 457, 489-490 (S.D.N.Y. 2006); 28 U.S.C. § 1963. To the extent that the "postjudgment proceeding presents a new substantive theory to establish liability directly on the part of a new party, some independent ground is necessary to assume federal jurisdiction over the claim, since such a claim is no longer a mere continuation of the original action." *Id.*, 462 F. Supp. 2d at 490, quoting *U.S.I. Properties Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498 (1st Cir. 2000).

Under Section 1610(a), which applies to the foreign sovereign itself, the assets of a foreign state may be executed upon only if the assets are "used for commercial activity in the United States." 28 U.S.C. § 1610(a). Even if Plaintiffs alleged that one of the Shipping Lines owed a debt to Iran itself, which they apparently do not, it would still be impossible for them to show that the asset is "used for commercial activity in the United States." Under Section 1610(b), which applies only to "agencies and instrumentalities," judgment creditors may pursue "any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States." 28 U.S.C. § 1610(b). In other words, where government agencies are concerned, the property executed upon need not be "used for commercial activity in the United States" as long as the entity is "engaged in commercial activity in the United States;" but in either case the property must be "in the United States." The latter is crucial. In cases governed by the FSIA, "[e]xecution must . . . be squared with the longstanding principle that a foreign state's assets outside the United States are absolutely immune from execution to satisfy judgments entered in United States courts; a judgment creditor 'must rely on principles of comity in the foreign state to have his judgment enforced there.'" *Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113, 1118 (S.D.N.Y. 1996), quoting *Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 1094, 267 Cal. Rptr. 457, 477 (1990). "This is the law in most, if not all, jurisdictions, as well as under the FSIA." *Chuidian*, 218 Cal. App. 3d at 1094, 267 Cal. Rptr. at 477.

*See also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477 (9th Cir. 1992) ("Section 1610 does not empower United States courts to levy on assets located outside the United States"); *Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d at 750 ("It is of no small moment that the FSIA authorizes execution only against properties 'in the United States'"). Plaintiffs fail to demonstrate that either of these criteria is met.

### a.   Plaintiffs Do Not Show That The Entities In Question Are Engaged In Commerce In The United States.

Plaintiffs do not show that the entities they tried to identify are engaged in commercial activity in the United States, and it seems very unlikely that they are. Business entities affiliated with the Iranian government are barred from engaging in commercial activity in the United States. *See* 31 C.F.R. Part 560 (regulating commercial transactions with Iran); "*What You Need To Know About U.S. Economic Sanctions*," Bulletin of the U.S. Dept. of Treasury, Office of Foreign Assets Control (Ex. C to the Shipping Lines' Request for Judicial Notice).

### b.   Plaintiffs Do Not Show That The Assets In Question Are Located In The United States.

Plaintiffs also do not show that accounts receivable or other debt exists "in the United States." Determining the "situs" of intangible property does not require metaphysics but only common sense with an eye toward the end to be accomplished. As Justice Cardozo long ago observed:

> The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. . . . At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions.

*Severnoe Securities Corp. v. London & Lancashire, Inc.*, 255 N.Y. 120, 123 (1931) (Cardozo, J.), quoted by *Fidelity Partners.*, 921 F. Supp. at 1119. An account receivable might be regarded either as an asset of some Iranian entity, in which case it would certainly not be located "in the United States," or it might be regarded as the debt of the Shipping Line, in which case it would be located in the Shipping Line's domicile, where it has its headquarters and center of operations – that is, Tokyo, Seoul, or Valparaiso. See *FG Hemisphere Associates*, 455 F.3d at 586 (situs of debt was the "locus

from which the garnishees had supervised, directed, and financed the activities that gave rise to their obligations to make royalty payments"). The fact is that the alleged debt did not involve any U.S. entities or any activity in the U.S. but arose – if it arose at all -- in the course of the Shipping Lines doing business in Iran and was incurred for purchases made and services rendered entirely in Iran. Under the circumstances, "a common sense appraisal of the requirements of justice and convenience" requires a determination that the situs of the debt is not the United States.

