1  **DAVID J. COOK, ESQ. (State Bar # 060859)**
   **ROBERT J. PERKISS, ESQ. (State Bar # 62386)**
2  **COOK COLLECTION ATTORNEYS**
   **A PROFESSIONAL LAW CORPORATION**
3  165 Fell Street
   San Francisco, CA 94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA 94104-0270
5  Tel: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52.759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12
   DEBORAH D. PETERSON, Personal          )    CASE NO. 3:08-mc-80030-JSW (BZ)
13 Representative of the Estate of James C. )
   Knipple (Dec.), et al.,                )    MEMORANDUM OF POINTS AND
14                                         )    AUTHORITIES IN SUPPORT OF MOTION
              Plaintiffs,                  )    ON HEARING ON OBJECTIONS TO REPORT
15                                         )    AND RECOMMENDATION TO GRANT
   vs.                                     )    PLAINTIFFS' MOTION FOR ASSIGNMENT
16                                         )    OF RIGHTS PURSUANT TO FRCP 72(b)(2)
   ISLAMIC REPUBLIC OF IRAN, et al.,       )    AND LOCAL RULE 72-3(a)
17                                         )
              Defendants.                  )    Date:  December 19, 2008
18 _____ )    Time:  9:00 a.m.
                                                Courtroom: 2, 17th Floor
19                                              Judge: Jeffrey S. White

20                      I. **INTRODUCTION.**

21        Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C.

22 Knipple (Dec.), et al. ("Plaintiffs") were awarded Judgment on September 7, 2007 in the amount

23 of $2,656,944,877 to have and recover against ISLAMIC REPUBLIC OF IRAN arising out of the

24 10/23/83 bombing of the Marines Barracks at Beirut, Lebanon, at the hands of Hezbollah.

25        Plaintiffs now seek to enforce the judgment, specifically in light of the changes of the

26 Foreign Sovereignty Immunities Act ("FSIA") found at 28 U.S.C. § 1601 et seq.  On 1/28/08,

27 President Bush signed into effect legislation which effectively repealed the FSIA, in total, which is

28 found at (in part) 28 U.S.C. § 1605A.  The key parts of that new section permitting meaningful

1   collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

2       "(a) IN GENERAL. --
            "(1) NO IMMUNITY. – A foreign state shall not be immune from the
3       jurisdiction of courts of the United States or of the States in any case not otherwise
        covered by this chapter in which money damages are sought against a foreign state
4       for personal injury or death that was caused by an act of torture, extrajudicial
        killing. aircraft sabotage, hostage taking, or the provision of material support or
5       resources for such an act if such act or provision of material support or resources is
        engaged in by an official, employee, or agent of such foreign state while acting
6       within the scope of his or her office, employment, or agency."

7       "(g) PROPERTY IN CERTAIN ACTIONS –
            "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign
8       state against which a judgment is entered under section 1605A. and the property of
        an agency or instrumentality of such a state, including property that is a separate
9       juridical entity or is an interest held directly or indirectly in a separate juridical
        entity, is subject to attachment in aid of execution, and execution, upon that
10      judgment as provided in this section. regardless of –
            "(A) the level of economic control over the property by the
11      government of a foreign state;
            "(B) whether the profits of the property go to that government:
12          "( C) the degree to which officials of that government manage the
        property or otherwise control its daily affairs;
13          "(D) whether that government is the sole beneficiary in interest of
        the property; or
14          "(E) whether establishing the property as a separate entity would
        entitle the foreign state to benefits in United States courts while
15      avoiding its obligations.
            "(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any
16      property of a foreign state, or agency or instrumentality of a foreign state, to which
        paragraph (1) applies shall not be immune from attachment in aid of execution, or
17      execution, upon a judgement entered under section 1605A because the property is
        regulated by the United States Government by reason of action taken against that
18      foreign state under the Trading With the Enemy Act or the International Emergency
        Economic Powers Act."

19
        Plaintiffs seek recourse by the enforcment of post-judgment remedies pursuant to FRCP
20
21  69(a)(1) and as the judgment is currently registered in the United States District Court, Northern

22  District of California, under the California Enforcement of Judgment Law effective 7/1/83.  This

23  judgment was registered in this district under 28 U.S.C. § 1963 herein.

