DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ. (State Bar # 62386)
**COOK COLLECTION ATTORNEYS**
**A PROFESSIONAL LAW CORPORATION**
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | CASE NO. 3:08-mc-80030-JSW (BZ) <br><br> DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF MOTION ON HEARING ON OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO FRCP 72(b)(2) AND LOCAL RULE 72-3(a) <br><br> Date: December 19, 2008 <br> Time: 9:00 a.m. <br> Courtroom: 2, 17th Floor <br> Judge: Jeffrey S. White |

I, DAVID J. COOK, hereby declare and state as follows:

1. I am one of the attorneys of record for Plaintiffs in the above-entitled action, am duly authorized to practice before all courts in the State of California, and am familiar with the facts and circumstances in this action.

2. Attached hereto marked *Exhibit "A"* is a true and correct copy of the entire motion package of the NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) **[HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line]** (Docket Nos. 95 & 96).

3. Attached hereto marked *Exhibit "B"* is a true and correct copy of the OPPOSITION OF NON-PARTY CMA CGM TO PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(A) AND F.R.C.P. 69(A).

4. Attached hereto marked *Exhibit "C"* is a true and correct copy of the MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO NON-PARTY CMA CGM TO PLAINTIFFS' MOTION COMPELLING ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510 AND FRCP 69(a).

5. Attached hereto marked *Exhibit "D"* is a true and correct copy of the REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS (CMA CGM) and ORDER GRANTING PLAINTIFFS' MOTION COMPELLING ASSIGNMENT OF RIGHTS [CMA CGM] issued by the Honorable Bernard Zimmerman, Magistrate Judge.

6. Attached hereto marked *Exhibit "E"* is a true and correct copy of the TRANSCRIPT OF PROCEEDINGS (Docket No. 177) dated October 8, 2008.

7. Attached hereto marked *Exhibit "F"* is a true and correct copy of the OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS; AND REQUEST FOR DE NOVO REVIEW filed by Plaintiffs.

8. Congress knew and anticipated the difficulty of a judgment creditor reaching assets of a foreign sovereign, and specifically Iran, in light of an approximately 29-year-old embargo. This is represented by the sanctions imposed upon Iran, a true and correct copy of the summary entitled *What You Need To Know About U.S. Economic Sanctions* from the U.S. Department of the Treasury, Office of Foreign Assets Control is attached hereto marked *Exhibit "G."*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 24, 2008.

                                         /s/ David J. Cook
                                      DAVID J. COOK, ESQ. (SB# 060859)

F:\USERS\DJCNEW\petersonsf.objreport

**EXHIBIT "A"**

DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ. (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | CASE NO. 3:08-mc-80030-JSW (BZ) <br><br> NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) <br> **[HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line]** <br><br> Date: September 3, 2008 <br> Time: 10:00 a.m. <br> Courtroom: G, 15th Floor <br> Magistrate Judge: Bernard Zimmerman |

TO THE ISLAMIC REPUBLIC OF IRAN, AND TO ITS ATTORNEYS OF RECORD, AND **CMA CGM S.A. & CMA CGM The French Line** (hereinafter "Shipping Line"), AND ITS ATTORNEYS, IF ANY:

PLEASE TAKE NOTICE that on the 3rd day of September, 2008 at the hour of 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom G before the Honorable Bernard Zimmerman, Magistrate Judge of the United States District Court, Northern District of California, at the courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al. ("Plaintiffs") will and do hereby move this court for an order or relief, as follows:

EXHIBIT A

NOTICE OF MOTION AND MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW (BZ)

1

1. For an order compelling THE ISLAMIC REPUBLIC OF IRAN (hereinafter "Iran") to assign to Plaintiffs all rights to payment of money, and accounts, accounts receivable, due and payable, or in the future, or conditional upon some future events, from and owing by the Shipping Line herein, arising out of the use of any harbor, docking, wharf, drayage, loading or unloading facilities, and other facilities provided by any dock, harbor, pier, warehouse, wharf, or other harbor-like facilities, along with and including the sale of bunkered oil and/or fuel provided, sold, delivered, or vended to the Shipping Line by Iran,[1] hereinafter collectively "Harbor and Bunkered Fuel Rights."

The basis of this motion is that the Shipping Line described herein frequents the docks, harbors, piers, and/or wharfs of Iran, and may purchase from time to time bunkered oil or fuel from Iran, and therefore may owe from time to time various sums of money due Iran.

