# EXHIBIT "B"

1  MORGAN, LEWIS & BOCKIUS LLP
   PETER BUSCEMI, State Bar No. 255213
2  MATTHEW S. WEILER, State Bar No. 236052
   One Market, Spear Street Tower
3  San Francisco, CA 94105-1126
   Tel: 415.442.1000
4  Fax: 415.442.1001
   E-mail: pbuscemi@morganlewis.com
5  E-mail: mweiler@morganlewis.com

6  Attorneys for Non-Parties CMA GGM, A.P. Moller
   Maersk A/S, and Mediterranean Shipping Company

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  DEBORAH D. PETERSON, Personal              Case No. 08-MC-80030-JSW (BZ)
    Representative of the Estate of James C.
13  Knipple (Dec.), et al.,                    **OPPOSITION OF NON-PARTY CMA
                                               CGM TO PLAINTIFFS' MOTION FOR
14                       Plaintiffs,           ASSIGNMENT OF RIGHTS PURSUANT
                                               TO C.C.P. §708.510(A) AND F.R.C.P. 69(A)**
15              vs.
                                               Hearing Date:    October 8, 2008
16  ISLAMIC REPUBLIC OF IRAN, et al.,          Time:            10:00 a.m.
                                               Place:           Courtroom G
17                       Defendants.
                                               Hon. Bernard Zimmerman
18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO         DB1/62104072.1

                                               OPP OF NON-PARTY CMA CGM TO PLTF'S
                                               MOTION FOR ASSIGNMENT OF RIGHTS
                                               (CASE NO. 08-MC-80030-JSW (BZ))

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 4 |
| III. | PROCEDURAL HISTORY | 4 |
| IV. | ARGUMENT | 6 |
| | A. The Two Iranian Entities identified by Plaintiffs Are Not "Judgment Debtors." and They Therefore Cannot Be Ordered to Make Assignments Under Section 708.510. | 6 |
| | B. In Any Event. Plaintiffs Have Not Properly Served Iran. Have Not Brought Iran Before This Court. And Are Effectively Asking, Contrary to Section 708.510. that the Court Simply Declare that an Assignment Has Been Made. | 6 |
| | C. Plaintiffs Seek a "Blunderbuss" Assignment and Have Not Presented Any Direct Evidence that CGM CMA Owes Any Funds to the Judgment Debtor. | 7 |
| | D. Plaintiffs' Motion Improperly Seeks the Assignment of Currently Non-Existent Rights. | 8 |
| | E. Plaintiffs Have Failed to Satisfy the Standard Set forth by the Supreme Court in *Bancec* For Looking to Other Iranian Entities As a Means of Executing on a Judgment Against Iran. | 9 |
| | F. Section 708.510(a) Does Not Apply to Assets Located Outside the United States. | 11 |
| | G. Even if Iran Were Properly Before the Court. and Even if Plaintiffs Had Properly Identified Debts Owed From CMA CGM to Iran. Sovereign Immunity Would Preclude the Extra-Territorial Assignment Sought by Plaintiffs. | 12 |
| |    1. No Payments Made or Obligations Incurred in the United States. | 13 |
| |    2. No Payments or Obligations Used for a Commercial Activity in the United States. | 14 |
| |    3. Recent Amendments to the FSIA are Irrelevant Here. | 14 |
| | H. For Both Practical and Constitutional Reasons. the Court Should Not Order Assignment of Any Debt or Obligation That May Be Owed by CMA CGM. | 16 |
| V. | CONCLUSION | 17 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPP OF NON-PARTY CMA CGM TO PLTF'S
MOTION FOR ASSIGNMENT OF RIGHTS
(CASE NO. 08-MC-80030-JSW (BZ))

# TABLE OF AUTHORITIES

Page

**Cases**

*Af-Cap v. Chevron,*
   475 F.3d 1080 (9th Cir. 2007) ............................................................. 14

*Autotech Technologies LP v. Integral Research & Development Corp.,*
   499 F.3d 737 (7th Cir. 2007) ............................................................... 8

*Connecticut Bank of Commerce v. Republic of Congo,*
   309 F.3d 240 (5th Cir. 2002) ............................................................... 14

*Daliberti v. Republic of Iraq,*
   97 F. Supp. 2d 38 (D.D.C. 2000) ......................................................... 13

*Deborah D. Peterson, et al. v. Islamic Republic of Iran,*
   Nos. 01-2094, 01-2684 (D.D.C. Sept. 2, 2007) ................................... 15

*FG Hemispheres Assocs., LLC v. Republqiue du Congo,*
   455 F.3d 575 (5th Cir. 2006) ................................................... 12, 13, 14

*Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.,*
   921 F. Supp. 1113 (S.D.N.Y. 1996) ............................................... 12, 13

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,*
   462 U.S. 611 (1983) ....................................................................... 9, 10

*Flatow v. Islamic Republic of Iran,*
   308 F.3d 1065 (9th Cir. 2002) ....................................................... 10, 11

*Garden City Boxing Club, Inc. v. Briano,*
   2007 WL 4463264 (E.D. Cal. Dec. 17, 2007) ....................................... 8

*Holland v. Islamic Republic of Iran,*
   545 F. Supp. 2d 120 (D.D.C. 2008) ..................................................... 15

*In re TMCI Elecs.,*
   297 B.R. 552 (Bankr. N.D. Cal. 1999) .................................................. 9

*Philippine Export and Foreign Loan Guarantee Crop. v. Chiudian,*
   218 Cal. App. 3d 1058 (1990) ....................................................... 11, 12

*Quaestor Investments, Inc. v. State of Chiapas,*
   1997 WL 34618203 (C.D. Cal. Sept. 2, 1997) ................................ 8, 9, 11

*Richmark Corp. v. Timber Falling Consultants,*
   959 F.2d 1468 (9th Cir. 1992) ............................................................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPP OF NON-PARTY CMA CGM TO PLTF'S
MOTION FOR ASSIGNMENT OF RIGHTS
(CASE NO. 08-MC-80030-JSW (BZ))

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page

Statutes

4      28 U.S.C.
          § 1602 *et seq.* ................................................................................................*passim.*

