**EXHIBIT "F"**

DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ. (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,759

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | CASE NO. 3:08-mc-80030-JSW (BZ) <br><br> OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS; AND REQUEST FOR DE NOVO REVIEW |

COMES NOW Plaintiffs DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al. ("Plaintiffs"), who hereby object to the REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS (CMA CGM) dated October 14, 2008, as follows:

OBJECTION NO. 1:

The court stated at page 4, lines 14-19:

". . . First, I recommend that the right to payment be one that exists within the United States. [Multiple citations omitted]."

BASIS OF OBJECTION: Under the changes to the Foreign Sovereignty Immunities Act, applicable herein under the National Defense Appropriations Act of 2008 (NDAA), Plaintiffs have a right to receive rights to payment of money, even though those rights might originate outside the

United States. Specifically, Section 1610(g)(1) does not bear the same limitation as found under Section 1610(a) et seq. The effective changes to FSIA, represented by NDAA, are set forth in 28 U.S.C. § 1605A(a)(1) & (g)(1), which provides as follows:

> "(a) IN GENERAL. --
> "(1) NO IMMUNITY. – A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."
>
> "(g) PROPERTY IN CERTAIN ACTIONS –
> "(1) IN GENERAL. – subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of –
> "(A) the level of economic control over the property by the government of a foreign state;
> "(B) whether the profits of the property go to that government;
> "(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> "(D) whether that government is the sole beneficiary in interest of the property; or
> "(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
> "(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE. Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgement entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act."

Without the ability to reach assets of Iran whose nexus might be located outside the United States, such as proposed here, would hinder these Plaintiffs in their attempts to recover on this judgment. The language of Section 1610(g)(1) is in stark contrast to Section 1610(a)(7), which limits any recovery limited to assets situated in the United States, the effect of which would be to severely curtail any ability to recover. Specifically, the purposes of the changes to FSIA represented by NDAA was to broaden the scope of assets available to a judgment creditor, and specifically these judgment creditors. In an assignment setting, under C.C.P. § 708.510(a), the court keeps and retains jurisdiction against Iran, and accordingly, the power of the assignment order should be

OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS - CASE NO. 3:08-mc-80030-JSW (BZ)   2

1  coextensive with the scope of accessible relief under Section 1610(g)(1).

2  Accordingly, Plaintiffs seek an order which would expand the rights to payment of money
3  for obligations which originate outside the United States and may be due and payable, or paid to
4  Iran.

5  OBJECTION NO. 2:

6  The court stated at page 4, lines 19-24 :

7  "Second, I recommend that the right to payment be derived from property of Iran
   that was used for a commercial activity in the United States. [Multiple citations
8  omitted]

9  BASIS OF OBJECTION: Under NDAA, and specifically Section 1610(g)(1), Plaintiffs are
10 not bound by the limitation that the right to payment be derived from property of Iran that was
11 used for a commercial activity in the United States. Rather, Section 1610(g)(1) provides for no
12 such limitation, permitting a Judgment Creditor to reach either property and/or a right to payment
13 of money outside the United States.

14 Again, the Magistrate Judge's limitation tethers Plaintiffs to assets of Iran "used for a
15 commercial activity in the United States" which by its very nature is a limited asset base. In this
16 setting, the subject matter of the assignment motion are obligations payable by an international
17 cargo carrier, CMA CGM, which ostensibly does business out of its Marseille office, a matter
18 which is not conceded. Accordingly, the limitation imposed by the Magistrate Judge restricts
19 Plaintiffs' ability to reach the revenue stream payable by CMA CGM to Iran, as it originates both
20 outside the United States and related to a commercial activity likewise outside the United States.

21 OBJECTION NO. 3:

22 The court stated at page 4, lines 27-18; page 5, lines 1-2:

23 "Finally, I recommend that the assignment be limited to existing payment rights,
   even if the right to payment has not yet come due or will come due in the future."
24
   BASIS OF OBJECTION: C.C.P. § 708.510 provides for the assignment of rights, and
25 nothing in the statute requires that the rights come into "fruition" as of the date of the assignment.
26 Plaintiffs therefore are entitled to seek an assignment of rights, whose existence might arise in the
27 future, including those rights which are "non-existent." C.C.P. § 708.510 provides for the
28 assignment of rights, without limitation as to whether and/or when those rights would or would not

arise.

