MORGAN, LEWIS & BOCKIUS LLP
PETER BUSCEMI, State Bar No. 255213
MATTHEW S. WEILER, State Bar No. 236052
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: pbuscemi@morganlewis.com
E-mail: mweiler@morganlewis.com

Attorneys for Non-Parties CMA GGM, A.P. Moller
Maersk A/S, and Mediterranean Shipping Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | Case No. 08-MC-80030-JSW (BZ) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CMA CGM'S MOTION FOR DE NOVO REVIEW OF THE OCTOBER 14, 2008 REPORT AND RECOMMENDATION AND ORDER COMPELLING ASSIGNMENT OF RIGHTS** <br><br> Hearing Date: December 19, 2008 <br> Time: 9:00 A.M. <br> Place: Courtroom 2 <br><br> Hon. Jeffrey S. White |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4

MEMO. ISO NON-PARTY CMA CGM'S
MOTION FOR DE NOVO REVIEW
(CASE NO. 08-MC-80030-JSW (BZ))

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1
II. FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 4
III. ARGUMENT ........................................................................................................................ 5
  A. Under the FSIA, Property That Is Not Immune From Attachment or Execution Must Be Identified as a Jurisdictional Prerequisite for the Requested Assignment. ........................................................................................... 6
  B. No Exception to Immunity Applies to the Property That Plaintiffs Seek to Have Assigned to Them. ...................................................................................... 7
  C. The Newly Enacted Section 1605A Does Not Cure Plaintiffs' Failure to Satisfy the Requirements of Section 1610. ........................................................ 9
  D. Further Proceedings Against CMA CGM, Including Discovery, are Inappropriate in Light of the Absence of Payments to Iran Made in the United States and Used for a Commercial Activity in the United States. ............. 11
  E. Plaintiffs Have Failed to Comply with the Service Requirements of Section 1608. ................................................................................................................... 12
IV. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Af-Cap v. Chevron*,
  475 F.3d 1080 (9th Cir. 2007) .................................................................................... 7

*Autotech Technologies LP v. Integral Research & Development Corp.*,
  499 F.3d 737 (7th Cir. 2007) ............................................................................. 7, 8, 9

*Crist v. Republic of Turkey*,
  995 F. Supp. 5 (D.D.C. 1998) ............................................................................ 11, 12

*Daliberti v. Republic of Iraq*,
  97 F. Supp. 2d 38 (D.D.C. 2000) ................................................................................ 8

*FG Hemisphere Associates, LLC v. The Republique du Congo*,
  455 F.3d 575 (5th Cir. 2006) ............................................................................. 6, 7, 9

*Frolova v. Union of Soviet Socialist Republics*,
  761 F.2d 370 (7th Cir. 1985) ...................................................................................... 6

*Heiser v. Islamic Republic of Iran*,
  466 F. Supp. 2d 229 (D.D.C. 2006) ............................................................................ 5

*Holland v. Islamic Republic of Iran*,
  545 F. Supp. 2d 120 (D.D.C. 2008) .......................................................................... 10

*Philippine Export and Foreign Loan Guarantee Crop. v. Chiudian*,
  218 Cal. App. 3d 1058 (1990) .................................................................................... 9

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) .................................................................................................... 6

*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983) .................................................................................................... 6

*Weininger v. Castro*,
  462 F. Supp. 2d 457 (S.D.N.Y. 2006) ........................................................................ 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Statutes**

28 U.S.C.
  § 636(b) .................................................................................................................................. 5
  § 1605(g)(1)(A) ..................................................................................................................... 10
  § 1605A ............................................................................................................... 3, 4, 9, 10, 11
  § 1605A(a)(2) ......................................................................................................................... 3
  § 1605A(a)(2)(A)(i)(I) .......................................................................................................... 10
  § 1605A(a)(2)(A)(i)(II) .......................................................................................................... 4
  § 1605A(g)(1)(B) .................................................................................................................... 3
  § 1608 ................................................................................................................................... 12
  § 1608(a) *et seq*. ............................................................................................................ 12, 13
  § 1608(e) .............................................................................................................................. 12
  § 1610(a) *et seq*. .......................................................................................................... passim

Cal. Code Civ. Proc.
  § 708.510(a) ........................................................................................................................... 4

National Defense Authorization Act for Fiscal Year 2008
  § 1083(c)(2)(A) ...................................................................................................................... 4

Under Fed. R. Civ. P. 72(b) and this Court's Rule 72-3, CMA CGM submits this Memorandum of Points and Authorities in Support of its Motion for De Novo Review of the Magistrate Judge's Report and Recommendation, issued on October 14, 2008 ("Report").

