# EXHIBIT "E"

Volume 1

Pages 1 - 62

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAGISTRATE JUDGE BERNARD ZIMMERMAN

DEBORAH D. PETERSON, Personal      )
Representative of the Estate of    )
James C. Knipple (Dec.), et al.,   )
                                   )
            Plaintiffs,            )
                                   )
  vs.                              )   NO. C 08-080030 JSW(BZ)
                                   )
ISLAMIC REPUBLIC OF IRAN, et al.,  )
                                   )   San Francisco, California
            Defendants.            )   Wednesday
                                   )   October 8, 2008
_____)   10:00 a.m.

TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

For Plaintiffs:         Cook Collection Attorneys, PC
                        165 Fell Street
                        San Francisco, CA  94102-5106
                        (415) 989-4730
                        (415)989-0491 (fax)
                   BY:  DAVID J. COOK
                        NATHANIEL L. DUNN

For Non-Parties A.P.    Morgan Lewis & Bockius, LLP
Moller-Maersk A/S;      One Market, Spear Street Tower
Mediterranean           San Francisco, CA  94105
Shipping Company;       (415) 442-1000
CMA CGM:                (415) 442-1001 (fax)
                   BY:  PETER BUSCEMI
                        MATTHEW S. WEILER

(Appearances Continued On Next Page)

Reported By:    Lydia Zinn, CSR #9223, RPR
                Official Reporter - U.S. District Court

