1   **DAVID J. COOK, ESQ. (State Bar # 060859)**
    **ROBERT J. PERKISS, ESQ. (State Bar # 62386)**
2   **COOK COLLECTION ATTORNEYS**
    **A PROFESSIONAL LAW CORPORATION**
3   165 Fell Street
    San Francisco, CA  94102
4   Mailing Address: P.O. Box 270
    San Francisco, CA  94104-0270
5   Tel: (415) 989-4730
    Fax: (415) 989-0491
6   File No. 52,759

7   Attorneys for Plaintiffs
    DEBORAH D. PETERSON, Personal Representatives
8   of the Estate of James C. Knipple (Dec.), et al.

9                   UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12
    DEBORAH D. PETERSON, Personal        )    CASE NO. 3:08-mc-80030-JSW (BZ)
13  Representative of the Estate of James C. )
    Knipple (Dec.). et al.,              )    MEMORANDUM OF POINTS AND
14                                        )    AUTHORITIES IN OPPOSITION TO CMA
           Plaintiffs,                    )    CGM'S NOTICE OF MOTION AND MOTION
15                                        )    FOR DE NOVO REVIEW OF THE OCTOBER
    vs.                                   )    14, 2008 REPORT AND
16                                        )    RECOMMENDATION AND ORDER
    ISLAMIC REPUBLIC OF IRAN, et al.,     )    COMPELLING ASSIGNMENT OF RIGHTS
17                                        )
           Defendants.                    )    Date:  December 19, 2008
18  _____  )    Time:  9:00 a.m.
                                               Courtroom: 2
19                                             Judge: Jeffrey S. White

20          COMES NOW Plaintiffs DEBORAH D. PETERSON, Personal Representative of the

21   Estate of James C. Knipple (Dec.), et al. ("Plaintiffs"), who hereby oppose that certain CMA

22   CGM'S NOTICE OF MOTION AND MOTION FOR DE NOVO REVIEW OF THE OCTOBER

23   14, 2008 REPORT AND RECOMMENDATION AND ORDER COMPELLING ASSIGNMENT

24   OF RIGHTS, [1] as follows:

25   **I. CMA CGM CLAIMS THAT THE ASSETS OF THE ISLAMIC REPUBLIC OF IRAN**
     **ARE SUBJECT TO THE PROVISIONS OF THE FOREIGN SOVEREIGNTY**
26   **IMMUNITIES ACT AND THEREFORE IMMUNE FROM LEVY AND EXECUTION.**

27   _____

28          [1]  The parties include CMA CGM, A.P. Moller Maersk A/S, and Mediterranean Shipping
     Company.  However, the purposes of brevity, the parties are called CMA CGM, as they are all
     acting jointly in responding.

1   Third Party (and non-appearing party) CMA CGM claims that the assets of Iran are

2   immune from any form of levy and execution under the Foreign Sovereign Immunities Act

3   ("FSIA") found at 28 U.S.C. § 1601 et seq.  CMA CGM therefore argues that the court lacks the

4   jurisdiction to enter any relief, or correspondingly, that the relief was without a statutory basis.

5   CMA CGM states that the court could not enter any relief, as FSIA precluded such relief as a

6   matter of law.  The entirety of CMA CGM's request for de novo review (among others) is that

7   Iran's assets are immune from levy and execution.  As Magistrate Judge Zimmerman correctly

8   ruled, these are issues for another day.

9   The starting and ending point is that CMA CGM lacks the standing by which to assert

10  this argument.  This is precisely the outcome reached by Judge Manning in a published case

11  entitled *JENNY RUBIN, et al., vs. ISLAMIC REPUBLIC OF IRAN, et al.*, 436 F.Supp.2d 938

12  (N.D.Ill. 2006), United States District Court, Northern District of Illinois, Case No.: 03-CV-9370,

13  in which the court stated as follows:

14  "The court is sympathetic to citation respondents' and government's fears. However,
    the court is charged with interpreting and applying federal statutes as enacted. As
15  enacted by Congress, the FSIA creates an affirmative defense of foreign sovereign
    immunity that must be asserted by the foreign state. Even if the court were to agree
16  with the citation respondents and government that international relations would be
    better served if foreign sovereign immunity were presumed even if not asserted, the
17  court would not be free to ignore the immunity scheme that Congress developed. If
    the citation respondents and government believe that changes should be made to the
18  FSIA, then they must petition Congress to amend it, not ask the court to ignore it.

