DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ. (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco. CA 94102
Mailing Address: P.O. Box 270
San Francisco. CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52.759

Attorneys for Plaintiffs
DEBORAH D. PETERSON. Personal Representatives
of the Estate of James C. Knipple (Dec.), et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON. Personal Representative of the Estate of James C. Knipple (Dec.), et al.. <br><br> Plaintiffs, <br><br> vs. <br><br> ISLAMIC REPUBLIC OF IRAN. et al.. <br><br> Defendants. | CASE NO. 3:08-mc-80030-JSW (BZ) <br><br> DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVERS UNDER FRCP 69(a) AND UNDER C.C.P. § 708.620 <br><br> [CERTAIN BANK ACCOUNTS] <br><br> Date:   December 19, 2008 <br> Time:   9:00 a.m. <br> Courtroom: 2. 17th Floor <br> Judge: Jeffrey S. White |

I. DAVID J. COOK, hereby declare and state as follows:

1. I am one of the attorneys of record for Plaintiffs in the above-entitled action, am duly authorized to practice before all courts in the State of California. and am familiar with the facts and circumstances in this action.

2. In the course and scope of Plaintiffs' post-judgment enforcement. Plaintiffs have ascertained the existence of "certain bank accounts. deposits, deposit accounts, general intangibles, certificates of deposits" ("Accounts") claimed to. owed to. in favor of, owned by, or in which the Judgment Debtor ISLAMIC REPUBLIC OF IRAN ("Iran") has an interest. in which the identity of the account is subject to the protective order of the United States District Court dated 6/11/08 in

1   which the protected information shall be filed under seal.  A true and correct copy of the

2   underlying UNOPPOSED EMERGENCY MOTION ON BEHALF OF THE OFFICE OF

3   FOREIGN ASSETS CONTROL FOR ENTRY OF PROTECTIVE ORDER AUTHORIZING

4   DISCLOSURE IN RESPONSE TO RULE 45 SUBPOENA is attached hereto marked *Exhibit*

5   *"A."*

6           3.  A true and correct copy of the PROTECTIVE ORDER (sealing order) filed on 6/11/08

7   is marked *Exhibit "B."* [5]

8           I declare under penalty of perjury that the foregoing is true and correct.

9           Executed on November 3, 2008.

10

11                              ___/s/ David J. Cook_____
                                 DAVID J. COOK, ESQ. (SB# 060859)

12   F:\USERS\DJCNEW\petersonsf.appointaccounts

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27           [5]  All exhibits are incorporated by reference as though fully set forth in this Memorandum
28   in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed
     contemporaneously herein.

# EXHIBIT "A"

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 01-2094 (RCL) |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| STEVEN GREENBAUM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 02-2148 (RCL) |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |

## UNOPPOSED EMERGENCY MOTION ON BEHALF OF THE OFFICE OF
## FOREIGN ASSETS CONTROL FOR ENTRY OF PROTECTIVE ORDER
## AUTHORIZING DISCLOSURE IN RESPONSE TO RULE 45 SUBPOENA

### INTRODUCTION

The Department of the Treasury's Office of Foreign Assets Control ("OFAC"), which is

not a party to the above-referenced cases, hereby seeks the entry of an order authorizing it to

provide certain information responsive to subpoenas issued to it under Federal Rule of Civil

Procedure 45 on behalf of the plaintiffs in Deborah D. Peterson, et al. v. The Islamic Republic of

Iran, et al., Civil Action No. 01-2094 (RCL) and Steven Greenbaum, et al. v. The Islamic

Republic of Iran, et al., Civil Action No. 02-2148 (RCL). The Court's authorization is required



before OFAC can respond to plaintiffs' subpoenas because information in OFAC's possession that may be responsive is protected from disclosure by the Trade Secrets Act, 18 U.S.C. § 1905, which imposes criminal penalties for the disclosure of information falling within its terms without appropriate authorization of law. Pursuant to Local Rule, undersigned counsel has conferred with counsel for the plaintiffs, David J. Cook, Esq., regarding this Motion. Mr. Cook has advised that neither the plaintiffs in <u>Peterson</u> nor the plaintiffs in <u>Greenbaum</u> object to the terms of the proposed protective order attached hereto.

## BACKGROUND

Plaintiffs in these two cases hold judgments entered by this Court against, <u>inter alia</u>, the Islamic Republic of Iran ("Iran"). <u>See Peterson v. Islamic Republic of Iran</u>. 515 F. Supp. 2d 25 (D.D.C. 2007), <u>appeal dismissed</u>, 2008 WL 650452 (D.C. Cir. 2008); <u>Greenbaum v. Islamic Republic of Iran</u>, 451 F. Supp. 2d 90 (D.D.C. 2006). The subpoenas issued on behalf of these plaintiffs each request information from OFAC regarding, <u>inter alia</u>, "any and all lists, narratives, histories, catalogues, inventories . . . of all assets of Iran." <u>See</u> Tab A (<u>Peterson</u> subpoena): Tab B (<u>Greenbaum</u> subpoena). The <u>Greenbaum</u> subpoena was issued on February 27, 2008, and the <u>Peterson</u> subpoena was issued March 10, 2008.[1]

Pursuant to Federal Rule of Civil Procedure 45, OFAC formally objected to plaintiffs' subpoenas by letters dated March 20, 2008 and March 26, 2008, on grounds that, <u>inter alia</u>, the release of responsive documents or a list containing the information requested might violate the Trade Secrets Act, 18 U.S.C. § 1905, a statute that provides for the imposition of criminal penalties on government employees for prohibited disclosure of information within its scope. <u>See</u> Tab C (<u>Peterson</u> objection letter); Tab D (<u>Greenbaum</u> objection letter). Subsequently, the

---

[1]   A previous subpoena issued by the <u>Peterson</u> plaintiffs on January 24, 2008, is no longer operative.

parties have entered negotiations in an effort to narrow the scope of the subpoenas. Those

negotiations are continuing.

Recently, however, OFAC has become aware of information relating to certain assets

held in the United States that may be in immediate danger of dissipation. Information in OFAC's

possession concerning these assets may be responsive to plaintiffs' subpoenas, and OFAC is

currently attempting to verify whether, in fact, the information is responsive.[2] Nonetheless,

because of the risk of immediate asset flight and in light of the prohibitions of the TSA, OFAC

requests that the Court authorize it to disclose information responsive to plaintiffs' subpoenas via

the attached jointly proposed protective order so that, should OFAC confirm that the information

it has is responsive to plaintiffs' subpoenas, OFAC immediately can disclose certain information

relating to these specific assets. OFAC intends that this Order, if entered, will provide the

requisite authorization of law necessary to resolve its objections on the basis of the TSA – but

only those objections – with respect to all information in its possession that may be determined to

be responsive to plaintiffs' subpoenas, whether that information is to be produced immediately

for the reasons described in this motion or whether it is subsequently produced following the

conclusion of negotiations. By seeking this relief now, OFAC does not waive any other right,

privilege, or immunity it may have with respect to any further response and continues to maintain

its other objections to those subpoenas.[3]

_____

[2] By identifying information concerning these assets as potentially responsive to plaintiffs' subpoena, OFAC states no position as to whether these assets may ultimately be available for attachment under any other governing law. Nor does OFAC intend to compromise or waive in any way the United States's ability in future litigation to state its views as to the amenability of these assets for attachment.

[3] As noted in the proposed order, the Court's entry of that Order would resolve only the question of whether disclosure is authorized under the Trade Secrets Act and does not constitute any determination as to any other privilege or immunity which OFAC may possess that applies either to the information to be provided at this stage, or to any additional information in OFAC's custody that

## ARGUMENT

I.   **AUTHORIZATION OF LAW IS REQUIRED BEFORE DISCLOSURE MAY BE
     MADE OF INFORMATION PROTECTED BY THE TRADE SECRETS ACT.**

Information responsive to plaintiffs' subpoena may be subject to the prohibitions on

disclosure set forth in the Trade Secrets Act ("TSA"), a criminal statute. The TSA prohibits the

unauthorized release by a federal employee or officer of certain types of information received by

the government. Specifically, the statute provides:

> **§ 1905. Disclosure of confidential information generally.**
>
> Whoever, being an officer or employee of the United States or of any department
> or agency thereof . . . publishes, divulges, discloses, or makes known in any
> manner or to any extent not authorized by law any information coming to him in
> the course of his employment or official duties or by reason of any examination or
> investigation made by, or return, report or record made to or filed with. such
> department or agency or officer or employee thereof, which information concerns
> or relates to the trade secrets, processes, operations, style of work, or apparatus, or
> to the identity, confidential statistical data, amount or source of any income,
> profits, losses, or expenditures of any person. firm, partnership, corporation, or
> association; or permits any income return or copy thereof or any book containing
> any abstract or particulars thereof to be seen or examined by any person except as
> provided by law; shall be fined under this title, or imprisoned not more than one
> year, or both; and shall be removed from office or employment.