At most, the Shipping Lines may have sufficient "minimum contacts" with the United States to support the exercise of personal jurisdiction here; but those contacts have nothing to do with the alleged debt.[2] Attributing a U.S. situs to intangible property on the basis of an entity's mere unrelated "jurisdictional presence" here would require the compounding of two legal fictions: "[t]he legal fiction that assigns a situs to a debt, for garnishment purposes, wherever the debtor is found [and] . . . the legal fiction that a corporation is 'present,' for jurisdictional purposes, wherever it does business. . . ." *Rush v. Savchuk*, 444 U.S. 320, 328 (1980) (rejecting such compounding of legal fictions as a way of establishing *quasi in rem* jurisdiction). Although some states hold that for some purposes a debt is located wherever the debtor may be found, this approach is clearly inappropriate in the international arena, particularly where the debt is owed to a foreign sovereign. While the local court may exercise jurisdiction over a third party obligor who does business in the U.S., the obligation itself has created rights and duties in a distant forum between a foreign company and a foreign sovereign over which the local court has no practical control. *See Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985) (situs of international debt must be analyzed in light of relevant foreign policy concerns).

In line with this rationale, courts have repeatedly rejected attempts to characterize the bank accounts of foreign sovereign entities as existing "in the United States" for purposes of Section 1610 where the third party obligor banks merely had branches within the Court's jurisdiction. In *Quaestor*

---

[2] As noted elsewhere, the Shipping Lines do not concede by their appearance at the Court's invitation for the limited purpose of opposing Plaintiffs' Motions either that the Court has personal jurisdiction over them in this matter or that they have been properly served.

1   *Investments, Inc. v. The State of Chiapas*, 1997 U.S. Dist. LEXIS 24271, *18-19 (C.D. Cal. 1997),

2   the District Court rejected the judgment creditor's argument that because the sovereign entity was

3   allegedly entitled to access its deposit accounts through the California branch of a Mexican bank, the

4   judgment debtor's "right to payment" existed "in the United States."  The Court held that the

5   "abstract 'right to payment,' in the absence of conjunction with some physical or at least specific

6   asset located within the boundaries of the United States upon which that right may be exercised" was

7   not enough to support execution.  *Id.*  Because the judgment debtor's account was not with the

8   California branch but with the bank's main office in Mexico, it could not be deemed to be "in the

9   United States."  *Id.*  The result was the same in *Chuidian*, 67 Cal. App. 3d at 1094, 267 Cal. Rptr. at

10  477 (presence of Philippines bank branch in California did not support execution upon judgment

11  debtor's bank deposits at the bank's office in Manila) and in *Fidelity Partners*, 921 F. Supp. at 1118-

12  1119 ("principles of foreign sovereign immunity prohibit attachment and execution against"

13  judgment debtor's accounts because the disputed accounts are maintained in Manila rather than at the

14  bank's New York City branch).

### 3.    Plaintiffs Failed To Serve Any Agency Or Instrumentality Of Iran In This Proceeding.

17          The Court lacks personal jurisdiction over the agencies and instrumentalities of Iran.  None of

18  the entities identified by Plaintiffs was a party in the underlying action.  Plaintiffs moved this Court

19  last April for an order adding the names of numerous Iranian agencies and instrumentalities as

20  judgment debtors under California Code of Civil Procedure Section 680.135.  The Court denied the

21  motion, ruling *inter alia* that Plaintiffs would have to seek such relief in the district court in

22  Washington D.C., where the judgment was rendered.  (May 22, 2008 Order.)  It appears that they

23  have not done so.  Thus, none of the targeted government agencies is a "judgment debtor" in this

24  matter, and none has been served in the manner required by the FSIA.  Even though the Court has

25  personal jurisdiction over Iran itself by virtue of the registration of the judgment here, jurisdiction

26  over government agencies is a separate matter.  "[T]he FSIA provides the sole basis for obtaining