24      Plaintiffs have proceeded with a notice of motion and motion for assignment of rights

25  under C.C.P. § 708.510(a), in seeking essentially an assignment of rights of various monies due by

26  shipping companies when they avail themselves of the facilities of various Iranian harbors,

27  specifically Bander Abbas.  Furthermore, many shipping companies purchase "bunkered oil" from

28  Iranian facilities. leading to the payment for the bunkered oil.  Plaintiffs have filed and served a

1   motion for assignment of rights specifically as to CGM CGM (Docket Nos. 95 & 96), a copy of

2   the entire motion package is marked collectively *Exhibit "A"*. [1]  CMA CGM filed its opposition

3   marked *Exhibit "B"*.  Plaintiffs have filed a reply marked *Exhibit "C."*

4          The matter was heard on 10/8/08 and on 10/14/08 the Honorable Bernard Zimmerman.

5   Magistrate Judge, issued his REPORT AND RECOMMENDATION and ORDER thereon marked

6   *Exhibit "D."*  A copy of the TRANSCRIPT OF PROCEEDINGS (Docket No. 177) is marked

7   *Exhibit "E."*

8          Under FRCP 72(b)(2) and Local Rule 72-3(a), Plaintiffs have filed an objection to the

9   REPORT.  A copy of the Objections is marked *Exhibit "F."*

10         Under Local Rule 72-3(a), Plaintiffs now seek a hearing on the objection.  Local Rule 72-

11  3(a) provides as follows:

12         "(a) Form of Objection and Response.  Any objection filed pursuant to FrcivP 72(b)
           and 28 U.S.C. § 636(b)(1)(B) must be accompanied by a motion for de novo
13         determination, specifically identify the portions of the Magistrate Judge's findings,
           recommendation or report to which objection is made and the reasons and authority
14         therefor. To the extent consistent with FRCivP 72(b) and 28 U.S.C. § 636, Civil
           L.R. 7-2 governs presentation and consideration of such motions and objections."

15         By virtue of this motion, Plaintiffs seek a de novo determination of the underlying notice of

16  motion and motion for order compelling an assignment (CMA CGM), consistent with the

17  objections.  Plaintiffs primarily seek a determination in which the District Court would expand the

18  scope of the assignment order to accounts which may originate outside the United States.

19                          II.  **ANALYSIS OF OBJECTIONS.**

20  Plaintiffs object to the REPORT, as follows:

21  OBJECTION NO. 1:

22  The court stated at page 4, lines 14-19:

23         ". . . First. I recommend that the right to payment be one that exists within the
           United States. [Multiple citations omitted]."

24

25  BASIS OF OBJECTION: Under the changes to the Foreign Sovereignty Immunities Act.
    applicable herein under the National Defense Appropriations Act of 2008 (NDAA), Plaintiffs have

26

27         [1]  All exhibits are incorporated by reference as though fully set forth in this Memorandum
28  in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed
    contemporaneously herein.

a right to receive rights to payment of money, even though those rights might originate outside the United States.  Specifically, Section 1610(g)(1) does not bear the same limitation as found under Section 1610(a) et seq.  The effective changes to FSIA, represented by NDAA, are set forth in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

"(a) IN GENERAL. --
"(1) NO IMMUNITY.  – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –
"(1) IN GENERAL. – subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –
"(A) the level of economic control over the property by the government of a foreign state;
"(B) whether the profits of the property go to that government;
"( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
"(D) whether that government is the sole beneficiary in interest of the property; or
"(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
"(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE.  Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Without the ability to reach assets of Iran whose nexus might be located outside the United States, such as proposed here, would hinder these Plaintiffs in their attempts to recover on this judgment. The language of Section 1610(g)(1) is in stark contrast to Section 1605A ???, which limits any recovery limited to assets situated in the United States, the effect of which would be to severely curtail any ability to recover.  Specifically, the purposes of the changes to FSIA represented by NDAA was to broaden the scope of assets available to a judgment creditor, and specifically these judgment creditors.  In an assignment setting, under C.C.P. § 708.510, the court keeps and retains jurisdiction against Iran, and accordingly, the power of the assignment order should be coextensive with the scope of accessible relief under Section 1610(g)(1).