Plaintiffs seek an order compelling Iran to assign all of these rights due, or which become due, or are conditional, to and in favor of Plaintiffs for purposes of satisfaction of the judgment, either in part or in whole.

This motion is based upon this Notice, the attached Motion, Memorandum of Points and Authorities, the Declaration of David J. Cook, Esq., upon all pleadings, papers and other matters on file herein, all matters which this court may take judicial notice hereof, which include but are not limited to, all papers, pleadings and other matters on file herein in that certain action known as *DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple (Dec.), et al., vs. ISLAMIC REPUBLIC OF IRAN, et al.*, United States District Court for the District of Columbia, Consolidated Civil Actions: 01-2094 (RCL) and 01-2684 (RCL), all other matters which the court may take judicial notice thereof, and upon all oral evidence and argument which may be presented at the hearing hereof.

DATED: July 16, 2008                COOK COLLECTION ATTORNEYS

By: ___/s/ David J. Cook___
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs
DEBORAH D. PETERSON, etc.

---

[1] Iran includes all agencies and instrumentalities.

NOTICE OF MOTION AND MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW (BZ)     2

1  **DAVID J. COOK, ESQ. (State Bar # 060859)**
   **ROBERT J. PERKISS, ESQ. (State Bar # 62386)**
2  **COOK COLLECTION ATTORNEYS**
   **A PROFESSIONAL LAW CORPORATION**
3  165 Fell Street
   San Francisco, CA 94102
4  Mailing Address: P.O. Box 270
   San Francisco, CA 94104-0270
5  Tel: (415) 989-4730
   Fax: (415) 989-0491
6  File No. 52,759

7  Attorneys for Plaintiffs
   DEBORAH D. PETERSON, Personal Representatives
8  of the Estate of James C. Knipple (Dec.), et al.

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12
   DEBORAH D. PETERSON, Personal           )   CASE NO. 3:08-mc-80030-JSW
13 Representative of the Estate of James C. )
   Knipple (Dec.), et al.,                  )   MOTION FOR AN ORDER COMPELLING
14                                          )   ASSIGNMENT OF RIGHTS PURSUANT TO
                  Plaintiffs,               )   C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
15                                          )
   vs.                                      )   [HARBOR AND BUNKERED FUEL
16                                          )   RIGHTS - CMA CGM S.A. & CMA CGM
   ISLAMIC REPUBLIC OF IRAN, et al.,        )   The French Line]
17                                          )
                  Defendants.               )   Date: September 3, 2008
18 _____ )   Time: 10:00 a.m.
                                                Courtroom: G, 15th Floor
19                                              Magistrate Judge: Bernard Zimmerman

20        Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C.

21 Knipple (Dec.), et al. ("Plaintiffs") will and do hereby move this court for an order or relief, as

22 follows:

23        1. For an order compelling THE ISLAMIC REPUBLIC OF IRAN (hereinafter "Iran") to

24 assign to Plaintiffs all rights to payment of money, and accounts, accounts receivable, due and

25 payable, or in the future, or conditional upon some future events, from and owing by the Shipping

26 Line herein, arising out of the use of any harbor, docking, wharf, drayage, loading or unloading

27 facilities, and other facilities provided by any dock, harbor, pier, warehouse, wharf, or other

28 harbor-like facilities, along with and including the sale of bunkered oil and/or fuel provided, sold,

delivered, or vended to **CMA CGM S.A. & CMA CGM The French Line** (hereinafter "Shipping Line") by Iran,[2] hereinafter collectively "Harbor and Bunkered Fuel Rights."

The basis of this motion is that the Shipping Line described herein frequents the docks, harbors, piers, and/or wharfs of Iran, and may purchase from time to time bunkered oil or fuel from Iran, and therefore may owe from time to time various sums of money due Iran.

Plaintiffs seek an order compelling Iran to assign all of these rights due, or which become due, or are conditional, to and in favor of Plaintiffs for purposes of satisfaction of the judgment, either in part or in whole.

This motion is based upon this Motion, the Notice, the Memorandum of Points and Authorities, the Declaration of David J. Cook, Esq., upon all pleadings, papers and other matters on file herein, all matters which this court may take judicial notice hereof, which include but are not limited to, all papers, pleadings and other matters on file herein in that certain action known as *DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple (Dec.), et al., vs. ISLAMIC REPUBLIC OF IRAN, et al.*, United States District Court for the District of Columbia, Consolidated Civil Actions: 01-2094 (RCL) and 01-2684 (RCL), all other matters which the court may take judicial notice thereof, and upon all oral evidence and argument which may be presented at the hearing hereof.