5

6      Cal. Civil Code
          § 1045 ...................................................................................................................9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23              ·

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

1      This Opposition is submitted by non-party CMA CGM. a company organized under the

2  laws of France, which is appearing on a limited basis to respond to the motion filed by Plaintiffs

3  Deborah D. Peterson, *et al.* ("Plaintiffs") and to comply with this Court's Order of July 25, 2008.

4  **I.    INTRODUCTION**

5      Plaintiffs' Motion for an Order Compelling Assignment of Rights Pursuant to C.C.P.

6  § 708.510(a) and F.R.C.P. 69(a) ("Motion"). on its face, does not seek relief directly from CMA

7  CGM. and CMA CGM is not a party to this proceeding.[1]  The Motion purports to seek an order

8  compelling the Islamic Republic of Iran ("Iran") to assign to Plaintiffs "all rights of payment of

9  money, and accounts, accounts receivable, due and payable or in the future, or conditional upon

10  some future events, from and owing by [CMA CGM] . . . ." Plaintiffs' memorandum. though less

11  than entirely clear. appears to focus not on any existing debt to Iran but rather on amounts that are

12  allegedly owed (or that in the future may become owed) to one or both of two entities. the Ports

13  & Shipping Organization of Iran and the National Iranian Oil Products Distribution Company.

14  *See* Plaintiffs' Memorandum of Points and Authorities at 4-7. These amounts allegedly relate to

15  charges imposed (or to be imposed) on CMA CGM for the use of Iranian port facilities or for the

16  purchase of fuel oil ("bunkering oil") at Iranian ports. Plaintiffs' motion thus asks for an order

17  compelling Iran to assign the right to receive payments to be made to entities other than Iran for

18  services or goods allegedly obtained (or to be obtained) by CMA CGM in Iran.

19      Plaintiffs have obtained a judgment against Iran in separate proceedings in the United

20  States District Court for the District of Columbia. Plaintiffs' current Motion is part of Plaintiffs'

21  efforts to enforce that judgment. As authority for their Motion, Plaintiffs invoke California Code

22  of Civil Procedure § 708.510(a). which permits a court to order a judgment debtor to assign to a

23  judgment creditor "all or part of a right to payment due or to become due. whether or not the right

24  is conditional upon future developments . . . ."

25      Much of Plaintiffs' motion appears to be based on the proposition that recent amendments

26  to the Foreign Sovereign Immunities Act ("FSIA") somehow have expanded the universe of

27

28

[1]   To the extent relief is sought from CMA CGM. either now or in the future. CMA CGM does not waive, and expressly reserves, the right to assert any applicable defense, including lack of personal jurisdiction or improper service.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1 62104072.1

1

OPP OF NON-PARTY CMA CGM TO PLTF'S
MOTION FOR ASSIGNMENT OF RIGHTS
(CASE NO. 08-MC-80030-JSW (BZ))

1   property subject to execution in, or assignment by, United States courts. In fact, however, as

2   explained in more detail in Section IV.G. below, the January 2008 amendments to the FSIA did

3   not alter the basic limitations that property of a foreign sovereign can be subject to execution only

4   if the property is in the United States and only if the property has been used for a commercial

5   activity in the United States. In any event, as also explained in Section IV.G. below, the January

6   2008 amendments are not even applicable to this action.

7       Plaintiffs' motion suffers from several other fundamental flaws, each of which is an

8   independent reason for denying the Motion.

9       *First*, the California statute on which Plaintiffs rely authorizes assignments from a

10  "judgment debtor." But Plaintiffs' own submission refers to amounts allegedly owed for services

11  and fuel provided (or to be provided) by the Ports & Shipping Organization of Iran or by the

12  National Iranian Oil Products Distribution Company. Neither of these entities is a "judgment

13  debtor" under the District of Columbia judgment against Iran.

14      *Second*, Plaintiffs have not corrected, in any substantive way, the critical defect already

15  identified by this Court in connection with Plaintiffs' motions regarding debts allegedly owed by

16  various financial institutions. Although Plaintiffs have made a semantic change and now say they

17  are seeking an order against Iran rather than against CMA CGM or any other Shipping Line,

18  Plaintiffs have not brought Iran before the Court. In essence, therefore, Plaintiffs are still seeking

19  relief against non-parties like CMA CGM, who are not judgment debtors and who are strangers to

20  the dispute between Plaintiffs and Iran.

21      *Third*, Plaintiffs have not identified, or provided evidence of, any specific debts of CMA

22  CGM that they wish to have assigned. Rather, as they did in their motions relating to the

23  financial institutions, Plaintiffs seek a "blunderbuss" assignment that is both open-ended and

24  indeterminate. Section 708.510(a) does not authorize such blanket, non-specific assignments.

25      *Fourth*, Plaintiffs apparently seek the assignment of future obligations that have not yet

26  come into existence, that may never come into existence, and that are not based on any existing

27  contract or existing rights. Although in certain circumstances Section 708.510(a) authorizes

28  assignments of amounts not yet due but that will or may become due under existing agreements,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1                    2            OPP OF NON-PARTY CMA CGM TO PLTF'S
                                               MOTION FOR ASSIGNMENT OF RIGHTS
                                               (CASE NO. 08-MC-80030-JSW (BZ)))

1    California law is clear that the statute does not reach obligations that do not yet exist in any form

2    but that may be created in the future.

3        *Fifth,* even putting aside the fact that the Ports & Shipping Organization of Iran and the

4    National Iranian Oil Products Distribution Company are not themselves judgment debtors,

5    Plaintiffs have not demonstrated, or adduced any evidence to show, the nature of any relationship

6    between these entities and Iran or the propriety of looking to either or both of these entities for

7    purposes of attempting to satisfy a judgment entered against Iran.

8        *Sixth,* according to Plaintiffs' own description, both the docking services and the fuel oil

9    allegedly provided (or to be provided) to CMA CGM were (or will be) provided in Iran, and the

10   amounts owed (or to be owed) are or will be assets of Iranian entities located in Iran. Section

11   708.510(a) does not reach assets located outside the United States.