The exact language of C.C.P. § 708.510 does not require that the right be in existence and the list of potential rights are by their nature recurring or "evergreen," meaning that these rights might well originate in the future, such as rents, commissions, royalties, and other contingent rights. As long as the right is defined, even though not in existence, Plaintiffs would be entitled to have that right assigned. Requiring that the right be in existence is beyond the scope of C.C.P. § 708.510, who only requires that the right be defined with such particularity that the judgment debtor be informed as to what right might be assigned, and therefore enabling the judgment debtor to comply with the court's order, file opposition, or seek an exemption.

OBJECTION NO. 4:

The proposed form of order states as follows at page 1, lines 23-28; page 2, lines 1-12:

> "**IT IS FURTHER ORDERED** that by November 20, 2008, Iran must assign to plaintiffs, care of their attorney, David J. Cook, Cook Collection Attorneys, P.L.C., 165 Fell Street, Third Floor, San Francisco, CA 94102, pursuant to F.R.Civ.P. 69(a) and California Code of Civil Procedure section 780.510(a), **all or part of any existing right to payment in the United States, due or to become due, whether or not that right is conditioned on future developments, from and owing by CMA CGM, arising out of any commercial activity pertaining, specifically, to the use of any harbor, docking, wharf, drayage, loading or other harbor-like facilities in the United States, along with and including the sale of bunkered oil and/or fuel provided, sold, delivered, or vended to CMA CGM by Iran in the United States**, for the purpose of satisfaction, in part or in whole, of the judgment of $2,656,944,877.00 in <u>Peterson vs. Islamic Republic of Iran</u>, Case No. 01-2094 (RCL) and 01-2684 (RCL) filed in the United States District Court for the District of Columbia.

BASIS OF OBJECTION: Plaintiffs object to the proposed form of order, the following language as highlighted above. The basis of the objection is the inclusion of the language ". . . facilities in the United States . . . and . . . vended to CMA CGM by Iran in the United States, . . ." Plaintiffs object as to the limitations as to the rights relating to "facilities in the United States," and the fact that the sale of the "bunkered oil" be in the United States. Under Section 1610(g)(1), Plaintiffs are not bound by such a limitation or restriction thereof.

The precise language of this order incorporates the limitations as set forth in the REPORT AND RECOMMENDATION, which objections are specifically incorporated herein.

WHEREFORE, Plaintiffs pay that an order be entered herein, sustaining the objections therein, and excising or striking the limitations as set forth thereunder, and entering a new and

OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS - CASE NO. 3:08-mc-80030-JSW (BZ)    4

different assignment order consistent with the objections hereunder.

DATED: October 24, 2008

COOK COLLECTION ATTORNEYS

By: /s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al.

F:\USERS\DJCNEW\petersonsf.objreport

OBJECTIONS TO REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR ASSIGNMENT OF RIGHTS - CASE NO. 3:08-mc-80030-JSW (BZ)

5

**EXHIBIT "G"**

# IRAN

**U.S. Department of the Treasury Office of Foreign Assets Control**

## What You Need To Know About U.S. Economic Sanctions

## An overview of O.F.A.C. Regulations involving Sanctions against Iran

### Iranian Transactions Regulations - 31 C.F.R. Part 560

As a result of Iran's support for international terrorism and its aggressive actions against non-belligerent shipping in the Persian Gulf, President Reagan, on October 29, 1987, issued Executive Order 12613 imposing a new import embargo on Iranian-origin goods and services. Section 505 of the International Security and Development Cooperation Act of 1985 ("ISDCA") was utilized as the statutory authority for the embargo which gave rise to the Iranian Transactions Regulations, Title 31 Part 560 of the U.S. Code of Federal Regulations (the "ITR").

Effective March 16, 1995, as a result of Iranian sponsorship of international terrorism and Iran's active pursuit of weapons of mass destruction, President Clinton issued Executive Order 12957 prohibiting U.S. involvement with petroleum development in Iran. On May 6, 1995, he signed Executive Order 12959, pursuant to the International Emergency Economic Powers Act ("IEEPA") as well as the ISDCA, substantially tightening sanctions against Iran.

On August 19, 1997, the President signed Executive Order 13059 clarifying Executive Orders 12957 and 12959 and confirming that virtually all trade and investment activities with Iran by U.S. persons, wherever located, are prohibited.

On March 17, 2000, the Secretary of State announced that sanctions against Iran would be eased to allow U.S. persons to purchase and import carpets and food products such as dried fruits, nuts, and caviar from Iran. This change was implemented through amendments to the ITR at the end of April 2000.

Corporate criminal penalties for violations of the Iranian Transactions Regulations can range up to $500,000, with individual penalties of up to $250,000 and 20 years in jail. Civil penalties of up to $50,000 may also be imposed administratively.