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs obtained a substantial default judgment against the Islamic Republic of Iran ("Iran") in the District of Columbia. Now, in an effort to enforce that judgment, Plaintiffs have filed numerous motions in this Court, seeking to compel Iran to assign to Plaintiffs debts or payment obligations allegedly owed (or which in the future may become owed) to Iran or Iranian entities by various international shipping lines (the "Shipping Lines").

The Magistrate Judge elected to hear only the first-filed of these motions and to postpone briefing and any hearing on the remaining motions until a later date. The first-filed motion addressed debts or payment obligations allegedly owed by non-party CMA CGM. To date, Iran has not appeared in this Court. The Magistrate Judge, however, allowed CMA CGM to submit a response to Plaintiffs' motion and, on October 8, 2008, the Magistrate Judge heard the motion involving CMA CGM.[1]

The Magistrate Judge's Report and Recommendation recommends that the Court order Iran to make an assignment to Plaintiffs. In an effort to comply with the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), and California Code of Civil Procedure § 708.510 (a), the Magistrate Judge further recommends that several restrictions be imposed on the assignment. In particular, the Magistrate Judge recommends that the rights to payment to be assigned be limited to rights that (i) exist within the United States; (ii) are derived from property of Iran used for a commercial activity in the United States; (iii) are owed to Iran itself, the default judgment debtor, not to other Iranian entities; and (iv) are rights currently in existence, not rights that may or may not come into existence in the future.

Although the restrictions recommended by the Magistrate Judge are legitimate and proper, they do not solve the fundamental problem with the Report and Recommendation. That problem

---

[1] To the extent relief is sought from CMA CGM, either now or in the future, CMA CGM does not waive, and expressly reserves, the right to assert any applicable defense, including lack of personal jurisdiction or improper service.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                1                MEMO. ISO NON-PARTY CMA CGM'S
MOTION FOR DE NOVO REVIEW
(CASE NO. 08-MC-80030-JSW (BZ))

1   is the lack of jurisdiction to proceed against the property of Iran, a foreign state.  Section 1610 of

2   the FSIA, entitled "Exceptions to the immunity from attachment or execution," specifies the

3   circumstances in which property of a foreign state, or property of an agency or instrumentality of

4   a foreign state, will "not be immune from attachment in aid of execution, or from execution, upon

5   a judgment . . . ."

6   Under Section 1610(a), the ***only*** property of a foreign state that is ***not*** immune from the

7   Court's exercise of jurisdiction is property that is in the United States and that has been used for a

8   commercial activity in the United States, and for which at least one of the seven subparts of

9   Section 1610(a) is also satisfied. With respect to the property of an agency or instrumentality of a

10  foreign state, Section 1610(b) imposes similar limits.  Under the latter provision, property that is

11  in the United States and that belongs to an agency or instrumentality of a foreign state that is

12  engaged in commercial activity in the United States is not immune from the Court's jurisdiction,

13  provided that at least one of the two subparts of Section 1610(b) is also satisfied.

14  Here, the property for which Plaintiffs seek an assignment is intangible property, *i.e.*,

15  debts or other payment obligations allegedly owned by CMA CGM to Iran or Iranian entities.

16  But Plaintiffs have failed to show that the requirements of Section 1610(a) or Section 1610(b) are

17  satisfied with respect to any such property.  That is fatal to their motion, because it means that the

18  Court lacks jurisdiction to grant the relief Plaintiffs seek.  The Magistrate Judge has stated that

19  issues of sovereign immunity "can, if necessary, be resolved after the assignment has been made."

20  Report at 4.  That is not correct.  Plaintiffs, who seek to invoke the Court's jurisdiction over

21  certain property, have the burden of establishing a proper factual basis for that jurisdiction.