E

```
 1  APPEARANCES (CONT'D)
    For Interested Parties    NIXON PEABODY LLP
 2  Hanjin Shipping Co.,      One Embarcadero Center
    Ltd.; Mitsui O.S.K.       18th Floor
 3  Lines, Ltd.; Compania     San Francisco, CA   94111-3600
    Sud Americana de          (415) 984-8266
 4  Vapores:                  (866) 741-1430  (fax)
                      BY:     ISABELLE ORD
 5                            PAUL J. HALL

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              **THE CLERK:**  C. 08-80030, Deborah D. Peterson versus

2  Islamic Republic of Iran.

3              Counsel, please step forward and state your

4  appearances.

5              **MR. COOK:**  Good morning.  For the record, David Cook,

6  on behalf of Deborah D. Peterson, et al., plaintiffs and

7  judgment creditors, your Honor.

8              **THE COURT:**  Good morning.

9              **MR. COOK:**  Thank you.

10             **MR. DUNN:**  Nathaniel Dunn, also on behalf of the

11  plaintiffs, your Honor.

12             **THE COURT:**  Mr. Dunn.

13             **MR. BUSCEMI:**  Good morning, your Honor.  My name is

14  Peter Buscemi, and I'm here on behalf of nonparty CMA CGM,

15  which is the shipping line mentioned in the Court's briefing --

16  order for filing the first brief in response to the motion

17  filed by the plaintiffs.

18             **THE COURT:**  To the line I've been calling, "The

19  French Line"?

20             **MR. BUSCEMI:**  Correct, your Honor.

21             **MR. WEILER:**  Matt Weiler, also on behalf of CMA.

22             **THE COURT:**  One thing I realize in preparing for this

23  morning's argument was I had not ruled on the objections to the

24  Cook declaration, so I think I've handed you each a tentative

25  ruling on those objections, but I would say this.  I don't

1 think that my rulings on the underlying issues turn very

2 heavily on some of the factual assertions that are contained in

3 there.  So my own thought is it's probably not worth spending

4 an awful lot of time on those, but nonetheless, the objections

5 were made, and they needed to be ruled on.

6         So I guess I will -- I guess I'll turn it over to the

7 moving party, to the plaintiffs.  You've seen my tentative

8 report and recommendation and the order that I'm prepared to

9 enter.  And I'll hear from you first.

10        MR. COOK:  Thank you, your Honor.

11        I, of course, have received and reviewed the order

12 granting plaintiffs' motion compelling assignment of rights.

13 And actually, I don't have much to say.  Essentially, you

14 granted my motion, pretty much consistent with -- as we

15 perceived to be Section 708.510, and that CMA, we believe, do

16 not have a right to appear, which is an interesting issue; but

17 the battleground between plaintiffs as now the assignee of Iran

18 to certain rights --

19        THE COURT:  Well, you're not the assignee.  Two

20 steps.  Iran has to either complete the execution, or there has

21 to be a basis for forcing the assignment.

22        MR. COOK:  Right.  I -- the Court corrects me

23 properly.  Okay?

24        THE COURT:  All right.

25        MR. COOK:  And somewhere down the line, through

1 | various steps, there might be an action or proceeding or
2 | whatever it might be between plaintiffs, through various other
3 | steps within the course and scope of this order. And then all
4 | of the issues as raised by CMA CGM -- and CMA CGM, that's known
5 | as "The French Line" -- are raised.

6 | And that is the -- very briefly, the structure of
7 | 708.510, and the structure of California case law. And so
8 | that's where we are, your Honor.

9 | THE COURT: Well, then let me hear from Mr. Buscemi
10 | or Mr. Weiler, if you wish to be heard.

11 | MR. BUSCEMI: Yes, your Honor. We would like to be
12 | heard, and we thank you for the opportunity.

13 | Let me begin by saying that I think it's important to
14 | stress at the outset the four limitations that the Court has
15 | put in its tentative ruling. Those four limitations are that
16 | any assignment is limited to a right to payment that exists in
17 | the United States.

18 | The second one is that the right to payment must
19 | arise out of Iran's commercial activities. That one -- it's
20 | our submission -- needs to be revised, because it's not in
21 | keeping strictly with the language of Section 1610(a) of the
22 | Foreign Sovereignty Immunities Act.

23 | I'm going to come back to that, but just on the
24 | narrow point of the precise language, the language is that it
25 | must -- any assignment must be limited to property that had

1  been used for commercial activity in the United States.  It's

2  not enough that any right to payment arise out of Iran's

3  commercial activities generally; it must be property that had

4  been used for commercial activity in the United States,

5  according to the language of the statute.

6          The third limitation that your Honor has put in the

7  report and recommendation is that the assignment would be made

8  only by Iran, the judgment debtor and the default judgment

9  obtained by plaintiffs; not on behalf of anybody else; just

10  Iran.

11          And then the fourth limitation --

12          **THE COURT:**  Let me just stop you on that.

13          As I remember, there was an appeal, or at least

14  review sought of my ruling on that issue.  And I'm not sure,

15  Mr. Buscemi, you're aware of this.  This occurred perhaps six

16  months ago.  Has Judge White resolved that issue?

17          **MR. COOK:**  And I say this.  I have not seen anything

18  off the docket here, nor have we received anything otherwise

19  off the docket, so I believe the matter's still under

20  submission.

21          **THE COURT:**  All right.  So obviously, that portion of

22  my ruling, I suppose, is subject to whatever Judge White

23  ultimately decides to do on Mr. Cook's argument that various

24  entities are actuality instrumentalities of the State of Iran.

25  I have not accepted that argument, but that's before

1   Judge White right now.  I'm not sure if you're aware of that,
2   so I wanted to raise it.

3                    MR. BUSCEMI:   Thank you, your Honor.

4                    And then, finally, the fourth limitation is that the
5   Court's -- included in the Court's report and recommendation is
6   that any assignment would be limited to payment rights that
7   currently exist; not that may come into existence at some time
8   in the future.

9                    Now, we -- with the -- with the one modification that
10  I suggested with respect to the second limitation to make it
11  accord with the language of the statute, we appreciate all of
12  those limitations.  And we think that, as a practical matter,
13  they mean quite clearly that nothing will happen in the real
14  world as the result of the assignment that the plaintiffs have
15  sought and that your Honor's tentative ruling grants.

16                   The only thing that will happen -- and I think you've
17  just heard it from Mr. Cook -- is that there will be further
18  proceedings.  And our client, and perhaps the other shipping
19  lines as to whom Mr. Cook has made his motion, will be required
20  to spend more money and more time and more effort in responding
21  to this proposed assignment.

22                   So, in light of that fact, I do want to make an
23  effort today to persuade the Court that the assignment that the
24  Court has proposed in its tentative ruling is really putting
25  the cart before the horse.  It is granting an assignment kind

1   of on a wing and a prayer.  It says, essentially, "I'm going to

2   grant an assignment now.  And we'll figure everything out

3   later, when the plaintiff attempts to make -- bring further

4   proceedings as a result of this assignment."  And it's our

5   submission that that is a mistake for the Court to do it that

6   way.

7            The plaintiff bears the burden of establishing that

8   this Court's jurisdiction can properly be invoked for this kind

9   of assignment.  And we have demonstrated, I think, quite

10  clearly -- and I think that the papers submitted by some of the

11  other shipping lines also demonstrate -- that the

12  jurisdictional prerequisites for the kind of assignment that's

13  sought here have not been satisfied.

14           The Supreme Court has made clear that, in order to

15  proceed against a foreign state, an exception to sovereign

16  immunity must be shown as a precondition to any proceeding.

17           And, your Honor, I would call to the Court's

18  attention, in addition to the *Verlinden* case, which is a

19  leading Supreme Court case, to the *Republic of Austria versus*

20  *Altmann* case, which is another Supreme Court decision -- the

21  very good discussion by Judge Marrero in the Southern District

22  of New York, which attempts to summarize the law on this

23  point -- and the *Weininger* case.  And that case is reported at

24  462 F. Supp. 2d. 457.

25           As a prelude to the rest of what I have to say this