19  **Conclusion**
    In sum, the court adopts the magistrate judge's conclusions in his report and
20  recommendation that (1) foreign sovereign immunity under 28 U.S.C. § 1609 is an
    affirmative defense that must be asserted; and that (2) the citation respondents are
21  not entitled to assert immunity on Iran's behalf. Therefore, the citation respondents'
    objection to the magistrate judge's report and recommendation is OVERRULED."
22  (P. 946)

23  This is not the first time that Plaintiffs have raised this issue, and CMA CGM has done

24  nothing to substantiate its standing to invoke the affirmative defenses which only Iran could assert

25  in this setting.  This is more than an error in drafting or research, but rather a concession that CMA

26  CGM lacks any standing to assert any claim of defense of sovereign immunity, which only could

27  be asserted by Iran.  In fact, Iran has defaulted in this proceeding, in which the court may

28  reasonably infer that Iran has no objection to CMA CGM, among others, from remitting amounts

1    otherwise due Iran in favor of these Judgment Creditors.

2          Accordingly, potential third party "obligor" CMA CGM therefore lacks any standing by

3    which to assert this argument, and nothing in the moving papers supports any claim of standing.

4          Additionally, CMA CGM fails to come to grips with the unique nature of the California

5    assignment statute under C.C.P. § 708.510(a), the effect of which is to oust the Judgment Debtor

6    from the obligation, and replacing it with the Judgment Creditor, entitling and enabling the

7    Judgment Creditor to enforce that obligation.  In a proceeding under C.C.P. § 708.510(a), the

8    status, standing, or defenses, if any, of the obligor are not before the court, specifically because the

9    sole duty of the court is to determine whether or not the asset is capable of being assigned, rather

10   than adjudicating any defenses, if at all, of the underlying obligor.  This is precisely what Judge

11   Zimmerman ruled, and consistent with C.C.P. § 708.510(b), in which the obligor does not even

12   receive notice of the underlying proceedings.  This is also consistent with the California case of

13   *Brenda KRACHT as Administratrix of the Estate of William Thomas Wacha, Deceased, v.*

14   *PERRIN, GARTLAND & DOYLE, etc., et al.*, 219 Cal.App.3d 1019, 268 Cal.Rptr. 637,

15   (Cal.App.4 Dist. 1990), in which the court likewise stated that the obligor is not a party to the

16   proceedings and in which the court may order the assignment, even though at a later stage the

17   rights as being assigned may turn out to be subject to some type of defense.  In Kracht, supra, the

18   assignment was granted, but in which the Judgment Creditor failed in the attempt to enforce the

19   assignment, in which the underlying obligation was non-assignable (a claim for malpractice

20   against an attorney).

21         CMA CGM has likewise failed to address the unique and limited nature of an assignment

22   motion in which California law makes it clear that third parties are not a participant and has not

23   sought to distinguish, much less justify, participation in these proceedings in light of the apparent

24   prohibition against third party participation.  Statutes are to be interpreted as they are written, and

25   as a third party, does not act as the debtor's surrogate.  Permitting a third party obligor to seek a

26   pre-adjudication of its liability to the Judgment Debtor, and ultimately the Judgment Creditor, in a

27   post-judgment summary proceeding, without discovery, or a trial, is absurd.  As delineated in

28   *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 795, 113 Cal.Rptr.2d 448, the court stated

1  as follows:

2  " . . .The other canon of legal interpretation pertinent here is the rule prescribing the
   commonsense construction of statutes so as to avoid absurd results. (See, e.g.,
3  *People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1307 [12 Cal.Rptr.2d 343]
   ["We must accord [the bail statute] a reasonable, commonsense construction in line
4  with its apparent purpose, in order to advance wise legislative policy and avoid
   absurdity"]; *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1384 [59
5  Cal.Rptr.2d 777] ["[T]he principle [is] that these Penal Code sections must be
   strictly construed in favor of the surety to avoid the harsh results of a forfeiture....
6  [¶] ... 'Nor will we blindly follow the literal meaning of every word if to do so
   would frustrate the legislative purpose of those words. As another court has said in
7  interpreting the same section: "... a statute will not be given an interpretation in
   conflict with its clear purpose. and general words used therein will be given a
8  restricted meaning when reason and justice require it, rather than a literal meaning
   which would lead to an unjust and absurd consequence." ' " (Italics omitted.)].)"
9  (p. 795)

10  CMA CGM fails to recognize that the "in rem process" by and between the Judgment

11  Creditor and the Judgment Debtor has the sole effect of placing the Judgment Creditor in the place

12  of the Judgment Debtor. Thereafter, further litigation might ensue, the effect of which might

13  ultimately result in some type of subsequent adjudication.

14  ## II. NON-JUSTICIABLE.

15  As set forth in great detail before Judge Zimmerman, attempting to adjudicate the nature

16  and extent of Iran's "vulnerability" to enforcement, as asserted by CMA CGM. is ultimately non-

17  justiciable. CMA CGM is not a party to this proceeding, nor have they sought, e.g., intervention

18  under FRCP 24(a) or (b). Furthermore, CMA CGM has made it clear that they are not parties to

19  these proceedings. in that they are preserving all of their "jurisdictional defenses." Therefore, this

20  court does not have before it a justiciable, ripe, or other controversy "fit" for adjudication. At this

21  point. CMA CGM attempts to raise various defenses, of which the court has nothing to adjudicate

22  in that the sole nature of the adjudication is by and between Plaintiffs and Iran.

23  The concept of non-justiciability parallels C.C.P. § 708.510(b), in which the California

24  Legislature specifically sought to exclude the third party from any proceedings, and ultimately

25  sought to avoid a full-fledged battle between the obligor and the Judgment Creditor. C.C.P. §

26  708.510 et seq. lacks any procedural safeguards to insure that such a putative adjudication would

27  provide the parties with a fair and comprehensive result. This analysis barely touches the mandate.

28  e.g.. that parties are entitled to a jury trial, and certainly C.C.P. § 708.510 does not even begin to

1  contemplate the prospect that 12 jurors would make a determination that an obligation is owed or

2  not owed by the obligor.

3      All of the defenses raised by CMA CGM are non-justiciable.  As a Constitutional matter,

4  this court can only adjudicate a "case or controversy."  See *City of Los Angeles v. Lyons*, 461 U.S.

5  95 (1983) 103 S.Ct. 1660, 75 L.Ed.2d 675, in which the court stated as follows:

6      "It goes without saying that those who seek to invoke the jurisdiction of the federal
        courts must satisfy the threshhold requirement imposed by Article III of the
7      Constitution by alleging an actual case or controversy. *Flast v. Cohen*, 392 U.S. 83,
        94-101, 88 S.Ct. 1942, 1949-1953, 20 L.Ed.2d 947 (1968); *Jenkins v. McKeithen*,
8      395 U.S. 411, 421-425, 89 S.Ct. 1843, 1848-1850, 23 L.Ed.2d 404 (1969) (opinion
        of MARSHALL, J.). Plaintiffs must demonstrate a "personal stake in the outcome"
9      in order to "assure that concrete adverseness which sharpens the presentation of
        issues" necessary for the proper resolution of constitutional questions. *Baker v.*
10     *Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Abstract injury
        is not enough. The plaintiff must show that he "has sustained or is immediately in
11     danger of sustaining some direct injury" as the result of the challenged official
        conduct and the injury or threat of injury must be both "real and immediate," not
12     "conjectural" or "hypothetical." See, *e.g., Golden v. Zwickler*, 394 U.S. 103, 109-
        110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell*,
13     330 U.S. 75, 89-91, 67 S.Ct. 556, 564-565, 91 L.Ed. 754 (1947); *Maryland
        Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85
14     L.Ed. 826 (1941); *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601,
        67 L.Ed. 1078 (1923)." (P. 102)