18 U.S.C. § 1905.

The Court of Appeals has described the TSA's scope as "exceedingly broad" (even

"oceanic") and has held that it "encompasses virtually every category of business information

likely to be found in the files" of an agency. CNA Financial Corp. v. Donovan, 830 F.2d 1132,

1140 (D.C. Cir. 1987) (stating further that the TSA "appears to cover practically any commercial

---

may be responsive plaintiffs' subpoenas. or as to any objection that OFAC may have to plaintiffs'
subpoenas. Similarly. in the event the Court authorizes OFAC to disclose information pursuant to
a protective order in the form attached hereto. and OFAC determines that information. in fact. to be
responsive, OFAC's subsequent provision of the information described in this motion to plaintiffs.
see infra at 5, does not constitute a waiver of any applicable privileges that may apply to the
information or its sources. including but not limited to the law enforcement privilege. in this or any
other proceeding.

or financial data collected by any federal employee from any source in performance of the duties

of his or her employment," and that the "comprehensive catalogue of items in the [TSA]

accomplishes essentially the same thing as if it had simply referred to 'all officially collected

commercial information' or 'all business and financial data received'"). As noted above, under

the TSA, disclosure of any such information must be "authorized by law," or the disclosing

employee "shall be fined under this title, or imprisoned not more than one year, or both: and shall

be removed from office or employment."

The information that OFAC intends to immediately disclose to plaintiffs if it is confirmed

to be responsive was voluntarily provided to OFAC by a financial institution in the course of an

ongoing investigation. The information would identify the third-party financial institution at

which the assets are being held, identify the specific assets at issue (to the extent possible), and

include the value of the assets as of certain dates. Such information clearly falls within the type

of information that has been held by the courts to be protected by the TSA, as it is "any

commercial or financial data collected by any federal employee from any source in the

performance of the duties of his or her employment." CNA Financial Corp., 830 F.2d at 1140

(emphasis added).

Under the TSA, disclosure of protected information is permitted only if "authorized by

law." A Rule 45 subpoena, which may be issued at the discretion of any civil litigant, does not

constitute the "authoriz[ation] by law" that the TSA requires. Cf. Doe v. DiGenova, 779 F. 2d

74, 84-85 (D.C. Cir. 1985) (construing similar language in the Privacy Act); In re Valencia

Condensed Milk, 240 F. 310, 314 (7th Cir. 1917) (construing predecessor to Trade Secrets Act).

A "lawfully issued judicial order," however, provides the necessary authorization for disclosure

of Trade Secrets Act material, United States v. Liebert, 519 F. 2d 542, 546 (3d Cir. 1975), and,

indeed, in other cases seeking similar information from OFAC, this Court and others have

previously authorized disclosure pursuant to a protective order.  See Estate of Ungar v.

Palestinian Authority. Misc. No. 04-90 (D.D.C. ) (Sullivan, J.) (Docket No. 10); Jacobsen v.

Oliver, Civil Action No. 01-1810 (D.D.C.) (Friedman, J/Robinson, M.J.) (Docket Nos. 68, 86, &

78); see also Rux v. Republic of Sudan, Civil Action No. 04-428 (E.D. Va.) (Docket No. 109).

Where the Trade Secrets Act is at issue, disclosure pursuant to a protective order that

limits the distribution and use of the information that may be provided by OFAC is necessary to

protect important governmental interests. whether the information that is the subject of the Order

is provided to the Government voluntarily or under compulsion.  The D.C. Circuit has

recognized that ordinarily, in the context of the Freedom of Information Act ("FOIA"). 5 U.S.C.

§ 552, for example, information provided voluntarily to the Government is exempt from

disclosure because it is "a matter of common sense that the disclosure of information the

Government has secured from voluntary sources on a confidential basis will both jeopardize its

continuing ability to secure such data on a cooperative basis and injure the provider's interest in

preventing its unauthorized release." Critical Mass Energy Project v. Nuclear Regulatory

Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).  In order to protect the Government's

interests in the voluntary provision of information, the D.C. Circuit has adopted a "categorical

rule" rule that "financial or commercial information provided to the Government on a voluntary

basis is 'confidential' for the purpose of [FOIA, and therefore exempt from disclosure] if it is of

a kind that would customarily not be released to the public by the person from whom it was

obtained."  Id.  Accordingly, the information about the assets that OFAC intends to immediately

disclose to plaintiffs if it is determined to be responsive – which was provided to OFAC

voluntarily in the course of an ongoing investigation – would be categorically exempt from

disclosure under FOIA.[4]

Similarly, where the information that is to be disclosed was provided to the Government under compulsion – which may be true of other information that may be determined to be responsive to plaintiffs' subpoena in the course of the continuing negotiations – courts again evaluate whether the disclosure of the information would "impair the government's ability to obtain the necessary information in the future." McDonnell Douglas Corp. v. NASA, 180 F.3d 303, 304 (D.C. Cir. 1999); Critical Mass, 180 F.3d 878-80. Disclosure of information that is submitted to OFAC under compulsion but with the assurance that it will be treated confidentially, see, e.g., 31 C.F.R. § 501.603, would impinge upon OFAC's administration of its programs relating to terrorist financing and economic sanctions, which depend in large part on OFAC's ability to maintain the confidentiality of information submitted to it.

Accordingly – whether the information at issue is provided voluntarily (as it was with respect to the information that may be immediately disclosed), or under compulsion (as it may be with respect to additional information that may be determined responsive to plaintiffs' subpoenas) – there are important government interests to be served by limiting disclosure, and the TSA, of course, prohibits such disclosures categorically. As noted above, notwithstanding the standards that might govern a FOIA disclosure, the Court can provide the requisite authorization of law for disclosure of TSA-protected material by issuing an appropriate order.

_____

[4]   Where a FOIA request for information is at issue, FOIA itself provides the authorization of law necessary to allow release of TSA-protected information where the information falls outside the scope of FOIA's Exemption Four, which protects certain trade secrets and commercial and financial information. 5 U.S.C. § 552(b)(4). See McDonnell Douglas Corp. v. NASA, 180 F.3d 303, 305 (D.C. Cir. 1999); CNA Financial Corp., 830 F.2d at 1140-42. By the same token, information that falls within the scope of FOIA's Exemption 4 cannot be disclosed because of the restrictions of the TSA. McDonnell Douglas Corp. v. Widnall, 57 F.2d 1162, 1164 (D.C. Cir. 1995). Thus, the governmental interests that are protected by FOIA when it comes to TSA-protected information serve as useful tools in evaluating the proper treatment of such information, even in a non-FOIA case.

An order of disclosure incorporating the restrictions contained in the proposed order attached

hereto, however, would protect the important governmental interests described herein and

minimize the concerns articulated by the D.C. Circuit about the disclosure of such information

that is provided to the Government. OFAC, accordingly, requests that this Court authorize it to

disclose information in response to plaintiffs' subpoena, via the attached proposed protective

order.

## CONCLUSION

For the reasons set forth herein, OFAC requests that this Court enter the attached

proposed protective order authorizing OFAC to disclose information in response to plaintiffs'

subpoenas pursuant to the terms set forth therein.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director, Federal Programs Branch

ARTHUR G. GOLDBERG
Assistant Branch Director
Federal Programs Branch

___/s/ *Rupa Bhattacharyya*_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Avenue, N.W.
Washington, D.C. 20044
Tel.: (202) 514-3146; Fax: (202) 616-8202
Email: rupa.bhattacharyya@usdoj.gov

Dated: June 11, 2008

-8-

Dbt f !2;12.dw131: 5.SDM!!!!Epdvn f ou436.4!!!!!!Gjrfe!17©2©3119!!!!!Qbhf !2!pg22

FEB-27-2008 WED 11:47 AM                    FAX NO.                              P. 03

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

STEVEN GREENBAUM ET. AL. ETC.

V.                                          **SUBPOENA IN A CIVIL CASE**

ISLAMIC REPUBLIC OF IRAN ETC.