27  jurisdiction over a foreign state in federal court."  *Argentine Republic v. Amerada Hess Shipping*

28  *Corp.*, 488 U.S. 428, 439 (1989).  "Under the FSIA, . . . personal jurisdiction equals subject matter

jurisdiction plus valid service of process." *In re Terrorist Attacks on September 11, 2001*, ___ F.3d ___, 2008 U.S. App. LEXIS 17223, *18 (2nd Cir., August 14, 2008).[3]  Service of process in an FSIA matter can be made only as provided in Section 1608.  This is true not only of original actions brought under Section 1605 but also of proceedings for attachment or execution under Section 1610. *See* 28 U.S.C. § 1610(c) (proceedings under §§1610(a) and (b) require service pursuant to Section 1608).

Under subdivision (b) of Section 1608, service on an agency or instrumentality of a foreign state "shall" be made in accordance with any "special arrangement" for service between the plaintiff and the agency or instrumentality; but if no "special arrangement" exists, service on an agency or instrumentality of a foreign state must be made "by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents. . . ." 28 U.S.C. § 1608(b)(2).  If service cannot be made in that manner, then service can be made by delivery of a copy of the summons and complaint "<u>together with a translation of each into the official language of the foreign state</u>," (a) as directed by an authority of the foreign state, (b) "by any form of mail requiring a signed receipt, to be addressed <u>and dispatched by the clerk of the court</u>," or (c) "as directed by order of the court consistent with the law of the place where service is to be made." § 1608(b)(3) (emphasis added). No such service has been made here.  At most there has been service by regular mail, without translation.  Strict compliance with Section 1608 is required. *Magness v. Russian Federation*, 247 F.3d 609, 615-616 (5th Cir. 2001); *Gerritsen v. Consulado General de Mexico*, 989 F.2d 940, 944 (9th Cir. 1993).  Even if the entities in question had been properly served and had failed to respond, the

_____

[3] Section 1330(a) of Title 28 provides that the district courts shall have original jurisdiction with respect to "any non-jury civil action against a foreign state as defined in Section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 or under any applicable international agreement."  Section 1330(b) provides: "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under Section 1608 of this title."

1    Court would still be required to determine whether it could exercise personal jurisdiction over them.

2    "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a

3    district court has an affirmative duty to look into its jurisdiction over both the subject matter and the

4    parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Since Plaintiffs have not made proper service

5    on any agency or instrumentality of Iran, however, such an inquiry would be premature.

6              **4.      Plaintiffs Failed To Show That Exercise Of Jurisdiction Over The Alleged
7                        Agencies And Instrumentalities Would Comport With The Requirements
                         Of Due Process.**

8              Even if Plaintiffs could effect service on the relevant agencies and instrumentalities of Iran

9    under Section 1608(b), the exercise of personal jurisdiction over them would still violate the Due

10   Process Clause. The FSIA "cannot create personal jurisdiction where the Constitution forbids it.

11   Accordingly, each finding of personal jurisdiction under the FSIA requires . . . a due process scrutiny

12   of the court's power to exercise its authority over a particular defendant." *In re Terrorist Attacks*,

13   2008 U.S. App. LEXIS 17223, *19, quoting *Texas Trading & Milling Corp. v. Federal Republic of*

14   *Nigeria*, 647 F.2d 300, 308 (2nd Cir. 1981).[4] In this case it has not been shown, and presumably

15   cannot be shown, that either the Ports & Shipping Organization of Iran or the National Iran Oil

16   Products Distribution Company has sufficient "minimum contacts" with the United States to support

17   the exercise of jurisdiction over them – or for that matter any contacts at all. They are not present in

18   the United States and do no business here, and there is no assertion that they have waived their

19   potential objections to service.

20             Plaintiffs may contend that the Court may exercise "*quasi in rem*" jurisdiction over the

21   agencies and instrumentalities of Iran; but that approach is also fatally flawed. *Quasi in rem* actions

22

23   _____

24   [4] Some courts have held that foreign states are not entitled to due process of law because they are not
     "persons." *E.g.*, *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002).