Accordingly, Plaintiffs seek an order which would expand the rights to payment of money for obligations which originate outside the United States and may be due and payable, or paid to Iran.

1   LEGAL ANALYSIS:

2          Congress passed, and The President signed, the National Defense Appropriations Act of

3   2008 ("NDAA"), the effect of which was to expand the scope of assets available for a judgment

4   creditor who suffered at the hands of a state sponsor of terrorism. These assets were expanded

5   under what is now 28 U.S.C. § 1610(g)(1). The language of 28 U.S.C. § 1610(g)(1) starkly

6   contrasts with current 28 U.S.C. § 1610(a)(7), in which the reach of a judgment creditor is limited

7   to "the property in the United States of a foreign state . . . used for a commercial activity in the

8   United States . . ." This language of course is precisely the language incorporated in the

9   Magistrate Judge's REPORT AND RECOMMENDATION which is the subject of this objection

10  and request for de novo review.

11         Congress knew and anticipated the difficulty of a judgment creditor reaching assets of a

12  foreign sovereign, and specifically Iran, in light of an approximately 29-year-old embargo. This is

13  represented by the sanctions imposed upon Iran, a copy of the summary entitled *What You Need To*

14  *Know About U.S. Economic Sanctions* from the U.S. Department of the Treasury, Office of

15  Foreign Assets Control is marked ***Exhibit "G."*** Furthermore, given that the language between

16  current Section 1610(a)(7) and Section 1610(g)(1), indicates that Section 1610(g)(1) specifically

17  leaves out the limitations of the U.S. "nexus," leads to the conclusion that the reach of a judgment

18  creditor goes beyond the territorial limits of the U.S.

19         Plaintiffs anticipate that CMA CGM will argue that the reach of post-judgment process is

20  traditionally limited to the jurisdiction of the U.S., and that such a judgment creditor could not use

21  a U.S. court post-judgment order to reach assets, per se, which are outside of the U.S. territorial

22  reach. This argument, however, fails in light of the ultimate reach of an assignment order under

23  the unique provisions of C.C.P. § 708.510(a), in which a judgment creditor effectively would oust

24  a judgment debtor of the underlying obligation, and therefore be entitled to enforce such an

25  obligation. To the extent that the obligation might originate outside the U.S., as claimed here,

26  would not necessarily serve as a bar to the assignment, and such issues may or may not be raised,

27  as the case may be, in any ensuing litigation which may be brought by the judgment creditor

28  against the assignee in the assigned obligation. For example, CMA CGM might waive such a

1   jurisdictional defense, or may have such a presence for purposes of "general jurisdiction" that the

2   "nexus" of the underlying obligation might ultimately become marginal.  The prospect of the

3   potential jurisdictional reach of an assignment order is a matter yet to be tested and, by its nature,

4   could and would only be tested. in the event that the assignment order is granted and that these

5   Plaintiffs seek to enforce action.  Limiting the scope of an assignment to assets which are

6   "tethered" to the United States. not only flies in the face of the extensive reach of Section

7   1610(g)(1), but preconditioning such a reach might preadjudicate the scope of such an order and

8   violate the principle of justiciability.  By limiting the scope of an assignment order to an obligation

9   "tethered" to the U.S. would, by its nature, limit the scope of the assignment and prevent these

10  judgment creditors from reaching obligors who would be subject to the general jurisdiction of the

11  courts of the U.S.

12      OBJECTION NO. 2:

13      The court stated at page 4, lines 19-24 :

14      "Second, I recommend that the right to payment be derived from property of Iran
        that was used for a commercial activity in the United States. [Multiple citations
15      omitted]

16      BASIS OF OBJECTION: Under NDAA, and specifically Section 1610(g)(1), Plaintiffs are
        not bound by the limitation that the right to payment be derived from property of Iran that was
17      used for a commercial activity in the United States.  Rather, Section 1610(g)(1) provides for no
        such limitation. permitting a Judgment Creditor to reach either property and/or a right to payment
18      of money outside the United States.