DATED: July 16, 2008                COOK COLLECTION ATTORNEYS

By: ___/s/ David J. Cook___
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple
(Dec.), et al.

F:\USERS\DJCNEW\petersonsf.assigncma

---

[2] Iran includes all agencies and instrumentalities.

MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)
[HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line]
CASE NO. 3:08-mc-80030-JSW                                                              2

DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ. (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | CASE NO. 3:08-mc-80030-JSW (BZ) <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) <br><br> [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] <br><br> Date: September 3, 2008 <br> Time: 10:00 a.m. <br> Courtroom: G, 15th Floor <br> Magistrate Judge: Bernard Zimmerman |

## I. INTRODUCTION.

Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al. ("Plaintiffs") move this court for an order compelling and ordering Defendants ISLAMIC REPUBLIC OF IRAN ("Iran") to assign to Plaintiffs, Judgment Creditors, all of those certain contractual and related rights, described herein as follows: All rights to payment of money, accounts, accounts receivable, due and payable, or due in the future, or conditional upon future events, from and owing by the Shipping Line herein, arising out of the use of any harbor, docking, wharf, drayage, loading or unloading facilities, and other facilities

provided by any dock, harbor, pier, warehouse, wharf, or other harbor-like facilities, along with and including the sale of bunkered oil and/or fuel to **CMA CGM S.A. & CMA CGM The French Line** ("Shipping Line") herein, hereinafter collectively "Harbor and Bunkered Fuel Rights," provided, sold, delivered or vendored by Iran. This is represented by the shipping schedule of the Shipping Line which shows that the Shipping Line frequents Iranian ports, harbors and other facilities. The Shipping Line's schedule is set forth by way of its website which shows its traffic, marked *Exhibit "A."* [1] **Specifically, Exhibit "A" shows that the Shipping Line serves Bandar Abbas, which is a major Iranian port as listed Exhibit "A-1." The Shipping Line services multiple American ports as listed on Exhibit "A-2."**

As Plaintiffs have confirmed that the Shipping Line frequents Iranian harbors, ports, wharfs, docks, and other harbor-like facilities, Plaintiffs likewise have determined that Iran has a whole list of tariffs which Iran charges oceangoing freighters, carriers, tankers, and the like, marked *Exhibit "B."* These tariffs show the charges imposed by Iran upon oceangoing carriers, such as the Shipping Line as described herein.

Plaintiffs have also ascertained from a press release undertaken by the ports and shipping organization of the Department of Transportation of Iran, that Iran sells bunkered oil. The press release dated Sep-Oct 2007 and marked *Exhibit "C"* specifically states as follows:

Iran Will Earn 1 Billion USD from Bunkering.

> According to the National Iranian Oil Products Distribution Co.'s plans Islamic Republic of Iran set a goal to boost its income derive from ship bunkering to 1 billion USD annually.

> Eng. Ahmadinezhad Vice president of National Iranian Oil Products Distribution company stated: ". . . [a]ccording to P.S.O. statistics 3500 foreign ships and 2200 domestic ships of above 1000 DWT call the Iranian southern ports annually and as a result Iran enjoys the lucrative regional market of the Persian Gulf and the Oman Sea." He added; "by the end of the current year with 2000 foreign ships added to the Iranian ships now bunkering by NIOPD Company, 2 million tons of bunker fuel will be sell by the company which will generate 640 million USD of income to the country." He continued: NIOPDC has set a goal to boost the country's income from bunkering to 1 billion USD annually by 2010.

---

[1] All exhibits are incorporated by reference as though fully set forth in this Memorandum in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed contemporaneously herein.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW (BZ)

Plaintiffs accordingly seek an order compelling Iran to assign all of these rights, and each of the same, to Plaintiffs, as owed by the particular Shipping Line to Iran. With a court-ordered assignment in hand, Plaintiffs can commence the process of collecting the flow or stream of revenue due from the Shipping Line and seek to ameliorate the losses represented by this very large Judgment.

## II. THE ASSETS OF IRAN ARE NOW SUBJECT TO ENFORCEMENT OF A CIVIL JUDGMENT.

Prior to approximately January 2008, a Judgment Creditor of a foreign state such as Iran was greatly hobbled in any attempt by which to recover, based upon the Foreign Sovereignty Immunities Act ("FSIA") and various exceptions. Congress, recognizing that the Marines needed to be compensated, ultimately enacted an amendment to the FSIA designed to facilitate the collection through enactment to 28 U.S.C. § 1605A. The key parts of that new section permitting meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), as follows:

"(a) IN GENERAL. --
   "(1) NO IMMUNITY. – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

"(g) PROPERTY IN CERTAIN ACTIONS –
   "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –
      "(A) the level of economic control over the property by the government of a foreign state;
      "(B) whether the profits of the property go to that government;
      "( C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
      "(D) whether that government is the sole beneficiary in interest of the property; or
      "(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
   "(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW (BZ)     3

regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Accordingly, the FSIA no longer serves as a bar, and the assets of Iran are now subject to clear levy and execution.