12       *Seventh,* even if some or all of the alleged debts at issue actually existed and could be

13   shown to belong to Iran, and even if Iran were properly brought before this Court, long-standing

14   principles of foreign sovereign immunity, now reflected in the Foreign Sovereign Immunities

15   Act, 28 U.S.C. §§ 1601-1611, preclude the assignment of assets located outside the United States.

16   The assignment sought by Plaintiffs therefore would be void *ab initio.*

17       *Finally,* the language of Section 708.510 is permissive, not mandatory. It authorizes, but

18   does not require, courts to order assignments in aid of the execution of judgments. Section

19   708.510(c) expressly authorizes the courts to "take into consideration all relevant factors" in

20   determining whether or not to order a requested assignment. Here, any order of the kind sought

21   by Plaintiffs would redound to the substantial detriment of CMA CGM or the other Shipping

22   Lines, innocent non-parties with no connection whatever to the events giving rise to the

23   underlying judgment against Iran. This Court, even if it directed that any payments owed to Iran

24   be made to Plaintiffs, would have no effective way of releasing CMA CGM or the other Shipping

25   Lines from their purported obligations to Iran or of ensuring that Iran would not seize the

26   Shipping Lines' assets or otherwise seek to obtain payment of any such obligations, even if

27   payment already had been made to Plaintiffs. Under these circumstances, the assignments sought

28   by Plaintiffs would severely and unfairly prejudice CMA CGM and would threaten the continuing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1 62104072.1                        3                OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                       MOTION FOR ASSIGNMENT OF RIGHTS
                                                       (CASE NO. 08-MC-80030-JSW (BZ)))

1    ability of CMA CGM to operate in international commerce involving Iran.

2    **II.    FACTUAL BACKGROUND**

3    CMA CGM (whose name does not include the words "The French Line") is a French

4    corporation, with its principal place of business in Marseille, France. *See* Declaration of Bruno

5    Schmitt ("Schmitt Decl."), ¶ 2. Plaintiffs' Motion seeks an order directing the assignment of

6    funds allegedly owed, or to be owed in the future, by a foreign company to a foreign country,

7    Iran, or to Iranian entities, as a result of transactions in Iran. The Motion erroneously names

8    "CMA CGM S.A." and "CMA CGM The French Line."[2]

9    To the extent that CMA CGM engages in any "bunkering oil" transactions with Iran, these

10   take place wholly outside the United States. Schmitt Decl., ¶¶ 3-4. Similarly, payments of any

11   tariffs or other fees imposed for use of Iranian port facilities occur entirely outside of the United

12   States. *Id.*

13   Though CMA CGM is not a party to this action and has not been properly served with

14   Plaintiffs' Motion, it is submitting this opposition in order to point out the many incurable defects

15   with the "three-step process" that Plaintiffs envision. *See* Plaintiffs' Memorandum of Points and

16   Authorities at 9-10. By addressing these issues now, CMA CGM seeks to avoid further costly

17   proceedings and waste of judicial resources.

18   **III.   PROCEDURAL HISTORY**

19   Plaintiffs filed their underlying action against Iran and the Iranian Ministry of Information

20   and Security on October 3, 2001, relying on Section 1605(a)(7) of the FSIA. Their allegations

21   did not involve either the Ports & Shipping Organization of Iran or the National Iranian Oil

22   Products Distribution Company. Nor did Plaintiffs' claim concern CMA CGM in any way. On

23   September 7, 2007, Plaintiffs obtained a default judgment in the United States District Court for

---

24   [2]  The "Proof of Service" attached to Plaintiffs' motion shows purported service by mail on "CMA CGM
25   S.A." at an address in Thailand, and purported service by mail on "CMA CGM the French Line" at an
      address in France. There is, however, no entity called CMA CGM S.A. in Thailand. See Declaration of
26   Bruno Schmitt. Moreover, France is a signatory to the Hague Convention on the Service Abroad of Judicial
      and Extra-Judicial Documents. *See* 20 U.S.T. 361; 658 U.N.T.S. 163. T.I.A.S. No. 6638; 28 U.S.C.A.
27   (Appendix following F.R.C.P. 4). Therefore, if Plaintiffs intended to serve CMA CGM, proper service could
      be affected only by following the Hague Convention. Mailing a French company a pleading written in
28   English does not come close to complying with the Hague Convention's requirements. For this reason
      alone, Plaintiffs' Motion should be denied as to CMA CGM.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1                              4                    OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                                MOTION FOR ASSIGNMENT OF RIGHTS
                                                                (CASE NO. 08-MC-80030-JSW (BZ)))

1    the District of Columbia in the amount of $2,656,944,877.00. Since then, Plaintiffs have

2    embarked on efforts to enforce this judgment in several different courts. The present action is

3    part of those efforts.

4         Plaintiffs' Motion seeks to obtain an assignment of vaguely-defined payables and other

5    assets allegedly due to Iran and arising out of the "use of any harbor, docking, wharf, drayage,

6    loading or unloading facilities . . . along with and including the sale of bunkered oil and/or fuel . .

7    . provided, sold, delivered or vendored by Iran." *See* Plaintiffs' Memorandum of Points and

8    Authorities at 1-2.

9         In many respects, Plaintiffs' Motion is identical to the motions that Plaintiffs previously

10   directed at banking institutions, which the Court considered and rejected on July 2, 2008. In

11   denying these motions, this Court held that a "virtual assignment" is not authorized under the

12   plain wording of the statute. *See* Report and Recommendation dated July 2, 2008 at 2 ("plaintiffs

13   seek orders which circumvent the statute by declaring that the assignment has occurred, even

14   though the judgment debtor was not ordered to and did not assign anything"). The modifications

15   made by Plaintiffs following the July 2, 2008 hearing attempt to address the defect identified by

16   the Court by formally seeking an order requiring Iran to make an assignment. Plaintiffs' own

17   certificate of service, however, reveals that Plaintiffs have not properly served Iran, and

18   Plaintiffs' Motion, through its description of the proposed "three-step process," demonstrates that

19   Plaintiffs are effectively seeking the very kind of "virtual assignment" previously held

20   impermissible by this Court.