This fact sheet provides general information about the Iranian sanctions program under the Iranian Transactions Regulations, and incorporates sanctions imposed by Executive Orders 12957, 12959, and 13059. The sanctions are administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

• **IMPORTS FROM IRAN** - Goods or services of Iranian origin may not be imported into the United States, either directly or through third countries, with the following exceptions:

  (a) Gifts valued at $100 or less;

  (b) Information or informational materials;

  (c) Foodstuffs intended for human consumption that are classified under chapters 2-23 of the Harmonized Tariff Schedule of the United States; and

  (d) Carpets and other textile floor coverings and carpets used as wall hangings that are classified under chapter 57 or heading 9706.00.0060 of the Harmonized Tariff Schedule of the United States.

U.S. persons are prohibited from providing financing for prohibited import transactions. There are restrictions on letter of credit transactions involving the Government of Iran (see FINANCIAL DEALINGS WITH IRAN, FINANCING PURCHASES FROM IRAN OR ITS GOVERNMENT, and FINANCING IRANIAN-ORIGIN FOODSTUFFS AND CARPETS OTHER THAN PURCHASES FROM IRAN OR ITS GOVERNMENT below).

• **EXPORTS TO IRAN** - In general, unless licensed by OFAC, goods, technology (including technical data or other information subject to Export Administration Regulations), or services may not be exported, reexported, sold or supplied, directly or indirectly, from the United States or by a U.S. person, wherever located, to Iran or the Government of Iran. The ban on providing services includes any brokering function from the United States or by U.S. persons, wherever located. For example, a U.S. person, wherever located, or any person acting within the United States, may not broker offshore transactions that benefit Iran or the Government of Iran, including sales of foreign goods or arranging for third-country financing or guarantees.

In general, a person may not export from the U.S. any goods, technology or services, if that person knows or has reason to know such items are intended specifically for supply, transshipment or reexportation to Iran. Further, such exportation is prohibited if the exporter knows or has reason to know the U.S. items are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology or services to be directly or indirectly supplied, transshipped or reexported exclusively or predominately to Iran or the Government of Iran. A narrow exception is created for the exportation from the United States or by U.S. persons wherever located of low-level goods or technology to third countries for incorporation or substantial transformation into foreign-made end products, provided the U.S. content is insubstantial, as defined in the regulations, and certain other conditions are met.

Donations of articles intended to relieve human suffering (such as food, clothing, and medicine), gifts valued at $100 or less, licensed exports of agricultural commodities, medicine, and medical devices, and trade in "informational materials" are permitted. "Informational materials" are defined to include publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, compact disks, CD ROMs, artworks, and news wire feeds, although certain Commerce Department restrictions still apply to some of those materials. To be considered

G

informational material, artworks must be classified under chapter subheadings 9701, 9702, or 9703 of the Harmonized Tariff Schedule of the United States.

With certain exceptions, foreign persons who are not U.S. persons are prohibited from reexporting to Iran sensitive U.S.-origin goods, technology or services to Iran or the Government of Iran. Foreign persons involved in such reexports may be placed on the U.S. Commerce Department's "Export Denial Orders" list.

U.S. persons may not approve, finance, facilitate or guarantee any transaction by a foreign person where that transaction by a foreign person would be prohibited if performed by a U.S. person or from the United States.

• DEALING IN IRANIAN-ORIGIN GOODS OR SERVICES - Except as authorized by amendments to the ITR relating to foodstuffs and carpets, which were issued at the end of April 2000, U.S. persons, including foreign branches of U.S. depository institutions and trading companies, are prohibited from engaging in any transactions, including purchase, sale, transportation, swap, financing, or brokering transactions related to goods or services of Iranian origin or goods or services owned or controlled by the Government of Iran.

Services provided in the United States by an Iranian national already resident in the United States are not considered services of Iranian origin.

These prohibitions apply to transactions by United States persons in locations outside the United States with respect to goods or services which the United States person knows, or has reason to know, are of Iranian origin or are owned or controlled by the Government of Iran. U.S. persons may not import such goods or services into or export them from foreign locations. A U.S. person may, however, engage in transactions in third countries necessary to sell, dispose of, store, or maintain goods located in a third country which were legally acquired by that U.S. person prior to May 7, 1995 on the condition that the transactions do not result in an importation into the United States of goods of Iranian origin.