22  Plaintiffs have failed to carry that burden.

23  The only relevant evidence in the record demonstrates that CMA CGM is a French

24  company headquartered in Marseille and that it has no dealings with, pays no money to, and owes

25  no debt or other obligation to, Iran or any Iranian entity in the United States.  Nor is there any

26  evidence in the record that any such debt or obligation to Iran or an Iranian entity has been used

27  for commercial activity in the United States or is owed to an agency or instrumentality of Iran that

28  is engaged in commercial activity in the United States.  The lack of such evidence is hardly

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                                              2                    MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                                                 FOR DE NOVO REVIEW
                                                                                 (CASE NO. 08-MC-80030-JSW (BZ)))

1  surprising, given our Nation's current regulations restricting economic dealings with Iran or
2  Iranian entities.

3  In these circumstances, Plaintiffs' motion for an order directing Iran to assign to Plaintiffs
4  debts allegedly owed to Iran by CMA CGM should simply be denied.  There is no jurisdiction for
5  the granting of such relief.  Moreover, any such relief would be a wasteful and futile judicial act,
6  because it would serve as the predicate for discovery efforts by Plaintiffs that would unduly
7  burden CMA CGM and that would have no prospect of identifying any relevant debt or obligation
8  in the United States used for commercial activity in the United States.  No such debt or obligation
9  exists, and Plaintiffs have not even attempted to show that any does.

10  Despite their inability to establish jurisdiction based on either Section 1610(a) or Section
11  1610(b) of the FSIA, Plaintiffs have argued that their motion can be supported under 28 U.S.C.
12  § 1605A, which was added to the FSIA in January 2008.  New Section 1605A does not help
13  Plaintiffs, for two reasons.  First, it leaves unchanged the prefatory language in Section 1610(a)
14  and Section 1610(b), which limits the Court's jurisdiction, respectively, to property of a foreign
15  state that is "in the United States" and "used for commercial activity in the United States" and to
16  "property in the United States of an agency or instrumentality of a foreign state engaged in
17  commercial activity in the United States."  Thus, even after the enactment of Section 1605A, the
18  *only* property of a foreign state that is *not* immune from execution of a judgment is property that
19  is located in the United States and that has been used for a commercial activity in the United
20  States. (Section 1605A mentions Section 1610 only once, and nothing in that reference suggests
21  any alteration to the prefatory language of Section 1610.  *See* 28 U.S.C. § 1605A(g)(1)(B).)  The
22  jurisdictional deficiency described above thus remains the same, even taking Section 1605A into
23  consideration.

24  Moreover, and in any event, Section 1605A does not apply to the default judgment that
25  Plaintiffs obtained against Iran, because Plaintiffs' claims against Iran were neither filed nor
26  refiled under the new statute.  *See* 28 U.S.C. 1605A(a)(2).  Plaintiffs obtained their judgment in
27  September 2007, and Section 1605A was not enacted until January 2008.  Plaintiffs thus did not
28  file their claims under Section 1605A, and they did not attempt to refile their claims under that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                             3                MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                            FOR DE NOVO REVIEW
                                                            (CASE NO. 08-MC-80030-JSW (BZ)))

1   provision within 60 days of the enactment of the statute.  *See* 28 U.S.C. § 1605A(a)(2)(A)(i)(II);
2   Section 1083(c)(2)(A) and (C) of the National Defense Authorization Act for Fiscal Year 2008,
3   122 Stat. 342, reproduced in Historical and Statutory Notes following 28 U.S.C. § 1605A.
4         The Magistrate Judge entirely misapprehended the parties' positions with respect to
5   Section 1605A.  *See* Report at 2-3.  The Magistrate Judge attributed to CMA CGM the argument
6   that "the recent amendments to the FSIA have deprived this court of subject matter jurisdiction to
7   order the requested assignment."  *Id*. at 2.  That is not the argument CMA CGM made.  Rather,
8   CMA CGM argued before the Magistrate Judge, as it does here, that the Court lacks jurisdiction
9   over Plaintiffs' motion and that this is just as true after the enactment of Section 1605A as it was
10  before.  Section 1605A, in other words, did not ***deprive*** the Court of jurisdiction that it otherwise
11  had, but neither did the new statute ***grant*** the Court any further authority over the present motions
12  than the Court would have had under the FSIA before the 2008 amendments.