```
 1  morning, I would just like to read, your Honor, from one
 2  paragraph of this decision, which I think sums up the governing
 3  law extremely well.  And it appears at page 477 of the reported
 4  decision.  It starts at 457.  Here's what the Court says.
 5              The Foreign Sovereignty Immunities Act
 6          is the exclusive source of subject-matter
 7          jurisdiction over all civil actions against
 8          foreign states or their agencies and
 9          instrumentalities.
10          -- citing to the Supreme Court's decision in the
11  Saudi Arabia case, and the Argentine Republic versus
12  Amerada Hess case.
13          Subject-matter jurisdiction.  Now, this is quote from
14  the Verlinden decision of the Supreme Court.
15              Subject-matter jurisdiction in any such
16          action depends on the existence of one of
17          the specified exceptions to foreign
18          sovereign immunity.
19          So we start off with the assumption that the foreign
20  sovereign is immune.  And we -- in order to go forward, the
21  plaintiffs need to show that there's an exception to that
22  immunity.
23          Continuing, the Court says,
24              At the threshold of every District
25          Court action against a foreign state, the
```

1          Court must satisfy itself that one of the

2          exceptions applies, because its

3          subject-matter jurisdiction depends on that

4          application.  Before a federal court --

5          And this is, again, citing *Verlinden*.

6              Before a federal court may apply any

7          rule of law in a case involving a foreign

8          state or instrumentality of that state, it

9          must, as a threshold matter, find an

10          exception to the FSIA's grant of sovereign

11          immunity, even if a party fails to enter an

12          appearance --

13          And, as you know, Iran is not here.

14          -- and assert its claim of immunity.

15          THE COURT:  But Iran has defaulted.

16          MR. BUSCEMI:  In the underlying action, your Honor.

17          THE COURT:  A judgment was entered.  This is simply

18  an effort to enforce the judgment in the underlying action.

19          MR. BUSCEMI:  That is correct.

20          THE COURT:  And I have -- I don't remember.  I've

21  read a lot of cases.  I don't remember whether *Weininger* was

22  decided before or after the more recent amendments to the FSIA.

23  Was it --

24          MR. BUSCEMI:  Before, your Honor.  November 2006.

25          THE COURT:  Before.  So what you -- but I'm dealing

1  with the recent amendments, 1605(A).  So how do I deal with

2  that?

3          MR. BUSCEMI:  Yes, your Honor.

4          THE COURT:  Why isn't it enough that they have

5  defaulted?  Another judge has already found them subject to

6  jurisdiction; has issued the judgment.  What's missing?

7          MR. BUSCEMI:  What's missing, your Honor, is --

8          THE COURT:  Are you asking me, in effect, to review

9  Judge Lamberth's decisions?

10          MR. BUSCEMI:  Not -- absolutely not.  Not at all.

11          I'm saying, very simply, that -- two points.

12          The Foreign Sovereign Immunities Act describes the

13  situations in which --

14          THE COURT:  Mm-hm.

15          MR. BUSCEMI:  -- execution or attachment may be had

16  over the property of a foreign state.

17          And, looking in particular at Section 1610, and

18  reading from Section 1610(a),

19              The property in the United States of a

20              foreign state, as defined in Section

21              1603(a) of this chapter, used for a

22              commercial activity in the United States --

23          That's the language to which I referred before --

24          THE COURT:  Mm-hm.

25          MR. BUSCEMI:  -- when I went through the four

1   limitations and your Honor's report and recommendation.

2                   -- shall not be immune from attachment

3             or from execution upon a judgment entered

4             by a Court of the United States if --

5             And then you must meet one of the following seven

6   criteria.

7             So you must have property in the -- now, this is true

8   whether you have a judgment that's been fully litigated,

9   whether you have a default judgment, or any other kind of

10  judgment if you want to execute or attach the property of a

11  foreign state.

12            THE COURT:  Mm-hm.

13            MR. BUSCEMI:  You must have property in the

14  United States.  That property must be used for commercial

15  activity in the United States.  And it must meet one of the

16  seven listed criteria in Section 1610(a).

17            Now, we don't think that the plaintiffs here can get

18  past the first portion of the first sentence of Section

19  1610(a), because they have not identified property of Iran in

20  the United States, nor have they identified property of Iran

21  used for commercial activity in the United States.

22            THE COURT:  But isn't that the only property that my

23  order seeks to reach?

24            In other words, I guess we are getting into a cart

25  before the horse, and we're dealing with a state statute.

1          So what is your -- sounds like what your basic