15     The party must have some type of "standing" which could be adjudicated.  See *Flast v.*

16  *Cohen*, 392 U.S. 83 (1968) 88 S.Ct. 1942, 20 L.Ed.2d 947, in which the court held that standing is

17  an aspect of justiciability, and that courts will not give advisory opinions.  The court stated as

18  follows:

19

20     "Justiciability is itself a concept of uncertain meaning and scope. Its reach is
        illustrated by the various grounds upon which questions sought to be adjudicated in
21     federal courts have been held not to be justiciable. Thus, no justiciable controversy
        is presented when the parties seek adjudication of only a political question,[10] when
22     the parties are asking for an advisory opinion,[11] when the question sought to be
        adjudicated has been mooted by subsequent developments,[12] and when there is no
23     standing to maintain the action.[13] Yet it remains true that [j]usticiability is . . . not a
        legal concept with a fixed content or susceptible of scientific verification. Its
24     utilization is the resultant of many subtle pressures. . . . *Poe v. Ullman*, 367 U.S.
        497, 508 (1961).

25     Part of the difficulty in giving precise meaning and form to the concept of
        justiciability stems from the uncertain historical antecedents of the "case and
26     controversy" doctrine. For example, Mr. Justice Frankfurter twice suggested that
        historical meaning could be imparted to the concepts of justiciability and case and
27     controversy by reference to the practices of the courts of Westminster when the
        Constitution was adopted. *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123,
28     150 (1951) (concurring opinion); *Coleman v. Miller*, 307 U.S. 433, 460 (1939)
        (separate opinion). However, the power of English judges to deliver advisory

opinions was well established at the time the Constitution was drafted. 3 K. Davis, Administrative Law Treatise 127-128 (1958). And it is quite clear that "the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." C. Wright, Federal Courts 34 (1963).[14] Thus, the implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions on federal courts. When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III. *See Muskrat v. United States,* 219 U.S. 346 (1911); 3 H. Johnston, Correspondence and Public Papers of John Jay 486-489 (1891) (correspondence between Secretary of State Jefferson and Chief Justice Jay). However, the rule against advisory opinions also recognizes that such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multi-faced situation embracing conflicting and demanding interests." (P. 95)

Under C.C.P. § 708.510(a), the statutory enactment specifically avoids any type of adjudication between the Judgment Creditor and the potential obligor. This is in clear contrast to the adjudication potentially between a Judgment Creditor and an obligor found in a levy found under C.C.P. § 701.020, which usually surfaces through a creditor's lawsuit under C.C.P. § 708.210, which provides as follows:

**§ 708.210.**
If a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment.

Therefore, this court, as a matter of statutory interpretation, would never accept or assume a contest between the Judgment Creditor and the obligor, as ultimately they would be deemed, per se, non-justiciable. Accordingly, CMA CGM would not have any statutory standing to raise any of the putative defense. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) 112 S.Ct. 2130, 119 L.Ed.2d 351, 60 USLW 4495, in which the court clearly held that plaintiff must have suffered an "injury in fact" constituting an invasion of a legally protected interest which is concrete and particularized, and that the loss would be "actual and imminent," and not conjectural or hypothetical. (At p. 560).