Case Number:[1]  02-2148 (RCL)

TO:  OFFICE OF FOREIGN ASSET CONTROL
     DEPARTMENT OF TREASURY TREASURY ANNEX
     1500 Pennsylvania Ave.
     Washington, D.C. 20220

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
All of those certain books, records, papers, and files which are listed on Exhibit "A" and which is attached hereto and incorporated herein as though fully set forth by delivery of the true and correct copies thereof.

| PLACE     LAW OFFICES OF LEIBOWITZ AND BAND, Suite 910, 2730 University Blvd., West, Wheaton, MAryland 20902 4659 | DATE AND TIME  3/28/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  2/27/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
DAVID J. COOK, Esq., COOK COLLECTION ATTORNEYS, P.L.C., 165 Fell Street, San Francisco, CA 94102 Phone: 415-989-4730; Fax: 415-989-0491

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Dbt f !2;12.dw.131: 5.SDM!!!!Epdvn f ou436.4!!!!!!Gjrhe!17022O3119!!!!!Qbhf !3!pg22

FEB-27-2008 WED 11:48 AM                        FAX NO.                          P. 04

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE                                    SIGNATURE OF SERVER

                                                           ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

FEB-27-2008 WED 11:49 AM                           FAX NO.                           P. 05

# EXHIBIT "A"

Dbt f !2;12.dw131: 5.SDM!!!!Epdvn f oU436.4!!!!!!Gjrhe!17œ2œ3119!!!!!Qbhf !5!pg22

## EXHIBIT A

1.  A list of all assets, including the name, address and telephone number of any custodian of record thereof, of all assets of the former Shah of Iran, held by his family, heirs, successors, surrogates, nominee, corporate or other enterprises, regardless of the actual location, in which the United States was obligated to freeze, sequester, hold or block under the Algiers Accord, dated January 19, 1981, and the subject matter of one or more claims through the Iran-U.S. Claims Tribunal, hereinafter "IUSCT."

2.  A list of all assets, including the name, address and telephone number of any custodian of record thereof, of all assets of The Islamic Republic of Iran (hereinafter "Iran") under the control, possession or dominion of the United States, in which the United States is obligated to pay to Iran the reasonable value thereof, mandated by the IUSCT in any decision, award, full or partial award, order, judgment or decree.

3.  All pleadings, papers, complaints, answers, rejoinders, lists, inventories, papers, catalogues, compendiums, summaries, histories and narratives of all assets, and the name, address and telephone number of the custodian of record thereof, which are the subject to the following proceedings and all proceedings which are generally or partially related to the case or case numbers, listed below:

    A.  (28- I.US.CT.R. 112) THE ISLAMIC REPUBLIC OF IRAN, Claimant, v. THE UNITED STATES OF AMERICA, Respondent.
        CASE NO. A15 (II:A AND II:B) FULL TRIBUNAL AWARD NO. 529-A15 (II:A AND II:B)-FT Iran--United States Claims Tribunal Filed May 6, 1992.

    B.  THE ISLAMIC REPUBLIC OF IRAN, Claimant, v. THE UNITED STATES OF AMERICA, Respondent. CASE NO. A11 FULL TRIBUNAL AWARD 597-A11-FT Iran-United States Claims Tribunal FILED April 7, 2000.

    C.  (19 I.US.CT.R.273) THE ISLAMIC REPUBLIC OF IRAN, Claimant, v. THE UNITED STATES OF AMERICA, Respondent.
        CASE NO. B1 (CLAIM 4) FULL TRIBUNAL AWARD NO. 382-B1-FT IRAN--United States Claims Tribunal Filed August 31, 1988.

    D.  Cases commonly described as follows:

        (1)  Case A/11: Iran is suing the U.S. for $10 billion, its estimate of the amount of property belonging to the former Shah and his close family, which the U.S. had pledged to help locate and turn over to Iran as part of the Algiers Accords.



        (2)     Case B/1: Iran's claim to a blocked Defense Department account, used to finance foreign military sales to Iran in the 1970s. Dollar amounts vary from $400 million, the current U.S. estimate, to more than $2 billion.

        (3)     Case B/61: Iran is demanding $2 billion in compensation for weapons it claims the shah's government paid for in the late 1970s, but were never delivered.

        (4)     Case A 15 which obligates the US to restore Iran to its pre-November 14, 1979 financial condition.

4.     A list of all bank accounts, securities accounts, accounts held by any person with any financial institution in which the U.S. claims, or contends, are the property of Iran, which lists includes the name of the account holder, the name, address and telephone of the financial institution, and account number thereof which are part of, or calculated, in any Terrorist Asset Report provided by the Office of Foreign Asset Control of the Department of the Treasury.

5.     Any accounting, which includes the history of debits and credits, history or list of payments and receipts, and all statements thereof, of the Foreign Military Sales Account maintained by the United States by and between on hand, the United States and the other hand, Iran from 1981 to date hereof, along with the name, address, telephone number and account number of any bank, financial institution, or third party, who has control, custody or dominion over the account thereof.

6.     All filings, papers, pleadings, and writings either in part or in whole which lists, identifies, catalogues, indicates, or evidences, either in part or in whole, any of the actual assets, owned, claimed or subject to any interest, either in part or in whole by Iran in the hands, possession or control of the Office of Foreign Asset Control of the Department of the Treasury, whether listed on the Terrorist Asset Report or otherwise.

7.     Any and all lists, inventories, catalogues, narratives or other papers which list, either in part or in whole, Iran, (and the names, address and telephone number of the custodian of record thereof) or any person who is holding the asset for Iran which pertains and relates more specifically as follows:

        A.     All property of Iran which Iran claims that the United States has control, possession or dominion thereof, and which is the subject of any claims, counterclaims, proceeding, award, judgment, pending in the Iran-U.S. Claims Tribunal.

        B.     All property held in Victory Van Warehouse, Sterling Virginia (near Dulles Airport).

Dbt f !2;12.dw131: 5.SDM!!!!Epdvn f ou436.4!!!!!Gjrhe!170220B119!!!!!Qbhf !7!pg22

 

      C.       All property of former Shah of Iran and his family members.

      D.       All property of Iran consisting of military and duel use property arising from Foreign Military Sales Accounts.

      E.       Any and all properties of Iran which have not been previously provide herein.

8.     Any and all lists, narratives, histories, catalogues, inventories, along with the name, address and telephone number thereof, of all assets of Iran. Iran includes, but is not limited to, any agency instrumentality, division, subdivision, nominee, surrogate, third party, government official, corporation, partnership, limited partnership, limited liability company, governmental entity, ministry, or other entity. This includes any interest in any business, either in part or in whole. Specifically, Iran includes, but is not limited to, all entities which are listed on *Exhibit "B"* and which is attached hereto and incorporated herein.

FEB-27-2008 WED 11:51 AM                    FAX NO.                        P. 09

# EXHIBIT "B"

Agricultural Cooperative Bank of Iran

No. 129 Patrice Lumumba Street
Jalal-Al-Ahmad Expressway
Tehran, Iran
Bank Josiaiyi Keshahvarzi
Farahzad Expressway
Tehran, Iran


The Central Bank of Iran
Ferdowsi Avenue
P O Box 11365-8551
Tehran, Iran


Bank Mellat
Park Shahr, Varzesh Avenue
P.O. Box 11365/5964
Tehran, Iran

Bank Mellat
48 Gresham Street
London EC2V 7AX
England

Bank Melli
Schadowplatz 12
4000 Dusseldorf 1,
Germany

Bank Melli
Odeonsplatz 18
8000 Munich 22
Germany

Bank Melli
333 New Tokyo Building
3-1 Marunouchi, 3-chrome,
Chiyoda-ku, Tokyo
Japan
Bank Melli
Smolensky Boulevard 22/14
Kv. S., Moscow, Russia


Bank Melli
P O Box 2656
Shaikha Maryann Building,Liwa
Street
Abu, Dubai, U.A.E.

Agricultural Cooperative Bank of Iran
P.O. Box 14155/6395
Tehran, Iran


Bank Taavon Keshavarzi Iran
P.O. Box 14155/6395
Tehran, Iran


Bank Maskan
Ferdowsi Street
Tehran, Iran


Bank Mellat
Ziya Gokaip Bulvari No. 12
Kizikay, Ankara, Turkey


Bank Melli
P O Box 11365-171
Ferdowsi Avenue
Tehran, Iran

Bank Melli
Friedenstrasse 4
P O Box 160 154
6000 Frankfurt am Main
Germany
Bank Melli
43 Avenue Montaigne
75008 Paris, France


Bank Melli
818 Wilshire Boulevard
Los Angeles, California 90017


Bank Melli
Flat No. 1, First Floor
8 Al Sad El-Aaly, Dokki
P O Box 2654
Cairo, Egypt
Bank Melli
P O Box 1888, Clock Tower
Industrial Road, Al-Ain Club Building
in from Emertel Al Ain,
Al Ain, Abu, Dubai, U.A.E.