25   The U.S. Supreme Court has never so held, nor have the Second and Ninth Circuits. *See In re
     Terrorist Attacks* and *Texas Trading*, *supra*. The Ninth Circuit has consistently held that agencies of

26   foreign states are entitled to due process. *See Siderman de Blake v. Republic of Argentina*, 965 F.2d
     699, 704 fn. 4 (9th Cir. 1992); *Gregorian v. Izvestia*, 871 F.2d 1515, 1529 (9th Cir. 1989); *Thos. P.*

27   *Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir.
     1980).

28

are based on a claim for money begun by attachment or other seizure of property when the district

court has no jurisdiction over the person of the defendant but has jurisdiction over either property that

the court can apply to the satisfaction of the defendant's debt or persons who themselves owe an

obligation to the defendant that the court can apply to the satisfaction of the debt. *Stena Rederi AB v.*

*Comision de Contratos del Comite Ejecutivo General, etc.*, 923 F.2d 380, 391 (5th Cir. 1991). In such

cases it is said that the court may exercise *quasi in rem* jurisdiction to the extent that it has jurisdic-

tion over a person who is indebted to the defendant. *Id.* In this case, however, the Court lacks *quasi*

*in rem* jurisdiction for two reasons. First, for the reasons already explained above, the alleged

property is not located within the Court's jurisdiction. Second, constitutional due process requires a

connection between the garnished debt or attached property and the subject matter of the action.

*Rush v. Savchuk*, 444 U.S. at 327-328; *Shaffer v. Heitner*, 433 U.S. 186, 212-214 (1977); 4A Wright

& Miller, *Federal Practice and Procedure*, § 1070, "Jurisdiction Based on Property – In General,"

pp. 279-295. There is no such connection here.

### C.   Section 1610(g) Does Not Apply Here, And Even If It Did Apply It Would Not Permit An Assignment Of Assets Belonging To Iran's Agencies And Instrumentalities.

Plaintiffs base their motion upon recent changes to the FSIA, specifically the addition of

Sections 1605A and 1610(g) by way of amendment in January 2008. They concede that collection of

a judgment against a foreign state such as Iran was "greatly hobbled" prior to these amendments; but

they maintain that the January 2008 amendments have now cleared the way for collection

proceedings such as this one. They have contended in papers previously filed with this Court that

"agencies and instrumentalities" are now "deemed to be part of the sovereign state as set forth in

subparagraph 1605A(g)(1)." [5] (Plaintiffs' Memo of P&A Pursuant to Order for Further Briefing,

filed April 20, 2008, at p. 3:26-27.) They are wrong for two reasons. First, they are not entitled to

rely on Sections 1605A or 1610(g). Second, even if they did have the benefit of Section 1610(g),

---

[5] Plaintiffs often incorrectly refer to Section 1605A(g)(1), which concerns the creation of liens against real and tangible property in actions brought under Section 1605A. That subsection has nothing to do with the current proceeding. Plaintiffs are in fact relying on Section 1610(g)(1).

they would still not be entitled to the relief they are seeking here. Government agencies are emphatically not "deemed to be part of the sovereign state," as they contend. Rather, their assets have been made subject to execution of a judgment against the sovereign state itself, despite their juridical status as a separate entity, but subject to all other provisions of the FSIA and applicable law.