19      Again. the Magistrate Judge's limitation tethers Plaintiffs to assets of Iran "used for a
        commercial activity in the United States" which by its very nature is a limited asset base.  In this
20      setting, the subject matter of the assignment motion are obligations payable by an international
        cargo carrier. CMA CGM, which ostensibly does business out of its Marseille office, a matter
21      which is not conceded.  Accordingly, the limitation imposed by the Magistrate Judge restricts
        Plaintiffs' ability to reach the revenue stream payable by CMA CGM to Iran, as it originates both
22      outside the United States and related to a commercial activity likewise outside the United States.

23      LEGAL ANALYSIS:

24      Again, the limitation imposed by the court is identical to the first objection, in which the

25  court has limited the scope of the assignment order to an obligation arising out of activities in the

26  U.S.  Clearly, the likelihood of such an obligation arising out of an activity in the U.S.. in which

27  Iran is a beneficiary, would be severely limited, both constrained by current sanctions. and

28  moreover, the limitations imposed by OFAC granting (or denying) license.  In light of the

1   tightening of sanctions imposed by the U.S. government over the last 24 months, the general

2   likelihood of Iran maintaining a large commercial business in the U.S. would be limited, at very

3   best. Plaintiffs accordingly seek to avail themselves of the full reach of assets made available

4   under Section 1610(g)(1, rather than limited to assets which are essentially found on U.S. soil.

5       OBJECTION NO. 3:

6       The court stated at page 4, lines 27-18; page 5, lines 1-2:

7       "Finally, I recommend that the assignment be limited to existing payment rights,
        even if the right to payment has not yet come due or will come due in the future."
8
        BASIS OF OBJECTION: C.C.P. § 708.510 provides for the assignment of rights, and
9   nothing in the statute requires that the rights come into "fruition" as of the date of the assignment.
    Plaintiffs therefore are entitled to seek an assignment of rights, whose existence might arise in the
10  future, including those rights which are "non-existent." C.C.P. § 708.510 provides for the
    assignment of rights, without limitation as to whether and/or when those rights would or would not
11  arise.

12      The exact language of C.C.P. § 708.510 does not require that the right be in existence and
    the list of potential rights are by their nature recurring or "evergreen," meaning that these rights
13  might well originate in the future, such as rents, commissions, royalties, and other contingent
    rights. As long as the right is defined, even though not in existence, Plaintiffs would be entitled to
14  have that right assigned. Requiring that the right be in existence is beyond the scope of C.C.P. §
    708.510, who only requires that the right be defined with such particularity that the judgment
15  debtor be informed as to what right might be assigned, and therefore enabling the judgment debtor
    to comply with the court's order, file opposition, or seek an exemption.
16
        LEGAL ANALYSIS:
17
        The Magistrate Judge limited those rights which are essentially in existence, even though
18
    conditional upon future events. The language, however, of C.C.P. § 708.510(a) defines such rights
19
    generically, but does not necessarily mandate that such rights be "in existence," The California
20
    Legislature made it clear that such rights might arise in the future, and described them generically
21
    as rents, commissions, royalties, payments due from a patent or copyright, insurance policy loan
22
    value, etc. Nothing in the language of C.C.P. § 708.510(a) mandate that those specific rights (or
23
    other rights generally described therein) be actually in existence, and might arise from time to
24
    time. For example, rent is recurring on a monthly basis. Needless to say, rent would only accrue
25
    within the terms of the lease, and would be recurring on a periodic basis. A "commission" by its
26
    nature would only arise particularly upon certain events, and may by its nature recur from time to
27
    time.
28

1    The Magistrate Judge raised the issue that the judgment debtor is entitled to notice for

2    purposes of compliance of what right would be the subject of the assignment, in light of the fact

3    that the judgment debtor might be subject to a continuing order to show cause re assignment, and

4    potentially contempt.  Resolving this issue would be clearly defining the right, without regard to

5    whether or not the right does or does not exist at this time.  Plaintiffs in this case have clearly

6    defined the rights, with sufficient particularity, that a person of average intelligence would clearly

7    understand what would be the subject of an order to show cause compelling an assignment, or

8    potentially an order to show cause re contempt for the interference in the assignment.