### III. LOCAL DOCKETING.

Plaintiffs have registered the Judgment with the United States District Court, Northern District of California, Case No. 3:08-mc-80030-JSW. The basis of registering the Judgment under 28 U.S.C. § 1963 is the good faith belief that in fact assets of Iran might be subject to levy and execution in the Northern District of California.

### IV. NATURE OF ASSETS SUBJECT TO LEVY AND EXECUTION - TARIFFS AND DOCKET FEES AND CHARGES.

Plaintiffs have determined through a multitude of sources, which include the individual shipping schedules, other websites, and other sources, that the Shipping Line transports, handles, delivers, picks up, loads and offloads products, such as and including general cargo, containers, bulk goods, dry goods, agricultural products, and other products which may include, but are not limited to, gasoline and refined petroleum products through Iranian harbors, docks terminals and off loading facilities.

These Shipping Lines also dock in United States harbors, ports, terminals and other locales subject to United States jurisdiction. These Shipping Lines are ostensibly subject to the United States jurisdiction for an entire range of issues, such as commerce, entry in the U.S. territorial waters, compliance with U.S., State and local environmental laws, and compliance with an entire array of maritime laws, shipping and other laws.

The Ministry of Roads and Transportation generally oversees the PORTS & SHIPPING ORGANIZATION ("P.S.O.") of Iran who manage the docks, harbors and related facilities, which is confirmed by the website the P.S.O. marked *Exhibit "D."* "The history of Ports & Shipping Organization" states as follows:

> "On May 28, 1952, a decree comprising 18 articles for registration and utilization of vessels was approved by the Cabinet. Based on these regulations, using vessels in domestic and coastal waters was depended on their registration and issuance of their certificate of registration in one of the Iranian ports. In 1959, following an agreement reached between the Ministry of Roads and Ministry of Customs &

Monopolies, "General Agency of Ports and Shipping" was transferred from the Ministry of Roads and Transportation to the Ministry of Customs & Monopolies. On May 25th, 1960, the title of the "General Directorate of Ports and Shipping" was changed to "Ports and Shipping Organization" and its responsibilities and functions were expanded. Based on these developments, the organization was assigned the task of exercising the authority of the Government to control all ports and maritime affairs, implementation of port and coastal shipping regulations, promoting shipping and commerce, collecting port duties and taxes and registering Iranian vessels.

On Oct. 31st, 1964, the maritime law of Iran including 914 articles was put into effects, and on Jul. 3rd, 1966, the present ports and shipping organization together with its staff, budget and properties was separated from the Ministry of Economy and Finance. On Feb. 2nd, 196, the organization gained the status of a legal entity and its functions, rights, and organizational chart were formally declared. Internal regulations on financials transactions and on the employment of staff of the organization were approved respectively on 14 Jul, 1970. The organization was separate again from the Ministry of Finance and was transferred to the Ministry of Roads and transportation in 1974."

The website of the P.S.O. marked *Exhibit "D"* "TERMS OF REFERENCE" at page 2 of 2, states as follows:

"The Supreme Council consists of the following Ministers:
1-Ministry of Financial and Economic Affairs
2-Ministry of Roads and Transportation
3-Ministry of Defence
4-Deputy president and Head of Planning and Budget Organization "PBO"
5-Commander of the Navy"

Iran charges these Shipping Lines an entire array of charges for the privilege of utilizing Iranian docks, harbors, terminals and other maritime facilities. This label is illustrative as seen by, e.g., the entire range of charges imposed by Iran through its Manual of Tariffs Applicable to Vessels and Cargo in the Ports of the Islamic Republic of Iran, marked *Exhibit "B."* For purposes of illustration, these fees cover an entire array of services: duties, pilotage charges, charges for garbage collection, dredging charges, wharfage charges, charges for towage, charges for bilge water, overtime charges, entry duties, unloading and loading charges, towage charges, light duties, duties and port charges for non-container cargo's, stevedoring charges, storage charges, charges for containers, repositioning the container on the vessel, moving, loading and unloading the containers, crane standby, label removing, flat rocking of the container, tarpaulin covering of the open top container, administrative and current charges, plumbing charges, time renting of equipment, lashing and unlashing charges, quarantine service charges, communications charges, diving charges, collecting and cleaning oil charges, registry duties of a vessel registry of

transactions on ships and vessels, and many others.