21        The Court's July 2, 2008 Report and Recommendation, which has not been challenged by

22   Plaintiffs, identified other significant flaws in Plaintiffs' prior submissions, none of which is

23   addressed in Plaintiffs' Motion. The Court noted, for example, that "[t]he proposed assignments

24   seek to reach assets located outside the U.S." *Id.* at 3 n.3. The Court also stated that "plaintiffs

25   fail to properly identify all of the agencies and instrumentalities or provide authority as to why the

26   default judgment would apply to them" and "[q]uestions also exist about whether the rights to

27   payment that are to be assigned have been sufficiently identified." *Id.* at 3 n.4. As we explain

28   further below, Plaintiffs have not sufficiently addressed these deficiencies, and, for these and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1                                5                OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                              MOTION FOR ASSIGNMENT OF RIGHTS
                                                              (CASE NO. 08-MC-80030-JSW (BZ)))

1    other reasons, their Motion should be denied.

2    IV.    **ARGUMENT**

3        A.    **The Two Iranian Entities identified by Plaintiffs Are Not "Judgment**
            **Debtors," and They Therefore Cannot Be Ordered to Make Assignments**
4            **Under Section 708.510.**

5        The statute on which Plaintiffs' Motion is based, California Code of Civil Procedure

6    § 708.510, authorizes the Court to order assignments by a "judgment debtor."[3]  But neither of the

7    two Iranian entities identified by Plaintiffs – the Ports & Shipping Organization of Iran and the

8    National Iranian Oil Products Distribution Company – is a judgment debtor under the default

9    judgment that Plaintiffs obtained in the District of Columbia.  Only Iran is a judgment debtor

10   under the judgment.  *See* Report and Recommendation dated May 22, 2008 (denying Plaintiffs'

11   ex parte application to amend the judgment to add purported "subsidiaries" and "aliases" of the

12   Iranian government).  Plaintiffs have not explained how or why Iran could be ordered to assign

13   amounts allegedly payable not to Iran but to other entities that are not themselves judgment

14   debtors.  Plaintiffs' Motion fails for this reason alone.

15       B.    **In Any Event, Plaintiffs Have Not Properly Served Iran, Have Not Brought**
            **Iran Before This Court, And Are Effectively Asking, Contrary to Section**
16           **708.510, that the Court Simply Declare that an Assignment Has Been Made.**

17

18       In its July 2, 2008 Report and Recommendation, this Court ruled that Section 708.510

19   does not authorize a court to assign amounts allegedly owed to a judgment debtor or to deem such

20   an assignment to have been made.  Rather, as the Court ruled, the statute permits a court to direct

21   a judgment debtor to make an assignment of amounts or obligations owed to the judgment debtor.

22   Here, the only judgment debtor is Iran, yet Plaintiffs have made only the feeblest of efforts to

23   serve Iran with the Motion.  Their "Proof of Service" represents only that they mailed copies of

24   the Motion to certain addresses in Iran; they do not represent they have taken proper measures to

25   serve a foreign entity, and they do not specifically identify an agent for service of process.  Thus,

26   Plaintiffs have failed to address a core concern this Court identified at the July 2, 2008 hearing.

27   _____
     [3]   Fed. R. Civ. P. 69(a)(1) provides that execution on a federal money judgment may proceed in "accord with
         the procedure of the state where the court is located . . . ."  This Court therefore may look to Section 708.510
28       in considering Plaintiffs' efforts to execute on their default judgment.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                        MOTION FOR ASSIGNMENT OF RIGHTS
                                                        (CASE NO. 08-MC-80030-JSW (BZ)))

1 | *See* Transcript of July 2. 2008 Hearing at 21:14-22:24, 24:7-20.  Plaintiffs have failed to give

2 | Iran a proper opportunity to respond to their motion by taking the proper measures to obtain

3 | Iran's appearance.

4 | Although Plaintiffs purport to be seeking an order against Iran. their proposed "three-step

5 | process" reveals that they are in fact seeking to proceed directly against CMA CGM and the other

6 | Shipping Lines.  Plaintiffs asked for (a) an order against Iran: (b) upon Iran's anticipated

7 | noncompliance. the appointment of someone to act in Iran's stead and make the requested

8 | assignment: and (c) further proceedings directly against CMA CGM regarding the alleged debts

9 | or obligations fictitiously assigned by Iran.  Plaintiffs thus seek effectively to dispense with the

10 | judgment debtor altogether and to proceed, after some perfunctory formalities to which Iran has

11 | not been properly summoned, and by which Iran therefore could not be bound. directly against

12 | non-parties like CMA CGM.  This is precisely what this Court has already ruled is not authorized

13 | by Section 708.510.

14 |     **C.**    **Plaintiffs Seek a "Blunderbuss" Assignment and Have Not Presented Any Direct Evidence that CGM CMA Owes Any Funds to the Judgment Debtor.**

15 |

16 | Plaintiffs have asked for the assignment of "[a]ll rights to payment of money. accounts.

17 | accounts receivable, due and payable, or due in the future, or conditional upon future events, from

18 | and owing by [CMA CGM]. arising out of the use of any harbor, docking. wharf. drayage,

19 | loading or unloading facilities. or other facilities provided by any dock, harbor, pier. warehouse.

20 | wharf, or other harbor-like facilities, along with and including the sale of bunkered oil and/or fuel

21 | to [CMA CGM] provided, sold. delivered or vendored by Iran."  Memorandum of Points and

22 | Authorities at 1-2.  But Plaintiffs have not identified any specific purchase of goods or services by

23 | CMA CGM, nor have Plaintiffs established, or even clearly alleged, any specific debt obligation.