• FINANCIAL DEALINGS WITH IRAN - New investments by U.S. persons, including commitments of funds or other assets, loans or any other extensions of credit, in Iran or in property (including entities) owned or controlled by the Government of Iran are prohibited. For your information, Appendix A contains a list of banks owned or controlled by the Government of Iran. While U.S. persons may continue to charge fees and accrue interest on existing Iranian loans, a specific license must be obtained to reschedule or otherwise extend the maturities of existing loans.

Payments for licensed sales of agricultural commodities, medicine and medical devices must reference an appropriate OFAC license and may not involve a debit or credit to an account of a person in Iran or the Government of Iran maintained on the books of a U.S. depository institution. Payments for and financing of such licensed sales may be accomplished by cash in advance, sales on open account (provided the account receivable is not transferred by the person extending the credit), or by third country financial institutions that are neither U.S. persons nor government of Iran entities. Any other arrangements must be specifically authorized by OFAC. U.S. depository institutions may advise and confirm letters of credit issued by third country banks covering licensed sales of agricultural commodities, medicine and medical devices.

Bank Saderat, one of the largest Iranian-government owned banks, has been found to be a significant facilitator of financial transactions between the government of Iran and Hizballah, Hamas, the Popular Front for the Liberation of Palestine-General Command and the Palestinian Islamic Jihad. For these reasons, the Department of the Treausry has taken steps to completely cut off Bank Saderat from the U.S. financial system.

U.S. financial institutions are prohibited from all financial transactions directly or indirectly involving Bank Saderat, including transactions that might otherwise be permitted under the ITR. Prohibited transactions include: processing of U-turn transactions and transactions ordinarily incident to licensed or exempt transactions, including payments and financing for the exportation of licensed agricultural goods, medicine and medical devices and non-commercial payments to or from Iran. The amendments contain grace periods for the completion of certain transactions which were in effect at the time of the amendment.

• FINANCING PURCHASES FROM IRAN OR ITS GOVERNMENT - Payments for authorized imports of foodstuffs and carpets must reference the relevant section of the ITR. While U.S. depository institutions may deal with Iranian banks on a documentary collection basis [URC 522] for authorized purchases of foodstuffs or carpets, neither payments under collections, nor any other payments, may involve a debit or credit to the account of a person in Iran or the Government of Iran on the books of a U.S. depository institution. U.S. depository institutions may issue letters of credit for purchases provided that the letters of credit are not advised, negotiated, paid, or confirmed by a bank that is included within the definition of the term Government of Iran. A bank that is included in the definition of the term Government of Iran may forward letter of credit documents strictly on a documentary collection basis, either directly to a U.S. depository institution or to a third country bank that is not included within the definition of the term Government of Iran, but cannot send them on an "approval" basis since it cannot be party to a letter of credit.

• FINANCING IRANIAN-ORIGIN FOODSTUFFS AND CARPETS OTHER THAN PURCHASES FROM IRAN OR ITS GOVERNMENT - U.S. depository institutions are authorized to issue, advise, negotiate, pay, or confirm letters of credit to pay for transactions in or related to foodstuffs and carpets as referenced in amendments to the ITR issued at the end of April 2000, other than purchases from Iran or its Government, provided that such letters of credit are not issued, advised, negotiated, paid, or confirmed by a bank that is included within the definition of the term Government of Iran.

• "PRE-ZERO CONTRACTS" - Letters of credit and other financing arrangements with respect to trade contracts in force as of May 6, 1995, may be performed pursuant to their terms provided that the underlying trade transaction was completed prior to June 6, 1995 (February 2, 1996 for "agricultural commodities"), or as specifically licensed by OFAC. Standby letters of credit that serve as performance guarantees for services to be rendered after June 6, 1995, cannot be renewed and payment may not be made after that date without authorization by OFAC.

• OTHER BANKING SERVICES - U.S. depository institutions, including foreign branches, are prohibited from servicing accounts of the Government of Iran, including banks owned or controlled by the Government of Iran (as in Appendix A) or persons in Iran. However, they are authorized to pay interest, deduct reasonable and customary service charges, process transfers related to exempt transactions, such as the exportation of information or informational material, a travel-related remittance, or a payment for the shipment of a donation of articles to relieve human suffering or, at the request of an account holder, effect a lump sum closure of an account by payment to its owner. They may not otherwise directly credit or debit Iranian accounts.

U.S. depository institutions may handle "U-turn" transactions--cover payments involving Iran that are by order of a third country bank for payment to another third country bank--provided they do not directly credit or debit an Iranian account. They are also permitted to handle non-commercial family remittances involving Iran and non-commercial remittances involving humanitarian relief (such as for the victims of the earthquake in Khorasan), provided the transfers are routed to or from non-U.S., non-Iranian offshore banks.