13  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

14        In July 2008, Plaintiffs filed motions in this Court seeking to compel Iran to assign to
15  Plaintiffs debts or other payment obligations allegedly owed to Iran or Iranian entities by CMA
16  CGM and fourteen other shipping lines.  As authority for their motions, Plaintiffs invoked
17  California Code of Civil Procedure § 708.510(a), which permits a court to order a judgment
18  debtor to assign to a judgment creditor "all or part of a right to payment due or to become due,
19  whether or not the right is conditional upon future developments . . . ."  Plaintiffs alleged that the
20  supposed payment obligations at issue were owed not to Iran itself, but to the Ports & Shipping
21  Organization of Iran (for docking or harboring services provided in Iran) or the National Iranian
22  Oil Products Distribution Co. (for fuel oil, also known as "bunkering oil," provided in Iran).
23        CMA CGM is a French corporation, with its principal place of business in Marseille,
24  France.  *See* Declaration of Bruno Schmitt dated September 15, 2008 ("Schmitt Decl."), ¶ 2.
25  Neither CMA CGM nor any of its subsidiaries or affiliates has made or is obligated to make any
26  payments in the United States to Iran, any of its ministries, or either of the Iranian entities named
27  by Plaintiffs, the Ports & Shipping Organization of Iran and the National Iranian Oil Products
28  Distribution Co.  Schmitt Decl., ¶¶ 3-4.  The "evidence" submitted by Plaintiffs is not to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                                   4                    MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                                      FOR DE NOVO REVIEW
                                                                      (CASE NO. 08-MC-80030-JSW (BZ))

1   contrary; rather, Plaintiffs merely have submitted CMA CGM shipping schedules, one of which
2   appears to show a stop in an Iranian port on a shipping route having no stops in the United States;
3   a schedule of tariffs purportedly imposed on shipping lines generally; and newspaper articles
4   regarding the sale of "bunkering oil," apparently an on-site fueling that takes place at ports.

5   Plaintiffs filed their underlying action against Iran and the Iranian Ministry of Information
6   and Security on October 3, 2001, relying on Section 1605(a)(7) of the FSIA.  Their allegations
7   did not involve either the Ports & Shipping Organization of Iran or the National Iranian Oil
8   Products Distribution Company.  Nor did Plaintiffs' claim concern CMA CGM in any way.  On
9   September 7, 2007, Plaintiffs obtained a default judgment in the United States District Court for
10  the District of Columbia in the amount of $2,656,944,877.00.

11  On Plaintiffs' motion to compel Iran to assign amounts allegedly owed by CMA CGM,
12  the Magistrate Judge issued an order, subject to the restrictions described above, that requires Iran
13  to assign "all or part of any existing right to payment in the United States, due or to become due,
14  whether or not that right is conditioned on future developments, from and owing by CMA CGM,
15  arising out of any commercial activity pertaining, specifically, to the use of any harbor, docking,
16  wharf, drayage, loading or other harbor-like facilities in the United States, along with and
17  including the sale of bunkered oil and/or fuel provided, sold, delivered, or vended to CMA CGM
18  by Iran in the United States."  October 14, 2008 Order at 1-2.

19  Additionally, the Magistrate Judge sustained a number of CMA CGM's objections to the
20  "evidence" offered in support of Plaintiffs' Motion.  For example, the Magistrate Judge sustained
21  objections to Plaintiffs' evidence that Iran sells bunkering oil.  *See* Rulings on the Objections to
22  the Cook Declaration ¶ 3.  Similarly, the Magistrate Judge sustained CMA CGM's objection to
23  the evidence that purported to show Iran charged CMA CGM wharfing fees.  *Id.* ¶ 6.

24  **III.    ARGUMENT**

25  The Court should review the Magistrate Judge's Report and Recommendation under a *de*
26  *novo* standard.  28 U.S.C. § 636(b); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 257
27  (D.D.C. 2006) (reviewing the Magistrate Judge's application of the FSIA under a de novo
28  standard).  The Court should modify the Report and Recommendation to deny Plaintiffs' motion

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB1/62209867.4                              5                    MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                                 FOR DE NOVO REVIEW
                                                                 (CASE NO. 08-MC-80030-JSW (BZ)))

in its entirety, as explained below.

### A. Under the FSIA, Property That Is Not Immune From Attachment or Execution Must Be Identified as a Jurisdictional Prerequisite for the Requested Assignment.