2    argument is saying is that, in effect, the California

3    attachment or assignment procedures are invalid under the FSIA.

4          **MR. BUSCEMI:** Well, I'm not saying that. I'm saying

5    that the two have to be read together. The California statute,

6    whatever it says -- and I don't think it's inconsistent with

7    the FSIA, but whatever it says, it cannot override the FSIA.

8    Under the supremacy clause, the FSIA would take precedence.

9    This Court could not exercise jurisdiction --

10         **THE COURT:** Well --

11         **MR. BUSCEMI:** -- in this matter if jurisdiction were

12   not conferred by the FSIA, because we know from *Verlinden* that

13   that's the only basis of jurisdiction over a foreign state. So

14   the Court needs to find jurisdiction over the foreign state

15   before the Court can act on any claim, state or federal. And

16   that jurisdiction must come from the FSIA.

17         Now, as a matter of fact -- and I was going to get

18   into this in a moment, but as a matter of fact, we think we've

19   got very good arguments with respect to the California statute

20   itself.

21         The California statute, as it's been interpreted by

22   the courts -- and I'm thinking of the *Questor Investments* case.

23   And I'm also thinking about the *Garden City Boxing Club* case.

24   There must be a specific obligation identified before -- not

25   after, but before any attachment can be ordered under the

1  California statute.

2          So even if we were focusing exclusively on the

3  California statute -- and I was going to get there, but it's

4  okay to talk about it now, even if we were focusing exclusively

5  on the California statute, and we weren't worried about

6  jurisdiction, which the Courts needs to be; but even if we

7  weren't, the requirements of the California statute haven't

8  been satisfied, because all the Court has before it is a

9  suggestion that there might be some amount owed to Iran

10  somewhere, somehow, some day.  That's not enough under the

11  California statute.

12          The California statute talks about something that is

13  specific; that is a specific obligation.  And they talk about:

14  you have to identify what that is.

15          It hasn't been done here.

16          **THE COURT:**  So you're saying that, in effect, the

17  flaw that you see with the Order is that the obligation, which

18  I have tried to identify at the top of page 2, you don't think

19  is specific enough?

20          **MR. BUSCEMI:**  No, I don't.  And, in fact --

21          **THE COURT:**  There may not be any such obligation?

22          **MR. BUSCEMI:**  Well, exactly.  And that's the point.

23  And we -- not only may there not be, but we have evidence in

24  the record that has not been controverted that there are no

25  payments made in the United States.  So, to allow this

1  proceeding to come back to where I began --

2          THE COURT:  Let me just stop you.  I guess

3  Mr. Cook -- maybe this is the time to join on this issue.  When

4  you were -- well, I don't know last time, but at one of the

5  last hearings, what I suggested you do is you find something

6  that was concrete involving somebody that was local, and so on,

7  and so forth.  And let's -- let's see whether we can, you know,

8  in effect, have an assignment; or if Iran doesn't assign,

9  whether we can have a Court-ordered assignment, et cetera.

10         So I guess I am a little bit troubled that in the

11 face of that, I have assumed that the reason you had picked on

12 the French first was that they were an example -- or The French

13 Line -- of the kind of obligor I was thinking of.  And I was

14 surprised, frankly, when I got the declaration from The French

15 Line saying there is no such.

16         Why are we doing this?

17         MR. COOK:  Well, the answer --

18         THE COURT:  Is it simply an effort to take discovery

19 from them?

20         MR. COOK:  Well, the answer is the following.

21         We identified 15 lines.  Of the 15 lines, we found

22 that they were servicing the harbors called "Bandar Abbas,"

23 B-a-n-d-a-r A-b-b-a-s, and that they were doing business in the

24 United States; in other words, that the -- from the viewpoint

25 of enforcing an assignment -- from the viewpoint of enforcing

1   an assignment, there was something there that would be

2   indicative that this entity had some general presence here --

3   "here" being the United States -- and then some commercial

4   connection with Iran.

5          Now, Iran -- it's very clear, because we have a phone

6   book of tariffs; basically, you know, their list of charges

7   that they would charge a carrier to come in there and off-load

8   their products.  So from that we said, "Well, they frequent the

9   harbor."

10         I have their schedules.  It's like a bus schedule.

11  You know, it says very clearly when they come; very clearly

12  when they go.  That looks like some money's owed here.

13         And then what we have is we have that they're here.

14         Now, reading carefully their declaration, what they

15  say is the following; that if there's money owed, we pay it or

16  presumptively pay it out of Marseilles, France, or pay it out