The battle between the Judgment Creditor and the obligor is not ripe, which per se is a condition of any controversy in this court. *See, e.g., Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) 87 S.Ct. 1507, 18 L.Ed.2d 681, at page 140. *See also, e.g., Artway v. The Attorney*

*General of the State of New Jersey*, 81 F.3d 1235 (3rd Cir. 1996), defining ripeness at page 1246, as follows:

> "IV. RIPENESS
> A. Introduction
> We next examine the State's assertions that Artway's ex post facto, double jeopardy, bill of attainder, and due process challenges are not ripe. Article III, as part of its "case or controversy" mandate, requires parties to suffer injury or come into immediate danger of suffering an injury before challenging a statute. See O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The basic rationale of the ripeness requirement is "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Ripeness prevents courts from interfering with legislative enactments until it is necessary to do so, and enhances the quality of judicial decisionmaking by ensuring that cases present courts an adequate record to permit effective review and decisionmaking. See id. Ripeness involves weighing two factors: (1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review. See 387 U.S. at 149, 87 S.Ct. at 1515-16. [7]" (p. 1247)

The claims or defenses of CMA CGM are "not ripe" because C.C.P. § 708.510 clearly holds that they can never be ripe, and in which the battleground would be another day.  Also in line are such cases as *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63 (1st Cir. 2003), in which the court held that a non-pregnant woman does not have standing to test the premises of the Main Medical Center, on the basis that the physical premises failed to comply with Title 3 of the American Disabilities Act (ADA).  The court held that her claim was not ripe, as follows:

> "The test to be applied in ripeness analysis is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). The ripeness doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136,148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Determining ripeness involves a dual inquiry: evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149, 87 S.Ct. 1507. Both prongs of the test must be satisfied, although a strong showing on one may compensate for a weak one on the other. See Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995). Like standing, ripeness has both constitutional and prudential elements. See Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 58 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); 13A Wright, Miller & Cooper, supra, § 3532.1, at 118." (P. 70)

Other cases are clearly in accord.  *See Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405 (3rd Cir. 1992) at pages 412-413; and *Ernst & Young v. Depositors Economic Protection Corporation*, 45 F.3d 530 (1st Cir. 1995), in which the court made it clear that the court

1  does not have the jurisdiction to issue opinions based upon speculative facts or hypothetical

2  record. The court specifically indicated that a matter must be "fit" for adjudication. (P. 537)

3      As a jurisdictional and Constitutional basis, a federal court is only able to adjudicate a

4  "case or controversy." The battle, if any, by and between Plaintiffs and CMA CGM are neither a

5  case nor a controversy unless and until Plaintiffs file suit against CMA CGM on Iran's underlying

6  obligation.

7  ### III. UNAUTHORIZED PLEADING.

8      CMA CGM has yet to broach the issue of why, or if, they ever had standing. CMA CGM

9  has yet to file a motion to intervene, even though that issue was raised before Judge Zimmerman.

10  CMA CGM has yet to demonstrate its entitlement, whether by intervention or otherwise, of

11  making any appearance in this court.

12      Throughout CMA CGM's entire litigation strategy, CMA CGM has yet to justify its

13  participation in these proceedings under FRCP 24(a)&(b). CMA CGM, however, has not moved

14  this court to intervene under FRCP 24(a) or (b), and certainly has not complied with the basic

15  requirements set forth by way of FRCP 24( c), which provides as follows:

16      "( c) Notice and Pleading Required.
    A motion to intervene must be served on the parties as provided in Rule 5. The

17      motion must state the grounds for intervention and be accompanied by a pleading
    that sets out the claim or defense for which intervention is sought.

18      Without the court permitting intervention, CMA CGM is a stranger to these proceedings,

19  and is not entitled to be heard. See *White v. Texas American Bank/Galleria*, 958 F.2d 80 (5th Cir.

20  1992). in which the court stated at page 83, as follows:

21      " . . . Nevertheless, until the Appellants received leave to intervene, they were not

22      parties to the suit and, consequently, had no standing to be served or to respond to
    NCNB's summary judgment motion."

23      Even in cases dealing with Iran, the United States was compelled to file a motion to

24  intervene. See *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003) at page 233.