Agricultural Development Bank of
Iran
Farahzad Expressway
Tehran, Iran


Bank Markazi Jomhouri Islami Iran
Ferdowsi Avenue
P O Box 11365-8551
Tehran, Iran


Housing Bank Of Iran
Ferdowski Street
Tehran, Iran


Bank Mellat
Binbir Cicek Sokak
Buyukdere Caddesi
P O Box 67
Levant, Istanbul, Turkey
Bank Melli
4 Moorgate,
London, EX2V 7AX
England

Bank Melli
P O Box 112129
Holzbruecke 2
2000 Hamburg 11
Germany
Bank Melli
601 Gloucester Tower
The Landmark, 11 Pedder Street
P O Box 720
Hong Kong
Bank Melli
767 Fifth Avenue, 44th Floor
New York, NY 10153


Bank Melli
Ben Yas Street
P O Box 1894
Riga Deira, Dubai
U.A.E.
Bank Melli
P O Box 1894
Riqa, Ban Yas Street
Deira, Dubai, U.A.E.

Bank Melli
Mohd-Habib Building,
Al Fahidi Street,  P O Box 3093
Bur Dubai, Dubai,
U.A.E.

Bank Melli
P O Box 459
Al Bory Street
Sharjah, U.A.E.

Bank Melli
P O Box 5643
Mossa Abdul Rehman Hassan Bldng
238 Al Burj Street, Ruwi
Muscat, Oman

Bank Refah Kargaran
Moffetah No. 125
P O Box 15815 1866
Tehran, Iran

Bank Saderat Iran
Hamdam Street, Airport Road
Intersection,
P O Box 700
Abu Dhabi, U.A.E.

Bank Saderat Iran
3rd Floor Dom Dasaf Building
Mejloka Street 7A
Ashkhabad, Turkmenistan

Bank Saderat Iran
106 Government Road
P O Box 825
Manama Town 316, Bahrain

Bank Saderat Iran
28 Sherif Street
P O Box 462
Cairo, Egypt

Bank Saderat Iran
Bazar Murshid
P O Box 4182
Deira, Dubai, U.A.E.

Bank Saderat Iran
Wilheim Leuschner Strasse 41
P O Box 160151,
W-6000 Frankfurt am Main
Germany

Bank Melli
P O Box 248
Fujairah, U.A.E.

Bank Melli
P O Box 785, Government Road,
Shaikh Mubarak Building
Manama, Bahrain

Bank of Industry and Mine of Iran
Hafez Avenue
P O Box 11365/4978
Tehran, Iran

Workers Welfare Bank of Iran
Moffetah No. 125
P O Box 15815 1866
Tehran, Iran

Bank Saderat Iran
Al-Am Road,
P O Box 1140
Al Ein, Abu Dhabi, U.A.E.

Bank Saderat Iran
25-29 Panepistimiou Street
P O Box 4308, GR 10210
Athens, 10672, Greece

Bank Saderat Iran
Hamra Pavillion Street
Sawagh and Daaboul Building, 1st Fl.
P O Box 113-6717
Beirut, Lenanon

Bank Saderat Iran
Old Ben-Ghanem Street
P O Box 2256
Doha, Qatar

Bank Saderat Iran
Alfahid Road
P O Box 4182
Bur Dubai, Dubai
U.A.E.

Bank Saderat Iran
P O Box 112227, Hopfenhof Passage
Kleiner Bustah 6-10
W-2000 Hamburg 11, Germany

Bank Melli
Sam Sagar Building Oman Street
Al-Nakheel
P O Box 5270
Ras-Al Khaimah, U.A.E.

Bank Melli
P O Box 23309, Shaikh Salman Street
Road No. 1129
Muharraq 211, Bahrain

Bank Sanat Va Madan
Hafez Avenue
P O Box 11365/4978
Tehran, Iran

Bank Saderat Iran
Bank Saderat Tower
P O Box 15745-631
Somayeh Street
Tehran, Iran

Bank Saderat Iran
Liwara Street
P O Box 16
Ajman, U.A.E.

Bank Saderat Iran
Imam Ali Street, Sahat Yaghi
Ras Elain-Alektisad Building
2nd Floor
Baalbeck, Lebanon

Bank Saderat Iran
Alghobairi Boulevard
Beirut, Lebanon

Bank Saderat Iran
Almaktoum Road
P O Box 4182
Deira, Dubai, U.A.E.

Bank Saderat Iran
Sherea Shekikh Zayad Street
P O Box 55
Fujairah, U.A.E.

Bank Saderat Iran
Lothbury, London
EC2R 7HD
England

Bank Saderat Iran
707 Wilshire Boulevard, Suite 4880
Los Angeles, California 90017

Bank Saderat Iran
55 East 59th Street, 16th Floor
New York, NY 10022

Bank Saderat Iran
P O Box 4269
Mutrah, Muscat, Oman

Bank Saderat Iran
16 rue de la Paix, Paris 2eme
75002 Paris, France

Bank Saderat Iran
Alaroba Road
P O Box 316
Sharjah, U.A.E.

Bank Sepah
Eman Khomeini Square
P O Box 11364
Tehran, Iran

Bank Sepah
Muenchener Strasse 49
P O Box 10 03 47
W-6000 Frankfurt am Main1
Germany

Bank Sepah
5/7 Eastcheap
EC3M 1JT
London, England

Bank Sepah
650 Fifth Avenue
New York, NY 10019

Bank Sepah
17 Place Vendome
75001 Paris, France

Bank Sepah
Via Barberini 50
00187 Rome, Italy

Bank Sepah
Ufficio di Rappresentan Za,
Via Ugo Foscolo 1,
20121 Milan Italy

Bank Tejarat
130 Taleghani Avenue, Nejatoullahie
P O Box 11365-5416
Tehran, Iran

Bank Tejarat
6/8 Clements Lane, London
EC4N 7AP
England

Bank Tejarat
44 Avenue des Champs Elysses
75008 Paris, France

Deutsch-Iranische Handelsbank AG
Depenau 2, W-2000 Hamburg 1
Germany

Europaeisch-Iranische Handelsbank
AG
Depenau 2, W-2000 Hamburg 1
Germany

Deutsch-Iranische Handelsbank AG
23 Argentine Square, Beihaghi
Bulvard
P O Box 15815/1787
Tehran 15148, Iran

Europaeisch-Iranische Handelsbank
AG
23 Argentine Square, Beihaghi
Bulvard,    P O Box 15815/1787
Tehran 15148, Iran

Housing Bank of Iran
Ferdowsi St
Tehran, Iran

Bank Maskan
Ferdowsi St
Tehran, Iran

Iran Overseas Investment Bank
Limited
120 Moorgate, London
EC2M 6TS,
England

Iran Overseas Investment Corporation
Limited
120 Moorgate, London
EC2M 6TS,
England

Iran Overseas Investment Bank
Limited
1137 Avenue Vali Asr off Park-e-SAll
P O Box 15115/531
Tehran, Iran

Iran Overseas Investment Bank
Limited
Suite 3c Olympia House
61/63 Dame Street
Dublin 2, Ireland

Iran Overseas Investment Bank
Limited
Improgetti, Via Germanico 24
00192 Rome, Italy

Iran Overseas Trading Company
Limited
120 Moorgate, London
EC2M 6TS, England

The Central Bank of Iran
Ferdowsi Avenue
P O Box 11365-8551
Tehran, Iran

Bank Markazi Jomhouri Islami Iran
Ferdowsi Avenue
P O Box 11365-8551
Tehran, Iran

National Iranian Oil Company

Hafez Crossing - Taleghani Avenue -
Tehran Iran

Dbt f !2;12.dw131: 5.SDM!!!!Epdvn f ou436.4!!!!!!Gjrfe!17@2@3119!!!!!Qbhf !22!pg22

FEB-27-2008 WED 11:53 AM                           FAX NO.                              P. 13

National Iranian Gas Export Company

No. 218, Khoramshahr St., Sohravardi
Ave., Tehran, IRAN

National Iranian Central Oil Fields Co.

Po Box:1968656193 - No.22 -
Esfandyar Alley - Vali-e-asr Ave

Tehran, Iran

Pars Oil and Gas Company

No.133 - Side of Parvin Etesami Alley -
Opposite of Sazman Ab - Dr. Fatemi Ave.
Tehran, Iran

National Iranian Drilling Company

Jasco Bldg. - Yaghma Alley - Side of
Aluminium Bldg. - Jomhouri Ave.
Tehran, Iran

Ahwaz Pipe Mills Company

5th Floor, Sepahan Building, Ahmad Ghasir
Street, Shahid Beheshti Avenue
Tehran, Iran

National Iranian Tanker Company

No.65, Shahid Atefi Street, Africa
Expressway

Tehran, Iran

Kala Naft Canada Ltd.
1102 Dome Tower
333- 7ᵗʰ Avenue S.W.
Calgary, Alberta, Canada
Tzp 2z1

National Iranian South Oil Company
Fadaeyane Islam St. - Panj Tabagheh
Bldg. - Block 2 - NISOC Central
Building.,
Tehran, Iran

Khazar Exploration & Production Co.