1.      **Sections 1605A And 1610(g) Of The FSIA Do Not Apply.**

The amendments to the FSIA on which Plaintiffs rely were enacted into law on January 28, 2008. National Defense Authorization Act ("NDAA"), P.L. 110-181, Div. A, Title X, Subtitle F, § 1083. These amendments, which are referred to generally as "Section 1083," include the addition of the provisions now codified at 28 U.S.C. Sections 1605A and Section 1610(g), the two specific sections that Plaintiffs cite. They also include a provision at Section 1083(c) that was not codified in Title 28 but is now included in U.S.C.A. as a note following Section 1605A. Section 1083(c) concerns *inter alia* the retroactive application of the 2008 amendments to matters like this one that were brought under former Section 1605(a)(7). Section 1083(c) provides that with respect to prior actions brought under former Section 1605(a)(7) "before the date of the enactment of this Act," the plaintiff may bring a motion in the court where the judgment was rendered to have the judgment given effect as if the action had been filed under Section 1605A. The plaintiff must establish that (a) the action was brought under Section 1605(a)(7), (b) it relied upon that section "as creating a cause of action," (c) it has been adversely affected by the fact that Section 1605(a)(7) failed to create a cause of action against the state, and (d) the action was before the court in some form at the time the amendments were enacted. The motion must be brought within sixty days of the enactment of the amendments. P.L. 110-181 § 1083(c)(2)(C)(ii). Plaintiffs have ignored this "retroactivity" provision and have failed to meet its requirements.

Judgment was entered in the underlying action in September 2007, several months before the enactment of the 2008 amendments to the FSIA. (Judgment, Ex. B to Request for Judicial Notice.) It was therefore not a "claim arising under Section 1605A" for purposes of Section 1083(c)(1). *See Simon v. Republic of Iraq*, 529 F.3d 1187, 1191-1192 (D.C. Cir. 2008) (since § 1605A(a)(2)(A)(i) "distinguishes between cases 'filed under this section' – i.e., § 1605A – and cases 'filed under section

1605(a)(7)' of the pre-amendment Act, a pending case obviously cannot be said to have been 'filed under' the new provision.") Actions in which judgment had already been rendered or that were pending at the time the 2008 amendments were enacted are treated as arising under Section 1605A only if they are refiled under that provision or are deemed filed under that provision by reason of Section 1083(c). *Simon*, 529 F.3d at 1191. Unless an action meets the requirements of Section 1083(c), the 2008 amendments to the FSIA, including both Section 1605A and Section 1610(g), simply do not apply. *See, e.g.*, *Holland v. Islamic Republic of Iran*, 545 F. Supp. 2d 120, 121 (D.D.C. 2008); *Haim v. Islamic Republic of Iran*, 2008 U.S. Dist. LEXIS 57901 (D.D.C. 2008) (decision by the Hon. Royce C. Lamberth); *Blais v. Islamic Republic of Iran*, 2008 U.S. Dist. LEXIS 57905 (D.D.C. 2008) (same). The underlying action in the current proceedings does not meet those requirements. The docket of the District Court in Washington D.C. in the underlying action shows that Plaintiffs did not bring a timely motion. (*See* Docket, Request for Judicial Notice, Ex. B.) It is doubtful that Plaintiffs could have made the showing required by Section 1083(c)(2)(A); but that is a moot point since they never brought a motion at all. *Id.*

### 2.    Even If Section 1610(g) Applied, The Result Would Be The Same.

Plaintiffs contend that the addition of subsection (g) to Section 1610 resolves any difficulties they might have had in the past in trying to reach the assets of Iran's agencies and instrumentalities. But Section 1610(g) eliminated only one obstacle. It did not completely rewrite the law of foreign sovereign immunity. It was the express intent of Congress in adding subsection (g) to overcome the effects of the *Bancec* decision with respect to judgments arising out of state-sponsored acts of terrorism. As noted above, *Bancec* held that the separate juridical status of the agencies and instrumentalities of foreign states must be respected and that judgment creditors therefore ordinarily cannot satisfy a judgment against a sovereign state by executing upon the assets of its separate agencies or instrumentalities. Section 1610(g) provides in pertinent part:

> (1) . . . the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of

[the "*Bancec* factors"].

28 U.S.C. § 1610(g).  The effect of subsection (g) is that if a judgment is now entered against Iran under new Section 1605A, the judgment creditor can seek execution upon the assets of the agencies and instrumentalities of Iran, even though those entities would otherwise be entitled to separate juridical status under *Bancec* and would, on that basis, be entitled to assert foreign sovereign immunity.