9    OBJECTION NO. 4:

10    The proposed form of order states as follows at page 1, lines 23-28; page 2, lines 1-12:

11    **"IT IS FURTHER ORDERED** that by November 20, 2008, Iran must assign to
      plaintiffs, care of their attorney, David J. Cook, Cook Collection Attorneys, P.L.C.,
12    165 Fell Street, Third Floor, San Francisco, CA 94102, pursuant to F.R.Civ.P. 69(a)
      and California Code of Civil Procedure section 780.510(a), **all or part of any**
13    **existing right to payment in the United States, due or to become due, whether**
      **or not that right is conditioned on future developments, from and owing by**
14    **CMA CGM, arising out of any commercial activity pertaining, specifically, to**
      **the use of any harbor, docking, wharf, drayage, loading or other harbor-like**
15    **facilities in the United States, along with and including the sale of bunkered oil**
      **and/or fuel provided, sold, delivered, or vended to CMA CGM by Iran in the**
16    **United States,** for the purpose of satisfaction, in part or in whole, of the judgment
      of $2,656,944,877.00 in <u>Peterson vs. Islamic Republic of Iran</u>, Case No. 01-2094
17    (RCL) and 01-2684 (RCL) filed in the United States District Court for the District
      of Columbia.
18
      BASIS OF OBJECTION: Plaintiffs object to the proposed form of order, the following
19    language as highlighted above.  The basis of the objection is the inclusion of the language ". . .
      facilities in the United States . . . and . . . vended to CMA CGM by Iran in the United States. . . ."
20    Plaintiffs object as to the limitations as to the rights relating to "facilities in the United States," and
      the fact that the sale of the "bunkered oil" be in the United States.  Under Section 1610(g)(1),
21    Plaintiffs are not bound by such a limitation or restriction thereof.

22    The precise language of this order incorporates the limitations as set forth in the REPORT
      AND RECOMMENDATION, which objections are specifically incorporated herein.
23
      LEGAL ANALYSIS:
24
      The form of the assignment as proposed by the court contains many of the limitations
25
      which are subject to Objections 1 and 2, and are therefore incorporated by reference.
26
                              **III.  STANDARD OF REVIEW.**
27
      The standard of review is de novo.  *See* 28 U.S.C. § 636(b)(1); FRCP 72(b); ***Bhan v. NME***

28

1  | *Hospitals, Inc.* (9th Cir. 1991) 929 F.2d 1404, 1414; *Hosna v. Groose* (8th Cir. 1996) 80 F.3d 298,

2  | 306.  In *Bhan v. NME Hospitals, Inc., supra*, the court stated as follows:

3  | "A district court may refer pretrial issues to a magistrate under 28 U.S.C. Sec.
   | 636(b)(1) (1988). The statute provides that the magistrate's decision on a
4  | nondispositive issue will be reviewed by the district judge under the clearly
   | erroneous standard. United States v. Raddatz, 447 U.S. 667, 673, 100 S.Ct. 2406,
5  | 2411, 65 L.Ed.2d 424 (1980) (describing the difference between dispositive and
   | nondispositive issues in a case concerning dispositive issues); see 28 U.S.C. Sec.
6  | 636(b)(1). Decisions on dispositive issues will be reviewed de novo. Raddatz, 447
   | U.S. at 673, 100 S.Ct. at 2411; 28 U.S.C. Sec. 636. Nondispositive issues include
7  | discovery sanctions. Merritt v. International Bhd. of Boilermakers, 649 F.2d 1013,
   | 1018 (5th Cir. Unit A June 1981); 12 C. Wright & A. Miller, Federal Practice &
8  | Procedure Sec. 3076.5, at 44 (Supp.1990)." (P. 1414)

9  | Plaintiffs have met their burden by way of specific written objections to the proposed findings, in