To offload or load products of any type in the docks and harbors of Iran would require payment of fees and charges imposed by P.S.O. and therefore constitute an account, account receivable, right to payment of money or general intangible in favor of Iran and therefore subject to levy and execution. Any one or all of these Shipping Lines (or their agents, representatives, or others on their behalf as their agents) would be indebted to Iran for payment for these related services. Iran is no longer protected by the FSIA, and therefore any amounts due from these Shipping Lines are subject to an order compelling an assignment under C.C.P. § 708.510(a).

These Shipping Lines service U.S. ports, have local agents and representatives, transport products from the U.S. to foreign countries, transport products from foreign countries to the United States. These ships are seen lining up in local ports clearly displaying their name on the side of large container ships such as EVERGREEN, HAPAG LLOYD, OOCL, YANG MING, etc.

## V. ADDITIONAL ASSETS SUBJECT TO LEVY AND EXECUTION: BUNKERED FUEL.

The National Iran Oil Products Distribution Co., which is a subsidiary of the Ministry of Petroleum of the Islamic Republic of Iran, sells approximately two million tons of bunkered fuel to approximately 3,500 foreign ships which visit various harbors, docks, off loading, terminals, wharfs, and other marine facilities of Iran, in which some or all of these ships are owned and operated by the Shipping Line, which is the subject of this motion. This information comes from P.S.O. News, dated Sept. October, 2007, No 2, at page 12, marked *Exhibit "C"* as stated above. The National Iranian Oil Products Distribution Company is a subsidiary of the National Iranian Oil Refining and Distribution Co., which is part of the Ministry of Petroleum of the Islamic Republic of Iran per the attached download, marked *Exhibit "E."*[2] Plaintiffs therefore have provided sufficient evidence which would indicate that monies due for the acquisition of the bunkered oil are in fact payable for the benefit of the Judgment Debtors.

Common experience would suggest that some (or all) of the Shipping Lines make up some part or all of the "foreign ships," who purchase bunkered fuel from the National Iranian Oil

---

[2] Bunkered fuel is technically any type of fuel oil used aboard ships. It gets its name from the containers (known as Bunkered Tanks) on ships and in ports that it is stored in, called bunkers.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW (BZ)   6

transactions on ships and vessels, and many others.

To offload or load products of any type in the docks and harbors of Iran would require payment of fees and charges imposed by P.S.O. and therefore constitute an account, account receivable, right to payment of money or general intangible in favor of Iran and therefore subject to levy and execution. Any one or all of these Shipping Lines (or their agents, representatives, or others on their behalf as their agents) would be indebted to Iran for payment for these related services. Iran is no longer protected by the FSIA, and therefore any amounts due from these Shipping Lines are subject to an order compelling an assignment under C.C.P. § 708.510(a).

These Shipping Lines service U.S. ports, have local agents and representatives, transport products from the U.S. to foreign countries, transport products from foreign countries to the United States. These ships are seen lining up in local ports clearly displaying their name on the side of large container ships such as EVERGREEN, HAPAG LLOYD, OOCL, YANG MING, etc.

## V. ADDITIONAL ASSETS SUBJECT TO LEVY AND EXECUTION: BUNKERED FUEL.

The National Iran Oil Products Distribution Co., which is a subsidiary of the Ministry of Petroleum of the Islamic Republic of Iran, sells approximately two million tons of bunkered fuel to approximately 3,500 foreign ships which visit various harbors, docks, off loading, terminals, wharfs, and other marine facilities of Iran, in which some or all of these ships are owned and operated by the Shipping Line, which is the subject of this motion. This information comes from P.S.O. News, dated Sept. October, 2007, No 2, at page 12, marked *Exhibit "C"* as stated above. The National Iranian Oil Products Distribution Company is a subsidiary of the National Iranian Oil Refining and Distribution Co., which is part of the Ministry of Petroleum of the Islamic Republic of Iran per the attached download, marked *Exhibit "E."*[2] Plaintiffs therefore have provided sufficient evidence which would indicate that monies due for the acquisition of the bunkered oil are in fact payable for the benefit of the Judgment Debtors.