24 | or amount payable. allegedly owed by CMA CGM to Iran or any Iranian entity.[4]  Rather,

25 |

---

[4]   CMA CGM hereby objects to the "Declaration of David J. Cook, Esq. in Support of Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a)."  Among other things. this Declaration lacks foundation, relies on hearsay. and the exhibits referenced therein are improperly authenticated.  CMA CGM's evidentiary objections are presented more fully in the "Objections to Declaration of David J. Cook, Esq. in Support of Motion for Assignment of Rights Pursuant to C.C.P. § 708.510(a) and F.R.C.P. 69(a)," which is being filed together with this memorandum and is incorporated here by reference.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Plaintiffs rely on innuendo. arguing that "[c]ommon experience would suggest that some (or all)

2    of the Shipping Lines make up some part or all of the 'foreign ships,' who purchase bunkered fuel

3    from the National Iranian Oil Distribution Co." *Id.* at 6-7. Plaintiffs' sole evidence for the

4    alleged sale of "bunkering oil" to CMA CGM is a ***press release*** that does not mention any

5    specific shipping line. This falls well short of the specificity required for assignment under

6    Section 708.510. *Quaestor Investments, Inc. v. State of Chiapas,* 1997 WL 34618203, at *7 (C.D.

7    Cal. Sept. 2, 1997) (Section 708.510 requires "'sums certain.'" amounting to "a concrete amount

8    'in the hand' of the third party debtor.").

9         Plaintiffs here cannot satisfy the requirement that a judgment creditor establish with

10   specificity the nature of the obligation that it contends constitutes the assignable rights that it

11   seeks to enforce. *See Garden City Boxing Club, Inc. v. Briano.* 2007 WL 4463264 (E.D. Cal.

12   Dec. 17, 2007); *see also Autotech Technologies LP v. Integral Research & Development Corp.,*

13   499 F.3d 737. 750 (7th Cir. 2007) ("in order to determine whether immunity from execution or

14   attachment has been waived, the plaintiff must identify **specific property** upon which it is trying

15   to act") (emphasis added). In *Briano,* a plaintiff filed a similar "blunderbuss" assignment motion

16   under Section 708.510. seeking an order "assigning all accounts. accounts receivable. rights to

17   payment of money. contingent rights. contract rights, deposits and deposit accounts, claims

18   against third parties. monies due from third parties. due and in favor of and for the benefit of

19   [Defendant]. or any of Defendant's partners. assignees, and other persons acting on his behalf."

20   *Id.* at *3. The district court ruled that the plaintiff was seeking a general assignment of "all

21   possible funds due to Defendant," but had failed to identify any specific debt, obligation. or

22   amount payable to be assigned. The court therefore concluded that plaintiff had failed to describe

23   the assets sought with the particularity that would allow the Court to determine what kind of

24   assignment might be warranted or permissible. and the court denied plaintiff's request for an

25   assignment order. The same result should obtain here.

26   **D.    Plaintiffs' Motion Improperly Seeks the Assignment of Currently Non-
             Existent Rights.**

27

28        In its July 25. 2008 Order. the Court asked whether rights to payment that are not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPP OF NON-PARTY CMA CGM TO PLTF'S
MOTION FOR ASSIGNMENT OF RIGHTS
(CASE NO. 08-MC-80030-JSW (BZ)))

1   currently in existence are subject to assignment. Order at 2. The answer to that question is no.

2   Under Section 708.510, the list of assignable obligations, although not exhaustive. is confined to

3   such things as rents. commissions, royalties. insurance policy loan values, and other values that

4   "are in a crucial respect 'sums certain.' predictable amounts owed to the debtor by a third party,

5   capable of specific and relatively precise determination. Such income constitutes a concrete

6   amount 'in the hand' of the third party debtor." *Quaestor Investments v. The State of Chiapas,*

7   1997 WL 34618203. at *8 (C.D. Cal. Sept. 2. 1997). Assignment, in other words. can apply only

8   to rights in existence at the time of the assignment. "A mere possibility. not coupled with an

9   interest, cannot be transferred." Cal. Civil Code § 1045; *see also In re TMCI Elecs.,* 297 B.R.

10  552, 559-60 (Bankr. N.D. Cal. 1999) (a debtor cannot acquire an interest in a "mere expectancy"

11  based on a right that "may or may not come into existence based on certain contingencies

12  occurring in the future") (citing Cal. Civil Code § 1045). The assignment Plaintiffs seek here is

13  not tethered to any identifiable *existing* interest (contractual or otherwise). but rather seeks to

14  assign accounts receivable that do not now exist, and may never exist. Accounts receivable that

15  do not now exist but that may or may not come into being at some time in the future cannot be

16  assigned under California law.

17       E.  **Plaintiffs Have Failed to Satisfy the Standard Set forth by the Supreme Court in *Bancec* For Looking to Other Iranian Entities As a Means of Executing on a Judgment Against Iran.**

18

19      Plaintiffs' Motion presumes that Plaintiffs are entitled to enforce their default judgment

20  against Iran by looking to alleged assets of separate entities in Iran. But Plaintiffs neither allege

21  nor prove that the relationship between those entities and Iran satisfies the test described by the

22  Supreme Court in *Bancec*. Plaintiffs have *not* obtained a judgment against either the Ports &

23  Shipping Organization of Iran or the National Iranian Oil Products Distribution Company. To

24  treat the alleged assets of these entities as if they belonged to Iran, Plaintiffs must meet the legal

25  standard set forth in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S.

26  611 (1983). *Bancec* held that a debt owed by a foreign sovereign cannot be enforced against an

27  agency or instrumentality of the foreign state unless the entity is found to be "so extensively

28  controlled by [the foreign state] that a relationship of principal and agent is created" or unless

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1

9

1  treating the entity as separate from the foreign state "would work fraud or injustice." *Id.* at 629.

2  Plaintiffs have not come close to meeting this standard. Plaintiffs' "evidence," which consists of

3  printed pages from the Internet, merely suggests that Iran may have some ownership interest in

4  the entities named. That is not sufficient. As the Ninth Circuit has held, "even though an entity

5  or instrumentality is wholly-owned by a foreign state, that entity is accorded **the presumption of**

6  **independent and separate legal status.**" *Flatow v. Islamic Republic of Iran,* 308 F.3d 1065,

7  1070 (9th Cir. 2002) (emphasis added). Plaintiffs present no evidence that overcomes this

8  presumption.