U.S. depository institutions initiating or receiving payment orders involving Iran on behalf of customers must determine prior to processing such payments that they do not involve transactions prohibited by the Iranian Transactions Regulations.

- **TRAVEL** - All transactions ordinarily incident to travel to or from Iran, including the importation of accompanied baggage for strictly personal use, payment of maintenance and living expenses and acquisition of goods or services for personal use are permitted.

- **NON-GOVERNMENTAL ORGANIZATIONS** – Under a general license issued by OFAC, effective August 22, 2006, U.S. persons that are employees or contractors for the following international organizations - United Nations, the World Bank, the International Monetary Fund, the International Atomic Energy Agency, the International Labor Organization or the World Health Organization - are authorized to engage in transactions for the conduct of official business in or involving Iran. Authorized transactions may include leasing office space or purchasing Iranian-origin goods necessary to carry out official business, provided that the funds transfers to and from Iran do not involve a debit or credit on the books of a U.S. financial institution. The exportation or the re-exportation of US-origin or non-U.S.-origin goods or technology listed on the Commerce Control List in the Export Administration Regulations is not authorized.

- **OVERFLIGHTS PAYMENTS** - Payments to Iran for services rendered by the Government of Iran in connection with the overflight of Iran or emergency landing in Iran of aircraft owned by United States persons or registered in the U.S. are authorized.

- **PERSONAL COMMUNICATIONS, INFORMATION AND INFORMATIONAL MATERIALS** - The receipt or transmission of postal, telegraphic, telephonic or other personal communications, which does not involve the transfer of anything of value, between the United States and Iran is authorized. The exportation from the United States to Iran of information and informational materials, whether commercial or otherwise, regardless of format or medium of transmission, and any transaction incident to such exportation is authorized.

- **TRANSACTIONS INVOLVING U.S. AFFILIATES** - No U.S. person may approve or facilitate the entry into or performance of transactions or contracts with Iran by a foreign subsidiary of a U.S. firm that the U.S. person is precluded from performing directly. Similarly, no U.S. person may facilitate such transactions by unaffiliated foreign persons.

- **IRANIAN PETROLEUM INDUSTRY** - U.S. persons may not trade in Iranian oil or petroleum products refined in Iran, nor may they finance such trading. Similarly, U.S. persons may not perform services, including financing services, or supply goods or technology, that would benefit the Iranian oil industry.

### APPENDIX A - BANKS OWNED OR CONTROLLED BY THE GOVERNMENT OF IRAN

AGRICULTURAL COOPERATIVE BANK OF IRAN (a.k.a. BANK TAAVON KESHAVARZI IRAN), No 129 Patrice Lumumba Street, Jalal-Al-Ahmad Expressway, P.O Box 14155/6395, Tehran, Iran

AGRICULTURAL DEVELOPMENT BANK OF IRAN (a.k.a. BANK JOSIAIYI KESHAHVARZI), Farahzad Expressway, Tehran, Iran

BANK JOSIAIYI KESHAHVARZI (a.k.a. AGRICULTURAL DEVELOPMENT BANK OF IRAN), Farahzad Expressway, Tehran, Iran

BANK MARKAZI JOMHOURI ISLAMI IRAN (a.k.a. THE CENTRAL BANK OF IRAN), Ferdows Avenue, P.O. Box 11365-8551, Tehran, Iran

BANK MASKAN (a.k.a. HOUSING BANK (of Iran)), Ferdowsi St., Tehran, Iran

BANK MELLAT, Park Shahr, Varzesh Avenue, P.O Box 11365/5964, Tehran, Iran, and all offices worldwide, including, but not limited to

    ▯ BANK MELLAT (Branch), Ziya Gokalp Bulvan No 12, Kizilay, Ankara, Turkey

    ▯ BANK MELLAT (Branch), Binbir Cicek Sokak, Buyukdere Caddesi, P.O Box 67, Levant, Istanbul, Turkey

    ▯ BANK MELLAT (Branch), 48 Gresham Street, London EC2V 7AX, England

BANK MELLI, P.O. Box 11365-171, Ferdowsi Avenue, Tehran, Iran, and all offices worldwide, including, but not limited to

    ▯ BANK MELLI (Branch), 4 Moorgate, London EC2R 6AL, England

    ▯ BANK MELLI (Branch), Schadowplatz 12, 4000 Dusseldorf 1, Germany

    ▯ BANK MELLI (Branch), Friedenstrasse 4, P.O. Box 160 154, 6000 Frankfurt am Main, Germany