"Because the absence of sovereign immunity is a prerequisite to subject matter jurisdiction, the question of immunity must be considered by a district court even though the foreign country whose immunity is at issue has not entered an appearance." *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 373 (7th Cir. 1985). "[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a District Court must still determine that immunity is unavailable under the [FSIA]." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983). This is because "'[a]t the threshold of every action in a district court against a foreign state . . . the court must satisfy itself that one of the exceptions [in the FSIA] applies,' as 'subject matter jurisdiction in any such action depends' on that application." *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (quoting *Verlinden B.V.*, 461 U.S. at 493-94). The issue of subject matter jurisdiction is presented whether the issue is raised in connection with a lawsuit against a foreign state, or in an action seeking to execute a judgment against a foreign state's property. *FG Hemisphere Associates, LLC v. The Republique du Congo*, 455 F.3d 575, 584 (5th Cir. 2006) (garnishee may raise jurisdictional issues); *Weininger v. Castro*, 462 F. Supp. 2d 457, 477-79 (S.D.N.Y. 2006) (same).

The Magistrate Judge here concluded incorrectly that issues regarding sovereign immunity "can, if necessary, be resolved after the assignment has been made." Report at 4. This "assignment first, jurisdiction later" approach is improper. The issue is not, as the Magistrate Judge seemed to think, whether under any circumstances, with respect to any property, the Court *could* have jurisdiction to enforce the default judgment against Iran. Nor is the question whether Iran was properly subject to suit in the District of Columbia. Rather, the issue is whether the Court actually *has* jurisdiction with respect to the particular property rights that Plaintiffs seek to have assigned to them.

To have jurisdiction to make the assignment in question, which seeks payments allegedly

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB1/62209867.4

6

MEMO. ISO NON-PARTY CMA CGM'S MOTION
FOR DE NOVO REVIEW
(CASE NO. 08-MC-80030-JSW (BZ)))

owed to two Iranian entities in Iran, the Court must determine whether the property rights at issue fall within an exception to immunity from execution under Section 1610 of the FSIA. As we show in the following section, they do not.

### B. No Exception to Immunity Applies to the Property That Plaintiffs Seek to Have Assigned to Them.

Under Section 1610, property of a foreign state, to be subject to execution, must be both in the United States and used for a commercial activity in the United States. Plaintiffs cannot satisfy either requirement with respect to the alleged payment obligations of CMA CGM that Plaintiffs seek to have assigned to them. Those payment obligations, to the extent they exist at all, are neither in the United States nor used for a commercial activity in the United States. *FG Hemispheres Associates*, 455 F.3d at 591 ("To apply the § 1610(a) exception to executional immunity, there must be a finding that the property is located in the United States and used for commercial activity in the United States. **The absence of either prong is fatal to the § 1610(a) executional immunity exception**.") (emphasis added).

The record shows that CMA CGM makes no payments in the United States to Iran, or any of its ministries, or either of the Iranian entities named in Plaintiffs' motion. Any payment obligations owed by CMA CGM to Iran are not property "in the United States" and are not property "used for a commercial activity in the United States." As the Ninth Circuit has held, the latter requirement is "most sensibly read to mean *active employment for commercial purposes*, and not merely a passive, passing, or past connection to commerce. . . . [T]he word 'use,' in legislation as in conversation, ordinarily signifies 'active employment.'" *Af-Cap v. Chevron*, 475 F.3d 1080, 1088 (9th Cir. 2007). No such "active employment" has been found here, nor could it be.

Any assignment of property of a foreign state must be supported by findings of fact that show an exception to immunity from execution. *See Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d 737, 750-51 (7th Cir. 2007). The Report and Recommendation does not make the requisite finding that there is property located in the United States; instead, it orders the assignment subject to the provision that "the right to payment be one

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                  7                  MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                   FOR DE NOVO REVIEW
                                                   (CASE NO. 08-MC-80030-JSW (BZ)))

1   that exists in the United States." Report at 4.  That is not proper; it is not permissible under the
2   FSIA to grant a remedy first and look for jurisdiction later.
3     *Autotech* is instructive here.  In that case, as here, plaintiffs attempted to use proceedings
4   in a federal court to execute a judgment upon assets it freely admitted were not located in the
5   United States.  The Seventh Circuit rejected plaintiffs attempt to obtain a writ of execution, not
6   only because the assets were located outside of the United States, but because the failure to
7   identify property located in the United States made the writ purely hypothetical:

> Even if the ***theoretical power*** to attach assets of Integral that are found within the United States exists (which is all that § 1610 promises), that is not enough to win the day for Autotech. Its effort to secure payment fell short on much more basic points. First is the question whether it identified any specific property on which it wished to execute its judgment. The FSIA says that immunity from execution is waived only for specific "property." As a result, in order to determine whether immunity from execution or attachment has been waived, the plaintiff must identify specific property upon which it is trying to act.