17  of some other place.

18         Now, that's not to say that money's not owed or

19  money's not owed at this time, or there's not an obligation

20  that doesn't exist.  They say, "We just write this check out of

21  our office there."

22         I don't make any claim to the contrary.

23         Now, one -- rolling through this record at the bitter

24  end of the order here is we're going to at that point say,

25  "Well, we think we have something."  And we can launch either

1  69(a)(1) discovery, you know, power of subpoena out of this
2  court --

3        THE COURT:  Right.

4        MR. COOK:   -- or we can launch out of this court
5  California state discovery, that is, under California state
6  law; either way, but the answer is obviously here in the last
7  year, and we worked real hard to make sure that we find
8  somebody with that type of connection.

9        THE COURT:  I guess what it boils down to is this.  I
10  mean, let's assume that there -- that Mr. Schmidt's declaration
11  wasn't what it said.  And I have no idea how this is going to
12  distill itself down.  Maybe discovery needs to follow.  And I
13  suppose it will depend a lot on what, if anything, Judge White
14  ultimately rules; but it seems to me that your essential
15  quarrel, I mean, is with the nature of the California statute
16  and the way it's constructed, and the fact, I suppose, that if
17  I have accepted Mr. Cook's argument literally -- it does seem
18  to have some support in the law -- you wouldn't have even had
19  notice of this proceeding.

20        I don't know why the California Legislature
21  contemplated that it would work this way, but it seems to have
22  done so.

23        And a number of courts seem to have provided some
24  support for Mr. Cook's notions that the objections that you're
25  sort of talking about -- and I have put -- I admit I have put

1  this cart, you know, a little bit on -- turned the cart a

2  little bit on its side, so -- don't get resolved until kind of

3  we know exactly what we're talking about, but the statute does

4  seem to contemplate assignments which are somehow later more

5  finely tuned or honed.

6          And isn't that what Judge Feess just ruled in

7  southern California about two or three months ago?

8          MR. COOK:  Yes.  The -- we had the companion case,

9  which was not -- which is the *Greenbaum* case, where the --

10  where -- it was just -- same cycle here.  We named a whole

11  bunch of oil companies.  And two of them -- Repsol and Nippon,

12  and maybe a third one -- came in.  Same arguments.  Identical.

13          And his Honor said, "This is all very interesting,

14  and I'll give you whatever Iran has."  We don't know.  Whatever

15  it is. ·And the order -- and that order is virtually identical,

16  other than the fine-tuning, which says, "We'll deal with it

17  later."

18          THE COURT:  Well --

19          MR. COOK:  That's what -- same order.

20          THE COURT:  Mr. Buscemi, have you seen Judge Feess'

21  order?

22          MR. BUSCEMI:  I don't believe that I have,

23  your Honor.

24          THE COURT:  Well, I'm not sure if it's in place in

25  the record, or we simply -- I was aware of a companion case.

1   And we have occasionally -- there are several cases which

2   present some of these issues.  There's that one, and there's

3   one in Illinois.  And so my clerk occasionally checks ECF, and

4   they have pulled it off of ECF; but I'm aware that there's

5   been -- now I think Judge Feess' ruling, if I remember it, is a

6   little even broader than mine; but it seems to me that that's

7   the ultimate question that it turns on.

8          I'm mindful of the fact that it's of some

9   inconvenience to you, unfortunately.  Every time I get involved

10  in a situation in which somebody's trying to collect a judgment

11  from a third party, it's always some inconvenience to the third

12  party.

13         And the way our laws set up some of that is

14  unavoidable.  I've tried to minimize it by the way in which

15  I've proceeded, but I think that really what it boils down to

16  is, under your view, it would almost be impossible -- an awful

17  lot of work, I guess, would have to be done up front.  And I

18  don't even know.  You'd probably argue there's no jurisdiction

19  even to take discovery, unless he first identifies the asset

20  that you contend would be -- excuse him from -- from the FSIA.

21         Excuse me.

22         Rose, who's dealing with the TRO?  Is the plaintiff

23  still here?

24         THE CLERK:  Yes.  He's in the -- he's waiting.

25         THE COURT:  Well, he'll just have to wait, then.

1  Tell him we'll deal with it as soon as this matter's over.

2          A TRO just came in.

3          I guess the problem I had with your argument is that

4  it would almost seem that if I accepted it, literally, there

5  would never be a proceeding under this California statute,

6  because the plaintiff would have no way of -- in some cases, of

7  knowing exactly what the asset was.  And under your theory of

8  the case, there is no jurisdiction unless the plaintiff first

9  identifies a specific asset.

10         And I'm not sure that the law is quite written that

11  restrictively.