25  CMA CGM is not entitled to "equitable intervention." CMA CGM is required to comply with

26  FRCP 24( c). Courts have routinely rejected the concept of "equitable intervention," no matter

27  how compelling the status of the party. See *Dickerson v. United States Steel Corporation*, 582

28  F.2d 827 (3rd Cir. 1978) at page 832.

1    Intervention is multi-step process, in which the party seeking to intervene must make out

2    its burden of proof showing an entitlement thereto.  See *Sagebrush Rebellion, Inc. v. James G.*

3    *Watt*, 713 F.2d 525 (9th Cir. 1983) at page 527, in which the court stated as follows:

4         "The rule was amended in 1966 in an effort, according to the advisory committee
          note, to permit courts to look at practical considerations in determining whether an
5         absentee seeking intervention is being adequately represented. See Fed.R.Civ.P. 24
          advisory committee note. This court has adopted a four-part test for deciding
6         applications as of right pursuant to the rule:
          (1) the applicant's motion must be timely; (2) the applicant must assert an interest
7         relating to the property or transaction which is the subject of the action; (3) the
          applicant must be so situated that without intervention the disposition of the action
8         may, as a practical matter, impair or impede his ability to protect that interest; and
          (4) the applicant's interest must be inadequately represented by the other parties."
9
     Intervention, of course, may lead to "unintended consequences" in which, e.g., a party
10
11   seeking to intervene might well consent to the jurisdiction of the court, for all purposes.  See for

12   purposes of illustration, *Securities and Exchange Commission v. Priscilla Ross*, 504 F.3d 1130

     (9th Cir. 2007) at page 1148, in which the court stated as follows:
13

14        "Few courts have directly addressed whether a non-party who intervenes in ongoing
          proceedings pursuant to Rule 24(a)(2) can raise personal jurisdiction objections in
15        conjunction with a motion to intervene. However, those that have addressed this
          question have generally concluded that a party who intervenes, consents, as a matter
16        of law, to the jurisdiction of the court permitting the intervention. See In re
          Bayshore Ford Truck Sales, Inc., 471 F.3d 1233 (11th Cir. 2006); County Sec.
17        Agency v. Ohio Dept. of Commerce, 296 F.3d 477 (6th Cir. 2002); *Pharm.*
          *Research & Mfrs. v. Thompson,* 259 F.Supp.2d 39 (D.D.C. 2003); *City of Santa*
18        *Clara v. Kleppe,* 428 F.Supp. 315, 317 (N.D. Cal. 1976). *Wright and Miller* concurs
          in this view: "[T]he intervenor submits himself to the personal jurisdiction of the
19        court by seeking to intervene in the action and cannot move to dismiss on that
          ground." 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND
20        PROCEDURE, CIVIL 3D § 1920, at 612 (3d ed. 2007) (citing *Kleppe,* 428 F.Supp.
          315).

21        These courts, and even *Wright and Miller,* devote little space to analyzing this
          issue, but the conclusion derives from the principle that a party cannot
22        simultaneously seek affirmative relief from a court and object to that court's
          exercise of jurisdiction. In *Ford Motor,* the Eleventh Circuit held that a party that
23        intervened to challenge the district court's injunction against a parallel state court
          proceeding had "acquiesced" to the district court's jurisdiction over its person. 471
24        F.3d at 1248. Similarly, in *County Security Agency,* the Sixth Circuit dismissed the
          intervenor's jurisdictional objections because "a motion to intervene is
25        fundamentally incompatible with an objection to personal jurisdiction." 296 F.3d at
          483. The Eleventh Circuit suggested that as an alternative to intervention, a third
26        party can either file an amicus brief or ignore the proceedings and collaterally
          challenge the jurisdiction of the rendering court in his home jurisdiction when the
27        prevailing party attempts to enforce the judgment. *Ford Motor,* 471 F.3d at 1248
          n.34."
28
          While the court in *SEC v. Ross* later questioned whether or not intervention truly led to

1  consent to jurisdiction, nonetheless, the court can condition intervention on a number of

2  conditions, which ultimately might lead to consent to personal jurisdiction of the court. However,

3  CMA CGM did not file a motion to intervene, and therefore constitutes a non-party.

4      As classically stated, supplemental proceedings are statutory in nature, and the court is not

5  at liberty to alter or amend such proceedings. Specifically, in viewing C.C.P. § 708.510(a), the

6  structure does not provide the court with an opportunity by which to conduct ultimately an