No.19 – 11th Alley - Vozara Ave. -
Arjantin sq.
Tehran, Iran

Pars Special Economic Energy Zone Co.

No.35 - Negar Alley - Cross Vanak sq. -
Vali-e-asr Ave.

Tehran, Iran

North Drilling Company

Floor 1 No.17 Beihaghi Blv. Arjantin Sq.

Tehran, Iran

Petropars

No. 35, Farhang Blvd., Saadat Abad,
Tehran, Iran

Exploration Service Company

No. 197, Taleqani Ave., Tehran, Iran

Arvandan Oil and Gas Company

Khamenei Ave. -

Khoramshahr - Iran

National Iranian Offshore Oil
Company
Khakzad Bldg. - Khakzad Alley -
Parkway Crossroads - Vali-e-asr Ave.
Tehran, Iran

Petroleum Engineering &Development
Co.
No.21 - Shahid Kalantari Alley - Ostad
Nejatollahi Ave. Karimkhane Zand Ave.

Tehran, Iran

National Iranian Oil Terminals Company

No. 88 - Hodjat Soori Alley - 7th Misaq -
Pasdaran Ave.
Tehran, Iran

PetroIran Development Company

No.22 - 7th Street - Khaled Eslamboli
Street

Tehran, Iran

Fuel Consumption Optimization Co.

#16.1 , East Daneshvar St. , North Shiraz
Blvd. , Molasadra Ave. , Vanak Sqr. ,
Tehran-Iran

Kala Naft London Ltd.
KALA LIMITED,
NIOC House,
4, Victoria Street,
LONDON. SW1H 0NE

Ministry of Petroluem (Oil)
Tehran, Iran



**U.S. Department of Justice**
Civil Division

Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530

Lesley Farby                                      Tel: 202.514.3481
Trial Attorney                                     Fax: 202.616.8470

March 26, 2008

VIA FEDERAL EXPRESS

David J. Cook, Esq.
Cook Collection Attorneys, PLC
165 Fell Street
San Francisco, CA 94102

     Re:    Deborah D. Peterson, et al. v. Islamic Republic of Iran, et al., Case No. 01-cv-
            02094

Dear Mr. Cook:

     I represent the Office of Foreign Assets Control (OFAC), a component of the U.S.
Department of the Treasury, with respect to the subpoena addressed to OFAC, dated March 10,
2008. The subpoena, a copy of which OFAC received on March 12, 2008, commands OFAC to
produce and permit the inspection of certain documents by April 10, 2008. This letter sets forth
OFAC's objections to the subpoena.

     First, any response by OFAC to the subpoena is subject to the regulations found at 31
C.F.R. §§ 1.8-1.12 (commonly known as "Touhy regulations," issued in accordance with United
States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951)). The subpoena you provided has failed to
comply with those regulations in several ways, as set forth below, and therefore OFAC has not
authorized release of any documents requested in this subpoena. Second, OFAC objects to this
subpoena pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure as noted below.

1.     31 C.F.R. § 1.11(d)(3)(i) - Affidavit Required

     Pursuant to 31 C.F.R. § 1.11(d)(3)(i), in cases in which the United States or the Treasury
Department is not a party, as is the case here, the litigant requesting production of documents
must submit an affidavit (or statement if an affidavit is not feasible) in order to obtain a decision
as to whether such production will be authorized. The affidavit must provide the following
information:

    i.     the title of the legal proceeding, the forum,

    ii.    the requestor's interest in the legal proceeding,

    iii.   the reason for the subpoena, and

    iv.   a showing that other evidence reasonably suited to the requester's needs is not available from any other source.

31 C.F.R. § 1.11(d)(3)(i).  No such affidavit was submitted.  Permission to produce documents will "be limited to the information set forth in the affidavit or statement, or to such portions thereof as may be deemed proper." *Id.*

## 2.   31 C.F.R. § 1.11(e)(1)(vi) – The Requestor Must Show that Any Potentially Responsive Documents are Unavailable From Another Source

The requestor's ability to demonstrate that the requested documents are unavailable from other sources, including public sources, is a factor in determining whether the request is unduly burdensome, section 1.11(e)(1)(vi).  In the case of the instant subpoena, this factor is of particular significance.

Eight of the litigant's requests are grounded in the claim resolution proceedings before the Iran-U.S. Claim Tribunal ("Tribunal").  However, OFAC does not represent the United States before the Tribunal, otherwise participate in the Tribunal proceedings, or even monitor the proceedings.  Although the assets underlying the Tribunal proceedings were subject to an OFAC-administered blocking program from 1979 to 1981, that background fact does not establish that OFAC has any familiarity with the Tribunal proceedings, or any reason to have in its possession the requested Tribunal-related documents.  However, requests nos. 1, 2, 3(A) through (D), and 7(A) and (D) require that the respondent have knowledge of the subject matter of the Tribunal proceedings, and cannot be processed without such knowledge.  OFAC does not have the requisite knowledge.  As the following examples make clear, familiarity with, and knowledge of, the substance of the Tribunal proceedings is required in order to attempt to identify responsive documents:

    i.     A list of all assets that are "the subject matter of one or more claims through the Iran-U.S. Claims Tribunal, hereinafter 'IUSCT.'" (Request 1).

    ii.    A list of all assets "in which the United States is obligated to pay to Iran the reasonable value thereof, mandated by the IUSCT in any decision, award, full or partial award, order, judgment or decree." (Request 2).

    iii.   Documents "which are the subject to the following proceedings and all proceedings which are generally or partially related to the case or case numbers, listed below:" (listing seven cases).  (Request 3).

    iv.   Documents relating to the holders of all property of Iran which Iran claims that the United States has control, possession or dominion thereof, and which is the subject of any claims, counterclaims, proceeding, award, judgment, pending in the Iran-U.S. Claims Tribunal. (Request 7(A)).

2

    v.    "All property of Iran consisting of military and duel [sic] use property arising from Foreign Military Sales Accounts." (Request 7(D)).

Even were OFAC able to identify any documents potentially responsive to these requests, OFAC would thereafter need to refer the documents to the agency representing the United States at the Tribunal proceedings to give it the opportunity to identify and/or assert any applicable privilege. This fact further underscores that plaintiffs' demand for Tribunal-related documents is not appropriately addressed to OFAC.

In addition to establishing that the Tribunal-related documents are not available from sources other than OFAC, the requestor must make a similar showing as to Request 5, which makes demand for documents relating to an accounting "from 1981 to date hereof," of the Foreign Military Sales Account (FMSA) "maintained by the United States." OFAC is not "the United States;" nor is it responsible for maintaining any accounts of the FMSA.

3.    <u>Fed. R. Civ. P. 45(c)(3)(A)(iv); 31 C.F.R. § 1.11(e) – The Subpoena is Unduly Burdensome and Overly Broad</u>

The subpoena is unduly burdensome and overly broad. *See* Section 1.11(e). *See also* Fed. R. Civ. P. 45(c)(3)(A)(iv), which provides that a court "must quash or modify" a subpoena if it "subjects a person to undue burden."

Iran has been the subject of different sanction regimes administered by OFAC dating back to the President's declaration of a national emergency in 1979, in response to the Iranian hostage crisis. Because the requestor has failed to limit its request to any period of time, the subpoena arguably requires OFAC to review documents generated over a period of 29 years. Any such search would subject the agency to an unreasonable burden, and the requestor's inclusion of overly broad requests, such as, but not limited to, the "catch-all" demands of Request 7(E) and Request 8 would have a highly detrimental impact on OFAC's ability to conduct its regular business.

OFAC further objects that your requests are vague and overbroad to the extent that you have embedded incorrect, overstated, argumentative, and/or premature legal conclusions and propositions within your requests. For example, you request a "list of all assets . . . in which the United States was obligated to freeze, sequester, hold or block under the Algiers Accord.[]" (Request 1), and assert certain legal obligations of the United States (Request 2).