Although Section 1610(g) represents a significant change in the law, it did not turn the law of sovereign immunity upside down.  It did not, for example, overrule the Supreme Court's holding in *Bancec* that agencies and instrumentalities of foreign sovereign states are entitled to separate juridical status for other purposes.  It certainly did not provide that a sovereign state and its various agencies and instrumentalities could be treated as if they were a single entity, as Plaintiffs have asserted.  Section 1610(g) merely provides that the separate status of an agency or instrumentality will not entitle it to immunity from execution in cases of this kind.  It did not alleviate Plaintiffs' burden to identify a specific asset and a specific holder of that asset with admissible evidence.  It did not obviate the need for proper service of process on the holder of that asset under Section 1608(b), and it did not – and could not – allow courts to disregard the requirements of constitutional due process.  Section 1610(g) also did not change prior law to the effect that the immunity of agencies and instru-mentalities is waived only if they are "engaged in commercial activity in the United States" and only with respect to property "in the United States."  The language of subsection (g) in no way suggests that it was intended to take the place of subsection (b), where those limitations appear.  In fact, Congress amended subsection (b) in January 2008 to make it apply specifically to claims arising under new Section 1605A.  28 U.S.C. § 1610(b)(2); P.L. 110-181 § 1083(b)(3)(c).  If Congress had intended to eliminate the requirements that the property of the agency or instrumentality be "in the United States," it would have said so in the amendment.

Even if the 2008 amendments to Section 1610 were ambiguous, which they are not, there is a strong presumption that federal legislation was not intended to have extraterritorial effect.  "It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.  [citation

1   omitted]  This canon of construction . . . is a valid approach whereby unexpressed congressional

2   intent may be ascertained.  It serves to protect against unintended clashes between our laws and those

3   of other nations which could result in international discord.  *See* *McCulloch v. Sociedad Nacional de*

4   *Marineros de Honduras*, 372 U.S. 10, 20-22 (1963)."  *E.E.O.C. v. Arabian American Oil Co.*, 499

5   U.S. 244, 248 (1991).  As the Seventh Circuit Court of Appeals stated just last year: "The FSIA did

6   not purport to authorize execution against a foreign sovereign's property, or that of its instrumen-

7   tality, wherever that property is located around the world.  We would need some hint from Congress

8   before we felt justified in adopting such a breathtaking assertion of territorial jurisdiction."  *Autotech*

9   *Technologies*, 499 F.3d at 750 (7th Cir. 2007), citing *Small v. United States*, 544 U.S. 385, 388-389

10  (2005).  Since the FSIA embodies the "restrictive" view of sovereign immunity, any provision

11  purporting to waive sovereign immunity must be narrowly construed.  *Af-Cap Inc. v. Chevron*

12  *Overseas (Congo) Limited*, 475 F.3d 1080, 1087 (9th Cir. 2007).

13       There is likewise a strong presumption that federal legislation was not intended to violate an

14  existing rule of international law.  *Ma v. Ashcroft*, 257 F.3d 1095, 1114 (9th Cir. 2001); *see also*

15  *Restatement of the Law (Third) of the Foreign Relations Law of the United States*, § 114 ("Where

16  fairly possible, a United States statute is to be construed so as not to conflict with international law or

17  with an international agreement of the United States.").  It has long been the rule that "[a]n Act of

18  Congress ought never to be construed to violate the law of nations if any other possible construction

19  remains, and consequently can never be construed to violate neutral rights, or to affect neutral

20  commerce, further than is warranted by the law of nations as understood in this country."  *Murray v.*

21  *The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804) (Marshall, C.J.).

22       **D.      The Court Cannot Compel An Assignment Under The Facts Of This Case.**

23       Plaintiffs contend that California Code of Civil Procedure Section 708.510 allows the Court to

24  issue an order compelling Iran (and presumably specific agencies and instrumentalities of Iran, if they

25  can be identified) to assign its rights to accounts payable by the Shipping Lines.  For the reasons

26  already explained, the Court need never reach this question; but even if Plaintiffs could overcome all

27  of the obstacles imposed by federal law, Section 708.510 would still be of no use to them.  It is

28

1  simply not applicable to the facts of this case; and even if it were, there are strong equitable and

2  constitutional reasons why the Court should exercise its discretion not to apply it here.