10 | that these objections specifically point out the limitations imposed by the district court which these

11 | Plaintiffs argue are inconsistent with the 2008 changes to the FSIA.  Plaintiffs are free to have this

12 | court reconsider the entirety of Plaintiffs' underlying motion, in that the court would consider

13 | Plaintiffs' claims, the obvious defenses proffered by CMA CGM in the reply.  *See Velez-Padro v.*

14 | *Thermo King de Puerto Rico, Inc.* (1st Cir. 2006) 465 F.2d 31, 32, in which the court stated as

15 | follows:

16 | "Rule 72(b) provides that a party may serve and file "specific, written objections to
   | the proposed findings and recommendations." Local Rule 72(d) further provides
17 | that such objections "shall specifically identify the portions of the proposed
   | findings and recommendations to which objection is made and the basis for such
18 | objection." Vélez contends that his objections complied with both rules and that the
   | court erred in refusing to perform de novo review. The objections were fourteen
19 | pages in length and presented a detailed challenge of the Report's factual and legal
   | analysis of Vélez's claims.
20 |
   | Conclusory objections that do not direct the reviewing court to the issues in
21 | controversy do not comply with Rule 72(b). *See Sackall v. Heckler*, 104 F.R.D.
   | 401, 403 (D.R.I. 1984); *see also Miller v. Currie* 50 F.3d 373, 380 (6th Cir. 1995)
22 | ("general objections" insufficient); *Howard v. Secretary of HHS*, 932 F.2d 505,
   | 508-09 (6th Cir. 1991)(same); *cf. Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741
23 | (7th Cir. 1999) (party seeking review must specify the issue for which review is
   | sought but not the legal or factual basis.) Vélez's objections were detailed and gave
24 | specific notice of his grievance. By any measure, his objections pass muster under
   | the rules. That they may be read as echoing arguments made before the magistrate
25 | judge does not alter that conclusion. The district court erred in failing to perform
   | the required de novo review.[1] (p. 32)
26 |
   | By virtue of this motion, Plaintiffs seek an order which would grant Plaintiffs' assignment
27 |
   | motion, as already recommended by the Magistrate Judge, but expand its reach to assets.
28 |

1   specifically receivables, which are unrestricted in their jurisdictional reach.

2        Plaintiffs anticipate that CMA CGM will vociferously argue, both that Plaintiffs' relief is

3   limited to the rights prior to the enactment of NDAA, and moreover, under any set of facts, that the

4   receivable due Iran must originate from a United States commercial transaction.  This is precisely

5   the arguments proffered by CMA CGM, and in which these Plaintiffs in their reply take issue

6   therewith.

7        Plaintiffs seek a hearing from this court on a de novo basis, the effect of which is to expand

8   the scope of assets available to these Plaintiffs for purposes of enforcement of this judgment.

9   These are precisely the same issues raised in the underlying motion and the reply filed by

10  Plaintiffs.

11                              IV.  **CONCLUSION.**

12       Plaintiffs' instant motion seeks before this court a reconsideration of the Magistrate

13  Judge's REPORT AND RECOMMENDATION, and specifically a reconsideration of the

14  underlying motion itself, in that Plaintiffs seek the order compelling an assignment, but in which

15  the assets would be free of any constraints in mandating that the assets have a U.S. nexus.

16  Plaintiffs seek an order in which all obligations due from CMA CGM to Iran be the subject of

17  Plaintiffs' proposed order compelling an assignment, even though such obligations may arise from

18  transactions which originate outside the U.S.

19  DATED:  October 24, 2008               COOK COLLECTION ATTORNEYS

20
                                          By:  ___/s/ David J. Cook_____
21                                        DAVID J. COOK, ESQ. (SB# 060859)
                                          Attorneys for Plaintiffs
22                                        DEBORAH D. PETERSON, Personal Representative
                                          of the Estate of James C. Knipple (Dec.), et al.
23

24  F:\USERS\DJCNEW\petersonsf.objreport

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION ON HEARING ON
OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION . . .
CASE NO. 3:08-mc-80030-JSW (BZ)                                              10