Common experience would suggest that some (or all) of the Shipping Lines make up some part or all of the "foreign ships," who purchase bunkered fuel from the National Iranian Oil

---

[2] Bunkered fuel is technically any type of fuel oil used aboard ships. It gets its name from the containers (known as Bunkered Tanks) on ships and in ports that it is stored in, called bunkers.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW (BZ)   6

Distribution Co., and accordingly any monies which would be due or owed to Iran for the purchase of the bunkered fuel under this assignment order would now be due to the Plaintiffs. The revenue stream of $640,000,000, turned over to Plaintiffs, would start the process of ameliorating Plaintiffs' terrible losses, and moreover, commence the process of financial restitution.

## VI. THIS IS THE MOST EFFECTIVE REMEDY.

An order compelling Iran to execute an assignment would ultimately lead to the assignment itself, assuming that Iran defaults or refuses to execute the contractual assignment. With assignment order in hand, presumably obtained after post-order process, Plaintiffs could serve the Shipping Line with the assignment order and redirect the flow or stream of revenue away from Iran, and to Plaintiffs.[3]

## VII. WHICH LAW APPLIES.

Plaintiffs seek to enforce the judgment under FRCP 69(a)(1) amended as of 12/1/07, and employ the laws of the domicile, specifically being the laws of the State of California, which provides as follows:

> Rule 69. Execution
> (a) In General.
> (1) Money Judgment; Applicable Procedure.
> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

*Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir.1998) (quoting *Peacock v. Thomas*, 516 U.S. 349, 359 n. 7, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996))

## VIII. MECHANISM OF AN ASSIGNMENT MOTION.

Plaintiffs seek to obtain an order compelling an assignment permitted under C.C.P. § 708.510(a) which provides as follows:

> "Except as otherwise provided by law, upon application of the judgment creditor on

---

[3] On July 2, 2008, Plaintiffs sought virtually identical relief, in which the court denied relief essentially on the basis that Plaintiffs sought an assignment order which itself lacked the intermediate step of an order compelling the debtor to make an assignment in the first instance, and in the event of default, Plaintiffs seeking additional supplemental relief, the effect of which would be to facilitate the assignment through the power of contempt, the equitable powers of the court, or alternatively, the appointment of a judicial officer, such as a clerk, to sign the contractual assignment in favor of Plaintiffs.

> noticed motion, the court may order the judgment debtor to assign to the judgment creditor, or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditional upon future developments, including but not limited to, the following types of payment:
>
> 1. Wages due from the federal government that are not subject to withholding under an earnings withholding order.
> 2. Rents.
> 3. Commissions.
> 4. Royalties.
> 5. Payments due from a patent or copyright.
> 6. Insurance policy loan value."

This order compelling assignment would reach all accounts, accounts receivable and rights to payment of money, whether owed now or owed in the future, from "account debtors" who may owe money to the underlying judgment debtor.

The Legislative Comment under C.C.P. § 708.510 indicates that the court has great flexibility in fashioning relief, which itself would enable Plaintiffs to serve the assignment order and obtain payment of amounts which are due or may be due in the future. The Legislative Comment provides as follows:

> **Legislative Committee Comment – Assembly 1982 Addition**
> Section 708.510 provides a new procedure for reaching certain forms of property that cannot be reached by levy under a writ of execution, such as the nonexempt loan value of an unmatured life insurance, endowment, or annuity policy. See Sections 699.720(a)(6), 704.100. It also provides an optional procedure for reaching assignable forms of property that are subject to levy, such as accounts receivable, general intangibles, judgments, and instruments. This section does not make any property assignable that is not already assignable. This remedy may be used alone or in conjunction with other remedies provided in this title for reaching rights to payment, such as execution, orders in examination proceedings, creditors' suits, and receivership. The use of this remedy is subject to limitations on the time for enforcement of judgment. See Sections 683.010-683.220.

The purpose of the assignment order is the same as a contractual assignment under C.C.P. § 708.530, which provides as follows:

> § 708.530.
> (a) Except as provided in subdivision (b), the effect and priority of an assignment ordered pursuant to this article is governed by Section 955.1 of the Civil Code. For the purpose of priority, an assignee of a right to payment pursuant to this article shall be deemed to be a bona fide assignee for value under the terms of Section 955.1 of the Civil Code.
> (b) An assignment of the right to future rent ordered under this article is recordable as an instrument affecting real property and the priority of such an assignment is governed by Section 1214 of the Civil Code.