9      *Flatow* is instructive here. The plaintiff in that case had obtained a judgment based on a

10  terrorist attack that was funded by Iran. Plaintiffs attempted to enforce the judgment by attaching

11  the assets owned by Bank Saderat Iran ("BSI"), a bank that was nationalized after the 1979

12  revolution. The Ninth Circuit affirmed a district court ruling that the assets of BSI could not be

13  seized to satisfy a judgment against Iran, holding that Plaintiffs failed to show that the bank

14  "operate[d] as an arm of the Iranian government" or had a "mission . . . to further the policies of

15  the Iranian government." *Id.* at 1072.

16      From the threadbare "factual record" presented by Plaintiffs, it is impossible to tell exactly

17  what involvement the Ports & Shipping Organization or the National Iranian Oil Product

18  Distribution Company may have with the Iranian government. Plaintiffs have not overcome the

19  presumption of separate legal status. Plaintiffs merely argue that the Ministry of Roads and

20  Transportation "generally oversees" the Ports & Shipping Organization. Memorandum of Points

21  and Authorities at 4. Mere oversight, however, does not amount to control. *Flatow,* 308 F.3d at

22  1072-73 (regulation and oversight by Iranian banking authorities is insufficient to overcome the

23  presumption of separate legal entities). Moreover, even a cursory review of Plaintiffs' Exhibit D

24  reveals that the Ports & Shipping Organization is governed by a Board of Directors and a

25  Managing Director with no apparent connection to the Iranian government. Similarly, Plaintiffs

26  argue that the National Iranian Oil Product Distribution Company "is a subsidiary of the Ministry

27  of Petroleum of Iran." Memorandum of Points and Authorities at 6. Yet Plaintiffs identify no

28  specific involvement of the Iranian government in the day-to-day affairs of the Company. *See*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB1/62104072.1                    10                    OPP OF NON-PARTY CMA CGM TO PLTF'S
MOTION FOR ASSIGNMENT OF RIGHTS
(CASE NO. 08-MC-80030-JSW (BZ)))

1    *Flatow*, 308 F.3d at 1073 ("Iran's limited supervision … does not constitute day-to-day control

2    sufficient to overcome the separate juridical entity presumption"). Nor have Plaintiffs shown that

3    either of the Iranian entities that they name was involved in the incident that forms the basis of

4    the underlying lawsuit, or presented any other facts that suggest a manifest injustice would arise if

5    these entities were not held responsible for the default judgment against Iran.

6    **F.      Section 708.510(a) Does Not Apply to Assets Located Outside the United
          States.**

8        An assignment order under Section 708.510(a) cannot be used to reach assets located

9    outside of the United States. *Quaestor Investments, Inc. v. The State of Chiapas*, 1997 WL

10   34618203, at *7 (C.D. Cal. Sept. 2, 1997) ("The abstract 'right to payment,' in the absence of

11   conjunction with some physical or at least specific asset located within the boundaries of the

12   United States upon which that right may be exercised, is insufficient standing alone to be

13   amenable to assignment under C.C.P. § 708.510."); *see also Philippine Export and Foreign Loan*

14   *Guarantee Crop. v. Chiudian*, 218 Cal. App. 3d 1058, 1099 (1990) (refusing to interpret Section

15   708.510 so as to provide the judgment creditor "that which he could not straightforwardly achieve

16   through ordinary creditors' remedies, namely, execution upon foreign property.")

17       The unspecified, unidentified funds described in Plaintiffs' motion allegedly would be due

18   to Iranian entities, in Iran, arising from goods and services supplied to ships while in Iran; they

19   would be payable from a French company. *See* Memorandum of Points and Authorities at 5

20   (seeking tariffs and other fees imposed "for the privilege of using Iranian docks, harbors,

21   terminals and other maritime facilities"), 6 (seeking proceeds from sale of oil by the National

22   Iranian Oil Products Distribution Company to ships that "visit various harbors, docks, off loading,

23   terminals, wharfs, and other marine facilities of Iran"). To the extent that CMA CGM may

24   engage in any "bunkering oil" transactions with Iran or any Iranian entity, these transactions take

25   place wholly outside the United States. Schmitt Decl., ¶¶ 3-4. Similarly, payments for any tariffs

26   or other fees expended for use of Iranian port facilities occur entirely outside of the United States.

27   *Id.* Furthermore, the transactions for which the payments allegedly have or will become due to

28   Iran would have *no relation* to the terrorist act that gave rise to the judgment on which Plaintiffs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1                    11                OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                    MOTION FOR ASSIGNMENT OF RIGHTS
                                                    (CASE NO. 08-MC-80030-JSW (BZ)))

1  seek to execute. Accordingly, Plaintiffs' motion should be denied for failure to identify any asset

2  currently located in the United States.

3      **G.     Even if Iran Were Properly Before the Court, and Even if Plaintiffs Had
           Properly Identified Debts Owed From CMA CGM to Iran, Sovereign
4          Immunity Would Preclude the Extra-Territorial Assignment Sought by
           Plaintiffs.**

5

6          Even if Plaintiffs had properly brought Iran before this Court and had identified specific

7  debts or obligations to Iran that are assignable, the assignment Plaintiffs seek would be barred by

8  Iran's sovereign immunity, as reflected in the Foreign Sovereign Immunities Act. 28 U.S.C.

9  §§1602-1611. The assignment sought by Plaintiffs would be impermissible because it would

10  require execution in the United States of a judgment against a foreign sovereign using assets

11  located abroad. *Chuidian, supra,* 218 Cal. App. 3d at 1094 ("the court in aid of execution of this

12  judgment may order Philguarantee *to assign only such assets as Chuidian may legally execute*

13  *upon in satisfaction of the judgment*") (holding execution on assets located in the Philippines

14  precluded by the FSIA).