    ▯ BANK MELLI (Branch), P.O. Box 112129, Holzbruecke 2, 2000 Hamburg 11, Germany

    ▯ BANK MELLI (Branch), Odeonsplatz 18, 8000 Munich 22, Germany

    ▯ BANK MELLI (Branch), 43 Avenue Montaigne, 75008 Paris, France

    ▯ BANK MELLI (Branch), 601 Gloucester Tower, The Landmark, 11 Pedder Street, P.O. Box 720, Hong Kong

    ▯ BANK MELLI (Representative Office), 333 New Tokyo Building, 3-1 Marunouchi, 3-chome, Chiyoda-ku, Tokyo, Japan

    ▯ BANK MELLI (Representative Office), 818 Wilshire Boulevard, Los Angeles, California 90017, U S A

    ▯ BANK MELLI (Representative Office), 767 Fifth Avenue, 44th Floor, New York, New York 10153, U S A

    ▯ BANK MELLI (Representative Office), Smolensky Boulevard 22/14, Kv 5, Moscow, Russia

    ▯ BANK MELLI (Branch), Flat No 1, First Floor, 6 Al Sad El-Aaly, Dokki, P.O Box 2654, Cairo, Egypt

    ▯ BANK MELLI (Branch), Ben Yas Street, P.O Box No 1894, Riga Deira, Dubai, U A E

    ▯ BANK MELLI (Branch), P.O Box 2656, Shaikha Maryam Building, Liwa Street, Abu Dhabi, U A E

    ▯ BANK MELLI (Branch), B P O Box 1888, Clock Tower, Industrial Road, Al-Ain Club Building in from Emertel Al Ain, Al Ain, Abu Dhabi, U A E

    ▯ BANK MELLI (Branch), P.O Box 1894, Riga, Ban Yas Street, Deira, Dubai, U A E

    ▯ BANK MELLI (Branch), Mohd-Habib Building, Al-Fahidi Street, P.O Box 3093, Bur Dubai, Dubai, U A E

    ▯ BANK MELLI (Branch), P.O Box 248, Fujairah, U A E

    ▯ BANK MELLI (Branch), Sami Sagar Building Oman Street Al-Nakheel, P.O Box 5270, Ras-Al Khaimah, U A E

    ▯ BANK MELLI (Branch), P.O Box 459, Al Bory Street, Sharjah, U A E

    ▯ BANK MELLI (Branch), P.O Box 785, Government Road, Shaikh Mubarak Building, Manama, Bahrain

    ▯ BANK MELLI (Branch), P.O Box 23309, Shaikh Salman Street, Road No 1129, Muharraq 211, Bahrain

    ▯ BANK MELLI (Branch), P.O Box 5643, Mossa Abdul Rehman Hassan Building, 238 Al Burj St., Ruwi, Muscat, Oman

BANK OF INDUSTRY AND MINE (of Iran) (a.k.a. BANK SANAT VA MADAN), Hafez Avenue, P.O. Box 11365/4978, Tehran, Iran

BANK REFAH KARGARAN (a.k.a. WORKERS WELFARE BANK (of Iran)), Moffettah No 125, P.O Box 15815-566, Tehran, Iran

BANK SADERAT IRAN, Bank Saderat Tower, P.O Box 15745-631, Somayeh Street, Tehran, Iran, and all offices worldwide, including, but not limited to

    ▯ BANK SADERAT IRAN (Branch), Hamdam Street, Airport Road Intersection, P.O Box 700, Abu Dhabi, U A E

    ▯ BANK SADERAT IRAN (Branch), Al-Am Road, P.O. Box 1140, Al Ein, Abu Dhabi, U A E

    ▯ BANK SADERAT IRAN (Branch), Liwara Street, P.O Box 16, Ajman, U A E

    ▯ BANK SADERAT IRAN (Branch), 3rd Floor Dom Desaf Building, Mejoka Street 7A, Ashkhabad, Turkmenistan

    ▯ BANK SADERAT IRAN (Branch), 25-29 Panepistimou Street, P.O Box 4308, GR-10210, Athens 10672, Greece

    ▯ BANK SADERAT IRAN (Branch), Imam Ali Street, Sahat Yaghi, Ras Elain-Alektissad Building 2nd Floor, Baalbeck, Lebanon

    ▯ BANK SADERAT IRAN (Branch and Offshore Banking Unit), 106 Government Road, P O Box 825, Manama Town 316, Bahrain