13  499 F.3d at 750 (emphasis added).  Similarly, the Magistrate Judge's Report gives Plaintiffs a
14  "theoretical" assignment, without finding any payment obligations in the United States, much less
15  any that have been used for a commercial activity in the United States.  As the Seventh Circuit
16  did in *Autotech*, this Court should reject the relief granted here because it is purely hypothetical.
17    Moreover, the Magistrate Judge's rulings on CMA CGM's objections to the Declaration
18  of David J. Cook underscore that there have been, and could have been, no findings that satisfy
19  the FSIA.  The Magistrate Judge sustained CMA CGM's objections to Plaintiffs' evidence that
20  Iran sold "bunkering oil" and charged CMA CGM wharfing fees.  *See* Rulings on the Objections
21  to the Cook Declaration ¶¶ 3, 6.  These rulings highlight the lack of evidentiary support for the
22  assignment that the Magistrate Judge has ordered.
23    The factual record demonstrates both that the payments ***actually sought*** are immune from
24  attachment or execution, and that the payments ***ordered assigned*** do not exist, and thus cannot
25  satisfy the requirements of the FSIA.  As a threshold matter, Plaintiffs bear the burden to produce
26  evidence showing that the assets of Iran are not entitled to sovereign immunity.  *Daliberti v.*
27  *Republic of Iraq*, 97 F. Supp. 2d 38, 42 (D.D.C. 2000).  Here, Plaintiffs have failed to carry that
28  burden.

1   The payments Plaintiffs actually seek in their Motion are located outside of the United States. *See FG Hemisphere Associates*, 455 F.3d at 586 (situs of a debt for purposes of the FSIA is the "locus from which the garnishees had supervised, directed, and financed the activities that gave rise to their obligations to make royalty payment"); Schmitt Decl., ¶ 2. To the extent that CMA CGM engages in any "bunkering oil" transactions with Iran, these take place wholly outside the United States. Schmitt Decl., ¶¶ 3-4. Likewise, payments for any tariffs or other fees expended for use of Iranian port facilities occur entirely outside of the United States. *Id.* Thus, any assets that actually exist are immune from assignment. *Philippine Export and Foreign Loan Guarantee Crop. v. Chiudian*, 218 Cal. App. 3d 1058, 1094 (1990) ("the court in aid of execution of this judgment may order Philguarantee ***to assign only such assets as Chuidian may legally execute upon in satisfaction of the judgment***") (holding execution on assets located in the Philippines precluded by the FSIA).

The Magistrate Judge sought to restrict his assignment to payments "in the United States," but no such payments exist. There are no assets identified in this case against which Plaintiffs may enforce their judgment. *Autotech*, 499 F.3d at 750 (property must be identified in order to satisfy Section 1610). The evidence before the Court shows that payments in the United States do not exist. The shipping schedules submitted by Plaintiffs in support of their motion at most show past voyages with stops in Iranian ports, but these shipping routes have no apparent connection with the United States, and, even if they did, that would not convert payments in Iran for goods and services provided in Iran into property of Iran in the United States. *See* Cook Decl., Ex. A. Much less could it be shown that any amounts paid or owed to Iran in Iran are property that has been used for a commercial activity in the United States. Accordingly, the kind of payments covered by the Magistrate Judge's assignment order do not exist, and cannot provide any basis for jurisdiction under the FSIA.