12         MR. BUSCEMI:  Your Honor, let me say for --

13         THE COURT:  I mean, clearly, the Congress intended

14  that something be done under 1605(A).

15         MR. BUSCEMI:  All right.  Let me -- I haven't even

16  gotten to 1605(A) yet.  Let me get to that, but I don't think

17  the Court needs to get to 1605(A).  That's the amendment that

18  was enacted in January of 2008.

19         THE COURT:  All right.

20         MR. BUSCEMI:  Now let me talk about 1605(A), even

21  though I don't think the Court needs to get there.

22         Sixteen -- we have explained this in our papers, I

23  think, in considerable detail.  And I think it's also been

24  reviewed in considerable detail in papers filed by the other

25  shipping lines.

1           **THE COURT:**  Let me just say I haven't really spent

2   that much time worrying about papers filed by the other

3   shipping lines.  Their turn will come.

4           **MR. BUSCEMI:**  Okay.  Well, that's fine.  That's fine.

5   It may be that if they said something better than we've said

6   it, your Honor will be persuaded by them, and not by us.  We'd

7   only ask to get the benefit of their greater wisdom.

8           **THE COURT:**  Is there some particular paper that you

9   have in mind?

10          **MR. BUSCEMI:**  Yes.  We filed an opposition to the

11  motion.

12          **THE COURT:**  Oh, I've read your opposition.

13          **MR. BUSCEMI:**  And several other shipping lines

14  represented by the Nixon Peabody firm wanted to have their

15  papers on file before today's hearing, so your Honor -- they

16  are subject to the same sort of motion.  And, presumably, your

17  Honor's tentative ruling would be very similar with respect to

18  them.

19          And they, like we, have reviewed 1605(A).  And they

20  have explained, as we've tried to explain, precisely why it has

21  no application here.

22          Section 1605(A) was not enacted until January of

23  2008.  The final judgment entered in the District of Columbia

24  was entered in September 2007.  The action that was brought in

25  the District of Columbia was filed in October 2001, almost

1  seven years before 1605(A) was passed.  So, clearly, that

2  action was not filed under 1605(A), nor was it refiled under

3  Section 1605(A).  And if it's not filed under 1605(A) and it's

4  not refiled under 1605(A), after the statute was amended in

5  January '08, that statute simply has no application.

6          THE COURT:  Where does that limitation -- I remember

7  your argument.  Where does that limitation appear in the

8  statute?

9          MR. BUSCEMI:  I think, your Honor, that --

10         THE COURT:  Because by its nature, almost, 1605(A)

11  talks about executing a judgment, which would tend to sort of

12  suggest that it's -- you know, might have some application to

13  judgments that are out there.

14         MR. BUSCEMI:  Well, we've quoted the language of the

15  statute.  If your Honor will let me get my memorandum for just

16  a moment --

17         THE COURT:  In other words, I think -- well, I'd

18  better let Mr. Cook speak.  I'm sure he can state his position

19  probably better than I can.  Why don't you go ahead and make

20  your argument?  I think it's going to be more helpful if we

21  focus on a particular issue, and then have some give and take

22  on that, rather than just sort of, you know, going on and

23  having a lot of issues.

24         So let's focus on 1605(A), and whether it's

25  applicable, because if I accept your argument -- okay? --

1  because this judgment was entered prior to the enactment of

2  that statute, then, in effect, there is no waiver of sovereign

3  immunity with respect to Iran.  And that changes some of the

4  terrain.

5          MR. BUSCEMI:  Yes, your Honor.  Let's look at 28 U.S.

6  C. 1605(A)(a)(2)(A)(i), and then I, and big 2 I.  I'm sorry.

7  That's --

8          THE COURT:  Unfortunately, did not bring my code book

9  on the bench.  Is this -- let's see.  Is the precise language

10  set forth in your papers?

11          MR. BUSCEMI:  We've quoted bits and pieces at the top

12  of page 15 of our papers.

13          THE COURT:  All right.  Ah, okay.  Thank you.  Okay.

14  So I have 1605(a)(1).  Keep going.

15          MR. BUSCEMI:  Little a, little 2, where it says,

16  "Claim Heard."  Caption:  Claim Heard.

17          THE COURT:  Right.  Mm-hm.

18          MR. BUSCEMI:  And then it -- and then it says big A,

19  little i, capital I.

20          THE COURT:  Mm-hm.

21          MR. BUSCEMI:  And it says,

22              The Court shall hear a claim under this

23              section if the foreign state was designated

24              as a state sponsor of terrorism at the time

25              the Act described in paragraph one occurred

1            or was so designated as a result of such

2            act, and subject to subclause two; either

3            remains so designated when the claim is

4            filed under this section, or was so

5            designated within the six-month period

6            before the claim is filed under this

7            section.

8        **THE COURT:**  Mm-hm.

9        **MR. BUSCEMI:**  So before we get to Roman numeral two,

10  we're still in Roman numeral one.  That applies to claims filed