7  evidentiary hearing, much less any other contest by and between the Judgment Creditor and the

8  obligor, specifically when the obligor raises a whole host of putative defenses to enforcement of

9  the underlying obligation. For example, this court cannot *sua sponte* convene a trial in which the

10  court would consider whether or not the obligor is or is not indebted to Iran, whether the obligor

11  might have a whole host of defenses, or whether or not the obligor might or might not be subject to

12  the jurisdiction of the court which, per se, might be a factual matter entitling the Judgment

13  Creditor to the benefits of discovery.

14      This is more than a battle of form over substance, as the prosecution of this case is subject

15  to FRCP 69(a), which necessarily incorporates C.C.P. § 708.510(b), in which CMA CGM would

16  not even be a statutory party in a California proceeding. Accordingly, as a matter of California

17  law, CMA CGM does not have any standing, and therefore does not have the right by which to

18  either file an objection, much less have this matter heard.

19                                          **IV. CONCLUSION.**

20      CMA CGM is not a party to the proceeding; lacks the statutory standing under C.C.P. §

21  708.510(b); and moreover, raises a whole host of non-justiciable issues which are neither ripe nor

22  ready for adjudication by this court.

23      CMA CGM similarly does not have any independent standing, in that CMA CGM is not

24  the subject of direct levy and execution, nor enforcement of a judgment. CMA CGM is a complete

25  and total stranger to these proceedings, and the analysis by Judge Zimmerman was correct in that

26  regard.

27      Furthermore, CMA CGM by attempting to impose themselves upon these proceedings,

28  attempts to seek a pre-adjudication of a whole host of factual and legal issues which by their very

1  nature are not either fit or ripe for controversy.  Under C.C.P. § 708.510, California law does not

2  anticipate nor provide for full-scale litigation by and between a Judgment Creditor and a potential

3  account debtor on behalf of the Judgment Debtor.  The Judgment Creditor, e.g., is not entitled to

4  discovery such as depositions, interrogatories, request for production of documents or request for

5  admissions; and similarly, is not entitled to the benefit of traditional litigation processes such as

6  motions, summary judgments, pretrial conferences, or a trial itself.  Furthermore, in attempting to

7  prelitigate the immunity or nonimmunity, CMA CGM attempts to bring in a whole host of factual

8  issues in which this creditor does not have the opportunity by which to engage in any type of fact-

9  finding.

10      The California Legislature made it clear that the entire purpose of C.C.P. § 708.510 was to

11  permit the Judgment Creditor to reach assets of the Judgment Debtor and, that to the extent of an

12  underlying dispute, that the Judgment Creditor would pursue the matter at a different date, time,

13  and potentially a different forum.

14      The court should therefore reject the de novo review sought by CMA CGM, and deny it as

15  a matter of law.

16  DATED:  November 7, 2008           COOK COLLECTION ATTORNEYS

17

18                                     By: ___/s/ David J. Cook_____
                                       DAVID J. COOK, ESQ. (SB# 060859)
                                       Attorneys for Plaintiffs
19                                     DEBORAH D. PETERSON, Personal Representative
                                       of the Estate of James C. Knipple (Dec.), et al.
20