Moreover, most, if not all, of any potentially responsive documents are likely to be subject to assertions of privilege and/or statutory confidentiality requirements. For example, the requested financial information, if any, may have been provided by financial institutions with the express understanding that the information would be kept confidential. <u>See</u> 31 C.F.R. § 501.603; 31 C.F.R. § 1.11(e)(2)(iv) & (vi). Confidential business and/or financial information may be protected from release by the Trade Secrets Act, 18 U.S.C. § 1905, a criminal statute. Under the

Trade Secrets Act, OFAC may disclose protected information only if authorized to do so by law. See id.; 31 C.F.R. § 1.11(e)(2)(i).

In addition to the probable applicability of privileges such as the deliberative process privilege and the attorney-client privilege, certain documents may be protected from disclosure because of foreign policy or national security concerns. Section 1.11(a)(3)(ii). The implementation of any sanctions regime is always predicated on a presidential determination that the national security, foreign policy, or economy of the United States is threatened, and often leads to the creation of documents by other components of the Executive Branch. Some of the documents the requestor seeks may be in this category. OFAC would likely to have to consult with, or refer documents to, other components of the Executive Branch to allow them to identify applicable privileges prior to production.

Insofar as Request 4 and other requests may seek information regarding the non-blocked asset data reported in the Terrorist Assets Report (TAR), such information is reported pursuant to statutes that have stringent prohibitions on disclosure, see, e.g., the International Investment and Trade in Services Survey Act of 1976, 22 U.S.C. 3101, et seq., and the Bretton Woods Agreements Act.

The burden of responding to the requestor's unreasonable demands is further underscored by the cumulative impact that any required production would have on OFAC. OFAC has received several subpoenas in the past few weeks seeking information about the assets of a terrorist state. These demands have already affected the agency's ability to conduct business as normal, and the possibility of additional information demands from at least 30 parties known to hold judgments against terrorist states, see CRS Report, dated December 17, 2007, would have a crippling effect. See Section 1.11(e)(iv).

4. Fed. R. Civ. P. 45(3)(A)(i)– Time for Compliance Unreasonable

In light of the breadth of the request for documents, the 29-year time period covered, the convoluted manner in which the requests are drafted, the requestor's failure to define its terms, and the likely need to refer documents to other agencies for identification and/or assertion of privilege, and other reasons stated above, the subpoena's production date of April 10, 2008, "fails to allow reasonable time to comply." Fed. R. Civ. P. 45(3)(A)(i).

The foregoing objections are not exclusive, and we reserve the right to assert further objections in response to the subpoena as appropriate. As noted above, OFAC maintains its objections to the third party subpoena. Therefore, no OFAC employee will produce the requested documents at the date, time and place specified in the subpoena.

4

If you have questions, please do not hesitate to contact me or my colleague Hannah
Chanoine.  I may be reached at (202) 514-3481 or by email at lesley.farby@usdoj.gov, and Ms.
Chanoine may be reached at (202) 305-2318 or hannah.chanoine@usdoj.gov.

Sincerely,

Lesley Farby
Trial Attorney
Federal Programs Branch

5

U.S. Department of Justice
Civil Division

| First Class Mail | Courier Delivery |
|---|---|
| P.O. Box 883 | Room 7340 |
| Washington, DC 20044 | 20 Massachusetts Avenue, NW, |
| | Washington, DC 20001 |

Hannah Y.S. Chanoine
Trial Attorney

| Telephone | (202) 305-2318 |
|---|---|
| Fax | (202) 616-8202 |
| Email | Hannah.Chanoine@usdoj.gov |

March 20, 2008

## VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

David Cook, Esq.
Cook Collection Attorneys
A Professional Law Corporation
333 Pine St, Ste 300
San Francisco, CA 94104-3381


Re:    Greenbaum v. Islamic Republic of Iran, 02-cv-2148 Response to OFAC Subpoena

Dear Mr. Cook:

I represent the Office of Foreign Assets Control (OFAC), a component of the U.S. Department of the Treasury, with respect to the subpoena addressed to OFAC, dated February 27, 2008. The subpoena, a copy of which OFAC received on February 28, 2007, commands OFAC to produce and permit the inspection of certain documents by March 28, 2008. This letter sets forth OFAC's objections to the subpoena.

First, any response by OFAC to the subpoena is subject to the regulations found at 31 C.F.R. §§ 1.8-1.12 (commonly known as "Touhy regulations," issued in accordance with United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951)). The subpoena you provided has failed to comply with those regulations in several ways, as set forth below, and therefore OFAC has not authorized release of any documents requested in this subpoena. Second, pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, OFAC objects to this subpoena pursuant to as noted below.

1.    Fed. R. Civ. P. 45(b)(1); 31 C.F.R. § 1.11(d) – Service

Your attempted service of this subpoena by facsimile on February 27, 2008 failed to comply with the requirements of Rule 45 of the Federal Rules of Civil Procedure. Rule 45 requires that service to a non-party be accomplished by "delivering a copy thereof to such person." Fed. R. Civ. P. 45(b)(1). Most courts, including the D.C. Circuit, have interpreted Rule 45's delivery requirement to mean personal service. See Federal Trade Commission v. Compagnie De Saint-Gobain-Pont-A-Mousson, 636 F.2d 1300, 1312-13 (D.C. Cir. 1980) (Rule

45 does not permit any form of mail service); Wright & Miller, 9A Fed. Prac. & Proc. Civ. 2d. 2454. The Treasury Department's procedure for the personal service of subpoenas requires hand delivery of subpoenas to one of a number of attorneys from its Office of the General Counsel. The address at which service must be made is as follows:

> Office of the General Counsel
> Department of the Treasury
> 1500 Pennsylvania Ave., NW
> Washington, DC 20220

This hand delivery generally is accomplished by a phone call to the Office of the General Counsel, at (202) 622-1194, prior to the time subpoenas are served so that the person serving the subpoena and a Treasury attorney can arrange an appropriate time to meet at the Treasury Department's security perimeter.

2.      31 C.F.R. § 1.11(d)(3)(i) - Affidavit Required

Pursuant to section 31 C.F.R. § 1.11(d)(3)(i), in court cases in which the United States or the Treasury Department is not a party, as is the case here, the litigant requesting a production of documents must submit an affidavit (or statement if an affidavit is not feasible) in order to obtain a decision as to whether such production will be authorized, which you have failed to do. The affidavit must provide the following information:

> i.      the title of the legal proceeding and forum,
> ii.     the requestor's interest in the legal proceeding,
> iii.    the reason for the subpoena, and
> iv.     a showing that other evidence reasonably suited to the requester's needs is not available from any other source.

31 C.F.R. § 1.11(d)(3)(i). Permission to produce documents will "be limited to the information set forth in the affidavit or statement, or to such portions thereof as may be deemed proper." *Id.*

3.      31 C.F.R. § 1.11(e)(1)(vi) – The Requestor Must Show that Any Potentially Responsive Documents are Unavailable From Another Source

The requestor's ability to demonstrate that the requested documents are unavailable from other sources, including public sources, is a factor in determining whether the request is unduly burdensome, section 1.11(e)(1)(vi). In the case of the instant subpoena, this factor is of particular significance.

Eight of the litigant's requests are grounded in the claim resolution proceedings before the Iran-U.S. Claim Tribunal ("Tribunal"). However, OFAC does not represent the United States before the Tribunal, otherwise participate in the Tribunal proceedings, or monitor the proceedings. Although the assets underlying the Tribunal proceedings were subject to an OFAC-administered blocking program from 1979 to 1981, that background fact does not establish that

OFAC has any familiarity with the Tribunal proceedings, or any reason to have in its possession the requested Tribunal-related documents. Requests nos. 1, 2, 3(A) through (D), and 7(A) and (D) require that the respondent have knowledge of the subject matter of the Tribunal proceedings, and cannot be processed without such knowledge. OFAC does not have the requisite knowledge. As the following examples make clear, familiarity with, and knowledge of, the substance of the Tribunal proceedings is required in order to attempt to identify responsive documents:

   i.  A list of all assets that are "the subject matter of one or more claims through the Iran-U.S. Claims Tribunal, hereinafter 'IUSCT.'" (Request 1).

   ii.  A list of all assets "in which the United States is obligated to pay to Iran the reasonable value thereof, mandated by the IUSCT in any decision, award, full or partial award, order, judgment or decree." (Request 2).

   iii.  Documents "which are the subject to the following proceedings and all proceedings which are generally or partially related the case or case numbers, listed below:" (listing seven cases). (Request 3).

   iv.  Documents relating to the holders of all property of Iran which Iran claims that the United States has control, possession or dominion thereof, and which is the subject of any claims, counterclaims, proceeding, award, judgment, pending in the Iran-U.S. Claims Tribunal. (Request 7(A)).

   v.  "All property of Iran consisting of military and duel [*sic*] use property arising from Foreign Military Sales Accounts." (Request 7(D)).