3      1.    **C.C.P. Section 708.510 Does Not Apply To The Facts Of This Case.**

4      a.    **Section 708.510 Applies Only To "Judgment Debtors."**

5  Section 708.510 provides that the "court may order the judgment debtor to assign to the

6  judgment creditor or to a receiver . . . all or part of a right to payment due or to become due, whether

7  or not the right is conditioned on future developments. . . ." Cal. Code Civ. Proc. § 708.510(a). The

8  most obvious problem with applying this statute to the present case is that Iran itself is the only

9  "judgment debtor," yet Plaintiffs do not allege that any of the alleged debts are owed to Iran. The

10  Ports & Shipping Organization of Iran and the National Iran Oil Products Distribution Company are

11  not judgment debtors. (Judgment, Request for Judicial Notice, Ex. B.) The Court properly denied

12  Plaintiffs' motion to add them and other alleged agencies and instrumentalities to the judgment. As

13  noted, government agencies are presumed to be separate juridical entities. Unless Plaintiffs can

14  prove that these agencies are merely alter egos of Iran itself, they cannot be added to the judgment by

15  any court.

16      b.    **Section 708.510 Does Not Apply To Accounts Receivable.**

17  The court in *Quaestor Investments v. The State of Chiapas* held that "the general power to

18  withdraw money from one's bank, as a generic 'right to payment,' is not the sort of right

19  contemplated by § 708.510, and thus amenable to assignment pursuant to the statute." 1997 U.S.

20  Dist. LEXIS 24271 at *19. The list of items assignable under the statute, although not intended to be

21  exhaustive, is confined to such things as rents, commissions, royalties, and insurance policy loan

22  values. These "are in a crucial respect 'sums certain,' predictable amounts owed to the debtor by a

23  third party, capable of specific and relatively precise determination. Such income constitutes a

24  concrete amount 'in the hand' of the third party debtor." *Id.* In this respect, an account receivable is

25  similar to a bank account and not at all like the kinds of property listed in the statute. Further,

26  assignment is a particularly inapt method of executing on accounts receivable because it can only

27  apply to rights in existence at the time of the assignment. "A mere possibility, not coupled with an

28

interest, cannot be transferred." Cal. Civil Code § 1045.  Although a contingent right based on future developments is expressly assignable under Section 708.510, a right that does not yet exist at all cannot.  Accounts receivable that may come into being in the future cannot be assigned.

### c.       Section 708.510 Cannot Be Used To Circumvent Federal Law.

Plaintiffs' counsel conceded to the Court that Plaintiffs registered the judgment of the Washington D.C. District Court in this jurisdiction because there is no other state that features an "execution-by-assignment" statute like Section 708.510.  Given that the parties have no real connection to this State, and the alleged debt arose halfway around the world, there is no other conceivable reason for Plaintiffs to be here.  Yet Section 708.510 is not a magic trump card.  It comes into play by virtue of Federal Rule of Civil Procedure 69; but even Rule 69 recognizes that federal law still "governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1).  For example, it is clear that "[a]n assignment order [under Section 708.510] may not be issued with respect to assets which are immune from execution." *Quaestor Investments*, 1997 U.S. Dist. LEXIS 24271 at \*16.  Likewise, Section 708.510 cannot make up for the absence of subject matter jurisdiction or personal jurisdiction.  "The fact that Federal Rule of Civil Procedure 69(a) may (by way of state law) afford procedural mechanisms for enforcing an existing federal judgment against a third party not otherwise liable does not obviate the need to establish the jurisdiction of the federal court over the supplemental proceeding." *Weininger*, 462 F. Supp. 2d at 479 fn. 16.  "The Federal Rules of Civil Procedure can neither expand nor limit the jurisdiction of the federal courts, and the issue of jurisdiction remains distinct from the question of procedure." *Id.*