The effect on the obligor's rights is found under C.C.P. § 708.540, which provides as

follows:

> § 708.540.
> The rights of an obligor are not affected by an order assigning the right to payment until notice of the order is received by the obligor. For the purpose of this section, "obligor" means the person who is obligated to make payments to the judgment debtor or who may become obligated to make payments to the judgment debtor depending upon future developments.

Assignments are found under Civ.C. § 955.1, likewise which provides as follows:

> § 955.1.
> (a) Except as provided in Sections 954.5 and 955 and subject to subdivisions (b) and ( c), a transfer other than one intended to create a security interest (paragraph (1) or (3) of subdivision (a) of Section 9109 of the Commercial Code) of any payment intangible (Section 9102 of the Commercial Code) and any transfer of accounts, chattel paper, payment intangibles, or promissory notes excluded from the coverage of Division 9 of the Commercial Code by paragraph (4) of subdivision (d) of Section 9109 of the Commercial Code shall be deemed perfected as against third persons upon there being executed and delivered to the transferee an assignment thereof in writing.
> (b) As between bona fide assignees of the same right for value without notice, the assignee first giving notice thereof to the obligor in writing has priority.

Plaintiffs seek an order compelling Iran to assign the Harbor and Bunkered Fuel Rights to Plaintiffs, and in default, proceed with additional supplemental remedies. Assuming that Iran executes an assignment or the rendition of supplemental relief, an assignment order permit the Judgment Creditor to reach receivables due now, or due in the future, receivables which might be contingent, or uncertain, or receivables in which performance might still be due, as provided by the exact language of C.C.P. § 708.510(a). The value of an assignment would be to permit Plaintiffs to reach funds now due and due in the future, and amounts which are even conditional, which is a more advantageous remedy than a levy. For example, in **FIRST CENTRAL COAST BANK, etc. vs. CUESTA TITLE GUARANTEE COMPANY, et al.**, 143 Cal.App.3d 12, 191 Cal.Rptr. 433 (Cal.App.2 Dist. 1983), the appellate court held that a premature [or late] levy did not reach the monies which were due at the time of a levy in that a levy constitutes a "snapshot" of any funds immediately due the debtor. The court stated as page 16 as follows:

> "A debt which is uncertain and contingent in the sense that it may never come due and payable is not subject to garnishment. (Brunskill v. Stutman, supra, 186 Cal.App.2d 97, 8 Cal.Rptr. 910; *Clecak v. Dunn* (1928) 95 Cal.App. 537.)"

### IX. THREE-STEP PROCESS.

An assignment motion might necessarily envision a three-step process:

1. An order compelling the Judgment Debtor to assign the rights to the Judgment Creditor.

2. In the event of noncompliance, supplemental process to appoint a third party or judicial official to actually execute the assignment in favor of the Judgment Creditor.

3. An independent action or proceeding, if any, which might be brought by the Judgment Creditor in the enforcement of the rights of the Judgment Debtor against the obligor.

An motion compelling an assignment does not adjudicate the underlying obligation owed by the obligor, nor makes such an obligation assignable, other than as allowed by prevailing law. An order compelling an assignment does not preadjudicate the obligor's defenses, whatever they might be, but only ousts the Judgment Debtor, and places the Judgment Creditor in its stead. See ***KRACHT v. PERRIN, GARTLAND & DOYLE, etc., et al.***, 219 Cal.App.3d 1019, 268 Cal.Rptr. 637 (Cal.App.4 Dist. 1990) in which the court stated at footnote 1, as follows:

> "[1] Code of Civil Procedure section 708.510 does not require that notice of the motion to cause an assignment be given to the obligor of the judgment debtor. The order of assignment does not affect the obligor's rights until notice of the order is received by the obligor. (Code Civ.Proc., § 708.540.) The fact that the choses in action were ordered assigned under Code of Civil Procedure section 708.510 does not preclude a challenge to whether the claims were assignable ab initio, because the Legislature specifically noted that section 708.510 "... does not make any property assignable that is not already assignable." (See Legis.Com.Comment, Assembly 1982 Addition, West's Ann.Code Civ.Proc., § 708.510.)

## X. CONCLUSION.

The relief sought is limited to a surgical and precise order compelling Iran to assign to Plaintiffs a discrete bundle of apparent contractual rights. Any other relief in the enforcement of this order would be for another day.