15          Section 1610 of the FSIA provides that the property of a foreign sovereign is immune

16  from execution, unless the property of a sovereign is *both* in the United States, *and* being used for

17  a "commercial activity."[5] *FG Hemispheres Assocs., LLC v. Republique du Congo,* 455 F.3d 575,

18  591 (5th Cir. 2006) ("To apply the § 1610(a) exception to executional immunity, there must be a

19  finding that the property is located in the United States and used for commercial activity in the

20  United States. **The absence of either prong is fatal to the § 1610(a) executional immunity**

21  **exception.**") (emphasis added). On the face of Plaintiffs' papers, both requirements appear to be

22  missing. Debts or obligations for docking services or fuel oil allegedly obtained by a French

23  company in Iran are neither located in the United States nor used for commercial activity in the

24  United States.

25          As the court explained in *Fidelity Partners, Inc. v. Philippine Export and Foreign Loan*

26  *Guarantee Corp.,* 921 F. Supp. 1113 (S.D.N.Y. 1996):

27  _____

[5]     Section 1610(a) applies only to "property in the United States of a foreign state, . . . used for commercial
       activity in the United States . . . ." Likewise, Section 1610(b) applies only to "property in the United States
28     of an agency or instrumentality of a foreign state engaged in commercial activity in the United States . . . ."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1 62104072.1                              12                 OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                              MOTION FOR ASSIGNMENT OF RIGHTS
                                                              (CASE NO. 08-MC-80030-JSW (BZ)))

> As the language of the statute makes plain. the FSIA does not create immunities. but rather creates exceptions to pre-existing immunities. Before enactment of the FSIA in 1976. the traditional view of courts in the United States was that property of foreign states was absolutely immune from execution. The exceptions created by the FSIA to immunity from execution are contained in Sections 1610 and 1611. **Section 1610, the only arguably relevant provision, "speaks only of a foreign state's property in the United States. Accordingly the statute creates no exception to immunity for property outside the United States."**

921 F. Supp. at 1117-1118 (citations omitted) (emphasis added): *see also id.* at 1119 ("under the FSIA. assets of foreign states located outside the United States retain their traditional immunity from execution to satisfy judgments entered in the United States courts."). *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1477 (9th Cir. 1992) ("Section 1610 does not empower United States courts to levy on assets located outside the United States").

As a threshold matter. Plaintiffs bear the burden to produce evidence showing that the assets of Iran are not entitled to sovereign immunity. *Daliberti v. Republic of Iraq.* 97 F. Supp. 2d 38, 42 (D.D.C. 2000)). Here. Plaintiffs have produced no evidence of any Iranian assets in the United States, and have identified no commercial activity in the United States. Thus. they have failed to meet their burden.

### 1.    No Payments Made or Obligations Incurred in the United States.

Payments due to a sovereign, directly or indirectly. constitute "property" for purposes of the FSIA. *FG Hemispheres,* 455 F.3d at 590 (oil royalty payments due under contract to the Congo are property of a sovereign). Thus. to the extent that any of the vaguely described accounts receivable exist. they are (or will be) located outside the U.S. and are (or will be) owned by Iran – a foreign sovereign. To the extent that CMA CGM engages in any "bunkering oil" transactions with Iran, these take place wholly outside the United States. Schmitt Decl.. ¶¶ 3-4. Likewise. payments for any tariffs or other fees expended for use of Iranian port facilities occur entirely outside of the United States. *Id.* Thus. the alleged assets here are immune from assignment.

The payments allegedly owed (or to be owed) here, assuming any were properly identified. may be considered either an asset of some Iranian entity — in which case they would not be located "in the United States" — or they might be regarded as the debt of CMA CGM. in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1.62104072.1

13

OPP OF NON-PARTY CMA CGM TO PLTF'S
MOTION FOR ASSIGNMENT OF RIGHTS
(CASE NO. 08-MC-80030-JSW (BZ)))

1   which case they would be located in France, where CMA CGM has its headquarters and center of

2   operations. See *FG Hemisphere Associates*. 455 F.3d at 586 (situs of a debt for purposes of the

3   FSIA is the "locus from which the garnishees had supervised, directed, and financed the activities

4   that gave rise to their obligations to make royalty payment"): Schmitt Decl.. ¶ 2. Regardless of

5   whether the obligations in question are deemed assets of Iran. or debts owed from a French

6   company to Iran, the asset would not be located "in the United States."

7           **2.     No Payments or Obligations Used for a Commercial Activity in the
                      United States.**

8

9           The Ninth Circuit has held that, before the property of a sovereign can be executed on

10  under Section 1610. it must be ***actively used*** for a commercial activity in the United States. *Af-*

11  *Cap v. Chevron*, 475 F.3d 1080, 1088 (9th Cir. 2007) ("used for" is "most sensibly read to mean

12  active employment for commercial purposes. and not merely a passive. passing, or past

13  connection to commerce . . . . [T]he word 'use.' in legislation as in conversation. ordinarily

14  signifies 'active employment.'"): *Connecticut Bank of Commerce v. Republic of Congo*. 309 F.3d

15  240, 253 (5th Cir. 2002). Plaintiffs have not shown that any of the alleged debts or obligations to

16  Iran are being "actively employed" in the United States, and thus no such debts or obligations are

17  available for execution.

18          **3.     Recent Amendments to the FSIA are Irrelevant Here.**

19          Plaintiffs do not dispute that they are seeking assignment of Iranian assets. *See*

20  Memorandum of Points and Authorities at 2-4. They argue. however. that a recent amendment to

21  the FSIA gives them the ability to obtain the assignment of such assets. *Id.* Plaintiffs cite the

22  January 2008 amendment to the FSIA (Section 1605A(a)(1)). and assert that "the FSIA no longer

23  serves as a bar [to assignment]. and the assets of Iran are now subject to clear levy and

24  execution." *Id.* at 4. In fact. the amendment to the FSIA does not apply to Plaintiffs' judgment,

25  and, even if it did, it does not authorize a court to compel the assignment of assets outside of the

26  United States.

27          The amendments are not applicable here because Plaintiffs' judgment was not "filed

28  under" Section 1605A, nor was it "re-filed" within the time required to allow it to be deemed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14            OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                           MOTION FOR ASSIGNMENT OF RIGHTS
                                                           (CASE NO. 08-MC-80030-JSW (BZ)))