    ▯ BANK SADERAT IRAN (Branch), Hamra Pavillon Street, Savvagh and Daaboul Building 1st Floor, P.O Box 113-6717, Beirut, Lebanon

    ▯ BANK SADERAT IRAN (Branch), Alghobairi Boulevard, Beirut, Lebanon

    ▯ BANK SADERAT IRAN (Branch), 28 Sherif Street, P.O. Box 462, Cairo, Egypt

    ▯ BANK SADERAT IRAN (Branch), Old Ben-Ghanem Street (next to God Market), P.O Box 2256, Doha, Qatar

    ▯ BANK SADERAT IRAN (Branch), Almaktoum Road, P.O Box 4182, Deira, Dubai, U A E

    ▯ BANK SADERAT IRAN (Branch), Bazar Murshid, P.O Box 4182, Deira, Dubai, U A E

    ▯ BANK SADERAT IRAN (Branch), Alfahid Road, P.O Box 4182, Bur Dubai, Dubai, U A E

    ▯ BANK SADERAT IRAN (Branch), Sherea Shekiah Zayad Street, P.O Box 55, Fujairah, U A E

    ▯ BANK SADERAT IRAN (Branch), Wilhelm Leuschner Strasse 41, P.O Box 160151, W-6000 Frankfurt am Main, Germany

    ▯ BANK SADERAT IRAN (Branch), P.O. Box 112227, Hopfenhof Passage, Kleiner Bustan 6-10, W-2000 Hamburg 11, Germany

    ▯ BANK SADERAT IRAN (Branch), Lothbury, London EC2R 7HD, England

    ▯ BANK SADERAT IRAN (Representative Office), 707 Wilshire Boulevard, Suite 4880, Los Angeles, California 90017, U S A

    ▯ BANK SADERAT IRAN (Representative Office), 55 East 59th Street, 16th Floor, New York, New York 10022, U S A

    ▯ BANK SADERAT IRAN (Branch), P.O. Box 4269, Mutrah, Muscat, Oman

    ▯ BANK SADERAT IRAN (Branch), 16 rue de la Paix, Paris 2eme, 75002 Paris, France

    ▯ BANK SADERAT IRAN (Branch), Alaroba Road, P.O Box 315, Sharjah, U A E

BANK SANAT VA MADAN (a.k.a. BANK OF INDUSTRY AND MINE (of Iran)), Hafez Avenue, P.O. Box 11365/4978, Tehran, Iran

BANK SEPAH, Emam Khomeini Square, P.O Box 11364, Tehran, Iran, and all offices worldwide, including, but not limited to

    ▯ BANK SEPAH (Branch), Muenchener Strasse 49, P.O Box 10 03 47, W-6000 Frankfurt am Main 1, Germany

    ▯ BANK SEPAH (Branch), 5/7 Eastcheap, EC3M 1JT London, England

    ▯ BANK SEPAH (Representative Office), 650 Fifth Avenue, New York, New York 10019, U S A

    ▯ BANK SEPAH (Branch), 17 Place Vendome, 75001 Paris, France

    ▯ BANK SEPAH (Branch), Via Barberini 50, 00187 Rome, Italy

    ▯ BANK SEPAH (Representative Office), Ufficio di Rappresentan Za, Via Ugo Foscolo 1, 20121 Milan, Italy

BANK TAAVON KESHAVARZI IRAN (a.k.a. AGRICULTURAL COOPERATIVE BANK OF IRAN) No. 129 Patrice Lumumba Street, Jalal-Al-Ahmad Expressway, P.O. Box 14155/6395, Tehran, Iran

BANK TEJARAT, 130 Taleghani Avenue, Nejatoullahie, P.O Box 11365-5416, Tehran, Iran, and all offices worldwide, including, but not limited to

☐ BANK TEJARAT (Branch), 6/8 Clements Lane, London EC4N 7AP, England

☐ BANK TEJARAT (Branch), 44 Avenue des Champs Elysees, 75008 Paris, France

DEUTSCH-IRANISCHE HANDELSBANK AG (n k a EUROPAEISCH-IRANISCHE HANDELSBANK AG) Deperau 2, W-2000 Hamburg 1, Germany, and all offices worldwide, including, but not limited to

    ☐ DEUTSCH-IRANISCHE HANDELSBANK AG (n k a EUROPAEISCH-IRANISCHE HANDELSBANK AG) (Representative Office), 23 Argentine Square, Behaghi Bulvard, P.O. Box 15815/1787, Tehran 15148, Iran