**C.    The Newly Enacted Section 1605A Does Not Cure Plaintiffs' Failure to Satisfy the Requirements of Section 1610.**

Plaintiffs asserted before the Magistrate Judge that the January 2008 amendments to the FSIA and, in particular, the newly added Section 1605A somehow solved the jurisdictional

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                                    9                    MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                                       FOR DE NOVO REVIEW
                                                                       (CASE NO. 08-MC-80030-JSW (BZ)))

1  problems identified above.  *See* Motion at 4 (citing Section 1605A and arguing that "the FSIA no
2  longer serves as a bar [to assignment], and the assets of Iran are now subject to clear levy and
3  execution").  This is not so.  Section 1605A leaves the opening language of both Section 1610(a)
4  and Section 1610(b) unchanged.  Section 1605A, in other words, does not relieve Plaintiffs of the
5  obligation to identify property of a foreign state that is in the United States and that has been used
6  for a commercial activity in the United States.  Indeed, Section 1605A, in its subsection entitled
7  "Property disposition," expressly refers to property that is subject to attachment in aid of
8  execution, or execution, under Section 1610, without any suggestion that the threshold
9  requirements of Section 1610 somehow have been altered by the enactment of Section 1605A.
10  *See* 28 U.S.C. § 1605(g)(1)(A).

11  Moreover, even if Plaintiffs were correct that Section 1605A effected some change in the
12  opening language of Section 1610, that alleged change would not help Plaintiffs, because Section
13  1605A does not apply to this case.  Section 1605A applies only to claims filed under that statute
14  or claims refiled under the statute within 60 days of its enactment.  Plaintiffs' action against Iran
15  falls in neither category.  Indeed, it appears not only that Plaintiffs' action was not refiled under
16  Section 1605A, but also that it ***could not have been*** refiled under Section 1605A.  Section 1083
17  of the National Defense Authorization Act allows actions that are "pending before the court" to
18  be deemed refiled under Section 1605A if they are refiled within 60 days of the enactment of the
19  statute.  Because Plaintiffs' judgment was entered in September 2007, Plaintiffs' action against
20  Iran was not, and could not have been, "pending before the court" at the time Section 1605A was
21  enacted four months later.  *See Holland v. Islamic Republic of Iran*, 545 F. Supp. 2d 120, 121-22
22  (D.D.C. 2008) (an action in which a judgment was issued in February 2006 was not "pending
23  before the court" for purposes of Section 1083, and thus could not be refiled under Section
24  1605A).  Accordingly, Plaintiffs cannot satisfy either Section 1605A(a)(2)(A)(i)(I) or (II).

25  The inapplicability of Section 1605A leads to a further insurmountable deficiency in
26  Plaintiffs' effort to establish jurisdiction under the FSIA.  Under Section 1610(a), Plaintiffs not
27  only must identify property of a foreign state that is in the United States and has been used for a
28  commercial activity in the United States, but Plaintiffs also must satisfy at least one of the seven

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                                10                MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                                FOR DE NOVO REVIEW
                                                                (CASE NO. 08-MC-80030-JSW (BZ)))

1    enumerated subparts of Section 1610(a). Plaintiffs have not even suggested that they can bring

2    their assignment request within Sections 1610(a)(1)-(6), all of which are clearly inapplicable.

3    Rather, Plaintiffs seek to rely on Section 1610(a)(7), which applies when "the judgment relates to

4    a claim for which the foreign state is not immune under section 1605A, regardless of whether the

5    property is or was involved with the act upon which the claim is based."

6    But, as already explained, Plaintiffs have not asserted any claim under Section 1605A.

7    Plaintiffs' action against Iran was not "filed under" Section 1605A, nor was it "refiled" under that

8    provision within the 60-day period authorized by the statute. The Report and Recommendation

9    does not dispute this point. Indeed, the Magistrate Judge acknowledged that "it may be true that

10   plaintiffs did not originally file their action under § 1605A or even refile their action as a § 1605A

11   claim within the time limits permitted by that section." Report at 4-5. The Magistrate Judge then

12   erroneously concluded, however, that "this would appear to constrain only the *remedy* to which

13   plaintiffs are entitled." *Id.* at 5 (emphasis in original). This was error. The inapplicability of

14   Section 1605A means that Plaintiffs cannot properly invoke any of the seven subparts of Section

15   1610(a). This is an additional reason that Plaintiffs cannot find any immunity exception that

16   applies to the property that they seek to have assigned.