11  under this section.  This claim could not have been filed under

12  this section, so Roman numeral one cannot help the plaintiffs.

13        **THE COURT:**  Why do you say it couldn't?  Well, let's

14  find out.

15        Mr. Cook, how do you read that section?

16        **MR. COOK:**  The -- this goes back to a little trip

17  through history here.

18        *Flatow* -- F-l-a-t-o-w -- amendment was enacted.  The

19  primary court hearing the Iranian cases was the District Court

20  for the District of Columbia.  And the belief was that *Flatow*,

21  and then other amendments, created a federal cause of action in

22  favor of the victim; you know, of a plaintiff, so to speak.

23        And there are many a number of judgments, you know,

24  provided.  One of them was a case which ultimately went up

25  called *Cicippio* -- we call it *"Cicippio-Puleo,"* C-i-c-i-p-p-i-o

1  P-u-l-e-o, "*versus Islamic Republic of Iran*," cited 353 F. 3d.
2  1024 -- 1024.  D.C. Circuit, 2004.  And the Court said, you
3  know, *Flatow* dealt with the abolition of immunity for
4  certain -- pardon me -- certain types of conduct; but it didn't
5  create a federal cause of action.  A victim had a state cause
6  of action, whatever that might or might not be, but not a
7  federal cause of action.

8          The section cited by nonparty CMA CGM deals with
9  claims.  And we call these the pre-*Cicippio*, pre-*Puleo* phantom
10  claims.  Now, "phantom" is not to denigrate system or anybody
11  around here; but claims that they thought existed.

12          So the -- again, lack of better expression -- in
13  reading 1605 capital A, little a, 2 A, little i, capital I,
14  capital I, the court is talking about claims.  And the reading
15  of the statute -- it says that if, in reading through the --
16  the -- one of the requirements is a claim that doesn't exist.
17  In other words, a creditor or a plaintiff who thought they had
18  a claim, but was prejudiced by *Cicippio*, has the right to
19  refile the lawsuit; literally serve Iran and say, "I now have
20  this nice, new federal cause of action.  That's what I have."

21          Now Iran can say, because it deals with claims, not
22  judgments.  And so a creditor could walk in or Iran can say,
23  "Well, gee.  Now that we know there's a claim against us, we're
24  going to appear."  That's what it says:  claims.

25          THE COURT:  So you're saying that the way you read

1  this statute, it has nothing to do with lawsuits?

2      **MR. COOK:**  Well, we have a -- we're sitting on a

3  judgment here.  And the -- and we take issue with the fact that

4  CMA is appearing here, which is another issue we're raising in

5  the reply; but in their analysis under 1605(A) little A -- and

6  the rest, you know, zipping through the rest, we're not bound

7  by that.

8      We're -- we -- we're not claiming, nor are they

9  saying, because they have not developed the record here --

10 they're not saying that the claims I have, you know, in the --

11 you know, the claims represented by the 2001 lawsuit -- you

12 know, Marines' barracks bombing -- nobody there is claiming

13 under any set of of facts that those are *Cicippio-Puleo* phantom

14 federal claims that don't exist.

15     In fact, Judge Lamberth -- Judge Lamberth, when he

16 adjudicated in September, knocked out some of the Pennsylvania

17 claims and the Louisiana claims -- those types of claims --

18 because those states did not have an independent state cause of

19 action.

20     **THE COURT:**  If I understand correctly, what you're

21 saying -- you don't see Section 1605(a) -- you think that A 11

22 applies to you, because you have a judgment against Iran, and

23 Iran has been named as a state that encourages terrorism, or

24 whatever the -- you don't think that A 2 applies to this,

25 because we're not in the process of hearing a claim under A 2,

1    and, of course, A 2 goes on and on and on.

2         MR. COOK:  Yes.

3         THE COURT:  All we're simply doing is we're trying to

4    execute a judgment which you think is subject to A 1?

5         MR. COOK:  That's exactly what Senator

6    Frank Lautenberg said on the floor.  And he was a sponsor of

7    this bill.  And we provided the Court with the floor statement,

8    because the Court, in interpreting the statute, can read the

9    floor -- you know, your Honor can read the floor statement.

10        THE COURT:  So --

11        MR. COOK:  And I'll, of course, let Counsel continue,

12   but we take great issue that he's here, or any of these folks

13   are here.

14        THE COURT:  So that's basically, I guess, you know,

15   sort of the distinction.

16        Mr. Buscemi, I'll sort of turn it back to you.

17        If you're basically correct in what you're telling

18   me, it is that the Congress did not intend to waive Iran's

19   sovereign immunity or make it more possible to collect all --

20   whatever judgments already exist against it.

21        In other words, it would have to only work sort of

22   prospectively, to claims, so to speak, that are filed in the

23   future.  Do you have any support for that concept?

24        MR. BUSCEMI:  Yes, your Honor.  There were two -- let

25   me try to give our argument in its logical sequence.