21  F:\USERS\DJCNEW\petersonsf.opposcmadenovo

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2   HIS EXCELLENCY AYATOLLAH SAYED
`ALI KHAMENEI

3   THE OFFICE OF THE SUPREME
LEADER

4   Islamic Republic Street
Shahid Keshvar Doust Street

5   Tehran, Islamic Republic of Iran

6   HIS EXCELLENCY MAHMOUD
AHMADINEJAD THE PRESIDENT

7   Palestine Avenue
Azerbaijan Intersection

8   Tehran, Islamic Republic of Iran

9   ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue

10  Golestan Yekom
Teheran, Iran

11  ATTN: President Mahmoud Ahmadinejad or
Responsible Officer or Agent for Service of

12  Process

13  ISLAMIC REPUBLIC OF IRAN
acting through its MINISTRY OF DEFENSE

14  AND SUPPORT FOR ARMED FORCES
No. 1 Shahid Kaboli Street

15  Beginning of Resalat Highway
Seyyed Khandan Bridge

16  P.O. Box 16765-1479
Tehran, Iran

17  Attn: President Mahmoud Ahmadinejad or
Responsible Officer or Agent for Service of

18  Process

19  ISLAMIC REPUBLIC OF IRAN
Khomeini Avenue

20  United Nations Street
Teheran, Iran

21  ATTN: President Mahmoud Ahmadinejad or
Responsible Officer or Agent for Service of

22  Process

23  Director, Human Rights Headquarters of Iran
HIS EXCELLENCY MOHAMMAD

24  JAVAD LARIJANI
c/o Office of the Deputy for International

25  Affairs
Ministry of Justice

26  Ministry of Justice Building
Panzdah-Khordad (Ark) Square

27  Tehran, Islamic Republic of Iran

28

Minister of Intelligence
GHOLAM HOSSEIN MOHSENI EJEIE
MINISTRY OF INTELLIGENCE
Second Negarestan Street
Pasdaran Avenue
Tehran, Islamic Republic of Iran

Head of the Judiciary
AYATOLLAH MAHMOUD HASHEMI
SHAHROUDI
Howzeh Riyasat-e Qoveh Qazaiyeh
Office of the Head of the Judiciary
Pasteur Street, Vali Asr Avenue
South of Serah-e Jomhouri
Tehran 1316814737
Islamic Republic of Iran

MINISTRY OF ROADS AND
TRANSPORTATION
Attn: MOHAMMED RAHMATI
MINISTER OF ROAD AND
TRANSPORTATION
Taleghani Avenue
Tehran, Iran

ALI TAHERI
DEPUTY MINISTER AND MANAGING
DIRECTOR
PORT & SHIPPING ORGANIZATION OF
THE ISLAMIC REPUBLIC OF IRAN
Building No. 2
South Didar Street
Shahid Hagnai Expressway,Vanak Square
Tehran, Iran

NATIONAL IRANIAN OIL REFINING
AND DISTRIBUTION COMPANY
Opposite of Arak Alley Ostad Nejatollahi
Ave.
Zip Code 15989
P.O. Box 15815/3499
Tehran, Iran
ATTN: Responsible Officer or Agent for
Service of Process

MINISTRY OF PETROLEUM OF THE
ISLAMIC REPUBLIC OF IRAN
HAFEZ CROSSING
Taleghani Avenue
Tehran, Iran
ATTN: Responsible Officer or Agent for
Service of Process

1  NATIONAL IRANIAN OIL PRODUCTS
   DISTRIBUTION COMPANY
2  Bahar St, Somaya Corner
   Tehran 15617/ 33315
3  P.O .Box 6165
   Tehran
4  ATTN: Responsible Officer or Agent for
   Service of Process
5
   NATIONAL IRANIAN OIL COMPANY
6  Hafez Crossing
   Taleghani Avenue
7  Tehran, Iran
   ATTN: Responsible Officer or Agent for
8  Service of Process

9  MATTHEW S. WEILER, ESQ.
   MORGAN LEWIS & BOCKIUS. LLP
10 One Market, Spear Street Tower
   San Francisco, CA 94105
11
        I declare:
12
        I am employed in the County of San Francisco, California. I am over the age of eighteen
13 (18) years and not a party to the within cause. My business address is 165 Fell Street, San
   Francisco, CA 94102. On the date set forth below, I served the attached:
14
        MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CMA
15      CGM'S NOTICE OF MOTION AND MOTION FOR DE NOVO REVIEW OF THE
        OCTOBER 14, 2008 REPORT AND RECOMMENDATION AND ORDER
16      COMPELLING ASSIGNMENT OF RIGHTS

17 on the above-named person(s) by:

18  _XXX_  (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage
    thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the
19  person(s) served above.

20      I declare under penalty of perjury that the foregoing is true and correct.

21      Executed on November 7, 2008.

22
                                        /s/ Karene Jen
23                                      Karene Jen

24

25

26

27

28