Even were OFAC able to identify any documents potentially responsive to these requests, OFAC would thereafter need to refer the documents to the agency representing the United States at the Tribunal proceedings to give it the opportunity to identify, and/or, assert, any applicable privilege. This fact further underscores that plaintiff's demand for Tribunal-related documents is not appropriately addressed to OFAC.

In addition to establishing that the Tribunal-related documents are not available from sources other than OFAC, the requestor must make a similar showing as to Request 4, which makes demand for documents relating to an accounting "from 1981 to date hereof," of the Foreign Military Sales Account (FMSA) "maintained by the United States." OFAC is not "the United States;" nor is it responsible for maintaining any accounts of the FMSA.

4.  <u>Fed. R. Civ. P. 45(c)(3)(A)(iv); 31 C.F.R. § 1.11(e) – The Subpoena is Unduly Burdensome and Overly Broad</u>

The subpoena is unduly burdensome and overly broad. *See* Section 1.11(e). *See also* Fed. R. Civ. P. 45(c)(3)(A)(iv), which provides that a court "shall" quash a subpoena if it "subjects a person to undue burden."

Iran has been the subject of different sanction regimes administered by OFAC dating back to the President's declaration of a national emergency in 1979, in response to the Iranian hostage

crisis. Because the requestor has failed to limit its request to any period of time, the subpoena arguably requires OFAC to review documents generated over a period of 29 years. Any such search would subject the agency to an unreasonable burden, and the requestor's inclusion of overly broad requests, such as, but not limited to, the "catch-all" demands of Request 7(E) and Request 8 would have a highly detrimental impact on OFAC's ability to conduct its regular business.

OFAC further objects that your requests are vague and overbroad to the extent that you have embedded incorrect, overstated, argumentative, and/or premature legal conclusions and propositions within your requests. For example, you request a "list of all assets . . . in which the United States was obligated to freeze, sequester, hold or block under the Algiers Accord[.]" (Request 1), and assert certain legal obligations of the United States (Request 2).

Moreover, most, if not all, of any potentially responsive documents are likely to be subject to assertions of privilege and/or statutory confidentiality requirements. For example, the requested financial information, if any, may have been provided by financial institutions with the express understanding that the information would be kept confidential. See 31 C.F.R. § 501.603; 31 C.F.R. § 1.11(e)(2)(iv) & (vi). Confidential business and/or financial information may be protected from release by the Trade Secrets Act, 18 U.S.C. § 1905, a criminal statute. Under the Trade Secrets Act, OFAC may disclose protected information only if authorized to do so by law. See id.; 31 C.F.R. § 1.11(e)(2)(i).

In addition to the probable applicability of privileges such as the deliberative process privilege and the attorney-client privilege, certain documents may be protected from disclosure because of foreign policy or national security concerns. Section 1.11(a)(3)(ii). The implementation of any sanctions regime is always predicated on a presidential determination that the national security, foreign policy, or economy of the United States is threatened, and often leads to the creation of documents by other components of the Executive Branch. Some of the documents the requestor seeks may be in this category. OFAC would likely have to consult with, or refer documents to, other components of the Executive Branch to allow them to identify applicable privileges prior to production.

Insofar as Request 4 and other requests may seek information regarding the non-blocked asset data reported in the Terrorist Assets Report (TAR), such information is reported pursuant to statutes that have stringent prohibitions on disclosure, see, e.g, the International Investment and Trade in Services Survey Act of 1976, 22 U.S.C. 3101, et seq., and the Bretton Woods Agreements Act.

The burden of responding to the requestor's unreasonable demands is further underscored by the cumulative impact that any required production would have on OFAC. OFAC has received several subpoenas in the past few weeks seeking information about the assets of sanctions targets. These demands have already affected the agency's ability to conduct business as normal, and the possibility of additional information demands from at least 30 parties known

-4-

to hold judgments against sanctions targets, *see* CRS Report, dated December 17, 2007, would have a crippling effect. *See* Section 1.11(e)(iv).

To the extent that you may be seeking information in connection with the motions currently pending before Judge Feess in the Central District of California, or with anticipated motions raising similar legal theories, OFAC objects on burdensomeness grounds that to allocate the significant resources required to respond to your requests would be simply premature. As you are aware, the United States has notified that Court that it is currently considering whether or not to participate in the litigation, and its intention to advise that Court by May 5, 2008, of any such participation. Accordingly, that Court has continued the hearing on your motions until May 19, 2008. Should that Court (or subsequent appellate courts) ultimately disagree with the legal bases for your motions, which appear to raise new legal theories, then OFAC will have been unduly burdened by allocating resources to responding to this subpoena for naught.

5. Fed. R. Civ. P. 45(3)(A)(i)– Time for Compliance Unreasonable

In light of the breadth of the request for documents, the 29-year time period covered, the convoluted manner in which the requests are drafted, the requestor's failure to define its terms, and the likely need to refer documents to other agencies for identification and/or assertion of privilege, and other reasons stated above, the subpoena's production date of March 28, 2008, "fails to allow reasonable time for compliance." Fed. R. Civ. P. 45(3)(A)(i).

The foregoing objections are not exclusive, and we reserve the right to assert further objections in response to the subpoena as appropriate. As noted above, OFAC maintains its objections to the third party subpoena. Therefore, no OFAC employee will produce the requested documents at the date, time and place specified in the subpoena.

If you have questions, please do not hesitate to contact me. I may be reached at (202) 305-2318 or by email at hannah.chanoine@usdoj.gov.

Sincerely,

Hannah Chanoine

Trial Attorney
Federal Programs Branch

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON. et al.,<br><br>    Plaintiffs.<br><br>          v.<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No. 01-2094 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |
| STEVEN GREENBAUM. et al.,<br><br>    Plaintiffs,<br><br>          v.<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No. 02-2148 (RCL)<br>)<br>)<br>)<br>)<br>) |

## [JOINT PROPOSED] PROTECTIVE ORDER

Based upon the Court's consideration of this matter. including the Rule 45 Third-Party subpoenas issued by plaintiffs in the above-referenced cases, and the Department of the Treasury's Office of Foreign Assets Control's ("OFAC") Unopposed Emergency Motion concerning those subpoenas (Docket No. ___). it is hereby ordered that:

1.       OFAC is authorized. pursuant to the terms set forth herein. to disclose information responsive to the subpoenas issued by the plaintiffs in the above-referenced cases on February 27. 2008, and March 10. 2008.

2.      All information produced in response to the Subpoena, and any portion thereof, is

to be deemed confidential ("Confidential Information"), unless plaintiffs are otherwise advised

by OFAC.

3.      Confidential Information may be used only for the purpose of attempting to

collect upon the judgment entered in the above-captioned matters ("the Greenbaum/Peterson

Litigation"), pursuant to procedures authorized by law, and for no other purpose.

4.      No person shall be permitted to have access to Confidential Information, nor shall

any person be informed of the substance of the Confidential Information by any person permitted

to have access thereto, except as provided in this Order, as otherwise agreed upon by the parties

to the Greenbaum/Peterson Litigation and OFAC in writing, or by order of the Court.

5.      Confidential Information shall not be disclosed or distributed to any person or

entity other than the following:

> a.      the attorneys (including their paralegal, clerical, or other assistants) for
> parties to the Greenbaum/Peterson Litigation or in any proceedings incident to
> efforts to collect on the judgments entered therein who have a need therefore in
> connection with said proceedings;
>
> b.      the courts and their support personnel in the Greenbaum/Peterson
> Litigation and in any proceedings incident to efforts to collect on the judgments
> entered therein;
>
> c.      persons and entities and their counsel served with writs of attachment or
> other legal process incident to efforts to collect on the judgments entered in the
> Greenbaum/Peterson Litigation or those  holding assets identified in the
> Confidential Information;
>
> d.      local or federal law enforcement personnel involved in any legal
> proceedings incident to efforts to collect on the judgments entered in the
> Greenbaum/Peterson Litigation; and
>
> e.      any other person to whom disclosure is required in order to pursue
> proceedings incident to efforts to collect on the judgments entered in the
> Greenbaum/Peterson Litigation, pursuant to procedures authorized by law.

6.      To the extent that Confidential Information is disclosed to persons as described in subparagraphs 5(c)-(e), only those portions of the Confidential Information that are necessary for each specific proceeding incident to efforts to collect on the judgments or that relate to the specific assets at issue shall be disclosed to such persons.  All persons described in subparagraphs 5(a)-(e) above shall be provided with a copy of this Protective Order and restricted to using Confidential Information only for purposes directly related to the satisfaction of judgments issued in the Greenbaum/Peterson Litigation and not for any other litigation or proceeding or for any business, commercial, competitive, personal or other purpose. Photocopies of documents containing Confidential Information shall be made only to the extent necessary to facilitate the permitted use hereunder.