### 2.       Exercise Of The Court's Discretion To Apply Section 708.510 Would Result In An Injustice.

Section 708.510 does not require the Court to order an assignment wherever it applies but merely provides that the Court "may" order an assignment.  The statute further provides that "the court may take into consideration all relevant factors" in determining whether or not to issue such an order.  Cal. Code of Civ. Proc. § 708.510(c).  The most obvious "relevant factor" is that an assignment of Iran's rights would be nothing more than a convenient device whereby money would be taken from the Shipping Lines and other innocent third parties and handed over to Plaintiffs.  As a

practical matter the assignment would have no effect at all on Iran, which sponsored the tragic events in Beirut on which the underlying judgment is based.  There can be little doubt that Iran will not recognize any "deemed assignment" but will insist that the Shipping Lines and other innocent third parties pay for the goods and services they purchase in Iran.  A court-ordered assignment under Section 708.510 would make sense only if the Court actually had the power to enforce it against the assignor so that the Shipping Lines would not end up having to pay twice – once to Plaintiffs and once to Iran.  Because this Court lacks that actual power – regardless of whatever theoretical jurisdiction it may assert – an "assignment" in this case would be nothing more than a legal fiction.  As a practical matter it would not alter the legal relations between the Shipping Lines and Iran in the relevant arena where those alleged relations arose.  It would, in fact, add a third layer of legal fiction to these proceedings in addition to the two mentioned above: "[t]he legal fiction that assigns a situs to a debt, for garnishment purposes, wherever the debtor is found [and] . . . the legal fiction that a corporation is "present," for jurisdictional purposes, wherever it does business. . . ." _Rush_, 444 U.S. at 328.   As the Supreme Court pointed out long ago: "[t]he proper use of legal fiction is to prevent injustice," not to commit injustice.  _Union Refrigerator Transit Co. v. Kentucky_, 199 U.S. 194, 208 (1905).  "No fiction . . . shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience, which might result from a general rule of law." _Id._  In this case, if this Court exercises its discretion to "deem" the alleged debts to have been assigned to Plaintiffs, the Shipping Lines and other third parties will suffer a severe injustice.

### 3.   Application Of Section 708.510 Would Violate The Shipping Lines' Due Process Rights.

A fictional assignment in aid of execution that would require the Shipping Lines to pay money to Plaintiffs without actually relieving them of their obligations (if any) to governmental agencies in Iran would result in an unconstitutional "taking."  Iranian courts are not bound by the Full Faith and Credit Clause, and there can be little doubt that the Shipping Lines would have to pay twice or at least that they would be subject to suit on the debt and to arrest of their vessels.  The Supreme Court has held that a party "is deprived of due process of law if he is compelled to relinquish [property] without assurance that he will not be held liable in another jurisdiction or in a suit brought

JOINT OPPOSITION TO MOTIONS FOR AN ORDER                          -22-
ASSIGNING RIGHTS PURSUANT TO CCP § 708.510                                                    11144030.1
NO. 3-08 MC 80030-JSW

by a claimant who is not bound by the judgment." *Western Union Tel. Co. v. Commonwealth of Pennsylvania*, 368 U.S. 71, 75 (1961). Since the Court can offer no such assurance here, Plaintiffs' Motions must be denied.

## V.      CONCLUSION

The Shipping Lines respectfully submit that for all the foregoing reasons Plaintiffs' Motions should be denied and that Plaintiffs should not be permitted to pursue any further proceedings against them. It is not just that Plaintiffs have failed to make the requisite showing in these Motions but that it is impossible for them to make the requisite showing at all.

DATED:        September 15, 2008

NIXON PEABODY LLP

By: _____
Walter T. Johnson
Paul J. Hall
Isabelle L. Ord
Attorneys for Third Parties
MITSUI O.S.K. LINES, LTD.,
HANJIN SHIPPING CO., LTD., and
COMPAÑIA SUD AMERICANA DE
VAPORES