DATED: July 16, 2008                COOK COLLECTION ATTORNEYS

                                    By:   /s/ David J. Cook
                                    DAVID J. COOK, ESQ. (SB# 060859)
                                    Attorneys for Plaintiffs
                                    DEBORAH D. PETERSON, Personal
                                    Representatives of the Estate of James C. Knipple

F:\USERS\DJCNEW\petersonsf.assigncmampa

**DAVID J. COOK, ESQ. (State Bar # 060859)**
**ROBERT J. PERKISS, ESQ (State Bar # 62386)**
**COOK COLLECTION ATTORNEYS**
**A PROFESSIONAL LAW CORPORATION**
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel.: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br>Plaintiffs,<br><br>vs.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendants. | CASE NO. 3:08-mc-80030-JSW<br><br>DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a)<br><br>**[HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line]**<br><br>Date: September 3, 2008<br>Time: 10:00 a.m.<br>Courtroom: G, 15th Floor<br>Magistrate Judge: Bernard Zimmerman |

I, DAVID J. COOK, hereby declare and state as follows:

1. I am one of the attorneys of record for Plaintiffs in the above-entitled action, am duly authorized to practice before all courts in the State of California, and am familiar with the facts and circumstances in this action.

2. The shipping schedule of **CMA CGM S.A. & CMA CGM The French Line** shows that the Shipping Line frequents Iranian ports, harbors and other facilities. The Shipping Line's schedule is set forth by way of its website which shows its traffic, a true and correct copy of the download which is attached hereto marked *Exhibit "A."* The schedule demonstrates that the

DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS - CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW     1

1   Shipping Line services Iranian ports, and also American ports, thereby creating inferences, as
2   follows: 1) the Shipping Line is generally subject to the jurisdiction of the U.S. in both import and
3   export of products; 2) the Shipping Line is generally doing business with Iranian port facilities in
4   both imported and exported products.

5        3. As Plaintiffs have confirmed that the Shipping Line frequents Iranian harbors, ports,
6   wharfs, docks, and other harbor-like facilities. Plaintiffs likewise have determined that Iran has a
7   whole list of Tariffs which Iran charges oceangoing freighters, carriers, tankers, and the like, a true
8   and correct copy of the MANUAL OF Tariffs applicable to vessels and cargo in Ports of the
9   Islamic Republic of Iran which is attached hereto marked *Exhibit "B."* These tariffs clearly show
10  the charges imposed by Iran upon oceangoing carriers, such as the Shipping Lines as described
11  herein. Plaintiffs have also ascertained from a press release undertaken by the ports and shipping
12  organization of the Department of Transportation of Iran, that Iran sells bunkered oil.

13       4. A true and correct copy of the press release entitled "PSO news, In the name of God
14  Supplement to Port & Sea Magazine Nos 2/Sep-Oct, 2007 is attached hereto marked *Exhibit "C."*

15       5. The Ministry of Roads and Transportation generally oversees the PORTS & SHIPPING
16  ORGANIZATION ("P.S.O.") of Iran who manage the docks, harbors and related facilities
17  pursuant to the printout from the website entitled IR IRAN's Ports & Shipping Organization, a true
18  and correct copy of which is attached hereto marked *Exhibit "D."*

19       6. Iran charges these Shipping Lines an entire array of charges for the privilege of utilizing
20  Iranian docks, harbors, terminals and other maritime facilities, all hereinafter collectively "DOCK
21  FEES." This label is illustrative as seen by, e.g., the entire range of charges imposed by Iran
22  through its Manual of Tariffs Applicable to Vessels and Cargo in the Ports of the Islamic Republic
23  of Iran, a true and correct copy of which is attached hereto marked *Exhibit "B."*

24       7. The National Iranian Oil Products Distribution Company is a subsidiary of the National
25  Iranian Oil Refining and Distributing Co., which is part of the Ministry of Petroleum of the Islamic
26  Republic of Iran per the attached download, a true and correct copy which is attached hereto
27  marked *Exhibit "E."*
28

DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS
PURSUANT TO C.C.P. § 708.510(a) AND F.R.C.P. 69(a) [HARBOR AND BUNKERED FUEL RIGHTS -
CMA CGM S.A. & CMA CGM The French Line] - CASE NO. 3:08-mc-80030-JSW      2

8. Declarant personally read, reviewed and downloaded all of the above-listed exhibits, and personally obtained these documents by examining the website maintained by the Ports & Shipping Organization website of The Islamic Republic of Iran. Furthermore, Declarant over the last six months has become familiar with, if not immersed, in generally the economy of Iran and its large-scale business and in which Iran maintains a series of websites, providing for a vast amount of information. These Tariffs clearly show the charges imposed by Iran upon oceangoing carriers, such as the Shipping Lines as described herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 16, 2008.

/s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)