1    "filed under" Section 1605A. On its face. Section 1605A applies only to actions that were either

2    "filed under [1605A]" or "refiled under [1605A] by reason of section 1083(c)(2)(A) of the

3    National Defense Authorization Act." 28 U.S.C. § 1605A(a)(2)(A)(i)(I) and (II). Here.

4    Plaintiffs' action against Iran was not filed under Section 1605A; rather. it was filed under

5    Section 1605(a)(7). See *Deborah D. Peterson, et al. v. Islamic Republic of Iran.* Nos. 01-2094,

6    01-2684 (D.D.C. Sept. 2, 2007), slip op. at 2. Not only was Plaintiffs' judgment not refiled

7    under Section 1605A, it *could not have been re-filed* under Section 1605A. Section 1083 of the

8    National Defense Authorization Act allows actions that are "pending before the court" to be

9    deemed re-filed under Section 1605A if they are re-filed within 60 days of the enactment of the

10   statute. Here. not only did Plaintiffs fail to re-file within the specified time, but because their

11   judgment was entered in September 2007 it could not have been "pending before the court" at the

12   time Section 1605A was enacted four months later. *See Holland v. Islamic Republic of Iran.* 545

13   F. Supp. 2d 120. 121-22 (D.D.C. 2008) (an action in which a judgment was issued in February

14   2006 was not "pending before the court" for purposes of Section 1083, and thus could not be re-

15   filed under Section 1605A).

16         Even were the recent amendments applicable here. they do not supplant the principle that

17   under the FSIA a foreign sovereign's assets are immune from execution or assignment unless a

18   statutory exception exists. Indeed. Section 1605A(g) makes clear that with regard to establishing

19   a lien of *lis pendens* upon the real or tangible personal property of a foreign state guilty of a

20   terrorist act. such property must be "subject to attachment in aid of execution, or execution, under

21   section 1610" and must be "located within that judicial district" where the action has been filed

22   against the foreign state. Section 1610 itself is clearly confined to attachment or execution

23   against "[t]he property in the United States of a foreign state. as defined in section 1603(a) of this

24   chapter." Section 1610(g) makes clear that. even after the January 2008 amendment. property of

25   a foreign state (or property of an agency or instrumentality of a foreign state) is subject to

26   execution "as provided in this section" [*i.e.,* Section 1610], and thus subject to the limitations set

27   forth in Section 1610(a) and (b). In other words. Section 1605A still requires that there be

28   *property in the United States,* and none of the alleged debts or obligations that Plaintiffs seek to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1                                    15            OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                               MOTION FOR ASSIGNMENT OF RIGHTS
                                                               (CASE NO. 08-MC-80030-JSW (BZ)))

1    have assigned are present here.

2    **H.    For Both Practical and Constitutional Reasons, the Court Should**
     **Not Order Assignment of Any Debt or Obligation That May Be**
3    **Owed by CMA CGM.**

4        The statute on which Plaintiffs rely. Section 708.510, authorizes, but does not require,

5    courts to order judgment debtors to assign assets to judgment creditors in aid of execution on a

6    judgment.  The statute makes clear that courts may consider "all relevant factors" in determining

7    whether to order such an assignment.  Here, where the assignment sought by Plaintiffs could have

8    serious and unjustified adverse consequences for an innocent non-party, CMA CGM, the Court

9    should not order the requested assignment, even if all the statutory prerequisites had been met,

10   which, for the reasons already stated, they have not.

11       As a practical matter, no assignment that the Court could order — and in particular no

12   such assignment that could be ordered in Iran's absence from these proceedings — could bind

13   Iran and protect CMA CGM against the risk of multiple payments.  If CMA CGM paid to

14   Plaintiffs some alleged debt owed to Iran, nothing would preclude Iran from seeking to collect on

15   that debt again.  And, if a ship belonging to CMA CGM were to travel to Iran, Iran would have a

16   substantial asset against which to pursue such collection efforts.

17       Moreover, even if Plaintiffs could correct their deficiencies in service of process and

18   could properly summon Iran before this Court, this Court would lack effective enforcement

19   power regarding economic events in Iran.  If the Court were to order some obligation owed in

20   Iran to be paid to Plaintiffs, the Court would lack any effective means of ensuring that that order

21   would be respected in Iran and that CMA CGM would not be subjected to further collection

22   efforts by an Iranian creditor.

23       Under the circumstances, subjecting CMA CGM to the kind of order sought by Plaintiffs

24   would raise substantial due process concerns.  By hypothesis, CMA CGM would be compelled by

25   court order to make significant payments to Plaintiffs, and at the same time that court order would

26   not provide an effective protection against collection of the same sums by Iran or Iranian entities.

27   This would amount to a potential confiscation or uncompensated taking of CMA CGM's

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1 62104072.1                              16              OPP OF NON-PARTY CMA CGM TO PLTF'S
                                                           MOTION FOR ASSIGNMENT OF RIGHTS
                                                           (CASE NO. 08-MC-80030-JSW (BZ)))

1   property.[6]

2   **V.   CONCLUSION**

3          For the foregoing reasons, Plaintiffs' Motion should be denied.

4   Dated: September 15, 2008                    MORGAN, LEWIS & BOCKIUS LLP
                                                 MATTHEW S. WEILER
5

6

7                                                By _____/s/_____
                                                     Matthew S. Weiler
8                                                Attorneys for Non-Parties CMA GGM.
                                                 A.P. Moller Maersk A/S, and Mediterranean
9                                                Shipping Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____
     [6]   The problems would be exacerbated if any order of this Court were to apply to future, as-yet nonexistent
27   obligations, as Plaintiffs request. If Iran or Iranian entities were to be informed that payment for any
     products or services provided to CMA CGM in future transactions would be made not to the actual Iranian
28   vendor but to Plaintiffs, CMA CGM would be effectively precluded from engaging in any commerce with
     Iran or Iranian governmental entities.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62104072.1                    17        OPP OF NON-PARTY CMA CGM TO PLTF'S
                                            MOTION FOR ASSIGNMENT OF RIGHTS
                                            (CASE NO. 08-MC-80030-JSW (BZ)))