EUROPAEISCH-IRANISCHE HANDELSBANK AG (f k a DEUTSCH-IRANISCHE HANDELSBANK AG) Deperau 2, W-2000 Hamburg 1, Germany, and all offices worldwide, including, but not limited to

    ☐ EUROPAEISCH-IRANISCHE HANDELSBANK AG (f k a DEUTSCH-IRANISCHE HANDELSBANK AG) (Representative Office), 23 Argentine Square, Behaghi Bulvard, P.O. Box 15815/1787, Tehran 15148, Iran

HOUSING BANK (of Iran) (a k a BANK MASKAN), Ferdowsi St., Tehran, Iran

IRAN OVERSEAS INVESTMENT BANK LIMITED (f k a IRAN OVERSEAS INVESTMENT CORPORATION LIMITED), 120 Moorgate, London EC2M 6TS, England, and all offices worldwide, including, but not limited to

    ☐ IRAN OVERSEAS INVESTMENT BANK LIMITED (Representative Office), 1137 Avenue Vali Asr off Park-e-SAII, P.O. Box 15115/531, Tehran, Iran

    ☐ IRAN OVERSEAS INVESTMENT BANK LIMITED (Agency), Suite 3c Olympia House, 61/63 Dame Street, Dublin 2, Ireland

    ☐ IRAN OVERSEAS INVESTMENT BANK LIMITED (Agency), Improgetti, Via Germanico 24, 00192 Rome, Italy

    ☐ IRAN OVERSEAS TRADING COMPANY LIMITED (Subsidiary), 120 Moorgate, London EC2M 6TS, England

    ☐ IRAN OVERSEAS INVESTMENT CORPORATION LIMITED (n k a IRAN OVERSEAS INVESTMENT BANK LIMITED), 120 Moorgate, London EC2M 6TS, England

THE CENTRAL BANK OF IRAN (a k a BANK MARKAZI JOMHOURI ISLAMI IRAN), Ferdowsi Avenue, P.O. Box 11365-8551, Tehran, Iran

WORKERS WELFARE BANK (of Iran) (a k a BANK REFAH KARGARAN), Moffetah No. 125, P.O. Box 15815 1566, Tehran, Iran

## Iranian Assets Control Regulations - 31 C.F.R Part 535

Separate Iranian sanctions regulations appear at 31 C.F.R. Part 535. On November 14, 1979, the assets of the Government of Iran in the United States were blocked in accordance with IEEPA following the seizure of the American Embassy in Teheran and the taking of U.S. diplomats as hostages. Under the Iranian Assets Control Regulations (Title 31 Part 535 of the U.S. Code of Federal Regulations), some US$12 billion in Iranian Government bank deposits, gold, and other properties were frozen, including $5.6 billion in deposits and securities held by overseas branches of U.S. banks. The assets freeze was eventually expanded to a full trade embargo, which remained in effect until the Algiers Accords were signed with Iran on January 19, 1981. Pursuant to the Accords, most Iranian assets in the United States were unblocked and the trade embargo was lifted. The U.S. Government also canceled any attachments that U.S. parties had secured against Iranian assets in the United States, so that the assets could be returned to Iran or transferred to escrow accounts in third countries pursuant to the Accords. This action was upheld by the Supreme Court in 1981 in Dames & Moore v. Regan. Although greatly modified in scope, the old Iranian Assets Control Regulations remain in effect. Many U.S. nationals have claims against Iran or Iranian entities for products shipped or services rendered before the onset of the 1979 embargo or for losses sustained in Iran due to expropriation during that time. These claims are still being litigated in the Iran-United States Claims Tribunal at The Hague established under the Algiers Accords. Certain assets related to these claims remain blocked in the United States and consist mainly of military and dual-use property.

---

This document is explanatory only and does not have the force of law. The Executive Orders and implementing regulations dealing with Iran contain the legally binding provisions governing the sanctions. This document does not supplement or modify those Executive Orders or regulations.

The Treasury Department's Office of Foreign Assets Control also administers sanctions programs involving the Balkans, Burma (Myanmar), Cuba, Diamond Trading, Iran, Iraq, Liberia, North Korea, Sudan, Syria, Zimbabwe as well as highly enriched uranium, designated Terrorists and international Narcotics Traffickers, Foreign Terrorist Organizations and designated foreign persons who have engaged in activities relating to the proliferation of weapons of mass destruction. For additional information about these programs or about sanctions involving Iran, please contact the:

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W. - Annex
Washington, D.C. 20220
http://www.treas.gov/ofac
202/622-2490