17   **D.   Further Proceedings Against CMA CGM, Including Discovery, are Inappropriate in Light of the Absence of Payments to Iran Made in the United States and Used for a Commercial Activity in the United States.**

18

19

20   Discovery into exceptions to a foreign sovereign's immunity should be permitted only

21   when "it is possible that the plaintiff could demonstrate the requisite jurisdictional facts to

22   constitute a basis for jurisdiction and *it should not be allowed when discovery would be futile*."

23   *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998) (emphasis added). No amount of

24   discovery will show that any wharfing or fuel sales in Iran, or the resulting payments for those

25   sales in Iran, constitute property in the United States that has been used for a commercial activity

26   in the United States.

27   Here, the undisputed evidence shows that CMA CGM makes no payments to Iran or any

28   Iranian entity "in the United States." *See* Schmitt Decl. ¶¶ 3-4. Plaintiffs' motion seeks

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                              11                    MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                                                  FOR DE NOVO REVIEW
                                                                  (CASE NO. 08-MC-80030-JSW (BZ)))

1   assignment of vaguely-defined payables and other assets allegedly due to Iran and arising out of
2   the "use of any harbor, docking, wharf, drayage, loading or unloading facilities . . . along with
3   and including the sale of bunkered oil and/or fuel . . . provided, sold, delivered or vendored by
4   Iran." *See* Plaintiffs' Memorandum of Points and Authorities at 1-2.  Plaintiffs' own allegations,
5   in other words, relate to payments made to Iran or an Iranian entity *in Iran* for wharfage and
6   "bunkering oil" sales *in Iran*.  No amount of discovery can or will change this fact.  Accordingly,
7   this Court should deny Plaintiffs' motion outright, and spare the Court and CMA CGM the
8   expense of futile discovery into assets that (by Plaintiffs' own description) do not exist in the
9   United States.  "Requests for jurisdictional discovery should be granted only if the plaintiff
10  presents non-conclusory allegations that, if supplemented with additional information, will
11  materially affect the court's analysis with regard to the applicability of the FSIA."  *Crist*, 995 F.
12  Supp. at 12.  That is not the case here.

### E. **Plaintiffs Have Failed to Comply with the Service Requirements of Section 1608.**

15      In addition to the other shortcomings of Plaintiffs' Motion for an Assignment, the motion
16  fails to comply with the service requirements of Section 1608 of the FSIA.  This is true in two
17  respects.
18      First, Section 1608(e) requires that any default judgment against a foreign state be sent to
19  the foreign state "in the manner prescribed for service in this section."  Plaintiffs have neither
20  alleged nor proven compliance with this requirement.  Section 1610(c), in turn, provides that
21  "[n]o attachment or execution referred to in subsections (a) and (b) of this section shall be
22  permitted until the court has ordered such attachment and execution after having determined that
23  a reasonable period of time has elapsed following the entry of judgment and the giving of any
24  notice required under section 1608(e) of this subchapter."  *Id.*  So, Plaintiffs' failure to comply
25  with Section 1608(e) precludes any attachment or execution under Section 1610.
26      Second, Section 1608(a) specifies the manner in which service is to be made on a foreign
27  state.  In the absence of some special arrangement (the existence of which is not even alleged
28  here), service is to be made according to the hierarchy of procedures specified in Sections

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4                    12         MEMO. ISO NON-PARTY CMA CGM'S MOTION
                                              FOR DE NOVO REVIEW
                                              (CASE NO. 08-MC-80030-JSW (BZ)))

1608(a)(2), (3), and (4). According to Plaintiffs' own certificate of service, this was not done with Plaintiffs' Motion for Assignment. Plaintiffs say that they have mailed the motion to more than a dozen addresses in Iran, but they do not say that they served Iran in accordance with Section 1608(a)(2), (3), or (4), as is required.

## IV.   CONCLUSION

For the foregoing reasons, this Court should review the Magistrate Judge's Report and Recommendation de novo and deny Plaintiffs' motion in its entirety.

Dated: October 28, 2008

MORGAN, LEWIS & BOCKIUS LLP
MATTHEW S. WEILER


By _____/s/_____
   Matthew S. Weiler
Attorneys for Non-Parties CMA GGM,
A.P. Moller Maersk A/S, and Mediterranean Shipping Company

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/62209867.4

13

MEMO. ISO NON-PARTY CMA CGM'S MOTION
FOR DE NOVO REVIEW
(CASE NO. 08-MC-80030-JSW (BZ)))