```
1              THE COURT:  All right.

2              MR. BUSCEMI:  And I'm focusing -- as I say, I'm

3    focusing on 1605 big A, capital A, for the moment, so that they

4    can deal with this issue, but I want to go back to 1610 little

5    a, which is specifically referred to in 1605 big A G 1.

6              THE COURT:  Let me see if I have 1610 in front of me.

7    I don't think I do.  Could we have 1610?

8              MR. BUSCEMI:  Since you have 1605 big A.  Right

9    there.  Let me finish.

10             THE COURT:  I now have 1610.  So if you want to go in

11   order, go in order.  The order is your order.

12             MR. BUSCEMI:  Let me finish with where we are at

13   1605(A).  I tried listen carefully to what Mr. Cook just said,

14   but I come back to the plain language of the statute, which

15   refers to only two kinds of cases; cases that were filed under

16   this section.

17             THE COURT:  Now you're now under 1610, or 1605(A)?

18             MR. BUSCEMI:  I'm still on 1605 big A --

19             THE COURT:  All right.

20             MR. BUSCEMI:  -- little a 2 A -- 2 capital A little i

21   Roman Numeral I.

22             THE COURT:  Right.

23             MR. BUSCEMI:  That deals with actions filed under

24   this section.

25             THE COURT:  It doesn't say "actions."  It says, "a
```

1   claim under this section."

2          I suppose one argument we could talk about is what "a

3   claim under this section" means, but go ahead.

4          **MR. BUSCEMI:**  Okay.  That's fine.  That's fine.  I'm

5   going to refer your Honor on that point to the District Court's

6   decision in the District of Columbia, in the *Holland against*

7   *Iran* case, 545 F. Supp. 2d. 120.  And we've cited that at page

8   15 of our memorandum.

9          Now, if you're not covered by Roman Numeral I, you

10  could go -- you could try to go to Roman Numeral II.  Roman

11  Numeral II says -- and it does use the word "action."  I don't

12  think this distinction between "claim" and "action" is going to

13  stand up, but it does use the word "action."

14         It says, "In the case of an action that is refiled

15  under this section by reason of Section 1083(c)(2)(A) of the

16  National Defense Authorization Act for fiscal year 2008, or as

17  filed under this section by reason of Section 1083 (c)(3) of

18  that Act."  Nobody's claiming that that was invoked here or

19  could have been.

20         The foreign state was designated as a state sponsor

21  of terrorism when the original action or the related action

22  under 1605(a)(7) was filed.

23         Now, there was no effort to refile in this case under

24  Section 1083 of the National Defense Authorization Act of 2008,

25  nor could there have been.

1        **THE COURT:**  And what needs to be refiled, in your

2   view?  Could you start all over again?

3        **MR. BUSCEMI:**  No, no.  You just need -- as I

4   understand the way the statute works, if you fulfill the

5   statutory requirements --

6        **THE COURT:**  Mm-hm.

7        **MR. BUSCEMI:**  -- you can designate an existing action

8   as an action that is refiled under this provision, so you can

9   have the benefits of this provision.  So if you have a pending

10  action -- that was the very issue before the Court in the

11  *Holland* case.  We've discussed this at page 15.  You have our

12  memo.

13       Section 1083 talks about actions that are pending

14  before the Court to be deemed refiled under Section 1605(A), so

15  that they can have the benefit of that new statute in

16  January 2008, if they are pending before the Court and are

17  refiled within 60 days of the enactment of the statute.  So in

18  that window, from January 2008 to March of 2008, if you wanted

19  to get the benefit, if you had an action pending before the

20  Court, you could have it refiled within that time.

21       But here, the judgment was already entered.  It was a

22  September 2007 judgment.  It had been entered four months

23  before the enactment of this statute.  The action was no longer

24  pending before the Court, so Roman Numeral II was never

25  triggered.  That's why -- that's why we've cited the *Holland*