7.      Confidential Information shall not be disclosed to any person or persons described under subparagraph 5(e) unless and until such person has been shown this Protective Order and has agreed in writing to be bound by its terms, by signing a copy of the attached Acknowledgment form.  A copy of each executed Acknowledgment shall be kept by counsel for the party on behalf of whom disclosure is made pursuant to subparagraph 5(e).

8.      The termination of the Greenbaum/Peterson Litigation or any proceeding incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation shall not relieve any person or party provided Confidential Information of his, her, or its obligations under this Order.

9.      All Confidential Information that is filed with any court, and any pleadings, motions, exhibits, or other papers filed with the court, referencing or containing Confidential Information, shall be filed under seal and kept under seal until further order of the Court.

10.     Within sixty (60) days of the resolution of the last proceeding incident to efforts to collect on the judgments entered in the <u>Greenbaum</u>/<u>Peterson</u> Litigation by settlement or final judgment, and the termination of any appeals therefrom, all Confidential Information, and copies thereof, shall be promptly destroyed, provided that counsel may retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Confidential Information Subject to Protective Order," and to which shall be attached a copy of this Order.

11.     The provisions of this Order restricting the use and disclosure of Confidential Information shall not apply to documents or other information which were, are, or become public knowledge not in violation of this Order.

12.     Entry of this Order constitutes only a determination that OFAC is authorized to disclose information as provided herein under the Trade Secrets Act. Entry of this Order does not constitute a determination as to any right, privilege, or immunity OFAC may have with respect to plaintiffs' subpoenas, or as to any objection(s) OFAC may have to plaintiffs' subpoenas. OFAC's disclosure of information pursuant to this Order shall not constitute a waiver of any right, privilege, or immunity OFAC may have with respect to such information.

13.     Entry of this Order shall not prohibit the United States or any agency, department, officer, or employee thereof, from using or disclosing Confidential Information for any other purposes authorized or allowed by law.

IT IS SO ORDERED, this _____ of _____ 2008.


_____
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEBORAH D. PETERSON, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 01-2094 (RCL) |
| STEVEN GREENBAUM, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 02-2148 (RCL) |

## ACKNOWLEDGMENT OF PROTECTIVE ORDER

The undersigned hereby declares under penalty of perjury that he or she has read the Protective Order entered in the United States District Court for the District of Columbia in the above-captioned actions, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any Confidential Information made available to him or her other than in strict compliance with the Order. The undersigned acknowledges that his or her duties under the Order shall survive termination of this case and are permanently binding and that failure to comply with the terms of the Order may result in the imposition of sanctions by the Court.

_____

[signature]

_____

[print name]

DATED: _____

# EXHIBIT "B"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 01-2094 (RCL) |
| v. | ) |
| | ) |
| THE ISLAMIC REPUBLIC OF IRAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| STEVEN GREENBAUM, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 02-2148 (RCL) |
| v. | ) |
| | ) |
| THE ISLAMIC REPUBLIC OF IRAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PROTECTIVE ORDER

Based upon the Court's consideration of this matter, including the Rule 45 Third-Party

subpoenas issued by plaintiffs in the above-referenced cases, and the Department of the

Treasury's Office of Foreign Assets Control's ("OFAC") Unopposed Emergency Motion

concerning those subpoenas (Docket No. 325), it is hereby ordered that:

1.    OFAC is authorized, pursuant to the terms set forth herein, to disclose

information responsive to the subpoenas issued by the plaintiffs in the above-referenced cases on

February 27, 2008, and March 10, 2008.

EXHIBIT  B

2.      All information produced in response to the Subpoena. and any portion thereof. is

to be deemed confidential ("Confidential Information"). unless plaintiffs are otherwise advised

by OFAC.

3.      Confidential Information may be used only for the purpose of attempting to

collect upon the judgment entered in the above-captioned matters ("the Greenbaum/Peterson

Litigation"). pursuant to procedures authorized by law. and for no other purpose.

4.      No person shall be permitted to have access to Confidential Information, nor shall

any person be informed of the substance of the Confidential Information by any person permitted

to have access thereto. except as provided in this Order, as otherwise agreed upon by the parties

to the Greenbaum/Peterson Litigation and OFAC in writing, or by order of the Court.

5.      Confidential Information shall not be disclosed or distributed to any person or

entity other than the following:

> a.      the attorneys (including their paralegal. clerical. or other assistants) for
> parties to the Greenbaum/Peterson Litigation or in any proceedings incident to
> efforts to collect on the judgments entered therein who have a need therefore in
> connection with said proceedings;
>
> b.      the courts and their support personnel in the Greenbaum/Peterson
> Litigation and in any proceedings incident to efforts to collect on the judgments
> entered therein;
>
> c.      persons and entities and their counsel served with writs of attachment or
> other legal process incident to efforts to collect on the judgments entered in the
> Greenbaum/Peterson Litigation or those  holding assets identified in the
> Confidential Information;
>
> d.      local or federal law enforcement personnel involved in any legal
> proceedings incident to efforts to collect on the judgments entered in the
> Greenbaum/Peterson Litigation: and
>
> e.      any other person to whom disclosure is required in order to pursue
> proceedings incident to efforts to collect on the judgments entered in the
> Greenbaum/Peterson Litigation. pursuant to procedures authorized by law.

6.     To the extent that Confidential Information is disclosed to persons as described in subparagraphs 5(c)-(e), only those portions of the Confidential Information that are necessary for each specific proceeding incident to efforts to collect on the judgments or that relate to the specific assets at issue shall be disclosed to such persons.  All persons described in subparagraphs 5(a)-(e) above shall be provided with a copy of this Protective Order and restricted to using Confidential Information only for purposes directly related to the satisfaction of judgments issued in the Greenbaum/Peterson Litigation and not for any other litigation or proceeding or for any business, commercial, competitive, personal or other purpose.  Photocopies of documents containing Confidential Information shall be made only to the extent necessary to facilitate the permitted use hereunder.

7.     Confidential Information shall not be disclosed to any person or persons described under subparagraph 5(e) unless and until such person has been shown this Protective Order and has agreed in writing to be bound by its terms, by signing a copy of the attached Acknowledgment form.  A copy of each executed Acknowledgment shall be kept by counsel for the party on behalf of whom disclosure is made pursuant to subparagraph 5(e).

8.     The termination of the Greenbaum/Peterson Litigation or any proceeding incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation shall not relieve any person or party provided Confidential Information of his, her, or its obligations under this Order.

9.     All Confidential Information that is filed with any court, and any pleadings, motions, exhibits, or other papers filed with the court, referencing or containing Confidential Information, shall be filed under seal and kept under seal until further order of the Court.

10.     Within sixty (60) days of the resolution of the last proceeding incident to efforts to collect on the judgments entered in the Greenbaum/Peterson Litigation by settlement or final judgment, and the termination of any appeals therefrom, all Confidential Information, and copies thereof, shall be promptly destroyed, provided that counsel may retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Confidential Information Subject to Protective Order," and to which shall be attached a copy of this Order.

11.     The provisions of this Order restricting the use and disclosure of Confidential Information shall not apply to documents or other information which were, are, or become public knowledge not in violation of this Order.

12.     Entry of this Order constitutes only a determination that OFAC is authorized to disclose information as provided herein under the Trade Secrets Act. Entry of this Order does not constitute a determination as to any right, privilege, or immunity OFAC may have with respect to plaintiffs' subpoenas, or as to any objection(s) OFAC may have to plaintiffs' subpoenas. OFAC's disclosure of information pursuant to this Order shall not constitute a waiver of any right, privilege, or immunity OFAC may have with respect to such information.

13.     Entry of this Order shall not prohibit the United States or any agency, department, officer, or employee thereof, from using or disclosing Confidential Information for any other purposes authorized or allowed by law.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on June 11, 2008.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 01-2094 (RCL) |
| ) | |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| STEVEN GREENBAUM, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 02-2148 (RCL) |
| ) | |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |

## ACKNOWLEDGMENT OF PROTECTIVE ORDER

The undersigned hereby declares under penalty of perjury that he or she has read the Protective Order entered in the United States District Court for the District of Columbia in the above-captioned actions, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any Confidential Information made available to him or her other than in strict compliance with the Order. The undersigned acknowledges that his or her duties under the Order shall survive termination of this case and are permanently binding and that failure to comply with the terms of the Order may result in the imposition of sanctions by the Court.

_____

[signature]

_____

[print name]

DATED: _____